**No. 15-15296**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

GILBERT P. HYATT,

*Plaintiff-Appellant,*

v.

DIANE L. HARKEY, in her official capacity as California State Board of Equalization member; JEROME E. HORTON, in his official capacity as California Franchise Tax Board member and California State Board of Equalization member; MICHAEL COHEN, in his official capacity as California Franchise Tax Board member; BETTY T. YEE, in her official capacity as California Franchise Tax Board member and California State Board of Equalization member; GEORGE RUNNER, in his official capacity as California State Board of Equalization member; FIONA MA, in her official capacity as California State Board of Equalization member,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of California
Case No. 2:14-cv-00849-GEB-DAD (Hon. Garland E. Burrell, Jr.)

OPENING BRIEF OF APPELLANT
GILBERT P. HYATT

Donald J. Kula, Bar No. 144342
DKula@perkinscoie.com
Oliver M. Gold, Bar No. 279033
OGold@perkinscoie.com
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Erwin Chemerinsky
EChemerinsky@law.uci.edu
UC IRVINE SCHOOL OF LAW
401 E. Peltason Drive, Suite 1000
Irvine, CA 92697-8000
Telephone: 949.824.8814
Facsimile: 949.824.7336

Malcolm Segal, Bar No. 075481
MSegal@segal-pc.com
SEGAL & ASSOCIATES, PC
400 Capitol Mall, Suite 2550
Sacramento, CA 95814
Telephone: 916.441.0886
Facsimile: 916.475.1231

Attorneys for Appellant Gilbert P. Hyatt

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellant Gilbert P.

Hyatt is an individual.

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION.........................................................................1

STATEMENT OF THE ISSUES............................................................................1

INTRODUCTION ................................................................................................2

STATEMENT OF THE CASE................................................................................8

SUMMARY OF THE ARGUMENT ....................................................................14

ARGUMENT .....................................................................................................17

    A.    Standard of Review ...........................................................................17

    B.    The TIA bars federal court jurisdiction only when a taxpayer
        has a plain, speedy and efficient state-court remedy for his
        constitutional claims..........................................................................18

        1.    A state remedy is not "plain" within the meaning of the
            TIA if it is uncertain...............................................................18

        2.    A state remedy is not "speedy" within the meaning of the
            TIA if it involves "significantly greater delay than a
            corresponding federal procedure."..........................................19

        3.    A state remedy is not "efficient" within the meaning of
            the TIA if it requires undue hardships or a multitude of
            actions ...................................................................................20

    C.    The TIA does not bar this action because Section 19381 does
        not provide Mr. Hyatt any forum, let alone a plain, speedy and
        efficient one, in which to raise his constitutional claims .................21

        1.    Section 19381 provides a unique right to defer payment
            of the tax until after a court adjudication of the taxpayer's
            residency, but does not allow adjudication of any other
            issue.......................................................................................21

        2.    Section 19381 does not provide Mr. Hyatt a plain,
            speedy and efficient forum for his constitutional claims........23

    D.    The State cannot require Mr. Hyatt to abandon the long-running
        administrative process and forgo his statutory rights under
        Section 19381 and now proceed under Section 19382 .....................27

# TABLE OF CONTENTS
### (continued)

Page

1.    Mr. Hyatt is not required to choose between his current administrative challenge and his constitutional claims .......... 27

2.    The district court's order sanctions an illegal bait and switch by the State ................................................................... 29

3.    Section 19382 and the refund cases cited by the district court are inapplicable here because the taxpayers in those cases had no right under Section 19381 to defer payment of the tax until after a court challenge .................................... 33

E.    Even Section 19382, while not applicable here, would not provide the constitutional remedy required by the TIA under the facts of this case ........................................................... 34

1.    The plain language of Section 19382 makes it highly uncertain as to whether Mr. Hyatt's constitutional claims could be heard in a Section 19382 refund action .................... 34

2.    Pursuing a refund action under Section 19382 would not be speedy ................................................................................. 38

F.    The district court's order also cannot be sustained based on comity .............................................................................. 40

CONCLUSION ................................................................................... 42

# TABLE OF AUTHORITIES

**Page**

CASES

*Aronoff v. Franchise Tax Bd. of State of Cal.*,
  348 F.2d 9 (9th Cir. 1965) ................................................................................ 33

*Atari, Inc. v. State Bd. of Equalization*,
  170 Cal. App. 3d 665 (1985) ............................................................................ 39

*Barclays Bank Internat. Ltd. v. Franchise Tax Bd.*,
  10 Cal. App. 4th 1742 (1992) *aff'd sub nom. Barclays Bank PLC v.
  Franchise Tax Bd. of California*, 512 U.S. 298 (1994) ..................................... 35

*Barnes v. State Bd. of Equalization*,
  118 Cal. App. 3d 994 (1981) ............................................................................ 39

*California v. Grace Brethren Church*,
  457 U.S. 393 (1982) .............................................................................. 19, 26, 33

*Chippewa Trading Co. v. Cox*,
  365 F.3d 538 (6th Cir. 2004) ............................................................................ 41

*Colonial Pipeline Co. v. Collins*,
  921 F.2d 1237 (11th Cir. 1991) ........................................................................ 20

*Dichter-Mad Family Partners, LLP v. U.S.*,
  709 F.3d 749 (9th Cir.), *cert. denied*, 134 S.Ct. 117 (2013) ............................ 17

*Direct Marketing Assoc. v. Bennett*,
  916 F.2d 1451 (9th Cir. 1990) .......................................................................... 19

*Ex parte Young*,
  209 U.S. 123 (1908) ............................................................................................ 5

*Fair Assessment in Real Estate Ass'n, Inc. v. McNary*,
  454 U.S. 100 (1981) ..................................................................................... 40, 41

*Fitzpatrick v. Department of Motor Vehicles*,
  13 Cal. App. 4th 1771 (1993) .......................................................................... 27

# TABLE OF AUTHORITIES
(continued)

**Page**

*Franchise Tax Bd. of California v. Alcan Aluminum Ltd.*,
    493 U.S. 331 (1990)..................................................................... 33

*Franchise Tax Bd. v. Superior Court*,
    212 Cal. App. 3d 1343 (1989) .......................................................... 22

*Hamer v. Anderson*,
    594 F. Supp. 561 (N.D. Il. 1984) ...................................................... 41

*Hillsborough TP., Somerset Cnty., N.J., v. Cromwell*,
    326 U.S. 620 (1946)..................................................................... 18

*Jerron West, Inc. v. State of California SBE*,
    129 F.3d 1334 (9th Cir. 1997) .......................................................... 37

*Lowe v. Washoe County*,
    627 F.3d 1151 (9th Cir. 2010) ............................................. 19, 20, 34

*Newsweek v. Florida Dept. of Revenue*,
    522 U.S. 442 (1998) (per curiam)........................................ 29, 30, 31

*Oregon Advocacy Ctr. v. Mink*,
    322 F.3d 1101 (9th Cir. 2003) .......................................................... 27

*Perry v. Sindermann*,
    408 U.S. 593 (1972)..................................................................... 32

*Quigley v. California Franchise Tax Bd.*,
    C 00-01662 WHA, 2000 WL 1336612 (N.D. Cal. Sept. 12, 2000),
    *aff'd*, 14 F. App'x 910 (9th Cir. 2001)................................................ 33

*Reich v. Collins*,
    513 U.S. 106 (1994)............................................................... 29, 30

*Ret. Fund Trust of Plumbing v. Franchise Tax Bd.*,
    909 F.2d 1266 (9th Cir. 1990) .......................................................... 20

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Rosewell v. LaSalle National Bank*,
450 U.S. 503 (1981).................................................................... 18, 19, 20

*Speiser v. Randall*,
357 U.S. 513 (1958)............................................................................... 32

*Stone Container Corp. v. United States*,
229 F.3d 1345 (Fed. Cir. 2000) ........................................................... 30

*Tully v. Griffin, Inc.*,
429 U.S. 68 (1976)................................................................................ 18

*United Mine Workers v. Illinois State Bar Ass'n*,
389 U.S. 217 (1967).............................................................................. 32

*US West, Inc. v. Nelson*,
146 F.3d 718 (9th Cir. 1998) ............................................................... 20

*Wertin v. Franchise Tax Bd.*,
68 Cal. App. 4th 961 (1998) ................................................................ 39

*Winn v. Killian*,
307 F.3d 1011 (9th Cir. 2002) ............................................................. 41

**STATUTES**

28 U.S.C. § 1291 ..................................................................................... 1

28 U.S.C. § 1341 ............................................................................. passim

42 U.S.C. § 1983 ..................................................................................... 2

Cal. Rev. & Tax. Code § 6933 ............................................................. 37

Cal. Rev. & Tax. Code § 19041 ..................................................... 3, 6, 9

Cal. Rev. & Tax. Code § 19045 ......................................................... 3, 9

Cal. Rev. & Tax. Code § 19301 ........................................................... 36

# TABLE OF AUTHORITIES
### (continued)

**Page**

Cal. Rev. & Tax. Code § 19306 ................................................................ 6

Cal. Rev. & Tax. Code § 19322 .................................................... 6, 25, 39

Cal. Rev. & Tax. Code § 19324 ................................................................ 6

Cal. Rev. & Tax. Code § 19381 ........................................................ passim

Cal. Rev. & Tax. Code § 19382 ........................................................ passim

Cal. Rev. & Tax. Code § 19384 .......................................................... 6, 40

Cal. Rev. & Tax. Code § 19385 .............................................................. 40

Cal. Rev. & Tax. Code § 19717(b)(1) ..................................................... 29

## RULES

Fed. R. Civ. P. 12(b)(1) ......................................................................... 17

## OTHER AUTHORITIES

Black's Law Dictionary 1568 (7th ed. 2009) ........................................ 38

Cal. Const., Article XIII, Section 32 ..................................................... 23

U.S. Const. amend. XIV ................................................................. 11, 37

## STATEMENT OF JURISDICTION

The district court entered judgment on February 10, 2015.  1 ER 1.

Appellant Gilbert P. Hyatt filed a notice of appeal on February 18, 2015.  2 ER 15-

16.  This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.  Does the Tax Injunction Act, 28 U.S.C. § 1341, bar Mr. Hyatt's due

process and equal protection claims from being heard in federal court even if the

applicable state tax provision, Section 19381 of the California Revenue &

Taxation Code, does not provide a forum for these constitutional claims in

California state court?

2.  Is Mr. Hyatt required to abandon his 22-year long-pending administrative

challenge to the tax assessments, and the special and unique rights he has

preserved and is accorded under Section 19381 as a non-resident of California, in

order to assert his constitutional claims at this time?

Attached to the end of this brief is an Addendum containing the full text of

28 U.S.C. § 1341 and Sections 19381 and 19382 of the California Revenue &

Taxation Code.

## INTRODUCTION

Mr. Hyatt filed this action under 42 U.S.C. § 1983 to seek redress for the due process and equal protection violations he has suffered in the course of challenging California's tax assessments against him. The district court dismissed this action based on the Tax Injunction Act, 28 U.S.C. § 1341, resulting in this appeal.

During a tax audit that began 22 years ago, the California Franchise Tax Board ("FTB") determined that Mr. Hyatt owed over $7.5 million in taxes, penalties, and interest for income earned during the six-months following his move from California to Nevada in late September of 1991. In the FTB's view, Mr. Hyatt was a California resident during those months, notwithstanding his move. Disputing his California residency, in 1996 after completion of the audit, Mr. Hyatt commenced an administrative challenge to the tax assessment and thereby preserved his rights upon exhaustion of his administrative remedies under a unique California statute, Section 19381 of the California Revenue & Taxation Code ("Section 19381").

Although California law normally requires the taxpayer to first pay the disputed tax in order to challenge it in court after exhaustion of administrative remedies, Section 19381 creates an exception for out-of-state taxpayers, such as

Mr. Hyatt, who dispute an assessed tax based on non-California residency. Under the statute, out-of-state taxpayers who exhaust their administrative remedies—and still contest the tax—are entitled to a trial *de novo* in California Superior Court on the residency issue *without first paying the tax*.

The administrative remedies that must be pursued to preserve the special right under Section 19381 consist of first filing a "protest" with the FTB,[1] and if unsuccessful then filing an administrative appeal before the California State Board of Equalization (the "SBE").[2] Unfortunately, California has not completed the administrative proceeding Mr. Hyatt began in 1996, and no end is near. For 22 years the State has dragged out the administrative process, thereby preventing Mr. Hyatt from seeking *de novo* declaratory relief in California Superior Court under Section 19381.

Instead, as detailed in his federal complaint (the factual allegations of which must be taken as true at this stage of the case), the State has so dragged out the administrative process that evidence critical to a determination of the residency issue is no longer available, either because over 100 witnesses have died or have

---

[1] *See* Section 19041 of the California Revenue & Taxation Code ("Section 19041").

[2] *See* Section 19045 of the California Revenue & Taxation Code ("Section 19045").

faded memories, or because relevant documents have been lost or destroyed. Thus, while on the one hand the State has given Mr. Hyatt a statutory right to challenge the residency issue in a court proceeding without having to pay the assessed taxes, penalties, and interest, on the other hand, the State's decades-long delay has made it impossible for Mr. Hyatt to perfect his rights or even effectively litigate them. Because of the State's delay, Mr. Hyatt can no longer get the fair hearing of his residency challenge that due process requires.

Beyond that, the evidence detailed in Mr. Hyatt's federal complaint establishes that throughout the administrative process he has been singled out for his religion. As found in a separate tort action in which judgment was entered for Mr. Hyatt, the State's lead auditor made anti-Semitic remarks about him because he is Jewish and expressed an intent to "get" him despite internal FTB documents that openly acknowledged doubt as to the case against him.[3]

Because the State's unconstitutional behavior has so infected its tax assessment effort, Mr. Hyatt brought this federal action to stop the State from

---

[3] *Franchise Tax Board of California v. Hyatt, Nevada Supreme Court*, Case No. 53264 (September 18, 2014). *See* 4 ER 563-630.

continuing to proceed against him.[4]  Mr. Hyatt claims that the State has so delayed the administrative process for determining his correct tax liability that today, after more than 22 years, Mr. Hyatt is unable to obtain a fair determination of such liability, thus resulting in the violation of his due process and equal protection rights.  In dismissing this action based on the Tax Injunction Act ("TIA"), the district court did not (and could not properly) question the merits of Mr. Hyatt's constitutional claims.  Instead, the court concluded that the TIA barred federal jurisdiction because Mr. Hyatt had a "plain, speedy and efficient remedy" for those claims in state court.  That is the error challenged in this appeal.  Federal court is the only forum that will give Mr. Hyatt the remedy he is due, thereby making the TIA inapplicable.

Section 19381—the California statute under which Mr. Hyatt is accorded special rights as an out-of-state resident—allows for a determination of only one issue, the issue of his residency.  Mr. Hyatt cannot raise his constitutional claims either in the administrative process or in the *de novo* case in California Superior Court permitted by Section 19381.  Indeed, neither the district court nor the State

---

[4] In accord with *Ex parte Young*, 209 U.S. 123 (1908), Mr. Hyatt is seeking prospective relief to stop the alleged unconstitutional misconduct and has named as defendants in this action the board members of the FTB and the SBE, respectively, acting in their official capacities.

even suggests that Section 19381 would permit Mr. Hyatt to raise his constitutional claims.

Instead, the district court (as urged by the State) ruled that Mr. Hyatt could pursue his constitutional claims in California Superior Court under a completely separate statutory scheme set forth in Section 19382 of the California Revenue & Taxation Code ("Section 19382"). But Section 19382 only permits a taxpayer to challenge a tax in court after first paying the tax plus all penalties and interest assessed by the State, and then exhausting a separate administrative process.[5]

For Mr. Hyatt to begin a new administrative challenge under Section 19382 (*i.e.*, pay the disputed tax, file a refund claim, and proceed to California Superior Court upon denial of the claim), Mr. Hyatt would have to forego his statutory right under Section 19381 to challenge the assessment without first paying it, as well as his statutory right to recover (if he were successful) the millions of dollars in attorneys' fees he has spent during the administrative process that the State has

---

[5] California therefore provides two alternative paths for an individual to challenge an audit that assesses taxes based on residency: (i) a deferred payment remedy in accord with Sections 19041, 19045, and 19381 of the California Revenue & Taxation Code (sometimes referred to herein as the "Section 19381 process"); or (ii) a post-payment refund remedy in accord with Sections 19306, 19322, 19324, 19382, and 19384 of the California Revenue & Taxation Code (sometimes referred to herein as the "Section 19382 process").

delayed and refused to resolve for 22 years. More than that, to pursue the Section 19382 process now would require Mr. Hyatt to pay over $55 million in taxes, penalties, and interest that have accumulated during the 22-year administrative process—accumulated only because of the State's unconstitutional delay.

Requiring Mr. Hyatt to pay this price—and to forego his long preserved rights under Section 19381—in order to pursue his constitutional claims is not the "plain, speedy and efficient remedy" that the TIA demands. To the contrary, requiring Mr. Hyatt to pay this price amounts to an undue penalty on the exercise of his constitutional rights. Mr. Hyatt should not have to choose between vindicating his constitutional rights and maintaining his Section 19381 rights. The district court's order erroneously requires him to choose one over the other. Only the exercise of federal jurisdiction over this complaint will allow Mr. Hyatt, as he is entitled, to pursue both.

To be clear, Mr. Hyatt does not seek a determination here on the residency issue that is the subject of his administrative challenge nor on the question of whether the taxes are legitimately owed, which he has vigorously disputed for 22 years and continues to dispute in the ongoing state administrative process. Further, Mr. Hyatt does not challenge the constitutionality of the California tax laws as written. Rather, he claims he can no longer receive due process on the residency

question because of the loss of evidence from the unprecedented 22-year delay in completion of the administrative process.

In addition, during this 22-year period Mr. Hyatt has also been singled out and subjected to conduct unlike that directed at any other citizen in violation of his right to equal protection under the law. Accordingly, under a "class of one" doctrine, Mr. Hyatt is being denied equal protection under the law.

Therefore, Mr. Hyatt seeks federal injunctive relief to prevent irreparable harm from these due process and equal protections violations. But he lacks a forum, other than federal court, to have these constitutional claims heard while also continuing his administrative challenge and preserving his right under Section 19381 to a *de novo* trial in Superior Court without having to pay the tax.

## STATEMENT OF THE CASE

In 1991, Mr. Hyatt moved from California to Nevada. More than 22 years ago, in 1993, the FTB commenced an audit of Mr. Hyatt for the 1991 tax year. In 1996, the FTB commenced a second audit of Mr. Hyatt for the 1992 tax year. 4 ER 739 ¶ 2.

In 1996 and 1997, respectively, the FTB assessed Mr. Hyatt $1.8 million in taxes, penalties, and interest for the 1991 tax year and $5.6 million in taxes, penalties, and interest for the 1992 tax year, claiming he resided in California for

six months after he sold his California house and actually moved. 4 ER 745 ¶ 21, 453 ¶ 41, 754 ¶ 44. Mr. Hyatt moved to Nevada in September 1991, and has vigorously disputed, and still disputes, these residency-based assessments. *Id.*

To contest these assessments, Mr. Hyatt chose the deferred payment path, also referred to herein as the Section 19381 process. Mr. Hyatt therefore in 1996 promptly exercised his statutory right under Section 19041 to "protest" the residency assessments against him. 4 ER 754 ¶ 42. The FTB delayed acting on the protest for 11 years, finally issuing a determination against Mr. Hyatt in late 2007. 4 ER 756-57 ¶ 56. Mr. Hyatt then exercised his rights under Section 19045 to file an administrative appeal for each tax year, and those appeals have now been pending since 2008. 4 ER 758-59 ¶¶ 61-62.

As provided under Section 19381, when the administrative review of the tax assessments is complete, Mr. Hyatt will be entitled to file a *de novo* declaratory relief action in California Superior Court on the issue of his residency *without having to pay the assessed tax to get to court*. He therefore does not have to pay the tax unless and until the California Superior Court adjudicates the residency issue against him in a *de novo* court proceeding. 4 ER 739-40 ¶¶ 2-4, 742-43 ¶ 14, 749-50 ¶ 31, 753-54 ¶¶ 39, 41-42, 754 ¶ 46.

A challenge to a tax assessment under Section 19381 based on non-residency is the only circumstance under California state tax law that allows the taxpayer to contest the tax assessment in a court of law without first paying the tax. 4 ER 742 ¶ 14, 743 ¶ 15. The State must complete the administrative review before the taxpayer can seek the declaratory relief in California Superior Court on the residency issue. 4 ER 742 ¶ 14. As of today, after 22 years, this administrative process is still ongoing. 4 ER 739 ¶ 2. The State's delays in completing the pre-payment administrative process have prevented Mr. Hyatt from filing a declaratory relief action in California Superior Court.

During this 22-year period, material witnesses have passed away and memories of other material witnesses have faded as a result of which Mr. Hyatt has already lost the benefit of over 100 material witnesses. 4 ER 764 ¶ 83. Documents relevant and important to Mr. Hyatt are also no longer available. 4 ER 765 ¶ 85. So much evidence has already been lost over the last 22 years that there can now never be a full and fair adjudication of Mr. Hyatt's residency for the 1991 and 1992 tax years. 4 ER 744 ¶ 19.

Further, during the time the administrative process has been pending the State has changed and added theories to tax Mr. Hyatt and asserted "facts" with the presumption of correctness in its favor, which Mr. Hyatt must attempt to rebut, 24

and 23 years respectively, after the tax years at issue. 4 ER 740 ¶ 4. The State has taken so long to complete the investigation and administrative process that prejudicial delay in the extreme has occurred. 4 ER 744-46 ¶¶ 20, 22. Indeed, Mr. Hyatt is now 77 years old, and every indication is that the State has been simply waiting for the ultimate prejudice to occur to Mr. Hyatt and leave it for his estate to try and fend off the State claims, old and new, without the benefit of Mr. Hyatt. 4 ER 744 ¶ 19.

As a result of these decades of delay and the prejudice experienced by Mr. Hyatt, he commenced this action asserting violation of his Due Process rights under the Fourteenth Amendment. U.S. Const. amend. XIV, § 1. He seeks an injunction that would enjoin and put an end to a pending state government administrative process that has now taken over 22 years, is still not complete, and for which Mr. Hyatt can no longer receive a full and fair adjudication on the merits due to the extreme passage of time and resulting loss of material evidence. 4 ER 743 ¶ 16.

Mr. Hyatt brought this action on the ground the State trampled his right to a fair and objective procedure for contesting the tax assessments. Defendants stretched out Mr. Hyatt's administrative protest and appeal for nearly 20 years. Defendant State Board of Equalization members have contributed to the delays by

allowing Mr. Hyatt's administrative appeals to languish for over eight years, with more briefing still to be filed and no hearing date set. 4 ER 747-48 ¶¶ 25-26. Given the extreme delay caused by defendants, Mr. Hyatt properly alleged that California administrative process as applied to him violates his due process rights and equal protection rights, and that he is entitled to a remedy for such constitutional violations. 4 ER 752-82.

Apart from its delay, the FTB has treated Mr. Hyatt with discriminatory animus. This equal protection claim is supported by the following facts that were presented in the above-referenced Nevada state court action in which the FTB was found to have committed fraud and to have intentionally inflicted emotional distress upon Mr. Hyatt in the handling of the audit and in delaying the administrative process: (i) the lead FTB auditor openly stated that she was "going to get this [taxpayer]" referring to Mr. Hyatt; (ii) that auditor made specific anti-Semitic remarks about Mr. Hyatt, who is Jewish; (iii) she refused to document and instead "buried" exculpatory evidence in Mr. Hyatt's favor; (iv) a more experienced FTB auditor, familiar with the Hyatt audit file, concluded that the lead auditor was obsessed with Mr. Hyatt and failed to obtain his side of the story, and complained internally to FTB management about the lead auditor's conduct; (v) the FTB reviewer of the audits, and others at the FTB, expressed internal dissent

regarding many of the lead auditor's conclusions and expressed doubt as to the case against Mr. Hyatt, and (vi) the FTB nonetheless rubber-stamped the record-setting assessments against Mr. Hyatt and used these assessments to justify its budget allocations to the state legislature. 4 ER 748-79 ¶ 29, 776-79 ¶ 113.

The Nevada Supreme Court confirmed the judgment entered by the Nevada state district court against the FTB in favor of Mr. Hyatt on the fraud claim in its entirety and on the intentional infliction of emotional distress claim as to liability. 4 ER 563-630. In so doing, the Nevada Supreme Court specifically cited the above-listed facts as support for confirming the judgment, including the lead auditor's anti-Semitic comments, and that the FTB delayed and refused to complete the "protest" phase of the administrative process for more than *11 years*. 4 ER 609, 754-55 ¶ 46.

Mr. Hyatt therefore filed this action seeking injunctive relief to remedy the unconstitutional conduct of the State. In dismissing the action, the district court relied entirely on the TIA (28 U.S.C. §1341). The district court did not question the merits of Mr. Hyatt's constitutional claims, but nonetheless found that Section 19382 (discussed in the Introduction above) provided a "plain, speedy and efficient remedy" for assertion of those claims.

## SUMMARY OF THE ARGUMENT

Contrary to the district court's ruling, Mr. Hyatt has no "plain, speedy and efficient" state-court forum to bring his constitutional claims, as the TIA demands, while also preserving his rights under Section 19381. Indeed, he has no effective state remedy at all for those claims.

Section 19381 provides Mr. Hyatt no remedy, let alone a speedy and efficient one, in which to raise his constitutional claims. A Section 19381 declaratory relief action is limited to the issue of residency. This leaves Mr. Hyatt with no remedy in state court for his constitutional claims, while he exhausts his administrative challenge and maintains his rights under Section 19381 to a *de novo* trial in Superior Court during which he can defer payment of the tax.

Section 19382 is not a way around this problem, as the district court erroneously concluded. The district court ruled that Mr. Hyatt's rights under Section 19381 need not be respected or continued, including his right to defer payment of the taxes pending completion of his residency-based challenge under Section 19381. Instead, the district court ruled that in order to pursue his constitutional claims Mr. Hyatt must change course after 22 years and give up the very rights he has been preserving under Section 19381, including and in particular

the deferment of taxes pending a *de novo* trial in Superior Court on the residency issue and recovery of his attorneys' fees.

The district court is wrong. None of the cases cited by the district court or defendants involved an administrative challenge under Section 19381, *i.e.*, none of those cases involved a residency-based challenge. Mr. Hyatt cannot be required to abandon his rights under Section 19381 in order to pursue his constitutional claims within a new Section 19382 process, particularly where his claims are based on the State's refusal to proceed with and complete his administrative challenge under Section 19381.

Even more fundamentally, to relegate Mr. Hyatt to Section 19382 in order to pursue his constitutional claims would require him to drop his decades-long administrative challenge and forgo the rights he has sought and preserved under Section 19381. That course would:

- force him to forego his statutory right to defer paying the tax assessments until after the Superior Court concludes a *de novo* trial on the disputed residency question;

- force him to pay the full $55 million in taxes, penalties, and interest that have accumulated only because of the State's unconstitutional behavior and delay for the last 22 years;

- force him to forego his statutory right to recover (if successful) the millions of dollars in attorneys' fees he has incurred in the administrative process to date.

In these circumstances, Section 19382 is the antithesis of a "plain, speedy, and effective" remedy. Instead, subjecting Mr. Hyatt to these consequences would amount to a penalty on his right to assert his constitutional challenge.

Mr. Hyatt cannot be penalized in this manner. He should not have to choose between either (i) continuing to pursue his administrative challenge and preserving his unique rights granted under California law or (ii) pursuing his constitutional claims challenging the conduct of the State during the ongoing 22-year administrative proceedings. The district court therefore erred in requiring Mr. Hyatt to make this choice.

Nor is it any answer to say, as the district court found, that Mr. Hyatt could have from the outset in 1996 followed the Section 19382 path to challenge his residency. The TIA applies only if the State provides an effective remedy for constitutional claims. There were no constitutional claims to pursue via Section 19382 in 1996. Mr. Hyatt's constitutional claims are based on the delay that occurred thereafter and that is continuing to this day.

As a result, even if Mr. Hyatt were so prophetic as to know in advance that the State would delay his administrative challenge for two decades, his due process and equal protection claims did not arise until well after he made his selection of adjudicative remedies in 1996. Mr. Hyatt cannot be faulted for failing to anticipate that in the ensuing years (in fact ensuing decades) after commencing his administrative challenge and preserving his rights under Section 19381, the State would greet him with the unconstitutional behavior that is the subject of this complaint.

The TIA is no bar to Mr. Hyatt's complaint. This matter should be remanded to the district court for adjudication of Mr. Hyatt's constitutional claims.

## ARGUMENT

### A. Standard of Review

This Court reviews *de novo* a district court's order granting a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) and must accept all uncontroverted factual allegations regarding jurisdiction as true. *Dichter-Mad Family Partners, LLP v. U.S.*, 709 F.3d 749, 750 (9th Cir.), *cert. denied*, 134 S.Ct. 117 (2013).

**B.** **The TIA bars federal court jurisdiction only when a taxpayer has a plain, speedy and efficient state-court remedy for his constitutional claims.**

The TIA, 28 U.S.C. §1341, specifies that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under state law *where a plain, speedy and efficient remedy may be had in the courts of such state.*" [emphasis added]. The plain, speedy and efficient remedy referred to in the statute requires that the plaintiff have a state court forum in which to concurrently bring the asserted constitutional claims seeking injunctive relief. The TIA does not apply where the plaintiff has merely a future, distant and speculative right to pursue the relief being sought. *See Tully v. Griffin, Inc.*, 429 U.S. 68, 74 (1976) (describing meaning of the phrase as "whether under New York law there is a 'plain, speedy and efficient' way for [the taxpayer] to press its constitutional claims while preserving the right to challenge the amount of tax due"); *Hillsborough TP., Somerset Cnty., N.J., v. Cromwell*, 326 U.S. 620, 625 (1946) (describing the meaning of the phrase as "whether the State affords full protection to the federal rights").

**1.** **A state remedy is not "plain" within the meaning of the TIA if it is uncertain.**

Addressing the meaning of the TIA's "plain, speedy and efficient" exception, the Supreme Court in *Rosewell v. LaSalle National Bank,* 450 U.S. 503

(1981), held that "plain means 'clear' or 'manifest' and that 'uncertainty' concerning a state's remedy may make it less 'plain' under 28 U.S.C § 1341 [the TIA]." Earlier Supreme Court cases, "without making a direct connection to the word 'plain,' have held that 'uncertainty' surrounding a state-court remedy lifts the bar to federal-court jurisdiction." *Id*. at 516-17; *see also California v. Grace Brethren Church*, 457 U.S. 393, 415 (1982) (TIA is no bar to federal relief "if the taxpayer's opportunity to raise his constitutional claims in state proceedings is uncertain").

"For a remedy to be 'plain,' the procedures available in state court must be certain. A state remedy 'is not "plain" within the meaning of the [Act] . . . 'if there is uncertainty regarding its availability or *effect*.'"" *Lowe v. Washoe County*, 627 F.3d 1151, 1156 (9th Cir. 2010) (citation omitted); *Direct Marketing Assoc. v. Bennett*, 916 F.2d 1451, 1457 (9th Cir. 1990).

**2. A state remedy is not "speedy" within the meaning of the TIA if it involves "significantly greater delay than a corresponding federal procedure."**

"'Speedy' is perforce a relative concept, and we must assess the 2-year delay [at issue in that case] against the usual time for similar litigation." *Rosewell*, 450 U.S. at 518-19. In addressing the Johnson Act, which has an exception identical to that in the TIA, a decision from this court held that a state remedy is

"'speedy' if it does not entail a significantly greater delay than a corresponding federal procedure . . . ." *US West, Inc. v. Nelson*, 146 F.3d 718, 725 (9th Cir. 1998).

Moreover, delay in an administrative process that prevents constitutional claims from being heard can be a factor in determining whether the speedy requirement of the TIA is satisfied. *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1240 (11th Cir. 1991) (holding that the taxpayer had pled facts sufficient to overcome the TIA's jurisdictional hurdle given the delay in the protest process, and therefore remanded the case for factual findings on that issue).

3. **A state remedy is not "efficient" within the meaning of the TIA if it requires undue hardships or a multitude of actions.**

A state-court remedy is not "efficient" under the TIA if it requires "multiplicity of suits" and imposes an "unusual hardship on [the taxpayer] requiring ineffectual activity or an unnecessary expenditure of time or energy." *Rosewell*, 450 U.S. at 516-18; *Ret. Fund Trust of Plumbing v. Franchise Tax Bd.*, 909 F.2d 1266, 1273-74 (9th Cir. 1990) ("to be 'efficient,' a remedy must impose no undue hardship or unnecessary expenditure of time and energy"); *Lowe*, 627 F.3d at 1156 (*citing* and *quoting Rosewell*).

**C.    The TIA does not bar this action because Section 19381 does not provide Mr. Hyatt any forum, let alone a plain, speedy and efficient one, in which to raise his constitutional claims.**

**1.    Section 19381 provides a unique right to defer payment of the tax until after a court adjudication of the taxpayer's residency, but does not allow adjudication of any other issue.**

Upon exhaustion of administrative remedies, Section 19381 provides the process for challenging a tax assessment based on non-residency in California and allows the taxpayer to pursue Superior Court declaratory relief while deferring payment of the tax.  The statute limits the action to the issue of the taxpayer's residency during the period in question and specifies that the assessed tax need not be paid during the pendency of the action:

> [A]ny individual after protesting a notice or notices of
>
> deficiency assessment issued *because of his or her alleged*
>
> *residence in this state* and after appealing from the action of
>
> the Franchise Tax Board to the State Board of Equalization,
>
> may within 60 days after the action of the State Board of
>
> Equalization becomes final commence an action, on the
>
> grounds set forth in his or her protest, in the Superior Court
>
> of the County of Sacramento, in the County of Los Angeles
>
> or in the City and County of San Francisco against the
>
> Franchise Tax Board *to determine the fact of his or her*

> *residence in this state during the year or years set forth in*
>
> *the notice or notices of deficiency assessment*. No tax based
>
> *solely upon the residence of such an individual shall be*
>
> *collected* from that individual until 60 days after the action
>
> of the State Board of Equalization becomes final and, *if he*
>
> *or she commences an action pursuant to this section, during*
>
> *the pendency of the action*, other than by way of or under the
>
> jeopardy assessment provisions of this part.

Cal. Rev & Tax. Code § 19381 (emphasis added); s*ee Franchise Tax Bd. v. Superior Court*, 212 Cal. App. 3d 1343, 1347, 1349 (1989) (where the court struck the portion of the prayer for relief that sought a declaration beyond "a determination of nonresidency" and noted, "The statutes [former Section 19081 and Cal Code Civ. Proc. § 1060.5] do not authorize the superior court to prevent or enjoin collection of the tax, but permit it only 'to determine the fact of [the taxpayer's] residence in this State during the year or years set forth in the notice or notices of deficiency assessment.'").

There are no other circumstances in which the State allows a taxpayer to challenge a tax assessment in a court proceeding without first paying the tax. In all other circumstances, the only option the taxpayer has for judicial review of the

assessment is to pay the tax, request a refund and then file a refund action in Superior Court. *See* Cal. Rev & Tax Code § 19382. The California legislature has thus deemed challenges based on non-residency to be treated differently from any other type of assessment, thereby showing respect and deference to its sister states and their residents pending a court adjudication of the dispute over residency.[6]

### 2. Section 19381 does not provide Mr. Hyatt a plain, speedy and efficient forum for his constitutional claims.

Section 19381 commences by explicitly forbidding California state courts from entertaining a suit aimed at preventing assessment or collection of a state tax. Cal. Rev & Tax. Code § 19381 ("No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action, or proceeding in any court against this state or against any officer of this state to prevent or enjoin the assessment or collection of any tax under this part"); *see also* Cal. Const., Article XIII, Section 32 (containing almost identical language to Section 19381).

---

[6] In 1955 the California Legislature specifically amended Section 19381 to add the key provision at issue here for non-residency challenges, thereby providing the unique right to a court challenge without having to pay the tax. The California Attorney General vigorously opposed the 1955 amendment for this reason, but the law was passed nonetheless, amending Section 19381 (then numbered 19081) to provide non-residency challenges this very right. (*See* attached Addendum at 4-6, that includes Section 19381 and selected legislative history of its amendment in 1955.)

Further, as quoted above, the plain text of Section 19381's declaratory relief remedy limits the remedy to a determination of "the fact of his or her residence in this state during the year or years set forth in the deficiency assessment." This makes it plain that other issues—constitutional or otherwise—cannot be considered by the California Superior Court in a Section 19381 declaratory relief action.[7]

In addition to the "plain" limitations of a declaratory relief action under Section 19381, even if we assume Mr. Hyatt could raise his constitutional claims under Section 19381, no judicial relief may be sought under that statute, on any theory, until the administrative appeal is complete. In Mr. Hyatt's case, the SBE has still not completed the administrative appeal regarding his California residency that has been pending since 2008, the briefing is still not complete and no hearing date has been set.

Given the delay that Mr. Hyatt has already faced in the administrative process, the SBE cannot be expected to meet any definition of "speedy." Indeed,

---

[7] Neither in the proceedings below, nor at any other time, have defendants asserted or even suggested that Section 19381 provides a forum for constitutional claims or any claim other than resolution of the residency issue.

Mr. Hyatt has already been denied a "speedy" remedy in the administrative

procedure. His access to judicial relief, however, has not yet commenced.

Any judicial remedy upon completion of the administrative appeal would

also not be an "efficient" remedy as it would require a multiplicity of actions.

First, the declaratory relief action on the residency issue under Section 19381

would have to be completed, including any appeal process, without addressing the

constitutional claims. Then, after paying the tax, Mr. Hyatt might (or might not)

be able to seek a refund under Section 19382 (as described below). This would

include again exhausting his administrative remedies at the FTB in which he

would attempt to raise his constitutional claims.[8] Once Mr. Hyatt exhausted these

administrative remedies, he then would have to proceed to court for a refund action

under Section 19382 at which time, according to the district court, he might then

(or might not) be able to assert his constitutional claims.

Without federal court jurisdiction for his constitutional claims, Mr. Hyatt's

case will first have to be tried on the merits of the residency issue in a California

Superior Court declaratory relief action under Section 19381. But he would be

without evidence, the loss of which he claims deprives him of a fair trial on that

---

[8] *See* Cal. Rev. & Tax. Code § 19322.

issue. Mr. Hyatt would thus have been forced to participate in a state judicial proceeding that he believes and has plead will be unconstitutionally unfair, and then attempt to have a different and second state judicial proceeding (a subsequent Section 19382 refund action) find that the prior proceeding that had just concluded (the Section 19381 declaratory relief action) was unconstitutional. That completely backward process is clearly not an "efficient" way to resolve Mr. Hyatt's constitutional claims.

Where, as here, a federal-court forum will relieve the burden that will otherwise be borne by the taxpayer in a state-court forum, this "advantage" of federal-court relief can be considered in determining whether there is a "plain, speedy and efficient" remedy in state court. See *Grace Brethren*, 457 U.S. at 416. In this case, there clearly are advantages to the district court hearing Mr. Hyatt's constitutional claims, as it is the only way for these claims to be heard in a timely manner.

The district court therefore can and must hear Mr. Hyatt's constitutional claims. The injunctive relief sought would prevent the wasteful and inefficient process. The TIA therefore does not bar the federal district court from hearing these claims at this time.

**D.    The State cannot require Mr. Hyatt to abandon the long-running administrative process and forgo his statutory rights under Section 19381 and now proceed under Section 19382.**

Defendants should not be allowed to benefit from their unconstitutional conduct in delaying the administrative challenge for 22 years by now requiring Mr. Hyatt to abandon that process, pay the now over $55 million in tax assessments, penalties, and interest, and then seek relief under Section 19382 in order to pursue his constitutional claims. Yet, that is what the district court ruled in erroneously finding that Mr. Hyatt has a plain, speedy and efficient remedy under Section 19382.

**1.    Mr. Hyatt is not required to choose between his current administrative challenge and his constitutional claims.**

The State must follow, apply and enforce its own statutes. *See, e.g., Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1105-06 (9th Cir. 2003) (upholding injunction based on due process violations stemming from unreasonable delays in transfers of inmates from county jails to the state hospital for treatment); *Fitzpatrick v. Department of Motor Vehicles*, 13 Cal. App. 4th 1771, 1776-78 (1993) (reversing the trial court's judgment and directing a new judgment because DMV did not properly proceed in accord with the statutory law).

The district court's dismissal of the complaint in this case effectively, and illegally, nullifies the California legislature's specific exception in Section 19381

for non-residents that permits a taxpayer to defer payment until after both the administrative process and court challenge are exhausted. But Mr. Hyatt should not be forced by the State's 22-year delay to give up his long-preserved statutory rights under Section 19381 in order to have his constitutional claims heard now. This would essentially amount to imposing a penalty on Mr. Hyatt's right to assert his constitutional claims.

Rather, the State must enforce and apply the statute it enacted, Section 19381, including completion of the required administrative process, so that Mr. Hyatt can concurrently continue to challenge the tax assessments via the administrative process and also pursue his constitutional claims in the district court. Mr. Hyatt should not be required to choose one or the other, he is entitled to both.

Further, if Mr. Hyatt were to change course now, pay the assessments, file a refund claim with the FTB under Section 19382 and attempt to exhaust his administrative remedies related thereto, and then after the FTB denies the claim sue for a refund in California Superior Court, as the district court says he must, he would lose additional rights afforded him under California law. Specifically, in order to preserve his right to recover attorneys' fees, if he prevails in the current administrative action as part of the Section 19381 process, Mr. Hyatt must first

complete this administrative process, including obtaining a decision from the SBE on the administrative appeal. *See* Cal. Rev. & Tax. Code §19717(b)(1). The State cannot deprive Mr. Hyatt of his right to attorneys' fees under the Section 19381 process after offering this right upon exhaustion of the administrative process in which those fees were incurred and then refusing to complete that very process for over 22 years.

> ## 2. The district court's order sanctions an illegal bait and switch by the State.

The district court's decision forces the inapplicable Section 19382 refund remedy upon Mr. Hyatt and is analogous to a "bait and switch" tactic that the Supreme Court has twice rejected, when employed by other state tax authorities in a different, but still relevant, context. *See Reich v. Collins*, 513 U.S. 106, 108 (1994) and *Newsweek v. Florida Dept. of Revenue*, 522 U.S. 442, 445 (1998) (per curiam).

In *Reich*, the Court explained that a state may provide a pre-payment remedy, a post-payment remedy, or both. But what the State could not do was "to reconfigure its scheme, unfairly, in midcourse to 'bait and switch.'" 513 U.S. at 110-11 (emphasis in original). The taxpayer "was entitled to pursue what appeared to be a 'clear and certain' postdeprivation remedy, regardless of the State's predeprivation remedies." *Id*. at 113 (emphasis added).

Similarly, in *Newsweek*, 522 U.S. at 445, the Supreme Court held that where Florida law provided a taxpayer with a choice of either pre-payment or post-payment remedies to an assessed tax, the State violated due process by depriving a taxpayer of the post-payment remedy where he had reasonably relied on the availability of that remedy. The Court held that its opinion in *Reich* forbids a state from engaging in "bait and switch" practices where the state appears to offer a clear and certain remedy and then later, after the taxpayer relies on that remedy, declare that no such remedy exists. *Id*. at 444; *see also Stone Container Corp. v. United States*, 229 F.3d 1345, 1351 (Fed. Cir. 2000) ("*Reich* stands, at most, for the proposition that a state (or the federal government) may not restrict access to postpayment relief when a taxpayer reasonably relies on the availability of such relief.").

The district court attempted to distinguish these "bait and switch" cases on the ground that there was a change in statutes by the state in each case that deprived the taxpayer of a right he once had. 1 ER 8-9. In this case there has been no change in statute. But rather the State has refused to comply with a long-standing statute and complete the administrative process under which Mr. Hyatt was given clear rights. In Section 19381, the California legislature made a deliberate decision to give non-residents a means of contesting a tax assessment

first in an administrative process and then in a *de novo* court action on grounds of residency *without first paying the tax*.

Through Section 19381, the State represented to Mr. Hyatt that he could choose to have the residency issue resolved administratively, with full judicial review of the administrative decision via a declaratory relief action, without having to first pay the tax. Having sought to preserve this statutory remedy and having spent a substantial amount of time, effort, and money in doing so—so far without a final administrative decision—the State cannot now require Mr. Hyatt to change course in order to vindicate his constitutional rights. Certainly, putting Mr. Hyatt to that choice is anything but a "plain, speedy and efficient remedy" for his constitutional claims.

Moreover, to require Mr. Hyatt to make such a choice is every bit an illegal bait and switch as were the actions of the taxing authorities in Reich and Newsweek. In those cases the states changed their respective statutes that the taxpayers had relied on, while in this case by imposing long delays the State failed to provide to Mr. Hyatt the rights accorded under a long pending statute that was relied on by Mr. Hyatt. Failing to provide a right accorded by statute is akin to depriving a citizen of right by changing that statute.

The State has created a clear basis for the constitutional claims by denying Mr. Hyatt the timely resolution of his administrative challenge. He cannot be penalized now even further by having to give up his administrative challenge and the rights he is accorded under California law so that those constitutional claims can be heard. Similar in this regard, federal courts refuse to allow state and local authorities to deprive a citizen of a constitutional right in order to exercise another right, deeming such action by the government an unconstitutional condition or undue burden on a constitutional right. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972); *Speiser v. Randall*, 357 U.S. 513, 518-19 (1958). Most analogous here are the line of cases that prohibit the deprivation of a citizen's right to petition government for redress of grievances in exchange for some other right to which a citizen is entitled. *See United Mine Workers v. Illinois State Bar Ass'n,* 389 U.S. 217, 222 (1967).

Mr. Hyatt is entitled to have his constitutional claims heard now in federal court without giving up his ongoing administrative challenge and the state statutory rights he carefully preserved as a result of choosing that process starting in 1996.

**3.    Section 19382 and the refund cases cited by the district court are inapplicable here because the taxpayers in those cases had no right under Section 19381 to defer payment of the tax until after a court challenge.**

The district court cited several cases holding that California's post-payment refund process under Section 19382 provides a plain, speedy and efficient remedy under the TIA for contesting the validity of a tax.  1 ER 7-8.  Those cases are all inapposite.

This case is different from any reported California tax injunction case because this case involves Section 19381, not Section 19382.  None of the refund cases involved a residency-based assessment in which the taxpayer dutifully followed the administrative process and preserved the special rights under Section 19381.[9]  Certainly, no precedent holds that a taxpayer is required to choose either

---

[9] Hence, these non-Section 19381 cases cited by the district court are inapposite: *Franchise Tax Bd. of California v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990); *California v. Grace Brethren Church*, 457 U.S. 393, 396 (1982); *Aronoff v. Franchise Tax Bd. of State of Cal.*, 348 F.2d 9, 10 (9th Cir. 1965).  None of these cases, nor any other, addresses the issue raised here – whether a taxpayer alleging he has been subjected to an unconstitutional administrative tax process in attempting to preserve his rights under Section 19381 has a plain, speedy and efficient state court remedy for raising his constitutional claims.  While Defendants cited one unpublished case discussing Section 19381 relative to the TIA, that case involved a *pro se* plaintiff seeking declaratory relief on the tax/residency question with no constitutional claim asserted.  *Quigley v. California Franchise Tax Bd.*, C 00-01662 WHA, 2000 WL 1336612 (N.D. Cal. Sept. 12, 2000), *aff'd*, 14 F. App'x 910 (9th Cir. 2001).

(i) continuing to pursue his administrative challenge and the state's unique statutory process for residency-based assessments under Section 19381 that permit deferring payment of the tax pending a court adjudication of the residency issue or (ii) paying the tax in order to bring his constitutional claims via a separate state process. Moreover, no precedent involved the extreme facts of this case and the decades long administrative process that has spawned the constitutional claims Mr. Hyatt now asserts.

**E.    Even Section 19382, while not applicable here, would not provide the constitutional remedy required by the TIA under the facts of this case.**

      **1.    The plain language of Section 19382 makes it highly uncertain as to whether Mr. Hyatt's constitutional claims could be heard in a Section 19382 refund action.**

The TIA can bar federal jurisdiction only if the state provides a "plain" remedy for the constitutional claims asserted. As this Court holds, a state remedy "'is not 'plain' within the meaning of the [TIA] . . . . 'if there is uncertainty regarding its availability or effect.'" *Lowe*, 627 F.2d at 1156. Here, substantial uncertainty exists over whether Section 19382 would permit Mr. Hyatt to raise his constitutional claims.

Section 19382 gives California taxpayers a remedy to challenge the computation and assessment of a tax to obtain a refund. It provides that:

> [A]fter payment of the tax and denial by the Franchise Tax
>
> Board of a claim for refund, any taxpayer claiming that *the*
>
> *tax computed and assessed is void in whole or in part* may
>
> bring an action, upon the grounds set forth in that claim for
>
> refund, against the Franchise Tax Board for the recovery of
>
> the whole or any part of the amount paid.

Cal. Rev. & Tax. Code § 19382 (emphasis added).

Mr. Hyatt's constitutional claims do not challenge California's computation or assessment of a tax, nor do his constitutional claims seek a tax refund. The FTB computed and assessed his taxes in 1996 and 1997. The constitutional claims here all arose later. Mr. Hyatt therefore challenges the State's unconstitutional behavior that occurred after he instituted his administrative challenge to the assessment. Our research has not uncovered any reported decision in which a court permitted a taxpayer to raise such post-assessment constitutional claims in a Section 19382 refund case.[10]

---

[10] Although California tax refund cases involving constitutional claims are numerous, the taxpayers in those cases were all challenging the tax computed and assessed—not unconstitutional behavior that occurred thereafter and infringed the due process rights of the taxpayer in tax process. *See, e.g., Barclays Bank Internat. Ltd. v. Franchise Tax Bd.*, 10 Cal. App. 4th 1742 (1992) *aff'd sub nom.*

By its terms, Section 19382 permits a state-court action for a "taxpayer claiming that the tax computed and assessed is void in whole or in part." There is considerable uncertainty as to whether Section 19382 even permits an action addressing Mr. Hyatt's constitutional claims. Indeed, under the district court's ruling here, the only state court remedy available to Mr. Hyatt to raise his constitutional claims is to attach them as ancillary causes of action to a tax refund action filed under Section 19382. Thus, if Mr. Hyatt decided not to file the primary tax refund action, he would be denied any state court remedy for his constitutional claims.

As a result, it is not "plain" that the remedy authorized by this provision can be used by Mr. Hyatt to raise the federal due process and equal protection claims which are the basis of this federal lawsuit. *See* Cal. Rev. & Tax. Code § 19301 (authorizing refunds only for "overpayment of any liability imposed" under the income tax law or corporation franchise tax law; not expressly providing for any other relief to taxpayers).

Mr. Hyatt's constitutional claims in this case do not assert that "the tax computed and assessed is void." Nor does he claim that California's statutory

---

*Barclays Bank PLC v. Franchise Tax Bd. of California*, 512 U.S. 298 (1994) (where the alleged unconstitutional actions were the tax law, not the conduct of the tax agency in carrying out the tax law).

procedures for assessing and collecting its state income tax are facially

unconstitutional. His claim in this case is that defendants have disregarded those

procedures as applied to him in violation of the Due Process and Equal Protection

Clauses of the Fourteenth Amendment to the United States Constitution. Given

the language of Section 19382, it is at best highly uncertain whether such claims

can be raised in a tax refund action under that statute.

The distinction that Mr. Hyatt urges is consistent with this Court's decision

in *Jerron West, Inc. v. State of California SBE*, 129 F.3d 1334 (9th Cir. 1997).

That case involved a claim for refund of California sales taxes, not California's

income tax. The statute allowing a taxpayer to file an action for sales tax refund

(Cal. Rev. & Tax. Code § 6933) does not contain the "void" language as is

contained in Section 19382, but rather has no such limitation. This Court in *Jerron*

relied entirely on the fact that the plain language of the sales-tax refund provision

did not in any way limit the scope of a sales-tax refund action, but "merely states

that '[e]very claim shall be in writing and shall state the specific grounds upon

which the claim is founded.'" *Id.* at 1339.

In contrast to the unrestricted language in the sales tax statute addressed by

this Court in *Jerron*, the plain language of Section 19382, expressly limits the

claims that may be made in an action for an income tax refund to claims "that the

tax computed and assessed is void in whole or in part." Mr. Hyatt is not arguing here that a tax assessment is void. *See* Black's Law Dictionary 1568 (7th ed. 2009) (defining "void" as follows: "Of no legal effect; null. The distinction between void and voidable is often of great practical importance. Whenever technical accuracy is required, void can be properly applied only to those provisions that are of no effect whatsoever—those that are an absolute nullity.").

As a result, it is not remotely "plain" that the remedy authorized by Section 19382 provision can be used by Mr. Hyatt to raise the constitutional claims which are the basis of this federal lawsuit.

## 2. Pursuing a refund action under Section 19382 would not be speedy.

In no sense can Section 19382 give Mr. Hyatt the "speedy" constitutional remedy required under the TIA. In concluding otherwise, the district court noted that a refund action can be filed just six months after paying the tax. 1 ER 5. But that is very uncertain, particularly in view of the history in this case. And while six months may provide taxpayers in other contexts with a "speedy" remedy in regard to asserting a constitutional claim, that six-month schedule is beside the point here given the 22-year delay in the pending administrative challenge.

Here, the Section 19382 process must be viewed in the context of the delay Mr. Hyatt has already faced in attempting preserve and assert his rights under

Section 19381. Requiring Mr. Hyatt to start afresh under Section 19382, including a new administrative proceeding with the FTB, would only compound that delay, further exacerbating the due process violation that underlies his federal complaint.

Filing a refund suit would also return Mr. Hyatt to the FTB and its administrative process, which has already delayed this case for decades. Before filing a state-court suit for a tax refund, a taxpayer must present a claim for refund in writing to the FTB. Cal. Rev. & Tax. Code § 19322; *see Wertin v. Franchise Tax Bd.*, 68 Cal. App. 4th 961, 977 (1998) ("the purpose of the statute is to put the board on notice of a claim"). The FTB then has an opportunity to correct any mistakes. *See Atari, Inc. v. State Bd. of Equalization*, 170 Cal. App. 3d 665, 673 (1985). This claim for a refund is another administrative process that must be exhausted. The pending administrative process is 22 years old, and ongoing.

If the FTB commences an investigation, upon Mr. Hyatt requesting a refund, and such investigation is ongoing when the six-month mark is reached, Mr. Hyatt would be at his peril if he proceeds with filing a state-court refund action. *See Barnes v. State Bd. of Equalization,* 118 Cal. App. 3d 994, 1001 (1981) (dismissal based on lack of jurisdiction of refund action and constitutional challenges to the tax assessment affirmed because the taxpayer failed to exhaust administrative remedies with the FTB).

In sum, Mr. Hyatt cannot obtain relief in state court through the refund process until he again exhausts his administrative remedies. *See* Cal. Rev. & Tax. Code §§19382, 19384, 19385. There is no reason to believe the FTB would proceed quickly and efficiently with a whole new administrative remedy if a refund claim were to be commenced by Mr. Hyatt. Indeed, there is every reason to believe it will not do so based upon the decades-long history of this case.

**F.     The district court's order also cannot be sustained based on comity.**

Defendants argued in the district court that the comity doctrine requires dismissal of this action, even if the TIA does not. The district court did not address this argument. We only note here that the comity argument against federal jurisdiction fails for the same reason that the TIA argument fails.

Just as with the TIA, comity is never a basis for dismissal where, as here, the plaintiff has no adequate state-court remedy. The Supreme Court has held that "[w]e discern no significant difference, for purposes of the principles recognized in this case, between remedies which are 'plain, adequate, and complete,' as that phrase has been used in articulating the doctrine of equitable restraint, and those which are 'plain, speedy and efficient,' within the meaning of § 1341." *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 110, 116, n. 8 (1981) (holding that "taxpayers must seek protection of their federal rights by state

remedies *provided, of course, that those remedies are plain, adequate and complete*") (emphasis added); *see also Chippewa Trading Co. v. Cox*, 365 F.3d 538, 542 (6th Cir. 2004) (holding the same); *Hamer v. Anderson*, 594 F. Supp. 561, 565, n. 4 (N.D. Il. 1984) (holding the same).

This principle defeats a comity argument because, as set forth in the TIA section above, Mr. Hyatt does not have a "plain, adequate or complete" remedy in state court for his constitutional claims. Dismissal on grounds of comity would therefore be unjustified.[11]

Additionally, this Court has held that the breadth of the comity doctrine is not unlimited in the state tax administration context and will not stand in the way of a federal court hearing an action seeking to prevent violation of a fundamental constitutional guaranty. *See Winn v. Killian,* 307 F.3d 1011, 1019 (9th Cir. 2002). There, the court distinguished *Fair Assessment* and rejected arguments for dismissal under both the TIA and the comity doctrine finding the case would not "chill the activities of Arizona tax collectors." *Id.* at 1020.

---

[11] Comity would be particularly inappropriate here as it would effectively eviscerate the unique right to defer the tax payment granted to non-residents under Section 19381. Through that process, the California Legislature demonstrated that it wanted to act with respect and deference to its sister states and their residents by requiring a court adjudication before requiring the payment of the tax.

Here too there will be no wide ranging effect on California's treasury or any precedent that will cause a ripple effect on California's state tax process. This case does not challenge California's tax process and poses no disruption in California's tax system or revenue collection. This suit challenges only the application of the tax process as unfairly and uniquely applied to Mr. Hyatt and is based on the extreme facts directed only at Mr. Hyatt.

Comity therefore does not provide a basis for confirming the decision of the district court.

## CONCLUSION

The State has now delayed its effort to collect Mr. Hyatt's taxes for 22 years. Because of the lost evidence that has resulted, Mr. Hyatt can no longer receive a fair adjudication, consistent with due process clause, as to whether he moved to Nevada in late 1991, as he has asserted for over 22 years, or, as the State asserts, he moved in early 1992. The State's unconstitutional behavior is compounded by its discriminatory, religious-based animus toward Mr. Hyatt and its intent to "get" Mr. Hyatt.

Mr. Hyatt, now 77, has a right to bring this unconstitutional behavior to an end. Section 19381 does not give him a "plain, speedy and efficient" remedy for his due process and equal protection claims while allowing him to continue with

and exhaust his rights in the pending administrative proceeding.  While not applicable here, Section 19382 also does not provide Mr. Hyatt a "plain, speedy and efficient" remedy for his constitutional claims.  The TIA is therefore no bar to federal jurisdiction.  The district court's judgment should be reversed and this matter remanded for adjudication on the merits of Mr. Hyatt's due process and equal protection claims.

Respectfully submitted this 29th day of June 2015.

PERKINS COIE LLP

By: *s/ Donald J. Kula*
　　　Donald J. Kula
　　　1888 Century Park E., Suite 1700
　　　Los Angeles, CA 90067-1721
　　　Telephone: 310.788.9900
　　　Facsimile: 310.788.3399

　　　Erwin Chemerinsky, Esq.
　　　EChemerinsky@law.uci.edu
　　　UC IRVINE SCHOOL OF LAW
　　　401 E. Peltason Drive, Suite 1000
　　　Irvine, CA 92697-8000
　　　Telephone: 949.824.8814
　　　Facsimile: 949.824.7336

　　　Malcolm Segal, Bar No. 075481
　　　MSegal@segal-pc.com
　　　SEGAL & ASSOCIATES, PC
　　　400 Capitol Mall, Suite 2550
　　　Sacramento, CA 95814
　　　Telephone: 916.441.0886
　　　Facsimile: 916.475.1231

　　　Attorneys for Appellant
　　　Gilbert P. Hyatt

CERTIFICATE OF COMPLIANCE
PURSUANT TO FED. R. APP. P. 32(a)(7)(C) AND
NINTH CIRCUIT RULE 32-1 FOR CASE NUMBER 15-15296

I certify that:

1.  Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached Opening Brief of Appellant is:

Proportionately spaced, has a typeface of 14 points or more and contains 9,596 words (in cases that do not involve a cross-appeal, opening and answering briefs must not exceed 14,000 words and reply briefs must not exceed 7,000 words; in cases with a cross-appeal, the appellants' opening brief and response/reply brief must not exceed 14,000 words, the appellee's principal/response brief must not exceed 16,500 words, and the appellee's reply brief must not exceed 7,000 words).

DATED this 29th day of June, 2015.


PERKINS COIE LLP


By  *s/ Donald J. Kula*

Attorneys for Appellant
Gilbert P. Hyatt

## STATEMENT OF RELATED CASES

Appellant Gilbert P. Hyatt is unaware of any related cases, within the meaning of Ninth Circuit Rule 28-2.6(c).

# ADDENDUM

## TABLE OF CONTENTS TO ADDENDUM

28 U.S.C. § 1341 ……………………………………………………… 2

Cal. Rev. & Tax. Code § 19381 ……………………………………… 3

Selected Legislative History of 1955 Amendment of

Cal. Rev. & Tax. Code § 19381 ……………………………………… 4

Cal. Rev. & Tax. Code § 19382 ……………………………………… 7

Westlaw

28 U.S.C.A. § 1341                                                        Page 1

**C**

**Effective:[See Text Amendments]**

United States Code Annotated Currentness
    Title 28. Judiciary and Judicial Procedure (Refs & Annos)
        Part IV. Jurisdiction and Venue (Refs & Annos)
            Chapter 85. District Courts; Jurisdiction (Refs & Annos)
                → → **§ 1341. Taxes by States**

The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

CREDIT(S)

(June 25, 1948, c. 646, 62 Stat. 932.)

Current through P.L. 114-9 approved 4-7-2015

Westlaw. (C) 2015 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.



**c**

**Effective:[See Text Amendments]**

West's Annotated California Codes Currentness
  Revenue and Taxation Code (Refs & Annos)
    Division 2. Other Taxes (Refs & Annos)
      Part 10.2. Administration of Franchise and Income Tax Laws (Refs & Annos)
        Chapter 6. Overpayments and Refunds (Refs & Annos)
          Article 3. Suit for Refund (Refs & Annos)
➡➡ **§ 19381. Equitable process against assessment or collection; action to determine residence; stay of tax based upon residence**

No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action, or proceeding in any court against this state or against any officer of this state to prevent or enjoin the assessment or collection of any tax under this part; provided, however, that any individual after protesting a notice or notices of deficiency assessment issued because of his or her alleged residence in this state and after appealing from the action of the Franchise Tax Board to the State Board of Equalization, may within 60 days after the action of the State Board of Equalization becomes final commence an action, on the grounds set forth in his or her protest, in the Superior Court of the County of Sacramento, in the County of Los Angeles or in the City and County of San Francisco against the Franchise Tax Board to determine the fact of his or her residence in this state during the year or years set forth in the notice or notices of deficiency assessment. No tax based solely upon the residence of such an individual shall be collected from that individual until 60 days after the action of the State Board of Equalization becomes final and, if he or she commences an action pursuant to this section, during the pendency of the action, other than by way of or under the jeopardy assessment provisions of this part.

CREDIT(S)

(Added by Stats.1993, c. 31 (S.B.3), § 26, eff. June 16, 1993, operative Jan. 1, 1994.)

Current with urgency legislation through Ch. 9 of 2015 Reg.Sess.

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

RALPH N. KLEPS
  LEGISLATIVE COUNSEL
CHARLES W. JOHNSON
  CHIEF DEPUTY
ANGUS C. MORRISON
J. D. STRAUSS
  PRINCIPAL DEPUTIES
OWEN K. KUNS
  DEPUTY IN CHARGE
  LOS ANGELES OFFICE

LAWRENCE G. ALLYN
TERRY L. BAUM
HARRIETT R. BUHLER
BARBARA C. CALAIS
VIRGINIA COKER
ROBLEY E. GEORGE
DONALD L. GILMOUR
J. GOULD
WILLIAM D. HEEKIN
GEORGE H. MURPHY
JOSEPH W. PAULUCCI
EDWARD K. PURCELL
RAY H. WHITAKER
  DEPUTIES



**STATE OF CALIFORNIA**

## Office of Legislative Counsel

3021 STATE CAPITOL, SACRAMENTO 14
311 STATE BUILDING, LOS ANGELES 12

June 23, 1955

REPORT ON ASSEMBLY BILL NO. 1164.    PATTEE.

SUMMARY:        Amends Sec. 19081, R. & T.C., re residence
      for personal income tax purposes.

            Permits person  protesting deficiency
      assessment issued on ground of residence in
      California to commence court action against
      Franchise Tax Board, after appeal from action
      of latter to State Board of Equalization, on
      grounds set forth in protest to determine fact
      of residence here in year or years in question.

            Prohibits collection of tax from such
      person based solely on residence until expiration
      of 60 days after action of State Board of Equali-
      zation becomes final  or, if he files action as
      permitted, during the pendency of the action,
      other than under jeopardy assessment.

FORM:    Approved.        TITLE:   Approved.

CONSTITUTIONALITY:    Approved.

                    Ralph N. Kleps
                    Legislative Counsel

                    By J. Gould
                    Deputy

JG:bc

PE - 2

# STATE OF CALIFORNIA

## Inter-Departmental Communication

To:
Honorable Goodin J. Knight
Governor of California
State Capitol
Sacramento, California

Date:    June 20, 1955

File No.

Subject:
Assembly Bill No. 1164

From:  **Office of The Attorney General**
Department of Justice

Irving H. Perluss
Assistant Attorney General

Assembly Bill No. 1164 amends Section 19081 of the Revenue and Taxation Code (Personal Income Tax Law) to provide for a change in and exception to one of the basic tax policies of this State for the benefit of a limited group of taxpayers. In effect, this bill will permit an individual who claims he is a non-resident of this state to delay making any payment of personal income tax until after the completion of an action for a declaratory judgment on this matter, while a person claiming invalidity of the tax for any other reason must first pay the tax and then sue for a refund.

The policy which has long been followed in this state is that in order to obtain a judicial determination the taxpayer first must pay his tax, file a claim for refund and, if his claim be denied, thereafter sue for recovery of the tax in court.  This policy is expressed in Section 15 of Article XIII of the California Constitution as to taxes levied pursuant to that article and also has been expressed as to sales and use tax (Revenue and Taxation Code, Section 6931), motor vehicle fuel license tax (Revenue and Taxation Code, Section 8146), use fuel tax (Revenue and Taxation Code, Section 9171), motor vehicle transportation license tax (Revenue and Taxation Code, Section 10276), private car tax (Revenue and Taxation Code, Section 11571), personal income tax (Revenue and Taxation Code, Section 19081), bank and corporation tax (Revenue and Taxation Code, Section 26101), alcoholic beverage excise tax (Business and Professions Code, Section 24611), and the unemployment insurance tax (Unemployment Insurance Code, Section 1182).

The requirement that a taxpayer pay his tax before going to court was held constitutional in the case of Modern Barber Colleges, Inc. v. California Employment Stabilization Commission, 31 Cal. 2d 720, where the court said with respect to the policy involved at page 731:

LEGISLATIVE INTENT SERVICE     (800) 666-1917

PE - 3

Hon. Goodwin J. Knight        - 2 -              June 20, 1955

A. B. No. 1164

"The fear that persistent interference with the
collection of public revenues, for whatever reason,
will destroy the effectiveness of government has
been expressed in many judicial opinions. (See
People v. Skinner, supra (18 Cal. 2d 349, 355 (115
P. 2d 488, 149 A. L. R. 299).) As was said by Mr.
Justice Field in Dows v. City of Chicago, 11 Wall.
(78 U. S.) 108, 110 (20 L. Ed. 65), 'Any delay in
the proceedings of the officer, upon whom the duty
is devolved of collecting the taxes, may derange
the operations of government, and thereby cause
serious detriment to the public.' This policy is
carried out in article XIII, section 15, of our
Constitution, applying to nearly all of the important
state taxes, and again in section 45.11(d) of the
Unemployment Insurance Act, which repeats the con-
stitutional prohibition against mandamus."

The cases of Louis Eckert Brewing Co. v. Unemployment Reserves
Commission, 47 Cal. App. 2d 844 (unemployment insurance tax),
and Casey v. Bonelli, 93 Cal. App. 2d 253 (sales tax), dealt
directly with persons who sought a declaratory judgment prior
to the payment of their tax and held such actions within the
prohibition of the statutes above cited.

Because Assembly Bills Nos. 1164 and 1165 would operate
to give a privilege to a small group of taxpayers under one tax
statute, it would seem that apart from the undesirability of an
exception from the basic tax policy of this State, there would be
discrimination in favor of such taxpayers and against all other
taxpayers under all the major taxing statutes of this State.

We believe this to be undesirable legislation.

*Ewing H. Herlung*

IHP-LM

PE - 4



**c**

**Effective:[See Text Amendments]**

West's Annotated California Codes Currentness
   Revenue and Taxation Code (Refs & Annos)
     Division 2. Other Taxes (Refs & Annos)
       Part 10.2. Administration of Franchise and Income Tax Laws (Refs & Annos)
         Chapter 6. Overpayments and Refunds (Refs & Annos)
           Article 3. Suit for Refund (Refs & Annos)
             **§ 19382. Right of action; void tax**

Except as provided in Section 19385, after payment of the tax and denial by the Franchise Tax Board of a claim for refund, any taxpayer claiming that the tax computed and assessed is void in whole or in part may bring an action, upon the grounds set forth in that claim for refund, against the Franchise Tax Board for the recovery of the whole or any part of the amount paid.

CREDIT(S)

(Added by Stats.1993, c. 31 (S.B.3), § 26, eff. June 16, 1993, operative Jan. 1, 1994.)

Current with urgency legislation through Ch. 9 of 2015 Reg.Sess.

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

CERTIFICATE OF SERVICE

U.S. Court of Appeals Docket Number(s):  15-15296

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on June 29, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature:    s/ Yolanda Mendez