**No. 15-15296**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

GILBERT P. HYATT,

*Plaintiff-Appellant,*

v.

DIANE L. HARKEY, in her official capacity as California State Board of Equalization member; JEROME E. HORTON, in his official capacity as California Franchise Tax Board member and California State Board of Equalization member; MICHAEL COHEN, in his official capacity as California Franchise Tax Board member; BETTY T. YEE, in her official capacity as California Franchise Tax Board member and California State Board of Equalization member; GEORGE RUNNER, in his official capacity as California State Board of Equalization member; FIONA MA, in her official capacity as California State Board of Equalization member,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of California
Case No. 2:14-cv-00849-GEB-DAD (Hon. Garland E. Burrell, Jr.)

APPELLANT GILBERT P. HYATT'S
EXCERPTS OF RECORD

VOLUME 1 of 4

Donald J. Kula, Bar No. 144342
DKula@perkinscoie.com
Oliver M. Gold, Bar No. 279033
OGold@perkinscoie.com
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA  90067-1721
Telephone:  310.788.9900
Facsimile:  310.788.3399

Erwin Chemerinsky
EChemerinsky@law.uci.edu
UC IRVINE SCHOOL OF LAW
401 E. Peltason Drive, Suite 1000
Irvine, CA  92697-8000
Telephone:  949.824.8814
Facsimile:  949.824.7336

Malcolm Segal, Bar No. 075481
MSegal@segal-pc.com
SEGAL & ASSOCIATES, PC
400 Capitol Mall, Suite 2550
Sacramento, CA  95814
Telephone:  916.441.0886
Facsimile:  916.475.1231

Attorneys for Appellant Gilbert P. Hyatt

TABLE OF CONTENTS

## Volume 1

|  |  | Page |
|---|---|---|
| 02/10/2015 | [Doc. No. 36] Judgment .................................... | 1 |
| 02/10/2015 | [Doc. No. 35] Order Granting Defendants' Motion to Dismiss for Lack of Jurisdiction ............................... | 2 |

## Volume 2

| 02/18/2015 | [Doc. No. 37] Notice of Appeal .............................. | 15 |
|---|---|---|
| 08/25/2014 | [Doc. No. 22-1] Declaration of Eric J. Coffill in Support of Plaintiff Gilbert P. Hyatt's Consolidated Opposition to Defendants' Respective Motions to Dismiss ............... | 17 |
| 08/25/2014 | [Doc. No. 22-2] Declaration of Donald J. Kula in Support of Plaintiff Gilbert P. Hyatt's Consolidated Opposition to Defendants' Respective Motions to Dismiss ................ | 55 |
| 08/25/2014 | [Doc. No. 23 - 23-2] Request for Judicial Notice in Support of Plaintiff's Consolidated Opposition to Defendants' Respective Motions to Dismiss ............... | 64 |

## Volume 3

| 08/25/2014 | (Continued) [Doc. No. 23 - 23-2] Request for Judicial Notice in Support of Plaintiff's Consolidated Opposition to Defendants' Respective Motions to Dismiss ............ | 306 |
|---|---|---|
| 08/25/2014 | [Doc. No. 24] Plaintiff's Objections to Declaration of Robert W. Dunn in Support of California Franchise Tax Board Members Defendants' Motions to Dismiss ......... | 505 |

# TABLE OF CONTENTS

## Volume 4

| Date | Document | Page |
|---|---|---|
| 09/26/2014 | [Doc. No. 25] Notice of Decision from Nevada Supreme Court …..………………………………………………… | 556 |
| 12/03/2014 | [Doc. No. 30] Plaintiff's Supplemental Notice of Decision from Nevada Supreme Court …………………………… | 631 |
| 12/03/2014 | [Doc. No. 31] Notice of Errata Re Plaintiff's Supplemental Notice of Decision from Nevada Supreme Court ……… | 635 |
| 04/04/2014 | [Doc. No. 2] Complaint for Injunctive Relief Under 42 U.S.C. § 1983 ……………………………………………… | 738 |
| | Case Docket ……………………….…………………… | 784 |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

                                                   **JUDGMENT IN A CIVIL CASE**

**GILBERT P. HYATT,**

                                                   CASE NO: **2:14–CV–00849–GEB–DAD**

        v.

**JOHN CHIANG, ET AL.,**

---

**XX** –– **Decision by the Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

    IT IS ORDERED AND ADJUDGED

        **THAT JUDGMENT IS HEREBY ENTERED IN ACCORDANCE WITH THE COURT'S ORDER FILED ON 2/10/15**

                                                  **Marianne Matherly**
                                                  Clerk of Court

ENTERED: **February 10, 2015**

                                    by: /s/ A. Meuleman
                                               Deputy Clerk

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERT P. HYATT,<br><br>        Plaintiff,<br><br>  v.<br><br>JOHN CHIANG, JEROME E. HORTON, and MICHAEL COHEN, CALIFORNIA FRANCHISE TAX BOARD MEMBERS; BETTY T. YEE, GEORGE RUNNER, MICHELLE STEEL, JEROME E. HORTON, and JOHN CHIANG, CALIFORNIA STATE BOARD OF EQUALIZATION MEMBERS; and DOES 1 through 20,<br><br>        Defendants. | No. 2:14-CV-00849-GEB-DAD<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF JURISDICTION** |

       Plaintiff asserts in his Complaint that the manner in which Defendants are processing his California administrative tax appeal violates his federal constitutional rights under the due process and equal protection clauses, and seeks an injunction "forbidding Defendants. . . from continuing the investigation and administrative proceedings against" him and "forbidding Defendants . . . from continuing to assess or threaten to assess [Plaintiff], or collect or threaten to collect from [Plaintiff], taxes, penalties or interest." (Compl. Prayer ¶¶ 1-2, ECF No. 2.)

       Each defendant seeks dismissal of the Complaint arguing, <u>inter alia</u>, that it should be dismissed with prejudice

1

for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1). Specifically Defendants argue the federal Tax Injunction Act ("TIA") prevents Plaintiff from challenging his California residency-based tax assessment in federal court.

The TIA prescribes: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.

## I.   FACTUAL BACKGROUND

The following allegations in the Complaint concern the pending dismissal motions. Plaintiff Gilbert Hyatt moved from California to Nevada in 1991. (Compl. ¶ 2.) In 1993, the California Franchise Tax Board ("FTB") commenced an audit to determine whether Plaintiff owed additional California income taxes for the 1991 tax year. (Id.) The FTB initiated a second audit in 1996 to determine whether Plaintiff owed additional California income taxes for the 1992 tax year. (Id.) "The FTB asserts [Plaintiff] . . . became a Nevada resident on April 3, 1992" and owes the following unpaid California income taxes: $1.8 million for the 1991 tax year and $5.6 million for the 1992 tax year. (Id. ¶¶ 11, 21.) For the last six years, Plaintiff's administrative appeal has been pending before the California State Board of Equalization ("SBE"). (Id. ¶ 3.) Neither the 1991 nor 1992 audit has concluded. (Id. ¶ 2.) Plaintiff alleges "the delays . . . fall squarely and primarily at the feet of the FTB" and the SBE. (Id. ¶¶ 23, 26.) Plaintiff further alleges that Defendants "continue to threaten[] [him] with $55 million plus of

2

unconstitutional exactions, specifically the assessed taxes and penalties, for tax years 1991 and 1992." (Id. ¶ 8.)

## II. LEGAL STANDARD

Each dismissal motion contains a facial and factual attack on the federal court's jurisdiction under Rule 12(b)(1). "A 'facial' attack asserts that a complaint's allegations are themselves insufficient to invoke jurisdiction, while a 'factual' attack asserts that the complaint's allegations, though adequate on their face to invoke jurisdiction, are untrue." Courthouse News Serv. v. Planet, 750 F.3d 776, 780 at n.3 (9th Cir. 2014). Only the facial attacks are reached herein.

"The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014). However, "the tenant that a court must accept as true all allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

> Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.

Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).

## III. STATUTORY FRAMEWORK CONCERNING APPEAL OF A CALIFORNIA RESIDENCY-BASED TAX ASSESSMENT

Under California law, a taxpayer seeking to "prevent or enjoin the assessment or collection of" a California residency-based income tax may not file suit in state court without first exhausting the administrative remedies in California Revenue and Taxation Code. Cal. Rev. & Tax. Code § 19381.[1] Two separate administrative processes may be utilized by a taxpayer to contest a tax assessment: a postdeprivation "pay-then-protest" process or a predeprivation process. Exhaustion of either process is a prerequisite to judicial review in a California state court.

### A. Postdeprivation "Pay-Then-Protest" Process

The "pay-then-protest" process requires the challenging taxpayer to make "payment of the tax," following which a refund claim can be filed with the FTB. § 19382. If the FTB "fails to mail notice of action on [the] . . . refund claim within six months after the claim [is] filed, the taxpayer may ... bring an action [in state court] against the [FTB]. . . on the grounds set forth in the claim for the recovery of . . . [the] overpayment." § 19385. If the FTB acts on the challenger's refund claim and denies it, a taxpayer "claiming that the tax computed and assessed is void . . . may bring an action [in state court], upon the grounds set forth in that claim for refund . . . for the recovery of the . . . amount paid" plus interest. §§ 19381, 19382.

///

---

[1] Unless otherwise noted, all section references are to the California Revenue and Taxation Code.

**B.   Predeprivation Process**

A taxpayer challenging an assessment through the predeprivation process must "file with the [FTB] . . . a written protest against the proposed deficiency assessment, specifying in the protest the grounds upon which it is based." § 19041. If the protest is denied, the taxpayer may request that the FTB "reconsider the assessment of the deficiency." § 19044. The taxpayer may "appeal[] in writing from the action of the [FTB]... to [the SBE]."   § 19045. "The [SBE] . . . shall hear and determine the appeal," and an unsuccessful taxpayer may "file[] a petition for rehearing." §§ 19047-48. After rehearing before the SBE, a taxpayer may seek review in a California state court. § 19381.

A taxpayer who initially challenges a residency-based income tax assessment through the predeprivation process may elect to use the "pay-then-protest" process at any point by paying the disputed tax. § 19335.

Here, Plaintiff challenged his tax assessments using the predeprivation process and has not used the "pay-then-protest" process.

**IV.   DISCUSSION**

The TIA "limit[s] drastically federal district court jurisdiction to interfere with [the] . . . important . . . local concern" of tax collection. Ark. v. Farm Credit Servs. of Cent. Ark., 520 U.S. 821, 826 (1997). When passing the TIA, Congress "expressed . . . concern regarding the increased costs that states would bear if forced to defend the imposition of state taxes in federal, rather than state courts." May Trucking Co. v.

5

1  Or. Dep't of Transp., 388 F.3d 1261, 1266 (9th Cir. 2004)
2  (citation omitted). One of Congress' main objectives in enacting
3  the TIA was "to stop taxpayers, with the aid of a federal
4  injunction, from withholding large sums [from the states],
5  thereby disrupting state government finances." Hibbs v. Winn, 542
6  U.S. 88, 104 (2004) (citation omitted). However, the TIA's limit
7  on federal court jurisdiction has "a narrow exception." Redding
8  Ford v. Cal. State Bd. of Equalization, 722 F.2d 496, 497 (9th
9  Cir. 1983). Congress vested federal courts with jurisdiction to
10 "enjoin, suspend or restrain the assessment, levy or collection
11 of [a] tax under State law where a plain, speedy and efficient
12 remedy may [not] be had in the courts of [the] State." 28 U.S.C.
13 § 1341.
14           Defendants argue the Supreme Court has held
15 California's "pay-then-protest" process is "a plain, speedy, and
16 efficient remedy." (Not. Mot. & Mot. Dismiss ("SBE Mot.") 9:17-
17 18, ECF No. 15; FTB Mem. P. & A. ISO Mot. Dismiss ("FTB Mot.")
18 12:6-7, ECF No. 17-1 (citing Franchise Tax Bd. v. Alcan Aluminum,
19 493 U.S. 331, 338-39 (1990) ("California's refund procedures
20 constitute a plain, speedy, and efficient remedy") and Cal. v.
21 Grace Brethren Church, 457 U.S. 393, 417 (1982) ("Because the
22 appellees could seek a refund of their state unemployment
23 insurance taxes, and thereby obtain state judicial review of
24 their constitutional claims, we hold that their remedy under
25 state law was 'plain, speedy, and efficient' within the meaning
26 of the [TIA], and consequently, that the District Court had no
27 jurisdiction to issue injunctive or declaratory relief.")).
28           "It has consistently been held . . . that the refund

6

1 action provided by California Personal Income Tax law is a
2 'plain, speedy and efficient remedy' such as to invoke the
3 restraints of [the TIA]." Arnoff v. Franchise Tax Bd. of the
4 State of Cal., 348 F.2d 9, 11 (9th Cir. 1965). As the Supreme
5 Court stated in Alcan Aluminum Ltd., 493 U.S. at 338: "To the
6 extent they are available, California's refund procedures
7 constitute a plain, speedy, and efficient remedy."

8 Plaintiff rejoins even if the "pay-then-protest"
9 process is "plain, speedy and efficient" on its face, the process
10 will not provide him a plain, speedy and efficient remedy.
11 (Pl.'s Mem. P. & A. ISO Consolid. Opp'n Defs.' MTD ("Opp'n")
12 15:24-16:3, ECF No. 22.)

13 **A.   Bait and Switch**

14 Plaintiff contends that the precedent on which
15 Defendants rely is distinguishable from his situation because
16 "[n]one of those cases . . . involves a . . . [tax] assessment in
17 which the taxpayer . . . followed the prepayment administrative
18 process," and California cannot now force him to "forgo" the
19 predeprivation administrative statutory option he chose by
20 requiring him to use the "pay-then-protest" process before he can
21 "pursue a constitutional claim." (Opp'n 25:21-23; 26:1-3.)
22 Plaintiff argues forcing him to change from the predeprivation
23 process to the "pay-then-protest" process amounts to a "bait and
24 switch" tactic, which the Supreme Court held illegal in Reich v.
25 Collins, 513 U.S. 106 (1994) and Newsweek v. Florida Dep't of
26 Revenue, 522 U.S. 442 (1998). (Opp'n 23:10-12.)

27 Defendants reply that Plaintiff has not been subjected
28 to the "bait and switch" tactic involved in Reich and Newsweek

7

1  because "this is not a case where [California's] . . . statutory
2  scheme has changed midstream." (FTB Reply ISO Mot. Dismiss "FTB
3  Reply" 6:5, ECF No. 27). Defendants contend both Reich and
4  Newsweek "concern[:] (1) taxpayers who had paid their taxes, (2)
5  a subsequent finding that the tax was unconstitutional, [and] (3)
6  efforts by the state courts after the tax was paid and found
7  unconstitutional to restrict the application of a previously
8  generally applicable refund statute." (SBE Reply ISO Mot. Dismiss
9  ("SBE Reply") 4:8-12, ECF No. 26.)

10  In Reich and Newsweek, the taxpayer challengers paid
11  the assessed taxes and then challenged the tax through a refund
12  action; however, after payment, the states changed their laws to
13  prevent the taxpayers from seeking refunds for the already paid
14  taxes. The Supreme Court held that states are not permitted to
15  "reconfigure [their] scheme[s], unfairly, in midcourse—to 'bait
16  and switch'" taxpayers. Reich, 513 U.S. at 111. The Supreme Court
17  further stated: "While [states] may be free to require taxpayers
18  to litigate first and pay [the tax] later, due process prevents
19  [them] from applying this requirement to taxpayers . . . who
20  reasonably relied on the apparent availability of a postpayment
21  refund when paying the [disputed] tax." Newsweek, 522 U.S. at
22  445.

23  Plaintiff has not shown that the reasoning of Reich and
24  Newsweek supports his jurisdiction argument; these decisions
25  concern taxpayers who challenged their tax assessment after
26  making payment and then were prevented from seeking a refund by
27  intervening changes in state law.
28  ///

8

**B. Access to a "Speedy" Remedy**

Plaintiff also rejoins the "pay-then-protest" process does not provide him a "speedy" remedy because it "would return [him] to the FTB and its administrative process" before he is able to seek relief in the state court. He contends that if the FTB's investigation lasts longer than six months, and Plaintiff elects to proceed with a state-court refund action [before the FTB investigation concludes], he risks having the state court find that he failed to exhaust the administrative remedies available," and refuse to consider his claims as happened to the plaintiff in Barnes v. State Bd. of Equalization, 118 Cal. App. 3d 994 (1981). (Opp'n 30:1-12.) However, the plaintiff in Barnes did not file suit in state court until after the SBE denied his claim, and the court did not find his claim waived because the plaintiff filed suit in state court before the administrative process had closed. 118 Cal. App. 3d at 1002 (stating that "the board properly refused and denied the [taxpayer's] claim. . . . Plaintiff then approached the superior court") (emphasis added).

Defendants reply that "the longest [Plaintiff] . . . would have to wait [in order to bring his claim in state court] after switching to the 'pay-then-protest' [process] . . . would be six months," and a six month waiting period does not call into question whether the remedy is speedy. (SBE Reply 8:15-17.)

"Speedy" is a "relative concept." Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503, 518 (1981). A state remedy is "'speedy' if it does not entail a significantly greater delay than a corresponding federal procedure." U.S. West, Inc. v. Nelson, 146 F.3d 718, 725 (9th Cir. 1998) (interpreting an identical

9

1  exception to 28 U.S.C. § 1342 (public utility rate-payer suits)).
2  "The state remedy need not be the best of all possible remedies,
3  . . . . [and] [a]lthough delay in reviewing a taxpayer's claim
4  may be troubling, . . . nowhere in the [TIA] . . . did Congress
5  suggest that the remedy must be the speediest." Colonial Pipeline
6  Co. v. Morgan, 474 F.3d 211, 218-19 (6th Cir. 2007).

7        The "pay-then-protest" process requires a taxpayer to
8  file a claim with the FTB "for refund" and "[i]f the FTB fails to
9  mail notice of an action . . . within six months . . . , the
10 taxpayer may . . . bring an action against the FTB" in state
11 court. §§ 19382, 19385.

12       Plaintiff has not shown how, if he elected to use the
13 "pay-then-protest" process, its timetable "entails a
14 significantly greater delay than a corresponding federal
15 procedure." U.S. West, Inc., 146 F.3d at 725. Therefore,
16 Plaintiff does not prevail on this portion of his jurisdiction
17 argument.

18     **C.  Uncertainty**

19       Further, Plaintiff argues the federal court has
20 jurisdiction over his constitutional claims because it is
21 uncertain whether these claims could be presented through the
22 "pay-then-protest" process, and this uncertainty prevents
23 California's state court remedy from being "plain," as the term
24 is used in the TIA. (Opp'n 14:19-24.)

25       "'[U]ncertainty' surrounding a state-court remedy"
26 prevents it from being plain and "lifts the [TIA's] bar to
27 federal-court jurisdiction." Rosewell, 450 U.S. at 516. The
28 Supreme Court "has not hesitated to declare a state refund

provision inadequate to bar federal relief if the taxpayer's opportunity to raise his constitutional claims in the state proceedings is uncertain." Grace Brethren Church, 457 U.S. at 414 n.31.

### 1. Uncertainty Whether A Claim To Enjoin A Tax Is A Claim To Void A Tax

Plaintiff argues "[b]y its terms. . . [the "pay-then-protest" process only] permits a state-court action for a 'taxpayer claiming that the tax computed and assessed is void,'" and it is unclear whether Plaintiff's attempt to enjoin collection of the taxes assessed against him is an action to void the taxes. (Opp'n 26:20-21) (emphasis added).

Defendants reply that Plaintiff plainly seeks to void the taxes assessed against him since Plaintiff alleges the tax assessments are unconstitutional as applied to him and "a tax assessment that is unconstitutional as applied is every bit as 'void' as an assessment that is unconstitutional on its face." (FTB Reply 8:16-17.)

It is evident that Plaintiff seeks to void the tax or taxes assessed against him. Therefore, Plaintiff has not met his burden of demonstrating that the "pay-then-protest" process fails to provide him a plain remedy.

### 2. Raising Claims in State Court That Were Not Presented to the SBE

Plaintiff also argues it is uncertain whether the "pay-then-protest" process permits him to raise in state court the constitutional claims he alleges in his federal Complaint because he did present those claims to the SBE, and the Revenue and

11

1  Taxation Code prevents a taxpayer from raising claims in state
2  court that were not included in an SBE appeal. (Opp'n 29:4-16.)
3         Defendants rejoin that even assuming Plaintiff is
4  correct, the TIA still prevents the federal court from exercising
5  jurisdiction over Plaintiff's constitutional claims where a
6  plain, speedy, and efficient remedy was available in state court
7  "at some time" even if the chance to utilize it has been lost
8  because of the taxpayer's own action or inaction. (SBE Reply 2:2-
9  4; 3:1-3.)
10        Application of the TIA "depends on whether a state
11 remedy was available to the taxpayer[,] and the taxpayer's
12 failure . . . to use the remedy . . . does not negate the
13 existence of the remedy." Sacks Bros. Loan Co. Inc. v.
14 Cunningham, 578 F.2d 172, 175 (7th Cir. 1978). "A number of
15 courts have . . . unanimously concluded that failure to utilize a
16 remedy does not render that remedy insufficient under [the TIA]."
17 Aluminum Co. of Am. v. Dep't of Treasury of State of Mich., 522
18 F.2d 1120, 1125 (6th Cir. 1975). When a plaintiff's own actions
19 foreclose an otherwise "plain, speedy and efficient remedy," the
20 TIA precludes federal court jurisdiction over the claims. See
21 Jerron West, Inc. v. State of Cal., State Bd. of Equalization,
22 129 F.3d 1334, 1338 (9th Cir. 1997)(declining to exercise
23 jurisdiction in the face of an "as applied" challenge to TIA's
24 application because "[t]he Taxpayers' failure . . . d[id] not
25 render the[] state remedies ineffective"); Wood v. Sargeant, 694
26 F.2d 1159, 1160 (9th Cir. 1982) (holding an "inability to pay the
27 tax [to initiate a refund action] does not avoid the [TIA's]
28 jurisdictional bar"). Therefore, even if Plaintiff failed to

12

present his constitutional claims during the state administrative proceeding, that failure has not been shown to justify the federal court exercising jurisdiction over Plaintiff's constitutional claims.

## V. CONCLUSION

For the stated reasons, Plaintiff's Complaint is dismissed for lack of subject matter jurisdiction without leave to amend. Further, the Clerk of Court shall close this action.

Dated: February 9, 2015

*[signature]*

GARLAND E. BURRELL, JR.
Senior United States District Judge

## CERTIFICATE OF SERVICE

U.S. Court of Appeals Docket Number(s): 15-15296

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on June 29, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature:  s/ Yolanda Mendez