No. 15-15296

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

GILBERT P. HYATT,

*Plaintiff and Appellant,*

v.

DIANE L. HARKEY, *et al.*,

*Defendants and Appellees.*

---

On Appeal from the United States District Court
for the Eastern District of California
Case No. 2:14-cv-00849-GEB-DAD
The Honorable Garland E. Burrell, Jr.

---

## ANSWERING BRIEF OF APPELLEES HARKEY, HORTON, YEE, RUNNER, AND MA IN THEIR OFFICIAL CAPACITY AS MEMBERS OF THE CALIFORNIA STATE BOARD OF EQUALIZATION

---

James M. Wagstaffe (95535)
Michael von Loewenfeldt (178665)
Brady R. Dewar (252776)
**KERR & WAGSTAFFE LLP**
101 Mission Street, 18th Floor
San Francisco, CA 94105
Telephone: (415) 371-8500
Facsimile: (415) 371-0500
mvl@kerrwagstaffe.com

*Attorneys for Defendants and Appellees,*
DIANE L. HARKEY, JEROME E. HORTON, BETTY T. YEE, GEORGE
RUNNER and FIONA MA, in their official capacities as members of the
California State Board of Equalization

# TABLE OF CONTENTS

*Page*

I.   INTRODUCTION ...................................................................................1

II.  STATEMENT OF JURISDICTION ....................................................2

III. STATEMENT OF ISSUES PRESENTED FOR REVIEW ...........................2

IV.  FACTUAL BACKGROUND AND PROCEDURAL
     HISTORY ..........................................................................................2

     A.   CALIFORNIA'S STATUTORY PROCEDURES FOR DISPUTING
          INCOME TAX ASSESSMENTS ..................................................2

     B.   THE ONGOING DISPUTE OVER WHETHER HYATT OWES
          CALIFORNIA INCOME TAX FOR 1991 AND 1992 .....................5

     C.   THE PROCEEDINGS BELOW .................................................7

V.   SUMMARY OF ARGUMENT ....................................................8

VI.  ARGUMENT...................................................................12

     A.   STANDARD OF REVIEW .......................................................12

     B.   THE FEDERAL COURTS HAVE NO JURISDICTION TO BAR
          ASSESSMENT OR COLLECTION OF CALIFORNIA INCOME
          TAX ..............................................................................12

     C.   HYATT'S INVENTIVE ARGUMENTS PROVIDE NO BASIS FOR
          JURISDICTION OVER HIS CLAIMS...........................................15

          1.   The fact that Hyatt makes a residency challenge
               does not eliminate the TIA's jurisdictional bar ........................17

          2.   Hyatt's assertion that too much time has passed is
               irrelevant ...................................................................18

          3.   Hyatt's "uncertainty" argument is contrary to
               Ninth Circuit law....................................................20

          4.   The district court's order does not require Hyatt to
               "abandon" or "forgo" anything................................................24

i

5.      Hyatt's "bait and switch" argument is baseless .......................25

D.    ALTERNATIVELY, THE DISTRICT COURT'S JUDGMENT OF
      DISMISSAL SHOULD BE AFFIRMED BECAUSE DISMISSAL
      WAS MANDATED BY THE YOUNGER DOCTRINE ..................................29

E.    HYATT'S DUE PROCESS CLAIM FAILS IN ALL EVENTS ........................32

VII.   CONCLUSION .............................................................................34

# TABLE OF AUTHORITIES

*Pages*

## Cases

Aluminum Co. of Am. v. Dep't of Treasury of State of Mich.,
  522 F.2d 1120 (6th Cir. 1975)..................................................................18

Am. Consumer Pub. Ass'n Inc. v. Margosian
  349 F.3d 1122 (9th Cir. 2003)..................................................................30

Anderson v. Cal. Franchise Tax Board,
  2010 WL 334456 (N.D. Cal. Jan. 28, 2010) .........................................19

Aronoff v. Franchise Tax Bd.,
  348 F.2d 9 (9th Cir. 1965)........................................................................14

Barclays Bank Int'l Ltd. V. Franchise Tax Bd.,
  10 Cal. App. 4th 1742 (1992)...................................................................21

Barnes v. State Bd. of Equalization,
  118 Cal. App. 3d 994 (1981)....................................................................20

Beddoe v. U.S.,
  1993 WL 134827 (E.D. Cal. Feb. 2, 1993) ...........................................15

Cal. v. Grace Brethren Church,
  457 U.S. 393 (1982) ......................................................................... passim

Capitol Industries-EMI, Inc. v. Bennett,
  681 F.2d 1107 (9th Cir. 1982)........................................................ 20, 23

City Vending of Muskogee, Inc. v. Okla. Tax Comm'n,
  898 F.2d 122 (10th Cir. 1994)..................................................................19

Cooper v. Franchise Tax Bd.,
  670 F. Supp. 2d 282 (N.D. Cal. 1987) ...................................................22

DaimlerChrysler Corp. v. Cuno,
  547 U.S. 332 (2006) ..................................................................................12

Davis v. Michigan Dep't of Treasury,
  489 U.S. 803 (1989) ..................................................................................25

iii

Fair Assessment in Real Estate Ass'n, Inc. v. McNary
   454 U.S. 100 (1981) ..................................................................... 29, 31

Flood v. Miller,
   35 F. App'x 701 (9th Cir. 2002)...........................................................25

Franchise Tax Bd. v. Alcan Aluminum Ltd.,
   493 U.S. 331 (1989) ..................................................................... 14, 19

Franchise Tax Bd. v. Hyatt
   538 U.S. 488 (2003) ...............................................................................5

Hay v. Ind. State Bd. of Tax Comm'rs,
   181 F. Supp. 2d 961 (N.D. Ind. 2001)..................................................22

Henry v. Metro. Dade Cty.,
   329 F.2d 780 (5th Cir. 1964).................................................................19

Jerron West, Inc. v. State Bd. of Equalization,
   129 F.3d 1334 (9th Cir. 1997)........................................... 13, 14, 18, 21

Kokkonen v. Guardian Life Ins. Co. of America,
   511 U.S. 375 (1994) ..................................................................... 12, 21

Loeffler v. Target Corp.
   58 Cal.4th 1081 (2014)...........................................................................3

May Trucking Co. v. Oregon Dep't of Transp.
   2003 WL 25730507 (D. Or. Mar. 17, 2003) .......................................31

McKesson Corp. v. Div. of Alcoholic Beverages and Tobacco,
   496 U.S. 18 (1990) ....................................................................... 26, 33

Montana Rail Link, Inc. v. U.S.,
   76 F.3d 991 (9th Cir. 1996)..................................................................28

Nast v. State Bd. of Equalization,
   46 Cal. App. 4th 343 (1996)..................................................................3

Newsweek, Inc. v. Florida Dep't. of Revenue,
   522 U.S. 442 (1998) ..................................................................... 25, 27

iv

Newton v. Poindexter,
    578 F. Supp. 277 (E.D. Cal. 1984) ................................................................ 15, 22

Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.
    477 U.S. 619 (1986) ........................................................................................30

Perry v. Sniderman,
    408 U.S. 593 (1972) ........................................................................................28

Phillips v. Comm'r of Internal Revenue
    283 U.S. 589 (1931) ........................................................................................33

Quigley v. Cal. Franchise Tax Bd.,
    2000 WL 1336612 (N.D. Cal. Sept. 12, 2000).................................................17

Rasul v. Bush,
    542 U.S. 466 (2004) ........................................................................................12

Redd v. Lambert,
    522 F. Supp. 608 (N.D. Miss. 1981) ..............................................................25

Reich v. Collins,
    513 U.S. 106 (1994) ................................................................................. 25, 26

Rosewell v. LaSalle Nat. Bank,
    450 U.S. 503 (1981) ................................................................................. 13, 25

Sacks Bros. Loan Co., Inc. v. Cunningham
    578 F.2d 172 (7th Cir. 1978).............................................................. 13, 18, 24

Schroeder v. State Bd. of Equalization,
    2008 WL 2705075 (E.D. Cal. July 9, 2008) ...................................................15

Speiser v. Randall,
    357 U.S. 513 (1958) ........................................................................................28

Stone Container Corp. v. U.S.,
    229 F.3d 1345 (Fed. Cir. 2000) ......................................................................27

Tully v. Griffin, Inc.,
    429 U.S. 68 (1976) ..........................................................................................13

United Mine Workers v. Illinois State Bar Ass'n,
389 U.S. 217 (1967) ...................................................................28

Winn v. Killian,
307 F.3d 1011 (9th Cir. 2002)...................................................32

Wood v. Sargeant,
694 F.2d 1159 (9th Cir. 1982) ..................................... 14, 16

Younger v. Harris
401 U.S. 37 (1971) ............................................... 29, 30, 31

**Statutes**

28 U.S.C. § 1341 ....................................................................1, 12

Cal. Constitution, art. XIII, § 32 ...........................................3, 6

Cal. Rev. & Tax. Code § 19041 ...............................................4

Cal. Rev. & Tax. Code § 19044 ...............................................4

Cal. Rev. & Tax. Code § 19045 ...............................................4

Cal. Rev. & Tax. Code § 19335 ...............................................4

Cal. Rev. & Tax. Code § 19381 .............................................4, 25

Cal. Rev. & Tax. Code § 19382 ............................... 2, 3, 4, 32

Cal. Rev. & Tax. Code § 19385 ............................... 3, 5, 6, 16

Cal. Rev. & Tax. Code § 19391 .............................................3, 6

Cal. Rev. & Tax. Code § 19717 .............................................25

## I.     INTRODUCTION

Appellant Gilbert Hyatt ("Hyatt") asks the Court to enjoin the State of California from assessing or collecting California state income taxes from him. Hyatt does not claim that the tax laws are unconstitutional, or even ask the Court to find that he does not owe the taxes in question. Instead, Hyatt insists that the district court should have halted the ongoing state tax proceedings, and enjoined further collection of taxes, irrespective of whether he owes them, because Hyatt claims the process has taken too long.

The district court correctly held that it had no jurisdiction to hear Hyatt's claims. The Tax Injunction Act ("TIA") expressly provides that "[t]he district courts *shall not* enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341 (emphasis added). The United States Supreme Court and this Court have repeatedly and consistently held that California's state tax refund procedures are plain, speedy, and efficient within the meaning of the TIA, and thus that district courts have no jurisdiction to enjoin collection of California state taxes.

Hyatt does not cite a single case accepting any of his arguments that the court may enjoin collection of tax from him despite the TIA. The district court properly rejected each of Hyatt's attempts to avoid the TIA's jurisdictional bar.

## II.     STATEMENT OF JURISDICTION

The Appellee members of the State Board of Equalization ("SBE") agree with the statement of jurisdiction presented by Hyatt.

## III.     STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     Did the district court correctly decide that it had no jurisdiction over Hyatt's claims because California Revenue & Taxation Code section 19382 (hereinafter "Section 19382") provides taxpayers with a plain, speedy, and efficient remedy in California's state courts?

2.     In the alternative, should Hyatt's claims have been dismissed pursuant to the Younger abstention doctrine, and the principles of comity on which it is based?

3.     In the alternative, did Hyatt's claim for violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution fail to state a claim upon which relief could be granted because Hyatt's due process rights never attached, as he never paid the disputed taxes?

## IV.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.     CALIFORNIA'S STATUTORY PROCEDURES FOR DISPUTING INCOME TAX ASSESSMENTS

Like most states, California allows taxpayers to challenge a state income tax assessment by making "payment of a tax claimed to be illegal" and then filing a refund claim to "recover the tax paid, with interest, in such manner as may be

– 2 –

provided by the Legislature." Cal. Const. art. XIII, § 32. Section 19382 provides:

> Except as provided in Section 19385, after payment of the tax and denial by the Franchise Tax Board of a claim for refund, any taxpayer claiming that the tax computed and assessed is void in whole or in part may bring an action, upon the grounds set forth in that claim for refund, against the Franchise Tax Board for the recovery of the whole or any part of the amount paid.

Cal. Rev. & Tax. Code § 19382. In a state court refund action under Section 19382, the court considers the taxpayer's contentions *de novo*. Nast v. State Bd. of Equalization, 46 Cal. App. 4th 343, 348 (1996). Section 19385, in turn, provides that when a claim for refund is submitted to the Franchise Tax Board ("FTB"), the FTB *must* act on it within six months or the taxpayer may "consider the claim disallowed and bring an action against the Franchise Tax Board on the grounds set forth in the claim for the recovery of the whole or any part of the amount claimed as an overpayment." Cal. Rev. & Tax. Code § 19385. If the taxpayer is successful in such a refund action, he or she is entitled to interest on any overpayment from the date of the payment. Cal. Rev. & Tax. Code § 19391. This standard "pay-and-sue" method of challenging taxes provides for the resolution of tax disputes while allowing "the state [to] continue to collect tax revenue during litigation in order to avoid unnecessary disruption of public services that are dependent on that revenue." Loeffler v. Target Corp., 58 Cal. 4th 1081, 1101 (2014).

California also provides a potentially slower method of challenging an assessment that does not require prepayment of disputed taxes. The taxpayer may file a written tax protest with the FTB, and then, if still dissatisfied with the FTB's determination of the protest, file an administrative appeal to the SBE. Cal. Rev. & Tax. Code §§ 19041, 19044, 19045. The taxpayer does not have to appeal to the SBE to challenge the tax assessed in court. At any time, the taxpayer can exercise his right to pay the tax and pursue refund litigation in state court if his refund claim is denied. If the taxpayer does file an appeal with the SBE, he may still challenge the SBE's decision in state court after paying the tax. Id. § 19382. Or, where the sole issue is disputed residency, after completion of the administrative appeal to the SBE, the taxpayer has the additional remedy of, if he wishes, filing a declaratory relief action in state court for a determination of residency *without* paying the assessed tax. Cal. Rev. & Tax. Code § 19381 (hereinafter "Section 19381").

If a taxpayer starts the administrative protest process, but then is concerned that it is taking too long and wants to go to court, the taxpayer can still pursue the traditional "pay-and-sue" option. California Revenue and Taxation Code section 19335 provides that where the protested taxes are paid during the pendency of a protest or appeal, the proceeding is then deemed a protest or appeal from the denial of a claim for refund. Cal. Rev. & Tax. Code § 19335. As noted previously, the

taxpayer may file suit in state court if the FTB does not act on a claim for refund within six months. Cal. Rev. & Tax. Code § 19385.

### B. THE ONGOING DISPUTE OVER WHETHER HYATT OWES CALIFORNIA INCOME TAX FOR 1991 AND 1992

This case is very simple. After receiving a very valuable patent, Hyatt purported to move his residence from California to Nevada, presumably to avoid California's state income tax (Nevada has no state income tax). He claims to have changed residences in September 1991, but the FTB contends Hyatt was not a Nevada resident until April 1992. (ER 742 ¶ 11.) In August 1995, the FTB determined that Hyatt owed approximately $1.8 million in California personal income tax for the 1991 tax year. (ER 745, 753 ¶¶ 21, 40.) In September 1997, the FTB determined that Hyatt owed approximately $5.6 million in California personal income tax for the 1992 tax year. (ER 745, 754 ¶¶ 21, 43-44.)

Hyatt did not pay the assessed taxes. Instead, he filed administrative protests with the FTB claiming that he was not a California resident during the time periods for which FTB was seeking income taxes. (ER 750-51, 754 ¶¶ 32, 42, 44.)

The administrative protest process at the FTB took a long time to resolve. Hyatt alleges various reasons for the delay, while ignoring the effects of his own actions (such as suing the FTB in 1998 in Nevada for auditing him, see Franchise Tax Bd. v. Hyatt, 538 U.S. 488 (2003)). None of that matters here, however, because during the whole time period that Hyatt complains about, Hyatt had

available to him, but chose not to utilize, the speedy option of paying the disputed taxes and seeking a refund. (ER 750-51 ¶ 32.) <u>See</u> Cal. Const., art. XIII, § 32. As discussed above, if Hyatt had paid the assessed taxes and sought a refund, he would have had to wait at most six months before he could sue in state court. Cal. Rev. & Tax. Code § 19385. If Hyatt had done so and proven the taxes were not owed, he would have been entitled to collect interest on any excess taxes. Cal. Rev. & Tax. Code § 19391. Hyatt never availed himself of these remedies. (ER 750-51 ¶ 32.)

In January 2008, Hyatt appealed the FTB's decisions concerning the 1991 and 1992 tax years to the SBE. (ER 758-59 ¶ 61.) The filing of this administrative appeal constituted the SBE's first involvement in Hyatt's tax dispute. Hyatt and the FTB then began several years of lengthy briefing and evidentiary submissions before the SBE which continue to this day. While Hyatt again attempts to portray this process as delay by everyone but him, he has repeatedly requested and received lengthy extensions of time for his briefing, and he has repeatedly delayed the ability of the SBE to obtain and review evidence submitted by the FTB.[1]

---

[1]   It took Hyatt *nearly 11 months* after initiating the appeal—until December 12, 2008—to file his opening briefs. (ER 758-60 ¶¶ 61, 64.) After the FTB filed its briefs, it took Hyatt another *11 months* to file his reply briefs. (ER 760 ¶¶ 68, 69.) Then, it took Hyatt *over a year* to file supplemental briefs in response to the FTB's reply briefs. (ER 761 ¶¶ 74, 75.) These delays and extension requests by Hyatt continue to this day. While the legal issues presented in this appeal do not turn on who is responsible for the pace of the state proceedings, Hyatt's protestations are

Throughout the SBE's appeal proceedings and continuing to this day, Hyatt has chosen not to exercise his option of paying the tax under protest and proceeding swiftly to state court for a judicial review of his California tax obligations. (ER 750-51 ¶ 32.)

### C.   THE PROCEEDINGS BELOW

On April 14, 2014, Hyatt filed this action alleging that his due process and equal protection rights will be violated unless he is immunized by the federal courts from the taxes California claims he owes. Hyatt did *not* ask the district court to determine whether or not he was a California resident during the disputed period, or otherwise to determine if he owes the assessed taxes which he has avoided paying for more than 20 years. (AOB 7 ("To be clear, Hyatt does not seek a determination here on the residency issue . . . nor on the question of whether the taxes are legitimately owed . . . .").) Instead, he insisted that the administrative process has taken so long that it would now be unconstitutional to require him to prove he moved to Nevada when he says he did and why he is otherwise not subject to California income tax for the period in dispute.[2] Hyatt asked the district

---

not persuasive given his own substantial contribution to the length of the pending administrative proceeding before the SBE.

[2]    Hyatt's Opening Brief also includes arguments that his tax liability is being pursued out of personal animus by the FTB. None of those claims are substantively discussed in his brief or provide a relevant consideration under the TIA.

court to permanently enjoin the defendant California tax officials from investigating his tax obligations or seeking to collect the assessed state income taxes, penalties, or interest from him. (ER 741 ¶ 8.)

The SBE moved to dismiss the action under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that the district court lacked jurisdiction over Hyatt's claims pursuant to the TIA. Alternatively, the SBE argued that even if the TIA did not deprive the district court of jurisdiction, Hyatt's claims must be dismissed pursuant to the <u>Younger</u> abstention doctrine, and the principles of comity on which it is based. Finally, the SBE argued that Hyatt failed to state a due process claim on the ground that his due process rights never attached because he had not yet paid the disputed taxes. The FTB filed a similar motion to dismiss.

On February 10, 2015, the district court dismissed Hyatt's claims without leave to amend, ruling correctly that it lacked subject matter jurisdiction due to the TIA. (ER 2-14.) The district court's well-reasoned 13-page decision addressed and rejected each of Hyatt's attempts to avoid the TIA's clear jurisdictional bar. (<u>Id.</u>) This appeal ensued.

## V.    SUMMARY OF ARGUMENT

Both the United States Supreme Court and this Court have repeatedly and uniformly held that California's tax refund procedures provide a plain, speedy, and efficient state court remedy to individuals, like Hyatt, who seek to challenge a state

tax assessment, and thus that the TIA deprives the federal district courts of jurisdiction to enjoin the assessment or collection of California taxes. This is a matter of settled law, and Hyatt does not cite a single case reaching a different result.

Hyatt's attempts to avoid this settled rule are meritless. Hyatt makes basically three arguments as to why Section 19382 does not trigger the jurisdictional bar of the TIA. First, he insists that the numerous cases recognizing that Section 19382 is a plain, speedy, and efficient remedy can be distinguished because the taxpayers in those cases were not challenging residency determinations and had no alternative administrative remedy that did not require prepayment of the tax. Hyatt cites no case law showing that the distinction makes a difference, and it does not. Whether or not Hyatt had additional alternative remedies available, the Section 19382 remedy has always been, and remains, available to him. As a matter of settled law, that remedy is plain, speedy, and efficient within the meaning of the TIA.

Second, Hyatt claims that it would not be "speedy" for him to initiate his Section 19382 remedy now because he has chosen not to do so for so long. This argument presents a basic misunderstanding of the TIA. The question is whether the plain, speedy, and efficient remedy was made available to Hyatt. It indisputably has been available at every moment during the 20-year period, but he has chosen

not to use it. Hyatt's choice not to use a remedy does not make that remedy cease to exist.

Third, Hyatt argues that it is "uncertain" whether he is allowed to pursue his novel constitutional claims under a Section 19382 remedy because, while he is asking for the Court to order that he does not have to pay the assessed taxes, he is not arguing that the taxes are "void." Hyatt's argument is baseless; as the district court held, "[i]t is evident that Plaintiff seeks to void the tax or taxes assessed against him." (ER 12:19-20.) Hyatt clearly has the ability to bring his present theories in a state court Section 19382 action.

Unable to evade the settled law that Section 19382 provides a sufficient remedy under the TIA, Hyatt also insists that even if Section 19382 is plain, speedy, and efficient, he cannot be "forced" to use the Section 19382 remedy because he wants to pursue a more limited Section 19381 remedy so that he can avoid prepaying the disputed taxes. Hyatt insists that Section 19381 does not provide a plain, speedy, and efficient remedy.

Hyatt's Section 19381 arguments miss the point. California is required to provide *a* plain, speedy, and efficient remedy, and it does so with Section 19382. There is no requirement that every possible alternative remedy be plain, speedy, and efficient. It is thus wholly irrelevant whether the declaratory relief action provided by Section 19381 would be plain, speedy, and efficient. Nor is Hyatt

being "forced" to "give up" anything. He can choose to continue on his current path until its conclusion. Or he can choose to follow the quicker Section 19382 remedy to get to state court. This is not a "bait and switch"—all of these procedures have remained available for the entire relevant period. Hyatt's decision to utilize a procedure that he believed would be less expensive for him, but has turned out to take longer than he wanted, does not somehow confer jurisdiction on the district court to enjoin the tax proceedings against him.

In addition to the TIA bar, there are two other bases to affirm the district court's judgment. First, even if the court had jurisdiction, it should abstain from exercising it under the <u>Younger</u> abstention doctrine which prohibits federal court interference with ongoing state proceedings. That doctrine, based on well-accepted principles of comity, plainly applies to the ongoing state tax proceedings here.

Second, Hyatt's due process claim fails to state a valid theory under federal law. Under well-settled law, due process does not require a determination of tax liability before a tax is collected. Due process is satisfied so long as Hyatt can challenge the taxes after they are paid, as he plainly can under Section 19382. Because Hyatt has never paid the disputed taxes, no due process right has attached yet, and his due process claim fails as a matter of law.

## VI.  ARGUMENT

### A.  STANDARD OF REVIEW

The SBE agrees with Hyatt that the applicable standard of review for all issues on this appeal is de novo.

### B.  THE FEDERAL COURTS HAVE NO JURISDICTION TO BAR ASSESSMENT OR COLLECTION OF CALIFORNIA INCOME TAX

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." Rasul v. Bush, 542 U.S. 466, 489 (2004). The district court is presumed not to have jurisdiction, and the burden is on the plaintiff to prove that jurisdiction exists. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 n.3 (2006); Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). As the district court correctly held, Hyatt did not and could not meet his burden of establishing subject matter jurisdiction because the TIA bars federal court jurisdiction over his claims.

Federal courts are not permitted to interfere with state tax collection efforts. "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The principal purpose of the TIA was "to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." Cal. v. Grace Brethren Church, 457 U.S. 393, 408-09 (1982). The TIA prohibits claims for

declaratory as well as injunctive relief. Id. at 411. The TIA's prohibition "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." Jerron West, Inc. v. State Bd. of Equalization, 129 F.3d 1334, 1338 (9th Cir. 1997) (quoting Tully v. Griffin, Inc., 429 U.S. 68, 73 (1976)).

In broadly interpreting the TIA, the Supreme Court has held that the requirement of a "plain, speedy and efficient" state court remedy requires only "a state-court remedy that meets certain minimal procedural criteria." Rosewell v. LaSalle Nat. Bank, 450 U.S. 503, 512 (1981) (emphasis omitted). The Supreme Court has expressly and consistently held that state tax systems that "provide[] for payment of taxes under protest with subsequent refund" are "plain, speedy, and efficient" under the TIA, even if no interest is paid to a successful challenger. Id. at 523-26, 528; see also Grace Brethren Church, 457 U.S. at 414-15; Tully, 429 U.S. at 74-76.

A remedy remains plain, speedy, and efficient even if the taxpayer does not use it or loses it by failing to comply with its procedures. "[T]he application of Section 1341 depends on whether a state remedy *was at some time available* to the taxpayer and *the taxpayer's failure to win in state court or to use the remedy properly does not negate the existence of the remedy*." Sacks Bros. Loan Co., Inc. v. Cunningham, 578 F.2d 172, 175 (7th Cir. 1978) (emphasis added). Indeed, the

"pay-and-sue" remedy is plain, speedy, and efficient even if it is undisputed that the taxpayer cannot afford to pay the assessed taxes and thus literally cannot comply with its procedures. Wood v. Sargeant, 694 F.2d 1159, 1160-61 (9th Cir. 1982).

The district court was not writing on a blank slate. The United States Supreme Court has twice held that California's tax refund procedures are "plain, speedy, and efficient" within the meaning of the TIA. Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd., 493 U.S. 331, 338-39 (1990) ("California's refund procedures constitute a plain, speedy, and efficient remedy."); accord Grace Brethren Church, 457 U.S. at 416-17. Those rulings confirm decades of Ninth Circuit law. "It has consistently been held, *without a single instance of deviation*, that the refund action provided by California Personal Income Tax Law is a 'plain, speedy and efficient remedy' such as to invoke the restraints of 28 U.S.C. § 1341." Aronoff v. Franchise Tax Bd. of Cal., 348 F.2d 9, 11 (9th Cir. 1965) (emphasis added); accord Jerron West, Inc., 129 F.3d at 1339 (finding California's tax refund remedy to be a "plain, speedy, and efficient" remedy under the TIA); Wood, 694 F.2d at 1159-60 ("We have repeatedly held that because of § 1341, the district court cannot proceed with a case attacking a state tax where the plaintiff has not

exhausted the state's 'pay and sue' type of remedy . . . .").[3]

## C.  HYATT'S INVENTIVE ARGUMENTS PROVIDE NO BASIS FOR JURISDICTION OVER HIS CLAIMS

Here, there is no dispute that Hyatt's action in the district court was one to "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law." Hyatt directly asked the district court to permanently forbid the State of California from seeking to assess state income taxes, penalties or interest against him for 1991, 1992, or any subsequent year. (ER 782.) His Opening Brief repeats this request. (AOB 4-5 ("Mr. Hyatt brought this federal action to stop the State from continuing to proceed against him.").)

Hyatt has always had, and still has, a clear, plain, speedy, and efficient way of getting the tax claims against him resolved in state court. At any time during the

---

[3]     District courts in this Circuit also uniformly hold that California's tax refund procedures are plain, speedy, and efficient. See, e.g., Schroeder v. State Bd. of Equalization, No. 2:08-cv-803 MCE, 2008 WL 2705075 at *1 (E.D. Cal. July 9, 2008) (dismissing taxpayer's due process challenge to tax for lack of jurisdiction on ground that Section 19382's procedure for a tax refund suit provides a "plain, speedy, and efficient" remedy); Beddoe v. United States, Nos. Civ. S-92-55 EJG, CIV. S-92-1067 EJG, 1993 WL 134827 at *1-*2 (E.D. Cal. Feb. 2, 1993) (dismissing pursuant to TIA plaintiff's purported constitutional claims against FTB on ground that California provided "plain, speedy, and efficient" remedy of suit for refund of taxes); Newton v. Poindexter, 578 F. Supp. 277, 281-82 (E.D. Cal. 1984) (dismissing taxpayer's 42 U.S.C. § 1983 claim that FTB members' disallowance of a withholding exemption violated his constitutional rights, and observing that, under California's pay-and-sue refund suit procedure, "[t]here appears to be no limitation on the grounds upon which a taxpayer can claim entitlement to a refund").

past 20 years, Hyatt could have paid the assessed taxes and then pursued a refund action under Section 19382. After paying the assessed taxes, Hyatt could promptly proceed to the state courts if the FTB failed to act on his refund claim after six months (or sooner if the FTB denied his refund claim before six months). Cal. Rev. & Tax. Code § 19385. Indeed, if Hyatt had done that instead of filing this action in April 2014, his state court action could have been filed before the end of 2014.

It is wholly irrelevant that Hyatt would prefer not to pay the taxes under protest. Indeed, even if Hyatt were *unable* to pay the taxes under protest, the available procedure for doing so would still constitute a plain, speedy, and efficient remedy triggering the application of the TIA. Wood, 694 F.2d at 1160-61. If the pay-and-sue remedy is considered available under the TIA even when someone cannot afford to pay the taxes, clearly Hyatt's *choice* not to pay the taxes does not render the remedy unavailable.

Hyatt's Opening Brief attempts to make several arguments as to why the district court had jurisdiction to prevent California from taxing Hyatt despite the clear language of the TIA and this well-settled case law (which Hyatt only obliquely mentions). He cites no case directly supporting his arguments, and his analogies to unrelated cases fail to demonstrate that his case presents an exception to the TIA's jurisdictional bar.

      *1.*    *The fact that Hyatt makes a residency challenge does not eliminate the TIA's jurisdictional bar*

Hyatt asserts that the clear and numerous cases holding that the Section 19382 refund suit remedy is "plain, speedy, and efficient" should be ignored because none of these cases involved a situation where the taxpayer also had the alternative option of pursuing pre-payment review of residency pursuant to Section 19381. (AOB 33-34.) The prior cases also did not specifically involve Hyatt. Neither distinction has any relevance in applying the clear language of the TIA. Nothing in any TIA case suggests that Hyatt can avoid the TIA's "drastic" limit on federal district court jurisdiction, Grace Brethren Church, 457 U.S. at 408-09, by arguing that in addition to a plain, speedy, and efficient remedy, the state offered an alternative remedy that he now believes is inadequate. And, in fact, at least one federal district court decision—affirmed by this Court—*has* addressed a residency-based assessment by the FTB after the taxpayer, like Hyatt, sought equitable relief in federal court. That court held that California's Section *19381* prepayment procedures and its refund procedures *are* plain, speedy, and efficient. Quigley v. Cal. Franchise Tax Bd., No. C 00-01662 WHA, 2000 WL 1336612 (N.D. Cal. Sept. 12, 2000), aff'd, 14 F. App'x 910 (9th Cir. 2001).[4] Hyatt attempts to

---

[4]    Although the SBE agrees with the court in Quigley, SBE is not asking this Court to find that Section 19381 is a "plain, speedy, and efficient" remedy for purposes of the TIA. Rather, as below, it does not matter whether the Section

distinguish <u>Quigley</u> as involving a pro se plaintiff, but Hyatt's wealth and access to experienced legal counsel do not provide him with greater rights than Mr. Quigley or present any other basis for distinguishing that case.

### 2. *Hyatt's assertion that too much time has passed is irrelevant*

Hyatt also argues that Section 19382 cannot now provide him with the "speedy" remedy required under the TIA. (AOB 38-40.) Citing no authority, Hyatt argues that "the Section 19382 process must be viewed in the context of the delay Mr. Hyatt has already faced" in the administrative proceedings. (AOB 38.) That is simply wrong. "[T]he application of Section 1341 depends on whether a state remedy was *at some time* available to the taxpayer and the taxpayer's failure to win in state court or to use the remedy properly does not negate the existence of the remedy." <u>Sacks Bros. Loan Co., Inc.</u>, 578 F.2d at 175 (emphasis added).

> A number of courts have squarely faced the issue of whether a "plain, speedy and efficient remedy" which has been allowed to lapse satisfies the Tax Injunction Act. *These courts have unanimously concluded that failure to utilize a remedy does not render that remedy insufficient under s[ection] 1341.*

<u>Aluminum Co. of Am. v. Dep't of Treasury of State of Mich.</u>, 522 F.2d 1120, 1125 (6th Cir. 1975) (emphasis added) (citations omitted); <u>see also</u> <u>Jerron West, Inc.</u>, 129 F.3d at 1338-40 (taxpayer's failure to pursue state administrative and judicial

---

19381 procedure is sufficient to trigger the TIA because the Section 19382 pay-then-sue remedy plainly is.

remedies did not render those remedies ineffective); City Vending of Muskogee, Inc. v. Okla. Tax Comm'n, 898 F.2d 122, 124 (10th Cir. 1990) ("Ordinarily, where a taxpayer fails to pursue state remedies available to challenge a tax assessment, federal courts will be precluded from considering challenges to the tax assessment."); Henry v. Metro. Dade Cty., 329 F.2d 780, 781 (5th Cir. 1964) (expiration of time in which to pursue state remedy does not render that remedy no longer plain, speedy, and efficient for purposes of 28 U.S.C. § 1341).

The only pertinent inquiry under the TIA is whether Section 19382 provided a speedy remedy to taxpayers. As discussed above, ample, controlling case law holds that it does. Alcan Aluminum Ltd., 493 U.S. at 338-39 (1990) ("California's refund procedures constitute a plain, speedy, and efficient remedy."); Anderson v. Cal. Franchise Tax Bd., No. 09-4015 SBA, 2010 WL 334456 at *2 (N.D. Cal. Jan. 28, 2010) (observing that the Supreme Court has "directly addressed California's system of levying and appealing tax-related complaints and found it to be plain, speedy and efficient" and rejecting "[p]laintiff's argument, based on his personal experience that the remedy is not 'plain, speedy, or efficient[.]'"). The fact that Hyatt believes his case would have been stronger if he brought it a decade or more ago may provide a basis for him to regret his choices, but it provides no grounds

for disregarding the clear jurisdictional bar of the TIA.[5]

### 3. Hyatt's "uncertainty" argument is contrary to Ninth Circuit law

Hyatt further argues that the remedy offered by Section 19382 is not "plain" because it is uncertain whether he can pursue his constitutional claims through the Section 19382 pay-then-sue procedure. (AOB 34-38.) This argument fails for two reasons. First, Ninth Circuit law makes clear that Hyatt *can* pursue his constitutional claims through the state court procedure. Second, even if he could not, the TIA would still apply, as Hyatt had the option to challenge assessment of the taxes he seeks to enjoin here prior to the time his purported constitutional claims arose.

---

[5]      Hyatt argues that if he files a state court refund action before the FTB approves or rejects his claim, he would be "at his peril" because he *could* be found not to have exhausted his administrative remedies. (AOB 39.) There is no such risk. Hyatt mischaracterizes Barnes v. State Bd. of Equalization, 118 Cal. App. 3d 994 (1981), where the taxpayer refused to provide any documentation or details about his claim, thus making it impossible for the SBE to adjudicate it. Id. at 997-1001. Hyatt's situation is far different. He has vigorously pursued the matter during administrative proceedings and produced a huge amount of evidence and argument to support his view of the law and facts. Hyatt is at no risk of being subject to the same self-inflicted fate as Mr. Barnes, and he cannot defeat the TIA by stating that he may in the future fail to take steps to preserve his legal remedies.

This Court rejected a similar argument in Capitol Industries-EMC, where the taxpayer Capitol, citing Barnes, argued that its inability to provide the FTB with evidence controlled by its parent, EMI, would constitute a failure to exhaust, precluding state court review of its constitutional arguments in a refund suit. Capitol Industries-EMI, Inc. v. Bennett, 681 F.2d 1107, 1117 (9th Cir. 1982). This Court found Capitol's claim barred by the TIA. Id. at 1117-18.

Hyatt's argument appears to be that, despite the binding precedent holding that California's remedies *are* plain, speedy, and efficient, they "may" not apply here because Hyatt cannot find a published case expressly allowing his novel constitutional theories to be presented in state court.[6] However, numerous cases demonstrate that California's pay-and-sue refund procedure does allow taxpayers to make constitutional arguments. See Jerron West, Inc., 129 F.3d at 1339 ("the state court can review taxpayers' arguments and evidence regarding the allegedly unconstitutional and erroneous tax assessment if taxpayers first raised them in their claim for a refund"); Barclays Bank Int'l Ltd. v. Franchise Tax Bd., 10 Cal. App. 4th 1742, 1749 (1992) (hearing and deciding on taxpayer's argument, asserted in refund lawsuit brought under Section 19382's predecessor, that assessment of taxes

---

[6]     Hyatt states that "[o]ur research has not uncovered any reported decision in which a court permitted a taxpayer to raise such post-assessment constitutional claims in a Section 19382 refund case." (AOB at 35.) Hyatt's inability to find a case addressing the same theories has more to do with the unfounded nature of Hyatt's theories than any limitation on state court proceedings. It is Hyatt's burden to show that this Court has jurisdiction. Kokkonen, 511 U.S. at 376-77. That means that Hyatt must show that his case falls within the narrowly construed exception to the TIA. Grace Brethren Church, 457 U.S. at 413 ("In order to accommodate these concerns and be faithful to the congressional intent 'to limit drastically' federal-court interference with state tax systems, we must construe narrowly the 'plain, speedy and efficient' exception to the Tax Injunction Act."). Arguing that his claims are different than those in decades of uniform case law comes nowhere close to meeting that burden. Moreover, as discussed above, Capitol Industries-EMI *does* show that constitutional claims that, like Hyatt's, are based on the inability of a taxpayer to obtain supporting evidence to fight a tax assessment, *can* be pursued in a Section 19382 refund proceeding.

violated due process clause and commerce clause of federal constitutions); Cooper v. Franchise Tax Bd., 670 F. Supp. 282, 284 (N.D. Cal. 1987) ("constitutional challenges to tax assessments… may be raised in state court proceedings"); Newton, 578 F. Supp. at 281-82 (under California's pay-and-sue refund suit procedure, "[t]here appears to be no limitation on the grounds upon which a taxpayer can claim entitlement to a refund"). Hyatt also retains the ability to bring any federal constitutional claim on certiorari to the United States Supreme Court if it is rejected by the California courts.[7]

Hyatt argues, citing no supporting authority, that these cases do not demonstrate that *his* constitutional challenges could be heard in a Section 19382

---

[7] In Hay v. Ind. State Bd. of Tax Comm'rs, 181 F. Supp. 2d 961, 966 (N.D. Ind. 2001), the court rejected a taxpayer's argument that the TIA should not bar her federal action even where the Indiana state court would not hear her federal constitutional claims, observing that federal review may be had in the Supreme Court:

> Furthermore, the record does not reflect whether the one Plaintiff who has presented her claims under the statutory scheme has even attempted to appeal her constitutional violation to the United States Supreme Court. *This is an avenue which is clearly open to a taxpayer who wishes to put forth a claim that a state tax violates some provision of the United States Constitution; a position strongly advocated here.* The various Supreme Court decisions cited by the Plaintiffs support this very course. [citing cases]. *As contemplated by the various cases cited above this is the avenue that must be pursued rather than seeking to attack the system collaterally in this court.* Therefore, the Plaintiffs contention that no remedy exists is without merit.

Id. (emphasis added).

proceeding because he does not argue that the tax assessed against him was "void," but rather that the tax should not be assessed against him because the FTB and SBE violated his due process and equal protection rights during his administrative challenge. (AOB 36-38.) Once again, Hyatt devises this "concern" so that he can argue that no court has squarely addressed it.

Hyatt's argument is again rebutted by Capitol Industries-EMI, Inc., where this Court held that Section 19382's nearly identical predecessor—which also allowed refund suits by "any taxpayer claiming that the tax computed and assessed against it under this part is void in whole or in part"—allowed constitutional challenges based on the taxpayer's inability to produce evidence to challenge the assessment. 681 F.2d at 1118.

Moreover, even if Hyatt could not pursue his constitutional claims in a Section 19382 refund proceeding, the TIA would *still* preclude jurisdiction here, because the TIA provided a "plain, speedy, and efficient" remedy to Hyatt prior to when his purported constitutional claims arose. Hyatt himself admits in his Opening Brief that "[t]here were no constitutional claims to pursue via Section 19382 in 1996. Mr. Hyatt's constitutional claims are based on the delay that occurred thereafter and that is continuing to this day." (AOB 16.) Again, "the application of Section 1341 depends on whether a state remedy was *at some time available* to the taxpayer . . . ." Sacks Bros. Loan Co., Inc., 578 F.2d at 175

(emphasis added). Thus, even if Hyatt could not pursue his constitutional claims in a Section 19382 action today—which he clearly can—jurisdiction would still not exist pursuant to the TIA.

> ### 4. The district court's order does not require Hyatt to "abandon" or "forgo" anything

Hyatt tries to paint himself as presented with a Hobson's choice, arguing that the district court has somehow forced him to abandon his administrative appeal. Not so. The district court's dismissal of Hyatt's complaint does not "effectively, and illegally, nullif[y]" Section 19381. (AOB 27-28.) Hyatt remains free to continue pursuing his administrative appeal, and, if the SBE decides against him, to challenge the SBE's determination regarding Hyatt's state of residence during the periods in dispute in California state court without first paying the disputed tax pursuant to Section 19381. Or, if he wants to pursue his claims in court sooner, he can pay and sue under Section 19382 in six months or less. The TIA merely requires that a remedy be available, not that it be the only remedy, much less that the taxpayer prefer that remedy. As discussed at length above, a "plain, speedy and efficient remedy" may be had pursuant to California's pay-and-sue procedure. That Hyatt purportedly would rather pursue a different procedure that allows him not to pay is immaterial.[8]

---

[8]     Hyatt also argues that he does not want to pay and sue in state court because California law only allows recovery of attorneys' fees if a taxpayer completes the

5.    *Hyatt's "bait and switch" argument is baseless*

Hyatt's last attempt to escape the TIA's clear jurisdictional bar is to insist

that the district court's decision "forces the inapplicable Section 19382 refund

remedy upon Mr. Hyatt and is analogous to a 'bait and switch' tactic that the

Supreme Court has twice rejected[.]" (AOB 29 (citing Newsweek, Inc. v. Florida

Dep't of Revenue, 522 U.S. 442, 445 (1998) (per curiam); Reich v. Collins, 513

U.S. 106, 108 (1994)).) The district court correctly rejected this argument as well.

(ER 9.)

Reich v. Collins arose from the fallout of Davis v. Michigan Dep't of

Treasury, 489 U.S. 803 (1989), which held that states cannot tax federal or private

---

entire administrative appeal process. (AOB 28-29 (citing Cal. Rev. & Tax. Code
§§ 19381, 19717(b)(1)).)  Even assuming Hyatt's interpretation of section 19717
were correct, the TIA does not require payment of attorneys' fees to avoid federal
interference with state tax proceedings.  Indeed, a remedy is plain, speedy, and
efficient even if it requires pre-payment but, unlike California, does not allow
recovery of interest on overpayments. Rosewell, 450 U.S. at 512, 523-26. The
normal rule is that a prevailing party pays his own fees. See, e.g., Flood v. Miller,
35 F. App'x 701, 705 (9th Cir. 2002) (discussing "American Rule"). The TIA does
not change that basic rule of American jurisprudence. See Redd v. Lambert, 522 F.
Supp. 608, 610 (N.D. Miss. 1981) ("We do not believe that the exclusion of
attorney fees vitiates the adequacy of the state court procedure."), aff'd on other
grounds, 674 F.2d 1032 (5th Cir. 1982).

Nor, again, is Hyatt being forced to do anything.  He had, and retains, the
choice of procedures.  His belief that it is better for him not to pay the disputed
taxes and hope to win attorneys' fees on his pre-payment challenge does not mean
that the well-recognized plain, speedy, and efficient pay-and-sue remedy was
unavailable to him.

retirement benefits while exempting state retirement benefits. The affected state laws were repealed but many states, like Georgia, did not offer any refund of the unlawfully collected taxes. Reich, 513 U.S. at 108. When Mr. Reich sought a refund through Georgia's ordinary refund statute, the Georgia Supreme Court held for the first time, and without reference to any statutory language, that the general refund statute did not apply "to the situation where the law under which the taxes are assessed and collected is itself subsequently declared to be unconstitutional or otherwise invalid." Id. at 109 (internal quotations omitted). Mr. Reich sought reconsideration on the grounds that federal due process, as interpreted in McKesson Corp. v. Div. of Alcoholic Beverages and Tobacco, 496 U.S. 18 (1990), requires "a 'clear and certain' remedy for taxes collected in violation of federal law." Reich, 513 U.S. at 108-09. When the Georgia Supreme Court still refused to allow a refund lawsuit, the United States Supreme Court granted certiorari. The Court held that it violated due process for Georgia to hold out a clear and certain refund statute of general applicability, but then, after a tax that had been paid was found unconstitutional, determine that the refund statute did not apply to such taxes, retroactively adopt a prepayment remedial scheme, and declare that the illegally charged taxpayers "should have" used the new remedial scheme instead of the established refund procedures. Reich, 513 U.S. at 110-14.

Nearly the same fact pattern was later presented in <u>Newsweek</u>, 522 U.S. 442, where the Supreme Court granted certiorari to overturn a Florida court's similar attempt to deny retroactively application of a general refund statute when Florida's sales tax on magazines was found unconstitutional.

<u>Reich</u> and <u>Newsweek</u> share nothing in common with this case and provide no support for Hyatt's "bait and switch" argument. First, neither case was brought in district court to enjoin payment of a tax, and thus neither case implicates the TIA. To the contrary, these cases illustrate that the proper path for review of these matters is through the state courts and then certiorari to the Supreme Court, not by suing in the federal district courts.

Second, California has not restricted or changed the application of its post-payment review process. Hyatt's options today are the same as they were when he initially *chose* not to pay his assessed taxes and seek a refund.

Third, both <u>Reich</u> and <u>Newsweek</u> involved taxpayers who actually paid their taxes and were denied refunds *after* those taxes were found unconstitutional. Thus, both cases dealt with states attempting to change the refund rules in order to keep money that was unconstitutionally collected. "<u>Reich</u> stands, *at most*, for the proposition that a state … may not restrict access to *postpayment relief* when a taxpayer reasonably relies on the availability of such relief" by paying the taxes. <u>Stone Container Corp. v. United States</u>, 229 F.3d 1345, 1351 (Fed. Cir. 2000)

(emphasis added); see also Montana Rail Link, Inc. v. United States, 76 F.3d 991, 995 (9th Cir. 1996) (noting that Reich held that "to hold out a remedy for paying illegal taxes and then to declare that no such remedy exists after illegal taxes are paid is an unconstitutional violation of due process"). None of that has happened here.

Hyatt generically insists that "federal courts refuse to allow state and local authorities to deprive a citizen of a constitutional right in order to exercise another right, deeming such action by the government an unconstitutional condition or undue burden on a constitutional right." (AOB 32.) He cites three "unlawful conditions" cases that have nothing to do with the TIA: (1) Perry v. Sniderman, 408 U.S. 593, 597 (1972) (public college could not deny a professor continued employment in retaliation for his exercise of free speech rights); (2) Speiser v. Randall, 357 U.S. 513, 518-19 (1958)[9] (California could not deny taxpayers an exemption because they exercised their first amendment rights to refuse to sign an oath); and (3) United Mine Workers v. Illinois State Bar Ass'n, 389 U.S. 217, 218-22 (1967) (Illinois court could not enjoin a union from employing a salaried lawyer to represent union members). Federal subject matter jurisdiction was not in question in any of these cases, and they are absolutely irrelevant here.

---

[9]     Speiser again illustrates that the proper avenue for federal review of state taxing decisions is through certiorari to the Supreme Court. See Speiser, 357 U.S. at 515 n.1.

As the district court held, "Plaintiff has not shown that the reasoning of Reich and Newsweek supports his jurisdiction argument …." (ER 9:23-24.) There has been neither bait nor switch. Hyatt *chose* not to pay and seek a refund although that well-established option was (and remains) available to him.

Thus, none of Hyatt's arguments provides any basis for disregarding the long established law that California tax procedures are plain, speedy and efficient within the meaning of the TIA. The district court lacked jurisdiction over Hyatt's claims, and properly dismissed them.

### D. ALTERNATIVELY, the DISTRICT COURT'S JUDGMENT OF DISMISSAL SHOULD BE AFFIRMED BECAUSE DISMISSAL WAS MANDATED BY the YOUNGER DOCTRINE

Aside from the TIA's jurisdictional bar, dismissal was also mandated under the Younger v. Harris, 401 U.S. 37 (1971), abstention doctrine and the principles of comity on which it is based. Younger abstention prevents federal court disruption of important state proceedings. The doctrine is based on principles of comity and federalism, which are particularly important in the realm of states' taxation activities.

As the Supreme Court has observed, "it is of the utmost importance to all of [the states] that the modes adopted to enforce the taxes levied should be interfered with as little as possible." Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100, 102 (1981) (internal quotations omitted). In McNary, the Court held

– 29 –

that even though a section 1983 claim for damages was not literally within the

scope of the TIA, the same principles that underlie the TIA bar taxpayers' damages

actions brought in federal court.

> The principle of comity has been recognized and relied upon by this Court in several recent cases dealing with matters other than state taxes. Its fullest articulation was given in the now familiar language of Younger v. Harris, 401 U.S. 37 (1971), a case in which we held that traditional principles of equitable restraint bar federal courts from enjoining pending state criminal prosecutions except under extraordinary circumstances[.]

Id. at 111-12.

The Younger abstention doctrine applies to state court civil proceedings and

state administrative proceedings. Ohio Civil Rights Comm'n v. Dayton Christian

Schools, Inc., 477 U.S. 619, 629 (1986). This Court has laid out a four-element

(including the threshold inquiry of whether the federal relief sought directly

interferes with a state proceeding) test to determine whether a federal court must

dismiss an action under the Younger doctrine:

> If the circumstances giving rise to Younger abstention are present, the district court generally must dismiss the action. As a threshold matter, for Younger abstention to apply, the federal relief sought must directly interfere with a state proceeding. Next, in determining whether abstention is proper, the court must examine: (1) The nature of the state proceedings in order to determine whether the proceedings implicate important state interests, (2) the timing of the request for federal relief in order to determine whether there are ongoing state proceedings, and (3) the ability of the federal plaintiff to litigate its federal constitutional claims in the state proceedings.

Am. Consumer Pub. Ass'n Inc. v. Margosian, 349 F.3d 1122, 1126 (9th Cir. 2003)

(internal citations omitted). All of those elements are met here.

First, the relief Hyatt seeks, which includes an injunction forbidding the SBE from continuing with its ongoing administrative review of his tax protest, clearly would "directly interfere with a state proceeding."

Second, the nature of the state proceedings—an appeal of a tax assessment—undeniably implicates "important state interests." Indeed, the Supreme Court has "recognized the important and sensitive nature of state tax systems and the need for federal-court restraint when deciding cases that affect such systems." McNary, 454 U.S. at 102. And, while complaints in federal court seeking to enjoin state agencies' tax collection activities are typically dismissed for lack of jurisdiction under the TIA, district courts have also dismissed such cases under the Younger abstention doctrine as an alternative ground. E.g., May Trucking Co. v. Oregon Dep't of Transp., No. CV 02-413-HA, 2003 WL 25730507 at *3-4 (D. Or. Mar. 17, 2003), aff'd, 388 F.3d 1261 (9th Cir. 2004).

Third, Hyatt undisputedly has requested federal relief while the proceedings before the SBE are still ongoing. (ER 762 ¶ 79 ("[T]he California tax proceeding is far from over.").)

Fourth, and finally, Hyatt can litigate his federal constitutional claims in the state court. As discussed above, under Section 19382, Hyatt would be free to sue for a refund on any "grounds set forth in [his] claim for refund." Cal. Rev. & Tax.

Code § 19382. Thus, Hyatt's federal claims meet all of the criteria for <u>Younger</u> abstention.

In his Opening Brief, Hyatt asserts that he has no remedy in state court for his constitutional claims. As discussed above, this is simply not so. Additionally, Hyatt argues that "this Court has held that the breadth of the comity doctrine is not unlimited in the state tax administration context and will not stand in the way of a federal court hearing an action seeking to prevent violation of a fundamental constitutional guaranty." (AOB 41.) In support of this argument, Hyatt cites <u>Winn v. Killian</u>, 307 F.3d 1011, 1019 (9th Cir. 2002), another patently inapplicable case. In <u>Winn</u> the Ninth Circuit held that principles of comity did not prevent a federal court from hearing an Establishment Clause challenge to an Arizona tax credit for contributions to parochial schools. The Ninth Circuit differentiated the two Supreme Court cases that found federal jurisdiction to be barred by comity in cases challenging state tax measures because those cases had involved a plaintiff trying to *stop* state collection of a tax, while the <u>Winn</u> plaintiff sought to challenge a state tax credit (if the <u>Winn</u> plaintiff prevailed, tax revenues would *increase*). <u>Id.</u> at 1018. No such distinction applies here, where Hyatt seeks to prevent the collection of millions of dollars in taxes.

### E.    HYATT'S DUE PROCESS CLAIM FAILS IN ALL EVENTS

Hyatt's first claim for relief against the SBE is based on allegations that the

SBE has denied him procedural due process. (ER 752-774.) While the district court did not reach this issue, this claim fails as a matter of law because Hyatt's due process rights never attached.

The Supreme Court has long held that procedural due process does not require judicial determination of tax liability before collection of a tax. See Phillips v. Comm'r of Internal Revenue, 283 U.S. 589, 597-599 (1931). "Where only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate." Id. at 596-597. In McKesson, the Supreme Court further explained the rationale behind this well-established principle:

> . . . whereas "we have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant property interest,'" [citation] it is well established that a State need not provide predeprivation process for the exaction of taxes. Allowing taxpayers to litigate their tax liabilities prior to payment might threaten a government's financial security, both by creating unpredictable interim revenue shortfalls against which the State cannot easily prepare, and by making the ultimate collection of validly imposed taxes more difficult.

McKesson Corp., 496 U.S. at 37 (emphasis omitted); see also Grace Brethren Church, 457 U.S. at 410 ("During [pre-payment litigation] the collection of revenue under the challenged law might be obstructed, with consequent damage to

– 33 –

the State's budget, and perhaps a shift to the State of the risk of taxpayer insolvency.").

Since Hyatt chose not to pay his disputed taxes before filing his complaint in the district court, his claim that the lengthy administrative process deprived him of his due process rights has no basis. Contrary to Hyatt's allegations, he has a clear and certain opportunity for post-payment review through Section 19382, which the federal courts have uniformly held satisfies his constitutional rights. Thus, in addition to the jurisdictional and <u>Younger</u> bars, Hyatt's due process claim fails as a matter of law.

## VII. CONCLUSION

The district court correctly applied the TIA and the clear Supreme Court and Ninth Circuit precedent interpreting it to Hyatt's claims, and found that it lacked jurisdiction over this case. Hyatt's various attempts to carve out an exception for himself from the TIA's clear jurisdictional bar are unsupported and unavailing. The district court's judgment of dismissal should be affirmed.

Respectfully submitted,

DATED: August 28, 2015      **KERR & WAGSTAFFE LLP**

By: /s/ Michael von Loewenfeldt

MICHAEL VON LOEWENFELDT

*Attorneys for Defendant and Appellees*
Diane L. Harkey, Jerome E. Horton, Betty
T. Yee, George Runner and Fiona Ma

## STATEMENT OF RELATED CASES

There are no related cases currently pending before this Court.


DATED: August 28, 2015                    **KERR & WAGSTAFFE LLP**


                              By: /s/ Michael von Loewenfeldt
                                  MICHAEL VON LOEWENFELDT

                                  *Attorneys for Defendant and Appellees*
                                  Diane L. Harkey, Jerome E. Horton, Betty
                                  T. Yee, George Runner and Fiona Ma

## CERTIFICATION OF COMPLIANCE WITH WORD LIMIT

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure and Ninth Circuit Rule 32-1, I certify that this answering brief is proportionately spaced, has a typeface of 14-point, Times New Roman font, and contains 8,732 words.

DATED: August 28, 2015      **KERR & WAGSTAFFE LLP**

By: /s/ Michael von Loewenfeldt
MICHAEL VON LOEWENFELDT

*Attorneys for Defendant and Appellees*
Diane L. Harkey, Jerome E. Horton, Betty
T. Yee, George Runner and Fiona Ma

| 9th Circuit Case Number(s) | 15-15296 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

*************************************************************************

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)  Aug 28, 2015 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)   s/ Michael von Loewenfeldt

*************************************************************************

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)  .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)