No. 15-15296

---

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

---

GILBERT P. HYATT

*Plaintiff-Appellant*

v.

DIANE L. HARKEY, in her official capacity as California State Board of Equalization member; JEROME E. HORTON, in his official capacity as California Franchise Tax Board member and California State Board of Equalization member; MICHAEL COHEN, in his official capacity as California Franchise Tax Board member; BETTY T. YEE, in her official capacity as California Franchise Tax Board member and California State Board of Equalization member; GEORGE RUNNER, in his official capacity as California State Board of Equalization member; FIONA MA, in her official capacity as California State Board of Equalization Member

*Defendants-Appellees.*

---

**On Appeal from the United States District Court
for the Eastern District of California
Case No. 2:14-cv-00849-GEB-DAD (Hon. Garland E. Burrell, Jr.)**

---

**BRIEF OF APPELLEES
CALIFORNIA FRANCHISE TAX BOARD MEMBERS**

---

[*counsel listed on following page*]

CYNTHIA J. LARSEN
(Cal. Bar No. 123994)
clarsen@orrick.com
KATIE DeWITT
(Cal Bar No. 244673)
kdewitt@orrick.com
DAVID W. SPENCER
(Cal. Bar No. 284121)
dspencer@orrick.com

JAMES BRADSHAW
(Cal. Bar No. 108765)
jbradshaw@mcdonaldcarano.com
DEBBIE LEONARD
(Cal. Bar No. 226547)
dleonard@mcdonaldcarano.com
ADAM HOSMER-HENNER
(Cal. Bar No. 298277)
ahosmerhenner@mcdonaldcarano.com


ORRICK, HERRINGTON &
SUTCLIFFE LLP
400 Capitol Mall
Suite 3000
Sacramento, CA 95814
Telephone: (916) 329-7970

McDONALD CARANO WILSON LLP
100 West Liberty Street, 10th Floor
P.O. Box 2670
Reno, Nevada 89505
Telephone: (775) 788-2000


*Attorneys for Appellees Betty T. Yee,*
*Jerome E. Horton and Michael Cohen in*
*their official capacities as members of the*
*California Franchise Tax Board*

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION ...................................................1

ISSUES PRESENTED ......................................................................1

INTRODUCTION ............................................................................1

STATEMENT OF THE CASE ..........................................................4

    A. THE FRANCHISE TAX BOARD HAS STATUTORY AUTHORITY
       TO ADMINISTER CALIFORNIA'S PERSONAL INCOME TAX LAW..........4

    B. THE CALIFORNIA LEGISLATURE HAS ESTABLISHED CLEAR
       PROCEDURES FOR JUDICIAL CHALLENGES BY TAXPAYERS...............4

    C. HYATT ELECTED TO BRING AN ADMINISTRATIVE RESIDENCY
       PROTEST BEFORE PAYING HIS ASSESSED TAXES...................5

    D. HYATT STALLED THE CALIFORNIA ADMINISTRATIVE PROCESS
       THROUGH LITIGATION IN OTHER STATES. ...........................6

    E. HYATT APPEALED TO THE SBE BUT HAS CONTINUED
       LITIGATING AND REQUESTING EXTENSIONS TO POSTPONE
       THE FINAL HEARING. ...............................................7

SUMMARY OF ARGUMENT ...........................................................8

ARGUMENT ...................................................................................10

I.    STANDARD OF REVIEW..........................................................10

II.   THE DISTRICT COURT CORRECTLY DISMISSED
     HYATT'S CLAIMS AS BARRED BY THE TAX
     INJUNCTION ACT. ...............................................................11

    A. HYATT'S ARGUMENT THAT CALIFORNIA'S PROCEDURE IS
       INADEQUATE IS FORECLOSED BY DECADES OF CONTROLLING
       PRECEDENT. .......................................................13

    B. THE CALIFORNIA REMEDIES SATISFY THE TIA AS APPLIED TO
       HYATT. ............................................................15

        1. The Speediness Of A State Remedy Must Be Compared
           To Its Federal Counterpart.........................................17

        2. There Is No Uncertainty As To Whether Hyatt Can
           Bring His Constitutional Claims Under Section 19382. ...........19

C. THE ADEQUACY OF CALIFORNIA'S PAY-THEN-PROTEST
REMEDY IS NOT AFFECTED BY SECTION 19381...................21

1. California Has Not Engaged In A "Bait and Switch"
And The Cases Hyatt Cites Are Inapposite............................22

2. Even If Hyatt Were To Forfeit A Potential Recovery Of
Attorney's Fees, He Would Not Be Entitled To Access
Federal Court. ....................................................................25

III. COMITY PRINCIPLES REQUIRE THAT FEDERAL
COURTS DECLINE TO INTERFERE WITH STATE
FISCAL ADMINISTRATION.....................................................27

CONCLUSION................................................................................31

STATEMENT OF RELATED CASES ........................................32

ADDENDUM TO BRIEF ................................................................33

CERTIFICATE OF COMPLIANCE..............................................34

CERTIFICATE OF SERVICE........................................................35

# TABLE OF AUTHORITIES

## Cases

*Aluminum Co. of Am. v. Dep't of Treasury of State of Mich.*,
    522 F.2d 1120 (6th Cir. 1975) ....................................................................16

*Arkansas v. Farm Credit Servs. of Cent. Ark.*,
    520 U.S. 821 (1997).................................................................................11

*Aronoff v. Franchise Tax Bd.*,
    348 F.2d 9 (9th Cir. 1965) .......................................................................14

*Ashton v. Cory*,
    780 F.2d 816 (9th Cir. 1986) ...................................................................13

*Barclays Bank Int'l Ltd. v. Franchise Tax Bd.*,
    14 Cal. Rptr. 2d 537 (Cal. Ct. App. 1992)............................................ 20, 26

*Blangeres v. Burlington N., Inc.*,
    872 F.2d 327 (9th Cir. 1989) ...................................................................12

*Burford v. Sun Oil Co.*,
    319 U.S. 315 (1943).................................................................................10

*California v. Grace Brethren Church*,
    457 U.S. 393 (1982)....................................................................... 11, 13, 14

*Capitol Indus.-EMI, Inc. v. Bennett*,
    681 F.2d 1107 (9th Cir. 1982) ........................................................... passim

*Crist v. Leippe*,
    138 F.3d 801 (9th Cir. 1998) ...................................................................10

*Cromwell Louisville Assocs. v. Com.*,
    323 S.W.3d 1 (Ky. 2010)...................................................................... 23, 24

*Direct Mktg. Ass'n v. Brohl*,
    135 S. Ct. 1124 (2015)......................................................................... 28, 29

*Fair Assessment in Real Estate Ass'n, Inc. v. McNary*,
    454 U.S. 100 (1981)............................................................................. 28, 29

*Flaim v. Med. Coll. of Ohio*,
    418 F.3d 629 (6th Cir. 2005) ...................................................................22

*Franchise Tax Bd. v. Gilbert P. Hyatt*,
    No. C043627, 2003 WL 23100266 (Cal. Ct. App. Dec. 31, 2003)................7

*Franchise Tax Bd. v. Hyatt*,
    335 P.3d 125 (Nev. 2014).................................................................6

*Franchise Tax Bd. v. Hyatt*,
    538 U.S. 488 (2003)......................................................................7

*Franchise Tax Bd. v. Super. Ct.*,
    261 Cal. Rptr. 236 (Cal. Ct. App. 1989).......................................21

*Heyne v. Metro. Nashville Pub. Schs*,
    655 F.3d 569 (6th Cir. 2011) .......................................................22

*Hibbs v. Winn*,
    542 U.S. 88 (2004)......................................................................29

*Hyatt v. State of California Franchise Tax Board*,
    105 A.D.3d 186 (N.Y. App. Div. 2013) .........................................8

*Jerron West, Inc. v. State of Cal., State Bd. of Equalization*,
    129 F.3d 1334 (9th Cir. 1997) ................................... 11, 12, 14, 15

*Levin v. Commerce Energy, Inc.*,
    560 U.S. 413 (2010)......................................................... 27, 28, 29

*Long Island Lighting Co. v. Town of Brookhaven*,
    889 F.2d 428 (2d Cir. 1989) .........................................................18

*Mandel v. Hutchinson*,
    494 F.2d 364 (9th Cir. 1974) ................................................ 13, 14

*Matheson v. Smith*,
    12-35479, 2013 WL 6816700 (9th Cir. Dec. 26, 2013) ................16

*May Trucking Co. v. Oregon Dep't of Transp.*,
    388 F.3d 1261 (9th Cir. 2004) .....................................................11

*Modern Barber Colleges. v. Cal. Employment Stabilization Comm'n*,
    192 P.2d 916 (Cal. 1948)...............................................................2

*Nat'l Private Truck Council, Inc. v. Oklahoma Tax Comm'n*,
    515 U.S. 582 (1995)........................................................... 24, 28

*Newsweek v. Florida Dep't of Revenue*,
    522 U.S. 442 (1998).....................................................................23

*Newton v. Poindexter*,
    578 F. Supp. 277 (E.D. Cal. 1984) ..............................................30

*Perez v. Ledesma,*
    401 U.S. 82, (1971)..................................................................27

*Perry v. Sindermann*,
    408 U.S. 593 (1972)..............................................................24

*Redding Ford v. Cal. State Bd. of Equalization*,
    722 F.2d 496 (9th Cir. 1983) ...............................................13

*Reese v. Nixon,*
    347 F. Supp. 314 (C.D. Cal. 1972) .......................................30

*Reich v. Collins,* 513 U.S. 106 (1994). .....................................23

*Rosewell v. LaSalle Nat'l Bank,*
    450 U.S. 503 (1981)...................................................... passim

*Safe Air for Everyone v. Meyer,*
    373 F.3d 1035 (9th Cir. 2004) ..............................................10

*Savage v. Glendale Union High Sch.,*
    343 F.3d 1036 (9th Cir. 2003) ..............................................10

*See Franchise Tax Bd. v. Alcan Aluminum Ltd.*,
    493 U.S. 331 (1989)..............................................................14

*Speiser v. Randall,*
    357 U.S. 513 (1958)..............................................................24

*State Bd. of Equalization v. Super. Ct.*,
    703 P.2d 1131 (Cal. 1985)....................................................22

*Tyler v. Cuomo*,
    236 F.3d 1124 (9th Cir. 2000) ..............................................10

*U.S. West, Inc. v. Nelson*,
    146 F.3d 718 (9th Cir. 1998) ................................................17

*United Mine Workers v. Illinois State Bar Ass'n,*
    389 U.S. 217 (1967)..............................................................24

*Virgin v. County of San Luis Obispo*,
    201 F.3d 1141 (9th Cir. 2000) ..............................................10

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ..............................................10

*Winn v. Killian*,
    307 F.3d 1011 (9th Cir. 2002) ....................................................................29

*Wood v. Sargeant*,
    694 F.2d 1159 (9th Cir. 1982) ...................................................................16

*Younger v. Harris,*
    401 U.S. 37 (1971)................................................................................ 10, 27

**Statutes**

28 U.S.C. § 1291 ....................................................................................................1

28 U.S.C. § 1341 ......................................................................................... passim

Cal. Civ. Proc. Code § 1060.5 .............................................................................15

Cal. Rev. & Tax Code §§ 19041-19048 ......................................................... 5, 15

Cal. Rev. & Tax. Code § 19335 ...........................................................................26

Cal. Rev. & Tax. Code § 19381 ..................................................................... passim

Cal. Rev. & Tax. Code § 19382 ..................................................................... passim

Cal. Rev. & Tax. Code § 19385 ............................................................... 4, 5, 9, 17

Cal. Rev. & Tax. Code § 19501 .............................................................................4

**Other Authorities**

Black's Law Dictionary 1568 (7th ed. 1991) ......................................................20

**Rules**

Fed. R. App. P. 4 ....................................................................................................1

Fed. R. Civ. P. 12(b)(1)........................................................................................10

vi

## STATEMENT OF JURISDICTION

Appellant Gilbert P. Hyatt ("Hyatt") filed a complaint on April 4, 2014, seeking injunctive relief against Appellees' predecessors in office in their official capacities as California State Board of Equalization and California Franchise Tax Board Members. 4ER738-39.[1] The District Court (Hon. Garland E. Burrell, Jr.) determined that it lacked jurisdiction because the suit was barred by the Tax Injunction Act, 28 U.S.C. § 1341, and entered judgment against Hyatt, which was a final, appealable order that disposed of all claims of the parties. 1ER1. Pursuant to Fed. R. App. P. 4, Hyatt filed a timely notice of appeal on February 18, 2015. 2ER15-16. This Court has jurisdiction under 28 U.S.C. § 1291.

## ISSUES PRESENTED

1. Whether the District Court correctly dismissed for lack of subject matter jurisdiction under the Tax Injunction Act, 28 U.S.C. § 1341, due to the plain, speedy, and efficient remedy available to Hyatt under California law?

2. Whether, alternatively, the District Court's dismissal of Hyatt's complaint should be affirmed based on principles of comity?

## INTRODUCTION

Hyatt has improperly purchased, via hefty legal fees, a twenty-two year and counting extension for the payment of millions of dollars he owes in California state taxes. To avoid paying these taxes, Hyatt litigated these tax assessments on

---

[1] Citations to "ER" refer to pages in Hyatt's Excerpts of Record filed with the opening brief. Citations to "SER" refer to pages in the FTB Members' Supplemental Excerpts of Record. Citations to "Br." refer to pages in Hyatt's opening brief.

collateral grounds in three separate states – Nevada, California, and New York – and has now sought to entangle the federal court system as well. The District Court correctly held that regardless of the validity of Hyatt's claims, the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, prevented it from asserting jurisdiction over Hyatt's suit to enjoin the collection of state taxes.

Congress's serious concern over litigation interfering with the collection of state taxes led to the passage of the TIA and has consistently caused the federal courts to apply the TIA and principles of comity to dismiss cases like Hyatt's. The Senate Report to the TIA stated: "It is the common practice [in] the various States . . . that taxpayers may contest their taxes only in refund actions after payment under protest. This type of State legislation makes it possible for the States and their various agencies to survive while long-drawn-out tax litigation is in progress." *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 523 (1981) (quoting S. Rep. No 75-1035 (1937). Similarly, over sixty years ago, the Supreme Court of California neatly concluded: "The prompt payment of taxes is always important to the public welfare. It may be vital to the existence of a government. The idea that every taxpayer is entitled to the delays of litigation is unreason." *Modern Barber Colleges. v. Cal. Employment Stabilization Comm'n*, 192 P.2d 916, 919 (Cal. 1948) (quotations omitted). Long-drawn-out tax litigation is the essence of Hyatt's tax-avoidance strategy.

In this appeal, Hyatt neither disputes the validity of his underlying tax obligation nor challenges the constitutionality of the tax itself. Rather, Hyatt claims that he lacks an adequate state court remedy to assert his process-based

constitutional challenges. This argument is directly rebutted by the numerous federal decisions establishing that California's regulatory framework provides a plain, speedy, and efficient remedy to taxpayers, affording them recourse in state courts.

In order to sidestep this line of dispositive precedent, Hyatt retreats to an as-applied theory based on his allegedly unique circumstances. California taxpayers challenging residency determinations have been afforded the option of a narrow pre-payment remedy limited to the question of residency. Hyatt's position is that because he initially opted for this pre-payment remedy, he is entitled to pursue federal court intervention due to the alleged unavailability of access to constitutional remedies in this limited avenue of his choosing. Even if this were true, Hyatt could have paid the disputed tax and quickly accessed state courts. This pay-then-protest remedy has been continuously available to Hyatt from the outset.

There is nothing about Hyatt's case that would justify the extraordinary remedy of a permanent injunction barring California from continuing with pending state administrative proceedings or collecting taxes from Hyatt. If Hyatt's position were sincere and not merely a transparent attempt to avoid taxes, he would have sought an injunction requiring the state to promptly resolve his administrative protest. Furthermore, Hyatt does not cite to a single place in the record to show that he ever asked to expedite proceedings. Instead, the record is replete with delays caused by Hyatt's litigation and his ubiquitous requests for extension. Hyatt's suit asks the federal courts to provide a windfall by voiding his state tax bill. Because

Hyatt's request is barred by the plain language of the TIA and principles of comity, the District Court's dismissal order should be affirmed.

## STATEMENT OF THE CASE

### A. The Franchise Tax Board Has Statutory Authority to Administer California's Personal Income Tax Law.

Appellees Betty T. Yee, Jerome E. Horton, and Michael Cohen are the three Members of the California Franchise Tax Board ("FTB Members").[2] The FTB Members are the governing body for the larger Franchise Tax Board ("FTB") organization, which has the statutory duty to administer California's Personal Income Tax Law and Bank and Corporation Tax Law. CAL. REV. & TAX. CODE § 19501.

### B. The California Legislature Has Established Clear Procedures For Judicial Challenges By Taxpayers.

Under California's administrative procedures, a taxpayer is permitted to challenge an income tax assessment in state court in two primary ways. The standard "pay-then-protest" process permits a taxpayer to pay the disputed taxes and then file a refund claim with the FTB. CAL. REV. & TAX. CODE § 19382. If the FTB denies the refund claim, the taxpayer may immediately bring an action challenging the "tax computed and assessed [as] void in whole or in part" in state court. *Id.* When a refund claim is made, the FTB must act on it within six months or the taxpayer may "consider the claim disallowed and bring an action [in state court]." CAL. REV. & TAX. CODE § 19385.

---

[2] John Chiang was succeeded by Betty T. Yee as an FTB Member since Hyatt's Complaint was first filed.

Alternatively, a taxpayer may elect not to pay the assessment and pursue an administrative protest through the FTB, and then, if still dissatisfied, pursue an administrative appeal to the State Board of Equalization ("SBE"). CAL. REV. & TAX CODE §§ 19041-19048. If the taxpayer does not agree with the SBE decision, then he or she may commence an action in superior court against the FTB after payment of the assessed tax. CAL. REV. & TAX. CODE § 19382. However, where the tax is disputed solely on the basis of residency, California law allows the taxpayer to challenge the SBE's decision in superior court, on the residency grounds set forth in his or her protest, without paying the assessed tax. CAL. REV. & TAX CODE § 19381.

At any point, a taxpayer who initially brings a limited residency-based challenge to his or her income tax assessment under the Section 19381 process may elect to use the "pay-then-protest" process of Section 19382 by paying the disputed tax. CAL. REV. & TAX CODE § 19385.

## C. Hyatt Elected To Bring An Administrative Residency Protest Before Paying His Assessed Taxes.

Hyatt was a longtime California resident who claimed to have moved to Nevada on October 1, 1991, which was around the same time as he received millions of dollars in income as a result of certain licensing agreements. 1SER2. Hyatt filed a part-year California personal income tax return for 1991 and did not file a tax return for 1992. *Id.*; 1SER4. Due to multiple discrepancies in Hyatt's filings, the FTB initiated an audit in June 1993 to ascertain the legitimacy of Hyatt's asserted change of residence. 1SER3. Hyatt's tax returns were also audited

by the Internal Revenue Service. *See Franchise Tax Bd. v. Hyatt*, 335 P.3d 125, 152 (Nev. 2014).

Based on its comprehensive investigation, the FTB issued a detailed tentative determination letter concluding that Hyatt remained a California resident through April 1992 and that his 1991 California return was fraudulent. 1SER4. After Hyatt was given an opportunity to respond to the tentative determination, the FTB issued a Notice of Proposed Assessment ("NPA") for the 1991 and 1992 tax years. *Id.* Hyatt filed protests of the 1991 NPA in 1996 and the 1992 NPA in October 1997. *Id.*

## D. Hyatt Stalled The California Administrative Process Through Litigation In Other States.

Less than three months after he protested the 1992 tax year assessment, in January 1998, Hyatt attempted to sidestep the administrative process altogether and filed suit against the FTB in Nevada state court in Las Vegas. *Hyatt*, 335 P.3d at 130. Hyatt asserted multiple tort claims based on FTB's alleged conduct during its audit and sought both compensatory and punitive damages. *Id.* Additionally, Hyatt sought declaratory relief, requesting the Nevada state court to declare, among other things, that he was a Nevada resident as of September 26, 1991. *Id.* at 132.

Hyatt used the Nevada litigation to impede the tax proceedings, as evidenced in a memo from Hyatt's California tax attorney, Eugene Cowan, to his Nevada and California litigation attorneys of record in the Nevada case. 1SER7. The memo discussed a deliberate strategy by Hyatt to attempt to quash information subpoenas issued by the FTB. *Id.* ("While there are no "pure" tax reasons to quash …, there

may be tactical reasons to do so (such as making the FTB work for its requests from now on or taking this opportunity to file the motion in the Nevada courts or otherwise.)"). Hyatt's Nevada litigation is still ongoing, and the United States Supreme Court recently granted certiorari, for the second time in disputes between Hyatt and the FTB, to review the Nevada Supreme Court's decision denying the FTB the benefit of Nevada's sovereign immunity law. *See Hyatt*, 335 P.3d 125, *cert. granted,* 135 S. Ct. 2940 (2015); *Franchise Tax Bd. v. Hyatt*, 538 U.S. 488 (2003).

While the FTB was attempting to complete its administrative process, Hyatt refused to comply with FTB's administrative subpoenas and then litigated against those subpoenas in California courts. *Franchise Tax Bd. v. Gilbert P. Hyatt*, No. C043627, 2003 WL 23100266, at *1 (Cal. Ct. App. Dec. 31, 2003) (affirming order compelling Hyatt to comply with the FTB's administrative subpoena). Due to Hyatt's obstructionist tactics, the administrative process continued until November 2007, when the FTB ultimately denied both protests. The FTB issued two Notices of Assessments ("NOAs") upholding the audit assessments and fraud penalties in their entirety. 1SER6.

## E.    Hyatt Appealed To The SBE But Has Continued Litigating And Requesting Extensions to Postpone The Proceedings.

Hyatt appealed the NOAs by filing a notice of appeal with the SBE in January 2008. 1SER7. Hyatt took nearly 11 months after initiating the appeal to file his opening briefs and then, after the FTB filed its responses, Hyatt took

another 11 months to file his reply briefs. 4ER758-61. Hyatt also took another year to file supplemental briefs in response to the FTB reply briefs. *Id.*

Additionally, Hyatt sued the FTB in New York state court seeking to quash administrative subpoenas relating to that jurisdiction. 1SER8. This action was in response to the FTB attempting to gather evidence concerning information disclosed by Hyatt in the SBE appeal. 1SER8. Hyatt has initiated multiple proceedings in New York to prevent the FTB from gathering and using evidence. 1SER8-9; *Hyatt v. State of California Franchise Tax Bd.*, 105 A.D.3d 186, 206 (N.Y. App. Div. 2013) (denying Hyatt's motion to quash FTB's administrative subpoena in New York).

In April 2014, after the New York litigation was believed to have concluded, the SBE set a hearing date for October, 14 2014. 1SER9. Almost immediately, Hyatt requested a delay of that hearing by seeking four months to respond to the FTB's briefing submitted to the SBE. 1ER49. As a result of this request and Hyatt's other evidentiary objections, the SBE rescheduled the hearing sometime in or after March 2015. 1ER52-54. Hyatt's requests for extension have continued to the present and the SBE appeal remains pending with no new hearing date set.

## SUMMARY OF ARGUMENT

The resolution of this appeal depends on whether federal jurisdiction exists over Hyatt's challenge to his state tax assessment despite extensive and long-standing authority to the contrary. For all his argument, Hyatt has not identified a single decision where a federal court took jurisdiction over a taxpayer's as-applied challenge to a personal state tax assessment. This is due primarily to the TIA,

which prevents federal courts from exercising jurisdiction over suits that, like Hyatt's, seek to enjoin state tax administration and enforcement efforts.

The TIA categorically bars this suit on its face. To try to overcome that bar, Hyatt relies on a narrow exception to the TIA by claiming that he lacks a plain, speedy, and efficient remedy in California courts. This argument, however, is foreclosed by extensive and controlling precedent, which holds that California's pay-then-protest procedure is an adequate remedy. At all times, Hyatt could have paid the disputed tax, petitioned for a refund, and then at the very latest, filed suit within six months of the petition. CAL. REV. & TAX CODE §§ 19382, 19385. Hyatt's choice to forgo this option and instead litigate extensively does not manufacture federal jurisdiction.

Even absent the jurisdictional bar posed by the TIA, the District Court's dismissal should be affirmed on the basis of comity. The established doctrine of comity counsels that a federal court should not entertain constitutional challenges to the collection of state taxes because of the disruption such court actions would cause to state tax systems. California's system of revenue would be jeopardized if delinquent taxpayers were permitted to bring direct federal challenges that would delay and interrupt California's revenue streams. As a result, comity principles likewise support affirmance of the District Court's dismissal order.

## ARGUMENT

## I.    STANDARD OF REVIEW.

This Court reviews a Fed. R. Civ. P. 12(b)(1)  order of dismissal *de novo*. *Virgin v. County of San Luis Obispo*, 201 F.3d 1141, 1142 (9th Cir. 2000) (citing *Crist v. Leippe*, 138 F.3d 801, 803 (9th Cir. 1998)). Additionally, this Court "may affirm on any ground supported by the record." *See Tyler v. Cuomo*, 236 F.3d 1124, 1131 (9th Cir. 2000).[3]

Rule 12(b)(1) jurisdictional attacks can be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In resolving a factual attack on jurisdiction, this Court may "review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" and need not presume the truthfulness of the plaintiff's allegations. *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *Savage v. Glendale Union High Sch.,* 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003)).[4]

---

[3] The FTB Members preserve and do not waive any of the arguments advanced in the District Court, including immunity under the Eleventh Amendment and abstention pursuant to the *Younger v. Harris,* 401 U.S. 37 (1971) and *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943) doctrines, even if not specifically addressed herein.

[4] The FTB Members also brought a factual challenge to the exercise of jurisdiction on the basis that Hyatt caused the complained of delays. Hyatt failed to rebut this challenge, and the District Court order granting dismissal did not reach this issue. 1ER4.

## II. THE DISTRICT COURT CORRECTLY DISMISSED HYATT'S CLAIMS AS BARRED BY THE TAX INJUNCTION ACT.

The TIA bars Hyatt's request for a permanent injunction precluding the FTB Members from, as described in Hyatt's Complaint, "assess[ing] Hyatt, or collect[ing] . . . from Hyatt, taxes, penalties or interest for the 1991 and 1992 tax years, or any subsequent years based on the same claims and the assertions the FTB has made in the current pending administration proceeding." 4ER782. The TIA provides in no uncertain terms that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. This Court, in a similar case, held that "[b]ased on a plain reading of the [TIA], the district court does not have jurisdiction over the Taxpayers' action if it seeks district court interference with California's tax assessment and collection process." *Jerron West, Inc. v. State of Cal., State Bd. of Equalization*, 129 F.3d 1334, 1337 (9th Cir. 1997); *see also California v. Grace Brethren Church,* 457 U.S. 393, 408 (1982) ("It is plain from this language that the Tax Injunction Act prohibits a federal district court, in most circumstances, from issuing an injunction enjoining the collection of state taxes.").

The Supreme Court has characterized the TIA as a "broad jurisdictional barrier" that "limit[s] drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." *Arkansas v. Farm Credit Servs. of Cent. Ark.*, 520 U.S. 821, 825-26 (1997); *see also May Trucking Co. v. Oregon Dep't of Transp.*, 388 F.3d 1261, 1266 (9th Cir. 2004) (discussing Congress's concern "regarding the increased costs that states would bear if forced

to defend the imposition of state taxes in federal, rather than state, courts"). The TIA has been specifically construed to preclude federal jurisdiction over 42 U.S.C. § 1983 actions for injunctive relief like Hyatt's. *See Jerron West*, 129 F.3d at 1338. Hyatt's suit is an undisguised request for the federal courts to interfere with and restrain California's efforts to collect taxes and is therefore squarely within the scope of the TIA.

Hyatt's request to enjoin the pending administrative proceedings before the SBE further supports the applicability of the TIA. *Id.* (affirming dismissal of an action to enjoin ongoing proceedings before the California Board of Equalization because the TIA "prohibits relief where it would result in a restraint on tax assessment even though achieved indirectly"). This Court has held that the TIA divested a federal court of jurisdiction to issue an injunction that would have deprived states of the ability "to obtain the information necessary for assessment" of taxes, as that has the effect of "preclud[ing] [states] from taxing." *Blangeres v. Burlington N., Inc.*, 872 F.2d 327, 328 (9th Cir. 1989). As this Court noted, the "fact that the injunction would restrain assessment indirectly rather than directly does not make the [TIA] inapplicable." *Id.* The same result applies here to the portions of Hyatt's requests that would enjoin the FTB from "continuing the investigation and administrative proceedings against Hyatt." 4ER782.

The *"only exception"* to the TIA's preclusion of jurisdiction, which does not apply here, "is where a state does not provide the Taxpayers with an adequate state remedy." *Jerron West*, 129 F.3d at 1337 (emphasis added); *see also Rosewell,* 450 U.S. at 512 (noting that the TIA prohibits federal district courts from enjoining

state tax administration except in instances where the state-court remedy is not "plain, speedy and efficient"). The "plain, speedy and efficient" exception to the TIA is narrowly construed. *Grace Brethren Church*, 457 U.S. at 413; *Redding Ford v. Cal. State Bd. of Equalization*, 722 F.2d 496, 497 (9th Cir. 1983). Thus, the exception does not apply if the state-court remedy "meets certain minimal procedural criteria." *Rosewell*, 450 U.S. at 512.

The Supreme Court has emphasized the need for a "procedural interpretation in defining both the entire phrase [of plain, speedy and efficient] and its individual word components." *Id.* First, a state remedy is plain so long as there is not "uncertainty regarding its availability or effect." *Ashton v. Cory*, 780 F.2d 816, 819 (9th Cir. 1986). Second, a state remedy can be speedy even if it not as expeditious as the taxpayer desires. *Id.* at 821; *see also Rosewell*, 450 U.S. at 518-19 (noting that speedy is a "relative concept" and that "legal conflicts are not resolved as quickly as we would like"). Third, a state remedy is efficient even if it is not the best remedy available. *See Mandel v. Hutchinson,* 494 F.2d 364, 367 (9th Cir. 1974) (holding that the remedy need not even be equal to or better than that available in federal court); *see also Rosewell*, 450 U.S. at 517-18 (stressing that the word "efficient" represents procedural considerations such as unusual hardships "requiring ineffectual activity or an unnecessary expenditure of time or energy").

### A.    Hyatt's Argument that California's Procedure is Inadequate is Foreclosed by Decades of Controlling Precedent.

A clear and unbroken line of precedent establishes that the pay-then-protest procedure that Hyatt challenges is a "plain, speedy and efficient" state remedy

within the meaning of the TIA. *Rosewell*, 450 U.S. at 512 (holding that a regulatory framework requiring a taxpayer first to pay an allegedly unconstitutional tax and then to seek a refund through state administrative and judicial procedures constitutes a "plain, speedy and efficient remedy"). "It has consistently been held, *without a single instance of deviation*, that the refund action provided by California Personal Income Tax Law is a 'plain, speedy and efficient remedy' such as to invoke the restraints of 28 U.S.C. § 1341." *Aronoff v. Franchise Tax Bd.*, 348 F.2d 9, 11 (9th Cir. 1965) (emphasis added). Hyatt's artful pleading cannot circumvent *Aronoff,* which remains good law. *See, e.g., Jerron West,* 129 F.3d at 1339 (approving pay-then-protest remedy in the sales tax context); *Capitol Indus.-EMI, Inc. v. Bennett*, 681 F.2d 1107, 1113-14 (9th Cir. 1982) (approving pay-then-protest remedy in the corporate income tax context); *Mandel*, 494 F.2d at 367 (approving pay-then-protest remedy in the property tax context).

Moreover, the Supreme Court has specifically ruled on two separate occasions that the California pay-then-protest procedures constitute a plain, speedy, and efficient remedy. *See Franchise Tax Bd. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 338-39 (1989) (holding that in the foreign corporations tax context that "California's refund procedures constitute a plain, speedy, and efficient remedy"); *Grace Brethren Church*, 457 U.S. at 411-12 (noting that a refund after payment was the "exclusive remedy in many state tax systems" at the time the TIA was enacted).

### B.    The California Remedies Satisfy the TIA As Applied To Hyatt.

Hyatt had two equally available administrative avenues for challenging his tax assessment: (1) pay the tax immediately and petition the FTB for a refund, CAL. REV. & TAX. CODE § 19382; or (2) defer payment and file an administrative protest with the FTB with attendant appeal rights to the SBE. CAL. REV. & TAX CODE §§ 19041-48. Under the first option, a taxpayer may institute an action in superior court after the FTB denies the refund action or at the expiration of six months, whichever date is earlier. Under the second option, a taxpayer dissatisfied with his administrative outcome must pay the challenged assessment prior to instituting an action in superior court, unless the tax is challenged solely on the basis of residency. CAL. REV. & TAX CODE § 19381; CAL. CIV. PROC. CODE § 1060.5.

Hyatt opted for the latter option but always had the ability to proceed to state court by paying his assessed taxes. CAL. REV. & TAX. CODE § 19382. In his complaint, Hyatt concedes that the pay-then-protest procedure was an available remedy and that "Hyatt could choose to forgo th[e] administrative process by electing to pay the assessed taxes, penalties and interest to the FTB and file a refund claim." 4ER750-51. The availability of the Section 19382 pay-then-protest remedy, which definitively satisfies the TIA requirements, moots all of Hyatt's other arguments concerning other remedies. *See Rosewell*, 450 U.S. at 512; *Jerron West,* 129 F.3d at 1339.

That Hyatt has chosen not to avail himself of the pay-then-protest option is of no moment. *See Aluminum Co. of Am. v. Dep't of Treasury of State of Mich.,*

522 F.2d 1120, 1125 (6th Cir. 1975) (holding that failure to utilize a remedy does "not render that remedy insufficient under [the TIA]"). The specific circumstances of a particular taxpayer's situation do not affect whether the procedures as written are considered sufficient; even if a taxpayer lacks the means to pay the disputed tax, the pay-then-protest remedy is nevertheless considered an adequate remedy. *See Matheson v. Smith*, 12-35479, 2013 WL 6816700, *2 (9th Cir. Dec. 26, 2013) ("That Matheson was required to pay the tax before bringing some of her claims in state court does not render the state remedies inadequate under the Act, even if Matheson cannot actually pay the assessment."); *see also Wood v. Sargeant*, 694 F.2d 1159, 1160-61 (9th Cir. 1982) ("We cannot believe that Congress thought that the barrier to federal suits that it was erecting would have in it a door to the federal courts so wide as to admit every impecunious or financially distressed taxpayer..."). If an inability to pay does not provide grounds for a taxpayer to access federal court, then Hyatt's situation surely does not. Hyatt has not even alleged that he is unable to use the pay-then-protest procedures. Rather, Hyatt contends only that requiring him to now switch from his limited residency challenge to a pay-then-protest remedy would purportedly be "unfair." Br. 26. The TIA does not require that every remedy provided by a state be plain, speedy, and efficient, let alone fair, but instead that a taxpayer have at least one plain, speedy, and efficient remedy available, which Hyatt has always had at his disposal. *See Aluminum Co of Am..,* 522 F.2d at 1125.

### 1. The Speediness Of A State Remedy Must Be Compared To Its Federal Counterpart.

The relevant metric for TIA purposes is whether a taxpayer's remedy in state court is so much slower relative to a federal remedy as to deprive that taxpayer of adequate relief. *Rosewell*, 450 U.S. at 518-19. Hyatt alleges that Section 19382 cannot provide a speedy constitutional remedy because it "must be viewed in the context of the delay Mr. Hyatt has already faced in attempting to preserve and assert his rights under Section 19381." Br. 38. This is not the correct standard. The relatively speediness of the state remedy must be compared to the timeframe of the federal court. *See U.S. West, Inc. v. Nelson*, 146 F.3d 718, 725 (9th Cir. 1998). A state remedy is "'speedy' if it does not entail a significantly greater delay than a corresponding federal procedure." *Id.*

Here, the District Court correctly noted that Hyatt could use the pay-then-protest procedure available in California to access state courts within at most six months of opting for such a remedy. *See* CAL. REV. & TAX. CODE § 19385. Had Hyatt elected this procedure initially rather than filing a federal complaint, he could have been in state court well before the District Court dismissed for lack of jurisdiction. Moreover, the TIA specifically states that the "plain, speedy and efficient remedy" is one that "may be had in the courts of such State." 28 U.S.C. § 1341. The speediness of the FTB or SBE's administrative processes is irrelevant under the TIA because Hyatt has the ability to quickly access state courts following payment of his tax obligation regardless of the time it may take to complete the Section 19381 process.

### a. The Delays In The Administrative Process Were Primarily Caused By Hyatt's Litigation In Other States And Self-Serving Extensions in the California Administrative Proceeding.

Hyatt's own stalling of the administrative process does not give rise to federal jurisdiction over an action that cannot otherwise be heard in federal court due to the TIA. The pay-then-protest procedure is a plain, speedy, and efficient remedy on its face and does not become inadequate as a result of a taxpayer's deliberate attempts to delay proceedings and abuse the system. *See Capitol Indus.-EMI, Inc.*, 681 F.2d at 1115. As this Court noted in the *Capitol Indus.-EMI* case:

> Even assuming that [the taxpayer] must exhaust its state administrative remedies to be assured of an effective adjudication in state court . . . such a requirement does not necessarily render the state remedies inadequate . . . Although exhaustion of administrative remedies may result in a less speedy adjudication, it is also possible that the taxpayer may emerge victorious.

*Id.* Affirming the dismissal of a Section 1983 suit like Hyatt's, the Second Circuit held that delays in excess of twelve years from the state court administration of a protest as well as from the taxpayer's "considerable tactical maneuverings" did not undermine the proscription of the TIA. *Long Island Lighting Co. v. Town of Brookhaven,* 889 F.2d 428, 433 (2d Cir. 1989). Here, Hyatt's "tactical maneuverings" encompassed parallel litigation in Nevada, California, and New York (including multiple appeal and writ proceedings) as well as a pattern of stalling that continues up to this day. Hyatt cannot concoct federal jurisdiction by devising a litigation strategy that, from the outset, intentionally disrupted California's administrative process and attempted to delay the determination of his claim.

18

Tellingly, Hyatt has not pointed to a single instance where he sought to expedite resolution of, or requested an earlier decision in, his administrative proceeding. This is not surprising; Hyatt's clear objective is to avoid, not be assessed, taxes. Hyatt has requested numerous extensions of time to file responses before the SBE, the New York court, and the Nevada courts during the course of his tort litigation. 1SER4-9. It is not credible for Hyatt to argue that the FTB deliberately delayed the administrative protests when Hyatt has been the party initiating litigation in three separate jurisdictions. Hyatt should not be permitted to engage in a multi-front attack on California's administrative process through continued appeals and challenges to adverse rulings only to then claim that his remedies are not speedy or efficient.

### 2. There Is No Uncertainty As To Whether Hyatt Can Bring His Constitutional Claims In State Court.

Hyatt erroneously contends that the availability of the Section 19382 refund remedy in this case is "uncertain," and therefore not "plain" under the TIA, because he raises as-applied rather than facial constitutional challenges to the tax assessment. Br. 35-36. Section 19382 has specifically been upheld as a "plain" remedy under the TIA because "constitutional challenges to tax assessments may be raised in the California courts." *Capitol Indus.-EMI*, 681 F.2d at 1117. Hyatt can bring his constitutional claims in a refund action under Section 19382 at any time after paying and demanding refund of the assessed tax and waiting a mere six months. This procedure has always been available to Hyatt, and it will still be available to Hyatt if his tax assessments are upheld at the conclusion of his

challenge under Section 19381. The choice of remedies available to Hyatt under California law does not render Section 19382 any less adequate for purposes of the TIA.

California courts have, in fact, considered as-applied as well as facial constitutional challenges in Section 19382 cases. For example, in *Barclays Bank Int'l Ltd. v. Franchise Tax Bd.*, 14 Cal. Rptr. 2d 537, 538 (Cal. Ct. App. 1992), the court considered as-applied dormant commerce clause and due process claims under Section 19382.[5] Hyatt is also incorrect that Section 19382's use of the word "void" somehow suggests that it only authorizes facial, and not as applied, constitutional challenges. Br. 36. Not only is this argument foreclosed by precedent, the term "void" does not support Hyatt's conclusion. *See* BLACK'S LAW DICTIONARY 1568 (7th ed. 1991) (defining "void" as "[o]f no legal effect; null."). A tax assessment that is unconstitutional as applied is every bit as "void" as an assessment that is unconstitutional on its face.

In *Capitol Indus.-EMI,* this Court held that the "inability to produce certain evidence may cause the taxpayer to lose in the administrative proceedings because he may be unable to carry his burden of proof." 681 F.2d at 1117-18. Critically though, prejudice in the administrative proceedings will not "preclude judicial review of the Board's determination and of any constitutional challenges raised by

---

[5] The Court considered whether "California's unitary tax method of worldwide combined reporting …, *as applied* to foreign-based unitary corporate groups, was unconstitutional under the foreign commerce clause." *Barclays Bank,* 14 Cal. Rptr. 2d at 538-539 (emphasis added). With regard to the as applied due process claim, the Court held that the regulation at issue, "*as applied* to plaintiffs, did not violate due process." *Id*. at 546 (emphasis added).

the taxpayer." *Id.* The taxpayer in *Capitol Indus.-EMI* raised a nearly identical argument to Hyatt's by claiming that "its inability to produce [certain] evidence . . . renders the subject assessment unconstitutional." *Id.* Similarly, Hyatt claims that the passage of time has prevented him from introducing certain evidence. Yet, this Court held that the as-applied challenge "may be raised in state court following an unfavorable ruling by the Board." *Id.*

### C. The Adequacy Of California's Pay-Then-Protest Remedy Is Not Affected By Section 19381.

Contrary to Hyatt's argument, his choice to avail himself of the limited Section 19381 remedy does not make Section 19382's pay-then-protest remedy any less plain or speedy. By its plain language, Section 19381 is limited to residency challenges. CAL. REV. & TAX. CODE § 19381; *Franchise Tax Bd. v. Super. Ct.*, 261 Cal. Rptr. 236, 238 (Cal. Ct. App. 1989) (explaining that Section 19381's predecessor "authorize[s] a taxpayer who claims to be a nonresident to litigate that *one fact*") (emphasis added). Hyatt claims that Section 19381 was a representation that, without first paying his tax obligation, he "could choose to have the residency issue resolved administratively, with full judicial review of the administrative decision via a declaratory relief action." Br. 31. This remains true. Hyatt may complete the administrative review process, after which he can challenge the SBE's residency decision in state court. CAL. REV. & TAX. CODE § 19381. But the existence of the Section 19381 remedy does not alter the availability of California's pay-then-protest remedy and accordingly cannot be held to deprive Hyatt of that remedy.

As the Sixth Circuit held in *Heyne v. Metro. Nashville Pub. Schs.*, the "Due Process Clause . . . sets only the floor or lowest level of procedures acceptable" and that due process was satisfied via notice and a hearing concerning a decision by officials to suspend students. 655 F.3d 569 (6th Cir. 2011) (quoting *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 636 (6th Cir. 2005)). "Any greater process provided by a state, such as review by a school board, is completely gratuitous . . . Any such additional procedural protections are not required by due process nor do they give rise to any due process rights." *Id.*

Simply put, Section 19381 is an optional remedy. There is no requirement that this remedy be more expansive given the availability of California's full pay-then-protest remedy. Hyatt's choice to exercise the Section 19381 remedy does not undercut the effectiveness of the Section 19382 remedy that Hyatt opted not to use.

### 1. California Has Not Engaged In A "Bait and Switch" And The Cases Hyatt Cites Are Inapposite.

Hyatt erroneously argues that it would be a "bait and switch" to force him to pay his assessed taxes prior to asserting his constitutional claims. Br. 29-31. But unlike the cases on which Hyatt relies, this is not a situation where the statutory scheme at issue has changed mid-stream. Rather, Hyatt has always had two options for challenging his tax assessment. That he now wishes to pursue additional constitutional claims does not alter his rights or otherwise impugn California's statutory scheme. California law has long required prepayment before entertaining taxpayer challenges, and that requirement has been repeatedly upheld. *See, e.g., State Bd. of Equalization v. Super. Ct.*, 703 P.2d 1131, 1134 (Cal. 1985).

As the District Court correctly recognized, the two cases cited by Hyatt are entirely inapposite. First, in *Reich v. Collins*, Georgia actually did engage in a bait and switch; the taxpayers paid the taxes and then were left with no recourse whatsoever. 513 U.S. 106, 108 (1994). The Supreme Court noted that due process permits a state to maintain an exclusively pre-payment remedial scheme for challenging tax assessments or an exclusively post-payment remedial scheme, or both. *Id*. But it was improper when Georgia "held out what plainly appeared to be a 'clear and certain' post-deprivation remedy, in the form of its tax refund statute, and then declared, only after Reich and others had paid the disputed taxes, that no such remedy exists." *Id*. at 111. In contrast, here, Hyatt still has a remedy: he can pay the disputed taxes and mount a challenge in state court. *See* CAL. REV. & TAX. CODE § 19382.

Second, *Newsweek v. Florida Dep't of Revenue* presented an identical situation to *Reich*. 522 U.S. 442, 444-45 (1998). Under Florida law "there was a longstanding practice of permitting taxpayers to seek refunds . . . for taxes paid under an unconstitutional statute" but then the state court impermissibly altered that practice and "cut off Newsweek's recourse." *Id*. Here, California has not altered its remedial scheme or foreclosed any of Hyatt's options that have existed from the beginning of the audit through the present. There has been no intervening change in statute or case-law.

Indeed, self-serving attempts to access this "bait and switch" doctrine such as Hyatt's have been rejected by other courts. For example, in *Cromwell Louisville Assocs. v. Com.*, 323 S.W.3d 1 (Ky. 2010), the Supreme Court of Kentucky

rejected a materially identical taxpayer challenge. The Court held that *Reich* was "inapposite" because, in that case, Georgia "reconfigured its scheme, unfairly, in midcourse," whereas in *Cromwell*, Kentucky's statutory scheme "remained unchanged since 1992," years before the property taxes at issue were assessed. *Id.* at 6-7.

If Hyatt is arguing that rather than an actual change in the statute, California has effectively rendered Section 19381 a nullity via delays, then there is no case law to support this argument whatsoever. First, it fails straightaway because there are no due process rights to a remedy like Section 19381, which is not constitutionally mandated. *Nat'l Private Truck Council, Inc. v. Oklahoma Tax Comm'n*, 515 U.S. 582, 587 (1995). Hyatt does not have a federal right to a pre-deprivation adjudication of residency.[6] *Id.* ("As long as state law provides a clear and certain remedy . . . the States may determine whether to provide predeprivation process (e.g., an injunction) or instead to afford postdeprivation relief (e.g., a refund)") (internal quotations omitted). Second, if Hyatt's argument were accepted, then Section 19381 would be void on its face because it is only a limited remedy. It is a benefit provided to a narrow category of taxpayers and should not be abused in this manner by Hyatt.

---

[6] The cases cited by Hyatt such as *Perry v. Sindermann*, 408 U.S. 593, 597 (1972); *Speiser v. Randall*, 357 U.S. 513, 518-19 (1958); and *United Mine Workers v. Illinois State Bar Ass'n,* 389 U.S. 217, 222 (1967) are inapposite. Each of these cases requires an individual to trade one constitutional right for another. Hyatt has no constitutional right to a pre-deprivation remedy. *See Nat'l Private Truck Council, Inc.*, 515 U.S. at 587.

Crucially, Hyatt's arguments shift the focus away from the actual framework of the TIA. Hyatt incorrectly frames the analysis as whether he should be required to forfeit his Section 19381 privileges in order to bring a Section 19382 challenge. But the TIA analysis requires a comparison of the federal versus the state forum, not of various administrative remedies. *Rosewell*, 450 U.S. at 518-19. In California, the only way to access the state courts for all issues except for residency is through the pay-then-protest procedure. *See* CAL. REV. & TAX. CODE § 19382. Thus, this Court need not compare Section 19381 to Section 19382; the TIA only requires that there be one adequate remedy, not multiple options, whereby a taxpayer can assert his or her claims.

### 2. Even If Hyatt Were To Forfeit A Potential Recovery Of Attorney's Fees, He Would Not Be Entitled To Access Federal Court.

Hyatt's suggestion that his interest in a potential recovery of attorney's fees incurred in the current pre-deprivation Section 19381 process somehow changes the TIA analysis is misplaced. The pay-then-protest procedure has been consistently held to be an acceptable remedy under the TIA regardless of whether it includes additional remedies for the taxpayer such as interest or attorney's fees. *See, e.g., Rosewell*, 450 U.S. at 523-24 ("It would be wholly unreasonable, therefore, to construe a statute passed to limit federal-court interference in state tax matters to mean that Congress nevertheless wanted taxpayers from States not paying interest on refunds to have unimpaired access to the federal courts."). The potential loss of an administrative right to attorney's fees does not mean that the

general procedure is invalid. Furthermore, there are many specific reasons why the question of attorney's fees does not affect the TIA's jurisdictional bar.

First, Hyatt seeks a "permanent injunction forbidding Defendants as members of the FTB and SBE from continuing the investigation and administrative proceedings against Hyatt." 4ER782. Any attorney's fees recoverable under Section 19381 could only be awarded at the conclusion of the very administrative proceedings that Hyatt would enjoin in federal court. *Id.* Thus, the federal forum does not provide any advantage to Hyatt.

Second, Hyatt has not provided the Court with any authority or analysis to suggest that such fees would not be recoverable if he prevails in a post-deprivation challenge. Once Hyatt pays his taxes, he is entitled to "convert" his protest to a refund claim, for which he may file for a refund in superior court six months after such payment. CAL. REV. & TAX. CODE § 19335. Hyatt could then include constitutional challenges to the taxes assessed, including his theory that he was unjustly deprived of due process during his tax proceedings, which resulted in damage to him. *See Barclays Bank,* 14 Cal. Rptr. 2d at 538 (approving court's consideration in refund action of arguments based on Commerce Clause and Due Process Clause of U.S. Constitution). Thereafter, if successful, Hyatt could seek his attorney's fees related to the administrative proceedings in accordance with available provisions of law.

### III. COMITY PRINCIPLES REQUIRE THAT FEDERAL COURTS DECLINE TO INTERFERE WITH STATE FISCAL ADMINISTRATION.

This Court can also affirm the District Court's dismissal of Hyatt's claims on the basis of comity. The doctrine of comity is the prudential analogue to the TIA's statutory barrier to federal jurisdiction. Comity serves to ensure that "the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Younger,* 401 U.S. at 44. In *Levin v. Commerce Energy, Inc.*, the Supreme Court recited Justice Brennan's "cogent" explanation of "the special reasons justifying the policy of federal noninterference with state tax collection":

> The procedures for mass assessment and collection of state taxes and for administration and adjudication of taxpayers' disputes with tax officials are generally complex and necessarily designed to operate according to established rules. State tax agencies are organized to discharge their responsibilities in accordance with the state procedures. If federal declaratory relief were available to test state tax assessments, state tax administration might be thrown into disarray, and taxpayers might escape the ordinary procedural requirements imposed by state law. During the pendency of the federal suit the collection of revenue under the challenged law might be obstructed, with consequent damage to the State's budget, and perhaps a shift to the State of the risk of taxpayer insolvency. Moreover, federal constitutional issues are likely to turn on questions of state tax law, which, like issues of state regulatory law, are more properly heard in the state courts.

560 U.S. 413, 422 n. 2 (2010) (quoting *Perez v. Ledesma,* 401 U.S. 82, 128, n. 17 (1971) (opinion concurring in part and dissenting in part)).

Comity is broader than the TIA and applies to suits that the TIA might otherwise not reach. *Levin*, 560 U.S. at 424 (describing the principle of comity as

"more embracive than the TIA"); *see also Nat'l Private Truck Council, Inc.*, 515 U.S. at 590 ("the [TIA] may be best understood as but a partial codification of the federal reluctance to interfere with state taxation"); *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 110 (1981) ("Thus, the principle of comity which predated the [TIA] was not restricted by its passage.").

Comity has particular resonance in the realm of taxation as federal courts are frequently instructed to "refrain from 'interfer[ing] . . . with the fiscal operations of the state governments." *Direct Mktg. Ass'n v. Brohl*, 135 S. Ct. 1124, 1134 (2015) (quoting *Levin*, 560 U.S. at 422).[7] In *Fair Assessment*, the Court explained that Section 1983 actions challenging state tax laws are inherently intrusive, threatening to disrupt state tax collection and to chill even good-faith actions of state officials. 454 U.S. at 114-15. The Court held that "[i]n short, petitioner's action would in every practical sense operate to suspend collection of the state taxes . . . a form of

///

///

///

///

///

///

---

[7] The *Brohl* Court took no position, however, on whether the suit would be barred under the comity doctrine because, unlike here, Colorado did not "seek comity from either of the courts below" and therefore the Court left it to the "Tenth Circuit to decide on remand whether the comity argument remains available to Colorado." *Brohl*, 135 S. Ct. at 1134.

28

federal-court interference previously rejected by this court on principles of federalism." *Id.* (internal quotations omitted).[8]

Hyatt first argues that the doctrine of comity should not be applied because he does not have a "plain, adequate or complete remedy." Br. 41. While comity is only applicable when "the Federal rights of the persons could otherwise be preserved unimpaired," *Brohl*, 135 S. Ct. at 1134, the state remedy has been shown to be fully sufficient above.

Hyatt then contends that "there will be no wide ranging effect on California's treasury or any precedent that will cause a ripple effect on California's state tax process." Br. 42. This assertion is disingenuous because if Hyatt's lawsuit is allowed to proceed in federal court, there is nothing to stop any taxpayer from following Hyatt's playbook. Other taxpayers could initiate a pre-payment administrative challenge based on residency with the intention of asserting

---

[8] While Hyatt claims that the "breadth of the comity doctrine is not unlimited in the state tax administration context," he cites to a Ninth Circuit decision without mentioning that that case was taken up on appeal by the Supreme Court. *Winn v. Killian*, 307 F.3d 1011, 1019 (9th Cir. 2002) (*aff'd sub nom Hibbs v. Winn*, 542 U.S. 88 (2004)). The Ninth Circuit held that the TIA did not bar the challenge because in part "the relief by [respondents] . . . would result in the state's receiving more funds that could be used for the public benefit." *Winn*, 307 F.3d at 1019. Conversely, Hyatt's suit would stop California from collecting millions of assessed taxes. Moreover, *Hibbs* has been subsequently criticized by the Supreme Court and any exception to the TIA or comity recognized by *Hibbs* is now highly questionable. *See Levin*, 560 U.S. at 433 (Kennedy, J., concurring) ("The Court's rationale in *Hibbs v. Winn* . . . seems to me still doubtful."); *Id.* (Thomas, J., concurring) ("Although I, too, remain skeptical of the Court's decision in *Hibbs v. Winn* . . . I agree that it is not necessary for us to revisit that decision to hold that this case belongs in state court."). The relevant holding of *Hibbs* is that comity should not be applied outside of suits that seek to impede a state's collection of taxes. 542 U.S. at 96. Because Hyatt's suit seeks precisely to impede FTB's collection of taxes, it falls within the core of the comity doctrine under *Hibbs*.

constitutional claims after a few years and arguing that there is no adequate state court forum for the constitutional claims under the Section 19381 regime. Even more troubling is the opening of the federal courthouse to every dissatisfied taxpayer or tax protester that can cobble together a purportedly plausible constitutional challenge to a tax assessment based upon that taxpayer's own litigious and obstructionist behavior. Federal courts should not open the door to the flood of collateral attacks on California's procedures that Hyatt invites.

District courts in this Circuit consistently have held that the principle of comity should be extended to the "Franchise Tax Board and the State courts" to avoid fostering "confusion by interfering with a matter properly left in the State's independent domain." *Reese v. Nixon*, 347 F. Supp. 314, 318 (C.D. Cal. 1972); *see also Newton v. Poindexter*, 578 F. Supp. 277, 279 (E.D. Cal. 1984) (rejecting Section 1983 claims against FTB employee on the "grounds that the principle of comity bars the exercise of district court jurisdiction"). Comity controls here as well. Dismissal was appropriate regardless of the merits of Hyatt's specific constitutional arguments because the Supreme Court has clearly instructed federal courts to refrain from permitting litigants to challenge state taxes in the federal fora.

///

///

///

///

30

## CONCLUSION

The FTB Members respectfully request that the Court affirm the District Court's Order, which correctly dismissed Hyatt's Complaint based on the Tax Injunction Act.

DATED August 28, 2015.

                               /s/ Debbie Leonard

                               DEBBIE LEONARD

| | |
|---|---|
| CYNTHIA J. LARSEN | JAMES BRADSHAW |
| (Cal. Bar No. 123994) | (Cal. Bar No. 108765) |
| clarsen@orrick.com | jbradshaw@mcdonaldcarano.com |
| KATIE DeWITT | DEBBIE LEONARD |
| (Cal Bar No. 244673) | (Cal. Bar No. 226547) |
| kdewitt@orrick.com | dleonard@mcdonaldcarano.com |
| DAVID W. SPENCER | ADAM HOSMER-HENNER |
| (Cal. Bar No. 284121) | (Cal. Bar No. 298277) |
| dspencer@orrick.com | ahosmerhenner@mcdonaldcarano.com |
| | |
| ORRICK, HERRINGTON & SUTCLIFFE LLP | McDONALD CARANO WILSON LLP |
| 400 Capitol Mall | 100 West Liberty Street, 10th Floor |
| Suite 3000 | P.O. Box 2670 |
| Sacramento, CA 95814 | Reno, Nevada 89505 |
| Telephone: (916) 329-7970 | Telephone: (775) 788-2000 |

*Attorneys for Appellees Betty T. Yee,*
*Jerome E. Horton and Michael Cohen in*
*their official capacity as members of the*
*California Franchise Tax Board*

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Appellees are unaware of any related cases currently pending in this Court.


DATED August 28, 2015.

                           /s/ Debbie Leonard
                           DEBBIE LEONARD

CYNTHIA J. LARSEN
(Cal. Bar No. 123994)
clarsen@orrick.com
KATIE DeWITT
(Cal Bar No. 244673)
kdewitt@orrick.com
DAVID W. SPENCER
(Cal. Bar No. 284121)
dspencer@orrick.com

JAMES BRADSHAW
(Cal. Bar No. 108765)
jbradshaw@mcdonaldcarano.com
DEBBIE LEONARD
(Cal. Bar No. 226547)
dleonard@mcdonaldcarano.com
ADAM HOSMER-HENNER
(Cal. Bar No. 298277)
ahosmerhenner@mcdonaldcarano.com

ORRICK, HERRINGTON &
SUTCLIFFE LLP
400 Capitol Mall
Suite 3000
Sacramento, CA 95814
Telephone: (916) 329-7970

McDONALD CARANO WILSON LLP
100 West Liberty Street, 10th Floor
P.O. Box 2670
Reno, Nevada 89505
Telephone: (775) 788-2000

*Attorneys for Appellees Betty T. Yee,
Jerome E. Horton and Michael Cohen in
their official capacity as members of the
California Franchise Tax Board*

# ADDENDUM

28 U.S.C. § 1291 ...............................................................................1

CAL. CIV. PROC. CODE § 1060.5...........................................................2

CAL. REV. & TAX CODE § 19381 ..........................................................3

CAL. REV. & TAX CODE §§ 19041-19048 ........................................ 4-14

CAL. REV. & TAX. CODE § 19335 .......................................................15

CAL. REV. & TAX. CODE § 19385 .......................................................16

CAL. REV. & TAX. CODE § 19501 .......................................................17

United States Code Annotated
  Title 28. Judiciary and Judicial Procedure (Refs & Annos)
    Part IV. Jurisdiction and Venue (Refs & Annos)
      Chapter 83. Courts of Appeals (Refs & Annos)

28 U.S.C.A. § 1291

§ 1291. Final decisions of district courts

Currentness

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

**CREDIT(S)**

(June 25, 1948, c. 646, 62 Stat. 929; Oct. 31, 1951, c. 655, § 48, 65 Stat. 726; July 7, 1958, Pub.L. 85-508, § 12(e), 72 Stat. 348; Apr. 2, 1982, Pub.L. 97-164, Title I, § 124, 96 Stat. 36.)

Notes of Decisions (3310)

28 U.S.C.A. § 1291, 28 USCA § 1291
Current through P.L. 114-49 approved 8-7-2015

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

ADDENDUM - 1

West's Annotated California Codes
    Code of Civil Procedure (Refs & Annos)
      Part 2. Of Civil Actions (Refs & Annos)
        Title 14. Of Miscellaneous Provisions
          Chapter 8. Declaratory Relief (Refs & Annos)

West's Ann.Cal.C.C.P. § 1060.5

§ 1060.5. Action by one claiming to be nonresident for income tax purposes

Currentness

Any individual claiming to be a nonresident of the State of California for the purposes of the Personal Income Tax Law may commence an action in the Superior Court in the County of Sacramento, or in the County of Los Angeles, or in the City and County of San Francisco, against the Franchise Tax Board to determine the fact of his or her residence in this state under the conditions and circumstances set forth in Section 19381 of the Revenue and Taxation Code.

**Credits**

(Added by Stats.1955, c. 1555, p. 2834, § 1. Amended by Stats.1996, c. 952 (S.B.715), § 1.)

Notes of Decisions (5)

West's Ann. Cal. C.C.P. § 1060.5, CA CIV PRO § 1060.5
Current with urgency legislation through Ch. 224 of 2015 Reg.Sess.

**End of Document**      © 2015 Thomson Reuters. No claim to original U.S. Government Works.

ADDENDUM - 2

West's Annotated California Codes
    Revenue and Taxation Code (Refs & Annos)
        Division 2. Other Taxes (Refs & Annos)
            Part 10.2. Administration of Franchise and Income Tax Laws (Refs & Annos)
                Chapter 4. Payments and Assessments (Refs & Annos)
                    Article 3. Deficiency Assessments (Refs & Annos)

West's Ann.Cal.Rev. & T.Code § 19041

§ 19041. Protest against proposed deficiency assessment; time; contents

Effective: October 10, 1999
Currentness

(a) Within 60 days after the mailing of each notice of proposed deficiency assessment the taxpayer may file with the Franchise Tax Board a written protest against the proposed deficiency assessment, specifying in the protest the grounds upon which it is based.

(b) Any protest filed with the Franchise Tax Board on or before the last date specified for filing that protest by the Franchise Tax Board in the notice of proposed deficiency assessment (according to Section 19034) shall be treated as timely filed.

(c) The amendments made by the act adding this subdivision [1] shall apply to any notice mailed after December 31, 1999.

**Credits**
(Added by Stats.1993, c. 31 (S.B.3), § 26, eff. June 16, 1993, operative Jan. 1, 1994. Amended by Stats.1999, c. 931 (S.B.94), § 11, eff. Oct. 10, 1999.)

Notes of Decisions (5)

Footnotes
1       Stats.1999, c. 931 (S.B.94), § 11, eff. Oct. 10, 1999.
West's Ann. Cal. Rev. & T. Code § 19041, CA REV & TAX § 19041
Current with urgency legislation through Ch. 224 of 2015 Reg.Sess.

End of Document      © 2015 Thomson Reuters. No claim to original U.S. Government Works.

ADDENDUM - 3

West's Annotated California Codes
  Revenue and Taxation Code (Refs & Annos)
    Division 2. Other Taxes (Refs & Annos)
      Part 10.2. Administration of Franchise and Income Tax Laws (Refs & Annos)
        Chapter 4. Payments and Assessments (Refs & Annos)
          Article 3. Deficiency Assessments (Refs & Annos)

West's Ann.Cal.Rev. & T.Code § 19041.5

§ 19041.5. Deposits on potential underpayments; modification of federal provisions

Effective: October 7, 2005
Currentness

(a) Notwithstanding any other provision of this part, Part 10 (commencing with Section 17001), or Part 11 (commencing with Section 23001), the provisions of Section 6603 of the Internal Revenue Code, [1] relating to deposits made to suspend the running of interest on potential underpayments, shall apply, except as otherwise provided. A deposit shall not be considered a payment of tax for purposes of filing a claim for refund pursuant to Section 19306, converting an administrative action to an action on a claim pursuant to Section 19335, or filing an action pursuant to Section 19384, until either of the following occurs:

(1) The taxpayer provides a written statement to the Franchise Tax Board specifying that the deposit shall be a payment of tax for purposes of Section 19306, 19335, or 19384.

(2) The deposit is used to pay a final tax liability.

(b) Section 6603(d) of the Internal Revenue Code is modified to substitute the phrase "notice of proposed deficiency assessment under Article 3 of Chapter 4 of this part" for "30-day letter" in each place that the phrase "30-day letter" appears.

(c) In the case of any amount held by the Franchise Tax Board as a deposit in the nature of a cash bond pursuant to the provisions of this section prior to the amendments made by the act adding this subdivision, the date that the taxpayer identifies that amount as a deposit made pursuant to this section, as amended by the act adding this subdivision, shall be treated as the date that the amount is deposited for purposes of this section, as amended by the act adding this subdivision.

**Credits**
(Added by Stats.1999, c. 463 (A.B.41), § 1. Amended by Stats.2005, c. 691 (A.B.115), § 45, eff. Oct. 7, 2005.)

Footnotes
1        Internal Revenue Code sections are in Title 26 of the U.S.C.A.
West's Ann. Cal. Rev. & T. Code § 19041.5, CA REV & TAX § 19041.5
Current with urgency legislation through Ch. 224 of 2015 Reg.Sess.

**End of Document**        © 2015 Thomson Reuters. No claim to original U.S. Government Works.

**ADDENDUM - 4**

West's Annotated California Codes
    Revenue and Taxation Code (Refs & Annos)
      Division 2. Other Taxes (Refs & Annos)
        Part 10.2. Administration of Franchise and Income Tax Laws (Refs & Annos)
          Chapter 4. Payments and Assessments (Refs & Annos)
            Article 3. Deficiency Assessments (Refs & Annos)

West's Ann.Cal.Rev. & T.Code § 19042

§ 19042. Deficiency assessment; finality in absence of protest

Currentness

If no protest is filed, the amount of the proposed deficiency assessment becomes final upon the expiration of the 60-day period provided in Section 19041.

**Credits**

(Added by Stats.1993, c. 31 (S.B.3), § 26, eff. June 16, 1993, operative Jan. 1, 1994.)

Notes of Decisions (5)

West's Ann. Cal. Rev. & T. Code § 19042, CA REV & TAX § 19042
Current with urgency legislation through Ch. 224 of 2015 Reg.Sess.

End of Document          © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# ADDENDUM - 5

West's Annotated California Codes
   Revenue and Taxation Code (Refs & Annos)
     Division 2. Other Taxes (Refs & Annos)
       Part 10.2. Administration of Franchise and Income Tax Laws (Refs & Annos)
         Chapter 4. Payments and Assessments (Refs & Annos)
           Article 3. Deficiency Assessments (Refs & Annos)

West's Ann.Cal.Rev. & T.Code § 19043

§ 19043. Deficiency

Effective: January 1, 2002
Currentness

(a) For purposes of this part, "deficiency" means the amount by which the tax imposed by Part 10 (commencing with Section 17001) or Part 11 (commencing with Section 23001) exceeds the excess of--

(1) The sum of--

(A) The amount shown as the tax by the taxpayer on an original or amended return, if an original or amended return was filed, plus

(B) The amounts previously assessed (or collected without assessment) as a deficiency, over--

(2) The amount of rebates, as defined in paragraph (2) of subdivision (b), made.

(b) For purposes of this section:

(1) The tax imposed by Part 10 (commencing with Section 17001) and Part 11 (commencing with Section 23001) and the tax shown on an original or amended return shall both be determined without regard to payments on account of estimated tax, and without regard to the credit under Section 19002.

(2) "Rebate" means so much of an abatement, credit, refund, or other repayment, as was made on the ground that the tax imposed by Part 10 (commencing with Section 17001) or Part 11 (commencing with Section 23001) was less than the excess of the amount specified in paragraph (1) of subdivision (a) over the rebates previously made.

**Credits**
(Added by Stats.1993, c. 31 (S.B.3), § 26, eff. June 16, 1993, operative Jan. 1, 1994. Amended by Stats.1993, c. 877 (S.B.673), § 26.1, eff. Oct. 6, 1993, operative Jan. 1, 1994; Stats.2001, c. 191 (A.B.1116), § 2.)

West's Ann. Cal. Rev. & T. Code § 19043, CA REV & TAX § 19043

**ADDENDUM - 6**

Current with urgency legislation through Ch. 224 of 2015 Reg.Sess.

**End of Document**
© 2015 Thomson Reuters. No claim to original U.S. Government Works.

**ADDENDUM - 7**

Case: 15-15296, 08/28/2015, ID: 9665038, DktEntry: 19-1, Page 49 of 60

West's Annotated California Codes
    Revenue and Taxation Code (Refs & Annos)
        Division 2. Other Taxes (Refs & Annos)
            Part 10.2. Administration of Franchise and Income Tax Laws (Refs & Annos)
                Chapter 4. Payments and Assessments (Refs & Annos)
                    Article 3. Deficiency Assessments (Refs & Annos)

West's Ann.Cal.Rev. & T.Code § 19043.5

§ 19043.5. Notice to taxpayer of proposed carryover adjustment
amount; report by taxpayer of final adjusted carryover amount

Effective: January 1, 2002
Currentness

(a)(1) If the Franchise Tax Board determines that the amount of a carryover disclosed by the taxpayer on an original or amended return, including an amended return reporting federal adjustments pursuant to Section 18622, is more than the amount of the carryover disclosed by its own examination, it may mail a notice or notices to the taxpayer of the proposed carryover adjustment and the proposed adjusted carryover amount.

(2) For purposes of this section, "carryover" means the amount of a credit, loss, deduction, or other item that is shown on an original or amended return for carry forward to a subsequent taxable year.

(b) Except as otherwise provided in this section, the provisions of this article applicable to a proposed deficiency assessment shall be applicable to a proposed adjusted carryover amount, including protest and appeal rights as if that proposed adjusted carryover amount were a proposed deficiency assessment.

(c)(1) A proposed adjusted carryover amount shall become a final adjusted carryover amount under this section following a determination of the board regarding that proposed adjusted carryover amount that becomes final pursuant to the provisions of Section 19048.

(2) A final adjusted carryover amount shall be binding and conclusive with respect to the amount of that carryover for purposes of Part 10 (commencing with Section 17001), this part, and Part 11 (commencing with Section 23001), except in the following circumstances:

(A) In the event of fraud, malfeasance, or misrepresentation of a material fact.

(B) Subject to any provision of the Revenue and Taxation Code that expressly provides that effect be given to that provision notwithstanding any other law or rule of law.

(C) Subject to any law that is, or becomes, operative with respect to a taxable year affected by the final adjusted carryover amount.

## ADDENDUM - 8

Case: 15-15296, 08/28/2015, ID: 9665038, DktEntry: 19-1, Page 50 of 60

(D) Subject to any final federal adjustment that is made with respect to the taxpayer's federal income tax liability for a taxable year affected by the final adjusted carryover amount.

(E) In an action brought pursuant to provisions of Section 19382.

(d)(1) In any case where there is a final adjusted carryover amount with respect to a carryover, the taxpayer shall report that final adjusted carryover amount on an original or amended return for any subsequent year.

(2) If a taxpayer fails to comply with paragraph (1), then any adjustment required to make the amount of the carryover shown on the return for any year consistent with the final adjusted carryover amount shall be treated as arising out of a mathematical error and assessed and collected under Section 19051.

(e) Except as provided in subdivision (c), this section shall not affect the determination, issuance, assessment, collection, or validity of a deficiency assessment under this part.

**Credits**
(Added by Stats.2001, c. 191 (A.B.1116), § 3.)

West's Ann. Cal. Rev. & T. Code § 19043.5, CA REV & TAX § 19043.5
Current with urgency legislation through Ch. 224 of 2015 Reg.Sess.

---

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

## ADDENDUM - 9

> West's Annotated California Codes
>> Revenue and Taxation Code (Refs & Annos)
>>> Division 2. Other Taxes (Refs & Annos)
>>>> Part 10.2. Administration of Franchise and Income Tax Laws (Refs & Annos)
>>>>> Chapter 4. Payments and Assessments (Refs & Annos)
>>>>>> Article 3. Deficiency Assessments (Refs & Annos)

West's Ann.Cal.Rev. & T.Code § 19044

§ 19044. Protest; reconsideration of assessment; hearing

Currentness

(a) If a protest is filed, the Franchise Tax Board shall reconsider the assessment of the deficiency and, if the taxpayer has so requested in his or her protest, shall grant the taxpayer or his or her authorized representatives an oral hearing. Chapter 4.5 (commencing with Section 11400) of Part 1 of Division 3 of Title 2 of the Government Code does not apply to a hearing under this subdivision.

(b) The Franchise Tax Board may act on the protest in whole or in part. In the event the Franchise Tax Board acts on the protest in part only, the remaining part of the protest shall continue to be under protest until the Franchise Tax Board acts on that part.

**Credits**
(Added by Stats.1993, c. 31 (S.B.3), § 26, eff. June 16, 1993, operative Jan. 1, 1994. Amended by Stats.1995, c. 938 (S.B.523), § 87, operative July 1, 1997.)

**Editors' Notes**

**LAW REVISION COMMISSION COMMENTS**

1995 Amendment

Section 19044 is amended to make clear that the general provisions of the Administrative Procedure Act do not apply to an oral deficiency assessment protest hearing, which is investigative and informal in nature. *Cf.* Gov't Code § 11415.50 (when adjudicative proceeding not required). A taxpayer that is unable to resolve the issue at the Franchise Tax Board level has available an administrative hearing remedy before the State Board of Equalization. See Sections 19045-19048. [25 Cal.L.Rev.Comm. Reports 711 (1995)].

Notes of Decisions (8)

West's Ann. Cal. Rev. & T. Code § 19044, CA REV & TAX § 19044
Current with urgency legislation through Ch. 224 of 2015 Reg.Sess.

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

**ADDENDUM - 10**

| |
|---|
| West's Annotated California Codes |
|    Revenue and Taxation Code (Refs & Annos) |
|       Division 2. Other Taxes (Refs & Annos) |
|          Part 10.2. Administration of Franchise and Income Tax Laws (Refs & Annos) |
|             Chapter 4. Payments and Assessments (Refs & Annos) |
|                Article 3. Deficiency Assessments (Refs & Annos) |

West's Ann.Cal.Rev. & T.Code § 19045

§ 19045. Protest; finality of action; time for appeal

Effective: October 10, 1999
Currentness

(a) The Franchise Tax Board's action upon the protest, whether in whole or in part, is final upon the expiration of 30 days from the date when it mails notice of its action to the taxpayer, unless within that 30-day period the taxpayer appeals in writing from the action of the Franchise Tax Board to the board.

(b)(1) The Franchise Tax Board's notice of action upon protest shall include the date determined by the Franchise Tax Board as the last day on which the taxpayer may file an appeal with the board.

(2) Any appeal to the board filed by the taxpayer on or before the date for filing an appeal specified in the notice (pursuant to paragraph (1)) shall be treated as timely filed.

(c) This section shall apply to any notice mailed after December 31, 1999.

**Credits**
(Added by Stats.1993, c. 31 (S.B.3), § 26, eff. June 16, 1993, operative Jan. 1, 1994. Amended by Stats.1999, c. 931 (S.B.94), § 12, eff. Oct. 10, 1999.)

Notes of Decisions (2)

West's Ann. Cal. Rev. & T. Code § 19045, CA REV & TAX § 19045
Current with urgency legislation through Ch. 224 of 2015 Reg.Sess.

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

**ADDENDUM - 11**

West's Annotated California Codes
    Revenue and Taxation Code (Refs & Annos)
      Division 2. Other Taxes (Refs & Annos)
        Part 10.2. Administration of Franchise and Income Tax Laws (Refs & Annos)
          Chapter 4. Payments and Assessments (Refs & Annos)
            Article 3. Deficiency Assessments (Refs & Annos)

West's Ann.Cal.Rev. & T.Code § 19046

§ 19046. Appeal to Board of Equalization; addressing and mailing

Currentness

Two copies of the appeal and two copies of any supporting documents shall be addressed and mailed to the State Board of Equalization at Sacramento, California. Upon receipt of the appeal, the board shall provide one copy of the appeal and one copy of any supporting documents to the Franchise Tax Board at Sacramento, California.

**Credits**

(Added by Stats.1993, c. 31 (S.B.3), § 26, eff. June 16, 1993, operative Jan. 1, 1994.)

Notes of Decisions (2)

West's Ann. Cal. Rev. & T. Code § 19046, CA REV & TAX § 19046
Current with urgency legislation through Ch. 224 of 2015 Reg.Sess.

**ADDENDUM - 12**

West's Annotated California Codes
    Revenue and Taxation Code (Refs & Annos)
        Division 2. Other Taxes (Refs & Annos)
            Part 10.2. Administration of Franchise and Income Tax Laws (Refs & Annos)
                Chapter 4. Payments and Assessments (Refs & Annos)
                    Article 3. Deficiency Assessments (Refs & Annos)

West's Ann.Cal.Rev. & T.Code § 19047

§ 19047. Appeal; hearing and determination; notice

Currentness

The board shall hear and determine the appeal and thereafter shall forthwith notify the taxpayer and the Franchise Tax Board of its determination and the reasons therefor.

**Credits**

(Added by Stats.1993, c. 31 (S.B.3), § 26, eff. June 16, 1993, operative Jan. 1, 1994.)

Notes of Decisions (5)

West's Ann. Cal. Rev. & T. Code § 19047, CA REV & TAX § 19047
Current with urgency legislation through Ch. 224 of 2015 Reg.Sess.

**End of Document**                                       © 2015 Thomson Reuters. No claim to original U.S. Government Works.

ADDENDUM - 13

West's Annotated California Codes
    Revenue and Taxation Code (Refs & Annos)
        Division 2. Other Taxes (Refs & Annos)
            Part 10.2. Administration of Franchise and Income Tax Laws (Refs & Annos)
                Chapter 4. Payments and Assessments (Refs & Annos)
                    Article 3. Deficiency Assessments (Refs & Annos)

West's Ann.Cal.Rev. & T.Code § 19048

§ 19048. Appeal; finality; rehearing

Currentness

The board's determination becomes final upon the expiration of 30 days from the time of the determination unless within the 30-day period the taxpayer or the Franchise Tax Board files a petition for rehearing with the board. In that event the determination becomes final upon the expiration of 30 days from the time the board issues its opinion on the petition.

**Credits**

(Added by Stats.1993, c. 31 (S.B.3), § 26, eff. June 16, 1993, operative Jan. 1, 1994.)

Notes of Decisions (2)

West's Ann. Cal. Rev. & T. Code § 19048, CA REV & TAX § 19048
Current with urgency legislation through Ch. 224 of 2015 Reg.Sess.

---

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

**ADDENDUM - 14**

---

| West's Annotated California Codes |
| --- |
| Revenue and Taxation Code (Refs & Annos) |
| Division 2. Other Taxes (Refs & Annos) |
| Part 10.2. Administration of Franchise and Income Tax Laws (Refs & Annos) |
| Chapter 6. Overpayments and Refunds (Refs & Annos) |
| Article 1. Claim for Refund (Refs & Annos) |

West's Ann.Cal.Rev. & T.Code § 19335

§ 19335. Payment during pendency of protest or appeal; treatment as claim for refund

Currentness

If, with or after the filing of a protest or an appeal to the State Board of Equalization pursuant to Article 3 (commencing with Section 19031) of Chapter 4, a taxpayer pays the tax protested before the Franchise Tax Board acts upon the protest, or the board upon the appeal, the Franchise Tax Board or board shall treat the protest or the appeal as a claim for refund or an appeal from the denial of a claim for refund filed under this article.

**Credits**
(Added by Stats.1993, c. 31 (S.B.3), § 26, eff. June 16, 1993, operative Jan. 1, 1994.)

Notes of Decisions (2)

West's Ann. Cal. Rev. & T. Code § 19335, CA REV & TAX § 19335
Current with urgency legislation through Ch. 224 of 2015 Reg.Sess.

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

**ADDENDUM - 15**

West's Annotated California Codes
    Revenue and Taxation Code (Refs & Annos)
      Division 2. Other Taxes (Refs & Annos)
        Part 10.2. Administration of Franchise and Income Tax Laws (Refs & Annos)
          Chapter 6. Overpayments and Refunds (Refs & Annos)
            Article 3. Suit for Refund (Refs & Annos)

West's Ann.Cal.Rev. & T.Code § 19385

§ 19385. Failure to mail notice of action; right to treat claim as disallowed and to bring action

Currentness

If the Franchise Tax Board fails to mail notice of action on any refund claim within six months after the claim was filed, the taxpayer may, prior to mailing of notice of action on the refund claim, consider the claim disallowed and bring an action against the Franchise Tax Board on the grounds set forth in the claim for the recovery of the whole or any part of the amount claimed as an overpayment. For substitution of the 120-day period for the six-month period contained in this section in a Title 11 case, see Section 505(a)(2) of Title 11 of the United States Code.

**Credits**

(Added by Stats.1993, c. 31 (S.B.3), § 26, eff. June 16, 1993, operative Jan. 1, 1994.)

Notes of Decisions (3)

West's Ann. Cal. Rev. & T. Code § 19385, CA REV & TAX § 19385
Current with urgency legislation through Ch. 224 of 2015 Reg.Sess.

**End of Document**                                                      © 2015 Thomson Reuters. No claim to original U.S. Government Works.

**ADDENDUM - 16**

West's Annotated California Codes
  Revenue and Taxation Code (Refs & Annos)
    Division 2. Other Taxes (Refs & Annos)
      Part 10.2. Administration of Franchise and Income Tax Laws (Refs & Annos)
        Chapter 7. Administration of Tax (Refs & Annos)
          Article 1. Powers and Duties of Franchise Tax Board (Refs & Annos)

West's Ann.Cal.Rev. & T.Code § 19501

§ 19501. Administration and enforcement; creation of districts; branch offices

Currentness

The Franchise Tax Board shall administer and enforce Part 10 (commencing with Section 17001), Part 10.7 (commencing with Section 21001), Part 11 (commencing with Section 23001), and this part. For this purpose, it may divide the state into a reasonable number of districts, in each of which a branch office or offices may be maintained during all or part of the time as may be necessary.

**Credits**

(Added by Stats.1993, c. 31 (S.B.3), § 26, eff. June 16, 1993, operative Jan. 1, 1994.)

Notes of Decisions (4)

West's Ann. Cal. Rev. & T. Code § 19501, CA REV & TAX § 19501
Current with urgency legislation through Ch. 224 of 2015 Reg.Sess.

End of Document

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

ADDENDUM - 17

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 28.1(e)(2)(B) and 32(a)(7)(C) and Ninth Circuit Rule 32-1, I certify that the Brief of the Appellees California Franchise Tax Board Members is proportionately spaced, has a typeface of 14 point, and contains 8,186 words.

DATED August 28, 2015.

/s/ Debbie Leonard
DEBBIE LEONARD

CYNTHIA J. LARSEN
(Cal. Bar No. 123994)
clarsen@orrick.com
KATIE DeWITT
(Cal Bar No. 244673)
kdewitt@orrick.com
DAVID W. SPENCER
(Cal. Bar No. 284121)
dspencer@orrick.com

ORRICK, HERRINGTON &
SUTCLIFFE LLP
400 Capitol Mall
Suite 3000
Sacramento, CA 95814
Telephone: (916) 329-7970

JAMES BRADSHAW
(Cal. Bar No. 108765)
jbradshaw@mcdonaldcarano.com
DEBBIE LEONARD
(Cal. Bar No. 226547)
dleonard@mcdonaldcarano.com
ADAM HOSMER-HENNER
(Cal. Bar No. 298277)
ahosmerhenner@mcdonaldcarano.com

McDONALD CARANO WILSON LLP
100 West Liberty Street, 10th Floor
P.O. Box 2670
Reno, Nevada 89505
Telephone: (775) 788-2000

*Attorneys for Appellees Betty T. Yee,*
*Jerome E. Horton and Michael Cohen in*
*their official capacity as members of the*
*California Franchise Tax Board*

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2015, I electronically filed the foregoing Brief of the Appellees California Franchise Tax Board Members with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


 /s/    Pamela Miller
An Employee of McDonald Carano Wilson LLP