No. 15-15296

IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

GILBERT P. HYATT,

*Plaintiff-Appellant,*

v.

DIANE L. HARKEY, in her official capacity as California State
Board of Equalization member; JEROME E. HORTON, in his
official capacity as California Franchise Tax Board member and
California State Board of Equalization member; MICHAEL
COHEN, in his official capacity as California Franchise Tax Board
member; BETTY T. YEE, in her official capacity as California
Franchise Tax Board member and California State Board of
Equalization member; GEORGE RUNNER, in his official capacity
as California State Board of Equalization member; FIONA MA, in
her official capacity as California State Board of Equalization
member,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of California
Case No. 2:14-cv-00849-GEB-DAD (Hon. Garland E. Burrell, Jr.)

REPLY BRIEF OF APPELLANT
GILBERT P. HYATT

Donald J. Kula
Oliver M. Gold
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Erwin Chemerinsky, Esq.
EChemerinsky@law.uci.edu
UC IRVINE SCHOOL OF LAW
401 E. Peltason Drive, Suite 1000
Irvine, CA 92697-8000
Telephone: 949.824.8814
Facsimile: 949.824.7336

Malcolm Segal, Bar No. 075481
MSegal@segal-pc.com
SEGAL & ASSOCIATES, PC
400 Capitol Mall, Suite 2550
Sacramento, CA 95814
Telephone: 916.441.0886
Facsimile: 916.475.1231

Attorneys for Appellant Gilbert P. Hyatt

# TABLE OF CONTENTS

**Page**

I. Introduction ................................................................................. 1

II. The TIA "refund" cases cited by Appellees do not address the issue before the Court and do not support the draconian result that Appellees advocate ............................................................ 4

    A. The TIA cases cited by SBE Appellees do not hold that the State can refuse to provide due process in an available statutory remedy merely because there is also a refund process........................ 5

    B. In other contexts, courts reject the notion that denial of a pre-deprivation due process remedy is excused where a post-deprivation due process remedy also exists ........................................ 8

    C. In choosing the statutory pre-payment remedy, Mr. Hyatt has not "failed to utilize the refund remedy."......................................... 10

III. Even if considered, the Section 19382 remedy is highly uncertain based on the constitutional claims in this case, and therefore fails to meet the standard required under the TIA......................................... 12

    A. The SBE Appellees' Section 19382 arguments do not address the inadequacies of a refund action as addressed in Mr. Hyatt's opening brief...................................................................... 12

    B. The FTB Appellees are wrong in stating that Mr. Hyatt can have his constitutional claims heard in a refund case under Section 19382 within a "mere" six months...................................... 14

IV. Contrary to the FTB Appellees' arguments, the Court must accept Mr. Hyatt's well pleaded and judicially determined facts of excessive delay by the State as true.................................................. 16

V. The *Younger* abstention doctrine and comity principles do not bar federal court jurisdiction here ................................................. 18

## TABLE OF CONTENTS
(continued)

**Page**

A.     Recent Supreme Court authority confirms that the Younger abstention doctrine has no application here ...................................... 18

B.     Comity principles do not warrant dismissal of this complaint ......... 19

VI.    Mr. Hyatt has properly stated a claim for violation of due process..... 21

VII.   Conclusion ................................................................................. 27

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aluminum Co. of Am. v. Dep't of Treasury of State of Michigan*,
   522 F.2d 1120 (6th Cir. 1975) ........................................................................ 11

*Am. Consumer Pub. Ass'n Inc. v. Margosian*,
   349 F.3d 1122 (9th Cir. 2003) ....................................................................... 20

*Anderson v. Cal. Franchise Tax Bd.*,
   No. 09-4015 SBA, 2010 WL 334456 (N.D. Cal. Jan. 28, 2010)...................... 11

*Aronoff v. Franchise Tax Board*,
   348 F.2d 9 (9th Cir. 1965) ............................................................................... 7

*Augustine v. United States*,
   704 F.2d 1074 (9th Cir. 1983) ....................................................................... 17

*Barclays Bank Int'l Ltd. v. Franchise Tax Bd.*,
   10 Cal. App. 4th 1742 (Cal. Ct. App. 1992)..................................................... 14

*Cal. v. Grace Brethren Church*,
   457 U.S. 393 (1982)................................................................................. 6, 7, 26

*Capital Industries-EMI, Inc. v. Bennett*,
   681 F.2d 1107 (9th Cir. 1982) ....................................................................... 13

*City Vending of Muskogee, Inc. v. Okla. Tax Comm'n*,
   898 F.2d 122 (10th Cir. 1990) ....................................................................... 11

*Cleveland Board of Education v. Loudermill*,
   470 U.S. 532 (1985)........................................................................................ 22

*Doe v. Holy See,*
   557 F.3d 1066 (9th Cir. 2009) ....................................................................... 17

*Fair Assessment in Real Estate Ass'n, Inc. v. McNary*,
   454 U.S. 100 (1981)................................................................................... 19, 20

# TABLE OF AUTHORITIES
(continued)

**Page**

*Franchise Tax Bd. of Cal. v. Alcan Aluminum, Ltd.*,
  493 U.S. 331 (1990) ................................................................ 6

*Goldberg v. Kelly*,
  397 U.S. 254 (1970) .............................................................. 23

*Henry v. Metro Dade City*,
  329 F.2d 780 (5th Cir. 1964) ............................................... 11

*Jerron West, Inc. v. State Bd. of Equalization*,
  129 F.3d 1334 (9th Cir. 1998) ....................................... 7, 11

*Levin v. Commerce Energy, Inc.*,
  560 U.S. 413 (2010) ........................................................ 20, 21

*Lowe v. Washoe County*,
  627 F.3d 1151 (9th Cir. 2010) ............................................. 14

*May Trucking Co. v. Oregon Dep't of Transp.*,
  No. CV 02-413-HA, 2003 WL 25730507 (D. Or Mar. 17, 2003),
  aff'd, 388 F.3d 1261 (9th Cir. 2004) ................................... 20

*McKesson Corp. v. Div. of Alcoholic Beverages and Tobacco*,
  496 U.S. 18 (1990) ............................................................... 26

*Nat'l Private Truck Council, Inc. v. Oklahoma Tax Comm'n*,
  515 U.S. 582 (1995) ........................................................ 23, 24

*Newsweek v. Florida Dep't of Revenue*,
  522 U.S. 442 (1998) ............................................................. 12

*Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*,
  477 U.S. 619 (1986) ............................................................. 20

*Phillips v. Comm'r of Internal Revenue*,
  283 U.S. 589 (1931) ............................................................. 25

# TABLE OF AUTHORITIES
(continued)

**Page**

*Quigley v. Cal. Franchise Tax Bd*,
  No. C00-01662 WHA, 2000 WL 1336612 (N.D. Cal. Sept. 12,
  2000), aff'd, 14 F. App'x 910 (9th Cir. 2001) ...................................................... 8

*Reich v. Collins*,
  513 U.S. 106 (1994) ................................................................................................ 12

*Sack Bros. Loan Co. v. Cunningham*,
  578 F.2d 172 (7th Cir. 1978) .......................................................................... 10, 11

*Sprint Communications v. Jacobs*,
  134 S. Ct. 584 (2013) ....................................................................................... 18, 19

*Swenson v. Siskiyou County*,
  498 Fed.Appx. 719 (9th Cir. 2012) .................................................................... 9, 22

*Wood v. Sargeant*,
  694 F.2d 1159 (9th Cir. 1982) ................................................................................ 7

*Younger v. Harris*,
  401 U.S. 37 (1971) ........................................................................................... 18, 19

*Zimmerman v. City of Oakland*,
  255 F.3d 734 (9th Cir. 2001) ............................................................................ 9, 22

*Zinermon v. Burch*,
  494 U.S. 113 (1990) ..................................................................................... 8, 9, 22

STATUTES

26 U.S.C. § 280(a)(1) ................................................................................................. 25

Cal. Rev. & Tax. Code § 19335 ................................................................................ 15

Cal. Rev. & Tax. Code § 19381 ........................................................................... passim

Cal. Rev. & Tax. Code § 19382 ........................................................................... passim

Cal. Rev. & Tax. Code § 19385 ................................................................................ 15

**TABLE OF AUTHORITIES**
(continued)

**Page**

Tax Injunction Act ............................................................................. passim

## I.    Introduction

Appellees concede that Section 19381[1] fails to provide Mr. Hyatt a state remedy for his constitutional claims.  Instead, both the SBE Appellees[2] and the FTB Appellees[3] point to California's refund process, Section 19382, and argue that case law has consistently approved California's refund process as compliant with the Tax Injunction Act (the "TIA").  But those cases have no application to the circumstance here, where the taxpayer relied in good faith on the pre-payment process provided by the State in Section 19381.  No case holds that in that circumstance, the taxpayer must abandon a separate statutory process and instead switch to the refund process in order to have a constitutional challenge, which stems from the separate statutory process, heard.  The TIA does not provide a trump card for states to ignore their own statutory law.

Appellees nonetheless argue that the TIA bars a suit so long as the refund process was available "some time," even if not utilized by the taxpayer.  But again,

---

[1] Unless otherwise indicated, "Section" refers to the California Revenue & Taxation Code.

[2] "SBE Appellees" refers to Appellees Diane L. Harkey, Jerome E. Horton, Betty T. Yee, George Runner, Fiona Ma, each in their official capacity as a member of the California State Board of Equalization (the "SBE").

[3] "FTB Appellees" refers to Jerome E. Horton, Michael Cohen, And Betty T. Yee, each in their official capacity as a member of the California Franchise Tax Board (the "FTB").  "Appellees" refers to both FTB Appellees and SBE Appellees.

the cases on which Appellees rely have no application here because they address the circumstance where a taxpayer either failed to complete the state's administrative process or never pursued it, and thereby did not utilize the only option provided by the state. Those cases do not address the circumstance here where the taxpayer is pursuing an additional and separate process offered by the state.

Mr. Hyatt has attempted for two decades under Section 19381 to obtain resolution on his administrative challenge to the state's tax assessment based on non-residency, knowing, if successful, he can challenge that result in a *de novo* court proceeding without having to first pay the tax. To force Mr. Hyatt to now switch to the 19382 process—in order to pursue his constitutional claims—would not only require him to pay the disputed tax and forego his right (if successful) to recover the millions of dollars of attorneys' fees he has incurred in the Section 19381 process, but also to pay the tens of millions of dollars in interest that have accumulated only because of the State's unconstitutional delay. Under none of the cases cited by Appellees can Section 19382 be considered a "plain, speedy and efficient remedy" in these circumstances.

The FTB Appellees also dispute the facts alleged by Mr. Hyatt regarding the cause of the 20-year delay in his administrative challenge of the audit results.[4]  But Mr. Hyatt's allegations of bad faith delay by the FTB in the administrative process are well pleaded and supported by a substantial evidentiary record from a related but separate lawsuit in Nevada.  In the Nevada case, it was conclusively determined by a jury trial (3 ER 329), and then affirmed by the Nevada Supreme Court with specific citations to evidence (4 ER 609), that the FTB, not Mr. Hyatt, was the cause of the long delay in the 11-year protest phase of the administrative process.  The findings were cited by the Nevada Supreme Court as part of the evidence sufficient to sustain the jury's finding that the FTB committed fraud during the audit and protest phases as well as intentionally inflicted emotional distress upon Mr. Hyatt.  (4 ER 601, 609).

The facts as alleged must be taken as true for the purposes of the motion to dismiss.[5]  In all events, to the extent the Court would view the facts disputed by the

---

[4] Throughout the briefing, Appellant has referenced the terms 22 years and 20 years.  22 years is referenced in regard to the time period since the audit was commenced in 1993.  20 years is referenced in regard to the time period since Mr. Hyatt commenced his administrative challenge in 1996.

[5] In this regard, Mr. Hyatt asked the district court to take judicial notice of the Nevada court proceedings and find that the FTB Appellees are collaterally estopped from re-trying the delay issue.  2 ER 64-73.  The district court did not rule on this request.

FTB Appellees as germane to the issue of jurisdiction, the matter should be remanded to the district court for resolution of the disputed facts before the issue of jurisdiction can be decided.

In sum, the extreme and unique facts of this case warrant the extraordinary relief sought. The district court's order dismissing the case should be reversed and the matter remanded back to the district court for resolution of Mr. Hyatt's constitutional claims.

## II. The TIA "refund" cases cited by Appellees do not address the issue before the Court and do not support the draconian result that Appellees advocate.

Appellees argue that no authority supports Mr. Hyatt's position. That is not accurate. Mr. Hyatt addressed in his opening brief (at 18-20) that the TIA does not bar jurisdiction where a state fails to provide a plain, speedy, and efficient state remedy for constitutional claims arising from a state tax assessment. Section 19381, applicable here and relied on by Mr. Hyatt for 20 years, fails to provide a state remedy for Mr. Hyatt's constitutional claims. (*Id.*, at 21-23.)

It is Appellees that attempt to espouse a new application of the TIA not present in the case law they cite.

**A.** **The TIA cases cited by SBE Appellees do not hold that the State can refuse to provide due process in an available statutory remedy merely because there is also a refund process.**

The SBE Appellees cite (at 14-15) "refund" cases holding that California's refund process provides an efficient remedy that bars federal court injunctive relief under the TIA. The SBE Appellees contend that Mr. Hyatt could have obtained his "remedy" by switching to the refund procedure at any time. But this argument confuses the constitutional "remedy" now sought by Mr. Hyatt with a decision on the underlying tax dispute.

Mr. Hyatt did not need a constitutional remedy when he began the Section 19381 process. The loss of evidence because of undue delay developed only after the Section 19381 process had long been instituted. The SBE Appellees would have Mr. Hyatt now abandon a process in which he has invested 20 years of effort—in other words, on which he has relied in good faith to his detriment—in order to seek timely relief for his constitutional claims. The TIA may not demand that the remedy provided by the State be the "best," but still it must be "plain, speedy, and efficient," and requiring Mr. Hyatt to change course in these circumstances as a condition to pursuing his constitutional claims is not close to that standard.

The Supreme Court cases cited by the SBE Appellees have particularly limited application here. In *Franchise Tax Bd. of Cal. v. Alcan Aluminum, Ltd.*, 493 U.S. 331 (1990), the primary issue was whether subsidiaries of a foreign parent corporation can raise a "Foreign Commerce Clause challenge" to California's unitary business/formula apportionment method of calculating their tax. The Court found that California courts would entertain such a challenge in a refund claim, thus giving the taxpayer an adequate remedy under the TIA. *Id*. at 340-41. The Court did not consider whether a taxpayer pursuing remedies under Section 19381—or any other separate statutory right—must abandon that process under which the constitutional violations occurred, pay the tax, and then seek a refund under the separate Section 19382 process in order to have the constitutional claims heard.

Similarly, Section 19381 was not considered nor was it relevant to the issues in *Cal. v. Grace Brethren Church*, 457 U.S. 393 (1982), which involved a First Amendment challenge to California's unemployment tax scheme. In holding that the refund process gave the taxpayers an adequate remedy under the TIA, the Court was not presented with facts where the taxpayer had relied in good faith on the pre-payment process in Section 19381. *Grace Brethren* in fact refutes the SBE Appellees' position on this point. In discussing the origins of the TIA, the Court

observed "Congress was well aware that refund procedures were the *sole remedy in many States* for unlawfully collected taxes." *Id.* at 416-17 (emphasis added; citing legislative history for the TIA). That is not the case here. Here, the State offered an additional remedy. Having done so, it would hardly be efficient or speedy to require a taxpayer to abandon that remedy in order to bring a constitutional challenge to address the state's misconduct and refusal to complete that separate remedy.

For the same reason, the Ninth Circuit TIA cases cited by the SBE Appellees are equally inapposite. *See Aronoff v. Franchise Tax Board*, 348 F.2d 9 (9th Cir. 1965) (affirming dismissal based on the TIA where the only recourse available to the taxpayer was to pay tax and seek a refund); *Jerron West, Inc. v. State Bd. of Equalization*, 129 F.3d 1334 (9th Cir. 1998) (affirming dismissal based on the TIA where the plaintiff sought to stop a sales tax assessment on Fifth Amendment grounds given a related criminal prosecution, but the refund process was the sole remedy available to the taxpayer to challenge the tax); *Wood v. Sargeant*, 694 F.2d 1159 (9th Cir. 1982) (affirming dismissal based on TIA to a challenge to an unemployment tax assessment wherein plaintiff's sole argument

against the refund process was inability to pay the taxes and the refund process was the sole remedy available to taxpayer).[6]

Equally without merit is the SBE Appellees' reliance (at 17) on the unpublished decision in *Quigley v. Cal. Franchise Tax Bd,* No. C00-01662 WHA, 2000 WL 1336612 (N.D. Cal. Sept. 12, 2000), aff'd, 14 F. App'x 910 (9th Cir. 2001). Unlike here, the taxpayer there did not even present a constitutional claim, so the district court had no occasion to consider whether the State provided an adequate remedy for such a claim under Section 19381. SBE Appellees do not address this glaring distinction.

**B.** **In other contexts, courts reject the notion that denial of a pre-deprivation due process remedy is excused where a post-deprivation due process remedy also exists.**

While no case in the TIA context has addressed whether a state can deny due process in one remedy so long as it is offered in another, this notion now argued by the State has been rejected in other contexts. *See, e.g., Zinermon v. Burch*, 494 U.S. 113, 135-36 (1990) (holding failure of state to use existing pre-deprivation procedure was a denial of due process even though a separate post-deprivation procedure was available and had been employed). The dissent in

---

[6] The district court cases cited by the SBE Appellees (at 15 n.3) are likewise inapplicable because they did not involve a taxpayer who relied on the Section 19381 process.

*Zinermon* best summarized the holding of the majority: "The Court concludes that an allegation of state actors' wanton, unauthorized departure from a State's established policies and procedures, working a deprivation of liberty, suffices to support a procedural due process claim even though the State provides adequate post-deprivation remedies for that deprivation." *Id.*, at 139;[7] *see also Zimmerman v. City of Oakland,* 255 F.3d 734, 739 (9th Cir. 2001) (holding that the availability of an adequate post-deprivation remedy for the alleged improper seizure of property was not a defense to a due process claim challenging the city's failure to provide a pre-deprivation hearing as specified under the city's own ordinance); *Swenson v. Siskiyou County*, 498 Fed.Appx. 719, 720 (9th Cir. 2012)(citing *Zinermon* and holding that existence of adequate post-deprivation state law remedies did not bar property owner's due process claim for seizure of property without conducting pre-deprivation hearing under established state law procedures).

---

[7] While *Zinermon* addressed the deprivation of liberty, the Court affirmed prior precedent holding no "categorical difference" between a deprivation of liberty and deprivation of property relative due process rights accorded a citizen. *Id.*, at 131-32.

**C.    In choosing the statutory pre-payment remedy, Mr. Hyatt has not "failed to utilize the refund remedy."**

The SBE Appellees argue (at 18-19) that so long as Mr. Hyatt could have pursued the refund process at some time the TIA requirements are met.  But Mr. Hyatt could not have brought his constitutional claims earlier, and certainly not when he chose the Section 19381 process over the Section 19382 process 20 years ago.  His due process and equal protection claims only developed and ripened after the FTB delayed the Section 19381 administrative process for so long that material evidence has been lost or destroyed.  Mr. Hyatt could not have brought claims that did not exist in 1996 and 1997.

Moreover, none of the cases cited for the proposition that Mr. Hyatt "failed to utilize" the Section 19382 process involve a taxpayer having an alternative process available and choosing one over the other.   Instead, in each of the cases cited, the taxpayers failed to follow or abandoned the sole state-provided remedy. That is indisputably not the case here, where Mr. Hyatt has attempted to exhaust his rights under Section 19381, and the State has failed to complete the long-pending administrative challenge.  There is no basis for looking beyond Section 19381 to determine the applicability of the TIA.

The SBE Appellees rely heavily on *Sack Bros. Loan Co. v. Cunningham*, 578 F.2d 172, 715 (7th Cir. 1978), for the argument that if at "some time" the

taxpayer could have brought the refund action the TIA prohibition is satisfied. But the primary issue in *Sack Bros.* was the taxpayer's affirmative decision not to pursue his administrative appeal and thereby not exhaust his administrative remedy—again, not the situation here.

So too in all the other cases cited by the SBE Appellees on this point, the taxpayers simply failed to proceed with an available state remedy. *See Aluminum Co. of Am. v. Dep't of Treasury of State of Michigan*, 522 F.2d 1120 (6th Cir. 1975) (foreign corporation did not pursue an administrative appeal or a refund claim under Michigan law); *Jerron West* (plaintiff failed to pursue available state administrative remedies); *City Vending of Muskogee, Inc. v. Okla. Tax Comm'n*, 898 F.2d 122 (10th Cir. 1990) (in the context of bankruptcy court, taxpayer failed to exhaust state remedies including an appeal of the tax commission's assessment); *Henry v. Metro Dade City*, 329 F.2d 780 (5th Cir. 1964) (taxpayer failed to timely file appeal in accordance with Florida law and suit did not assert constitutional challenges to the assessment); *Anderson v. Cal. Franchise Tax Bd.*, No. 09-4015 SBA, 2010 WL 334456 at *2 (N.D. Cal. Jan. 28, 2010) (taxpayer failed to follow

the correct California statutory procedure for contesting a tax assessment, and suit did not assert constitutional challenges to the assessment).[8]

The FTB Appellees' primary argument (at 11-16) also relies on many of the same inapplicable "refund" cases that do not address Section 19381.

**III.  Even if considered, the Section 19382 remedy is highly uncertain based on the constitutional claims in this case, and therefore fails to meet the standard required under the TIA.**

Section 19382 has no application to Mr. Hyatt's claims that stem from the still incomplete administrative challenge under Section 19381.  But even if Section 19382 is considered, the TIA does not bar Mr. Hyatt's claims.

**A.    The SBE Appellees' Section 19382 arguments do not address the inadequacies of a refund action as addressed in Mr. Hyatt's opening brief.**

SBE Appellees argue (at 21-22) that Section 19382 provides a plain, speedy, and efficient remedy for Mr. Hyatt's constitutional claims, citing cases in which constitutional claims were heard in a refund action.  That misses the point.  There

---

[8] Both sets of Appellees also question the "bait and switch" cases cited in Mr. Hyatt's Opening Brief, *Newsweek v. Florida Dep't of Revenue*, 522 U.S. 442 (1998) and *Reich v. Collins*, 513 U.S. 106, 108 (1994).  Those cases are analogous here as in those cases the state offered and then took away a specific remedy to challenge a tax assessment.  The State seeks to do that in this case by refusing to provide Mr. Hyatt his rights under Section 19381 and goes so far as to argue that Mr. Hyatt has no due process rights under Section 19381, a duly enacted and long pending California statute.  As addressed above, Mr. Hyatt does have due process rights under Section 19381.

is no dispute that constitutional challenges to a tax scheme or to the manner in which a tax is calculated may be raised in a refund action, so long as the claim is preserved in the refund claim filed with the FTB. But Mr. Hyatt's constitutional claims do not challenge California's computation or assessment of a tax. Mr. Hyatt challenges the State's unconstitutional behavior that occurred in the Section 19381 process *after* he instituted that administrative challenge.

Mr. Hyatt thoroughly addressed this issue in his opening brief (at 34-37) and will not repeat those arguments except to reiterate that it is the language of Section 19382 that limits refund claims to a claim that the tax "computed and assessed" is "void." *Capital Industries-EMI, Inc. v. Bennett*, 681 F.2d 1107 (9th Cir. 1982), relied upon by the SBE Appellees (at 23) simply does not address whether Section 19382 would permit a constitutional claim that arose—as here— in the prior and separate administrative process *after* the computation and assessment of the tax.

Indeed, Appellees cite no case that suggests Section 19382 could apply in this post-computation and assessment context. The absence of such precedent only underscores the uncertainty of Section 19382 as a remedy for Mr. Hyatt's constitutional claims. A state remedy "is not 'plain' within the meaning of the

[TIA] . . . 'if there is uncertainty regarding its availability or effect.'" *Lowe v. Washoe County,* 627 F.3d 1151, 1156 (9th Cir. 2010).[9]

### B. The FTB Appellees are wrong in stating that Mr. Hyatt can have his constitutional claims heard in a refund case under Section 19382 within a "mere" six months.

Apart from making the same arguments as the SBE Appellees, the FTB Appellees misdescribe (at 19) the process Mr. Hyatt would face if he tried to pursue a Section 19382 refund claim at this late stage of his Section 19381 challenge. The FTB Appellees' suggestion that Mr. Hyatt's constitutional claims could be heard in a mere six months is particularly misleading.

There are two options to be considered were Mr. Hyatt to abandon his 20 year old Section 19381 proceeding. First, Mr. Hyatt could simply pay the tax. Second, Mr. Hyatt could seek dismissal of his Section 19381 proceeding and then pay the tax if the SBE granted the request.

First, if Mr. Hyatt pays the tax while his SBE appeal is pending, as Appellees argue, Mr. Hyatt's prior "protests" filed in 1996 and 1997, for the 1991

---

[9] The FTB Appellees' citation (at 20) to *Barclays Bank Int'l Ltd. v. Franchise Tax Bd.*, 10 Cal. App. 4th 1742 (Cal. Ct. App. 1992), on the issue of whether an "as applied" constitutional claim may be heard in a Section 19382 refund action, is similarly misplaced. Mr. Hyatt recognizes that "as applied" challenges may be heard under Section 19382. His point instead is that no case has addressed the unconstitutional behavior of a tax board that occurred after the computation and assessment of the taxes in a different procedure.

and 1992 tax years, respectively, will be deemed to be his refund claim. Cal. Rev. & Tax. Code § 19335 ("Section 19335"). Those protests do not contain Mr. Hyatt's constitutional claims as grounds for the claim because he filed the protests before the FTB's and SBE's offending conduct. Under Section 19382, a refund action is limited to the grounds set forth in the refund claim. Accordingly, Mr. Hyatt could not raise the constitutional issues in his newly converted Section 19382 procedure because his refund claims (*i.e.*, his original protests) do not include the constitutional violations.

Furthermore, the SBE administrative appeal must be completed before a Superior Court action could be filed. There is no six month limit on the SBE appeal which is still being briefed, does not have a hearing date, and has no end in sight. Mr. Hyatt therefore cannot simply pay the taxes and then pursue his constitutional claims in Superior Court after six months. *See* Cal. Rev. & Tax. Code § 19385 (providing for deeming a refund claim *pending at the FTB* denied after six months, but not providing for deeming an SBE appeal denied after six months).

Second, if Mr. Hyatt first abandons his 20 year old Section 19381 proceeding, pays the tax, and then files a new refund claim with the FTB per Section 19382 that includes his current constitutional claims, there is uncertainty

- 15 -

as to whether Mr. Hyatt could raise his constitutional issues in a timely manner. There is no certainty that the Superior Court would consider constitutional issues that arose in a now abandoned Section 19381 proceeding relevant to a separate Section 19382 refund proceeding. This would be a case of first impression. It is clear that a taxpayer can raise in a Section 19382 refund proceeding constitutional issues that pertain to that proceeding. However, there is no certainty that, having abandoned the 20 year old Section 19381 proceeding before initiating the Section 19382 refund proceeding, constitutional issues arising from the now abandoned Section 19381 proceeding would be considered relevant to the new Section 19382 refund proceeding.

The Section 19382 refund process therefore—while not applicable or relevant given Mr. Hyatt's election under Section 19381 and reliance thereon for 20 years—does not provide Mr. Hyatt a plain, speedy, and efficient state remedy in accordance with the TIA. The district court was wrong concluding to the contrary, and its order should be reversed.

**IV. Contrary to the FTB Appellees' arguments, the Court must accept Mr. Hyatt's well pleaded and judicially determined facts of excessive delay by the State as true.**

Much of the FTB Appellees' brief argues the facts in an effort to portray Mr. Hyatt as the cause of delay in the 20-year-old Section 19381 challenge. But Mr.

Hyatt hotly disputes the State's portrayal, and his well pleaded facts must be accepted as true at this motion to dismiss stage. *See Doe v. Holy See,* 557 F.3d 1066, 1074 (9th Cir. 2009).[10]

Moreover, collateral estoppel bars the State from challenging Mr. Hyatt's factual assertions of bad faith delay in the administrative process. After a trial in Nevada state court, a judgment was entered against the FTB and in favor of Mr. Hyatt in August 2008 in which one of the issues argued to the jury in the determinative fraud claim was whether the FTB had delayed the administrative process in bad faith. 3 ER 329; 4 ER 609, 775 ¶ 112. The jury decided the issue in Mr. Hyatt's favor. 3 ER 329. In confirming the portion of the judgment entered for Mr. Hyatt on his claims of fraud and intentional infliction of emotional distress, the Nevada Supreme Court specifically cited the FTB's long delay in the protest process (as well as other facts including the anti-Semitic comments of the lead auditor). 4 ER 609, 754-55 ¶ 46.

---

[10] Further, and contrary to the FTB Appellees' assertion (at 10, n. 4), in his district court opposition papers Mr. Hyatt fully rebutted the FTB Appellees' factual challenge to Mr. Hyatt's well pleaded allegations of delay. 2 ER 64 - 3 ER 555. To the extent the dispute over the cause of the delay in the Section 19381 process, which goes to the merits of the case, is "so intertwined that the question of jurisdiction is dependent on the resolution of factual issues" the matter must be remanded to the district court for resolution of those factual issues. *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983).

For purposes of this appeal, therefore, Mr. Hyatt's well pleaded and well developed, even adjudicated, facts regarding the State's bad faith delay in the administrative process must be accepted as true.

**V.    The *Younger* abstention doctrine and comity principles do not bar federal court jurisdiction here.**

**A.    Recent Supreme Court authority confirms that the *Younger* abstention doctrine has no application here.**

The Supreme Court's 2013 decision in *Sprint Communications v. Jacobs*, 134 S. Ct. 584 (2013)—which the Appellees fail to cite—makes clear that the *Younger* abstention doctrine (*Younger v. Harris*, 401 U.S. 37 (1971)) is inapplicable.

Contrary to the SBE Appellees (at 31), it is not enough for *Younger* abstention to show that a proceeding implicates "important state interests." *Jacobs* clarified that *Younger* justifies abstention only in three narrow situations: namely, when there are (1) ongoing state criminal proceedings; (2) pending state civil proceedings akin to a criminal prosecution, and (3) pending civil proceedings that implicate a state's interest in enforcing the orders or judgments of its courts. *Id.* at 591.

The first and third situations obviously do not apply because there is no ongoing criminal proceeding or a civil proceeding seeking to enforce a court order

- 18 -

or judgment. And as *Jacobs* explains, the third situation applies only in a very limited circumstance, not present here. *Id.* at 592. Nor is the pending administrative tax process here "akin to a criminal" prosecution, nor do Defendants suggest otherwise.

Even when one of the situations appropriate for consideration under *Younger* exists, *Younger* recognized that a federal court injunction of pending state proceedings may still be appropriate in "extraordinary circumstances" involving: 1) bad faith state prosecutions, 2) unconstitutional state statutes, or 3) the lack of an adequate state forum in which to raise constitutional issues. *Id.* at 53. The first and third of these circumstances apply fully here. The State's bad faith has been determined in the Nevada litigation and the lack of an adequate state forum is discussed above. Thus, *Younger* does not apply, and a federal court injunction is appropriate here.

**B.  Comity principles do not warrant dismissal of this complaint.**

Apart from *Younger,* the FTB Appellees (at 27-30) cite general comity principles as an alternative ground (not relied upon by the district court) to support dismissal of the complaint. Both sets of Appellees cite Supreme Court case law on comity in the context of state tax assessment and collection, including *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 110 (1981). But

Mr. Hyatt also cited *McNary* in his opening brief for the more relevant holding to the present case: comity does not bar jurisdiction where the taxpayer does not have a "plain, adequate and complete" state remedy. *Id.*, at 116. Appellees' authorities recognize this basic principle.[11]

*McNary* further holds that "[w]e discern no significant difference, for purposes of the principles recognized in this case, between remedies which are 'plain, adequate, and complete,' . . . and those which are 'plain, speedy and efficient,' . . ." *Id.*, at 116, n. 8. For this reason, comity is no more a bar to federal court jurisdiction in this case than the TIA.

None of the cases cited by Appellees is to the contrary. For example, the FTB Appellees rely (at 27-28) on *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 421 (2010), where the Supreme Court held that comity principles warranted federal court restraint because: 1) the taxpayers *did not allege* violation of their

---

[11] *See, e.g., Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc*., 477 U.S. 619, 627, 629 (1986)("[S]o long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim."); *Am. Consumer Pub. Ass'n Inc. v. Margosian*, 349 F.3d 1122, 1130 (9th Cir. 2003)("[T]he district court found that Plaintiffs made no showing that state procedural bars prevent them from pursuing their constitutional claims in the state proceeding."); *May Trucking Co. v. Oregon Dep't of Transp.*, No. CV 02-413-HA, 2003 WL 25730507 at *5 (D. Or Mar. 17, 2003), aff'd, 388 F.3d 1261 (9th Cir. 2004) "A plaintiff has an adequate opportunity to raise federal questions in state proceedings unless state law clearly bars the presentation of constitutional claims.").

constitutional rights; 2) the taxpayers were ultimately seeking federal court review of the state tax scheme at issue in order to improve their competitive commercial position; and 3) the courts and tribunals of the state at issue (Ohio), were capable of reviewing both the tax scheme at issue and, where necessary, how to remedy constitutional infirmities. *Id.* at 431-432. But here, Mr. Hyatt *does* allege violations of his federal constitutional rights. Mr. Hyatt is *not* seeking federal court relief to improve his competitive commercial position, but rather to protect and prevent further abridgment of his constitutional rights. And it is highly uncertain whether the California state courts can remedy those constitutional violations.

Given the facts of this case with its 20-year delay and racial prejudice, it is doubtful that any taxpayer in the future will be able to rely on a decision in this case as precedent obtaining the same extraordinary relief warranted in this case. Following 11 years of protest, the SBE appeal continues to this day, almost eight years later with no hearing date set. 4 ER 762 ¶ 77. There is no basis to invoke comity in this case.

## VI. Mr. Hyatt has properly stated a claim for violation of due process.

First, the Appellees misstate Mr. Hyatt's due process claim to the extent they assert that Mr. Hyatt contends that the due process requires a pre-deprivation

remedy in regard to state tax assessment and collection. Rather, if a state chooses to provide such a remedy, as California has, it must do so in a way that comports with due process. Here the State has failed to provide due process because its 20 years of delay have denied Mr. Hyatt due process under the Section 19381 process offered by the State.

As addressed above, it is no answer that the State also offers a refund process through which due process may be had. There is no due process exception that allows the state to act arbitrarily and deprive a person of due process rights under a duly enacted procedure just because another procedure was available, particularly where the due process violation occurred during that first procedure. *See* discussion, *supra* at 8-9**,** failure to provide pre-deprivation statutory remedy violates due process and not excused based on a post-deprivation due process remedy, *citing Zinermon*, 494 U.S. at 139; *Zimmerman,* 255 F.3d. at 739, and *Swenson*, 498 Fed. Appx. at 720.

In addition, the Supreme Court has ruled in a multitude of cases that even where a property or liberty right is granted as a privilege and not constitutionally required, a person cannot be deprived of the right without due process of law. "[M]inimum procedural due process rights are a matter of federal law" and are not diminished by any state procedures, *Cleveland Board of Education v. Loudermill*,

470 U.S. 532, 541 (1985) ("While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards"); *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970) ("constitutional challenge cannot be answered by an argument that public assistance benefits are 'a privilege' and not a 'right.'").

FTB Appellees argue that no due process rights attach to Section 19381, claiming there is no federal right to a pre-deprivation remedy. Curiously, the FTB Appellees cite to a case, *Nat'l Private Truck Council, Inc. v. Oklahoma Tax Comm'n*, 515 U.S. 582, 587 (1995), that makes no such holding. *Nat'l Private Truck Council* does not hold, nor does any other case hold, that where a state does offer more than a refund process, no due process right attaches to the separate pre-deprivation process. Rather, it holds that at a bare minimum a state must offer a "clear and certain remedy" and the refund process satisfies this requirement. *Id.*, at 587.

But where a state chooses to offer more than a refund process, there is no support for the concept that the additional offered processes have no due process rights. Indeed, language from *Nat'l Private Truck Council*, even though quoted by FTB Appellees (at 24), is contrary to their argument. The case holds, ". . . the

States may determine whether to provide predeprivation process (*e.g.*, an injunction) or instead to afford postdeprivation relief (*e.g.*, a refund) . . ." *Id.*, at 587. Neither this plain language nor the context in which it is situated can be interpreted as holding that no constitutional remedies attach to pre-deprivation relief so long as there is also post-deprivation relief, as FTB Appellees argue. Further, and even more on point, the Court went on to state:

> Of course, nothing we say prevents a State from empowering its own courts to issue injunctions and declaratory judgments even when a legal remedy exists. Absent a valid federal prohibition, state courts are free to issue injunctions and declaratory judgments under *state* law.

*Id.*, at 592. At issue here in particular is the declaratory relief action the State provided by Section 19381. The existence of a separate refund action does not eviscerate the due process that must be accorded in the declaratory relief action offered by the State.

It is illogical and abhorrent to our system of justice that a state can offer more than one remedy for appealing a tax assessment, but need only satisfy due process in one of the two state-provided remedies. Whether or not California was "required" to enact Section 19381 in view of the existence of Section 19382 is not the issue. The fact is, whether or not it was required to do so, the California

legislature did enact Section 19381 and Mr. Hyatt chose to proceed under this duly enacted procedure.

The SBE Appellees assert Mr. Hyatt has not stated a viable due process claim because a state is not required to provide judicial determination of tax liability before collection of the tax. But similar to the FTB Appellees, the SBE Appellees cite authorities that do not address the circumstance here where the State chose to provide an additional and separate remedy in limited situations (here, residency) that does allow the taxpayer judicial review without first paying the tax. That is the very essence of Section 19381.

The SBE Appellees' citation to *Phillips v. Comm'r of Internal Revenue*, 283 U.S. 589 (1931), supports Mr. Hyatt. It addresses an instance where U.S. Tax law did provide both a refund and pre-deprivation tax collection procedure. The Court imposed a due process requirement on the pre-deprivation procedure, finding the pre-deprivation procedure under 26 U.S.C. § 280(a)(1) (now repealed) constitutionally adequate. *Id.*, at 599 ("These provisions amply protect the transferee against improper administrative action.").

Further, the Court held that postponement of the judicial determination of the tax liability does not deny due process, but only "if the opportunity given for the ultimate judicial determination of the liability is adequate." *Id.*, at 595. Mr.

Hyatt's allegations here, which must be accepted as true and in any event are also supported by a rich evidentiary record, is that the State's delay was so long and all-encompassing that any trial Mr. Hyatt may have will be inadequate due to the loss of material evidence and thereby violate due process. He therefore has no "adequate" opportunity for a judicial determination of the tax liability.

The other two cases cited by the SBE Appellees simply address the circumstance where the state provides only a refund process for challenging the tax assessment. They cite *McKesson Corp. v. Div. of Alcoholic Beverages and Tobacco*, 496 U.S. 18 (1990), even quoting the phrase "that a State need not provide predeprivation process for the exaction of taxes." Again a state need not, but here California does offer a pre-deprivation process. Similarly, the SBE Appellees cite to *Grace Brethren* and its discussion of why litigation before collection of the tax may be harmful to the state tax administration. *Id*., at 410. But if a state chooses to enact a pre-deprivation litigation option applicable to narrow circumstances, it cannot then deny due process under that option simply because it also offers a separate refund process.

No case cited by either set of Appellees holds that a state can decide in which of the two processes it offers, it will provide due process. Mr. Hyatt has in this case properly alleged a violation of due process based on the State's conduct

in delaying the Section 19381 remedy, including the judicial relief offered thereunder, so long that a fair trial can no longer be had.

## VII. Conclusion

Mr. Hyatt has pursued his tax challenge under Section 19381 for 20 years while enduring undue delay, intentional infliction of emotional distress and even racially biased statements of the lead auditor. The undue delay has prejudiced his rights to a fair adjudication under Section 19381 because of the loss of key witnesses and loss or destruction of documents. Because Section 19381 fails to provide any remedy for his constitutional claims, the TIA does not bar Mr. Hyatt's federal action.

The SBE Appellees' glib reference to Mr. Hyatt thinking he had a stronger case a decade ago and perhaps regrets his choice to pursue relief under Section 19381 (at 19), widely misses the mark as to the issue before the Court. Mr. Hyatt could not have brought his constitutional claims in any forum at the time he elected to proceed with his Section 19381 challenge 20 years ago, because the claims did not exist. His due process and equal protection claims only developed and ripened after his Section 19381 challenge had been pending for a very long time and material evidence was lost.

Further, to suggest that Mr. Hyatt has not repeatedly urged the State to complete the administrative challenge ignores the irrefutable record as found by the Nevada Supreme Court in upholding the fraud claim in Mr. Hyatt's favor based in part on the FTB's bad faith delay. 4 ER 601, 609. At what point the State's delay and the accumulation of lost evidence creates a due process violation is the very issue to be tried on the merits in the underlying case.

But for the purposes of the TIA, it is no answer for the State to argue that Mr. Hyatt could have earlier abandoned his Section 19381 challenge and pursued a refund claim. Indeed, the very cases cited by the SBE Appellees deny federal court jurisdiction to taxpayers for failing to exhaust or seek state offered administrative remedies. Here, Mr. Hyatt has been seeking to exhaust his rights under Section 19381 and the State has delayed and stalled the process for 20 years.

No court has ever interpreted the TIA as providing a sword to the state that allows it to unconstitutionally nullify a statutory remedy provided by the state merely because it also offers a separate refund process. Due process under the law and principles of equity demand that Mr. Hyatt's constitutional claims be heard now, in federal court, while the Section 19381 process continues in California at its glacier pace, pending a ruling by the district court on the merits of Mr. Hyatt's claims.

It would be abhorrent to our constitutional principles to allow the State to subvert the procedures under duly enacted Section 19381 by simply delaying the proceedings until documents are lost and witnesses are dead.  Mr. Hyatt challenged the FTB tax assessments under Section 19381 with the understanding that he would receive fair and equal treatment.  The requested injunction issued by the federal court is the only way Mr. Hyatt's constitutional rights can be protected.

The district court's order should therefore be reversed and the matter remanded to the district court.

Respectfully submitted this 14th day of October 2015.

PERKINS COIE LLP

By: *s/ Donald J. Kula*
    Donald J. Kula
    1888 Century Park E., Suite 1700
    Los Angeles, CA 90067-1721
    Telephone: 310.788.9900
    Facsimile: 310.788.3399

    Erwin Chemerinsky, Esq.
    EChemerinsky@law.uci.edu
    UC IRVINE SCHOOL OF LAW
    401 E. Peltason Drive, Suite 1000
    Irvine, CA 92697-8000
    Telephone: 949.824.8814
    Facsimile: 949.824.7336

    Malcolm Segal, Bar No. 075481
    MSegal@segal-pc.com
    SEGAL & ASSOCIATES, PC
    400 Capitol Mall, Suite 2550
    Sacramento, CA 95814
    Telephone: 916.441.0886
    Facsimile: 916.475.1231

    Attorneys for Appellant
    Gilbert P. Hyatt

CERTIFICATE OF COMPLIANCE
PURSUANT TO FED. R. APP. P. 32(a)(7)(C) AND
NINTH CIRCUIT RULE 32-1 FOR CASE NUMBER 15-15296

I certify that:

1.    Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached Reply Brief of Appellant is:

Proportionately spaced, has a typeface of 14 points or more and contains 6,650 words (in cases that do not involve a cross-appeal, opening and answering briefs must not exceed 14,000 words and reply briefs must not exceed 7,000 words; in cases with a cross-appeal, the appellants' opening brief and response/reply brief must not exceed 14,000 words, the appellee's principal/response brief must not exceed 16,500 words, and the appellee's reply brief must not exceed 7,000 words).

DATED this 14th day of October, 2015.

PERKINS COIE LLP

By  *s/ Donald J. Kula*

Attorneys for Appellant
Gilbert P. Hyatt

CERTIFICATE OF SERVICE

U.S. Court of Appeals Docket Number(s): 15-15296

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 14, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature: *s/ Yolanda Mendez*