

**James W. Bradshaw, Partner**  
jbradshaw@mcdonaldcarano.com

**Respond to:**  
**Reno Office**

May 24, 2016

Molly Dwyer  
Clerk of the Court  
Ninth Circuit Court of Appeals  
P.O. Box 193939  
San Francisco, CA 94119-3939

> *Re:*    ***Gilbert Hyatt v. Betty Yee, et al., Ninth Circuit Case No. 15-15296***

Dear Ms. Dwyer:

Appellees respectfully submit this citation of supplemental authority pursuant to Federal Rule of Appellate Procedure 28(j) and Circuit Rule 28-6. Appellant Gilbert Hyatt ("Hyatt") filed this appeal on February 19, 2015 and his final Reply Brief on October 15, 2015. No oral argument has been scheduled, and the case has not been submitted on the briefs.

On April 19, 2016, the United States Supreme Court issued its decision in *Franchise Tax Bd. of Calif. v. Hyatt (Hyatt II)*, 578 U.S. __, 136 S.Ct. 1277, 1283 (2016), attached as Ex. 1 hereto. The United States Supreme Court vacated the Nevada Supreme Court's judgment as unconstitutionally discriminatory against a sister State. *Id.* The Supreme Court held:

> The Nevada Supreme Court has ignored both Nevada's typical rules of immunity and California's immunity-related statutes . . . Instead, it has applied a special rule of law that evinces a 'policy of hostility' toward California . . . Doing so violates the Constitution's requirement that 'Full Faith and Credit shall be given in each State to the public Acts, Records and judicial Proceedings of every other State.'

*Id.* at 1281 (citing *Franchise Tax Bd. of Calif. v. Hyatt* ("*Hyatt I*"), 538 U.S. 488, 499 (2003) and U.S. Const. Art. IV §1).

_____

The Supreme Court took issue with the Nevada Supreme Court's stated rationale for its discriminatory treatment of the Franchise Tax Board of California: "Such an explanation, which amounts to little more than a conclusory statement disparaging California's own legislative, judicial, and administrative controls, cannot justify the application of a special and discriminatory rule." *Id.* at 1282.

In his briefing in this appeal, Hyatt relied on the now-vacated Nevada Supreme Court opinion, *Franchise Tax Bd. of Cal. v. Hyatt*, 335 P.3d 125, 130 Nev. Adv. Op. 71, 2014 WL 4656423 (Nev. 2014), for its putative confirmation of certain facts and "specific citations to evidence." Hyatt Opening Br. 13; Hyatt Reply Br. 3. Because the Supreme Court vacated the Nevada Supreme Court's opinion, Hyatt can no longer rely on it to advance his arguments or cite to it for purposes of collateral estoppel.

Sincerely,

/s/ James W. Bradshaw

James W. Bradshaw
Debbie Leonard
Adam Hosmer-Henner
McDONALD CARANO WILSON LLP

Cynthia J. Larsen
Katie DeWitt
David W. Spencer
ORRICK, HERRINGTON & SUTCLIFFE LLP

*Counsel for Appellees Betty T. Yee,*
*Jerome E. Horton and Michael Cohen in*
*their official capacity as members of the*
*Franchise Tax Board of California*

JWB/nah
Enclosures

_____

### CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2016, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


 /s/    Nancy Hoy
_____
An Employee of McDonald Carano Wilson LLP

# Exhibit "1"

# Exhibit "1"

(Slip Opinion)    OCTOBER TERM, 2015    1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## FRANCHISE TAX BOARD OF CALIFORNIA *v.* HYATT

### CERTIORARI TO THE SUPREME COURT OF NEVADA

No. 14–1175.  Argued December 7, 2015—Decided April 19, 2016

Respondent Hyatt claims that he moved from California to Nevada in 1991, but petitioner Franchise Tax Board of California, a state agency, claims that he actually moved in 1992 and thus owes California millions in taxes, penalties, and interest.  Hyatt filed suit in Nevada state court, which had jurisdiction over California under *Nevada* v. *Hall,* 440 U. S. 410, seeking damages for California's alleged abusive audit and investigation practices.  After this Court affirmed the Nevada Supreme Court's ruling that Nevada courts, as a matter of comity, would immunize California to the same extent that Nevada law would immunize its own agencies and officials, see *Franchise Tax Bd. of Cal.* v. *Hyatt,* 538 U. S. 488, 499, the case went to trial, where Hyatt was awarded almost $500 million in damages and fees.  On appeal, California argued that the Constitution's Full Faith and Credit Clause, Art. IV, §1, required Nevada to limit damages to $50,000, the maximum that Nevada law would permit in a similar suit against its own officials.  The Nevada Supreme Court, however, affirmed $1 million of the award and ordered a retrial on another damages issue, stating that the $50,000 maximum would not apply on remand.

*Held*:

1. The Court is equally divided on the question whether *Nevada* v. *Hall* should be overruled and thus affirms the Nevada courts' exercise of jurisdiction over California's state agency.  P. 4.

2. The Constitution does not permit Nevada to apply a rule of Nevada law that awards damages against California that are greater than it could award against Nevada in similar circumstances.  This conclusion is consistent with this Court's precedents.  A statute is a "public Act" within the meaning of the Full Faith and Credit Clause.  While a State is not required "to substitute for its own statute . . . the statute of another State reflecting a conflicting and opposed policy,"

2          FRANCHISE TAX BD. OF CAL. *v.* HYATT

Syllabus

*Carroll* v. *Lanza*, 349 U. S. 408, 412, a State's decision to decline to apply another State's statute on this ground must not embody a "policy of hostility to the public Acts" of that other State, *id.,* at 413. Using this approach, the Court found no violation of the Clause in *Carroll* v. *Lanza* or in *Franchise Tax Bd.* the first time this litigation was considered. By contrast, the rule of unlimited damages applied here is not only "opposed" to California's law of complete immunity; it is also inconsistent with the general principles of Nevada immunity law, which limit damages awards to $50,000. Nevada explained its departure from those general principles by describing California's own system of controlling its agencies as an inadequate remedy for Nevada's citizens. A State that disregards its own ordinary legal principles on this ground employs a constitutionally impermissible " 'policy of hostility to the public Acts' of a sister State." 538 U. S., at 499. The Nevada Supreme Court's decision thereby lacks the "healthy regard for California's sovereign status" that was the hallmark of its earlier decision. *Ibid.* This holding does not indicate a return to a complex "balancing-of-interests approach to conflicts of law under the Full Faith and Credit Clause." *Id.*, at 496. Rather, Nevada's hostility toward California is clearly evident in its decision to devise a special, discriminatory damages rule that applies only to a sister State. Pp. 4–9.

130 Nev. ___, 335 P. 3d 125, vacated and remanded.

BREYER, J., delivered the opinion of the Court, in which KENNEDY, GINSBURG, SOTOMAYOR, and KAGAN, JJ., joined. ALITO, J., concurred in the judgment. ROBERTS, C. J., filed a dissenting opinion, in which THOMAS, J., joined.

Cite as: 578 U. S. \_\_\_\_ (2016)                    1

Opinion of BREYER, J.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 14–1175

## FRANCHISE TAX BOARD OF CALIFORNIA, PETITIONER *v.* GILBERT P. HYATT

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF NEVADA

[April 19, 2016]

JUSTICE BREYER delivered the opinion of the Court.

In *Nevada* v. *Hall*, 440 U. S. 410 (1979), this Court held that one State (here, Nevada) can open the doors of its courts to a private citizen's lawsuit against another State (here, California) without the other State's consent. In this case, a private citizen, a resident of Nevada, has brought a suit in Nevada's courts against the Franchise Tax Board of California, an agency of the State of California. The board has asked us to overrule *Hall* and hold that the Nevada courts lack jurisdiction to hear this lawsuit. The Court is equally divided on this question, and we consequently affirm the Nevada courts' exercise of jurisdiction over California. See, *e.g., Exxon Shipping Co.* v. *Baker*, 554 U. S. 471, 484 (2008) (citing *Durant* v. *Essex Co.*, 7 Wall. 107, 112 (1869)).

California also asks us to reverse the Nevada court's decision insofar as it awards the private citizen greater damages than Nevada law would permit a private citizen to obtain in a similar suit against Nevada's own agencies. We agree that Nevada's application of its damages law in this case reflects a special, and constitutionally forbidden,

Opinion of BREYER, J.

"'policy of hostility to the public Acts' of a sister State," namely, California. U. S. Const., Art. IV, §1 (Full Faith and Credit Clause); *Franchise Tax Bd. of Cal.* v. *Hyatt*, 538 U. S. 488, 499 (2003) (quoting *Carroll* v. *Lanza*, 349 U. S. 408, 413 (1955)). We set aside the Nevada Supreme Court's decision accordingly.

## I

Gilbert P. Hyatt, the respondent here, moved from California to Nevada in the early 1990's. He says that he moved to Nevada in September 1991. California's Franchise Tax Board, however, after an investigation and tax audit, claimed that Hyatt moved to Nevada later, in April 1992, and that he consequently owed California more than $10 million in taxes, associated penalties, and interest.

Hyatt filed this lawsuit in Nevada state court against California's Franchise Tax Board, a California state agency. Hyatt sought damages for what he considered the board's abusive audit and investigation practices, including rifling through his private mail, combing through his garbage, and examining private activities at his place of worship. See App. 213–245, 267–268.

California recognized that, under *Hall*, the Constitution permits Nevada's courts to assert jurisdiction over California despite California's lack of consent. California nonetheless asked the Nevada courts to dismiss the case on other constitutional grounds. California law, it pointed out, provided state agencies with immunity from lawsuits based upon actions taken during the course of collecting taxes. Cal. Govt. Code Ann. §860.2 (West 1995); see also §860.2 (West 2012). It argued that the Constitution's Full Faith and Credit Clause required Nevada to apply California's sovereign immunity law to Hyatt's case. Nevada's Supreme Court, however, rejected California's claim. It held that Nevada's courts, as a matter of comity, would immunize California where Nevada law would similarly

Opinion of BREYER, J.

immunize its own agencies and officials (*e.g.,* for actions taken in the performance of a "discretionary" function), but they would not immunize California where Nevada law permitted actions against Nevada agencies, say, for acts taken in bad faith or for intentional torts. App. to Pet. for Cert. in *Franchise Tax Bd. of Cal.* v. *Hyatt,* O. T. 2002, No. 42, p. 12. We reviewed that decision, and we affirmed. *Franchise Tax Bd., supra,* at 499.

On remand, the case went to trial. A jury found in Hyatt's favor and awarded him close to $500 million in damages (both compensatory and punitive) and fees (including attorney's fees). California appealed. It argued that the trial court had not properly followed the Nevada Supreme Court's earlier decision. California explained that in a similar suit against similar Nevada officials, Nevada statutory law would limit damages to $50,000, and it argued that the Constitution's Full Faith and Credit Clause required Nevada to limit damages similarly here.

The Nevada Supreme Court accepted the premise that Nevada statutes would impose a $50,000 limit in a similar suit against its own officials. See 130 Nev. ___, ___, 335 P. 3d 125, 145–146 (2014); see also Nev. Rev. Stat. §41.035(1) (1995). But the court rejected California's conclusion. Instead, while setting aside much of the damages award, it nonetheless affirmed $1 million of the award (earmarked as compensation for fraud), and it remanded for a retrial on the question of damages for intentional infliction of emotional distress. In doing so, it stated that "damages awarded on remand . . . are not subject to any statutory cap." 130 Nev., at ___, 335 P. 3d, at 153. The Nevada Supreme Court explained its holding by stating that California's efforts to control the actions of its own agencies were inadequate as applied to Nevada's own citizens. Hence, Nevada's "policy interest in providing adequate redress to Nevada's citizens [wa]s paramount to providing [California] a statutory cap on damages under

Opinion of BREYER, J.

comity." *Id.,* at ___, 335 P. 3d, at 147.

California petitioned for certiorari. We agreed to decide two questions. First, whether to overrule *Hall*. And, second, if we did not do so, whether the Constitution permits Nevada to award Hyatt damages against a California state agency that are greater than those that Nevada would award in a similar suit against its own state agencies.

II

In light of our 4-to-4 affirmance of Nevada's exercise of jurisdiction over California's state agency, we must consider the second question: Whether the Constitution permits Nevada to award damages against California agencies under Nevada law that are greater than it could award against Nevada agencies in similar circumstances. We conclude that it does not. The Nevada Supreme Court has ignored both Nevada's typical rules of immunity and California's immunity-related statutes (insofar as California's statutes would prohibit a monetary recovery that is greater in amount than the maximum recovery that Nevada law would permit in similar circumstances). Instead, it has applied a special rule of law that evinces a "'policy of hostility'" toward California. *Franchise Tax Bd.*, *supra*, at 499 (quoting *Carroll* v. *Lanza*, *supra*, at 413). Doing so violates the Constitution's requirement that "Full Faith and Credit shall be given in each State to the public Acts, Records and judicial Proceedings of every other State." Art. IV, §1.

The Court's precedents strongly support this conclusion. A statute is a "public Act" within the meaning of the Full Faith and Credit Clause. See, *e.g., Carroll* v. *Lanza*, *supra*, at 411; see also 28 U. S. C. §1738 (referring to "[t]he Acts of the legislature" in the full faith and credit context). We have said that the Clause "does not require a State to substitute for its own statute, applicable to persons and

Opinion of BREYER, J.

events within it, the statute of another State reflecting a conflicting and opposed policy." *Carroll* v. *Lanza*, 349 U. S., at 412. But when affirming a State's decision to decline to apply another State's statute on this ground, we have consistently emphasized that the State had "not adopt[ed] any policy of hostility to the public Acts" of that other State. *Id.,* at 413.

In *Carroll* v. *Lanza*, the Court considered a negligence action brought by a Missouri worker in Arkansas' courts. We held that the Arkansas courts need not apply a time limitation contained in Missouri's (but not in Arkansas') workman's compensation law. *Id.,* at 413–414. In doing so, we emphasized both that (1) Missouri law (compared with Arkansas law) embodied "a conflicting and opposed policy," and (2) Arkansas law did not embody "any policy of hostility to the public Acts of Missouri." *Id.,* at 412–413. This second requirement was well established in earlier law. See, *e.g.*, *Broderick* v. *Rosner*, 294 U. S. 629, 642–643 (1935) (New Jersey may not enforce a jurisdictional statute that would permit enforcement of certain claims under New Jersey law but "deny the enforcement" of similar, valid claims under New York law); *Hughes* v. *Fetter*, 341 U. S. 609, 611–612 (1951) (invalidating a Wisconsin statute that "close[d] the doors of its courts" to an Illinois cause of action while permitting adjudication of similar Wisconsin claims).

We followed this same approach when we considered the litigation now before us for the first time. See *Franchise Tax Bd.*, 538 U. S., at 498–499. Nevada had permitted Hyatt to sue California in Nevada courts. See *id.,* at 497 (citing *Hall*, 440 U. S., at 414–421). Nevada's courts recognized that California's law of complete immunity would prevent any recovery in this case. The Nevada Supreme Court consequently did not apply California law. It applied Nevada law instead. We upheld that decision as consistent with the Full Faith and Credit Clause. But in

Opinion of BREYER, J.

doing so, we emphasized both that (1) the Clause does not require one State to apply another State's law that violates its "own legitimate public policy," *Franchise Tax Bd.*, *supra*, at 497–498 (citing *Hall*, *supra*, at 424), and (2) Nevada's choice of law did not "exhibi[t] a 'policy of hostility to the public Acts' of a sister State." *Franchise Tax Bd.*, *supra*, at 499 (quoting *Carroll* v. *Lanza*, *supra*, at 413). Rather, Nevada had evinced "a healthy regard for California's sovereign status," we said, by "relying on the contours of Nevada's own sovereign immunity from suit as a benchmark for its analysis." *Franchise Tax Bd.*, *supra*, at 499.

The Nevada decision before us embodies a critical departure from its earlier approach. Nevada has not applied the principles of Nevada law ordinarily applicable to suits against Nevada's own agencies. Rather, it has applied a special rule of law applicable only in lawsuits against its sister States, such as California. With respect to damages awards greater than $50,000, the ordinary principles of Nevada law do not "conflic[t]" with California law, for both laws would grant immunity. *Carroll* v. *Lanza*, 349 U. S., at 412. Similarly, in respect to such amounts, the "polic[ies]" underlying California law and Nevada's usual approach are not "opposed"; they are consistent. *Id.,* at 412–413.

But that is not so in respect to Nevada's special rule. That rule, allowing damages awards greater than $50,000, is not only "opposed" to California law, *ibid.*; it is also inconsistent with the general principles of Nevada immunity law, see *Franchise Tax Bd.*, *supra*, at 499. The Nevada Supreme Court explained its departure from those general principles by describing California's system of controlling its own agencies as failing to provide "adequate" recourse to Nevada's citizens. 130 Nev., at ___, 335 P. 3d, at 147. It expressed concerns about the fact that California's agencies "'operat[e] outside'" the systems of "'legislative

control, administrative oversight, and public accountability'" that Nevada applies to its own agencies. *Ibid.* (quoting *Faulkner* v. *University of Tenn.*, 627 So. 2d 362 (Ala. 1992)). Such an explanation, which amounts to little more than a conclusory statement disparaging California's own legislative, judicial, and administrative controls, cannot justify the application of a special and discriminatory rule. Rather, viewed through a full faith and credit lens, a State that disregards its own ordinary legal principles on this ground *is* hostile to another State. A constitutional rule that would permit this kind of discriminatory hostility is likely to cause chaotic interference by some States into the internal, legislative affairs of others. Imagine, for example, that many or all States enacted such discriminatory, special laws, and justified them on the sole basis that (in their view) a sister State's law provided inadequate protection to their citizens. Would each affected sister State have to change its own laws? Entirely? Piece-by-piece, in order to respond to the new special laws enacted by every other State? It is difficult to reconcile such a system of special and discriminatory rules with the Constitution's vision of 50 individual and equally dignified States. In light of the "constitutional equality" among the States, *Coyle* v. *Smith*, 221 U. S. 559, 580 (1911), Nevada has not offered "sufficient policy considerations" to justify the application of a special rule of Nevada law that discriminates against its sister States, *Carroll* v. *Lanza, supra,* at 413. In our view, Nevada's rule lacks the "healthy regard for California's sovereign status" that was the hallmark of its earlier decision, and it reflects a constitutionally impermissible "'policy of hostility to the public Acts' of a sister State." *Franchise Tax Bd., supra,* at 499 (quoting *Carroll* v. *Lanza, supra,* at 413).

In so holding we need not, and do not, intend to return to a complex "balancing-of-interests approach to conflicts of law under the Full Faith and Credit Clause." *Franchise*

Opinion of BREYER, J.

*Tax Bd.*, 538 U. S*.,* at 496. Long ago this Court's efforts to apply that kind of analysis led to results that seemed to differ depending, for example, upon whether the case involved commercial law, a shareholders' action, insurance claims, or workman's compensation statutes. See, *e.g., Bradford Elec. Light Co.* v. *Clapper*, 286 U. S. 145, 157–159 (1932); *Carroll* v. *Lanza*, *supra*, at 414–420 (Frankfurter, J., dissenting) (listing, and trying to classify, nearly 50 cases). We have since abandoned that approach, and we continue to recognize that a State need not "'substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate.'" *Franchise Tax Bd.*, *supra*, at 496 (quoting *Pacific Employers Ins. Co.* v. *Industrial Accident Comm'n*, 306 U. S. 493, 501 (1939)). But here, we can safely conclude that, in devising a special—and hostile—rule for California, Nevada has not "sensitively applied principles of comity with a healthy regard for California's sovereign status." *Franchise Tax Bd.*, *supra*, at 499; see *Thomas* v. *Washington Gas Light Co.*, 448 U. S. 261, 272 (1980) (plurality opinion) (Clause seeks to prevent "parochial entrenchment on the interests of other States"); *Allstate Ins. Co.* v. *Hague*, 449 U. S. 302, 323, and n. 10 (1981) (Stevens, J., concurring in judgment) (Clause is properly brought to bear when a State's choice of law "threatens the federal interest in national unity by unjustifiably infringing upon the legitimate interests of another State"); cf. *Supreme Court of N. H.* v. *Piper*, 470 U. S. 274, 288 (1985) (Privileges and Immunities Clause prevents the New Hampshire Supreme Court from promulgating a rule that limits bar admission to state residents, discriminating against out-of-state lawyers); *Bendix Autolite Corp.* v. *Midwesco Enterprises, Inc.*, 486 U. S. 888, 894 (1988) (Commerce Clause invalidates a statute of limitations that "imposes a greater burden on out-of-state companies than it does on [in-state] companies").

Opinion of BREYER, J.

For these reasons, insofar as the Nevada Supreme Court has declined to apply California law in favor of a special rule of Nevada law that is hostile to its sister States, we find its decision unconstitutional. We vacate its judgment and remand the case for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE ALITO concurs in the judgment.

ROBERTS, C. J., dissenting

# SUPREME COURT OF THE UNITED STATES

_____

No. 14–1175

_____

## FRANCHISE TAX BOARD OF CALIFORNIA, PETITIONER *v.* GILBERT P. HYATT

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF NEVADA

[April 19, 2016]

CHIEF JUSTICE ROBERTS, with whom JUSTICE THOMAS joins, dissenting.

Petitioner Franchise Tax Board is the California agency that collects California's state income tax. Respondent Gilbert Hyatt, a resident of Nevada, filed suit in Nevada state court against the Board, alleging that it had committed numerous torts in the course of auditing his California tax returns. The Board is immune from such a suit in California courts. The last time this case was before us, we held that the Nevada Supreme Court could apply Nevada law to resolve the Board's claim that it was immune from suit in Nevada as well. Following our decision, the Nevada Supreme Court upheld a $1 million jury award against the Board after concluding that the Board did not enjoy immunity under Nevada law.

Today the Court shifts course. It now holds that the Full Faith and Credit Clause requires the Nevada Supreme Court to afford the Board immunity to the extent Nevada agencies are entitled to immunity under Nevada law. Because damages in a similar suit against Nevada agencies are capped at $50,000 by Nevada law, the Court concludes that damages against the Board must be capped at that level as well.

That seems fair. But, for better or worse, the word "fair" does not appear in the Full Faith and Credit Clause. The

ROBERTS, C. J., dissenting

Court's decision is contrary to our precedent holding that the Clause does not block a State from applying its own law to redress an injury within its own borders. The opinion also departs from the text of the Clause, which—when it applies—requires a State to give *full* faith and credit to another State's laws. The Court instead permits partial credit: To comply with the Full Faith and Credit Clause, the Nevada Supreme Court need only afford the Board the same limited immunity that Nevada agencies enjoy.

I respectfully dissent.

## I

In 1991 Gilbert Hyatt sold his house in California and rented an apartment, registered to vote, and opened a bank account in Nevada. When he filed his 1991 and 1992 tax returns, he claimed Nevada as his place of residence. Unlike California, Nevada has no state income tax, and the move saved Hyatt millions of dollars in California taxes. California's Franchise Tax Board was suspicious, and it initiated an audit.

In the course of the audit, employees of the Board traveled to Nevada and allegedly peered through Hyatt's windows, rummaged around in his garbage, contacted his estranged family members, and shared his personal information not only with newspapers but also with his business contacts and even his place of worship. Hyatt claims that one employee in particular had it in for him, referring to him in antisemitic terms and taking "trophy-like pictures" in front of his home after the audit. Brief for Respondent 3. As a result of the audit, the Board determined that Hyatt was a resident of California for 1991 and part of 1992, and that he accordingly owed over $10 million in unpaid state income taxes, penalties, and interest.

Hyatt protested the audit before the Board, which upheld the audit following an 11-year administrative pro-

ROBERTS, C. J., dissenting

ceeding. Hyatt is still challenging the audit in California court. In 1998, Hyatt also filed suit against the Board in Nevada state court. In that suit, which is the subject of this case, Hyatt claimed that the Board committed a variety of torts, including fraud, intentional infliction of emotional distress, and invasion of privacy. The Board is immune from suit under California law, and it argued that Nevada was required under the Full Faith and Credit Clause to enforce California's immunity law.

When the case reached the Nevada Supreme Court, that court held, applying general principles of comity under Nevada law, that the Board was entitled to immunity for its negligent but not intentional torts—the same immunity afforded Nevada state agencies. Not satisfied, the Board pursued its claim of complete immunity to this Court, but we affirmed. We ruled that the Full Faith and Credit Clause did not prohibit Nevada from applying its own immunity law to the dispute. *Franchise Tax Bd. of Cal.* v. *Hyatt*, 538 U. S. 488, 498–499 (2003).

On remand, the trial court conducted a four-month jury trial. The jury found for Hyatt, awarding him $1 million for fraud, $52 million for invasion of privacy, $85 million for emotional distress, and $250 million in punitive damages. On appeal, the Nevada Supreme Court significantly reduced the award, concluding that the invasion of privacy claims failed as a matter of law. Applying principles of comity, the Nevada Supreme Court also held that because Nevada state agencies are not subject to punitive damages, the Board was not liable for the $250 million punitive damages award. The court did hold the Board responsible for the $1 million fraud judgment, however, and it remanded for a new trial on damages for the emotional distress claim. Although tort liability for Nevada state agencies was capped at $50,000 under Nevada law, the court held that it was against Nevada's public policy to apply that cap to the Board's liability for the fraud and

ROBERTS, C. J., dissenting

emotional distress claims.  The Board sought review by this Court, and we again granted certiorari.  576 U. S. ___ (2015).

## II

### A

The Full Faith and Credit Clause provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State."  U. S. Const., Art. IV, §1.  The purpose of the Clause "was to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others, and to make them integral parts of a single nation."  *Milwaukee County* v. *M. E. White Co.*, 296 U. S. 268, 276–277 (1935).

The Full Faith and Credit Clause applies in a straightforward fashion to state court judgments: "A judgment entered in one State must be respected in another provided that the first State had jurisdiction over the parties and the subject matter."  *Nevada* v. *Hall*, 440 U. S. 410, 421 (1979).  The Clause is more difficult to apply to "public Acts," which include the laws of other States.  See *Carroll* v. *Lanza*, 349 U. S. 408, 411 (1955).  State courts must give full faith and credit to those laws.  But what does that mean in practice?

It is clear that state courts are not always required to apply the laws of other States.  State laws frequently conflict, and a "rigid and literal enforcement of the full faith and credit clause, without regard to the statute of the forum, would lead to the absurd result that, wherever the conflict arises, the statute of each state must be enforced in the courts of the other, but cannot be in its own."  *Alaska Packers Assn.* v. *Industrial Accident Comm'n of Cal.*, 294 U. S. 532, 547 (1935).  Accordingly, this Court has treated the Full Faith and Credit Clause as a "conflicts of

law" provision that dictates when a State must apply the laws of another State rather than its own. *Franchise Tax Bd.*, 538 U. S., at 496; see also *Hall*, 440 U. S., at 424 (California court is not required to apply Nevada law).

Under the Full Faith and Credit Clause, "it is frequently the case" that "a court can lawfully apply either the law of one State or the contrary law of another." *Franchise Tax Bd.*, 538 U. S., at 496 (internal quotation marks omitted). As we have explained,

> "the very nature of the federal union of states, to which are reserved some of the attributes of sovereignty, precludes resort to the full faith and credit clause as the means for compelling a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate." *Pacific Employers Ins. Co.* v. *Industrial Accident Comm'n*, 306 U. S. 493, 501 (1939).

This Court has generally held that when a State chooses "to apply its own rule of law to give affirmative relief for an action arising within its borders," the Full Faith and Credit Clause is satisfied. *Carroll*, 349 U. S., at 413; see *Hall*, 440 U. S., at 424 (California court may apply California law consistent with the State's interest in "providing full protection to those who are injured on its highways" (internal quotation marks omitted)).

A State may not apply its own law, however, if doing so reflects a "policy of hostility to the public Acts" of another State. *Carroll*, 349 U. S., at 413. A State is considered to have adopted such a policy if it has "no sufficient policy considerations to warrant" its refusal to apply the other State's laws. *Ibid.* For example, when a State "seeks to exclude from its courts actions arising under a foreign statute" but permits similar actions under its own laws, the State has adopted a policy of hostility to the "public

ROBERTS, C. J., dissenting

Acts" of another State. *Ibid.*; see *Hughes* v. *Fetter*, 341 U. S. 609, 611–613 (1951). In such cases, this Court has held that the forum State must open its doors and permit the plaintiff to seek relief under another State's laws. See, *e.g.*, *id.*, at 611 ("Wisconsin cannot escape [its] constitutional obligation to enforce the rights and duties validly created under the laws of other states by the simple device of removing jurisdiction from courts otherwise competent").

### B

According to the Court, the Nevada Supreme Court violated the Full Faith and Credit Clause by applying "a special rule of law that evinces a policy of hostility toward California." *Ante*, at 4 (internal quotation marks omitted). As long as Nevada provides immunity to its state agencies for awards above $50,000, the majority reasons, the State has no legitimate policy rationale for refusing to give similar immunity to the agencies of other States. The Court concludes that the Nevada Supreme Court is accordingly required to rewrite Nevada law to afford the Board the same immunity to which Nevada agencies are entitled. In the majority's view, that result is "strongly" supported by this Court's precedents. *Ibid.* I disagree.

*Carroll* explains that the Full Faith and Credit Clause prohibits a State from adopting a "policy of hostility to the public Acts" of another State. 349 U. S., at 413. But it does not stop there. *Carroll* goes on to describe what adopting a "policy of hostility" means: A State may not refuse to apply another State's law where there are "*no* sufficient policy considerations to warrant such refusal." *Ibid.* (emphasis added). Where a State chooses a different rule from a sister State in order "to give affirmative relief for an action arising within its borders," the State has a sufficient policy reason for applying its own law, and the Full Faith and Credit Clause is satisfied. *Ibid.*

ROBERTS, C. J., dissenting

In this case, the Nevada Supreme Court applied Nevada rather than California immunity law in order to uphold the "state's policy interest in providing adequate redress to Nevada citizens." 130 Nev. ___, ___, 335 P. 3d 125, 147 (2014). This Court has long recognized that "[f]ew matters could be deemed more appropriately the concern of the state in which the injury occurs or more completely within its power" than "the bodily safety and economic protection" of people injured within its borders. *Pacific Employers Ins. Co.,* 306 U. S.*,* at 503; see *Hall,* 440 U. S., at 424. Hyatt alleges that the Board committed multiple torts, including fraud and intentional infliction of emotional distress. See 130 Nev., at ___, 335 P. 3d, at 130. Under *Pacific Employers Insurance* and *Carroll,* there is no doubt that Nevada has a "sufficient" policy interest in protecting Nevada residents from such injuries.

The majority, however, does not regard that policy interest as sufficient justification for denying the Board immunity. Despite this Court's decision to get out of the business of "appraising and balancing state interests under the Full Faith and Credit Clause," *Franchise Tax Bd.,* 538 U. S., at 498, the majority concludes that Nevada cannot *really* have a state policy to protect its citizens from the kinds of torts alleged here, because the State capped its own liability at $50,000 in similar situations. See *ante,* at 6–7. But that fails to credit the Nevada Supreme Court's explanation for why a damages cap for Nevada state agencies is fully consistent with the State's policy of protecting its citizens.

According to the Nevada Supreme Court, Nevada law treats its own agencies differently from the agencies of other States because Nevada agencies are "subject to legislative control, administrative oversight, and public accountability" in Nevada. 130 Nev., at ___, 335 P. 3d, at 147 (internal quotation marks omitted). The same is not true of other litigants, such as the Board, who operate

ROBERTS, C. J., dissenting

"outside such controls." *Ibid.* (internal quotation marks omitted). The majority may think that Nevada is being unfair, but it cannot be said that the State failed to articulate a sufficient policy explanation for its decision to apply a damages cap to Nevada state agencies, but not to the agencies of other States.

As the Court points out, the Constitution certainly has a "vision of 50 individual and equally dignified States," *ante,* at 7, which is why California remains free to adopt a policy similar to that of Nevada, should it wish to do so. See *Coyle* v. *Smith,* 221 U. S. 559, 567 (1911) (The Union "was and is a union of States, equal in power, dignity and authority, each competent to exert that residuum of sovereignty not delegated to the United States by the Constitution itself"). Nevada is not, however, required to treat its sister State as equally committed to the protection of Nevada citizens.

It is true that this Court in the prior iteration of this case found no Full Faith and Credit Clause violation in part because the "Nevada Supreme Court sensitively applied principles of comity with a healthy regard for California's sovereign status, relying on the contours of Nevada's own sovereign immunity from suit as a benchmark for its analysis." *Franchise Tax Bd.,* 538 U. S., at 499. But the Nevada court adhered to its policy of sensitivity to comity concerns this time around as well. In deference to the Board's sovereignty, the court threw out a $250 million punitive damages award, on top of its previous decision that the Board was not liable at all for its negligent acts. That is more than a "healthy regard" for California's sovereign status.

Even if the Court is correct that Nevada violated the Full Faith and Credit Clause, however, it is wrong about the remedy. The majority concludes that in the sovereign immunity context, the Full Faith and Credit Clause is not a choice of law provision, but a create-your-own-law provi-

Cite as: 578 U. S. ____ (2016)      9

ROBERTS, C. J., dissenting

sion: The Court does not require the Nevada Supreme Court to apply either Nevada law (no immunity for the Board) or California law (complete immunity for the Board), but instead requires a new hybrid rule, under which the Board enjoys partial immunity.

The majority's approach is nowhere to be found in the Full Faith and Credit Clause. Where the Clause applies, it expressly requires a State to give *full* faith and credit to another State's laws. If the majority is correct that Nevada has no sufficient policy justification for applying Nevada immunity law, then California law applies. And under California law, the Board is entitled to *full* immunity. Or, if Nevada has a sufficient policy reason to apply its own law, then Nevada law applies, and the Board is subject to *full* liability.

I respectfully dissent.