**No. 15-15296**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

GILBERT P. HYATT

*Plaintiff-Appellant,*

*v.*

BETTY T. YEE, ET AL.

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of California, No. 2:14-cv-00849-GEB-DAD (Burrell, J.)

## APPELLEE CALIFORNIA FRANCHISE TAX BOARD'S JUDICIAL NOTICE DOCUMENTS

**VOLUME 4 OF 12**

**RJN 0501 – RJN 0729**

JAMES BRADSHAW
DEBBIE LEONARD
ADAM HOSMER-HENNER
MCDONALD CARANO WILSON LLP
100 West Liberty Street, 10th Floor
Reno, NV 89501
(775) 788-2000

CYNTHIA J. LARSEN
KATIE DEWITT
DAVID W. SPENCER
ORRICK, HERRINGTON & SUTCLIFFE
400 Capitol Mall, Suite 3000
Sacramento, CA 95814
(916) 329-7970

SETH P. WAXMAN
PAUL R.Q. WOLFSON
DANIEL WINIK
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
(202) 663-6000

# INDEX

## FTB'S MOTION FOR JUDICIAL NOTICE

| Doc # | Date | Document Name | Dunn Par # | Bates # - RJN | Judicial or Administrative Proceeding | Category |
|---|---|---|---|---|---|---|
| **VOLUME ONE** | | | | | | |
| 1 | 6/17/1993 | Letter from Marc Shayer to Gilbert Hyatt | 10 | 1 - 5 | NV Trial Ex. 0112* | 1, 3 |
| 2 | 7/15/1993 | Letter from Marc Shayer to Michael Kern, and response - Information Concerning Resident Status (Form FTB 3805F) | 10 | 6 - 14 | NV Trial Ex. 2174 | 1, 3 |
| 3 | 8/4/1993 | Letter from Michael Kern to Marc Shayer | 10 | 15 - 16 | NV Trial Ex. 2173 | 1, 3 |
| 4 | 5/24/1994 | Letter from Soriano to Michael Kern | 10 | 17 - 20 | NV Trial Ex. 2503 | 1, 3 |
| 5 | 8/2/1995 | Letter from Sheila Cox to Michael Kern - determination letter | 12 | 21 - 48 | NV Trial Ex. 2821 | 1, 3 |
| 6 | 8/29/1995 | Fraud Penalty | 13 | 49 - 62 | NV Trial Ex. 2199 | 1, 3 |
| 7 | 4/23/1996 | Fax from Michael Kern to Hyatt re 1991 NPA, and from Michael Kern to Cowan | 12 | 63 - 74 | NV Trial Ex. 2592 | 1, 3 |
| 8 | 6/20/1996 | Letter from Cowan to FTB re 1991 Protest Letter | 14 | 75 - 136 | NV Trial Ex. 296 | 2, 3 |
| 9 | 8/18/1997 | Fax from Hyatt to Eugene Cowan with Notice of Proposed Assessment 1992 | 13 | 137 - 141 | NV Trial Ex. 2609 | 1, 3 |
| 10 | 10/10/1997 | Letter from Cowan to FTB re 1992 Protest Letter 10-10-97 | 14 | 142 - 144 | NV Trial Ex. 319 | 2, 3 |
| 11 | 1/6/1998 | Complaint, *Gilbert P. Hyatt v. Franchise Tax Board of California* | 14 | 145 - 166 | Eighth Judicial District Court, Clark County, Nevada, Case No. 98A382999 | 3 |

* All references to "NV Trial Ex." are documents that were submitted into evidence at the jury trial in Hyatt's Nevada litigation, Case No. 98A382999, Eighth Judicial District Court, Clark County, Nevada.

# INDEX

## FTB'S MOTION FOR JUDICIAL NOTICE

| Doc # | Date | Document Name | Dunn Par # | Bates # - RJN | Judicial or Administrative Proceeding | Category |
|---|---|---|---|---|---|---|
| **VOLUME TWO** | | | | | | |
| 12 | 1/6/1998 | Case docket - *Gilbert P. Hyatt v. Franchise Tax Board of California* | 32 | 167 - 257 | Eighth Judicial District Court, Clark County, Nevada, Case No. 98A382999 | 3 |
| 13 | 3/17/1998 | Fax from Donald Kula to Hutchison and Hyatt re response tactics to Subpoena Duces Tecum to be issued to Cal Fed Bank | 21 | 258 | Ex. 3 to Dunn Decl., SER 23; NV Trial Ex. 2326 | 2, 3 |
| 14 | 5/28/1998 | Letter from Sheila Cox to Eugene Cowan attaching 4/24/98 Declaration for Subpoena Duces Tecum signed by Sheila Cox, Subpoena Duces Tecum to Cal Fed Bank | 21 | 259 - 262 | Ex. 3 to Dunn Decl., SER 24-27; NV Trial Ex. 2326 | 2 |
| 15 | 12/27/1999 | Protective Order on Report and Recommendation from Discovery Commissioner Biggar | 16 | 263 - 274 | Eighth Judicial District Court, Clark County, Nevada, Case No. 98A382999 | 3 |
| 16 | 12/30/1999 | Letter from Woodward to Cowan re document request letter | 15 | 275 - 305 | NV Trial Ex. 2330 | 2, 3 |
| 17 | 1/27/2000 | Docket | 17, 32 | 306 - 315 | Nevada Supreme Court, Case No. 35549 | 3 |
| 18 | 3/7/2000 | Memo from McLaughlin to Terry Collins | 16 | 316 - 319 | NV Trial Ex. 2333 | 2, 3 |
| 19 | 4/16/2000 | Letter from FTB to Cowan and Eric Coffill re request for delay | 15, 16 | 320 - 322 | NV Trial Ex. 2332 | 2, 3 |
| 20 | 6/7/2000 | Order Staying District Court Proceedings | 17 | 323 - 324 | Nevada Supreme Court, Case No. 35549 | 3 |

# INDEX

## FTB'S MOTION FOR JUDICIAL NOTICE

| Doc # | Date | Document Name | Dunn Par # | Bates # - RJN | Judicial or Administrative Proceeding | Category |
|---|---|---|---|---|---|---|
| **VOLUME THREE** | | | | | | |
| 21 | 6/30/2000 | Letter to Cody Cinnamon from Coffill responding to IDR | 16 | 325 - 425 | NV Trial Ex. 356 | 2, 3 |
| 22 | 7/7/2000 | Docket | 17, 32 | 426 - 434 | Nevada Supreme Court, Case No. 36390 | 3 |
| 23 | 10/3/2000 | Hearing Officer Report | 16 | 435 - 437 | NV Trial Ex. 2335 | 2, 3 |
| 24 | 6/13/2001 | Order Granting Petition (Docket No. 36390), and Dismissing Petition (Docket No. 35549) | 17 | 438 - 443 | Nevada Supreme Court, Case No. 36390, 35549 | 3 |
| 25 | 3/4/2002 | Docket | 32 | 444 - 445 | Nevada Supreme Court, Case No. 39274 | 3 |
| 26 | 3/8/2002 | Docket | 32 | 446 - 447 | Nevada Supreme Court, Case No. 39312 | 3 |
| 27 | 4/4/2002 | Order Denying Petition for Writ of Mandamus or Prohibition and Dismissing Appeal | 17 | 448 - 450 | Nevada Supreme Court, Case No. 39312, 39274 | 3 |
| 28 | 4/4/2002 | Order Granting Petition for Rehearing, Vacating Previous Order, Granting Petition for a Writ of Mandamus in Part in Docket no. 36390, and Granting Petition for a Writ of Prohibition in Part in Docket No. 35549 | 17 | 451 - 464 | Nevada Supreme Court, Case No. 35549, 36390 | 3 |
| 29 | 6/3/2002 | Letter from Felix Leatherwood to Mark Hutchison requesting documents and deposition testimony stamped "Confidential-NV Protective Order" | 17 | 465 - 466 | NV Trial Ex. 2342 | 2, 3 |
| 30 | 7/7/2002 | FTB Administrative Subpoena Duces Tecum | 17 | 467 - 470 | NV Trial Ex. 2344 | 2, 3 |

# INDEX

## FTB'S MOTION FOR JUDICIAL NOTICE

| Doc # | Date | Document Name | Dunn Par # | Bates # - RJN | Judicial or Administrative Proceeding | Category |
|---|---|---|---|---|---|---|
| 31 | 2/28/2003 | Court's Ruling on Order to Show Cause filed in Superior Court of California, Sacramento County , Case No. 02CS01582 | 17 | 471 - 472 | NV Trial Ex. 2348 | 3, 5 |
| 32 | 3/17/2003 | Fax Cover and letter from Donald Kula to Molly Mosley, DAG | 17 | 473 - 475 | NV Trial Ex. 2349 | 2, 3, 5 |
| 33 | 12/31/2003 | *State Franchise Tax Board v Gilbert P. Hyatt* , Decision (unpublished) | 17 | 476 - 500 | California Court of Appeal, Third Appellate District - Sacramento, Case No. C043627 | 2, 3, 5 |
| **VOLUME FOUR** | | | | | | |
| 34 | 9/7/2005 | Protest Event Log for Case Unit: Hyatt, Gilbert - 1992 | | 501 - 604 | NV Trial Ex. 2353 | 2, 3 |
| 35 | 10/28/2005 | Letter from Robert Dunn to Mark Hutchison re: request consent to release deposition transcripts and documents to FTB's protest hearing officer | 18 | 605 - 607 | NV Trial Ex. 2354 | 2, 3 |
| 36 | 12/6/2005 | Letter from Robert Dunn to Mark Hutchison re: second request | 18 | 608 | NV Trial Ex. 2355 | 2, 3 |
| 37 | 1/30/2006 | FTB Administrative Subpoena Duces Tecum and Exhibits A, C-E | 18 | 609 - 627 | NV Trial Ex. 2356 | 2, 3 |
| 38 | 1/19/2007 | Letter from Robert Dunn to Mark Hutchison requests production of documents and testimony from 2006 | 18 | 628 - 632 | NV Trial Ex. 2357 | 2, 3 |
| 39 | 2/14/2007 | Letter from Donald Kula to Robert Dunn | 18 | 633 - 638 | NV Trial Ex. 2358 | 2, 3 |
| 40 | 5/17/2007 | Letter from Donald Kula to Robert Dunn | 18 | 639 - 640 | NV Trial Ex. 2359 | 2, 3 |

# INDEX

## FTB'S MOTION FOR JUDICIAL NOTICE

| Doc # | Date | Document Name | Dunn Par # | Bates # - RJN | Judicial or Administrative Proceeding | Category |
|---|---|---|---|---|---|---|
| 41 | 11/1/2007 | Determination Letter from George W. McLaughlin to Eric Coffill | 18 | 641 - 690 | NV Trial Ex. 2320 | 2, 3 |
| 42 | 11/20/2007 | Letter from Eric Coffill to George W. McLaughlin | 19 | 691 - 695 | Ex. 1 to Dunn Decl., SER 13-17 | 6 |
| 43 | 11/26/2007 | Letter from George W. McLaughlin to Eric Coffill | 19 | 696 - 698 | Ex. 2 to Dunn Decl., SER 19-21 | 2 |
| 44 | 1/22/2008 | Letter from Eric Coffill to SBE enclosing Notice of Appeal for 1991, Request for Abatement of Interest | 22 | 699 - 711 | Ex. 4 to Dunn Decl., SER 29-41 | 6 |
| 45 | 1/23/2008 | Letter from Eric Coffill to SBE enclosing Notice of Appeal for 1992, Request for Abatement of Interest | 22 | 712 - 724 | Ex. 5 to Dunn Decl., SER 43-55 | 6 |
| 46 | 7/1/2008 | Letter from SBE to Eric Coffill re extension | 23 | 725 - 726 | SBE | 6 |
| 47 | 7/3/2008 | Letter from SBE to Eric Coffill re extension | 23 | 727 | SBE | 6 |
| 48 | 11/18/2008 | Letter from SBE to Eric Coffill re extension | 23 | 728 - 729 | SBE | 6 |
| **VOLUME FIVE** | | | | | | |
| 49 | 12/9/2008 | Hyatt Opening Brief 1991 | 23 | 730 - 836 | SBE | 6 |
| 50 | 12/9/2008 | Hyatt Opening Brief 1992 | 23 | 837 - 922 | SBE | 6 |
| 51 | 1/27/2009 | Letter from Robert Dunn to SBE re Hyatt's filing | 23 | 923 - 924 | SBE | 6 |
| 52 | 2/13/2009 | Docket | 32 | 925 - 928 | Nevada Supreme Court, Case No. 53264 | 3 |
| 53 | 3/16/2009 | Letter from Robert Dunn to Eric Coffill re scheduling depositions of affiants | 23 | 929 - 930 | SBE | 3 |

# INDEX

## FTB'S MOTION FOR JUDICIAL NOTICE

| Doc # | Date | Document Name | Dunn Par # | Bates # - RJN | Judicial or Administrative Proceeding | Category |
|---|---|---|---|---|---|---|
| 54 | 6/26/2009 | Request for Foreign Deposition Subpoena - Melvin R. Hecht | | 931 - 953 | Eighth Judicial District Court, Clark County, Nevada, Case No. A-09-593462-C | 3, 5, 6 |
| **VOLUME SIX** | | | | | | |
| 55 | 6/26/2009 | Request for Foreign Deposition Subpoena - Michelina Hecht | | 954 - 975 | Eighth Judicial District Court, Clark County, Nevada, Case No. A-09-593462-C | 3, 5, 6 |
| 56 | 9/15/2009 | FTB Opening Brief 1991 | 24 | 976 - 1081 | SBE | 6 |
| 57 | 9/15/2009 | FTB Opening Brief 1992 | 24, 31 | 1082 - 1160 | SBE; Ex. 7 to Dunn Decl., SER 61 -70 | 6 |
| 58 | 9/29/2009 | Letter from Eric Coffill to SBE requesting extension of time for filing | 25 | 1161 - 1172 | SBE | 6 |
| 59 | 10/1/2009 | Letter from Robert Dunn to SBE replying to Hyatt's request for time | 25 | 1173 - 1176 | SBE | 6 |
| 60 | 5/20/2010 | Letter from SBE to Eric Coffill re extension and new due date | 25 | 1177 | SBE | 6 |
| 61 | 8/11/2010 | Letter from SBE to Eric Coffill granting extension and email exchange | 25 | 1178 - 1180 | SBE | 6 |
| **VOLUME SEVEN** | | | | | | |
| 62 | 8/23/2010 | Hyatt 1991 Reply Brief | 25 | 1181 - 1289 | SBE | 6 |
| 63 | 8/23/2010 | Hyatt 1992 Reply Brief | 25 | 1290 - 1398 | SBE | 6 |
| 64 | 8/23/2010 | Hyatt Index of Affidavits | 25 | 1399 - 1403 | SBE | 6 |

# INDEX

## FTB'S MOTION FOR JUDICIAL NOTICE

| Doc # | Date | Document Name | Dunn Par # | Bates # - RJN | Judicial or Administrative Proceeding | Category |
|---|---|---|---|---|---|---|
| 65 | 2/4/2011 | *State of California Franchise Tax Board v. Mary Troter Stratton, et al.,* Petition by FTB for Issuance of Out-of-State Deposition Commissions (for Stratton depositions) | 24 | 1404 - 1410 | Superior Court of California, Sacramento, Case No. 34-2011-00096505 | 5, 6 |
| 66 | 5/3/2011 | *State of California Franchise Tax Board v. Gilbert P. Hyatt,* Nevada District Court Order Denying Strattons' Motion to Quash Subpoenas for a Pending Administrative Tax Appeal in California | 24 | 1411 - 1413 | Eighth Judicial District Court, Clark County, Nevada, Case No. A-II-635345-C | 3, 5, 6 |
| **VOLUME EIGHT** | | | | | | |
| 67 | 6/30/2011 | FTB Reply Brief 1992 (Excerpts re Delays in Protest and Nevada litigation) | | 1414 - 1426 | SBE | 6 |
| 68 | 7/20/2011 | Dkt. No. 1 - Hyatt's Petition for Protective Order or Quash subpoenas | 27 | 1427 - 1429 | New York Supreme Court, Westchester County, Case No. 52961/2011 | 6, 7 |
| 69 | 7/20/2011 | Docket | 32 | 1430 - 1431 | New York Supreme Court, Westchester County, Case No. 52961/2011 | 7 |
| 70 | 7/29/2011 | Dkt. No. 17 - Decision & Order re Philips discovery | 27 | 1432 - 1444 | New York Supreme Court, Westchester County, Case No. 52961/2011 | 6, 7 |

# INDEX

## FTB'S MOTION FOR JUDICIAL NOTICE

| Doc # | Date | Document Name | Dunn Par # | Bates # - RJN | Judicial or Administrative Proceeding | Category |
|---|---|---|---|---|---|---|
| 71 | 8/1/2011 | Docket | 32 | 1445 | New York Appellate Division, Second Judicial Department, Case No. 2011-6859 | 7 |
| 72 | 8/2/2011 | Dkt. No. 19 - Hyatt's Notice of Appeal | 27 | 1446 - 1465 | New York Supreme Court, Westchester County, Case No. 52961/2011 | 7 |
| 73 | 8/15/2012 | Hyatt 1991 Supplemental Brief | 25 | 1466 - 1570 | SBE | 6 |
| **VOLUME NINE** | | | | | | |
| 74 | 8/15/2012 | Hyatt 1992 Supplemental Brief | 25 | 1571 - 1678 | SBE | 6 |
| 75 | 8/15/2012 | Exh A Hyatt 1991 Supplemental Brief | 25 | 1679 - 1680 | SBE | 6 |
| 76 | 8/15/2012 | Exh B Hyatt 1991 Supplemental Brief | 25 | 1681 - 1683 | SBE | 6 |
| 77 | 10/5/2012 | Dkt. No. 24 - Order to Show Cause | 28 | 1684 - 1687 | New York Appellate Division, Second Judicial Department, Case No. 2011-6859 | 7 |
| 78 | 2/19/2013 | FTB Supplemental Briefing re Tax Year 1991 and 1992, Exhibit H Tab 1-47_Protest and Litigation timeline (Tab 36) | | 1688 | SBE | 6 |

# INDEX

## FTB'S MOTION FOR JUDICIAL NOTICE

| Doc # | Date | Document Name | Dunn Par # | Bates # - RJN | Judicial or Administrative Proceeding | Category |
|---|---|---|---|---|---|---|
| 79 | 3/13/2013 | Dkt. No. 29 - Opinion and Order | 28 | 1689 - 1705 | New York Appellate Division, Second Judicial Department, Case No. 2011-6859 | 7 |
| 80 | 3/28/2013 | FTB Additional Brief Philips Documents and NY litigation | | 1706 - 1721 | SBE | 6, 7 |
| 81 | 4/29/2013 | FTB Additional Brief re Philips documents to SBE | | 1722 - 1726 | SBE | 6, 7 |
| 82 | 5/14/2013 | Docket | 32 | 1727 - 1730 | New York Supreme Court, Westchester County, Case No. 57751-2013 | 7 |
| 83 | 10/7/2013 | Dkt. No. 23- Decision and Order | 28 | 1731 - 1747 | New York Supreme Court, Westchester County, Case No. 57751-2013 | 7 |
| 84 | 3/13/2014 | Dkt. No. 74 - Decision and Order | 28 | 1748 - 1758 | New York Supreme Court, Westchester County, Case No. 57751-2013 | 7 |
| 85 | 4/23/2014 | Letter from SBE to Eric Coffill and Robert Dunn requesting additional briefing | 29 | 1759 - 1761 | SBE | 6 |
| 86 | 5/7/2014 | Letter from Eric Coffill to SBE | 30 | 1762 - 1764 | Ex. 6 to Dunn Decl., SER 57-59 | 6 |
| 87 | 6/13/2014 | Letter from SBE to Eric Coffill and Robert Dunn re due dates and reluctance to grant more extensions | 30, 33 | 1765 - 1767 | SBE | 6 |
| 88 | 9/26/2014 | Letter from Eric Coffill to SBE re Request to Vacate | 33 | 1768 - 1769 | SBE | 6 |

# INDEX

## FTB'S MOTION FOR JUDICIAL NOTICE

| Doc # | Date | Document Name | Dunn Par # | Bates # - RJN | Judicial or Administrative Proceeding | Category |
|---|---|---|---|---|---|---|
| 89 | 10/13/2014 | Letter from Eric Coffill to SBE responding to FTB letter (enclosing letter from Hyatt's New York counsel to FTB's New York counsel re U.S. Philips documents dispute) | 33 | 1770 - 1778 | SBE | 6, 7 |
| 90 | 11/3/2014 | Letter from Eric Coffill to SBE requesting, *inter alia* , that SBE vacate briefing deadline | 33 | 1779 - 1780 | SBE | 6 |
| **VOLUME TEN** | | | | | | |
| 91 | 2/4/2015 | Letter from Eric Coffill to SBE submitting motions and requesting, *inter alia,* delay in briefing ending decision on motions | 33 | 1781 - 1847 | SBE | 6 |
| 92 | 2/23/2015 | Letter from Eric Coffill to SBE requesting, *inter alia,* delay on briefing until SBE rules on motions to strike | 33 | 1848 - 1849 | SBE | 6 |
| 93 | 3/11/2015 | Docket | 32 | 1850 - 1852 | New York Supreme Court, Westchester County, Case No. 53655-2015 | 6, 7 |
| 94 | 4/6/2015 | Affidavit of Robert Dunn in Opposition to Gilbert Hyatt's Motion Seeking an Order of Civil Contempt and Permanent Injunctive Relief | 32 | 1853 - 2000 | New York Supreme Court, Westchester County, Case No. 53655-2015 | 6, 7 |
| 95 | 6/3/2015 | Letter from Eric Coffill to the SBE requesting extension of time to file reply briefs | 33 | 2001 - 2003 | SBE | 6 |

**INDEX**

**FTB'S MOTION FOR JUDICIAL NOTICE**

| Doc # | Date | Document Name | Dunn Par # | Bates # - RJN | Judicial or Administrative Proceeding | Category |
|---|---|---|---|---|---|---|
| 96 | 9/10/2015 | Amended Judgment Decision & Order | 32 | 2004 - 2016 | New York Supreme Court, Westchester County, Case No. 53655-2015 | 6, 7 |
| 97 | 9/19/2016 | Letter from Edwin Antolin to SBE requesting extension for filing additional briefs | 33 | 2017 - 2018 | SBE | 6 |
| **VOLUME ELEVEN** | | | | | | |
| 98 | 9/28/2016 | Appellant's Concluding Summary (1991); Errata filed 11/4/16 | 33 | 2019 - 2057 | SBE | 6 |
| 99 | 9/28/2016 | Appellant's Concluding Summary (1992); Errata filed 11/4/16 | 33 | 2058 - 2092 | SBE | 6 |
| 100 | 9/28/2016 | Appellant's Second Additional Briefing (1991); Errata filed 11/4/16 | 33 | 2093 - 2165 | SBE | 6 |
| 101 | 9/28/2016 | Appellant's Second Additional Briefing (1992); Errata filed 11/4/16 | 33 | 2166 - 2236 | SBE | 6 |
| **VOLUME TWELVE** | | | | | | |
| 102 | 9/28/2016 | Attachment 1, Appellant's Second Additional Briefing (1992); Errata filed 11/4/16 | 33 | 2237 - 2278 | SBE | 6 |
| 103 | 10/20/2016 | Letter from SBE to Edwin Antolin re, *inter alia,* delays | 33 | 2279 - 2282 | SBE | 6 |
| 104 | 11/4/2016 | Letter from Edwin Antolin to Joann Richmond with errata table | 33 | 2283 - 2297 | SBE | 6 |
| 105 | 11/16/2016 | Letter from FTB to SBE re Hyatt's request for additional time | 33 | 2298 - 2299 | SBE | 6 |

# INDEX

## FTB'S MOTION FOR JUDICIAL NOTICE

| Doc # | Date | Document Name | Dunn Par # | Bates # - RJN | Judicial or Administrative Proceeding | Category |
|---|---|---|---|---|---|---|
| 106 | 1/6/2017 | Letter from SBE to Edwin Antolin re rescheduing the hearing from March 2017 to May 2017 | 33 | 2300 | SBE | 6 |
| 107 | 3/3/2017 | Notice of Board Hearing for Case No. 446509 on 5/23/17 | 33 | 2301 - 2302 | SBE | 6 |
| 108 | 3/3/2017 | Notice of Board Hearing for Case No. 435770 on 5/23/17 | 33 | 2303 - 2304 | SBE | 6 |



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 1 of 87

Event Log For Case Unit: Hyatt, Gilbert - 1992

09/16/1998 Create Case Unit

09/16/1998 Record Progress

09/16/1998 Record Progress

09/16/1998 Record Progress

09/16/1998 Record Progress

09/16/1998 Record Progress

FTB 27924(A)



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005

Event Log For Case Unit: Hyatt, Gilbert - 1992

09/16/1998 Record Progress

09/16/1998 Record Progress

09/16/1998 Transfer

10/07/1998 Change Status

10/07/1998 Change Status

10/07/1998 Transfer

User: Berwick, Colleen Date: 10/07/1998 Time: 10:45:29 Type: Docketed Protest

Transfer To: Dunn, Robert W

Comment: Reassignment

FTB 27925(A)



Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 16 of 244

FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 3 of 87

Event Log For Case Unit: Hyatt, Gilbert - 1992

10/19/1998 Record Progress

10/20/1998 Received Correspondence

10/26/1998 Request Review

10/26/1998 Record Progress

10/26/1998 Record Event

10/27/1998 Request Review

FTB 27926(A)

2353-0003

RJN000503



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 4 of 87

Event Log For Case Unit: Hyatt, Gilbert - 1992

10/27/1998 Send Correspondence

User: Dunn, Robert W Date: 10/27/1998 Time: 11:22:57 Type: Docketed Protest

Subject: Initial Contact Letter to Taxpayer

12/31/1998 Record Progress

12/31/1998 Record Progress

12/31/1998 Record Progress

12/31/1998 Record Progress

12/31/1998 Record Progress

FTB 27927(A)



FRANCHISE TAX BOARD
PASS DESKTOP

Event Log For Case Unit: Hyatt, Gilbert - 1992

**02/24/1999 Transfer**

**User:** Berwick, Colleen **Date:** 02/24/1999 **Time:** 09:30:34 **Type:** Docketed Protest

**Transfer To:** Woodward, Charlene L

**Comment:**

**02/24/1999 Send Correspondence**

**User:** Berwick, Colleen **Date:** 02/24/1999 **Time:** 09:37:05 **Type:** Docketed Protest

**Subject:** Reassignment Letter

**02/24/1999 Send Correspondence**

**User:** Berwick, Colleen **Date:** 02/24/1999 **Time:** 10:24:04 **Type:** Docketed Protest

**Subject:** Revised Reassignment Letter



**Event Log For Case Unit: Hyatt, Gilbert - 1992**

03/02/1999 Record Public Contact

User: Woodward, Charlene L | Date: 03/02/1999 | Time: 17:05:21 | Type: Docketed Protest

Contact Type: Incoming Call | Time: 17:02:58 | Date: 03/02/1999

Subject: My representing FTB

Comment: I spoke to Eugene Cowan, the rep, regarding my being assigned the case. He said to keep in mind two points:(1) the FTB case is based on affidavits of former family members--not wise plan. He has letters now.(2) the auditor did a lot of miscomputations. She ignored many Nevada contacts.

07/19/1999 Record Public Contact

User: Collins, Terry | Date: 07/19/1999 | Time: 13:41:27 | Type: Docketed Protest

Contact Type: Incoming Call | Time: 13:40:50 | Date: 07/19/1999

Subject: Protest Status

Comment: Call from Eugene Cowan. I told him protest would be worked by Charlene Woodward.

FTB 27929(A)



FRANCHISE TAX BOARD
PASS DESKTOP

Event Log For Case Unit: Hyatt, Gilbert - 1992

08/16/1999 Record Progress

08/16/1999 Record Progress

08/16/1999 Record Progress

08/16/1999 Record Progress

08/16/1999 Record Progress

08/16/1999 Record Progress



Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 21 of 244

FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 8 of 87

Event Log For Case Unit: Hyatt, Gilbert - 1992

08/25/1999 Record Progress

08/25/1999 Record Progress

08/25/1999 Record Progress

09/14/1999 Record Progress

09/14/1999 Record Progress

09/14/1999 Record Progress

FTB 27931 (A)

2353-0008

RJN000508



FRANCHISE TAX BOARD
PASS DESKTOP

Event Log For Case Unit: Hyatt, Gilbert - 1992

**09/14/1999 Record Progress**

User: Woodward, Charlene L    Date: 09/14/1999    Time: 15:18:08    Type: Docketed Protest

Date: 09/14/1999    Location: Desk

Task Name:

Summary: spoke to rep re time allowed to complete protest and researched

Comment:

**09/16/1999 Record Public Contact**

User: Collins, Terry    Date: 09/16/1999    Time: 14:50:44    Type: Docketed Protest

Contact Type: Outgoing Call    Time: 14:48:44    Date: 09/16/1999

Subject: FTB Notice 99-1

Comment: I returned Eugene Cowan's call regarding 99-1. I told him the notice only provided guidelines, and, in any event, because of the nature of this case, we could not commit to firm giidelines. I told him we were working the case "diligently." He agreed with me that the litigation has a spillover effect upon the protest. I asked him if he wanted anything more from ne and he replied "No."

**09/16/1999 Record Progress**

User: Collins, Terry    Date: 09/16/1999    Time: 14:51:13    Type: Docketed Protest

Date: 09/15/1999    Location: Desk

Task Name

Summary: Call from rep.

Comment:

FTB 27932 (A)



FRANCHISE TAX BOARD
PASS DESKTOP

Event Log For Case Unit: Hyatt, Gilbert - 1992

09/29/1999 Record Progress

09/30/1999 Record Progress

User: Woodward, Charlene L | Date: 09/30/1999 | Time: 17:02:05 | Type: Docketed Protest

Date: 09/29/1999 | Hours: 8 | Location: Desk

Task Name: L - Factual Devmnt/Discovery

Summary: discussed case

Comment: Researched sourcing and discussed alternative theories of the case with Dick Gould, Mike Rownell, Natasha and Bob

10/21/1999 Record Progress

10/21/1999 Record Progress

10/21/1999 Record Progress

10/21/1999 Record Progress

FTB 27933 (B)



Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 24 of 244

FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 11 of 87

Event Log For Case Unit: Hyatt, Gilbert - 1992

10/21/1999 Record Progress

10/21/1999 Record Progress

10/21/1999 Record Progress

10/27/1999 Record Progress

10/27/1999 Record Progress

10/27/1999 Record Progress

FTB 27934 (A)

2353-0011
RJN000511



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 12 of 87

Event Log For Case Unit: Hyatt, Gilbert - 1992

11/10/1999 Record Progress

11/10/1999 Record Progress

11/10/1999 Record Progress

12/01/1999 Record Progress

12/01/1999 Record Progress

12/01/1999 Record Progress

FTB 27935 (A)



FRANCHISE TAX BOARD
PASS DESKTOP

Event Log For Case Unit: Hyatt, Gilbert - 1992

12/01/1999 Record Progress

12/09/1999 Request Review

12/16/1999 Record Progress

12/16/1999 Record Progress

12/16/1999 Record Progress

12/16/1999 Record Progress



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 14 of 87

**Event Log For Case Unit: Hyatt, Gilbert - 1992**

**12/20/1999 Received Correspondence**

**User:** Hao, Gene **Date:** 12/20/1999 **Time:** 14:47:28 **Type:** Docketed Protest

**From:** Eugene G. Cowan

**Subject:** Protest Progress Inquiry

**Comment:** The Tax Rep. sent a letter inquring about the status on responding to the protest.

**12/20/1999 Received Correspondence**

**User:** Hao, Gene **Date:** 12/20/1999 **Time:** 14:53:04 **Type:** Docketed Protest

**From:** Eugene G. Cowan

**Subject:** Protest Status Inquiry

**Comment:** The Tax Rep. wants to know the status of the protest for the income year 1991. He would like us to respond.

FTB 27937 (A)



Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 28 of 244

FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 15 of 87

Event Log For Case Unit: Hyatt, Gilbert - 1992

12/30/1999 Send Correspondence

User: Petri, Carol Date: 12/30/1999 Time: 15:40:32 Type: Docketed Protest

Subject: protest questions

FTB 27938 (A)

2353-0015

RJN000515



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 16 of 87

Event Log For Case Unit: Hyatt, Gilbert - 1992

12/30/1999 Send Correspondence

12/30/1999 Record Event

01/13/2000 Record Progress

01/13/2000 Record Progress

01/13/2000 Record Progress

01/18/2000 Request Review

FTB 27939 (A)



Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 30 of 244

FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 17 of 87

Event Log For Case Unit: Hyatt, Gilbert - 1992

02/03/2000 Record Progress

User: Woodward, Charlene L    Date: 02/03/2000    Time: 16:18:17    Type: Docketed Protest

Date: 02/02/2000    Hours: 1    Location: Desk

Task Name: L - Factual Devmnt/Discovery

Summary: Review protective order

Comment:

FTB 27940 (A)

2353-0017

RJN000517



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005

Event Log For Case Unit: Hyatt, Gilbert - 1992

03/14/2000 Record Public Contact

User: Woodward, Charlene L Date: 03/14/2000 Time: 14:46:50 Type: Docketed Protest

Contact Type: Incoming Call Time: 14:39:33 Date: 03/14/2000

Subject: extension and hearing date

Comment: I spoke with Cowan who called asking for a 90 day extension of the time to respond to my questions [redacted] greed to the 90 day extension with the proviso that a hearing date be set at the same time. I suggested Sept 26, 27 28 or Oct 3, 4, or 5. I asked him to decide where they want it and let me know both things, so I can confirm in writing. We spoke at some length about the fact that I will act independently at the protest and want to hear their full case.

03/21/2000 Record Progress

User: Woodward, Charlene L Date: 03/21/2000 Time: 09:22:48 Type: Docketed Protest

Date: 03/14/2000 Location: Desk

Comment: Talked to rep re extension & hearing

[redacted]

03/28/2000 Record Public Contact

User: Woodward, Charlene L Date: 03/28/2000 Time: 14:44:37 Type: Docketed Protest

Contact Type: Incoming Call Time: 14:39:47 Date: 03/28/2000

Subject: Hyatt protest hearing

Comment: Per Mr. Cowan and Eric Coffill we will have the hearing on September 27th. I denied their request for a split of 91 and 92 years [redacted] but told them they would have another 6o days after the hearing to get me all info if they feel they have not put on their whole case at the hearing. Mr. Cowan would talk to his client and may call GWM before I send out confirming letter.

FTB 27941 (A)



FRANCHISE TAX BOARD
PASS DESKTOP

Event Log For Case Unit: Hyatt, Gilbert - 1992

03/30/2000 Record Progress

User: Woodward, Charlene L　Date: 03/30/2000　Time: 17:18:41　Type: Docketed Protest

Date: 03/28/2000　Hours: 1　Location: Desk

Task Name: L - Factual Devmnt/Discovery

Summary: conf call with reps and Geo re hearing date

Comment:

04/04/2000 Send Correspondence

User: Petri, Carol　Date: 04/04/2000　Time: 13:55:26　Type: Docketed Protest

Subject: hearing extension

FTB 27942 (A)



Event Log For Case Unit: Hyatt, Gilbert - 1992

03/30/2000 Record Progress

03/30/2000 Record Progress

User: Woodward, Charlene L    Date: 03/30/2000    Time: 17:18:41    Type: Docketed Protest

Date: 03/28/2000    Hours: 1    Location: Desk

Task Name: L - Factual Devmnt/Discovery

Summary: conf call with reps and Geo re hearing date

Comment:

04/03/2000 Request Review

User: McLaughlin, George    Date: 04/03/2000    Time: 08:03:13    Type: Docketed Protest

Reviewer: Hough, Wendy

Subject: Request for Audit Support

Comment: This is the "high profile" residency case - the companion to the "high profile" federal litigation case in Nevada. The protest has been on hold for awhile, but is now active - and we intend to close it by March 31, 2001.

We have an IDR outstanding, with an extended due date of June 30. We should have a complete copy of the audit file sometime this week. We have protest hearing dates set for Sept. 27 and Oct. 4.

Please assign an auditor to work with Charlene Woodward; have him/her contact Charlene as soon as possible. Thanks. GWM///

04/04/2000 Request Review

04/04/2000 Send Correspondence

User: Petri, Carol    Date: 04/04/2000    Time: 13:55:26    Type: Docketed Protest

Subject: hearing extension

FTB 27942 (B)



**Event Log For Case Unit: Hyatt, Gilbert - 1992**

**04/13/2000 Received Correspondence**

**User:** Hao, Gene **Date:** 04/13/2000 **Time:** 15:58:48 **Type:** Docketed Protest

**From:** Eric J. Coffill

**Subject:** FTB Rec'd POA

**Comment:** Eric Coffill sent us a POA.

**04/13/2000 Received Correspondence**

**User:** Hao, Gene **Date:** 04/13/2000 **Time:** 16:02:07 **Type:** Docketed Protest

**From:** Eugene G. Cowan

**Subject:** 03/30/ 2K Telephone Conversation Confirmation

**Comment:** The tax rep sent us a confirmation agreeing to the schedule date of the protest hearing for 1991 tax year. The agreed date is October 4, 2000.

**04/18/2000 Record Public Contact**

**User:** Woodward, Charlene L **Date:** 04/18/2000 **Time:** 13:11:04 **Type:** Docketed Protest

**Contact Type:** Outgoing Call **Time:** 13:10:24 **Date:** 04/12/2000

**Subject:** Left word for Cowan re what location for hearing.

**Comment:**



FRANCHISE TAX BOARD
PASS DESKTOP

Event Log For Case Unit: Hyatt, Gilbert - 1992

**04/18/2000 Send Correspondence**

User: Hao, Gene | Date: 04/18/2000 | Time: 17:09:33 | Type: Docketed Protest

Subject: Notice of Oral Hearing 1 of 2

**04/18/2000 Send Correspondence**

User: Hao, Gene | Date: 04/18/2000 | Time: 17:11:24 | Type: Docketed Protest

Subject: Notice of Oral Hearing 2 of 2

**04/25/2000 Transfer**

User: McLaughlin, George | Date: 04/25/2000 | Time: 15:51:11 | Type: Docketed Protest

Transfer To: McLaughlin, George

Comment:

**04/27/2000 Record Progress**

User: McLaughlin, George | Date: 04/27/2000 | Time: 07:29:03 | Type: Docketed Protest

Date: 04/17/2000 | Location: Desk

Letter to Rep

Comment:

**04/27/2000 Record Progress**

User: McLaughlin, George | Date: 04/27/2000 | Time: 07:29:39 | Type: Docketed Protest

Date: 04/26/2000 | Hours: 2 | Location: Desk

Task Name: L - Case Review

Summary: Conference with Rep

Comment:

**05/04/2000 Transfer**

User: McLaughlin, George | Date: 05/04/2000 | Time: 07:09:02 | Type: Docketed Protest

Transfer To: Cinnamon, Cody C

Comment:



FRANCHISE TAX BOARD
PASS DESKTOP

Event Log For Case Unit: Hyatt, Gilbert - 1992

**05/11/2000 Record Public Contact**

User: Cinnamon, Cody C Date: 05/11/2000 Time: 17:17:45 Type: Docketed Protest

Contact Type: Outgoing Call Time: 17:10:40 Date: 05/11/2000

Subject: Called Eric Coffil to set up meeting to go over the contents of the record

Comment: Eric will contact his client and get back to me on what to do about making sure that we all have a complete audit file.

**05/16/2000 Record Event**

**05/16/2000 Record Public Contact**

User: Cinnamon, Cody C Date: 05/16/2000 Time: 13:05:31 Type: Docketed Protest

Contact Type: Incoming Call Time: 13:02:52 Date: 05/15/2000

Subject: Eric Coffil called and said to give him the bate #s of what we have.

Comment: I called him back and said I would review the file on 5/23/00 and get back to him after that.

**05/23/2000 Record Event**

**05/25/2000 Record Progress**



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005

Event Log For Case Unit: Hyatt, Gilbert - 1992

**05/11/2000 Record Public Contact**

User: Cinnamon, Cody C — Date: 05/11/2000 — Time: 17:17:45 — Type: Docketed Protest

Contact Type: Outgoing Call — Time: 17:10:40 — Date: 05/11/2000

Subject: Called Eric Coffil to set up meeting to go over the contents of the record

Comment: Eric will contact his client and get back to me on what to do about making sure that we all have a complete audit file.

**05/16/2000 Record Event**

User: Cinnamon, Cody C — Date: 05/16/2000 — Time: 13:02:44 — Type: Docketed Protest

Discussed case with GWM. I had the protest file sent to my office. After I go through the protest boxes with the auditor I will then ask the litigation attorneys to give us any missing and/or redacted information from the audit file to complete the audit record for the protest.

After that I will need to get back to Eric Coffill.

**05/16/2000 Record Public Contact**

User: Cinnamon, Cody C — Date: 05/16/2000 — Time: 13:05:31 — Type: Docketed Protest

Contact Type: Incoming Call — Time: 13:02:52 — Date: 05/15/2000

Subject: Eric Coffil called and said to give him the bate #s of what we have.

Comment: I called him back and said I would review the file on 5/23/00 and get back to him after that.

**05/23/2000 Record Event**

**05/25/2000 Record Progress**

FTB 27945 (B)



Event Log For Case Unit: Hyatt, Gilbert - 1992

05/30/2000 Record Event

06/15/2000 Record Public Contact

User: Cinnamon, Cody C Date: 06/15/2000 Time: 12:37:03 Type: Docketed Protest

Contact Type: Incoming Call Time: 12:29:40 Date: 06/12/2000

Subject: Eric left message on June 12 Return message on June 15

Comment: Eric wanted to meet this Friday to go over our audit file. We won't be able to meet with Eric but I told him to only provide documents requested in the IDR that they didn't already provide to the auditor. But told him to answer all the questions.

06/19/2000 Record Progress

06/19/2000 Record Progress

FTB 27946(A)



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 23 of 87

Event Log For Case Unit: Hyatt, Gilbert - 1992

05/30/2000 Record Event

User: Cinnamon, Cody C Date: 05/30/2000 Time: 13:02:51 Type: Docketed Protest

However, I don't have the original protest record, including the protest letter! Anna Jovanovich was the original hearing officer assigned to the case As you might imagine, the structure of a protest record is much less predictable especially since the case was not worked in PASS. When I am done with the audit record construction I will pursue constructing a facsimile of the historical protest record if GWM thinks that is needed.

06/15/2000 Record Public Contact

User: Cinnamon, Cody C Date: 06/15/2000 Time: 12:37:03 Type: Docketed Protest

Contact Type: Incoming Call Time: 12:29:40 Date: 06/12/2000

Subject: Eric left message on June 12 Return message on June 15

Comment: " Eric wanted to meet this Friday to go over our audit file. ______ We won't be able to meet with Eric but I told him to only provide documents requested in the IDR that they didn't already provide to the auditor. But I told him to answer all the questions.

06/19/2000 Record Progress

06/19/2000 Record Progress

FTB 27946 (B)



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 24 of 87

Event Log For Case Unit: Hyatt, Gilbert - 1992

06/19/2000 Record Progress

06/19/2000 Record Progress

06/19/2000 Record Progress

06/19/2000 Record Progress

FTB 27947(A)



**Event Log For Case Unit: Hyatt, Gilbert - 1992**

**06/27/2000 Record Public Contact**

**User:** Cinnamon, Cody C **Date:** 06/27/2000 **Time:** 14:21:22 **Type:** Docketed Protest

**Contact Type:** Incoming Call **Time:** 14:11:17 **Date:** 06/27/2000

**Subject:** Eric Coffill called & said he will submit TPs response this Friday

**Comment:** Eric also said he wants to know when he can review the audit file. I told him that GWM wants to be present, and he won't be available for at least two weeks. But I told Eric that I am making an inventory of the contents of the audit file and listing the hand written numbers (the audit file is not bate stamped), and noting if something is redacted. When I'm finished I will give him a copy.

Eric said he wants to see the original of the audit file. I told him I only have a copy of it and the same is true for the protest letter. He wanted to know where the original was and so I told him that the AG has it.

After that he backed off on wanting to schedule the meeting. He said he will wait for the inventory I am completing and review it first.

I told him that I am going to use it to compare what documents we requested and they provide in their upcoming submittal and if there are documents we requested that we do not have I will be making a second IDR for them. I told Eric that I believe the inventory I make will be very useful to me and hopefully will serve him as well.

Eric said they may send the submittal Friday by currier and he asked if I was going to be in the office that day. I told him that I planned on being here.

**06/30/2000 Received Correspondence**

**User:** Hao, Gene **Date:** 06/30/2000 **Time:** 16:43:16 **Type:** Docketed Protest

**From:** Eric J. Coffill

**Subject:** Rec'd Tax Rep's Response (Two Boxes)

**Comment:** Cody rec'd two boxes of responses from the Tax Rep. The responses pertain to December 30, 1999 letter from Charlene Woodard

**06/30/2000 Record Public Contact**

**User:** Cinnamon, Cody C **Date:** 06/30/2000 **Time:** 16:44:46 **Type:** Docketed Protest

**Contact Type:** Incoming Call **Time:** 16:43:59 **Date:** 06/30/2000

**Subject:** Eric Coffill called saying the currier is delivering TPs submittals

**Comment:**

**06/30/2000 Record Public Contact**

**User:** Cinnamon, Cody C **Date:** 06/30/2000 **Time:** 16:46:42 **Type:** Docketed Protest

**Contact Type:** Outgoing Call **Time:** 16:44:49 **Date:** 06/30/2000

**Subject:** I called Eric Coffill as requested to verify I received TPs submittals

**Comment:** Eric said he made copies of every document referred to in the letters. Much of the submitted documents are copies of what was provided at audit. However there are some new documents in this submittal.

**FTB 27948(A)**



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005

Event Log For Case Unit: Hyatt, Gilbert - 1992

06/30/2000 Request Review

06/30/2000 Record Progress

08/01/2000 Received Correspondence

User: Hao, Gene Date: 08/01/2000 Time: 12:26:47 Type: Docketed Protest

From: Eric J. Coffill

Subject: Information Request From Tax Rep

Comment: The Tax rep is requesting a copy of the inventory of the audit files for 1991 & 1992 years.

08/08/2000 Record Progress

08/09/2000 Record Progress

FTB 27949(A)



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 27 of 87

**Event Log For Case Unit: Hyatt, Gilbert - 1992**

08/10/2000 Record Progress

08/11/2000 Record Progress

08/15/2000 Record Progress

08/15/2000 Record Progress

08/15/2000 Request Review

08/15/2000 Record Public Contact

**User:** Cinnamon, Cody C **Date:** 08/15/2000 **Time:** 16:02:58 **Type:** Docketed Protest

**Contact Type:** Outgoing Call **Time:** 15:59:49 **Date:** 08/15/2000

**Subject:** Left voicemail for Eric Coffill that the Audit Indexes are finished

**FTB 27950 (A)**

**Comment:** I told him that George would review them and discuss them with me next week. Then we sill send them to Eric. Also said that after the indexes are approved, we would like to schelue a meeting to go over the indexes with Eric.



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 28 of 87

Event Log For Case Unit: Hyatt, Gilbert - 1992

08/17/2000 Record Progress

08/17/2000 Record Event

08/22/2000 Record Progress

08/22/2000 Record Progress

08/23/2000 Record Event

FTB 27951 (A)



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005

Event Log For Case Unit: Hyatt, Gilbert - 1992

08/23/2000 Record Event

08/23/2000 Record Event

08/23/2000 Record Progress

08/24/2000 Request Review

08/24/2000 Request Review

FTB 27952 (A)



FRANCHISE TAX BOARD
PASS DESKTOP

Event Log For Case Unit: Hyatt, Gilbert - 1992

08/24/2000 Send Correspondence

User: Petri, Carol | Date: 08/24/2000 | Time: 11:17:33 | Type: Docketed Protest

Subject: Audit Index Transmittal

08/24/2000 Send Correspondence

User: Cinnamon, Cody C | Date: 08/24/2000 | Time: 15:34:43 | Type: Docketed Protest

Subject: Request for Missing Redacted or Withheld Audit Items

08/24/2000 Record Progress

08/24/2000 Record Event

08/24/2000 Request Review

08/29/2000 Request Review

FTB 27953 (A)



Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 47 of 244

FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 31 of 87

Event Log For Case Unit: Hyatt, Gilbert - 1992

08/29/2000 Record Event

08/29/2000 Record Progress

08/30/2000 Record Progress

08/30/2000 Record Progress

08/30/2000 Record Progress

08/31/2000 Record Progress

FTB 27954 (A)

2353-0034

RJN000534



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 32 of 87

Event Log For Case Unit: Hyatt, Gilbert - 1992

09/07/2000 Record Event

User: Cinnamon, Cody C    Date: 09/07/2000    Time: 12:47:51    Type: Docketed Protest

Subject: 2 Copies of Hyatt's June 30, 2000 Sumbittal Made

Comment: The original bindered submittal will be used as my working copy. One copy is the file copy. The other copy is for TLC review which I will submit to him with a transmittal memo.

09/07/2000 Record Event

09/07/2000 Record Progress

09/07/2000 Record Event

FTB 27955 (A)



Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 49 of 244

FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 33 of 87

Event Log For Case Unit: Hyatt, Gilbert - 1992

09/07/2000 Record Event

09/11/2000 Send Correspondence

09/11/2000 Send Correspondence

User: Cinnamon, Cody C | Date: 09/11/2000 | Time: 15:39:54 | Type: Docketed Protest

Subject: Request for undisclosed missing audit records

09/11/2000 Send Correspondence

User: Cinnamon, Cody C | Date: 09/11/2000 | Time: 16:35:29 | Type: Docketed Protest

Subject: Protective Order Transmittal

09/11/2000 Record Progress

09/13/2000 Record Progress

FTB 27956 (A)

2353-0036

RJN000536



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005

Event Log For Case Unit: Hyatt, Gilbert - 1992

09/14/2000 Record Event

09/14/2000 Send Correspondence

09/14/2000 Send Correspondence

User: Cinnamon, Cody C | Date: 09/14/2000 | Time: 15:37:23 | Type: Docketed Protest

Subject: Follow-up request

09/25/2000 Record Event

09/25/2000 Record Progress

FTB 27957 (A)



FRANCHISE TAX BOARD
PASS DESKTOP

Event Log For Case Unit: Hyatt, Gilbert - 1992

09/26/2000 Record Progress

09/26/2000 Record Progress

09/27/2000 Record Progress

User: Cinnamon, Cody C Date: 09/27/2000 Time: 14:18:53 Type: Docketed Protest

Date: 09/27/2000 Hours: 8 Location: Desk

Task Name: L-Case Review

Summary: hearing held

Comment:

09/29/2000 Record Progress

09/29/2000 Record Progress

09/29/2000 Record Progress



Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 52 of 244

FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 36 of 87

Event Log For Case Unit: Hyatt, Gilbert - 1992

09/29/2000 Record Progress

09/29/2000 Record Progress

09/29/2000 Record Progress

09/29/2000 Record Progress

09/29/2000 Record Progress

09/29/2000 Record Progress

FTB 27959 (A)

2353-0039

RJN000539

FRANCHISE TAX BOARD
PASS DESKTOP

Event Log For Case Unit: Hyatt, Gilbert - 1992

09/29/2000 Record Progress

09/29/2000 Record Progress

09/29/2000 Record Progress

09/29/2000 Record Progress

09/29/2000 Record Progress

09/29/2000 Record Progress

FTB 27960 (A)



**Event Log For Case Unit: Hyatt, Gilbert - 1992**

10/03/2000 Request Review

10/03/2000 Record Progress

10/03/2000 Record Progress

10/04/2000 Request Review

10/04/2000 Request Review

10/04/2000 Record Progress

**User:** Cinnamon, Cody C **Date:** 10/04/2000 **Time:** 09:18:51 **Type:** Docketed Protest

**Date:** 10/04/2000 **Hours:** 8 **Location:** Desk

**Task Name:** L-Hearing/Trial/TP Meeting

**Summary:** Hearing held and IDR prepared in final and sent

**Comment:**

FTB 27961 (A)



FRANCHISE TAX BOARD
PASS DESKTOP

**Event Log For Case Unit: Hyatt, Gilbert - 1992**

**10/04/2000 Received Correspondence**

**User:** Hao, Gene **Date:** 10/04/2000 **Time:** 11:31:04 **Type:** Docketed Protest

**From:** Eric Coffill

**Subject:** (Rec'd On 10/02/00) Request A Copy Of Complete Audit Files

**Comment:** The tax rep requests a copy of complete audit files of Hyatt (1991 & 1992).

**10/04/2000 Send Correspondence**

**User:** Petri, Carol **Date:** 10/04/2000 **Time:** 13:50:17 **Type:** Docketed Protest

**Subject:** Second IDR

FTB 27962 (A)



**Event Log For Case Unit: Hyatt, Gilbert - 1992**

10/11/2000 Record Public Contact

**User:** Cinnamon, Cody C **Date:** 10/11/2000 **Time:** 12:26:52 **Type:** Docketed Protest

**Contact Type:** Outgoing Call **Time:** 12:26:25 **Date:** 10/11/2000

**Subject:** email and fax response to Eric Coffill's email

**Comment:**

-----Original Message-----
From: Cinnamon.Cody
Sent: Wednesday, October 11, 2000 12:18 PM
To: 'Coffill, Eric J.'
Subject: RE: FTB Policy on use of Email

Eric:

As a matter of FTB policy, we do not use email for confidential taxpayer information. The next two paragraphs outline FTB policy and will be followed by fax of Form FTB 6614P (New 2-98).

Confidential information may not be sent to or received from a taxpayer or representative via Internet Email under any circumstances. This includes account numbers containing the taxpayer's SSN, calculations of income or tax, or information that may be considered personal or private. Because Internet email may be processed through private service providers and transmitted through unsecured lines, the security and confidentiality of the information cannot be ensured.

Even if a taxpayer under examination is aware of the possibility of disclosure and willing to waive their right to confidentiality, Internet Email should not be used during the conduct of an audit. This restriction is subject to change, but for now, it must be strictly enforced.

Since this is a protest case no substantive or taxpayer data will be sent via email.

-----Original Message-----
From: Coffill, Eric J. [mailto:ecoffill@mofo.com]
Sent: Thursday, October 05, 2000 9:52 AM
To: Cody Cinnamon (E-mail)
Subject:

Cody:

I like the new FTB cards with e-mail addresses on them. Are there are limits, guidelines, etc. on what we can discuss via e-mail vs. phone vs mail?

Eric

Eric J. Coffill
Morrison & Foerster LLP
400 Capitol Mall, Suite 2300
Sacramento, CA 95814
Tel: (916) 325-1324
Fax: (916) 448-3222
email: ecoffill@mofo.com

10/24/2000 Record Progress



Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 57 of 244

FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 41 of 87

**Event Log For Case Unit: Hyatt, Gilbert - 1992**

**10/24/2000 Record Progress**

User: McLaughlin, George Date: 10/24/2000 Time: 14:48:44 Type: Docketed Protest

Date: 10/04/2000 Hours: 4 Location: Desk

Task Name: L-Hearing/Trial/TP Meeting

Summary: Hearing - day 2

Comment:

**10/24/2000 Record Progress**

**10/24/2000 Record Progress**

**10/31/2000 Record Progress**

**10/31/2000 Record Progress**

**10/31/2000 Record Progress**

FTB 27964(A)

2353-0044

RJN000544



**Event Log For Case Unit: Hyatt, Gilbert - 1992**

**11/01/2000 Record Public Contact**

**User:** Cinnamon, Cody C **Date:** 11/01/2000 **Time:** 15:03:23 **Type:** Docketed Protest

**Contact Type:** Incoming Call **Time:** 15:00:44 **Date:** 10/31/2000

**Subject:** Eric called to follow-up on the audit file etc.

**Comment:** Eric asked me to check again whether I had Mr. Hyatt's affidavit of domicile in binder item 38. I called back on 11/1/00 and said I did not so he will send me another one.

Eric said he wants us to mail the audit file to him. After running this by GWM, we decided personal delivery is advisable. GWM offered to deliver it to MoFo on Monday. However, Eric left voicemail saying he will pick it up on Friday between 10:00 a.m. and noon.

**11/01/2000 Record Progress**

**User:** Cinnamon, Cody C **Date:** 11/01/2000 **Time:** 17:34:22 **Type:** Docketed Protest

**Date:** 11/01/2000 **Hours:** 1 **Location:** Desk

**Task Name:** L-Case Review

**Summary:** correspondence re delivery copy of audit file to Eric

**Comment:**

**11/02/2000 Request Review**

**11/02/2000 Record Progress**

**11/02/2000 Send Correspondence**

**User:** Petri, Carol **Date:** 11/02/2000 **Time:** 13:51:32 **Type:** Docketed Protest

**Subject:** Audit File Copy Transmittal



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005

**Event Log For Case Unit: Hyatt, Gilbert - 1992**

**11/02/2000 Send Correspondence**

**User:** Petri, Carol **Date:** 11/02/2000 **Time:** 13:53:52 **Type:** Docketed Protest

**Subject:** Audit File Copy Transmittal 2

**11/03/2000 Record Public Contact**

**User:** Cinnamon, Cody C **Date:** 11/03/2000 **Time:** 11:43:27 **Type:** Docketed Protest

**Contact Type:** Office Visit **Time:** 11:41:55 **Date:** 11/03/2000

**Subject:** Eric came to Central Office and took delivery of the audit file copy

**Comment:**

-----Original Message-----
From: □Cinnamon.Cody
Sent:□Friday, November 03, 2000 11:41 AM
To:□McLaughlin.George
Subject:□Hyatt

Eric has signed for and received personal delivery of the copy of the 1989-1991 and 1992 audit files.

I went downstairs with Gene and told Eric about the ACCO file issue. I also told him that it was my experience that the file is out of order in places, e. g. some bank records have more than one bank accounts' statements mixed together. Eric said that was his experience also with other copies of the audit file received previously.

Eric also asked whether I was sending another IDR. I said that I was going to wait for his response to our last IDR before I send another request for information. Eric said that his response should go out in the mail today. He is just waiting for some of the statements I requested and they are in overnight mail to him now.

**11/03/2000 Record Progress**

**User:** Cinnamon, Cody C **Date:** 11/03/2000 **Time:** 11:44:22 **Type:** Docketed Protest

**Date:** 11/03/2000 **Hours:** 1 **Location:** Desk

**Task Name:** L-Factual Devmnt/Discovery

**Summary:** Delivered copy of audit record to Eric

**Comment:**

**11/09/2000 Received Correspondence**

**User:** Hao, Gene **Date:** 11/09/2000 **Time:** 13:22:37 **Type:** Docketed Protest

**From:** Eric J. Coffill

**Subject:** Response To FTB's Oct. 4, 2000 (1992 & 1991 Binder Provided)

**Comment:** Eric Coffill sent us two binders (1992 & 1991) with responses to IDR questions. His letter was dated Nov. 3, 2000.

**11/13/2000 Send Correspondence**

**User:** Cinnamon, Cody C **Date:** 11/13/2000 **Time:** 10:53:37 **Type:** Docketed Protest

**Subject:** Request re 11 3 200 Submittal



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 44 of 87

**Event Log For Case Unit: Hyatt, Gilbert - 1992**

11/13/2000 Record Event

User: Cinnamon, Cody C Date: 11/13/2000 Time: 12:34:15 Type: Docketed Protest

Subject: emails re Hyatt Nov 3 2000 response

Comment:

-----Original Message-----
From: □McLaughlin.George
Sent:□Monday, November 13, 2000 10:55 AM
To:□Cinnamon.Cody
Subject:□RE: Hyatt .

□Maybe - this week will either be very good or very bad - I will know by noon tomorrow. GWM///

-----Original Message-----
From: □Cinnamon.Cody
Sent:□Monday, November 13, 2000 10:52 AM
To:□McLaughlin.George
Subject:□Hyatt

I have completed my first review of Hyatt's November 3, 2000 response to our October 4, 2000 IDR. I am not at all pleased with Hyatt's response. It is replete with vague (where convenient) and/or non-responsive answers. Mr. Hyatt has no recollection, for example of his own doctor's appointments which place him in CA during the disputed period. Also copies of the financial statements for the Benham and Federated investment accounts without redaction were not provided because they are the subject of pending writs and motions in the Nevada litigation. I thought Eric was going to proceed with this protest as if there was no pending litigation!

I am drafting a memo summarizing their responses to our IDR questions (like I did last time) and I will provide it to you for review when I complete my draft. I will want to meet with you to discuss my approach to our next IDR. Will you have time tomorrow to meet with me briefly on this?

-----Original Message-----
From: □McLaughlin.George
Sent:□Monday, November 13, 2000 9:19 AM
To:□Cinnamon.Cody
Subject:□RE: Hyatt

□Sure - we will follow the procedure, even if they don't. Good work. GWM///

-----Original Message-----
From: □Cinnamon.Cody
Sent:□Monday, November 13, 2000 8:56 AM
To:□McLaughlin.George
Subject:□Hyatt

On Thursday, 11/9/00 I received Hyatt's response to our IDR dated 10/4/00. After we received Hyatt's June 30, 2000 response to Charlene's IDR, we forwarded a copy of it to TLC with a 9/11/00 memo asking them to follow the procedures in the protective order... If you recall, that got us nothing. However, in light of your 3/7/00 memo which states that we will forward Hyatt submittals to the staff working on the litigation, do you want me to forward a copy of the new Hyatt submittal with a memo similar my 9/11/00 memo?

11/13/2000 Record Progress

FTB 27967(A)



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 45 of 87

Event Log For Case Unit: Hyatt, Gilbert - 1992

11/13/2000 Record Event

11/14/2000 Record Progress

11/14/2000 Record Event

User: Cinnamon, Cody C    Date: 11/14/2000    Time: 15:43:52    Type: Docketed Protest

Comment: I will send F/U IDR saying what I asked for in my Oct. 4, 2000 letter but did not receive. I will give notice of possible 3P contacts for information that is not provided within 30 days.

11/30/2000 Record Progress

11/30/2000 Record Progress

11/30/2000 Record Progress

FTB 27968(A)



Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 62 of 244

FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 46 of 87

Event Log For Case Unit: Hyatt, Gilbert - 1992

12/13/2000 Request Review

12/13/2000 Request Review

12/14/2000 Request Review

12/14/2000 Send Correspondence

User: Petri, Carol | Date: 12/14/2000 | Time: 14:19:49 | Type: Docketed Protest

Subject: Third IDR

12/14/2000 Request Review

01/02/2001 Record Progress

FTB 27969(A)

2353-0049

RJN000549



**Event Log For Case Unit: Hyatt, Gilbert - 1992**

**01/02/2001 Record Progress**

**01/02/2001 Record Progress**

**01/10/2001 Record Event**

**User:** Cinnamon, Cody C **Date:** 01/10/2001 **Time:** 14:39:43 **Type:** Docketed Protest

**Subject:** Email to Caglar Caglayan re status update

**Comment:** This will serve to inform you of the status of this case. Since our last status meeting on December 13, 2000, our third information and document request letter was sent on December 14, 2000. As I infomed you on December 13, 2000, the taxpayer has not been cooperating with our requests for information. Our December 14, 2000 letter puts the taxpayer on notice that if the requested infomration is not provided within 30 days, we may contact third parties to obtain the outstanding information. I have not heard any response from the taxpayer's representative, Eric Coffill to our December 14, 2000 letter. If I have not received a reply from the taxpayer by Thursday, January 25, 2001, we will need to discuss whether our next action will be to contact third parties to obtain some of the information we need to make a determination of Mr. Hyatt's residency status between November 26, 1991 and April 3, 1992 as well as the source of Mr. Hyatt's income received in 1992.

**01/18/2001 Record Public Contact**

**User:** Cinnamon, Cody C **Date:** 01/18/2001 **Time:** 15:04:14 **Type:** Docketed Protest

**Contact Type:** Incoming Call **Time:** 14:59:48 **Date:** 01/18/2001

**Subject:** Eric Coffill called requesting an extension to reply to my IDR3

**Comment:** He said he would submit a letter addressing 1992 by the end of January and asked for an extension of time to respond to IDR3 until the end of February. I discussed with GWM who agreed to the extension provided Eric produce a substantial substantive response. I called Eric back and let him know. Eric called back and said he agreed to produce a substantial substantive response to IDR 3 by the end of February. He will submit his letter on 1992 with back-up documents by the end of January.

**02/01/2001 Received Correspondence**

**User:** Hao, Gene **Date:** 02/01/2001 **Time:** 11:05:23 **Type:** Docketed Protest

**From:** Eric Coffill (by Carley Roberts)

**Subject:** Two Cases of Binders To FTB

**Comment:** Two cases of binders rec'd by FTB on Jan. 29, 2001. It was acknowledged on 02/01/01.

FTB 27970(A)



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 48 of 87

**Event Log For Case Unit: Hyatt, Gilbert - 1992**

**02/02/2001 Received Correspondence**

**User:** Cinnamon, Cody C **Date:** 02/02/2001 **Time:** 13:10:49 **Type:** Docketed Protest

**From:** Eric Coffill

**Subject:** Coffill Delivered One Box of Binders & Opus re: 1992

**Comment:** Eric Delivered one box of binders with Opus re: 1992. Cody and Bill went downstairs to meet Eric.

**03/02/2001 Received Correspondence**

**User:** Hao, Gene **Date:** 03/02/2001 **Time:** 16:09:19 **Type:** Docketed Protest

**From:** Eric Coffill

**Subject:** Tax Rep's Response To Dec. 14, 2000 Letter

**Comment:** Eric Coffill sent FTB a package mail to support Dec. 14, 2000 IDR.

**03/06/2001 Request Review**

**03/06/2001 Send Correspondence**

**03/06/2001 Send Correspondence**

**03/13/2001 Request Review**

FTB 27971 (A)



**Event Log For Case Unit: Hyatt, Gilbert - 1992**

**03/13/2001 Send Correspondence**

**User:** Petri, Carol **Date:** 03/13/2001 **Time:** 16:17:14 **Type:** Docketed Protest

**Subject:** IDR4

**03/15/2001 Record Event**

**User:** Cinnamon, Cody C **Date:** 03/15/2001 **Time:** 15:44:27 **Type:** Docketed Protest

**Subject:** Meeting in BWT's Office

**Comment:** BWT, GWM, CCC, TLC & BFM were in attendance. We discussed the the status of the case, the protective order and whether the GTLB litigation staff attorneys will follow it. It was decided by BWT and BFM that the GTLB litigation staff attorneys will now, without further delay, draft and send a letter to the Hyatt litigation attorneys and request that specific information and documents deemed to be relevant to the protest determination be furnished to CCC who is working the protest. Also, if necessary FTB litigation staff attorneys will follow-up by issuing an administrative subpoena to Hyatt to enforce production of the requested materials.

**03/15/2001 Record Public Contact**

**User:** Cinnamon, Cody C **Date:** 03/15/2001 **Time:** 15:57:44 **Type:** Docketed Protest

**Contact Type:** Incoming Call **Time:** 15:55:05 **Date:** 03/15/2001

**Subject:** Eric Coffill called re IDR4

**Comment:** Eric said that he would pass the IDR on to the Hyatt people and ask them to produce the requested documents. Eric said he didn't know why they did nt provide it in their 2/28/01 responses if we did not already have it. Eric also said he will provide a letter addressing 1991 by the end of April 2001. He asked me when I thought I would complete the case. I told him that it would not be until after the end of April since he will not be submitting his 1991 letter until then. I also said that there is still outstanding information so that I culd not say when we would finish the case. He denied that he had not provided all the information I had requested of him. But I told him that he had not provided all of the items I requested. I told him I was not prepared to discuss what we are going to do next and that GWM and I were regrouping at this time. He asked whether I would complet the case by the end of the year and I said I hope. I told him that I would make my recommendation to management as soon as I could but that it would be up to management as to when they review and/or approve it and when they decide to inform the taxpayer of our protest determination.

**03/15/2001 Record Public Contact**

**User:** Cinnamon, Cody C **Date:** 03/15/2001 **Time:** 16:20:26 **Type:** Docketed Protest

**Contact Type:** Outgoing Call **Time:** 16:19:30 **Date:** 03/15/2001

**Subject:** I called Eric

**Comment:** After talking to GWM, I called Eric back and told him that we were continuing to follow the protective order including the procedures whereby we provide the information we receive in the protest to the supervisor of the GTLB staff working onthe litigation. They then will request from the Hyatt litigation attorneys any specific information they deem material to the protest be provided to me for use in the protest determination. I referred him to the protective order. Eric asked me to put in writing that we are doing this. I said I would.

**03/15/2001 Send Correspondence**

**User:** Cinnamon, Cody C **Date:** 03/15/2001 **Time:** 16:40:29 **Type:** Docketed Protest

**Subject:** Transmittal of Feb 28 2001 Hyatt Submittal



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005

Event Log For Case Unit: Hyatt, Gilbert - 1992

03/20/2001 Request Review

03/20/2001 Send Correspondence

User: Petri, Carol Date: 03/20/2001 Time: 10:51:56 Type: Docketed Protest

Subject: protective order letter

03/27/2001 Record Event

03/29/2001 Record Progress

03/29/2001 Record Progress

User: Cinnamon, Cody C Date: 03/29/2001 Time: 15:25:23 Type: Docketed Protest

Date: 03/13/2001 Hours: Location: Desk

Task Name: L-Document Preparation

Summary: Drafted and sent IDR4

Comment:

03/29/2001 Record Progress

FTB 27973 (A)

**Event Log For Case Unit: Hyatt, Gilbert - 1992**

03/29/2001 Record Progress

User: Cinnamon, Cody C   Date: 03/29/2001   Time: 15:32:10   Type: Docketed Protest

Date: 03/15/2001   Hours: 5   Location: Desk

Task Name: L-Factual Devmnt/Discovery

Summary: Meeting with BWT and telcons with tax rep

Comment:

03/29/2001 Record Progress

03/29/2001 Record Progress

03/29/2001 Record Progress

User: Cinnamon, Cody C   Date: 03/29/2001   Time: 15:56:18   Type: Docketed Protest

Date: 03/20/2001   Hours: (   Location: Desk

Task Name: L-Case Review

Summary: drafted and sent protective order letter

Comment:

03/29/2001 Record Progress

03/29/2001 Record Progress



Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 68 of 244

FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 52 of 87

Event Log For Case Unit: Hyatt, Gilbert - 1992

03/29/2001 Record Progress

03/29/2001 Record Progress

03/29/2001 Record Progress

03/29/2001 Record Progress

03/29/2001 Record Progress

03/29/2001 Record Progress

FTB 27975 (A)

2353-0055

RJN000555



FRANCHISE TAX BOARD
PASS DESKTOP

Event Log For Case Unit: Hyatt, Gilbert - 1992

04/03/2001 Request Review

04/03/2001 Record Progress

04/04/2001 Send Correspondence

04/04/2001 Send Correspondence

User: Cinnamon, Cody C Date: 04/04/2001 Time: 13:05:16 Type: Docketed Protest

Subject: Transmittal of IDR5

04/25/2001 Record Public Contact

User: Cinnamon, Cody C Date: 04/25/2001 Time: 12:36:21 Type: Docketed Protest

Contact Type: Incoming Call Time: 12:31:38 Date: 04/25/2001

Subject: Eric said he needs two more weeks to finish 1991 submittal

Comment: I called and Eric agreed he would provide the submittal by May 15, 2001.Eric said that the 1991 submittal will look a lot like the 1992 submittal. The differences will be in reference to the 1991 California days versus 1992 days and regarding the penalty.

04/26/2001 Record Progress

User: Cinnamon, Cody C. Date: 04/26/2001 Time: 10:25:12 Type: Docketed Protest

Date: 04/25/2001 Hours: Location: Desk

Task Name: L-Factual Devmnt/Discovery

Summary: phone conversation with Eric Coffill..

Comment:

FTB 27976 (A)



FRANCHISE TAX BOARD
PASS DESKTOP

## Event Log For Case Unit: Hyatt, Gilbert - 1992

**04/26/2001 Record Progress**

User: Cinnamon, Cody C — Date: 04/26/2001 — Time: 10:31:34 — Type: Docketed Protest

Date: 04/04/2001 — Hours: — Location: Desk

Task Name: L-Factual Devmnt/Discovery

Summary: Transmittal of IDR5 to TLC

Comment:

**04/26/2001 Record Progress**

**04/26/2001 Request Review**

User: Cinnamon, Cody C — Date: 04/26/2001 — Time: 13:00:30 — Type: Docketed Protest

Reviewer: McLaughlin, George

Subject: Hyatt Patent Agreement with Sharp re 1992 receipts and sourcing

Comment: This relates to one of the patent agreements recently provided by Eric Coffill. It does not appear that the receipts picked up by audit for 1992 include any payments from Sharp.

**04/26/2001 Request Review**

User: Cinnamon, Cody C — Date: 04/26/2001 — Time: 13:12:00 — Type: Docketed Protest

Reviewer: McLaughlin, George

Subject: Hyatt Patent Agreement with Oki re 1992 receipts & sourcing

Comment: This relates to one of the patent agreements recently provided by Eric Coffill. The receipts picked up by audit for 1992 do include the payments from Oki.

**04/26/2001 Send Correspondence**

User: Cinnamon, Cody C — Date: 04/26/2001 — Time: 14:28:21 — Type: Docketed Protest

Subject: Transmittal of April 10 2001 submittal



**Event Log For Case Unit: Hyatt, Gilbert - 1992**

**04/26/2001 Request Review**

**User:** Cinnamon, Cody C **Date:** 04/26/2001 **Time:** 15:13:01 **Type:** Docketed Protest

**Reviewer:** McLaughlin, George

**Subject:** Memo from TLC says they are not going to request the documents from Hyatt

**Comment:** I placed this document in the received correspondence workpaper folder. You should have a hard copy. Please let me know if there is anything you want me to do concerning this matter. Meanwhile, I am drafting an IDR to follow-up on the patent agreements that relate to the 1992 receipts.

**04/26/2001 Record Progress**

**05/01/2001 Received Correspondence**

**User:** Cinnamon, Cody C **Date:** 05/01/2001 **Time:** 14:09:18 **Type:** Docketed Protest

**From:** Eric Coffill

**Subject:** April 10, 2001 submittal in response to IDR5

**Comment:**

**05/08/2001 Request Review**

**05/09/2001 Send Correspondence**

**05/10/2001 Record Progress**

**User:** Cinnamon, Cody C **Date:** 05/10/2001 **Time:** 12:24:56 **Type:** Docketed Protest

**Date:** 05/09/2001 **Hours:** 1 **Location:** Desk

**Task Name:** L-Document Preparation

**Summary:** Sent IDR6

**Comment:**

**FTB 27978 (A)**



**Event Log For Case Unit: Hyatt, Gilbert - 1992**

**05/10/2001 Record Progress**

**05/10/2001 Record Progress**

**05/22/2001 Record Public Contact**

**User:** Cinnamon, Cody C **Date:** 05/22/2001 **Time:** 09:05:31 **Type:** Docketed Protest

**Contact Type:** Incoming Call **Time:** 08:58:41 **Date:** 05/21/2001

**Subject:** Eric Coffill called & asked for another 2 week extension on 1991 position letter

**Comment:** Extension granted. I asked Eric if he got my IDR6 letter. He said that he wanted to do his part in keeping this case moving. But he said that Hyatt just provided an affidavit from Grace Jeng. Eric said that is typical with Hyatt that everything is provided at the last minute. Eric also said that his 1991 position letter is now well over 150 pages. I asked him if he received my IDR6 letter. He said yes and that he would make every effort to get Hyatt to provide the requested information.

**06/04/2001 Received Correspondence**

**User:** Hao, Gene **Date:** 06/04/2001 **Time:** 14:27:27 **Type:** Docketed Protest

**From:** Eric Coffill

**Subject:** Follow-up From 10/04/00 Protest Hearing / Provide Supplemental Info.

**Comment:** The tax rep provided a letter (190 pages) and a supplemental binder in following-up from the 10/04/00 protest hearing.

**06/12/2001 Received Correspondence**

**User:** Hao, Gene **Date:** 06/12/2001 **Time:** 11:01:00 **Type:** Docketed Protest

**From:** Eric J. Coffill

**Subject:** Tax Rep's Response To May 9, 2001 Letter

**Comment:** The tax rep provided a three page letter with an attachment re: patent agreement payment from Philips Corporation.



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 57 of 87

Event Log For Case Unit: Hyatt, Gilbert - 1992

06/12/2001 Record Progress

06/14/2001 Record Progress

06/15/2001 Record Event

User: Cinnamon, Cody C Date: 06/15/2001 Time: 10:21:10 Type: Docketed Protest

Subject:

Comment:

06/15/2001 Send Correspondence

User: Cinnamon, Cody C Date: 06/15/2001 Time: 10:32:59 Type: Docketed Protest

Subject: Transmittal of IDR6 and Hyatts June 8 2001 Response

06/15/2001 Record Progress

User: Cinnamon, Cody C Date: 06/15/2001 Time: 11:37:22 Type: Docketed Protest

Date: 06/15/2001 Hours: Location: Desk

Task Name: L-Factual Devmnt/Discovery

Summary: Draft/send memo to TLC re IDR6, draft TLC memo re Hyatt submittal

Comment: I asked to get the Hyatt May 31,2001 submittal copied so I can have a working copy and send one to TLC.

06/15/2001 Record Event

User: Cinnamon, Cody C Date: 06/15/2001 Time: 11:38:26 Type: Docketed Protest

Subject: I need to finsh hearing report for 10/4/00 hearing

Comment:

FTB 27980 (A)



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 58 of 87

Event Log For Case Unit: Hyatt, Gilbert - 1992

**06/20/2001 - Received Correspondence**

User: Hao, Gene  Date: 06/20/2001  Time: 16:15:16  Type: Docketed Protest

From: Carley A. Roberts

Subject: Tax Rep. Submits An Opinion From The 9th Circuit Case

Comment: FTB rec'd a copy of the opinion from the 9th Circuit case.

**06/20/2001 - Received Correspondence**

User: Hao, Gene  Date: 06/20/2001  Time: 16:21:18  Type: Docketed Protest

From: Carley A. Roberts

Subject: Status of All IDRs (Tax Rep.'s Checklist)

Comment: The tax rep. submits a checklist showing all of their responses to FTB's IDRs are accounted for.

**06/20/2001 - Record Progress**

**06/28/2001 - Record Progress**

**02/20/2002 - Record Public Contact**

User: Cinnamon, Cody C  Date: 02/20/2002  Time: 10:24:42  Type: Docketed Protest

Contact Type: Incoming Call  Time: 10:21:26  Date: 02/20/2002

Subject: Eric Coffill called me and asked what was happening with the case.

Comment: I told him that I was instructed not to work on the case due to the pending Nevada litigation. He wanted further information so I referred Eric to GWM.

**02/22/2002 - Send Correspondence**



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005

Event Log For Case Unit: Hyatt, Gilbert - 1992

02/22/2002 Request Review

02/22/2002 Request Review

02/22/2002 Request Review

02/27/2002 Request Review

User: Cinnamon, Cody C  Date: 02/27/2002  Time: 14:04:24  Type: Docketed Protest

Reviewer: Miller, Benjamin F

Subject: Request for IDRs

Comment: The Protest IDRs sent are in the sent correspondence folder and are named and dated:

Protest Questions 2 dated 12/31/99 (IDR1)
Second IDR dated 10/04/00
Third IDR dated 12/14/00
IDR4 dated 03/13/01
IDR5 dated 04/04/01
IDR6 dated 05/09/01

The above IDRs and the taxpayer's responses were given to Terry Collins by way of hard copy memos (which are in PASS) and attachments named/dated:

Request for Review of Submittal / 9/11/00
Request re 11 3 200 Submittal / 11/13/00
Hyatt IDR3 Response Memorandum / 03/06/01
Transmittal of Feb 28 2001 Hyatt Submittal / 03/15/01
Transmittal of IDR5 / 04/04/01
Transmittal of April 10 2001 submittal / 04/26/01
Transmittal of IDR6 & Hyatts June 8 2001 Response/ 06/15/01

I have two responses from Hyatt 6/12/01 and 6/20/01 which I will send under cover of memo to Terry Collins in the next couple of days.

FTB 27982(A)



FRANCHISE TAX BOARD
PASS DESKTOP

**Event Log For Case Unit: Hyatt, Gilbert - 1992**

**02/27/2002 Record Event**

**User:** Cinnamon, Cody C **Date:** 02/27/2002 **Time:** 15:03:03 **Type:** Docketed Protest

**Subject:** BFM via voicemail requested copies of protest IDRs

**Comment:** I gave email and PASS request review to BFM indicating the documents he is looking for and that these had already been submitted to Terry Collins together with Hyatt's responses and submittals under cover of transmittal memos.

**02/28/2002 Record Event**

**User:** Cinnamon, Cody C **Date:** 02/28/2002 **Time:** 09:45:26 **Type:** Docketed Protest

**Subject:** Email from CCC to GWM

**Comment:**

-----Original Message-----
From: Cinnamon.Cody
Sent: Thursday, February 28, 2002 9:44 AM
To: McLaughlin.George
Subject: Protest of Gilbert P. Hyatt

Ben came to my office with a copy of email between Ben and Caglar and asked me for Hyatt's response of 4/10/01 because he was told that it is a document in which Eric said he would not provide information that was provided in discovery in the Nevada litigation. That 4/10/01 response of Eric did not contain that refusal. However, I told him there was correspondence where Eric did make such a refusal. So I began to search for this correspondence. Before I found it, Ben came back to my office and said that there had been miscommunication and that he now wanted to know when Eric contacted us about the status of the case. I told him that this contact was by phone and that Eric wanted more information than I could give him about why I was not actively working the case so I referred Eric to you. Ben wanted to know whether there was a phone contact event in the event log. I referred him to my phone contact event dated 2/20/02. I told Ben that I did not see a phone contact event from you after Eric called you. With that Ben said that was all he needed from me at this time.

**02/28/2002 Record Progress**

**User:** Cinnamon, Cody C **Date:** 02/28/2002 **Time:** 09:46:32 **Type:** Docketed Protest

**Date:** 02/27/2002 **Hours:** **Location:** Desk

**Task Name:** L-Factual Devmnt/Discovery

**Summary:** Responded to BFM request for IDR information

**Comment:**

**02/28/2002 Record Progress**

**User:** Cinnamon, Cody C **Date:** 02/28/2002 **Time:** 09:47:14 **Type:** Docketed Protest

**Date:** 02/20/2002 **Hours:** **Location:** Desk

**Task Name:** L-Factual Devmnt/Discovery

**Summary:** Phone call from Eric Coffill

**Comment:**

**02/28/2002 Record Progress**



Event Log For Case Unit: Hyatt, Gilbert - 1992

02/28/2002 Record Progress

02/28/2002 Record Progress

User: Cinnamon, Cody C Date: 02/28/2002 Time: 09:55:12 Type: Docketed Protest

Date: 02/28/2002 Hours: 1 Location: Desk

Task Name: L-Factual Devmnt/Discovery

Summary: Respondend to BFM's follow-up request for information

Comment: For details see record eventre email to GWM

02/28/2002 Record Event

02/28/2002 Record Progress



FRANCHISE TAX BOARD
PASS DESKTOP

**Event Log For Case Unit: Hyatt, Gilbert - 1992**

**02/28/2002 Record Event**

**User:** Cinnamon, Cody C **Date:** 02/28/2002 **Time:** 15:30:31 **Type:** Docketed Protest

**Subject:** Discussed case with CAG

**Comment:** CAG said that she disagreed with Section A's plan to write Eric Coffill and ask for all of the litigation materials to be submitted to me for the protest. We believe that is a violation of the protective order. CAG also said that if the protective order is lifter that the protest case should be returned to Section A to complete. They have spent a lot of time with the discovery materials and know which materials are salient to the determination of the case. I told CAG what I needed to do, respond to Eric's 6/15/01 letter, get the 5/31/01 submittal to TLC, do the reconciliation of the licences and the 1992 receipts the auditor picked up and Write Eric Coffill for any additional information I need.

**03/08/2002 Received Correspondence**

**User:** Hao, Gene **Date:** 03/08/2002 **Time:** 14:20:25 **Type:** Docketed Protest

**From:** Eric J. Coffill

**Subject:** Rec'd Letter To Confirm The Contents Discussed Over Telephone On . . .

**Comment:** 02/20/02.

**03/19/2002 Send Correspondence**

**User:** Cinnamon, Cody C **Date:** 03/19/2002 **Time:** 16:06:24 **Type:** Docketed Protest

**Subject:** Transmittal of Hyatts May 31 2001 Submittal

**03/28/2002 Request Review**

**03/28/2002 Send Correspondence**

**User:** Petri, Carol **Date:** 03/28/2002 **Time:** 13:20:58 **Type:** Docketed Protest

**Subject:** IDR 7



## Event Log For Case Unit: Hyatt, Gilbert - 1992

**04/03/2002 Record Event**

**User:** Cinnamon, Cody C **Date:** 04/03/2002 **Time:** 13:46:23 **Type:** Docketed Protest

**Subject:** Eric Coffill called me and asked about my March 28, 2001 IDR.

**Comment:** Eric wanted to know why I was asking for the information and why now. I told him that I was trying to do a reconciliation of the agreements and the payments for the last quarter of 1991 and for 1992. I was looking at Hyatt's argument that we made an error in the amount of receipts that we picked up for 1992. I also told Eric that I was considering what the geographic source of the income is. Eric said that he did not understand why I looking at source because that is not an issue in the case. I told Eric that it is an issue in the case and I told him that it is an issue at the protest hearing. (I also listed it as an issue in my October 4, 2000 IDR.) He asked me why I was doing it and I told him that I was told to do it. He asked me why I was doing it now and I told him it was because I was told to do it now.

Eric said that Hyatt may not want to give me any information that relates to sourcing until a residency determination has been made. Eric said that he may decide to talk to George. I said that George is out for the rest of the week. Eric said that he would check with his client and go from there.

**04/04/2002 Record Event**

**04/04/2002 Record Progress**

**User:** Cinnamon, Cody C **Date:** 04/04/2002 **Time:** 15:57:26 **Type:** Docketed Protest

**Date:** 04/04/2002 **Hours:** **Location:** Desk

**Task Name:** L-Factual Devmnt/Discovery

**Summary:**

**Comment:**

**04/11/2002 Record Event**

**User:** Perez, Jane **Date:** 04/11/2002 **Time:** 08:27:04 **Type:** Docketed Protest

**Subject:** Reviewed binder of information. Worked on income reconciliation.

**Comment:**

**04/29/2002 Received Correspondence**

**User:** Hao, Gene **Date:** 04/29/2002 **Time:** 14:06:27 **Type:** Docketed Protest

**From:** Eric J. Coffill

**Subject:** Tax Rep.'s Responses To 03/28/02 IDR

**Comment:** Eric's responses was rec'd by FTB.

 FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005

**Event Log For Case Unit: Hyatt, Gilbert - 1992**

**05/03/2002 Send Correspondence**

**User:** Cinnamon, Cody C **Date:** 05/03/2002 **Time:** 10:28:54 **Type:** Docketed Protest

**Subject:** Transmittal of Hyatts April 25 2002 Submittal

**05/03/2002 Record Event**

**05/03/2002 Record Event**

**05/03/2002 Record Progress**

**User:** Cinnamon, Cody C **Date:** 05/03/2002 **Time:** 15:47:42 **Type:** Docketed Protest

**Date:** 05/03/2002 **Hours:** **Location:** Desk

**Task Name:** L-Factual Devmnt/Discovery

**Summary:** drafted memo to TLC re Hyatt April 25 submittal

**Comment:**

**05/03/2002 Record Event**

**User:** Cinnamon, Cody C **Date:** 05/03/2002 **Time:** 15:50:37 **Type:** Docketed Protest

**Subject:** Gave copy of Hyatt 4/25/02 letter to GWM

**Comment:**

FTB 27987(A)



Event Log For Case Unit: Hyatt, Gilbert - 1992

05/03/2002 Request Review

User: Cinnamon, Cody C Date: 05/03/2002 Time: 16:12:02 Type: Docketed Protest

Comment: Hyatt provided the Hitachi Patent Agreement and it confirms that it was executed after April 2, 1992

Hyatt also provided at Exhibit 2 to the April 25, 2002 submittal, Schedule 1 to the U.S. Philip's November 6, 1992 letter regarding the 3rd quarter 1992 patent agreement payments to Hyatt.

However, Hyatt says he cannot locate the Schedule 1 to U.S. Philip's February 3, 1993 letter regarding the 4th quarter 1992 patent agreement payments to Hyatt.

05/13/2002 Record Progress

05/14/2002 Record Event

User: Cinnamon, Cody C Date: 05/14/2002 Time: 09:24:25 Type: Docketed Protest

Subject: 5/9/02 meeting with CAG, GWM and CCC

Comment:

Caglar said she would check with BFM on Monday to determine whether the attorneys assigned to the litigation are following the procedures in the Protective Order at this time to identify and obtain information and documents from the confidential litigation record from Hyatt's litigation attorneys that are relevant to the protest determination.

FTB 27988(A)



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 65 of 87

Event Log For Case Unit: Hyatt, Gilbert - 1992

05/03/2002 - Request Review

User: Cinnamon, Cody C Date: 05/03/2002 Time: 16:12:02 Type: Docketed Protest

Comment: Hyatt provided the Hitachi Patent Agreement and it confirms that it was executed after April 2, 1992

Hyatt also provided at Exhibit 2 to the April 25, 2002 submittal, Schedule 1 to the U S. Philip's November 6, 1992 letter regarding the 3rd quarter 1992 patent agreement payments to Hyatt.

However, Hyatt says he cannot locate the Schedule 1 to U S Philip's February 3, 1993 letter regarding the 4th quarter 1992 patent agreement payments to Hyatt

05/13/2002 - Record Progress

User: Cinnamon, Cody C Date: 05/13/2002 Time: 17:00:46 Type: Docketed Protest

Date: 05/13/2002 Hours: 6 Location: Desk

Task Name: L-Factual Devmnt/Discovery

Summary: Reviewed May 31, 2991 letter and exhibit references

Comment:

05/14/2002 - Record Event

User: Cinnamon. Cody C Date: 05/14/2002 Time: 09:24:25 Type: Docketed Protest

Subject: 5/9/02 meeting with CAG, GWM and CCC

Comment:

Caglar said she would check with BFM on Monday to determine whether the attorneys assigned to the litigation are following the procedures in the Protective Order at this time to identify and obtain information and documents from the confidential litigation record from Hyatt's litigation attorneys that are relevant to the protest determination

Eric Coffill's April 25, 2002 letter also states: " . . we continue to urge FTB to act on a responsive manner and make a proposed determination with respect to these protests as soon as possible (See our March 7, 2002 letter to George W McLaughlin. . ") Caglar and George instructed me to review the rest of the protest record and draft a tentative determination letter by the end of June 2002

FTB 27988 (B)



FRANCHISE TAX BOARD
PASS DESKTOP

Event Log For Case Unit: Hyatt, Gilbert - 1992

05/20/2002 Record Event

05/21/2002 Send Correspondence

User: McLaughlin, George Date: 05/21/2002 Time: 16:20:13 Type: Docketed Protest

Subject: Response to Coffill re Lit

06/05/2002 Record Progress

06/05/2002 Record Progress

06/05/2002 Record Progress

FTB 27989(A)



Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 84 of 244

FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 67 of 87

Event Log For Case Unit: Hyatt, Gilbert - 1992

06/05/2002 Record Progress

06/05/2002 Record Progress

06/05/2002 Record Progress

06/05/2002 Record Progress

06/05/2002 Record Progress

06/05/2002 Record Progress

FTB 27990(A)

2353-0071

RJN000571



Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 85 of 244

FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 68 of 87

Event Log For Case Unit: Hyatt, Gilbert - 1992

06/27/2002 Record Progress

06/27/2002 Record Progress

06/27/2002 Record Progress

06/28/2002 Record Progress

06/28/2002 Record Progress

07/31/2002 Record Progress

FTB 27991 (A)

2353-0072

RJN000572



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 69 of 87

Event Log For Case Unit: Hyatt, Gilbert - 1992

02/03/2003 Received Correspondence

User: Hao, Gene Date: 02/03/2003 Time: 09:41:48 Type: Docketed Protest

From: Eric J. Coffill

Subject: Tax Rep Checking On The Status Of The Case. . .

Comment:

02/03/2003 Send Correspondence

User: McLaughlin, George Date: 02/03/2003 Time: 09:51:04 Type: Docketed Protest

Subject: Coffill0203Ltr

02/03/2003 Received Correspondence

User: McLaughlin, George Date: 02/03/2003 Time: 09:52:38 Type: Docketed Protest

From: Eric Coffill

Subject: Demand to Close Protest

Comment: Letter Dated 1/29/03 from Eric requesting that "you immediately issue Notices of Action regarding the 1991 and 1992 protests." GWM///

02/20/2003 Record Event

User: Cinnamon, Cody C Date: 02/20/2003 Time: 13:53:45 Type: Docketed Protest

Comment: I am to do nothing on the case.

03/05/2003 Record Event

User: Cinnamon, Cody C Date: 03/05/2003 Time: 13:15:16 Type: Docketed Protest

Subject: Met with GWM and John Penfield re status of case

Comment: Ca Superior Court upheld our administrative subpoena for Hyatt to provide all the discovery material from the Nevada suit. Hyatt has 30 days to submit a writ to challange the subpoena. If he does we will have 30 days to respond. Then the appellate court will decide the matter within a short time period. If Hyatt looses the appeal they will have to produce the evidence. Then, the case will become active again and

03/05/2003 Record Progress

FTB 27992 (A)



Event Log For Case Unit: Hyatt, Gilbert - 1992

05/02/2003 Record Progress

01/06/2004 Record Progress

01/23/2004 Request Review

User: Caglayan, Caglar M Date: 01/23/2004 Time: 09:57:26 Type: Docketed Protest

Reviewer: Cinnamon, Cody C

Subject: Request by Hyatt's Counsel on the litigation case

Comment: We have been advised by Hyatt's counsel on the litigation case that they will be asking for the complete protest file and therefore nothing should be destroyed. As is our normal practice, nothing would be destroyed, but we would assert appropriate privileges.

03/04/2004 Record Progress



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 71 of 87

**Event Log For Case Unit: Hyatt, Gilbert - 1992**

04/01/2004 Record Event

**User:** Cinnamon, Cody C **Date:** 04/01/2004 **Time:** 10:02:08 **Type:** Docketed Protest

**Subject:** Email re discovery materials to be received

**Comment:**

Katie Courtnier told me I could take possession of the Hyatt binders containing copies of the discovery materials from the Nevada litigation that the California court ordered that I be given for use in completing the protest. I made room in my office this morning for the binders and went to take delivery of them as well. At that time I requested that I be given a list of what discovery materials they were giving me and in which labeled binders they were contained.

Katie and I discussed this with Bob Dunn who agreed to give me this accounting of the materials I was receiving. Bob Dunn then instructed Katie to write a memo containing this information. At that point Katie said she still needed possession of the available binders so that she could use them in making the accounting record that I requested.



**Event Log For Case Unit: Hyatt, Gilbert - 1992**

**04/01/2004 Record Event**

**User:** Cinnamon, Cody C **Date:** 04/01/2004 **Time:** 16:12:16 **Type:** Docketed Protest

**Subject:** Email to CAG re Hyatt discovery documents

**Comment:**

This will serve to inform you that I have now received part of the Hyatt discovery materials from Katie.

1. One binder containing Eugene Cowan's deposition transcripts and ten of twelve binders containing all documents relating to his deposition. The bates range of those documents is EC 00001 through EC 05670.

2. One binder, Volume 1 of the Hyatt 22nd Supplemental Document Production, produced on 1/18/2000. The bates range is H 015829 through H 016376.

3. Two binders, Volume 1 and Volume 2, of Hyatt's 21st Supplemental Document production, produced 1/30/2000. The bates range for Volume 1 is H014904 through H 015362. The bates range for Volume 2 is H 015363 through H 015828.

Of this information, to date I have not received the following:

From the Eugene Cowan documents materials submitted in the litigation per item 1 above, I have all but two binders with bate numbers as follows:

00001 - 00477
02782 - 03232

I also have not received:

One binder containing the deposition transcripts of Michael Kern. Seventeen binders containing all of the documents relating to his deposition. The Hyatt litigation bates range of those binders is PBTK 00001 through PBTK 06277.

**04/01/2004 Record Progress**



**Event Log For Case Unit: Hyatt, Gilbert - 1992**

05/07/2004 Record Event

**User:** Cinnamon, Cody C **Date:** 05/07/2004 **Time:** 11:04:19 **Type:** Docketed Protest

**Subject:** Discussion with Bob Dunn

**Comment:** Bob Dunn said they have found a few mistakes on Hyatt's part on their original production. Bob said that they will be perfecting that in the course of the litigation, but does not think they will perfect it through enforced compelled production of the administrative subpoena. Bob said they will mark these in the documents and privilieged logs they produce to me. I asked them for a narrative explanation of these errors in anticipation that Eric will question these errors or omissions.

Bob said that Hyatt has also provided revised privelege logs that they are going through for purposes of producing the documents to me. So the privilege logs they gave me previously are in error and are not the privilege logs we should go by in reconciling the production of documents pursuant to the subpoena. It seems that the errors they found are discrepancies between the revised privileged logs and the documents produced.

05/07/2004 Record Progress



FRANCHISE TAX BOARD
PASS DESKTOP

**Event Log For Case Unit: Hyatt, Gilbert - 1992**

05/07/2004 Record Event

**User:** Cinnamon, Cody C **Date:** 05/07/2004 **Time:** 15:57:07 **Type:** Docketed Protest

**Subject:** emails

**Comment:**

Subject:FW: Hyatt production of documents through compelled production of the administative subpoena

Subject:RE: Hyatt production of documents through compelled production of the administative subpoena

Subject:Hyatt production of documents through compelled production of the administative subpoena

I had a brief discussion with Bob Dunn concerning the above matter. He said they have found a few mistakes on Hyatt's part on their original production. Bob said that they will be perfecting that in the course of the litigation, but does not think they will perfect it through enforced compelled production of the administrative subpoena. Bob said they will mark these in the documents and privileged logs they produce to me. I asked them for a narrative explanation of these errors in anticipation that Eric will question these errors or omissions.

Bob said that Hyatt has also provided revised privelege logs that Katie and Bob are going through for purposes of producing the documents to me. So the privilege logs they gave me previously are in error and are not the privilege logs we should go by in reconciling the production of documents pursuant to the subpoena. It seems that the errors they found are discrepancies between the revised privileged logs and the documents produced.

05/11/2004 Record Progress

05/11/2004 Request Review



FRANCHISE TAX BOARD
PASS DESKTOP

Event Log For Case Unit: Hyatt, Gilbert - 1992

05/13/2004 Record Event

05/13/2004 Record Event

05/28/2004 Record Progress

05/28/2004 Record Progress

06/22/2004 Record Event

**User:** Cinnamon, Cody C **Date:** 06/22/2004 **Time:** 12:09:05 **Type:** Docketed Protest

**Subject:** Met with David G. re obtaining documents from Bob Dunn & Co

**Comment:** I told David that I still do not have the documents back. He spoke with Scott DePeel and Katie Cortnier. The hold up is that they need to send a memo to the AGs re the discrepancy between the privilege logs and the documents that were actually produced. David will work with them to see that the memo goes out ASAP.

06/22/2004 Record Event



Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 93 of 244

PASS

FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 76 of 87

Event Log For Case Unit: Hyatt, Gilbert - 1992

07/06/2004 Record Progress

07/06/2004 Record Progress

07/06/2004 Record Progress

07/06/2004 Record Progress

07/30/2004 Record Progress

07/30/2004 Record Progress

FTB 27999 (A)

2353-0080

RJN000580



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005

Event Log For Case Unit: Hyatt, Gilbert - 1992

07/30/2004 Record Progress

07/30/2004 Record Progress

07/30/2004 Record Progress

08/31/2004 Record Event

User: Cinnamon, Cody C Date: 08/31/2004 Time: 16:35:23 Type: Docketed Protest

Subject: followed up 2X in August on status of court ordered production of docs

Comment:

08/31/2004 Record Progress

User: Cinnamon, Cody C Date: 08/31/2004 Time: 16:36:07 Type: Docketed Protest

Date: 08/06/2004 Hours: 10 Location: Desk

Task Name: L-Factual Devmnt/Discovery

Summary: f/u 2X in August on document production

Comment:

12/09/2004 Record Event

FTB 28000 (A)



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005

Event Log For Case Unit: Hyatt, Gilbert - 1992

01/12/2005 Record Event

User: Cinnamon, Cody C Date: 01/12/2005 Time: 11:36:09 Type: Docketed Protest

Subject: Email re date and fact of delivery of documents

Comment:

Subject:□FW: Hyatt Documents You are allowed to See due to the Administrative Subpoena

-----Original Message-----
From: □Courtnier.Kathryn
Sent:□Wednesday, January 12, 2005 11:18 AM
To:□Cinnamon.Cody
Subject:□Hyatt Documents You are allowed to See due to the Administrative Subpoena

Good Morning Cody,

I can show you where the documents are being housed. It is War Room Number 2. It is all bindered up.

Kathryn Courtnier
Senior Legal Analyst
Telephone (916) 845-6736
Fax (916) 845-0848

01/13/2005 Record Progress

01/13/2005 Record Progress

02/01/2005 Record Progress



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005

Event Log For Case Unit: Hyatt, Gilbert - 1992

02/01/2005 Record Progress

02/01/2005 Record Progress

03/02/2005 Record Progress

03/02/2005 Record Progress

03/02/2005 Record Progress



FRANCHISE TAX BOARD
PASS DESKTOP

Event Log For Case Unit: Hyatt, Gilbert - 1992

04/25/2005 Record Public Contact

User: Cinnamon, Cody C Date: 04/25/2005 Time: 15:58:47 Type: Docketed Protest

Contact Type: Incoming Call Time: 09:52:00 Date: 04/25/2005

Subject: Eric Coffill called and asked re status of protest

Comment: I told him I was reviewing documents and that this case was a high priority for me to complete. He asked for specific time frames of when I would be getting something to him on the case, including the sourcing issue, and I said that I could not give him specific dates. He wanted to know when al would be closing the case. He said that once I give him something onthe sourcing issue he would need several months to respond. He asked me if I was planning to close the protest in June 2005. I referred Eric to CAG.

Eric asked what specific documents I was revfiewing and I told himj they were the documents obtained through the California administrative subpoena.

04/25/2005 Record Progress

04/26/2005 Record Event

06/02/2005 Record Progress

06/02/2005 Record Progress



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 80 of 87

Event Log For Case Unit: Hyatt, Gilbert - 1992

04/25/2005 Record Public Contact

User: Cinnamon, Cody C    Date: 04/25/2005    Time: 15:58:47    Type: Docketed Protest

Contact Type: Incoming Call    Time: 09:52:00    Date: 04/25/2005

Subject: Eric Coffill called and asked re status of protest

Comment: I told him I was reviewing documents and that this case was a high priority for me to complete. He asked for specific time frames of when I would be getting something to him on the case, including the sourcing issue, and I said that I could not give him specific dates. He wanted to know when ai would be closing the case. He said that once I give him something onthe sourcing issue he would need several months to respond. He asked me if I was planning to close the protest in June 2005. I referred Eric to CAG.

Eric asked what specific documents I was revfiewing and I told himj they were the documents obtained through the California administrative subpoena.

04/25/2005 Record Progress

04/26/2005 Record Event

User: Cinnamon, Cody C    Date: 04/26/2005    Time: 08:24:02    Type: Docketed Protest

Subject: Discussed case with Caglar - I will draft an IDR

Comment: I need the breakdown of the source of the licence/royalty payments for 1991.

06/02/2005 Record Progress

06/02/2005 Record Progress

FTB 28003 (B)



FRANCHISE TAX BOARD
PASS DESKTOP

Event Log For Case Unit: Hyatt, Gilbert - 1992

06/02/2005 Record Progress

06/06/2005 Request Review

06/07/2005 Record Event

06/07/2005 Record Progress

FTB 28004(A)



**Event Log For Case Unit: Hyatt, Gilbert - 1992**

06/07/2005 Send Correspondence

06/07/2005 Record Progress

User: Petri, Carol | Date: 06/07/2005 | Time: 10:04:56 | Type: Docketed Protest

Date: 06/07/2005 | Hours: 1 | Location: Desk

Task Name: L-Document Preparation

Summary: IDR8 Letter to tax rep

Comment:

07/13/2005 Received Correspondence

User: Hao, Gene | Date: 07/13/2005 | Time: 11:42:48 | Type: Docketed Protest

From: Eric Coffill

Subject: Rep's July 7, 2005 Response To FTB's June 7, 2005 Letter

07/14/2005 Received Correspondence

User: Hao, Gene | Date: 07/14/2005 | Time: 13:48:10 | Type: Docketed Protest

From: Eric Coffill

Subject: July 12, 2005 Letter Requesting Copies of All Protest Hearing Docs

Comment: Softcopy is in Rec'd Correspondence folder.

07/18/2005 Record Event

07/19/2005 Send Correspondence

User: Cinnamon, Cody C | Date: 07/19/2005 | Time: 11:46:17 | Type: Docketed Protest

Subject: Transmittal of Hyatt's July 12 2005 Submittal



Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 101 of 244

FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 83 of 87

Event Log For Case Unit: Hyatt, Gilbert - 1992

07/19/2005 Request Review

07/20/2005 Record Event

07/20/2005 Request Review

FTB 28006 (A)

2353-0088

RJN000588



Event Log For Case Unit: Hyatt, Gilbert - 1992

07/20/2005 Record Event

07/20/2005 Send Correspondence

User: Petri, Carol Date: 07/20/2005 Time: 15:00:02 Type: Docketed Protest

Subject: confirmation letter re request for documents

07/20/2005 Record Progress

08/01/2005 Record Progress

08/01/2005 Record Progress

User: Cinnamon, Cody C Date: 08/01/2005 Time: 16:47:40 Type: Docketed Protest

Date: 07/19/2005 Hours: 4 Location: Desk

Task Name: L-Document Preparation

Summary: confirmation ltr and IDR

Comment:

FTB 28007 (A)



Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 103 of 244

FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 85 of 87

Event Log For Case Unit: Hyatt, Gilbert - 1992

08/01/2005 Record Progress

08/01/2005 Record Progress

08/01/2005 Record Progress

08/02/2005 Send Correspondence

User: Cinnamon, Cody C Date: 08/02/2005 Time: 17:04:26 Type: Docketed Protest

Subject: Transmittal memo re 8 2 05 email

FTB 28008 (A)

2353-0090

RJN000590



**Event Log For Case Unit: Hyatt, Gilbert - 1992**

08/03/2005 Record Event

User: Cinnamon, Cody C Date: 08/03/2005 Time: 08:42:24 Type: Docketed Protest

Subject: Email from Bill Hilson and response

Comment:

-----Original Message-----
From: Hilson.Bill
Sent: Tuesday, August 02, 2005 4:25 PM
To: Cinnamon.Cody
Subject: Partial memo response

Hi Cody,

I've received your memo dated July 19, 2005 regarding the referenced July 7, 2005 submittal. While I am not yet quite in a position to unequivocally respond to your question No. 1, I believe the answer to that question is "Yes". Among other things, Mr. Coffill's response to your question No. 5 appears to confirm that additional documents exist which have not yet been provided to you. I will provide you with the unequivocal response to question No. 1 as soon as I can.

On a related note, paragraph 5 of your June 7, 2005 letter to Mr. Coffill contains a reference to an Attachment 1, which was a January 14, 1992 letter from US Philips. Can you please provide me with a copy of that attachment so that I have a complete copy of your letter to Mr. Coffill?

Also, as you may be aware, FTB has an ongoing obligation in the Nevada litigation to update the document productions it has made in this case when it discovers there are additional documents to be produced in certain categories. It is my understanding that FTB has heretofore produced copies of documents pertaining to Mr. Hyatt's protest and that those documents have been bates-stamped with sequential identifiers P00001 through somewhere in excess of P11000. Can you tell me if there are additional, non-privileged materials which have become part of the protest materials since the last production. There is some urgency to these request and I would appreciate your response as soon as possible.

thank you.

In respnse:
I sent him the January 14, 1992 letter from US Philips under cover of transmittal memo dated 8/2/05.

08/11/2005 Request Review

08/11/2005 Send Correspondence

User: Barkey, Karen K Date: 08/11/2005 Time: 14:08:12 Type: Docketed Protest

Subject: IDR 9

08/11/2005 Record Progress



FRANCHISE TAX BOARD
PASS DESKTOP

Event Log For Case Unit: Hyatt, Gilbert - 1992

08/25/2005 Record Event

FTB 28010 (A)



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 1 of 12

**Sent Correspondence For Case Unit: Hyatt, Gilbert - 1992**

**10/26/1998 Initial Contact Letter to Taxpayer**

To: Eugene G. Cowan
300 South Grand Avenue, 29th Floor

Los Angeles State: CA Zip: 90071

**02/24/1999 Reassignment Letter**

To: Eugene G. Cowan
300 South Grand Avenue, 29th Floor

Los Angeles State: CA Zip: 90071

**02/24/1999 Revised Reassignment Letter**

To: Eugene G. Cowan
300 South Grand Avenue, 29th Floor

Los Angeles State: CA Zip: 90071

**08/13/1999 protest questions**

To: Eugene G. Cowan
300 South Grand Avenue, 29th Floor

Los Angeles State: CA Zip: 90071

**12/30/1999 protest questions 2**

To: Eugene G. Cowan
300 South Grand Avenue, 29th Floor

Los Angeles State: CA Zip: 90071

FTB 28011



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005

**Sent Correspondence For Case Unit: Hyatt, Gilbert - 1992**

**04/04/2000 hearing extension**

To: Eugene G. Cowan
300 South Grand Avenue, 29th Floor

Los Angeles State: CA Zip: 90071

**04/18/2000 Notice of Oral Hearing 1 of 2**

To: Eugene G. Cowan
300 South Grand Avenue, 29th Floor

Los Angeles State: CA Zip: 90071

Eric Coffill
400 Capitol Mall, Suite 2300

Sacramento State: CA Zip: 95814

**04/18/2000 Notice of Oral Hearing 2 of 2**

To: Eugene G. Cowan
300 South Grand Avenue, 29th Floor

Los Angeles State: CA Zip: 90071

Eric Coffill
400 Capitol Mall, Suite 2300

Sacramento State: CA Zip: 95814

**08/24/2000 Audit Index Transmittal**

To: Eric Coffill
400 Capitol Mall, Suite 2300

Sacramento State: CA Zip: 95814

**08/24/2000 Request for Missing Redacted or Withheld Audit Items**

To: Eugene G. Cowan
300 South Grand Avenue, 29th Floor

Los Angeles State: CA Zip: 90071



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 3 of 12

Sent Correspondence For Case Unit: Hyatt, Gilbert - 1992

09/08/2000 Request for Review of Submittal

To: Ben Miller
Multistate Tax Law Bureau

State: Zip:

09/11/2000 Request for undisclosed missing audit records

To: Ben Miller
Multistate Tax Law Bureau

State: Zip:

09/11/2000 Protective Order Transmittal

To: Ben Miller
Multistate Tax Law Bureau

State: Zip:

09/14/2000 Follow-up memo

To: Ben Miller
Multistate Tax Law Bureau

State: Zip:

Cc: Caglar Caglayan
General Tax Law Bureau

State: Zip:

09/14/2000 Follow-up request

FTB 28013



FRANCHISE TAX BOARD
PASS DESKTOP

Sent Correspondence For Case Unit: Hyatt, Gilbert - 1992

**10/03/2000 Second IDR**

To: Eric Coffill
400 Capitol Mall, Suite 2300

Sacramento State: CA Zip: 95814

**11/02/2000 Audit File Copy Transmittal**

To: Eric Coffill
400 Capitol Mall, Suite 2300

Sacramento State: CA Zip: 95814

**11/02/2000 Audit File Copy Transmittal 2**

To: Eric Coffill
400 Capitol Mall, Suite 2300

Sacramento State: CA Zip: 95814

**11/13/2000 Request re 11/5/200 Submittal**

To: Terry Collins
General Tax Law Bureau

State: Zip:

**11/29/2000 Third IDR**

To: Eric Coffill
400 Capitol Mall, Suite 2300

Sacramento State: CA Zip: 95814

FTB 28014



FRANCHISE TAX BOARD
PASS DESKTOP

Sent Correspondence For Case Unit: Hyatt, Gilbert - 1992

**03/06/2001 Hyatt IDR3 Response Memo**

To: Terry Collins
General Tax Law Bureau

State: Zip:

Cc: George McLaughlin
General Tax Law Bureau

State: Zip:

Caglar Caglayan
General Tax Law Bureau

State: Zip:

Ben Miller
Multistate Tax Law Bureau

State: Zip:

**03/06/2001 Hyatt IDR3 Response Memorandum**

To: Terry Collins
General Tax Law Bureau

State: Zip:

Cc: George McLaughlin
General Tax Law Bureau

State: Zip:

Caglar Caglayan
General Tax Law Bureau

State: Zip:

Ben Miller
Multistate Tax Law Bureau

State: Zip:



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 6 of 12

Sent Correspondence For Case Unit: Hyatt, Gilbert - 1992

**03/15/2001 IDR4**

To: Eric Coffill
400 Capitol Mall, Suite 2300

Sacramento State: CA Zip: 95814

**03/15/2001 Transmittal of Feb 28 2001 Hyatt Submittal**

To: Terry Collins
General Tax Law Bureau

State: Zip:

Cc: George McLaughlin
General Tax Law Bureau

State: Zip:

Caglar Caglayan
General Tax Law Bureau

State: Zip:

Ben Miller
Multistate Tax Law Bureau

State: Zip:

**03/20/2001 protective order letter**

To: Eric Coffill
400 Capitol Mall, Suite 2300

Sacramento State: CA Zip: 95814

**04/03/2001 IDR5**

To: Eric Coffill
400 Capitol Mall, Suite 2300

Sacramento State: CA Zip: 95814

FTB 28016



Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 112 of 244

FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 7 of 12

Sent Correspondence For Case Unit: Hyatt, Gilbert - 1992

**04/04/2001 Transmittal of IDR5**

To: Terry Collins
General Tax Law Bureau

State: Zip:

Attachments:

| Date: | Name: | Subject: | Created By: |
|---|---|---|---|
| 03/13/2001 | IDR4 | IDR4 | Cinnamon, Co |
| 04/03/2001 | IDR5 | IDR5 | Cinnamon, Co |

**04/26/2001 Transmittal of April 10, 2001 submittal**

To: Terry Collins
General Tax Law Bureau

State: Zip:

Cc: George McLaughlin
General Tax Law Bureau

State: Zip:

Caglar Caglayan
General Tax Law Bureau

State: Zip:

Ben Miller
Multistate Tax Law Bureau

State: Zip:

**04/26/2001 IDR6**

To: Eric Coffill
400 Capitol Mall, Suite 2300

Sacramento State: CA Zip: 95814

FTB 28017

SECTION G - SENT CORRESPONDENCE

2353-0099

RJN000599



| | **FRANCHISE TAX BOARD** | Print Date: 09/07/2005 |
| --- | --- | --- |
| | **PASS DESKTOP** | Page 8 of 12 |

**Sent Correspondence For Case Unit:  Hyatt, Gilbert - 1992**

| | ████████ Transmittal of IDR6 and Trans form, B2001 Response ████████ |
| --- | --- |

    **To:**   Terry Collins
           General Tax Law Bureau

                              **State:**      **Zip:**

    **Cc:**  George McLaughlin
           General Tax Law Bureau

                              **State:**      **Zip:**

           Caglar Caglayan
           General Tax Law Bureau

                              **State:**      **Zip:**

           Ben Miller
           Multistate Tax Law Bureau

                              **State:**      **Zip:**

**Attachments:**

| Date: | Name: | Subject: | Created By: |
| --- | --- | --- | --- |
| 04/26/2001 | IDR6 | IDR6 | Cinnamon, Co |
| ████ 02/22/2002 ████ Request for | | ████████████████████████████ | |

                              **State:**      **Zip:**

**FTB 28018** (A)

**SECTION G -  SENT CORRESPONDENCE**

2353-0100

RJN000600



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 9 of 12

**Sent Correspondence For Case Unit: Hyatt, Gilbert - 1992**

06/15/2001 Transmittal of Hyatts May 31 2001 Submittal

To: Terry Collins
General Tax Law Bureau

State: Zip:

Cc: George McLaughlin
General Tax Law Bureau

State: Zip:

Caglar Caglayan
General Tax Law Bureau

State: Zip:

Ben Miller
Multistate Tax Law Bureau

State: Zip:

03/20/2002 IDR 7

To: Eric Coffill
400 Capitol Mall, Suite 2300

Sacramento State: CA Zip: 95814

FTB 28019

SECTION G - SENT CORRESPONDENCE



FRANCHISE TAX BOARD
PASS DESKTOP

Print Date: 09/07/2005
Page 10 of 12

**Sent Correspondence For Case Unit: Hyatt, Gilbert - 1992**

**05/03/2002 Transmittal of Hyatt's April 25 2002 Submittal**

To: Terry Collins
General Tax Law Bureau

State: Zip:

Cc: George McLaughlin
General Tax Law Bureau

State: Zip:

Caglar Caglayan
General Tax Law Bureau

State: Zip:

Ben Miller
Multistate Tax Law Bureau

State: Zip:

**05/21/2002 Response to Coffill re Ltr**

To: Eric Coffill
400 Capitol Mall, Suite 2300

Sacramento State: CA Zip: 95814

**02/03/2003 Coffill0203Ltr**

To: Eugene G. Cowan
300 South Grand Avenue, 29th Floor

Los Angeles State: CA Zip: 90071

**05/13/2002 IDR8**

To: Eric Coffill
400 Capitol Mall, Suite 2300

Sacramento State: CA Zip: 95814

FTB 28020



FRANCHISE TAX BOARD
PASS DESKTOP

Sent Correspondence For Case Unit: Hyatt, Gilbert - 1992

07/19/2005 Transmittal of Hyatt's July 12, 2005 Submittal

To: Bill Hilson
General Tax Law Bureau

State: Zip:

Cc: Caglar Caglayan
General Tax Law Bureau

State: Zip:

Ben Miller
Multistate Tax Law Bureau

State: Zip:

David Gemmingen
General Tax Law Bureau

State: Zip:

Cody Cinnamon
General Tax Law Bureau

State: Zip:

07/18/2005 confirmation letter re request for documents

To: Eric Coffill
400 Capitol Mall, Suite 2300

Sacramento State: CA Zip: 95814

08/02/2005 Transmittal memo re 8-2-05 email

To: Bill Hilson
General Tax Law Bureau

State: Zip:

FTB 28021



FRANCHISE TAX BOARD
PASS DESKTOP

**Sent Correspondence For Case Unit: Hyatt, Gilbert - 1992**

07/26/2005 IDR 9

To: Eric Coffill
400 Capitol Mall, Suite 2300

Sacramento State: CA Zip: 95814

FTB 28022

SECTION G - SENT CORRESPONDENCE



STATE OF CALIFORNIA
FRANCHISE TAX BOARD
Legal Department
PO Box 1720
Rancho Cordova, CA 95741-1720
(916) 845-3338 Fax (916) 843-6041

STEVE WESTLY
Chair

JOHN CHIANG
Member

TOM CAMPBELL
Member

October 28, 2005

Via US Mail and Facsimile (without attachments)

Mark A. Hutchison, Esq.
Hutchison & Steffen
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, NV 89145

Regarding: Hyatt v. Franchise Tax Board, Nevada District Court Case No. A 38299 and the California administrative tax protest of Gilbert P. Hyatt, taxable years 1991 and 1992

Dear Mark:

In accordance with Paragraph 4 of the Nevada Protective Order (attached) and the related decision of the California Court of Appeal in this matter (also attached[1]), the Franchise Tax Board (FTB) hereby requests your client's consent to produce the following Nevada litigation documents to California's Protest Hearing Officer for consideration in your client's pending California tax matter:

1. Complete transcripts of the 2005 deposition(s) of Gilbert P. Hyatt designated "Confidential – NV Protective Order" and all associated Exhibits.

2. Complete transcripts of the 2005 deposition(s) of Gregory L. Roth designated "Confidential – NV Protective Order" and all associated Exhibits.

3. Documents GLR00001 through GLR06684 produced in this matter on July 1, 2005.

4. Documents H16918 through H17158.

5. Documents H17208 through H18375.

6. Documents H18631 through H19283.

7. Documents H20180–H20184, H20233–H20243, H20259, H20277, H20282–H20283, H20285, H20295, H20305, H20307, H20309, H20316, H20321–H20322, H20338, H20341–H20343, H20349, H20351–H20352, H20354–H20357, H20370, H2389, H20391, H20393, H20396–H20400, H20402–H20403, H20431–H20432, H20466–H20689.

8. Documents H25543 through H25559.

9. Documents EC07809 through EC07955.

10. Documents PBTK06278 through PBTK06297.

11. Documents RM0001 through RM 02189.

We currently have all the documents described above in Franchise Tax Board's Sacramento, California office. After receipt of your consent we will provide the documents to the Protest Hearing Officer, located at the same Sacramento, California office, at California's expense. Please respond within 10 days of the date of this letter.

Sincerely,

Robert W. Dunn
Tax Counsel

cc: James W. Bradshaw, Esq., McDonald Carano Wilson LLP
Eric J. Coffill, Esq., Morrison & Foerster LLP

Enclosures (2)

DEC-06-2005 15:01 P.02

STATE OF CALIFORNIA
**FRANCHISE TAX BOARD**
**Legal Department**
PO Box 1720
Rancho Cordova, CA 95741-1720
(916) 845-3338 Fax (916) 843-6041

Chair
JOHN CHIANG
Member
MICHAEL C. GENEST
Member

December 6, 2005 <u>Via US Mail and Facsimile</u>

Mark A. Hutchison, Esq.
Hutchison & Steffen
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, NV 89145

Regarding: <u>Hyatt v. Franchise Tax Board</u>, Nevada District Court Case No. A 38299 and the California administrative tax protest of Gilbert P. Hyatt, taxable years 1991 and 1992

Dear Mark:

I received your letter dated November 9, 2005 requesting until November 30, 2005 to complete a review of the documents I listed in my letter to you dated October 28, 2005. Thank you. You mentioned that you would provide a formal response on or before November 30. To date I have not received that response.

Please be advised that I do not intend to alter my document request in response to your review. As I stated in my letter of October 28, I find all the listed documents as relevant to, or as potentially leading to relevant evidence in the California tax matter. Please add the following recently created documents to that list: The deposition transcripts of Caroline Cosgrove, Gregory Roth, Dan Hyatt and the transcripts from the continued deposition of Gilbert Hyatt as they also contain information relevant to, or information potentially leading to relevant evidence in the California tax matter.

I would appreciate a yes or no to my request by next Wednesday, December 14, 2005. I will interpret a failure to respond, or anything other that an unqualified yes, as a "no" answer under Paragraph 4 of the Nevada Court's protective order and I will take the appropriate next step.

Sincerely,

Robert W. Dunn
Tax Counsel

cc: James W. Bradshaw, Esq., McDonald Carano Wilson LLP
Eric J. Coffill, Esq., Morrison & Foerster LLP

FTB28898

TOTAL P.02



STATE OF CALIFORNIA
FRANCHISE TAX BOARD

# SUBPOENA DUCES TECUM

*In the Matter of:* Administrative Protest of Gilbert P. Hyatt
Taxable years 1991 and 1992
Notices of Proposed Assessment Nos.
04728236 and 04340945

*To:* Gilbert P. Hyatt, and his counsel:

Mark A. Hutchison, Esq.
HUTCHISON & STEFFEN
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145

Eric J. Coffill, Esq.
MORRISON & FOERSTER
400 Capitol Mall, Suite 2600
Sacramento, California 95814

You are hereby commanded in the above-referenced Protest of Gilbert P. Hyatt to make available to Cody Cinnamon, Tax Counsel, or her designee, at FRANCHISE TAX BOARD, 9645 Butterfield Way, Sacramento, CA 95827 on the ____ day of ________, 2006, at _______ a.m., the originals or true and exact copies of the original records described in the accompanying DESCRIPTION OF RECORDS, attached hereto as Attachment A.

This Subpoena Duces Tecum is issued under the authority of California Revenue and Taxation Code Section 19504 this 30 day of JANUARY, 2006. The statutory purpose of this Subpoena Duces Tecum is to determine if Gilbert P. Hyatt has complied with the provisions of the California Personal Income Tax Law.

[signature]
FRANCHISE TAX BOARD
State of California

FTB 2580 (Modified)

FTB28899



STATE OF CALIFORNIA
FRANCHISE TAX BOARD

**DECLARATION IN SUPPORT OF SUBPOENA DUCES TECUM**

I, Robert W. Dunn, declare:

1. I am an attorney at law duly licensed to practice before the courts of the State of California. I am an employee of the California Franchise Tax Board. I currently hold the position of Tax Counsel and am assigned to the General Tax Law Bureau of the Legal Department. I am familiar with Mr. Hyatt's California administrative tax protest and the legal and factual issues raised therein. I am also familiar with the allegations made in the complaints filed by Mr. Hyatt in Clark County District Court, Nevada, Case No. A382999 in the case entitled *Gilbert P. Hyatt v. Franchise Tax Board.* Both the California administrative tax protest and the Nevada litigation concern the same taxable years and both proceedings involve Mr. Hyatt's challenge to the Franchise Tax Board's audit findings with respect to his California residency for California income tax purposes. I make the following statements based upon personal knowledge.

2. Gilbert P. Hyatt, a former long time California resident, filed an administrative tax protest challenging California Franchise Tax Board's issuance of Notices of Proposed Assessment for tax years 1991 and 1992. These notices, which include proposed California income tax and fraud penalty assessments, are based on the Franchise Tax Board's determination at audit that Mr. Hyatt remained a California resident through part of 1992. The audit findings and proposed assessment contradicts the assertion of California nonresidency Mr. Hyatt made on his 1991 California part-year income tax return he filed with Franchise Tax Board in April 1992.

3. The two primary issues in Mr. Hyatt's California administrative tax protest are: (1) his assertion that he became a nonresident of California (as defined by Rev. & Tax. Code, §17014) on various dates in 1991; and (2) his objection to the proposed imposition of a fraud penalty (under Rev. & Tax. Code, §19164) assessed upon an audit determination that Mr. Hyatt intentionally evaded a California tax he knew to be owing. Mr. Hyatt filed his Nevada lawsuit, which challenges the findings of California Franchise Tax Board's tax audit, among other issues, in Clark County District Court, Las Vegas, Nevada, during the pendency of his California administrative tax protest.

4. The Clark County District Court has issued a protective order in the case of *Gilbert P. Hyatt v. Franchise Tax Board.* I am familiar with the protective order imposed by

2356-0002

the Clark County District Court, Nevada in the case of *Gilbert P. Hyatt v. Franchise Tax Board*. A copy is attached to the Subpoena Duces Tecum as Attachment B.

5. Discovery conducted in the Nevada litigation has resulted in the production, by Mr. Hyatt, of numerous documents and deposition testimony, which are relevant to, or may lead to the discovery of evidence relevant to issues raised by Mr. Hyatt in his California administrative tax protest. The protective order issued in the Nevada litigation precludes Franchise Tax Board from providing information obtained through the Nevada litigation to Franchise Tax Board staff involved in Mr. Hyatt's California administrative tax protest without Mr. Hyatt's consent or the issuance of an administrative subpoena. As more fully explained below, Mr. Hyatt has withheld his consent to the disclosure of those documents to Franchise Tax Board staff. Mr. Hyatt's refusal to release this information has delayed the processing of Mr. Hyatt's California administrative tax protest. Mr. Hyatt's refusal to produce the information is memorialized in Attachments C and D to the Subpoena Duces Tecum.

6. Franchise Tax Board staff assigned to Mr. Hyatt's California administrative tax protest require all documentation identified on Attachment A to the Subpoena Duces Tecum to properly evaluate the California personal income tax issues raised and reach an accurate conclusion concerning Mr. Hyatt's tax and penalty liability, if any.

7. The documents commanded to be produced by the attached Subpoena Duces Tecum are currently under the control of myself, Robert W. Dunn, and these documents are physically stored at the central office of the Franchise Tax Board in Sacramento, California. I have personally reviewed the documents. The documents contain information relevant to, or contain information that might lead to information relevant to, some or of all the issues raised by Mr. Hyatt in his California administrative protest. The documents identified by this Subpoena Duces Tecum relate primarily to factual evidence of Mr. Hyatt's alleged move out of California, witnesses to Mr. Hyatt's alleged move, connections Mr. Hyatt allegedly established in Nevada, connections Mr. Hyatt maintained in California, Mr. Hyatt's motive and intent for that alleged move as well as information concerning amount, character and timing of income Mr. Hyatt received and may have received before, during and after 1991 and 1992.

8. On October 28, 2005 I asked Mr. Hyatt in writing, consistent with the provisions contained within Paragraph 4 of the attached Nevada protective order, to release the documents listed on the description of documents attached to this Subpoena Duces Tecum for consideration in his California administrative protest. (See Attachment C.) In that letter I also reminded Mr. Hyatt, and his counsel, of the fact that on December 31, 2003, the California Court of Appeal, Third Appellate District upheld the propriety of a very similar subpoena issued by Franchise Tax Board in this very case. A copy of that decision is attached hereto as Attachment E.

9. On December 6, 2005 I again asked Mr. Hyatt to release the documents listed on the description of documents attached to this Subpoena Duces Tecum for consideration in his California administrative protest. (See Attachment D.) I informed Mr. Hyatt that a failure to agree to produce the documents at issue by December 14, 2005 would be interpreted as a refusal to produce the documents. Mr. Hyatt did not respond and has failed to agree to voluntarily produce the documents. The vast majority of the documents sought through these letters, and this subpoena, are documents discovered in the Nevada litigation after the production of documents authorized by the California Court of Appeal, Third Appellate District.

10. Documents produced under this Subpoena Duces Tecum to Franchise Tax Board staff for use in Mr. Hyatt's California administrative process will be protected from disclosure in accordance with California law.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 30 January 2006 at Sacramento, CA.

Robert W. Dunn, Esq.

2356-0004

Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 126 of 244

ATTACHMENT A

Page 1 of 2, Attachment A to Administrative Subpoena Duces Tecum, Gilbert P. Hyatt

FTB28903

2356-0005

2356-0005

RJN000613

Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 127 of 244

Page 2 of 2, Attachment A to Administrative Subpoena Duces Tecum, Gilbert P. Hyatt

FTB28904

2356-0006

2356-0006

RJN000614

 STATE OF CALIFORNIA
FRANCHISE TAX BOARD
Legal Department
PO Box 1720
Rancho Cordova, CA 95741-1720
(916) 845-3338 Fax (916) 843-6041

STEVE WESTLY
Chair

JOHN CHIANG
Member

TOM CAMPBELL
Member

October 28, 2005

Via US Mail and Facsimile (without attachments)

Mark A. Hutchison, Esq.
Hutchison & Steffen
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, NV 89145

Regarding: Hyatt v. Franchise Tax Board, Nevada District Court Case No. A 38299 and the California administrative tax protest of Gilbert P. Hyatt, taxable years 1991 and 1992

Dear Mark:

In accordance with Paragraph 4 of the Nevada Protective Order (attached) and the related decision of the California Court of Appeal in this matter (also attached[1]), the Franchise Tax Board (FTB) hereby requests your client's consent to produce the following Nevada litigation documents to California's Protest Hearing Officer for consideration in your client's pending California tax matter:

1. Complete transcripts of the 2005 deposition(s) of Gilbert P. Hyatt designated "Confidential – NV Protective Order" and all associated Exhibits.

2. Complete transcripts of the 2005 deposition(s) of Gregory L. Roth designated "Confidential – NV Protective Order" and all associated Exhibits.

ATTACHMENT C

FTB28917

2356-0007

2356-0007

3. Documents GLR00001 through GLR06684 produced in this matter on July 1, 2005.

4. Documents H16918 through H17158.

5. Documents H17208 through H18375.

6. Documents H18631 through H19283.

7. Documents H20180–H20184, H20233–H20243, H20259, H20277, H20282–H20283, H20285, H20295, H20305, H20307, H20309, H20316, H20321–H20322, H20338, H20341–H20343, H20349, H20351–H20352, H20354–H20357, H20370, H2389, H20391, H20393, H20396–H20400, H20402–H20403, H20431–H20432, H20466–H20689.

8. Documents H25543 through H25559.

9. Documents EC07809 through EC07955.

10. Documents PBTK06278 through PBTK06297.

11. Documents RM0001 through RM 02189.

We currently have all the documents described above in Franchise Tax Board's Sacramento, California office. After receipt of your consent we will provide the documents to the Protest Hearing Officer, located at the same Sacramento, California office, at California's expense. Please respond within 10 days of the date of this letter.

Sincerely,

Robert W. Dunn
Tax Counsel

cc: James W. Bradshaw, Esq., McDonald Carano Wilson LLP
Eric J. Coffill, Esq., Morrison & Foerster LLP

Enclosures (2)

FTB28919

2356-0009

 STATE OF CALIFORNIA
FRANCHISE TAX BOARD
Legal Department
PO Box 1720
Rancho Cordova, CA 95741-1720
(916) 845-3338 Fax (916) 843-6041

STEVE WESTLY
Chair
JOHN CHIANG
Member
MICHAEL C. GENEST
Member

December 6, 2005

Via US Mail and Facsimile

Mark A. Hutchison, Esq.
Hutchison & Steffen
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, NV 89145

Regarding: Hyatt v. Franchise Tax Board, Nevada District Court Case No. A 38299 and the California administrative tax protest of Gilbert P. Hyatt, taxable years 1991 and 1992

Dear Mark:

I received your letter dated November 9, 2005 requesting until November 30, 2005 to complete a review of the documents I listed in my letter to you dated October 28, 2005. Thank you. You mentioned that you would provide a formal response on or before November 30. To date I have not received that response.

Please be advised that I do not intend to alter my document request in response to your review. As I stated in my letter of October 28, I find all the listed documents as relevant to, or as potentially leading to relevant evidence in the California tax matter. Please add the following recently created documents to that list: The deposition transcripts of Caroline Cosgrove, Gregory Roth, Dan Hyatt and the transcripts from the continued deposition of Gilbert Hyatt as they also contain information relevant to, or information potentially leading to relevant evidence in the California tax matter.

I would appreciate a yes or no to my request by next Wednesday, December 14, 2005. I will interpret a failure to respond, or anything other that an unqualified yes, as a "no" answer under Paragraph 4 of the Nevada Court's protective order and I will take the appropriate next step.

Sincerely,

Robert W. Dunn
Tax Counsel

cc: James W. Bradshaw, Esq., McDonald Carano Wilson LLP
Eric J. Coffill, Esq., Morrison & Foerster LLP

ATTACHMENT D.

FTB28920

2356-0010

2356-0010

2 of 4 DOCUMENTS

STATE FRANCHISE TAX BOARD, Plaintiff and Respondent, v. GILBERT P. HYATT, Defendant and Appellant.

C043627

COURT OF APPEAL OF CALIFORNIA, THIRD APPELLATE DISTRICT

*2003 Cal. App. Unpub. LEXIS 12227*

December 31, 2003, Filed

NOTICE: [*1] NOT TO BE PUBLISHED IN OFFICIAL REPORTS CALIFORNIA RULES OF COURT, RULE 977(a), PROHIBITS COURTS AND PARTIES FROM CITING OR RELYING ON OPINIONS NOT CERTIFIED FOR PUBLICATION OR ORDERED PUBLISHED, EXCEPT AS SPECIFIED BY RULE 977(B). THIS OPINION HAS NOT BEEN CERTIFIED FOR PUBLICATION OR ORDERED PUBLISHED FOR THE PURPOSES OF RULE 977.

PRIOR HISTORY: Sacramento. Super. Ct. No. 02CS01582.

DISPOSITION: The order compelling Hyatt to comply with State Franchise Tax Board's administrative subpoena is affirmed. State Franchise Tax Board shall recover its costs on appeal

JUDGES: SIMS, J. We concur: BLEASE, Acting P.J., NICHOLSON, J.

OPINIONBY: SIMS

OPINION:

ATTACHMENT E

FTB28921

Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 133 of 244

2003 Cal. App. Unpub. LEXIS 12227, *

Page 2

FTB28922

2356-0012

2356-0012

RJN000620

Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 134 of 244

Page 3

2003 Cal. App. Unpub. LEXIS 12227, *

FTB28923

2356-0013

RJN000621

Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 135 of 244

2003 Cal. App. Unpub LEXIS 12227, *

Page 4

FTB28924

2356-0014

RJN000622

Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 136 of 244

2003 Cal. App. Unpu

Page 5

FTB28925

2356-0015

2356-0015

RJN000623

Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 137 of 244

2003 Cal. App. Unpub. LEXIS 122

Page 6

FTB28926

2356-0016

RJN000624

Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 138 of 244

Page 7

2003 Cal. App. Unpub. LEXIS 12227, *

FTB28927

2356-0017

2356-0017

RJN000625

Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 139 of 244

2003 Cal. App. Unpub. LEXIS 12227, *

Page 8

FTB28928

2356-0018

2356-0018

RJN000626

Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 140 of 244

2003 Cal. App. Unpub. LEXIS 12227, *

Page 9

DISPOSITION

The order compelling Hyatt to comply with State Franchise Tax Board's administrative subpoena is affirmed. State Franchise Tax Board shall recover its costs on appeal.

SIMS, J.

We concur:

BLEASE, Acting P.J.

NICHOLSON, J.

FTB28929

2356-0019

2356-0019

RJN000627



STATE OF CALIFORNIA
FRANCHISE TAX BOARD
Legal Department
PO Box 1720
Rancho Cordova, CA 95741-1720
(916) 845-3338 Fax (916) 843-6041

JOHN CHIANG
Chair
BETTY T. YEE
Member
MICHAEL C. GENEST
Member

January 19, 2007

Via US Mail and Facsimile (without attachments)

Mark A. Hutchison, Esq.
Hutchison & Steffen
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, NV 89145

Regarding: Hyatt v. Franchise Tax Board, Nevada District Court Case No. A 38299 and the California administrative tax protest of Gilbert P. Hyatt, taxable years 1991 and 1992

Dear Mark:

In accordance with Paragraph 4 of the Nevada court issued protective order (attached) and the related decision of the California Court of Appeal in this matter (also attached[1]), the Franchise Tax Board (hereinafter FTB) hereby requests your client's consent to produce the following Nevada litigation documents to California's Protest Hearing Officer for consideration in your client's pending California tax matter:

Deposition Transcripts and Exhibits

1. Complete transcripts[2] of the 2006 depositions of **Gilbert P. Hyatt** designated "Confidential – NV Protective Order" by Mr. Hyatt's counsel and all associated deposition Exhibits.

[2] References to transcripts include the video and/or DVD recording of the deposition session.

2. Complete transcripts of the 2006 deposition(s) of **Grace J. Jeng** designated "Confidential – NV Protective Order" and all associated Exhibits.

3. Complete transcripts of the 2006 deposition(s) of **Michael W. Kern** designated "Confidential – NV Protective Order" and all associated Exhibits.

4. Complete transcripts of the 2006 deposition(s) of **Eugene G. Cowan** designated "Confidential – NV Protective Order" and all associated Exhibits.

5. Complete transcripts of the 2006 deposition(s) of **Ronald G. Schuchard** designated "Confidential – NV Protective Order" and all associated Exhibits.

6. Complete transcripts of the 2006 deposition(s) of **Todd L. Bice** designated "Confidential – NV Protective Order" and all associated Exhibits.

7. Complete transcripts of the 2006 deposition(s) of **Kenneth A. Woloson** designated "Confidential – NV Protective Order" and all associated Exhibits. At his deposition Mr. Woloson testified about Mr. Hyatt's and Ms. Jeng's business entities.

8. Complete transcripts of the 2006 depositions of **Daniel J. Hyatt** designated "Confidential – NV Protective Order" and all associated Exhibits.

9. Complete transcripts of the 2006 deposition(s) of **Barry T. Lee** designated "Confidential – NV Protective Order" and all associated Exhibits.

10. Complete transcripts of the 2006 deposition(s) of **Roger McCaffrey** designated "Confidential – NV Protective Order" and all associated Exhibits.

11. Complete transcripts of the 2006 deposition(s) of **Dale M. Fiola** designated "Confidential – NV Protective Order" and all associated Exhibits.

12. Complete transcripts of the 2006 deposition(s) of **Vince D. Turner** designated "Confidential – NV Protective Order" and all associated Exhibits. At his

deposition Mr. Turner provided information relating to Mr. Hyatt's 1991 California tax return and his alleged change of domicile and residency.

13. Complete transcripts of the 2006 deposition(s) of **Monty E. Willey** designated "Confidential – NV Protective Order" and all associated Exhibits.

Documents

14. GLR 06685 – GLR 07568. These documents marked "Confidential – NV Protective Order" by Mr. Hyatt include several agreements and draft agreements between Mr. Hyatt and Philips Corporation. These documents contain information relevant to, or that could lead to information relevant to, audit issues concerning Mr. Hyatt's 1991 California tax return and/or subsequent California tax obligations.

15. Documents PBTK 06298 through PBTK 06385. These document marked "Confidential – NV Protective Order" by Mr. Hyatt include Mr. Hyatt's 1991 and 1992 amended U.S. individual tax returns, associated schedules and statements.

16. Documents WOLO 00001 – WOLO 00821. These documents include a variety of Mr. Hyatt's corporate and business records, public filings, lists of officers and directors, and the like.

17.

We currently have all the documents described above in Franchise Tax Board's Sacramento, California office. After receipt of your written consent we will provide the documents to the Protest Hearing Officer, located at the same Sacramento, California office, at California's expense. Please respond within 14 days of the date of this letter. I will interpret a failure to respond as a "no" answer, meaning Mr. Hyatt does not consent to releasing the above-described documents to California's Protest Hearing Officer in his pending tax matter. In that case I will initiate the administrative subpoena process described in Paragraph 4 of the Nevada court issued protective order.

Sincerely,

Robert W. Dunn
Tax Counsel

cc: James W. Bradshaw, Esq., McDonald Carano Wilson LLP
Eric J. Coffill, Esq., Morrison & Foerster LLP

Attachments (2)



STATE OF CALIFORNIA
**FRANCHISE TAX BOARD**
**Legal Department**
PO Box 1720
Rancho Cordova, CA 95741-1720
(916) 845-3338 Fax (916) 843-6041

JOHN CHIANG
Chair
BETTY T. YEE
Member
MICHAEL C. GENEST
Member

February 14, 2007

Via US Mail and Facsimile

Mr. Donald Kula, Esq.
Bingham McCutchen LLP
Suite 4400
355 South Grand Avenue
Los Angeles, CA 90071-3106

Regarding: Hyatt v. Franchise Tax Board, Nevada District Court Case No. A 38299 and the California administrative tax protest of Gilbert P. Hyatt, taxable years 1991 and 1992

Dear Mr. Kula:

Thank you for your February 1, 2007 letters. By "letters" I'm referring to both the letter to myself and the letter to Jim Bradshaw, same date. I appreciate your client's consent under the Paragraph 4 procedure in the Nevada court's protective order to release the documents identified in categories 1 through 18, excepting certain portions of the Ms. Jeng, Mr. Lee and Mr. McCaffrey depositions to be identified by you on February 15, 2007. I will begin the process of making available to the protest hearing officer those documents upon which we agree. For the record, those documents or depositions include:

1. Complete transcripts of the 2006 depositions of **Gilbert P. Hyatt** designated "Confidential – NV Protective Order" by Mr. Hyatt's counsel and all associated deposition Exhibits.
3. Complete transcripts of the 2006 deposition(s) of **Michael W. Kern** designated "Confidential – NV Protective Order" and all associated Exhibits.
4. Complete transcripts of the 2006 deposition(s) of **Eugene G. Cowan** designated "Confidential – NV Protective Order" and all associated Exhibits.
5. Complete transcripts of the 2006 deposition(s) of **Ronald G. Schuchard** designated "Confidential – NV Protective Order" and all associated Exhibits.
6. Complete transcripts of the 2006 deposition(s) of **Todd L. Bice** designated "Confidential – NV Protective Order" and all associated Exhibits.
7. Complete transcripts of the 2006 deposition(s) of **Kenneth A. Woloson** designated "Confidential – NV Protective Order" and all associated Exhibits.
8. Complete transcripts of the 2006 depositions of **Daniel J. Hyatt** designated "Confidential – NV Protective Order" and all associated Exhibits.
11. Complete transcripts of the 2006 deposition(s) of **Dale M. Fiola** designated "Confidential – NV Protective Order" and all associated Exhibits.
12. Complete transcripts of the 2006 deposition(s) of **Vince D. Turner** designated "Confidential – NV Protective Order" and all associated Exhibits.

Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 147 of 244

Response to February 1, 2007 Letter(s) from Mr. Donald Kula, Esq., regarding third document request.
February 14, 2007
Page 2

13. Complete transcripts of the 2006 deposition(s) of **Monty E. Willey** designated "Confidential – NV Protective Order" and all associated Exhibits.
14. GLR 06685 – GLR 07568.
15. Documents PBTK 06298 through PBTK 06385.
16. Documents WOLO 00001 through WOLO 00821.
17. Documents H-IRS 00001 through H-IRS 01267.
18. Documents labeled 5/12/06 IRS Letters 00001 through 5/12/06 IRS Letters 00109.

FTB28936

2358-0002

RJN000634

Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 148 of 244

Response to February 1, 2007 Letter(s) from Mr. Donald Kula, Esq., regarding third document request.
February 14, 2007
Page 3

FTB28937

2358-0003

RJN000635

Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 149 of 244

Response to February 1, 2007 Letter(s) from Mr. Donald Kula, Esq., regarding third document request.
February 14, 2007
Page 4

FTB28938

2358-0004

RJN000636

Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 150 of 244

Response to February 1, 2007 Letter(s) from Mr. Donald Kula, Esq., regarding third document request.
February 14, 2007
Page 5

In summary, thank you for your letter to me of February 1, 2007 releasing 15 of the 18 items I identified in my letter to you dated January 19, 2007. Those materials are being made available to the protest hearing officer. I await receipt of the redacted portions of items #2, #9 and #10 on February 15, 2007. However, as I mentioned above, I object strongly to any redactions of these three transcripts because all the information contained therein is relevant to the administrative tax matter, or could lead to relevant information, and because any redaction would contravene the previous Third District Court of Appeal decision. FTB reserves the right to subpoena these transcripts in their unredacted form. For the record, I strongly disagree with all your comments concerning FTB's alleged motive for requesting the

FTB28939

2358-0005

RJN000637

Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 151 of 244

Response to February 1, 2007 Letter(s) from Mr. Donald Kula, Esq., regarding third document request.
February 14, 2007
Page 6

documents in categories 1 through 18 in my January 19, 2007 letter. There was no "spin" or improper purpose in FTB's document request. Please refrain from such comments in the future. Your comment that these documents are somehow not relevant to the tax issues pending before the FTB is completely without merit. Also, I do not agree with your assumption that any material other than that designated by Mr. Hyatt is unavailable to the protest hearing officer. Mr. Hyatt can forward any information to the protest hearing officer he so desires. Lastly, FTB does not and will not assume some of Mr. Hyatt's agents are more informed than others.

Sincerely,

Robert W. Dunn
Tax Counsel

cc: James W. Bradshaw, Esq., McDonald Carano Wilson LLP (via fax)
Mark Hutchison, Esq., Hutchison & Stephen LLP (via fax)
Eric J. Coffill, Esq., Morrison & Foerster LLP (via fax)

FTB28940

2358-0006

RJN000638





Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 152 of 244

Perkins
Coie

1620 - 26th Street
Sixth Floor, South Tower
Santa Monica, CA 90404-4013
PHONE: 310.788.9900
FAX: 310.788.3399
www.perkinscoie.com

RECEIVED
MAY 22 2007
SACRAMENTO LEGAL
FRANCHISE TAX BOARD

Donald J. Kula
PHONE: (310) 788-3212
EMAIL: DKula@perkinscoie.com

May 17, 2007

**VIA FACSIMILE AND MAIL**

Robert W. Dunn, Esq.
Scott DePeel, Esq.
Franchise Tax Board
Legal Department
P.O. Box 720
Rancho Cordova, CA 95741-1720

**Re: *Gilbert P. Hyatt v. Franchise Tax Board*, Clark County (Nevada) Case No. A 382999 and *Administrative Protest of Gilbert P. Hyatt*, taxable years 1991 and 1992**

Dear Bob and Scott:

I received your letter via facsimile this morning regarding the deposition transcript of Ms. Grace Jeng.

Mr. Hyatt has not and does not waive his designation of the redacted Grace Jeng materials as protected under the Nevada protective order. The FTB may not eviscerate the terms of the Nevada protective order by unilaterally suggesting that Mr. Hyatt has waived his rights that are specifically stated under the Nevada protective order. Mr. Hyatt also understands that Ms. Jeng strongly objects based on her privacy rights to the FTB supplying the materials identified above to the protest officer. Ms. Jeng's attorney will separately address Ms. Jeng's position.

In short, Mr. Hyatt is still considering his position relative to Ms. Jeng's deposition transcripts and exhibits and Mr. Hyatt has not waived any rights and has not waived his designation of these

64847-0001/LEGAL13246387.1

ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DENVER · LOS ANGELES · MENLO PARK
OLYMPIA · PHOENIX · PORTLAND · SAN FRANCISCO · SEATTLE · SHANGHAI · WASHINGTON, D.C.
Perkins Coie LLP and Affiliates

FTB28941

2359-0001

RJN000639

Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 153 of 244

Robert W. Dunn, Esq.
Scott DePeel, Esq.
May 17, 2007
Page 2

materials under the Nevada protective orders. The FTB is not free to and does not have Mr. Hyatt's permission to release these materials to the protest officer.

Sincerely yours,

Donald J. Kula

DJK:sej
cc: Peter C. Bernhard, Esq. (via fax)
Mark Hutchison, Esq. (via fax)
James Bradshaw, Esq. (via fax)
Eric Coffill, Esq. (via fax)

99999-9039/LEGAL13207746.1
64847-0001/LEGAL13246387.1

FTB28942

2359-0002

RJN000640

Hyatt, Gilbert - 1992
7150053859256163

STATE OF CALIFORNIA
**FRANCHISE TAX BOARD**
**Legal Division**
PO Box 1720
Rancho Cordova, CA 95741-1720
(916) 845-6041 Fax (916) 845-3648

JOHN CHIANG
Chair

BETTY T. YEE
Member

MICHAEL C. GENEST
Member

November 1, 2007

Morrison & Foerster LLP
Attn: Eric J. Coffill, Esq.
400 Capitol Mall, Suite 2600
Sacramento, CA 95814-4428

Re: Protest of Gilbert P. Hyatt
Taxable Years 1991 and 1992

Dear Mr. Coffill:

As you know, our Ms. Cody Cinnamon, who has been the protest hearing officer since around May 2000, retired at the end of July 2007. In anticipation of her retirement, Ms. Cinnamon concluded her review of the above-captioned matter and made recommendations as to the disposition of all of the issues in dispute. With her retirement, I was asked to review her recommendations in the capacity of an acting supervising attorney, provide management with that review, and provide you with a determination letter, which is based upon Ms. Cinnamon's recommendations. This determination letter is not meant to be an exhaustive discussion of the facts, arguments and law, but to put the taxpayer on notice of the protest hearing officer's determination and the general basis for it.

For taxable year 1991, the Franchise Tax Board issued a Notice of Proposed Assessment (NPA) on April 23, 1996 assessing additional tax in the amount of $1,876,471.00 and an accuracy related penalty in the amount of $1,407,353.25. The taxpayer timely protested the NPA around May 1996.

For taxable year 1992, the Franchise Tax Board issued an NPA on August 14, 1997 assessing additional tax in the amount of $5,669,021.00 and a fraudulent failure to file penalty in the amount of $4,251,765.75. The taxpayer timely protested the NPA around October 1997.

After careful review of the files and the information presented prior to, at and after the protest hearing, the protest hearing officer has recommended that the Notices of Proposed Assessment be affirmed.

**FTB28751**

Facts

The audit determination was based upon findings that include, but are not limited to, the following:

- Gilbert P. Hyatt, Taxpayer (TP), filed part year California resident return for 1991 and did not file a California return for 1992
- TP reported only $600,000 of California source income for 1991
- TP is a scientist and inventor who held a number of patents issued by the U.S. Patent Office
- TP was awarded a particularly valuable patent by the U.S. Patent Office in July 1990
- In 1991 and 1992 TP entered into patent licensing agreements with a number of large electronics firms, under which he was paid substantial amounts
- TP alleged that he left California on September 24, 1991
- TP alleged that he became a Nevada resident on September 24, 1991
- TP alleged that he sold his residence at 7841 Jennifer Circle, La Palma, California, which he had owned since August 5, 1986, on October 1, 1991 to Grace Jeng
- The La Palma residence was sold without benefit of escrow and there are no documents, other than the title and the promissory note to evidence the sale
- Grant Deed to the La Palma home was date signed October 1, 1991, but was not recorded until June 16, 1993
- While it is alleged that the Grant Deed was notarized on October 1, 1991, the truth of the matter is that the notarization was backdated and the actual notarization date is June 10, 1993
- TP alleged that he rented an apartment at the Wagon Trails Apartments, 3225 Pecos Avenue (#237), Las Vegas, NV from November 1, 1991 to April 1992,
- TP's residence from September 24, 1991 to November 1, 1991 is unknown
- TP alleged that he moved his personal belongings to Las Vegas in a trailer owned by himself or his son
- On FTB Form 3805F, TP alleged that his occupation was pursuing patent applications with the U.S. Patent Office and that he worked out of the Pecos Avenue apartment
- The rental arrangements for the Wagon Trails Apartments were made by Grace Jeng, with rental documents date signed by TP on October 8, 1991
- The Wagon Trails Apartments had a substantial low income tenant population
- TP was not routinely observed at the Wagon Trails Apartments by management or other tenants, and the apartment did not appear to have been continually occupied during the rental period
- TP's thirty days notice to terminate his occupancy of the Wagon Trails apartment states that he bought a house and was moving back to California
- TP purchased a residence in Las Vegas at 7335 Tara Avenue in April 1992
- The Tara Avenue residence was purchased in the name of the Kern Trust

FTB28752

- Mike Kern was the trustee of the Kern Trust and also the TP's accountant
- Auditor alleges, based upon personal observation, that as of 1995 the Tara Avenue property was not landscaped, the driveway was unfinished and there were no security devices on the property
- The utility services for the Tara Avenue residence were all opened under the names of Grace Jeng or Mike Kern
- TP obtained a Nevada driver's license on November 27, 1991 but did not surrender his California license which was valid until March 26, 1993
- TP registered to vote in Nevada in November 1991, but was not registered to vote in California
- TP joined a religious organization in Nevada in November 1991, but had no such religious affiliation in California
- TP established bank accounts in Las Vegas at California Federal Bank, a bank with which he had an established banking relationship in California
- TP had dental work performed by a Dr. S. Hall in Las Vegas in April 1992
- TP's 1977 Toyota was registered in California until March 1993
- TP alleged he was acquainted with some Nevada political figures that were aware of his change of residence
- TP had surgery and was hospitalized in California in February 1992
- TP made multiple visits to the Los Alamitos Medical Center, the Los Alamitos Imaging Center, and two doctors in California in 1992
- Auditor interviewed neighbors who stated that they regularly saw TP at the La Palma residence in 1991 and 1992
- TP used various legal, accounting and other services in California in 1991 and 1992
- TP maintained investment accounts in California in 1991 and 1992
- TP maintained bank accounts in California in 1991 and 1992
- TP maintained post office boxes in California in 1991 and 1992
- TP was the sole owner of Digital Neutronics Corporation (DNC), a California corporation, which remained active in California in 1991 and 1992
- Auditor interviewed TP's family members who alleged that TP continued to live at the La Palma residence after October 1991
- To the extent that bank checking and credit card information was made available by TP, it indicates an ongoing presence in California in 1991 and 1992
- TP used various office-type equipment and services (copier, copier services, secretarial services, etc.) in California in 1991 and 1992
- TP's family lived in California in 1991 and 1992
- TP's key associates continued to live in California in 1991 and 1992

At protest, the taxpayer's representative, Mr. Eugene G. Cowan of Riordan & McKinzie alleged the following:

- TP surrendered his California driver's license to Nevada in November 1991
- TP moved to Nevada on September 26, 1991 with the intent to reside there permanently
- TP wanted a more private and secure place to work and live
- TP had respiratory problems and needed a drier, healthier climate
- TP intended to build a new business in a faster growing, more supportive business environment
- TP visited Las Vegas in October/November 1990 (Comdex trade show) to explore the area and soon after he began preparing for his move to Las Vegas
- TP had no California ties or connections that would inhibit his move to Las Vegas
- TP closed or essentially deactivated all of his California bank accounts and California charge accounts prior to his move to Las Vegas
- Law firms in New York, Virginia and Texas were doing the majority of TP's legal work
- Since the TP was no longer going to be living in California, there was no need (except for convenience, familiarity with California law and old relationships) to choose to continue with California counsel, accountants and the like
- About July 1991, TP established a relationship with NV Philips (Netherlands) and its two U.S. subsidiaries with regard to his patents
- TP sold his California house [La Palma, CA] to his associate, Grace Jeng, on October 1, 1991
- TP had significant income in July 1991 and he opened a money market account with the Franklin Mutual Fund family
- TP took a six month lease on an apartment at Wagon Trails Apartments in Las Vegas, Nevada from which he began his search for a house to purchase
- TP immediately opened utility, telephone and bank accounts, rented a post office box and in November 1991 joined a religious organization in Las Vegas
- TP contemporaneously filed change of address notices from his California addresses to his Las Vegas address
- TP obtained a Nevada driver's license, registered to vote in Nevada, registered his automobile in Nevada and purchased a new automobile in Nevada
- TP hired Percy, Bowler, Taylor and Kern [Nevada] to do substantially all of his CPA work and became friends with partner Michael Kern
- Between December 1991 and February 1992, TP made approximately ten bona fide offers on Las Vegas residential properties
- Because of his desire for privacy, TP formed a Las Vegas trust to purchase his house
- The house TP purchased in Las Vegas was nearly brand new, had three separate security systems and a remote security monitoring
- Immediately after moving into the Las Vegas house, TP planned landscaping and construction of out-buildings, had over 500 cubic yards of top soil and fill dirt

trucked in, and hired a backhoe crew for three weeks of work to level and fill the property

- Just before leaving for Las Vegas in September 1991, TP's doctors detected an eye problem and another health issue that required surgery in California in February 1992
- Since moving to Las Vegas, TP has visited California only for short periods for medical exams and operations, business meetings, professional conferences, to host Russian dignitaries, to sign papers for the sale of his house, and to use California airports to fly to and from out of state locations
- TP wrote many checks during the time period in issue to pay for personal and professional services, for the benefit of family members that did not reside with him, and for other services that should properly be characterized as Nevada activities rather than California activities
- The check TP wrote for the services of Ron Schuchard (sic) was written after April 3, 1992
- Credit card charges identified on credit card statements are an accurate reflection only as to the amount of the charges; they are not reliable for determining the identity of the person making the charge, or location or purpose for the charge
- TP was not registered to vote in California but did register to vote in Nevada after he moved
- The Grant Deed to the La Palma [California] property was executed and delivered to Grace Jeng on October 1, 1991
- TP was hospitalized in California for 10 days in February 1992
- TP's house hunting activities in Las Vegas, Nevada began in September 1991 and he began making purchase offers in December 1991
- TP is the sole account holder of each of the California Federal Bank accounts
- The California post office box renewals were by the new owners of the boxes and not the TP
- Alleged 1992 NPA Error –

TP alleges that there is an error in the 1992 NPA of including income received after April 2, 1992. The NPA alleges TP received $48,780,951 from Philips on January 15, 1992. TP alleges the $48,780,951 is the total amount that he received from Philips in 1992 and includes amounts received after April 2, 1992.

Per October 10, 1997 letter, page 3:

"(notwithstanding Mr. Hyatt's contention that no amount is owed for 1992), the alleged 1992 apportionment factor and tax liability should have been determined as follows:

| | |
|---|---|
| Philips Payment 1/14/92 | $13,866,465.55 |
| Philips Payment 1/15/92 | 10,000,000.00 |
| Philips Payment 2/12/92 | 52,861.40 |
| Oki Payment 2/3/92 | 2,975,787.00 |

FTB28755

| | |
|---|---|
| Less proration of Schedule C Expenses (25%) | (161,552.00) |
| Revised Adjusted Gross Income | $26,895,113.95 |

Revised California adjusted gross income divided by revised total adjusted gross income

| | | | |
|---|---|---|---|
| $26,895,113.95 | / | $84,973,440.00 | .3165 |

| | |
|---|---|
| Tax to be apportioned | $ 9,336,332.00 |
| Apportionment factor | .3165 |
| Next tax | $ 2,955,061.00 |
| Penalties: Fraudulent Failure to File | $ 2,216,296.00 |
| FTB Alleged Total Tax Liability | $ 5,171,357.00 |

Please revise the 1992 NPA accordingly."

Also at protest, the taxpayer's representative, Mr. Eric Coffill of Morrison & Foerster alleged the following:

The May 31, 2001 Protest Letter addressing 1991 alleges, inter alia, the following –

- During the spring and summer of 1991, TP made various trips to Las Vegas and he looked at houses to purchase and explored the business climate
- In July 1991, TP told Jeng he was going to list his house with a realtor and she saw it as a good opportunity; she discussed with Barry Lee and they convinced TP to sell to her
- In December 1990, TP signed an agreement with Mahr Leonard Management Company (MLMC) to attempt to license his patents to certain Japanese companies but it failed to get any licenses
- By agreement dated July 24, 1991, U.S. Philips took fiduciary responsibility for licensing TP's patents, to provide payments to him for up to 10 years, and to pay for and manage patent litigation to enforce twenty-three of his patents
- Prior to September 1991, TP told various people he was planning to move to Las Vegas including Caroline Cosgrove, Grace Jeng, Barry Lee and Dan Hyatt
- While the interest of Ms. Jeng in buying his house was particularly enticing to TP, for some reason he was reluctant to sell his house to her so she asked Barry Lee to help her persuade him to sell - - the house was a fixer-upper and she agreed to an "as is" sale for a reduced selling price
- TP had been harassed by frivolous court actions by his siblings

FTB28756

- During the summer of 1991, TP gave or threw away much of his personal property
- About mid-September 1991, Dan Hyatt loaned TP his utility trailer to assist him in his move to Las Vegas
- In September 1991, Barry Lee agreed to store some of TP's possessions and they were moved to Mr. Lee's home
- On September 5, 1991, TP contacted attorney Roger McCaffrey regarding the sale of his home and indicated that Ms. Jeng was concerned for her privacy and did not want information disclosed in a public record – McCaffrey indicated that her privacy could be protected by not recording the sale of the house and that an escrow was not required to transfer title to the property
- Before TP moved into the Wagon Trails Apartments, he stayed at the Continental Hotel in Las Vegas from September 26 through October 14, 1991
- On September 21, 1991, TP was house hunting in Las Vegas and walked through four residences, and another residence on September 25
- On September 30, 1991, TP met with McCaffrey and his associate, attorney Bailey, who gave him additional advice on selling his house and documents to use in the sale
- By October 1, 1991, the date of the sale of the La Palma house, TP had vacated the house and Ms. Jeng moved in that evening
- TP gave Ms. Jeng the deed and the keys on October 1, 1991
- With regard to the utilities, Ms. Jeng asked TP to let her transfer the services rather than have him close his utilities accounts
- On October 8, 1991, TP leased an apartment and paid the deposit at the Wagon Trails Apartments in Las Vegas
- On October 11, 1991, TP drove from Las Vegas to Placentia, California to celebrate Ms. Cosgrove's birthday
- On October 13, 1991, TP signed a supplemental agreement on the Wagon Trails apartment
- On October 21, 1991, TP signed an apartment security acknowledgment and release for the Wagon Trails apartment
- In October 1991, Ms. Jeng was personally involved in purchasing furniture for TP's Wagon Trails apartment
- On October 21, 1991, TP filed some change of address forms with the U.S. Post Office, to change from California to Las Vegas
- On October 15, 1991, while on a visit to Virginia, TP was provided with a potential license agreement to be offered to Fujitsu which contained his former California address which he signed – he had no real expectation that Fujitsu would sign
- In November 1991, TP was provided with a potential license agreement to be offered to Matsushita which contained his former California address which he signed – but complained that the address was wrong
- In December 1991, TP asked Barry Lee to assist him in some of his work and on December 28 sent him a check for $250,000 to purchase equipment to set up an R&D lab

FTB28757

- TP rented a car from Allstate on December 2 and 3, 1991 in Las Vegas
- On December 12, 1991, TP made an offer to purchase a residence at Pheasant Ridge, Las Vegas
- On January 1, 1992, TP made an offer to purchase a residence at Buffalo Drive, Las Vegas
- On December 12, 1991, TP obtained a $20,000 renter's insurance policy for his Wagon Trails apartment from State Farm Insurance
- On December 12, 1991, TP made an offer to purchase a residence at Palmyre Avenue, Las Vegas
- On December 16, 1991, TP made an offer to purchase a residence at 7335 Tara Avenue, Las Vegas
- On December 16, 1991, TP made a counter offer to purchase a residence at Palmyre Avenue, Las Vegas
- On December 16 – 19, 1991, TP rented an automobile from Allstate in Las Vegas to drive to Santa Ana, California for a court hearing
- On December 19, 1991, TP received a counter offer on the Tara property and responded
- On December 21 – 22, 1991, TP made an offer to purchase a residence at South Miller Lane, Las Vegas
- On October 25, November 22, December 12, 1991, and January 27, 1992, TP opened bank accounts in Las Vegas
- All of TP's California bank accounts were inactive and were in the process of being closed
- On February 10, 1992, TP cancelled his homeowner's exemption on the La Palma, California house which states "did not occupy the property as my principle residence as of 12:01 AM March 1, 1992
- In 1991, TP severed his relationship with the Loeb & Loeb law firm (Los Angeles, California) and closed his account
- TP reported the interest income from the Jeng promissory note (La Palma house purchase) on his 1991 California return
- Ms. Jeng hired and began paying for a gardener at the La Palma house beginning in November 1991
- TP did not have access to the La Palma house after October 1, 1991
- TP was not a millionaire when he leased the Wagon Trails apartment
- All of the checks used to pay for the Wagon Trails apartment were drawn on Las Vegas bank accounts
- TP rented the Wagon Trails apartment in the wintertime and the swimming pool is unheated in the wintertime so not seeing him at the pool would be understandable, particularly given his health concerns
- TP is a careful person who treats the property of others with respect, which accounts for the good condition of the Wagon Trails apartment when he moved out
- The Wagon Trails Apartments was a private, nicely landscaped and well kept apartment complex in 1991

**FTB28758**

- Only twenty percent of the Wagon Trails Apartments' residents were HUD (low income) residents
- TP's thirty days notice to terminate his occupancy of the Wagon Trails apartment does not state that he bought a house and was moving back to California
- Those who provided affidavits [Priscilla Maystead (former wife), Michael Hyatt (brother) and Beth Hyatt (daughter)] were estranged from TP since at least 1990 and had no actual knowledge of his affairs during the relevant time period
- Ms. Jeng was never at any family events with Ms. Maystead, so she could not have met Ms. Jeng at family events
- TP has never received royalties from Intel and he has never licensed to Intel
- TP did not do consulting work since the 1980's
- Michael Hyatt is a convicted felon [*People v. Hyatt* (1971) 18 Cal.App.3d 618, 623]
- As of 1991, TP still did not know whether he would be receiving any new patent income or in what amounts
- The July 1991 Philips agreement anticipated extensive patent litigation and provided up to ten years support for TP until licensing income would be received
- The licensing agreements continue to rely on California law in the December 1991 Sony and NEC agreements even though the agreements expressly state the TP's Las Vegas address
- TP tried to license his patents to various companies for decades without success
- TP paid fees of 57.5% (the Philips 50% fee plus half of the MLMC 15% fee) plus half of the Philips expenses instead of just a 15% fee, because he did not know that MLMC was ultimately going to succeed in licensing his patents
- TP did not license a Japanese company in July 1991, he signed an agreement with Philips in July 1991
- TP disputes that he or his representatives ever said he was afraid of being kidnapped – neither the La Palma house nor the Tara Avenue house had security gates
- Purchasing a house in a trust and opening utilities in the name of the trust is a commonly accepted method, recommended by estate planners for maintaining privacy
- During the relevant time period, TP did not pay any California utilities bills
- TP and Ms. Jeng worked together but did not live together
- The 1977 Toyota was not registered in Nevada until around May 1992 because it could not pass Nevada smog test
- TP purchased a 1992 Toyota in Nevada in March 1992 and registered it in Nevada
- TP did not maintain any post office boxes in California during the relevant time period – the renewal of the Cerritos box was made by Ms. Jeng because she had the box transferred into her name
- The Matsushita and Fujitsu agreements were not prepared or negotiated by TP but were prepared by Philips and negotiated by MLMC – TP had no say in deciding the law to which the agreements would be subject – it was Philips availing itself of the right of any company to select the body of law to which the agreement will be subject

**FTB28759**

- The trust account at Union Bank in Los Angeles is the trust account of the law firm selected by Philips and paid for by Philips to receive the license fee – it was not the TP's account
- TP fully cooperated with the auditor and even provided information that the auditor had not requested
- The checks cashed by Ms. Jeng were made out to cash and were for petty cash for TP – Ms. Jeng gave the cash to TP
- All signatures on the checks are TP's signatures
- The documentation provided shows that from September 24 to October 10, 1991, TP was living in hotels and stayed in the Continental Hotel through October 14, 1991 – TP started the rental at Wagon Trails Apartments at the time he expected to arrive back from his business trips
- TP did not visit family during the relevant time period

The February 2, 2001 Protest Letter addressing 1992 added, inter alia, the following –

- On January 4, 1992, TP made a counter offer to purchase the residence at South Miller Lane, Las Vegas
- On January 7, 1992, TP made an offer to purchase a residence at South Buffalo Drive, Las Vegas through Walter Shoemaker
- On January 8, 1992, TP made another counter offer to purchase a residence at West Palmyra, Las Vegas
- On January 22, 1992, TP made another counter offer to purchase a residence at West Palmyra, Las Vegas
- On January 23, 1992, TP made an offer to purchase a residence at Palm Canyon Court, Las Vegas
- On February 3, 1992, TP made his second offer to purchase a residence at Tara Avenue, Las Vegas
- On February 3, 1992, TP received a counter offer to purchase the residence at Tara Avenue, Las Vegas
- During February 11 – 21, 1992, TP stayed in a hospital in California (Los Amalitos Medical Center) for cancer surgery
- On February 28, 1992, TP made an offer to purchase a residence at LaTour Court, Las Vegas
- On March 2, 1992, TP made an offer to purchase a residence at Appleblossom Circle, Las Vegas through Walter Shoemaker
- On March 6, 1992, TP made an offer and a counter offer to purchase a residence at Miller Lane, Las Vegas through Walter Shoemaker
- On March 12 and 14, 1992, TP made a counter offer to purchase a residence at Tara Avenue, Las Vegas
- On March 15, 1992, TP made an offer to purchase a residence at Pleasant Ridge, Las Vegas
- On March 16, 1992, TP opened escrow with Minnesota Title in Las Vegas on the residence at 7335 Tara Avenue, Las Vegas, NV

- On March 19, 1992, TP purchased a new 1992 Toyota Celica from Toyota West of Las Vegas
- On March 19, 1992, TP met with Minnesota Title escrow officer in Las Vegas
- On March 30, 1992, TP met again with Minnesota Title escrow officer in Las Vegas
- On March 31, 1992, TP met with a home inspector and the seller at the Tara Avenue property for a home re-inspection, after the initial inspection that was performed on March 19
- On April 2, 1992, TP met with seller at the Tara Avenue, Las Vegas residence
- On April 2, 1992, TP rented a post office box near the Tara Avenue, Las Vegas residence
- On April 3, 1992, TP moved into the Tara Avenue, Las Vegas residence

Additional facts will be discussed in the succeeding paragraphs.

After hearing the taxpayer's arguments at the protest hearings held in September and October 2000, and considering all of the evidence made available to the protest hearing officer, the protest hearing officer has made determinations on all of the issues in dispute.

Issue: Residency

Hyatt (DOB 3/26/1938) first came to California in 1954, resided and was domiciled in California from 1954 to some date between October 1991 and the end of 1992. At audit it was determined that Hyatt changed his domicile from California to Nevada on April 3, 1992, when he purchased the Tara Avenue home in Las Vegas, Nevada.

Hyatt alleges that he changed his residence and domicile to Nevada around September 24, 1991 when he moved himself to Las Vegas, took up residence in the Continental Hotel (September – October), sold his La Palma residence to Ms. Jeng (October 1, 1991), took up residence at the Wagon Trails Apartments in Las Vegas (October 1991 to April 1992), then purchased the Tara Avenue, Las Vegas home in April 1992.

The protest hearing officer found significant problems with these allegations.

Hyatt had an outstanding home mortgage on the La Palma, California house and did not pay off the $57,399.28 mortgage balance to Home Savings (mortgagor) until December 21, 1991.

The Home Savings Deed of Trust contained an acceleration (due on sale) clause which states ((16) Acceleration Clause: Right of Beneficiary to Declare All Sums Due on any Transfer, Etc.) that the lender has the right to declare any indebtedness and obligations secured by the deed of trust due and payable within 30 days if the debtor sells, enters into a contract of sale, conveys or alienates the property or any part thereof. There is no indication that Hyatt notified the lender of the alleged sale, until the time of the loan payoff on December 21, 1991, for which he received a reconveyance around February 6, 1992.

FTB28761

Under California case law[1], an acceleration clause (due on sale clause) does not prevent a sale of property and cannot automatically be enforced upon an outright sale of property. However, if the loan is made by a federally chartered savings and loan, it is governed exclusively by federal law[2]. In this case Home Savings is a federally chartered savings and loan. Although the protest hearing officer made repeated requests, Hyatt has not produced the Home Savings loan agreement; therefore, it is reasonable to assume that the agreement would have required Hyatt to notify the lender of a pending sale, so that it could determine whether it would accelerate the loan payoff. Accordingly, it is reasonable to assume that Hyatt could not and did not sell the La Palma home at least until he paid off the loan on December 21, 1991.

Despite repeated requests, Hyatt has not provided any documents directly related to the sale, the contractual relationship between him and Grace Jeng, other than the deeds and the promissory note. He provided the grant deed discussed above, a deed of trust and a promissory note for $160,000. However, the total purchase price was $175,000 [allegedly $15,000 down payment and a balance on the note for $160,000]. The promissory note is dated October 1, 1991 and is for $160,000 with interest accruing at 8% per annum. Monthly payments of $1,100 are due under the note beginning November 1, 1991 with the unpaid balance due October 1, 1996[3]. Ms. Jeng's bank records suggest that she made the monthly payments for January 1992 and thereafter.

The grant deed produced by Hyatt is dated October 1, 1991 and was allegedly notarized by a notary public on that same date. The truth of the matter is that the document was actually notarized on June 10, 1993, with the notary public dating the notarization as having taken place on October 1, 1991. The department is informed and believes that Hyatt suborned this erroneous act.

On February 2, 1992, Hyatt sent a homeowners' exemption termination notice to the Orange County Assessor checking a box on the form stating that he did not occupy the La Palma home as his principal residence as of March 1, 1992, because he moved in October 1991. It is noteworthy that on the form he had to check one of two boxes. The box Hyatt did not check stated:

> I DID NOT OWN THE PROPERTY AS OF 12:01 A.M. MARCH 1, 1989; [1989 was crossed out by Mr. Hyatt]
> THE PROPERTY WAS SOLD (DATE)____.
> IF SALE IS UNRECORDED, ENTER NAME OF PURCHASER____.

Hyatt signed this form dated February 10, 1992 and listed the parcel number as 263-324-46. This suggests that Hyatt had not sold the La Palma home as of February 10, 1992.

---

1 *Wellenkamp v. Bank of America* (1978) 21 Cal. 3d 943, 953 [*148 Cal. Rptr. 379*].
2 *Glendale Federal Sav. & Loan Asso. v. Fox* (C.D. Cal. 1979) 481 F. Supp. 616 [1979 U.S. Dist. LEXIS 1158].
3 Hyatt has produced a wire transfer instruction from Grace Jeng to Federated Investors of Pittsburgh, PA to transfer a final payoff in September 1996 in the amount of $157,600.11 from Federated Account # 92-552613891 (FBO Grace Jeng), and Hyatt's Fidelity bank statement entry showing that it was deposited into his account.

**FTB28762**

At audit the Franchise Tax Board requested but did not receive documentation as to the whereabouts of Hyatt during the period September 24, 1991, when he allegedly left California for Las Vegas, through November 1, 1991. The protest hearing officer searched the audit record and found specific follow-up letters beginning with the letter dated August 31, 1995, to Eugene Cowan asking this question:

> If the taxpayer moved to Nevada on September 24, 1991 and he rented an apartment in Las Vegas in mid-October, where did he stay from September 24, 1991 until he rented the apartment? Provide documentation, such as hotel receipts, restaurant receipts etc. to substantiate where the taxpayer resided for the period from September 24, 1991 through November 1, 1991.

The taxpayer's representative's response was that Hyatt was researching the period between September 24, 1991 and October 13, 1991, but had not found any receipts for the period.

Subsequent to the audit, Hyatt himself alleged:

He moved himself in his son's trailer to Las Vegas on or about September 26, 1991 after a doctor's appointment. He and Grace Jeng loaded up the trailer and his 1977 Toyota Celica, which he hitched the trailer to and left from his Jennifer Circle [La Palma] home, and he and Grace Jeng drove to Las Vegas. In the trailer he loaded boxes of things such as books, personal possessions such as tie clips and photographs and suitcases of clothes. He has no credit card or other receipts from the trip as he probably paid with cash. He and Grace Jeng drove to the Continental Hotel where he stored his possessions and stayed for the latter part of September 1991 through about the middle of October. He did not check into the hotel on September 26, 1991 because he had a room there already. He got the keys to his room a day or two before on a prior trip to Las Vegas as part of a tour. The room was part of a tour block of rooms that the tour buses and vans used. Grace Jeng had arranged for a van trip and for the rooms with an Asian tour guide. He alleges that he personally did not check into the hotel at the hotel desk or sign-in to register for the room. He states that the tour guide gave the room keys to the people on the tour. He then traveled back to southern California on the tour van prior to September 26, 1991. He does not know whether the tour guide reported his name to the hotel so he does not know if the hotel had a record of his stay. (See Deposition of Gilbert Hyatt Aug. 15, 2005, Dep. Trans. @ pp. 32 – 39.)

Michael Kern, Hyatt's CPA in Las Vegas and a representative of Hyatt during the Franchise Tax Board's audit testified in his deposition that he was informed that Hyatt stayed at the Continental Hotel around the time they were preparing and filing the protest letter dated June 20, 1996, did not disclose this information to department in the protest letter, but decided to wait until the protest officer requested it. He further alleges that he first tried to obtain the documentation from the Continental Hotel shortly after the protest letter was filed for taxable year 1991 in April 1995, alleging that the accounting firm contacted the hotel. (See Deposition of Michael Kern, taken on May 24, 2000, @ pp. 273 – 277.)

The Franchise Tax Board, however, is informed and believes that the rendition of events by Hyatt and Kern lack credibility. We have learned that the Continental Hotel's Comptroller has no recollection that Kern, his firm or Hyatt ever made the request for documentation. Furthermore, if they made the alleged April 1995 contact, the hotel's records would have been readily available. Likewise if they had responded to the auditor's inquiries in a diligent and timely manner, the auditor could have obtained the records directly from the hotel, if such records existed. The truth of the matter is that neither Hyatt nor his representatives ever alleged that Hyatt stayed at the Continental Hotel between September 24, 1991 through October 20, 1991 until the hotel had been shut down, went into bankruptcy and all of its records had been destroyed as per the order of the Bankruptcy judge[4].

Compounding this misinformation, the taxpayer now admits that he resided at the Jennifer Circle home on September 24, 1991 through September 25, 1991, claiming now to have moved into the Continental Hotel in Las Vegas and stayed there from September 26, 1991 through October 14, 1991. The protest hearing officer's letter dated October 4, 2000 requested at question no. 17: "Documentation of Hyatt's stay at the Continental Hotel at 4100 Paradise Road in Las Vegas, Nevada, from 9/26/91 – 10/14/91." The taxpayer's November 3, 2000 response:

> Mr. Hyatt has no responsive documentation in his possession. Our attempts to obtain such documentation from the Continental Hotel's current owners has, so far, been unsuccessful.

The Franchise Tax Board has not received any documentary evidence that would support the allegation that Hyatt stayed at the Continental Hotel. Therefore, Hyatt's contention that he moved to the Continental Hotel, put the things he moved in his son's trailer into the hotel room, stayed there from September 26, 1991 to October 14, 1991, and left his belongings there with a do not disturb sign on the door while he was on an east coast business trip until October 22, 1991, is unsubstantiated with any contemporaneous documentary evidence, and is neither plausible or credible.

---

[4] Affidavit of Lisa Krasn, Comptroller at the Continental Hotel from 1994 through early 1997 and then later in 1997 to February 1999, states that all of the Continental Hotel receipts were kept and retained, and were in order and were available for review by date. It further states that the hotel's records were never disorganized or unavailable. The records were retained for five or six years after the record year, and that the hotel records for 1991 were stored until 1996 or 1997. All hotel records were finally destroyed in 1999 by order of the Bankruptcy Court. The affiant, Lisa Krasn, states that she does not recall any inquiry about or for the Continental Hotel records for any particular dates or persons by any one connected with the accounting firm of Piercy Bowler Taylor and Kern or any requests from a Mr. Gilbert Hyatt.

**FTB28764**

Hyatt had a number of financial accounts that were opened/closed during the 1990 – 1992 time period[5]. Hyatt closed his California checking account on June 11, 1991 and opened a Nevada checking account on October 25, 1991. All of the California accounts that remained open after October 1991 were investment accounts; while he had check or draft writing privileges on some of them, he did not use them except for the Franklin Federal Money Fund account. Hyatt used his Franklin Federal Money Fund account to draw drafts for his personal and business expenses between September 10, 1991 and April 10, 1992. While the Franklin Federal Money Fund is an investment account and is not a checking account, Hyatt drew drafts on the account to pay for some of his living expenses and for some major business expenses.

The credit card transactions that we have records for beginning October 2, 1991 simply do not place Hyatt in Las Vegas during the period October 2, 1991 through October 28, 1991:

- On October 2, 1991 - a $29.79 payment to a restaurant in Anaheim, CA called Mr. Stox.
- On October 5, 1991 - a $93.20 payment on his account.
- On October 7, 1991 - a $92.00 payment to Continental Airlines in Artesia, CA.
- On October 7, 1991 - a $32.12 payment to a restaurant in Anaheim, CA called Mr. Stox.
- On October 8, 1991 - a $515.00 payment on his account.
- On October 9, 1991 - a $50.00 payment to American Airlines in Dallas, Texas.
- On October 9, 1991 - a $34.95 payment on his account.
  Hyatt was in California on this date for an appointment with Dr. Gerald M. Isenberg.
- On October 10, 1991 - a $15.70 payment to China Best Restaurant in Cypress, CA.
- On October 13, 1991 - a $29.06 payment to the Drug Emporium in La Palma, CA.
- On October 14, 1991 - a $95.11 payment to Alamo Rent-a-Car, Sterling, VA.
- On October 16, 1991 - a $31.81 payment to Alamo Rent-a-Car, Sterling, VA.

5

| BANK ACCT # | OPENED | CLOSED | TYPE | STATE |
|---|---|---|---|---|
| C/F 179-0512 056-2 | 08/13/92 | | CHECKING | NV |
| C/F 177-0514 457-7 | 10/25/91 | | CHECKING | NV |
| C/F 004-0513 065-8 | 06/24/91 | 08/13/92 | $ MARKET | CA |
| FF $ FUND 11300991158 | 08/06/91 | 05/18/92 | INVESTMENT [5] | CA |
| B/A 210173019 | 08/26/92 | | CHECKING | NV |
| V/B NV 210173019 | 12/12/91 | | CHECKING [5] | NV |
| FF T/L 0160002963 | 06/10/91 | 12/17/91 | TIME DEP. | CA |
| IRVINE C/B 11105172-8 | | 01/08/91 | ? | CA |
| C/F 004-0513 796-4 | 09/16/90 | 06/19/91 | $ MARKET | CA |
| C/F 004-0513 837-4 | 09/08/90 | 06/13/91 | $ MARKET | CA |
| C/F 004-0513 800-7 | 09/08/90 | 06/11/91 | $ MARKET | CA |
| C/F 177-0016 768-7 | 01/22/92 | | $ MARKET | NV |
| C/F 004-0513 798-2 | 12/11/90 | 06/11/91 | $ MARKET | CA |
| C/F 004-0513 065-8 | 06/19/91 | 08/13/92 | $ MARKET | CA |
| C/F 082-0522 494-6 | 08/05/91 | 08/13/92 | PORTFOLIO | CA |
| C/F 004-0513 797-3 | 09/13/90 | 08/13/92 | $ MARKET [5] | CA |
| C/F 004-0513 799-1 | | 11/30/90 | $ MARKET | CA |
| C/F 010-0500 874-3 | 12/12/89 | 06/11/91 | CHECKING | CA |
| C/F 5725 | | 05/27/91 | SAVINGS | CA |
| C/F 004-0513 798-080 | 01/09/91 | 06/11/91 | ? [5] | CA |

FTB28765

- On October 17, 1991 - a $249.74 payment to Sheraton Crystal City in Arlington, VA.
- On October 19, 1991 - a $7.30 payment to Bobs Big Boy in Tarrytown, NY.
- On October 21, 1991 - a $26.71 payment to Marriott Hotel in Dallas, TX.
- On October 22, 1991 - a $396.63 payment to Hilton Hotels in Tarrytown, NY. This is inconsistent with his claim that he moved into the Wagon Trails apartment in Las Vegas on October 21, 1991.
- On October 22, 1991 - a $110.98 payment to National Rent-a-Car, Newark, NJ.
- On October 26, 1991 - a $26.22 payment to King Dragon Restaurant in Cerritos, CA.
- On October 31, 1991 - a $15.00 payment on his account.

Therefore, while Hyatt has affidavits from several people, including Ms. Caroline Cosgrove [girl friend], Roger McCaffrey [attorney], Barry Lee [business associate], Grace Jeng [associate/assistant/companion], and Daniel Hyatt [son], stating that he moved to Las Vegas in late September 1991, the protest hearing officer found that his financial documentary evidence simply does not corroborate the affidavits.

Hyatt entered into a $570 per month rental agreement for Wagon Trails apartment number 237 [3225 S. Pecos Road, Las Vegas, Nevada] dated October 8, 1991, signed by Hyatt on October 13, 1991, that specifies a six months tenancy (lease). The lease was to begin on November 1, 1991, but there was also a prorated rental for the period of October 20, 1991 through October 31, 1991, for $228, and the document acknowledges payment of that amount on October 20, 1991. However, there is no canceled check for this amount. The regular monthly rent was $570, which was to be reduced by $30 per month for the lease. Hyatt supposedly paid $150 to Wagon Trails on October 8, 1991 to secure the rental of the apartment, but there is no cancelled check to substantiate this payment. While there was also a $200 security and cleaning deposit requirement and the agreement acknowledges receipt of payment, there is no canceled check evidencing that Hyatt paid this amount. Hyatt signed this rental/lease agreement on October 13, 1991, and the landlord/agent Clara Kopp also signed the document on behalf of the Wagon Trails Apartments. The first cancelled check for rent is dated October 28, 1991, in the amount of $540.

On November 1, 1991, Hyatt signed a $100 check drawn on California Federal Bank Account No. 177-0514 457-7 to Nevada Power Company presumably relating to Hyatt's Las Vegas electricity service at the Wagon Trails apartment. On November 1, Hyatt signed a $100 check on California Federal Bank Account No. 177-0514 457-7 to Centel presumably relating to Hyatt's Las Vegas telephone service at the Wagon Trails apartment. However, Hyatt allegedly moved into the Wagon Trails apartment on October 21, 1991. The protest hearing officer did not find it credible that he would have moved into an apartment in Las Vegas and lived there from October 21, 1991 until on or after November 1, 1991, without electricity or phone services.

Hyatt wrote another check to Centel for $100 on November 27, 1991. On November 1, 1991, Hyatt signed a $28.00 check to the Las Vegas Sun, presumably subscribing to that newspaper for delivery at his Wagon Trails apartment. On December 12, 1991, Hyatt wrote and signed a $34.50 check to State Farm Insurance for a renter's insurance policy.

Hyatt was not registered to vote in California, but he registered to vote in Nevada on November 27, 1991, and used the Wagon Trails address as his residence address[6]. Hyatt alleges that he registered to vote in Nevada in November 1991 on the advice of the DMV clerk or representative, but he did not vote in Nevada during the disputed period (October 1991 – April 1992) for the specified reason that there were no major elections during that time.

Hyatt alleges that he began his search for a Las Vegas home to purchase around October 1991. A Mr. Schulman, who is a residential and commercial real estate developer in Las Vegas, states in a declaration that he met with Hyatt in November 1991, that Hyatt told him of his plans to purchase a home in Las Vegas, and that he had one of his sales managers show Hyatt a number of model homes at their project sites.

A Mr. Shoemaker, who is a real estate agent in Las Vegas, states in an affidavit that beginning in October 1991 he met Hyatt at the Comdex show in Las Vegas, that at Hyatt's request he phoned Hyatt at the Wagon Trails apartment and faxed him materials relating to Las Vegas homes available for sale, and that between October 1991 and March 1992 he picked up and dropped off Hyatt at the Wagon Trails apartment when they were viewing houses. Mr. Shoemaker states that he made offers on five different houses on behalf of Hyatt during December 1991 and March 1992.

Based upon the information and documentation available, it appears that Hyatt made offers to buy at least eight different Las Vegas properties during this time:

- On December 12, 1991, Hyatt submitted a purchase offer through Prudential - Hallmark Realty to purchase a home at 7570 Palmyra for $215,000.
- On December 12, 1991, Hyatt submitted a purchase offer through RE/MAX - VIP Realtors to purchase a home at 10 Pheasant Ridge for $201,000.
- On December 21, 1991, Hyatt submitted a purchase offer through Prudential - Hallmark Realty to purchase a home at 2735 S. Miller Lane for $250,000.
- On January 7, 1992, Hyatt submitted a purchase offer through RE/MAX - VIP Realtors (Walt Shoemaker) to purchase a home at 2771 S. Buffalo Drive for $320,000.
- On February 28, 1992, Hyatt submitted a purchase offer through Prudential - Hallmark Realty to purchase a home at 7245 LaTour for $291,000.
- On March 2, 1992, Hyatt submitted a purchase offer through RE/MAX - VIP Realtors to purchase a home at 3190 Appleblossom for $320,000.
- On March 4, 1992, Hyatt submitted a purchase offer through RE/MAX - VIP Realtors to purchase a home at 1970 Miller Lane for $360,000.
- Between December 16, 1991 and April 3, 1992, Hyatt negotiated for the purchase of the residence located at 7335 Tara Avenue, and he did purchase this property.

[6] When he moved into the Tara Avenue home (which he purchased in April 1992) he did not change his voter registration address; when he did change his address more than 2 years later, he did not give his actual physical address.

The documentation for the offer to purchase the Tara Avenue property contains much more documentation than the offers to purchase any of the other Las Vegas properties[7]. Hyatt's first offer for the Tara Avenue property was allegedly made on December 16, 1991 in the amount of $320,000, with $15,000 earnest money, and the offer was made through Circle Realty. Contrary to the December 16, 1991 offer and earnest money receipt document, Hyatt did not pay the earnest money when he made the offer because, as the addendum to the offer document states, the offer was made via fax. The Circle Realty documents do not support Hyatt's physical presence in Nevada on the dates of these documents, because they were transmitted between that firm and Hyatt via facsimile.

The $15,000 earnest money was paid into escrow with a draft drawn on Hyatt's Franklin Federal Money Fund account on March 19, 1992 payable to Minnesota Title. This is contrary to Hyatt's allegation that he "put down a $15,000 deposit by check drawn on his Las Vegas bank account with his Las Vegas mailing address imprinted on the check." The documents state that the $15,000 earnest money payment would be in the form of a check to be deposited with Licensed Escrow Company and further states that the escrow would not be opened until the buyer accepted the seller's offer and the escrow company would be the buyer's choice. Accordingly, Hyatt's allegation is false and is contradicted by contemporaneous evidence. Furthermore, a review of each and every check Hyatt drew in February 1992 shows that there is no check drawn on his Las Vegas account or any other of Hyatt's accounts that fit the description.

When Hyatt purchased the Tara Avenue property, it was transferred in trust to "MICHAEL W. KERN AS TRUSTEE OF THE KERN TRUST DATED APRIL 2, 1992" via a bill of sale dated to March 16, 1992. The transfer of title document that was recorded was the Grant, Bargain, Sale Deed dated to March 16, 1992 by the Strattons (sellers) transferring title to "MICHAEL W. KERN AS TRUSTEE OF THE KERN TRUST DATED APRIL 2, 1992." This document was notarized on March 24, 1992. In a signed document dated March 30, 1992, Hyatt gave Minnesota Title Assignee [Escrow] Instructions:

> You are hereby instructed and directed that the Assignee/s in this escrow is/are:
>
> "MICHAEL W. KERN AS TRUSTEE OF THE KERN TRUST DATED APRIL 2, 1992"

---

[7] The documentation for the Tara Avenue property includes the offer and acceptance and earnest money receipt, a detailed addendum to the purchase agreement and exhibit thereto, and a net proceeds/investment analysis. This offer was not accepted and the homeowners made a counter offer to sell the home to Hyatt for $397,500, dated December 19, 1991, via fax at 3:00 p.m. Hyatt was to pay the earnest money within 48 hours of acceptance via a cashier's check to be deposited into escrow. Hyatt then made a counter offer via fax also on December 19, 1991, at 7:00 p.m., to buy the house for $394,500 all in cash, including the earnest money deposit. Other counter offers were made (but not provided by Hyatt so they cannot be analyzed here) on February 3, 1992, March 12, 1992 and March 13, 1992 and incorporated by reference in the March 15, 1992 agreement that was executed, wherein Hyatt purchased the house for $360,000.

**FTB28768**

> and you are hereby instructed to treat said Assignee/s in all respects as though they/he/she were the Original Purchaser, and all funds heretofore deposited are to be those of the Assignee/s, without collection for the undersigned.

Hyatt alleges the property was transferred to the trust for the purpose of protecting his privacy and trade secrets.

Law: Residency

It is well settled that respondent's assessment is presumed correct, and appellants have the burden of proving it to be wrong. (*Todd v. McColgan* (1949) 89 Cal.App.2d 509; *Appeal of Ismael R. Manriquez*, 79-SBE-077, Apr. 10, 1979.) Specifically, the party asserting a change in domicile bears the burden of proving such change. (*Sheehan v. Scott* (1905) 145 Cal. 684; *Appeal of Terance and Brenda Harrison*, 85-SBE-059, June 25, 1985.) Respondent's determination of residency is also presumptively correct. (*Appeals of John R. Young*, 86-SBE-199, Nov. 19, 1986.) If there is doubt on the question of domicile after the facts and circumstances have been presented, domicile is presumed not to have changed. (*Whitmore v. Commissioner* (1955) 25 T.C. 293; *Appeal of Anthony J. and Ann S. D'Eustachio*, 85-SBE-040, May 8, 1985.) In addition, the Board has held that ". . . where it cannot, with absolute clarity, be determined which of the dwelling places is appellants' home, appellants ' domicile remains at that one of the dwelling places which was first established." (*See Appeal of Joe and Gloria Morgan*, 85-SBE-078, July 30, 1985.)

California imposes a tax upon the entire taxable income, from all sources, of a California resident. (Rev. & Tax. Code, section 17041, subd. (a).) California defines a "resident" as: "(1) Every individual who is in this state for other than a temporary or transitory purpose. (2) Every individual domiciled in this state who is outside the state for a temporary or transitory purpose." (Rev. & Tax. Code, section 17014, subd. (a).) A "temporary or transitory purpose" must be considered in the context of the facts and circumstances of each particular case. (Cal. Code Regs., tit. 18, section 17014, subd. (b).) Whether an individual is a California resident is a question both of subjective intent and objective facts. (*Appeal of Anthony V. and Beverly Zupanovich*, 76-SBE-002, Jan. 6, 1976.) A residency determination always depends upon the facts of the particular case at hand. (*See Appeal of Stephen D. Bragg*, 2003-SBE-002, May 28, 2003.)

Domicile is the place in which an individual has voluntarily fixed the habitation of himself or herself and family, not for a mere special or limited purpose, but with the present intention of making a permanent home. (Cal. Code Regs., tit. 18, section 17014, subd. (c).) In addition: "[t]he concept of domicile involves the concurrence of physical presence in a particular place with the intention to make that place one's home." (*Estate of Glassford* (1952) 114 Cal.App.2d 181, 186.) In order to change one's domicile, one must actually move to a new state and intend to remain there permanently or indefinitely. (*In re Marriage of Leff* (1972) 25 Cal.App.3d 630, 642.) One's acts must give clear proof of a current intention to abandon the old domicile and establish a new one. (*Chapman v. Superior Court* (1958) 162 Cal.App.2d 421.) In the case of *Smith v. Smith* (1955) 45 Cal.2d 235, 239, the California Supreme Court described the difference between "domicile" and "residence" thus:

**FTB28769**

> [D]omicile is the one location with which for legal purposes a person is considered to have the most settled and permanent connection, the place where he intends to remain and to which, whenever he is absent, he has the intention of returning, but which the law may also assign to him constructively; whereas 'residence' connotes any factual place of abode of some permanency, more than a mere temporary sojourn.

In the *Appeal of Stephen D. Bragg, supra*, the Board compiled a non-exhaustive list of objective factors used to determine the state with which an individual maintains the closest connections. Those factors include:

- the location of all of the taxpayer's residential real property, and the approximate sizes and values of each of the residences;
- the state where the taxpayer claims the homeowner's property tax exemption on a residence;
- the state where the taxpayer registered automobiles;
- the state where the taxpayer maintained memberships in social, religious, and professional organizations;
- the state where the taxpayer registered to vote, and taxpayer's voting participation history;
- the taxpayer's telephone records (i.e., the origination point of the taxpayer's calls);
- the location where the taxpayer filed tax returns, both federal and state, and the state of residence claimed by taxpayer on such returns;
- the location of the taxpayer's bank and savings accounts;
- the origination point of checking account transactions and credit card transactions;
- the state where the taxpayer held a driver's license;
- the state where the taxpayer obtained professional services, such as doctors, dentists, accountants, and attorneys;
- the state where the taxpayer was employed;
- the state where the taxpayer maintained or owned business interests;
- the indications in affidavits from other individuals discussing the taxpayer's residency; and
- the number of days appellant spent in California versus the number of days the taxpayer spent in other states, and the general purpose of such days (i.e., vacation, business, etc.).

In *Appeal of Raymond H. and Margaret R. Berner*, 2001-SBE-006-A, August 1, 2001, the Board described the relevant analysis as follows:

> Whether a taxpayer's purpose in entering or leaving California is temporary or transitory in character is essentially a question of fact to be determined by examining all the circumstances of each particular case. (*See Appeal of Michael T. and Patricia C. Gabrik*, 86-SBE-014, Feb. 4, 1986.) In situations where the taxpayers have significant contacts with more than one state, as appellants do here, the state with the closest connections during the taxable year is the state of residence. (Cal. Code Regs., tit. 18, § 17014, subd. (b).) Consistent with this

FTB28770

regulation, the Board has held that the contacts which taxpayers maintain in this and other states are important objective indications of whether their presence in, or absence from, California was for a temporary or transitory purpose. (*Appeal of Richards L. and Kathleen K. Hardman*, 75-SBE-052, Aug. 19, 1975; *Appeal of Anthony V. and Beverly Zupanovich, supra.*) Such contacts are important as a measure of the benefits and protection that the taxpayers have received from the laws and government of California and as objective indicia of whether the taxpayers entered or left this state for temporary or transitory purposes. (*Appeal of Anthony V. and Beverly Zupanovich, supra.*)

In the case of *Homer E. Noble et al. v. Franchise Tax Board* (2004) 118 Cal. App. 4th 560 [13 Cal. Rptr. 3d 363] the court stated:

> Courts have defined residency and domicile under statutes other than the California income tax statute. Such definitions are relevant because "we do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is a part so that the whole may be harmonized and retain effectiveness." (*Peracchi v. Superior Court* (2003) 30 Cal.4th 1245, 1253.) Thus, under the Government Code, a change in residence or domicile requires a "union of act and intent" (Gov. Code, § 244, subd. (f); *Chambers v. Hathaway* (1921) 187 Cal. 104 [under former Pol. Code, § 52, subd. 7]), and in that connection, when "a person *actually removes to another place* with an intention of remaining there for an indefinite time, and as a place of present domicile, it becomes his place of residence or domicile . . . ." (*Estate of Weed* (1898) 120 Cal. 634, 639 [under former Pol. Code, § 52].) "A domicile once acquired is presumed to continue until it is shown to have been changed, and to constitute the new domicile two things are indispensable: First, residence in the new locality; and second, the intention to remain there. [Citations.]" (*Murphy v. Travelers Ins. Co.* (1949) 92 Cal.App.2d 582, 587.) Referring to the Government Code, one court stated, "Thus our courts have held that two elements are indispensable to accomplishing a change of domicile: *actual* residence in the new locality plus the intent to remain there." (*DeMiglio v. Mashore* (1992) 4 Cal.App.4th 1260, 1268, italics added.)
>
> If one is a resident of the state, that person cannot be in the state for "a temporary or transitory purpose" until that person's acts as well as his or her intent show that he or she has moved out of the state. That one may intend to move from California at some time in the future does not make that person someone who is in California for a temporary or transitory purpose. If it did, every person who contemplates plans for a future move would not be taxable as a resident. One is a resident for tax purposes until there are sufficient indicia of an actual change of such residence.
>
> The purpose of the definition of "resident" under section 17014 "is to include in the category of individuals who are taxable upon their entire net income, regardless of whether derived from sources within or without the State, all

FTB28771

> individuals who are physically present in this State enjoying the benefit and protection of its laws and government, except individuals who are here temporarily . . . ." (Cal. Code Regs., tit. 18, § 17014; see *Whittell, supra,* 231 Cal.App.3d at p. 285 [purpose of section 17014 is "to insure that all those who are in California for other than a temporary or transitory purpose enjoying the benefits and protections of the state, should in return contribute to the support of the state"]; *Peringer v. Franchise Tax Board* (1980) 105 Cal.App.3d 514, 517-518 ["he has continued for now some 23 years to live and work in this state, enjoying its benefits and protection and must respond in tax terms accordingly"].)

*Appeal of Thomas H. Paine and Teresa A. Norton,* California State Board Of Equalization, October 7, 1999, 98A-0741, Case No. 89002467180 states in pertinent part:

> Revenue and Taxation Code section 17041 imposes a tax on every "resident" of California. The term resident is defined in Revenue and Taxation Code section 17014. Subdivision (a) of that section assigns resident status to "[e]very individual who is in this state for other than a temporary or transitory purpose." Subdivision (b) deals with California domiciliaries who are absent from the state, and provides that [e]very such individual "who is outside the state for a temporary or transitory purpose" is a resident. The key question under either subdivision is whether the taxpayer's purpose in entering or leaving California was temporary or transitory in character. This determination cannot be based on the taxpayer's subjective intent, but must instead be based on objective facts. (Appeals of Nathan H. and Julia M. Juran, Cal. St. Bd. of Equal., Jan. 8, 1968.) Under these definitions an individual may be a resident, although not domiciled in this State, and, conversely, may be domiciled in this State without being a resident. It is necessary to determine whether the facts in this appeal satisfy either definition of resident.

In the *Appeal of John R. Young*, 86-SBE-199, November 19, 1986, the Board stated:

> "The purpose of [the resident] definition is to define that class of individuals who should contribute to the support of the state because they receive substantial benefits and protections from its laws and government and to exclude those persons who, although domiciled in this state are outside for other than temporary or transitory purposes and thus do not enjoy the benefits and protection of the state. (Cal. Admin. Code, tit. 18, Reg. 17014, subd. (a); Whittell v Franchise Tax Board, 231 Cal.App.2d 278, 285…"
>
> It is well settled that respondent's determination of residency and respondent's proposed deficiency assessments are presumptively correct, and the burden lies with the taxpayer to prove that respondent's action is erroneous. (Appeal of Joe and Gloria Morgan, Cal. St. Bd. of Equal., July 30, 1985; Appeal of Patricia A. Green, Cal. St. Bd. of Equal., June 22, 1976.) Appellants have not carried their burden of proof. The Board and the courts have considered voluntary physical

FTB28772

presence in California a factor of greater significance than the mental intent or outward formalities of ties to another state since those formalities may be manipulated. (Whittell v. Franchise Tax Board (1964) 231 Cal. App.2d 278, 285.)

* * *

Residents of this state are taxed on their entire taxable income. Nonresidents are taxed only on the portion of their entire taxable income which is derived from sources in this state. (Rev. & Tax. Code, § 17041.) Revenue and Taxation Code section 17554 reads as follows:

"When the status of a taxpayer changes from resident to nonresident, or from nonresident to resident, there shall be included in determining income from sources within or without this state, as the case may be, income and deductions accrued prior to the change of status even though not otherwise includable in respect of the period prior to the change, but the taxation or deductions of items accrued prior to the change of status shall not be affected by the change."

The Board has construed section 17554 to mean that income "is subject to California's Personal Income Tax Law unless it accrued as income prior to the time appellants moved to California." (Appeal of Henry D. and Rae Zlotnick, Cal. St. Bd. of Equal., May 6, 1971.) The income is examined under the accrual basis of accounting for purposes of the application of section 17554 even if the taxpayer files returns and reports on a cash receipts and disbursements accounting basis. (Cal. Code Regs., tit. 18, § 17554.) In other words, if taxpayers become entitled to receive income during a period when they are not residents, California will not tax the income when it is received. This is true even if the taxpayers became residents of California prior to receipt and reported on the cash basis, so that the income in question was not actually reported in the other state in the year of accrual. However, in cases where there is no difference in the timing of reporting an item of income between cash basis and accrual basis taxpayers, we have held that section 17554 does not apply. (Appeal of Virgil M. and Jeanne P. Money, Cal. St. Bd. of Equal., Dec. 13, 1983.)

* * *

Under the Appeal of Money test set out above, section 17554 will only apply when:

(1) California's sole basis for taxing the income is the taxpayer's California residency, and

(2) that taxation must differ depending on whether the taxpayer uses the accrual or cash method of accounting.

FTB28773

Determination: Residency

The audit determination is that the taxpayer became a Nevada resident with the purchase of the Tara Avenue property in April 1992. The protest hearing officer found it difficult to believe that during the period from September 1991 to April 3, 1992 (the disputed time period) the taxpayer substantially severed his California connections, relocated to Nevada with the intention of remaining there indefinitely, and took steps to establish significant connections in Nevada. The protest hearing officer found the evidence to be more convincing that his physical presence in California during the disputed time period was not for the temporary or transitory purpose alleged by the taxpayer, but the continuation of his domicile and residence in California, which began in the 1950's. The protest hearing officer found that the taxpayer has not proven that he actually moved to Las Vegas on September 24 or 26, 1991, moved into the Continental Hotel as a temporary residence and then into the Wagon Trails apartment as a more permanent residence before purchasing the Tara Avenue property, or that he returned to California merely for appointments with doctors and lawyers and for court dates.

The protest hearing officer found that the taxpayer has not shown that he sold the Jennifer Circle home in La Palma, California on October 1, 1991, and the subornation of the backdating of the notarization of the grant deed in June 1993 substantially damages the taxpayer's credibility in all respects. Further, after repeated requests that the taxpayer provide complete information regarding the alleged sale of his California residence and the reporting of that sale to the lender and county officials (as required by law on the sale of property or other transfer of ownership), much of the key information has not been provided. The taxpayer alleges that the limited documentation and delayed filing were predicated upon Ms. Jeng's concern for her privacy that resulted in the solicitation of advice from allegedly experienced real estate law counsel. However, California law is clear and any practitioner who is experienced in the field would certainly know that while recording the deed is not required by law and recording would result in a public document, the duty to report a change of ownership within 45 days of that change is required by law. (Rev. & Tax. Code sections 90 and 480.) Furthermore, Government Code section 27280, subsection (b) clearly states: "The change in ownership statement shall not be recorded nor open and available to public inspection and shall at all times remain confidential, except as provided in Section 408 of the Revenue and Taxation Code." This again calls into question the taxpayer's credibility and intent.

With that, the protest hearing officer recommended that the Notices of Proposed Assessment for taxable years 1991 and 1992 should be affirmed.

Issue: Alleged Overassessment For Taxable Year 1992

The taxpayer alleges that the assessment for 1992 is overstated, because the auditor picked up a January 15, 1992 patent licensing contract payment from Philips in the amount of $48,780,951 and assumed the $48,780,951 was paid during the disputed time period [before April 3, 1992]. The taxpayer alleges that only $23,919,327 of that amount was paid during the disputed time period and, therefore, the assessment is overstated.

FTB28774

The auditor continually requested detailed information regarding the payments received by the taxpayer on all of the patent licensing contracts, yet was never able to get the information from the taxpayer. The protest hearing officer again made repeated requests for detailed information regarding the payments received, but never received adequate information to develop a reliable reconciliation of the payments by date and source[8]. Clearly, the taxpayer has this information and it can only be assumed that providing the information would not be in his interest.

Based upon this lack of information, the protest hearing officer had no basis and no choice but to affirm the assessment, without modification for this alleged error. To the extent that a quasi-judicial or judicial body determines based upon credible evidence that there is an overassessment for taxable year 1992, the Franchise Tax Board will gladly make an adjustment.

Additional Findings

The protest hearing officer has determined, however, that the assessment for taxable year 1991 has been understated because of actions of the taxpayer that were not detected prior to expiration of the limitation period for assessment, most particularly the anticipatory assignment of income by the taxpayer to his corporation, DNC, and the underreporting of the payment received by the taxpayer on the Pioneer contract, to wit:

Taxable Year 1991 Assignment of Income to Digital Nutronics Corporation (DNC)

Hyatt was owed $800,000 from Philips as of July 15, 1991, the effective date of the Philips agreement. In this agreement at Article III, Hyatt assigned his right to $400,000 of that payment to his wholly owned corporation, DNC. According to Eugene Cowan's May 28, 1996 letter to the IRS:

> Digital Nutronics was incorporated in November 1971 and was dissolved in early 1994. DNC provided engineering consulting services during the 1970s and 1980s. DNC ceased its consulting business prior to the time Mr. Hyatt sold his rights to his patents to Philips in 1991 and DNC was deactivated soon thereafter. DNC held no interest in any of Mr. Hyatt's patents before or after Mr. Hyatt sold his patent rights to Philips. DNC undertook no activities for which it would have required any rights (such as licenses) under Mr. Hyatt's patents.

---

[8] Possible Reconciliation:

| | | | |
|---|---|---|---|
| Possible Reconciliation: | Philips/Sony, NEC, Sharp | 01/14/92 | $23,866,465 |
| | Second NEC Payment | | 225,000 |
| | Deemed Payment for NEC Taxes | 12/16/91 | 25,000 |
| | Sharp (gross) | 02/03/92 | 225,000 |
| | Deemed Payment for Sharp Taxes | | 25,000 |
| | Payment to Mahr Leonard by Roth | | (37,500) |
| | Oki (gross to Hyatt) | 01/31/92 | 4,000,000 |
| | Payment to Mahr Leonard | 02/04/92 | (600,000) |
| | Payment to Philips | 02/04/92 | (1,699,213) |
| | Philips Payment on July 1991 Contract | 07/09/92 | 200,000 |

FTB28775

Since DNC had no rights in the patents, the assignment of the Philips $400,000 payment was an anticipatory assignment of income that is rightfully taxable to Hyatt. Hyatt failed to report this income on his personal income tax return for California or federal income tax purposes. On the other hand, DNC reported it enabling DNC to utilize $291,513 of its NOL carryover for federal income tax purposes. An analysis of the 1991 return leads to the conclusion that all or some of the Philips $400,000 payment assigned to DNC was spent for other than its costs of goods sold or ordinary, necessary business expenses and/or repayment of a bona fide arms-length business related loan. DNC's taxable year 1992 tax return shows that as of January 1, 1991, it had cash in the amount of $260,206, and no business expenses or other outlays other than the California minimum franchise tax for the year, and an ending cash balance of only $1,236 cash on hand as of December 31, 1992. Presumably this entity's cash was held in its checking or other financial account. With no business expenses of its own, presumably, DNC either distributed these funds to Hyatt or it paid his individual personal or business expenses.

Taxable Year 1991 Pioneer Option Agreement Income of $300,000

Hyatt and Pioneer entered into an option agreement dated June 5, 1991, in which Pioneer agreed to pay Hyatt $300,000 within 20 days of the execution of the agreement. Pioneer's June 5, 1991 letter to Hyatt states that payment of $300,000 would be made on June 6, 1991. On August 29, 1991, Hyatt acknowledged receipt of full, timely payment. However, on Hyatt's tax return for taxable year 1991, he only reported gross receipts from Pioneer in that amount of $200,000. Therefore, it appears that Hyatt failed to report $100,000 in gross receipts paid to him by Pioneer on or about June 5, 1991 as income for California tax purposes.

Issue: Fraud Penalties

For taxable year 1991, the Franchise Tax Board assessed an accuracy related fraud penalty pursuant to Revenue and Taxation Code section 19164, subsection (b) [formerly 18685, subsection (b)]:

(a) (1) An accuracy-related penalty shall be imposed under this part and shall be determined in accordance with the provisions of Section 6662 of the Internal Revenue Code, relating to imposition of accuracy-related penalty.
(2) With respect to banks and corporations, this subdivision shall apply to all of the following:
(A) All income years beginning on or after January 1, 1990.
(B) Any other income year for which an assessment is made after July 16, 1991.
(b) A fraud penalty shall be imposed under this part and shall be determined in accordance with the provisions of Section 6663 of the Internal Revenue Code, relating to imposition of fraud penalty.
(c) The provisions of Section 6664 of the Internal Revenue Code, relating to definitions and special rules, shall apply.

FTB28776

(d) The provisions of Section 6665 of the Internal Revenue Code, relating to applicable rules, shall apply.
(Added by Stats. 1993, Ch. 31, Sec. 26. Effective June 16, 1993. Operative January 1, 1994, by Sec. 83 of Ch. 31.)

For taxable year 1992, the Franchise Tax Board assessed a fraudulent failure to file return penalty pursuant to Revenue and Taxation Code section 19131, subsection (d) [formerly 18681, subsection (d)]:

(a) If any taxpayer fails to make and file a return required by this part on or before the due date of the return or the due date as extended by the Franchise Tax Board, then, unless it is shown that the failure is due to reasonable cause and not due to willful neglect, 5 percent of the tax shall be added to the tax for each month or fraction thereof elapsing between the due date of the return (determined without regard to any extension of time for filing) and the date on which filed, but the total penalty shall not exceed 25 percent of the tax. In the case of a commencing corporation, the penalty shall apply to all tax accruable on the due date of the return. The penalty so added to the tax shall be due and payable upon notice and demand from the Franchise Tax Board.
(b) In the case of an individual or fiduciary who fails to file a return of tax required by this part within 60 days of the date prescribed for filing of that return (determined with regard to any extension of time for filing), unless it is shown that the failure is due to reasonable cause and not due to willful neglect, this penalty shall not be less than the lesser of one hundred dollars ($100) or 100 percent of the amount of tax required to be shown on the return.
(c) For purposes of this section, the amount of tax required to be shown on the return shall be reduced by the amount of any part of the tax which is paid on or before the date prescribed for payment of the tax and by the amount of any credit against the tax which may be claimed upon the return.
(d) If any failure to file any return is fraudulent, subdivision (a) shall be applied by:
(1) Substituting "15 percent" for "5 percent," and
(2) Substituting "75 percent" for "25 percent."
(e) This section shall not apply to any failure to pay any estimated tax required by Section 19025 or 19136.
(Added by Stats. 1993, Ch. 31, Sec. 26. Effective June 16, 1993. Operative January 1, 1994, by Sec. 83 of Ch. 31.)

The protest hearing officer has determined that the fraud penalties should be sustained, because the actions of the taxpayer support finding that he misrepresented facts and events in order to create the impression that he left California around September 24, 1991 when in fact he remained a resident well after that date. In addition to the general lack of credibility that proceeds from the actions and allegations of Hyatt, the protest hearing officer has identified a number of specific acts and events that clearly support a finding of intent to work fraud on the state by the taxpayer.

The Grant Deed For The Alleged La Palma Property Sale

The Grant Deed, Document No. 93-0404104 and 93-0404105 was recorded on June 16, 1993 at 3:34 p.m. at the Office of the Clerk/Recorder, 12 Civic Center Plaza, Santa Ana, CA. The deed reflects that Darlene Beer notarized it on October 1, 1991.

The department is informed and believes that Darlene Louise Beer, the notary public who notarized the Hyatt Grant Deed, has admitted that the Grant Deed dated October 1, 1991 was actually notarized on June 10, 1993 and was backdated to October 1, 1991.

DOWN PAYMENT ON THE LA PALMA PROPERTY BY GRACE JENG

In the IDR dated our December 14, 2000, the protest hearing officer asked the following:

FOLLOW-UP INFORMATION AND DOCUMENT REQUEST

* * *

10. Oct. 4, 2000, IDR Q-18. The sales agreement for Hyatt's sale of 7841 Jennifer Circle, La Palma, CA to Grace Jeng. How was the $15,000 balance of the $175,000 sales price paid? Was Grace given a valid deed? When was that deed physically delivered to Grace?

With respect to my request for a copy of the sales agreement for Mr. Hyatt's sale of the 7841 Jennifer Circle La Palma home to Ms. Jeng, you stated that you are not sure what I mean by "sales agreement." The term sales agreement means without limitation all documents or other writings that memorialize an offer, acceptance, consideration, etc. At this time, provide <u>all</u> written documents relating to this transaction. I will decide the relevance of each of these items.

Eric Coffill's November 3, 2000 response:

RESPONSE TO QUESTION NO.18:

We are not sure what you mean by "sales agreement." There was no escrow, so there was no need for a document setting forth the terms of closing or setting forth any escrow instructions. There was a valid deed, and a deed of trust. (See Response No.32 to Woodward Requests.) The deed was physically delivered to Ms. Jeng on October 1, 1991. The sale was conducted based upon legal advice given to Mr. Hyatt in early September 1991 regarding Mr.

**FTB28778**

> Hyatt's intended sale of the house to Ms. Jeng. The attorney, Roger McCaffrey, advised Mr. Hyatt the sale did not need to be recorded and that an escrow was not required to legally transfer title to property. (See Affidavit of Roger McCaffrey, dated March 17, 2000, Response No.32 to Woodward Requests.) The $15,000 down payment from Ms. Jeng was deposited by Mr. Hyatt into his Las Vegas California Federal Bank account on December 14,1991. (See California Federal Bank Statements.)

The response clearly states that Hyatt deposited the $15,000 down payment from Ms. Jeng into his Las Vegas California Federal Bank account on December 14, 1991. The truth of the matter is that the $15,000 deposit into that account was a draft that Hyatt drew on his Franklin Federal Money Fund and deposited himself into the Las Vegas California Federal Bank account. The front of the check shows that Hyatt wrote himself a $15,000 check from his own account. The back of the check shows that Hyatt endorsed it for deposit only into his California Federal Bank account and the bank stamp is dated December 14, 1991. Hyatt's California Federal Bank account number 177-0514457-7 bank statement for the period November 22, 1991 through December 19, 1991 shows the deposit of $15,000. There is only the one such deposit on that date. This simply does not evidence that Ms. Jeng made the $15,000 down payment to Hyatt as he alleged.

Additional Acts and Events

Hyatt misused his corporation, Digital Nutronics Corporation (DNC), to pay expenses that were not legitimate business expenses. In Hyatt's deposition he admits that he paid his elderly mother's personal expenses out of DNC's bank account. The deposition is not specific as to when this occurred, but Hyatt's mother died on March 2, 1988, which would mean that these acts contributed to DNC's NOL carryforward to 1991 and 1992. It shows that Mr. Hyatt was using his corporation's financial accounts as his personal pocketbook, a violation of the corporate form, actions which clearly bear upon his veracity.

As identified earlier, Hyatt was owed $800,000 from Philips as of July 15, 1991, the effective date of the Philips agreement. In this agreement at Article III, Hyatt assigned his right to $400,000 of that payment to his wholly owned corporation, DNC. Hyatt then did not report that income on his own (1991) return and the corporation, which had a questionable net operating loss carryforward, then used the NOL to shelter that income.

Again as identified earlier, it appears that Hyatt deliberately failed to report $100,000 in gross receipts paid to him under the Pioneer Licensing Agreement on or about June 5, 1991 as income for California tax purposes.

Based upon all of the foregoing identified acts and events, the protest hearing officer has determined that the taxpayer omitted income and overstated allowable deductions with the specific intent to evade California tax. With that, the fraud penalties should be sustained.

**FTB28779**

Issue: California Source Income

While the protest hearing officer's determination will result in affirming the taxable year 1991 and 1992 assessments in full, the department would allege as an additional and an alternative basis for the assessments that the patent licensing income received by the taxpayer is, in whole or in large part, California source income taxable by California.

The protest hearing officer has determined that the assessments should be affirmed on the alternative basis of California source income, because the patents that formed the basis for the licensing agreements and income in issue had acquired a business situs in California and the actions of the taxpayer do not support finding that he terminated his business activity in California anytime during 1991 or 1992. At audit it was concluded that the taxpayer had become a Nevada resident on or about April 3, 1992, and that all income received by the taxpayer prior to that date would be taxable California income. That, however, does not end the inquiry.

Gilbert Hyatt established his California domicile and residency status in 1954. In 1966, he worked for Teledyne, but wanted to work on his own inventions. Around 1968, he formed Micro Computer, Inc., where he allegedly developed the microprocessor[9] and then applied for a patent for the microprocessor technology. He received contributions to the capital of the corporation (venture capital), but around 1971 all of the venture capital was spent, the investors withheld any further funding, and the corporation dissolved. Hyatt then formed his wholly owned Digital Nutronics Corporation (DNC)[10].

Beginning in the late 1960's, Hyatt on his own behalf began filing applications for U.S. patents for inventions and technologies that he developed while a resident of California. Each time he applied for a patent he did so from a California address. Prior to April 3, 1992, he had applied for a large number of patents and many were issued to him.

Hyatt first applied for the "single-chip integrated-circuit computer architecture" (microprocessor) patent around 1969. US Patent 4,942,516 (the '516 patent) was granted on July 24, 1990 and Hyatt immediately started contacting Japanese electronic companies alleging patent infringement and soliciting payment to avoid litigation[11]. Meanwhile, the holder of patent '541, Gary Boone who worked for Texas Instruments, claimed that his patent (entitled "Variable Function Programmed Systems") gave him the right to the microprocessor technology and he initiated

[9] The microprocessor or "chip" is the invention evidenced by the '516 patent from which the income now in issue was generated. This development or invention activity apparently took place in California sometime between 1968 and 1970.

[10] DNC was incorporated in November 1971 and was dissolved in early 1994. DNC provided engineering consulting services during the 1970s and 1980s. DNC allegedly ceased its consulting business prior to the time Hyatt licensed his rights to his patents to Philips in 1991 and DNC was deactivated thereafter. DNC held no interest in any of Hyatt's patents before or after Hyatt licensed his patent rights to Philips. DNC undertook no activities for which it would have acquired any rights (such as licenses) under Hyatt's patents. (See 5/12/06 IRS Letters 00039.)

[11] Prior to the issuance of the '516 patent, Hyatt had been issued patents for a number of other inventions and he made repeated attempts to get patent infringement payments from many of these same companies that paid him for the '516 patent, but was not able to get any company to pay him for any of his other patents.

litigation contesting the issuance of the '516 patent to Hyatt. In *Hyatt v. Boone*[12], the Patent and Trademark Office Board of Patent Appeals and Interferences determined that Boone and not Hyatt was the first to invent. Hyatt later lost on appeal and the U.S. Supreme Court denied Hyatt's Petition for Certiorari on February 22, 1999. In the interim from 1990 to 1999, Hyatt had been able to obtain substantial income from the patent infringement licensing/settlements he pursued.

Between 1990 and 1996, while the interference action was pending, Hyatt sought as many patent infringement litigation settlement agreements (that he labeled as either license or patent agreements for "paid-up royalties" from Philips and Japanese electronics companies) as he could negotiate either directly or indirectly. This is the income that is in question. This income appears to be primarily derived from the '516 patent, the application process for which was begun around 1969 and pursued thereafter, all from California.

The La Palma, California Home was Hyatt's Business Office

Helene Schlindwein, who goes by the nickname "Leni", performed secretarial duties for Hyatt. She has known Hyatt for about 20 years, or since about 1980. They are friends and she has a business relationship with him. She has worked in his office doing clerical work. She worked for Hyatt and not his corporation (DNC). When she worked for Hyatt in California, she worked in Hyatt's homes and indicates that in the La Palma home he had an office in the basement[13]. When she worked for Hyatt at the La Palma home, she would sometimes use a photocopy machine that was located there[14].

Daniel Hyatt, Hyatt's son, indicated that Hyatt had a room that was his workplace in the La Palma home. Hyatt also had an office or laboratory in the basement and sometimes worked at the kitchen counter[15].

In addition to the statements by Helene Schlindwein and Daniel Hyatt, the following information has been provided:

> "From the time of the divorce [in 1976] until November 30, 1992, Gilbert Hyatt spent an incalculable number of hours creating inventions, filing patent

---

[12] *Hyatt v. Boone*, Patent Interference No. 102,598 (Bd. Pat. App. & Inter. Sept. 19, 1995) (Decision after Final Hearing); *Hyatt v. Boone*, Patent Interference No. 102,598 (Bd. Pat. App. & Inter. May 10, 1996) (Decision on Reconsideration). Hyatt's patents and claims to the microprocessor technology were withdrawn in a judicial proceeding in June 1998 in *Hyatt v. Boone* (Fed. Cir. 1998) 146 F.3d 1348 and in February 1999 the U.S. Supreme court denied Hyatt's writ of certiorari (*Hyatt v. Boone* (1999) 525 U.S. 1141.)

[13] When she met Hyatt he lived in La Palma at one location and then moved to the Jennifer Circle home also in La Palma.

[14] See February 12, 2000 *Deposition Transcript @ pp 8 – 10 ,32, 43, and 111 – 113.*

[15] See February 8, 2006 Deposition Transcript @ p 377 and 11/18/05 Dep. Trans. @ pp 283 – 284.

applications, prosecuting his patent applications, appealing adverse rulings and then attempting to market and license his patents."[16]

The department is informed and believes that Hyatt conducted his business from his California residences, including the La Palma home, and did so for many years. The department is also informed and believes that he conducted his business from the La Palma home without obtaining a business license from the city of La Palma[17].

Hyatt maintained a commercial grade photocopy machine in his La Palma home. At some time prior to January 1991, Hyatt obtained a Sharp 7900 photocopier, serial number 06205257 and the following events transpired thereafter:

- Invoice no. 27290 dated January 22, 1991, lists the serial number 06205257, and shows XCS serviced a Sharp 7900 copier at the La Palma home when this copier's meter count was 84,136.

- XCS serviced and maintained the copier at the La Palma home under an Unlimited Call and Service agreement dated January 25, 1991, for the period February 9, 1991 through February 8, 1992. As of January 25, 1991, the copier's meter count was 95,950.

- On May 10, 1991, Hyatt purchased 20 toner cartridges from Copy Tech Company for delivery to 7841 Jennifer Circle, La Palma.

- XCS Invoice no. 30216, shows that on April 30, 1991, the copier's (serial no. 06205257) meter count was 121,312 and it was serviced between 10:00 a.m. and 11:30 a.m. at the La Palma house. Hyatt signed the invoice[18].

- XCS Invoice no. 31275 shows XCS repaired the copier again on August 27, 1991 and Hyatt again signed for it and paid for it. Hyatt paid for it with check number 3851, from the DNC account, yet this invoice is under Hyatt's name.

- Invoice no. 32982 dated August 30, 1991, is another XCS service call for the copier - serial no. 06205257 - under DNC's name but at the La Palma home and Hyatt signed the

[16] See Hyatt's 22nd Supplemental Document Production, Volume 2 @ H 016622 – This document is Hyatt's opening appellate brief in Gilbert P. Hyatt, Appellant vs. Priscilla Maystead aka Priscilla L. Hyatt, Respondent, wherein Hyatt appealed the lower court's order refusing to impose sanctions against Priscilla Maystead.

[17] Title 13, La Palma Municipal Code section 13-40, states: "No individual . . . shall operate, conduct or manage any business in a residential dwelling except upon the issuance of a home business license in accordance with the provisions of this article. (Ord. No. 82-6, § 1(part): Ord. No. 2004-03, § 4(part).)" On August 10, 1993, FTB auditor Mark Shayer called the City of La Palma to find out if Gilbert Hyatt had paid business license taxes. Theresa Ball stated that businesses that operate out of the home are still subject to an annual business tax; that they had sent letters out to Gilbert Hyatt because he didn't have a business license, and he responded that he was not conducting business in his home; that he was just tinkering. Hyatt's representative states that neither Hyatt nor any of his businesses applied for or received a home business license for the Jennifer Circle residence.

[18] Hyatt paid the invoice on June 10, 1991 with check number 3474 drawn on the DNC checking account.

invoice. He paid the invoice on September 26, 1991 with DNC check no. 3867, which is the day Hyatt allegedly moved to the Continental Hotel in Las Vegas.

- Grace Jeng alleges in her testimony that the copy machine stayed in the La Palma home and was there after she returned back to it after unloading the trailer into the Continental Hotel. (Grace Jeng Dep. Trans. Vol 2 @pp. 484 – 486.)

- Invoice no. 34547 dated November 4, 1991 shows that at 8:15 a.m. Hyatt telephoned XCS saying the copier's sorter and feeder needed to be checked. XCS went to Hyatt's La Palma home at 12:00 p.m. that afternoon and spent 2 and 3/4th hours repairing the copier. Hyatt was at the La Palma home and signed the invoice on November 4, 1991, when the copier's meter count was 212,832. Hyatt paid it on November 19, 1991 with DNC check no. 3734.

- XCS invoice no. 1473 dated May 7, 1992 is for another service for the copier (serial no. 06205257) at the La Palma home for which Hyatt was present; he signed and paid the invoice on the same date with DNC check no. 3233.

- XCS invoice no. 40022 shows that on July 22, 1992, the Sharp 7900 serial no. 06205257 was moved by XCS to Las Vegas.

- Hyatt purchased a Sharp 7900 photocopy machine for $3,800, serial number 26601564, (undated invoice no. 39850). Although invoice no. 39850 lists Hyatt's address as a Nevada P.O box and uses a Nevada phone number, it appears that this new copier was delivered to his La Palma home.

- XCS Invoice no. 2644 shows another service on August 7, 1992 at the La Palma home, but the copier's meter count was only 37,893. Grace Jeng signed this invoice.

- XCS Invoice no. 4509 dated December 15, 1992 is for service and repair at the La Palma home. Grace Jeng signed that invoice, and the copier's meter count was 66,415.

- XCS invoice no. 4448 dated December 21, 1992 is for service at the La Palma home when the meter count on the new machine was 71,985, and Grace Jeng signed the invoice.

- A third Sharp 7900 copier, serial no. 2660575XC was purchased by DNC on March 18, 1993, for $4,390.81, according to XCS invoice no. 43136, which was signed by Caroline Cosgrove.

The foregoing demonstrate that Hyatt conducted business from his La Palma, California home and that he continued to conduct business from that location well after April 1992, the date he purchased the Tara Avenue home in Las Vegas, Nevada, the event upon which the department relied in determining that he changed his residence to Nevada. In addition, DNC clearly was active in that it maintained a checking account, from which payments were made for activities that do not appear to be for or on behalf of DNC.

**FTB28783**

On the foregoing facts alone, Hyatt and his patents had a business situs in California. In addition, the commercial exploitation of the patents produced California source income pursuant to California law, most particularly Revenue & Taxation Code section 17952.

Commercial Exploitation

At some time prior to 1991, Hyatt began contacting companies making offers to license his patents for consideration. He made each of these contacts from California using business correspondence bearing a California address and telephone number.

From 1987 through 1989, Hyatt was in contact with IBM, Fujitsu, NEC, Toshiba, Epson and Acer Group, all of which contacts clearly evidence that Hyatt was personally and actively engaged in commercial exploitation of his patents from California with the intent to make a profit.

According to United States Patent and Trademark Office records, U.S. Patent No. 4,942,516 was granted on July 24, 1990 for the single chip integrated circuit computer architecture and at that point Hyatt stepped up his efforts to commercially exploit the '516 and his other patents. The first press release was issued on August 29, 1990 using P R News Wire (a for-pay service) and states in part:

> According to Hyatt, work on the invention began in early 1968 and he built his first working computer later that year. Also in 1968, Hyatt formed Micro Computer Inc., a company that he incorporated for the purpose of developing his microcomputer technology.
>
> * * *
>
> Over the past 20 years, I have continued with my research and development efforts and I am presently heavily involved in R&D on a range of important electronics technologies.

Shortly after the '516 patent was issued, it was contested in litigation and Hyatt assisted in the defense. Hyatt continued his active involvement in the litigation throughout and the department would assert that some of his activities were conducted from California and from the La Palma home after April 1992.

During part of the October 1991 through April 2, 1992 time period, Hyatt allegedly resided and worked out of his Wagon Trails apartment in Las Vegas. However, the department is informed and believes that he did not maintain any office equipment at that location and that he was not authorized to work out of the apartment. Section 16 of the lease agreement states in pertinent part:

Use of Premises by Tenant: The said premises are to be used and occupied by Tenant and those designated herein for residential purposes only and for no other purposes, and no trade, business or occupation shall be carried on therein.

On December 18, 1990, Hyatt entered into a representation agreement with Mahr Leonard Management Company (MLMC) for a six-month period for MLMC to negotiate, for a 15% commission, a patent license agreement with Toshiba with respect to 14 of the patents owned by Hyatt. On September 24, 1991, Hyatt entered into another representation agreement with MLMC for the purposes of negotiating patent license agreements with Fujitsu, Matsushita, NEC, Oki, Sharp, Sony and Toshiba.

In July 1991, Hyatt entered into a patent license agreement with Phillips Corporation regarding Phillips' commercial exploitation of Hyatt's patents. The license agreement between Hyatt and Philips Corporation is effective July 15, 1991. The agreement lists certain patents and patent applications in which Philips acquired certain rights in consideration for its payments to Hyatt under the license agreement. This agreement pertained to specified computer patents relating to "computer related work done by HYATT and/or Micro Computer, Inc. in the late 1960's and early 1970's . . .." The license agreement also covered certain specified LCD Patents and Claims, Micro Processor Patents and Claims, Display Fault Tolerant Patents and Claims, LCD Gray Scale Patents and Claims. The license agreement also gave Philips the right to sublicense the computer patents that were the subject of the agreement on a nonexclusive basis and the net proceeds from that sublicensing program would be split equally between Hyatt and Philips. The initial Philips license agreement states in pertinent part:

<u>ARTICLE I – DEFINITIONS</u>

As used herein, the following terms shall have the following meanings:

Section 1.1 COMPUTER PATENTS shall mean: All patents issuing on applications filed prior to or entitled to claim a filing date prior to 1980 for inventions resulting from computer related work done by HYATT and/or employees of Micro Computer Inc. in the late 1960's and early 1970's including:

| | | |
|---|---|---|
| 4,034,276 | 4,370,720 | 4,686,622 |
| 4,120,583 | 4,371,923 | 4,825,364 |
| 4,121,284 | 4,396,976 | 4,829,419 |
| 4,225,225 | 4,531,182 | 4,896,260 |
| 4,310,878 | | |

And any patents issuing on any and all continuations, divisions, and reissues of any of the aforesaid patents, but not continuations-in-parts thereof, any corresponding foreign applications filed outside the United States and any patents issuing on any such foreign applications. COMPUTER PATENTS shall not include MICRO PROCESSOR PATENTS or MICRO PROCESSOR CIP CLAIMS.

**FTB28785**

* * *

Section 1.3 MICRO PROCESSOR PATENTS shall mean: The following U.S. patent and all divisionals and continuations thereof, but not continuations-in-part thereof, and any patents issuing therefrom:

4,942,516

and any corresponding foreign applications filed outside the United States and any patents issuing on any such foreign applications.

Section 1.3.1 MICRO PROCESSOR CIP CLAIM shall mean: Any claim of a patent issuing on any continuations-in-part (CIP) of any application or patent referred to in Section 1.3 (including any CIP of the patent identified in Section 1.3), which claim is supported by and is entitled to the benefit of the filing date of any such application or patent referred to in Section 1.3.

* * *

Section 1.8 LICENSABLE PATENTS shall mean: The COMPUTER PATENTS, COMPUTER CIP CLAIMS, the LCD PATENTS, LCD CIP CLAIMS, the MICRO PROCESSOR PATENTS, MICRO PROCESSOR CIP CLAIMS, the DISPLAY FAULT TOLERANT PATENTS, DISPLAY FAULT TOLERANT CIP CLAIMS, the LCD GRAY SCALE PATENTS and LCD GRAY SCALE CIP CLAIMS.

* * *

ARTICLE II – LICENSE TO PHILIPS

Section 2.1 Subject to the terms and conditions of this AGREEMENT, HYATT hereby grants to PHILIPS and its AFFILIATES during the term of this agreement, a nonexclusive nontransferable right and license to make, have made, use, sell, lease or otherwise dispose of any product or process covered by any claim of the EARLY PATENTS.

Section 2.2 Subject to the terms and conditions of this AGREEMENT, HYATT hereby grants to PHILIPS and its AFFILIATES, a nonexclusive nontransferable right and license to make, have made, use, sell, lease or otherwise dispose of any product or process covered by any claim of the LATER PATENTS.

* * *

ARTICLE IV – SUBLICENSING RIGHTS

FTB28786

Section 4.1 Subject to the terms and conditions of this AGREEMENT, HYATT hereby grants to PHILIPS the right to license others on a nonexclusive basis under all LICENSABLE PATENTS for all fields of use and the exclusive right to license others on a nonexclusive basis under COMPUTER PATENTS for every field of use except motor powered vehicles.

* * *

Section 4.10 It is recognized by the parties that there may be some companies to whom PHILIPS may not want to assert or grant sublicenses under any or all of the LICENSABLE PATENTS. In the event that PHILIPS decides that it does not want to grant a sublicense to any such company, it shall notify HYATT and HYATT shall thereupon have the sole right to grant licenses to such company under LICENSABLE PATENTS as set forth for IBM and for the U.S. government in Section 10.3. In no event shall the number of such companies exceed four (4).

<u>ARTICLE X – RETAINED HYATT RIGHTS</u>

Section 10.1 Notwithstanding any other provision of this AGREEMENT, HYATT shall retain the right to use any and all LICENSABLE PATENTS on a royalty free basis without compensation to PHILIPS.

Section 10.2 Notwithstanding any other provision of this AGREEMENT, HYATT shall retain the right to license on a nonexclusive basis, without compensation to PHILIPS, any company in which HYATT owns at least 20% (twenty percent) of the voting rights and at least 20% (twenty percent) of the right to receive amounts distributed by the company (a HYATT OWNED COMPANY). Any such license may extend to an affiliate of a HYATT OWNED COMPANY in which the HYATT OWNED COMPANY owns at least 50% (fifty percent) of the voting rights of the affiliate.

Section 10.3 Anything to the contrary in this AGREEMENT notwithstanding, HYATT shall retain and have the sole right to grant licenses under LICENSABLE PATENTS to International Business Machines Corporation (IBM) and its affiliates and to the U.S. government and any such licenses shall not be governed in any way by the terms of this AGREEMENT. HYATT shall not be required to share with PHILIPS any payment received by HYATT from IBM or from the U.S. government for a license under any of the LICENSABLE PATENTS.

**FTB28787**

> Section 10.4 HYATT hereby reserves to himself all rights and interests that are not expressly granted to PHILIPS by this AGREEMENT.

Section 4.6 provides a payment schedule that Philips was required to pay to retain the sublicensing rights after the first year after the effective date of the Philips agreement. So the sublicensing rights that were granted to Philips were for a 12-month period only, unless renewed and paid up annually by Philips.

Effective September 12, 1991, Hyatt and Philips entered into an agreement with MLMC retaining MLMC for the period of October 15, 1991 through January 1, 1992 as the exclusive agent to represent Hyatt and Philips, for a 15% commission, on patent license negotiations with Fujitsu, Matsushita, NEC, Oki, Sharp, Sony and Toshiba. However, MLMC was not authorized to execute any patent license agreements without express written authorization.

In the First Supplemental Agreement between Hyatt and Philips, dated October 30, 1991, to the Philips License Agreement, Hyatt was granted a nonexclusive right to license the "LICENSABLE PATENTS" to Fujitsu, Oki, Matsushita and Toshiba. This grant was to expire on December 31, 1991. Pursuant to this Supplemental Agreement between Hyatt and Philips, Hyatt executed patent agreements with Fujitsu on Oct. 23, 1991, Oki on Oct. 31, 1991 and Matsushita on Nov. 14, 1991[19]. Hyatt, not Philips, executed these patent agreements. An agreement was not executed between Hyatt and Toshiba prior to the December 31, 1991 expiration of the grant.

In the Second Supplemental Agreement dated October 30, 1991 (but signed in December 1991), to the Philips License Agreement, Hyatt was granted a nonexclusive right to license the "LICENSABLE PATENTS" to Sharp, NEC and Sony. This grant was to expire on December 31, 1991. Pursuant to this Second Supplemental Agreement between Hyatt and Philips, Hyatt executed patent agreements with Sharp, NEC and Sony on November 20, 1991, December 26, 1991 and December 17, 1991 respectively. Hyatt, not Philips, executed these patent agreements.

In the Third Supplemental Agreement dated July 22, 1992, to the Philips License Agreement, Hyatt was granted a nonexclusive right to license the "LICENSABLE PATENTS" to Hitachi. Hyatt executed a patent agreement with Hitachi on August 6, 1992. Hyatt, not Philips, executed this patent agreement. Pursuant to Sections 2 and 3 of the Third Supplemental Agreement between Hyatt and Philips, there was a deviation from the normal equal sharing of the patent payments between Hyatt and Philips as per

---

[19] In Hyatt's deposition, he makes factual allegations that conflict with the terms of the Philips contract. For example, in Volume 1 of Hyatt's August 15, 2005 deposition at pp. 146 – 147, ll. 11 – 10, Hyatt stated that he had signed the Matsushita and Fujitsu agreements on Philips behalf, that Philips under the supplemental agreements had the sole right to license the patents, and that Philips had asked him to sign on their behalf until they got their licensing program started. However, Philips only had a nonexclusive right to license the LICENSABLE PATENTS except for the COMPUTER PATENTS. Only thirteen of the patents listed in the Fujitsu, Oki and Matsushita Patent Agreements were covered under the definition of COMPUTER PATENTS and as to those, the Supplemental Agreement gave Hyatt a nonexclusive license to sublicense them for the period of October 30, 1991 through December 31, 1991. Hyatt did not merely sign these agreements on Philips behalf, he signed them on his own behalf for which he received 50% of the payments net of expenses made pursuant to those contracts.

the original license agreement for the anticipated Hitachi payments. Hyatt received 100% of some of the payments as attributable to his separate patents and the balance of the payments was divided equally. Furthermore, Philips was required to pay out of its share 100% of the payments due to MLMC.

The following patent agreements were between contracting company and either Hyatt as the licensor or Philips as the sub-licensor:

| COMPANY | LICENSOR/ SUBLICENSOR | EFFECTIVE DATE |
|---|---|---|
| OKI | HYATT | 01/31/92 |
| SHARP | HYATT | 11/20/91 |
| SONY | HYATT | 12/17/91 |
| NEC | HYATT | 12/26/91 |
| MATSUSHITA | HYATT | 11/14/91 |
| FUJITSU | HYATT | 10/24/91 |
| HITACHI | HYATT | 08/06/92 |
| SANYO | PHILIPS | 07/28/92 |
| OMRON | PHILIPS | 09/30/92 |
| NIPPON | PHILIPS | 12/15/92 |
| KENWOOD | PHILIPS | 12/22/92 |
| TOSHIBA | PHILIPS | 06/03/94 |

There was also a November 25, 1992, letter offer by Clarion to pay Hyatt a lump sum payment of $10,000,000.

Section 2 of the above Agreements states:

<u>Section 2 – Settlement and Releases</u>

Subject to the payment of the amounts provided for in Section 4.1, HYATT hereby irrevocably releases and covenants not to sue COMPANY . . . with respect to any LICENSED PRODUCT manufactured, used, leased, sold or otherwise disposed of . . . before the EFFECTIVE DATE and with respect to any process or method practiced in the manufacture or use of such LICENSED PRODUCT before the EFFECTIVE DATE.

All twenty-four of the patents that were the subject of these agreements were for intellectual property Hyatt developed, filed for and received patents for during the period Hyatt resided and worked in California.

The following information was obtained from the U.S. Patent and Trademark Office website and it shows that Hyatt filed for and received all of the patents in issue in California while he was a resident:

FTB28789

| | Patent No. | Date Applied For | Date Granted | Inventor | Inventor's Address |
|---|---|---|---|---|---|
| 1 | *4,034,276* | 03/09/1973 | 07/05/1977 | Hyatt, Gilbert P. | P.O. Box 4584, Anaheim, CA 92803 |
| 2 | *4,120,583* | 12/20/1976 | 10/17/1978 | Hyatt, Gilbert P. | P.O. Box 4584, Anaheim, CA 92803 |
| 3 | *4,121,284* | 09/11/1972 | 10/17/1978 | Hyatt, Gilbert P. | 11101 Amigo Ave., Northridge, CA 91324 |
| 4 | *4,225,225* | 10/12/1978 | 09/30/1980 | Hyatt, Gilbert P. | P.O. Box 4584, Anaheim, CA 92803 |
| 5 | *4,310,878* | 04/24/1972 | 01/12/1982 | Hyatt, Gilbert P. | P.O. Box 4584, Anaheim, CA 92803 |
| 6 | *3,986,022* | 06/04/1973 | 10/12/1976 | Hyatt, Gilbert P. | 11101 Amigo Ave., Northridge, CA 91324 |
| 7 | *4,236,223* | 12/27/1976 | 11/25/1980 | Stanly, Albert L.<br><br>Hyatt, Gilbert P. | 2285 W. Broadway, Anaheim, CA 92804<br><br>P.O. Box 4584, Anaheim, CA 92803 |
| 8 | *4,342,906* | 02/02/1978 | 08/03/1982 | Hyatt, Gilbert P. | P.O. Box 4584, Anaheim, CA 92803 |
| 9 | *4,370,720* | 03/07/1972 | 01/25/1983 | Hyatt, Gilbert P. | P.O. Box 4584, Anaheim, CA 92803 |
| 10 | *4,371,92(5?)3* | 12/14/1977 | 02/01/1983 | Hyatt, Gilbert P. | P.O. Box 4584, Anaheim, CA 92803 |
| 11 | *4,396,976* | 09/22/1972 | 08/02/1983 | Hyatt, Gilbert P. | 11101 Amigo Ave., Northridge, CA 91324 |
| 12 | *4,531,182* | 03/01/1972 | 07/23/1985 | Hyatt, Gilbert P. | 11101 Amigo Ave., Northridge, CA 91324 |
| 13 | *4,686,622* | 12/14/1977 | 08/11/1987 | Hyatt, Gilbert P. | P.O. Box 4584, Anaheim, CA 92803 |
| 14 | *4,429,369* | 11/17/1980 | 01/31/1984 | Stanly, Albert L.<br><br>Hyatt, Gilbert P. | 2285 W. Broadway, Anaheim, CA 92804<br><br>P.O. Box 4584, Anaheim, CA 92803 |
| 15 | *4,435,732* | 07/16/1980 | 03/06/1984 | Hyatt, Gilbert P. | P.O. Box 4584, Anaheim, CA 92803 |
| 16 | *4,471,385* | 12/13/1977 | 09/11/1984 | Hyatt, Gilbert P. | P.O. Box 4584, Anaheim, CA 92803 |
| 17 | *4,825,364* | 10/01/1973 | 04/25/1989 | Hyatt, Gilbert P. | 7841 Jennifer Cir., La Palma, CA 90703 |
| 18 | *4,829,419* | 12/14/1977 | 05/09/1989 | Hyatt, Gilbert P. | 7841 Jennifer Cir., La Palma, CA 90623 |
| 19 | *4,896,260* | 04/24/1989 | 01/23/1990 | Hyatt, Gilbert P. | 7841 Jennifer Cir., La Palma, CA 90623 |
| 20 | *4,942,516* | 06/17/1988 | 07/17/1990 | Hyatt, Gilbert P. | 7841 Jennifer Cir., La Palma, CA 90623 |
| 21 | *4,954,951* | 12/13/1988 | 09/04/1990 | Hyatt, Gilbert P. | 7841 Jennifer Cir., La Palma, CA 90623 |
| 22 | *4,614,415* | 02/02/1978 | 09/30/1986 | Hyatt, Gilbert P. | P.O. Box 4584, Anaheim, CA 92803 |
| 23 | *4,672,457* | 09/27/1982 | 06/09/1987 | Hyatt, Gilbert P. | P.O. Box 4584, Anaheim, CA 92803 |
| 24 | *4,739,396* | 09/27/1982 | 04/19/1988 | Hyatt, Gilbert P. | P.O. Box 4584, Anaheim, CA 92803 |

In Hyatt's August 15, 2005, deposition (Hyatt Dep. Trans. Vol. 1, p. 112 - 113) he states that no new information or technology was transferred pursuant to the licensing agreements and that for the payment the companies were getting freedom from being

FTB28790

sued for patent infringement. On the basis of this evidence, it is concluded that the Hyatt/Phillips licensing program was in reality a patent infringement dispute settlement program. There was no technology transferred as a result of the patent agreements as the companies already possessed and apparently commercially employed technology covered by one or more of the twenty-four patents listed in the agreements. Therefore, the payments were primarily for prior "infringement" and only to some extent for future licensing.

It is clear that the patents listed in the Philips license agreement with Hyatt and the agreements with Fujitsu (10/23/91), Oki Electric (10/31/91), Sharp (11/15/91), Matsushita Electric (11/14/91), Sony (12/17/91) and NEC (12/26/91) were for work done by Hyatt in California, during which Hyatt was a California resident. With respect to the payments received by Hyatt in 1992[20] from Hitachi pursuant to the license agreement executed August 6, 1992, they were paid by Hitachi in consideration for the identical settlement release provision that was the subject of Hyatt's agreements with Fujitsu, Oki, Sharp, Matsushita, Sony, and NEC.

If the income is California source income, all of the payments received by Hyatt from the licensing agreements during 1991 and 1992 are taxable by California. Accordingly, it is possible that for taxable year 1992 the department under assessed Hyatt on the licensing income.

In summary:

- Under the licensing agreements Hyatt did not transfer any technology; the payments were made to him in return for his agreement not to sue for patent infringement.
- The assets that gave rise to this income were Hyatt's patents.
- Hyatt had been a California resident since the 1950's, and his work that developed the inventions and technology that gave rise to the patents was performed in California.[21]
- Hyatt's trade or business in California was inventing, obtaining patents for his inventions and then commercially exploiting the patents.
- The patents were the product of the work Hyatt performed in California and no work was done in Nevada that generated any income under the license agreements[22].

Therefore, the patents have a business situs in California and the income is California source income[23].

[20] The August 6, 1992 patent agreement between Hyatt and Hitachi at Article 3.1 states: "In consideration for the release, transfer, and grant of the U.S. LICENSED PATENT rights under Article II, COMPANY agrees to pay and shall pay to HYATT within 30 days after EFFECTIVE DATE the non-refundable sum of Thirty-one Million Dollars ($31,000,000.00) and on or before December 28, 1992 the non-refundable sum of Twenty-Five Million Dollars ($25,000,000.00)."

[21] On FTB Form 3805F Hyatt states that he first became a California resident in 1954 and that from 1983 through 1990 he spent 12 months per year in California.

[22] At protest, Hyatt's responses to IDRs regarding his derivative work in Nevada clearly indicates that during the disputed time period of September 26, 1991, through April 2, 1992, Hyatt only entered into contracts to extract payments from Matsushita, Fujitsu, NEC, Sony, Sharp, and Oki. No new technology was either developed or transferred by Hyatt to Philips or any other licensee during the disputed period.

Law: Source of Income

Rev. & Tax. Code section 17952 in effect during taxable years 1991 and 1992 states:

> Income of nonresidents from stocks, bonds, notes, or other intangible personal property is not income from sources within this state unless the property has acquired a business situs in this state, except that if a nonresident buys or sells such property in this state or places orders with brokers in this state to buy or sell such property so regularly, systematically, and continuously as to constitute doing business in this state, the profit or gain derived from such activity is income from sources within this state irrespective of the situs of the property.

Cal. Code Regs., tit. 18, section 17952, states in pertinent part:

> (a) Income of nonresidents from rentals or royalties for the use of, or for the privilege of using in this State, patents, copyrights, secret processes and formulas, good will, trade-marks, trade brands, franchises, and other like property is taxable, if such intangible property has a business situs in this State within the meaning of (c) below.
> (b) Income of nonresidents from intangible personal property such as shares of stock in corporations, bonds, notes, bank deposits and other indebtedness is taxable as income from sources within this State only if the property has a situs for taxation in this State, except that if a nonresident buys or sells stocks, bonds, and other such property in California, or places orders with brokers in California to buy or sell such property, so regularly, systematically and continuously as to constitute doing business in this State, the profit or gain derived from such activity is taxable as income from a business carried on here, irrespective of the situs of the property for taxation.
> (c) Intangible personal property has a business situs in this State if it is employed as capital in this State or the possession and control of the property has been localized in connection with a business, trade or profession in this State so that its substantial use and value attach to and become an asset of the business, trade or profession in this State. For example, if a nonresident pledges stocks, bonds or other intangible personal property in California as security for the payment of indebtedness, taxes, etc., incurred in connection with a business in this State, the property has a business situs here. Again, if a nonresident maintains a branch

[23] The department is informed and believes that California source income would include, in addition to those payments identified in footnote 8 above, at least the following payments:

| | | | |
|---|---|---|---|
| From Philips – Sanyo | 07/31/92 | $17,835,604 | |
| Hitachi | 09/04/92 | 18,549,433 | |
| Omron | 10/01/92 | 685,084 | |
| Oki | 11/16/92 | 1,275,000 (net) | $ 2,975,787 (gross) |
| Hitachi | 12/28/92 | 14,465,109 (net) | $33,014,542 (gross) |
| Nippon & Kenwood | 12/29/92 | 6,140,935 | |

FTB28792

> office here and a bank account on which the agent in charge of the branch office may draw for the payment of expenses in connection with the activities in this State, the bank account has a business situs here.
>
> If intangible personal property of a nonresident has acquired a business situs here, the entire income from the property including gains from the sale thereof, regardless of where the sale is consummated, is income from sources within this State, taxable to the nonresident.

The State Board of Equalization stated in *Appeal of Amyas and Evelyn P. Ames*, 87-SBE-042, California State Board of Equalization, June 17, 1987:

> The rule of the business situs concept is succinctly revealed in the earlier cases.
>
> > [I]ntangible property may acquire a situs for taxation other than at the domicil of the owner if it has become an integral part of some local business. [Citations.] <u>Business situs arises from the act of the owner of the intangibles</u> in employing the wealth represented thereby, as an integral portion of the business activity of the particular place, so that it becomes identified with the economic structure of that place.... (Emphasis added.)
>
> (*Holly Sugar Corp. v. Johnson*, 18 Cal.2d 218, 223-224 [ 115 P.2d 8] (1941); see also *Appeal of Robert and Patricia Neuschotz*, Cal. St. Bd. of Equal., Mar. 25, 1968.)

California Code of Regulations, title 18, section 17951-4. Income from a business, trade or profession, states in pertinent part:

> (a) If a nonresident's business, trade or profession is carried on entirely without the state, no portion of the net income therefrom is derived from sources within this state. If, on the other hand, the nonresident's business, trade or profession is conducted wholly within the state, the entire net income therefrom is derived from sources within this state.

*Holly Sugar Corp. v. Johnson* (1941) 18 Cal.2d 218, 223-224 [ 115 P.2d 8] states:

> As an exception to the general rule embodied in the legal maxim mobilia sequuntur personam, it is equally well settled that intangible property may acquire a situs for taxation other than at the domicil of the owner if it has become an integral part of some local business. ( *First Bank Stock Corp. v. Minnesota*, 301 U.S. 234 [57 Sup. Ct. 677, 81 L. Ed. 1061]; *Wheeling Steel Corp. v. Fox*, 298 U.S. 193 [56 Sup. Ct. 773, 80 L. Ed. 1143]; *Metropolitan Life Insurance Co. v. New Orleans*, 205 U.S. 395 [27 Sup. Ct. 499, 51 L. Ed. 853]; *State Board of Assessors v. Comptoir National*, 191 U.S. 388 [24 Sup. Ct. 109, 48 L. Ed. 232].) Business situs arises from the act [***8] of the owner of the intangibles in

FTB28793

> employing the wealth represented thereby, as an integral portion of the business activity of the particular place, so that it becomes **[*224]** identified with the economic structure of that place, and loses its identity with the domicil of the owner. (*New Orleans v. Stempel*, 175 U.S. 309 [20 Sup. Ct. 110, 44 L. Ed. 174].) This principle of economic integration with local commercial activities as definitive of business situs was recognized in this state in *Hinckley v. County of San Diego*, 49 Cal. App. 668 [194 Pac. 77], where it was said at pages 671, 672: There must be "something like a general, or more or less continuous, course of business or series of transactions within the state where the property is physically located, as distinguished from mere sporadic and isolated transactions."

*Curry v. McCanless* (1939) 307 U.S. 357, 381-382 [59 S. Ct. 900, 83 L. Ed. 1339] states in pertinent part:

> The general rule of mobilia sequuntur personam must yield to the established fact of legal ownership, actual presence and control in a State other than that of the domicile of the owner. The phrase "business situs" as used to support jurisdiction of a State other than that of the domicile of the owner to impose taxes on intangible personal property is a metaphorical expression of vague signification; its meaning is not limited to investment or actual use as an integral part of a business or activity, but may extend to the execution of trusts such as those created by the indenture and imposed on the trustee in this case. *De Ganay v. Lederer*, 250 U.S. 376, 381, 382, 39 S.Ct. 524, 525, 526, 63 L.Ed. 1042; *New York ex rel. Whitney v. Graves, supra*, 299 U.S. 372 et seq., 57 S.Ct. 238, 81 L.Ed. 285; *Wheeling Steel Corp. v. Fox, supra*, 298 U.S. 211, 56 S.Ct. 777, 80 L.Ed. 1143; *First Bank Stock Corp. v. Minnesota*, 301 U.S. 234, 57 S.Ct. 677, 81 L.Ed. 1061, 113 A.L.R. 228

Helllerstein, State Taxation of Corporate Income From Intangibles: Allied-Signal and Beyond (Fall 1993) 48 Tax L. Rev. 739, states in pertinent part:

> n181 . . . The Supreme Court has defined business situs as the state in which "intangibles . . . are used in the business or are incidental to it, and have thus become 'integral parts of some local business.'" *First Bank Stock Corp. v. Minnesota*, 301 U.S. 234, 237 (1937). Several states allocated income from patents and copyrights to the state or states in which the patent or copyright was used. Altman & Keesling, note 179, at 79-80; Hartman, State Taxation, note 179, at 60
>
> * * *
>
> States also allocated income from intangibles to the "business situs" of the intangible n208 on the theory that intangibles "may acquire a situs for taxation other than at the domicile of their owner if they have **[*776]** become integral parts of some local business." n209

FTB28794

* * *

n212 *First Bank Stock Corp. v. Minnesota*, 301 U.S. 234, 237-38 (1937). The Court held that Minnesota could tax shares of stock owned by a Delaware corporation that actively managed the stocks of its subsidiaries in Minnesota. While the case supports the view that business situs provides a constitutional predicate, apart from domicile, for taxing intangibles, the Court, in fact, relied on both the commercial domicile and business situs concepts in sustaining Minnesota's power to tax: "it is plain that the business which appellant carries on in Minnesota . . . is sufficiently identified with Minnesota to establish a 'commercial domicil' there, and to give a business situs there, for purposes of taxation, to intangibles which are used in the business or are incidental to it, and have thus 'become parts of some local business.'" Id. at 237 (citing *Wheeling Steel Corp. v. Fox*, 298 U.S. 203, 210 (1936)). A corporation's commercial domicile and the business situs of its intangibles, however, will not always coincide and, when they do not, it is the state of business situs rather than the state of commercial domicile to which the intangible (or the income it generates) is generally assigned. See, e.g., id. at 241 (mobilia rule and related considerations "support taxation of intangibles at the place of domicil, at least where they are not shown to have acquired a business situs elsewhere") (emphasis supplied); Liverpool & London, 221 U.S. at 354 ("[t]he legal fiction, expressed in the maxim mobilia sequuntur personam, yields to the fact of actual control elsewhere"); *Humble Oil & Ref. Co. v. Calvert*, 414 S.W.2d 172, 176 (Tex. 1967) ("The rule allows the state in which a corporation has its commercial domicile to base a tax upon income from all the corporation's intangibles which have not established an independent business situs elsewhere"). As a matter of contemporary constitutional doctrine, the Due Process Clause would not bar the double taxation that would result if conflicting claims of the state of commercial domicile and business situs were permitted to coexist. See notes 11 and 207. Nevertheless, such multiple taxation likely would be barred by the Commerce Clause. See note 207. In any event, the few state statutes that currently rely on the business situs rule in conjunction with the commercial domicile rule provide that the income is allocable to the commercial domicile only when it has not established a business situs elsewhere. See, e.g., Okla. Stat. Ann. tit. 68, § 2358(A)(4)(b) (West Supp. 1994); see generally Appendix.

Altman & Keesling, Allocation of Income in State Taxation, (1950 ed.) pages 34-37, states in pertinent part:

> As to a state in which a taxpayer has no domicile, legal or otherwise, the taxing power as it has been indicated, extends to all income derived from sources within the state.[56] It would follow that where the source of the income is property, the location, or situs, of the property would have to be within the state. However, if the property consists of intangibles it has no actual situs, even though it may be

[56] *Shaffer v. Carter*, 1 STC ¶ 235, Okla. CT ¶ 10-008.01, 252 U.S. 34, 40 S. Ct. 221 (1920).

FTB28795

represented by paper evidences, such as stock certificates.[57] "such rights are but relationships between persons, natural or corporate, which the law recognizes by attaching to them certain sanctions enforceable in courts."[58]

Because of this the law has for tax purposes indulged in fictions. One of these fictions is represented by the maxim mobilia sequuntur personam—that the association of intangibles with the person of the owner give them a situs at the domicile of the owner. Thus, where securities were held in trust in New York, and the trust was created by a New York decedent, a personal property tax levied on one-half of the value of the securities by the city of Newport, Rhode Island, was upheld because one of two trustees resided there.[59]

A contrary fiction, however, is that of "business situs," under which intangibles which are an integral part of a business carried on at a place are given a situs at that place. Thus, securities in a testamentary trust have been held to have a situs for tax purposes in the state in which the will was probated and the trust set up and administered.[60] Again, a membership owned by a non-resident in the New York Stock Exchange was held to have a situs in New York, so that a gain on the sale of the membership was held subject to New York income tax.[61] The situs attributed is still a fiction, however.

Where the question is one of power to tax it "must be dealt with in a large way, . . . not narrowly or pedantically, in slavery to forms and phrases."[62] In the case of a non-resident the ultimate question is whether the income is attributable to something within the state, be it property located or controlled there, or business or other acts performed there. This is all the more emphasized by the fact that in showing such a relation the corporate veil is no barrier. Thus, if the intangible property is stock in a foreign corporation doing business within the state, then to the extent derived from the corporation's earnings in the state the dividends paid on the stock, wherever they may be paid are derived from sources within the state.[63]

The question being one of legislative power, the answer must be determined by reality and substance. If in reality and substance the income is attributable to property or activity within the state it is taxable there.

---

[57] *Curry v McCanless,* 1 STC ¶ 446, Tenn. Ct. ¶ 24-006, 307 U. S. 357, 59 S. Ct. 900 (1937).
[58] *Ibid.*
[59] *Greenough v. Tax Assessors, City of Newport,* 2 STC ¶ 200-024, 331 N. S. 486, 67 S. Ct. 1400 (1947).
[60] *Guaranty Trust Co. v. Virginia,* 1 STC ¶ 241, Va. CT ¶ 10-201.18, 305 U. S. 19, 59 S. Ct. 1 (1938).
[61] *People ex rel. Whitney v. Graves,* 1 STC ¶ 237, N. Y. CT ¶ 15-916.23, 299 U. S. 366, 57 S. Ct. 237 (1937).
[62] *Burnet v. Wells*(1933) 289 U. S. 670, 53 S. Ct. 761.
[63] *Wisconsin v. J. C. Penney Co.,* 1 STC ¶ 250, Wis. CT ¶ 15-003.553, 311 U. S. 435, 61 S. Ct. 246 (1940).

FTB28796

Black's Law Dictionary, Revised Fourth Edition, defines business situs as follows:

> A situs acquired for tax purposes by one who carried on a business in the state more or less permanent in nature. . . . A situs arising where possession and control of property right has been localized in some independent business or investment away from the owner's domicile so that its substantial use and value primarily attach to and become an asset of the outside business.

The doctrine that intangibles may be taxed at their business situs, as distinguished from the legal domicile of their owner has usually been applied to obligations to pay money, acquired in the course of a localized business. (*City of New Orleans v. Stempel* (1899) 175 U.S. 309, 20 S.Ct. 110; *Bristol v. Washington County* (1900) 177 U.S. 133, 20 S.Ct. 585, 746 44 L.Ed. 701; *State Board of Assessors v. Comptoir National D'Escompte de Paris* (1903) 191 U.S. 388, 24 S.Ct. 109; *Metropolitan L. Ins. Co. v. New Orleans* (1907) 205 U.S. 395, 27 S.Ct. 499; *Wheeling Steel Corporation v. Fox* (1936) 298 U.S. 203, at pages 212, 213, 56 S.Ct. 773, 778.)

In *City of New Orleans v. Stempel, supra,* the court stated:

> If we look to the decisions of other states we find the frequent ruling that when an indebtedness has taken a concrete form and become evidenced by note, bill, mortgage, or other written instrument, and that written instrument evidencing the indebtedness is left within the state in the hands of an agent of the nonresident owner, to be by him used for the purposes of collection and deposit or reinvestment within the state, its taxable situs is in the state.

The *City of New Orleans* court then went on at page 317 to cited *Catlin v. Hull*, 21 Vt. 152, in which the rule was thus announced (pages 159, 161):

> But even this doctrine is to be received and understood with this limitation, that there is no positive law of the country, where the property is in fact, which contravenes the law of his domicil; for if there is, the law of the owner's domicile must yield to the law of the state where the property is in fact situate.'
>
> * * *
>
> . . . and thus avail themselves of the benefits and advantages of our laws for the protection of their property, their property should yield its due proportion towards the support of the government which thus protects it.'

The *City of New Orleans* court went on at page 318 to discuss the maxim "mobilia sequuntur personam":

> 'This maxim is at most only a legal fiction; and Blackstone, speaking of legal fictions, says, 'This maxim is invariably observed, that no fiction shall extend to work an injury, its proper operation being to prevent a mischief or remedy an inconvenience that might result from the general rule of law.' 3 Bl. Com. 43. Now as the state of Illinois, and not Kansas, must furnish the plaintiff with all the remedies that he may have for the enforcement of all his rights connected with said notes, debts, etc., it

> would seem more just, if said debt is to be taxed at all, that the state of Illinois, and not Kansas, should tax it, and that we should not resort to legal fictions to give the state of Kansas the right to tax it.'

In *Metropolitan Life Insurance Company of New York v. City of New Orleans* (1907) 205 U.S. 395, the court stated at page 400:

> It is usually easy to determine the taxable situs of tangible personal property. But where personal property is intangible, and consists, as in this case, of credits reduced to the concrete form of promissory notes, the inquiry is complicated not only by the fiction that the domicil of personal property follows that of its owner, but also by the doctrine, based upon historical reasons, that where debts have assumed the form of bonds or other specialties, they are regarded for some purposes as being the property itself, and not the mere representative of it, and may have a taxable situs of their own.

And citing to the decision in *New Orleans v. Stempel, supra*, at page 402:

> 'Persons are not permitted to avail themselves, for their own benefit, of the laws of a state in the conduct of business within its limits, and then to escape their due contribution to the public need, through action of this sort, whether taken for convenience or by design.'

The *Metropolitan Life Insurance Company of New York* court concluded by finding at page 402:

> Their removal with the intent that they shall return whenever needed, their long-continued though not permanent absence, cannot have the effect of releasing them as the representatives of investments in business in the state from its taxing power. The law may well regard the place of their origin, to which they intend to return, as their true home, and leave out of account temporary absences, however long continued. Moreover, neither the fiction that personal property follows the domicil of its owner, nor the doctrine that credits evidenced by bonds or notes may have the situs of the latter, can be allowed to obscure the truth. *Blackstone v. Miller*, 188 U.S. 189, 47 L. ed. 439, 23 Sup. Ct. Rep. 277.

Conclusion

The taxpayer protested the NPAs. The taxpayer bears the burden of proof on all issues, other than the fraud penalty[24], and has a duty to cooperate with the department[25]. The

---

[24] *Appeal of Richard A. and Virginia R. Ewert*, 64-SBE-039, April 7, 1964; *Appeal of Herbert Tuchinsky*, 70-SBE-021, July 1, 1970.

[25] The burden of proof in tax disputes is on the taxpayer (*Appeal of Kikkoman International, Inc.*, Cal. St. Bd. of Equal., June 29, 1982) and the California State Board of Equalization (SBE) has recognized that a taxpayer's position may suffer when the record is factually incomplete. (*Appeal of Sierra Production Services, Inc.*, Cal. St. Bd of Equal., September 12, 1990). In *Appeal of BSR USA, Ltd.*, Cal. St. Bd of Equal., April 11, 1996, where the taxpayer failed and refused to provided information to the auditor which was necessary for the Franchise Tax Board to make a determination, the SBE refused to abate the tax or penalties, stating that the behavior betrayed the

FTB28798

department has the duty and authority to investigate[26]. Any failure or refusal to cooperate during the protest process may be asserted as a failure to exhaust administrative remedies in any appeal or litigation of this matter beyond this protest. (*Wallace Berrie & Co. v. State. Bd of Equal.* (1985) 40 Cal.3d 60, 66; *E. C. Barnes v. State Bd of Equal.* (1981) 118 Cal.App.3d 994, 1001; see also *United States Steel Corp. v. Franchise Tax Board* (1983) 144 Cal.App.3d 473, 479 - 480, and *A&M Records v. State Bd of Equal.* (1988) 204 Cal.App.3d 358, 368, 370.)

For this protest, the protest hearing officer found that the taxpayer, inter alia, has concealed records, manipulated records, failed to produce records timely and in many instances failed to produce requested records even after multiple requests, gave false and misleading information, suborned the falsification of records, and gave false or misleading testimony. The department is informed and believes that the taxpayer is in possession of each and every document that the protest hearing officer relied upon in reaching her determination and in all likelihood most if not all of the documentation that the protest hearing officer requested but did not receive.

Based upon all of the foregoing, the protest hearing officer has made the following determinations:

- The taxpayer was a resident of California at least until April 3, 1992.
- The taxpayer failed to cooperate during the protest and because of that the alleged error in the 1992 NPA cannot be verified with any degree of certainty.
- The actions of the taxpayer support the imposition of the fraud penalties for both taxable years.

In addition and in the alternative, the protest hearing officer has made the following determination:

- The assets from which the income in issue was generated had a California business situs and was California source income.

With that, her determination is to affirm the Notices of Proposed Assessment for 1991 and 1992.

This letter presents the proposed determination on the Protest of Gilbert P. Hyatt for taxable years 1991 and 1992. You have thirty days from the date of this determination letter to respond. Your response must be limited to producing new information and documentation, information and documentation that to date has not been produced by the taxpayer at audit, during this protest, or in the litigation of *Gilbert P. Hyatt v. Franchise Tax Board of the State of California*, District Court, Clark County, Nevada, Case No. A382999. In the event that you do not provide any new information within thirty days of

---

taxpayer's true intentions and was conduct which the SBE could not condone. (See also *Honeywell, Inc. v. SBE* (1982) 128 Cal.App.3d 739, 749.)

[26] The California courts have recognized that the Franchise Tax Board's power of examination under Revenue and Taxation Code section 19504 is analogous to the power of a grand jury, allowing the department wide latitude in gathering information it deems necessary to establish the correctness of the tax. (*People ex. rel. Franchise Tax Board v. Superior Court* (1985) 164 Cal.App.3d 526, 538.)

Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 203 of 244

Hyatt, Gilbert - 1992
7150053859256163

the date of this letter, the protest for taxable years 1991 and 1992 will be closed and Notices of Action will be issued in due course. No extensions to the thirty day response period will be granted.

As you know, the closing of the protest does not preclude the taxpayer from exercising his right to further review of the matter by the State Board of Equalization and the courts. Once the Notices of Action are issued, the taxpayer may file an appeal to the State Board of Equalization.

Very truly yours,

George W. McLaughlin,
Sr. Tax Counsel,
Acting Supervising Tax Counsel

FTB28800

FTB 9904 PASS (NEW 4-1997) Docketed Protest / Claim\Draft Correspondence\DETERMINATION LETTER\Page 50 of 50

2320-0050

RJN000690

MORRISON | FOERSTER

400 CAPITOL MALL
SUITE 2600
SACRAMENTO
CALIFORNIA 95814-4428

TELEPHONE: 916.448.3200
FACSIMILE: 916.448.3222

WWW.MOFO.COM

MORRISON & FOERSTER LLP
NEW YORK, SAN FRANCISCO, LOS ANGELES, PALO ALTO, SAN DIEGO, WASHINGTON, D.C.
NORTHERN VIRGINIA, ORANGE COUNTY, DENVER, SACRAMENTO, WALNUT CREEK
TOKYO, LONDON, BEIJING, SHANGHAI, HONG KONG, SINGAPORE, BRUSSELS

November 20, 2007

Writer's Direct Contact
916.325.1324
ECoffill@mofo.com

By Fax (916) 845-3648 and
Certified Mail No. 7004 2890 0002 6196 5241
Return Receipt Requested

George W. McLaughlin
Senior Tax Counsel,
Acting Supervising Tax Counsel
Franchise Tax Board - Legal Division
P.O. Box 1720
Rancho Cordova, CA 95741-1720

Re: Protests of Gilbert P. Hyatt
Income Years 1991 and 1992

Dear Mr. McLaughlin:

We are in receipt of your letter dated November 1, 2007. The letter is 50 pages in length and states it serves as a single "determination letter" for purposes of the above entitled protests for the income years 1991 and 1992. The purpose of this letter is not to provide a substantive response to the FTB's determination letter. Instead, we respond to two procedural issues.

Your letter states at pages 49-50 the taxpayer has "thirty days from the date of this determination letter to respond," and that such response "must be limited to producing new information and documentation," and "[n]o extensions to the thirty day response period will be granted." First, and for the reasons discussed below, we hereby request a six-month extension of time from the date of this letter in which to respond to the FTB's November 1, 2007 determination letter. Second, and for the reasons discussed below, the FTB's attempt to limit the taxpayer's response "to producing new information and documentation" and disallowing the taxpayer the right and opportunity to make a substantive response to the FTB's 50-page determination letter is a violation of the taxpayer's due process rights under the California and U.S. Constitutions and the taxpayer's rights under the California Taxpayers' Bill of Rights set forth at Revenue and Taxation Code Sections 21001 et seq. FTB's action is particularly significant since the FTB made substantive determinations on issues which were not part of the FTB's proposed assessments issued for 1991 and 1992 (e.g., sourcing).

MORRISON | FOERSTER

George W. McLaughlin
November 20, 2007
Page Two

To begin with, a brief review of the history of these protests is necessary:

- June 20, 1996 — Protest filed with FTB for income year 1991
- October 10, 1997 — Protest filed with FTB for income year 1992
- September 27, 2000 — Protest hearing for income year 1992
- October 4, 2000 — Protest hearing for income year 1991
- February 2, 2001 — 132-page position letter submitted to FTB supplementing the 1992 protest
- May 31, 2001 — 190-page position letter submitted to FTB supplementing the 1991 protest

Accordingly, the protests for the 1991 and 1992 years in issue were filed over 11 and 10 years ago, respectively. The protest hearings for the 1991 and 1992 years in issue were held over seven years ago. The 190-page and 132-page positions letters for the 1991 and 1992 years in issue were submitted over six years ago. The FTB has never previously responded in a substantive way to Mr. Hyatt's 1996 or 1997 protest letters or to the two 2001 position letters supplementing the protests, the first of which was filed over eleven years ago.

Despite the passage of over a decade since the filing of the protests for the years in issue, and despite the fact FTB has had over six years to respond to the taxpayer's 190-page and 132-page position letters for the years in issue, the FTB is now limiting the taxpayer to 30 days, with no possibility of an extension of time, to respond to its 50-page determination letter. We contend this position violates the taxpayer's due process rights under the California and U.S. Constitutions, is a violation of the taxpayer's rights under the California Taxpayers' Bill of Rights, offends FTB's own Mission and Statement of Principles of Tax Administration, and stands in direct contradiction to what the FTB's protest hearing officer represented during the course of these proceedings.

The California Legislature, in enacting the Taxpayers' Bill of Rights Act, expressly stated: "It is the intent of the Legislature that ... the Franchise Tax Board may inquire into, and shall allow the taxpayer every opportunity to present, all relevant information pertaining to the taxpayer's liability." (Rev. & Tax. Code § 21002.) The FTB's Mission states the FTB will "perform in a manner warranting the highest degree of public confidence in our integrity, efficiency and fairness." The FTB's Statement of Principles of Tax Administration states the FTB's tax administration should be "conducted ... with great courtesy and considerateness." The FTB's issuance of a 50-page determination letter, after having eleven years to consider the documentation and information submitted by the taxpayer, with a 30-day response period

MORRISON | FOERSTER

George W. McLaughlin
November 20, 2007
Page Three

is certainly not performance by the FTB "warranting the highest degree of public confidence in [its] integrity, efficiency and fairness," and clearly is not conduct showing "great courtesy and considerateness." FTB's position is particularly egregious because of the fraud penalties, the issues of significant FTB errors, and the substantial amounts of the assessments of taxes, penalties on top of penalties, and interest. Moreover, the FTB has now made a substantive determination against the taxpayer on a California source income theory, for the first time in the history of this case, in the November 1, 2007 determination letter. Indeed, these issues were long ago disposed of within the FTB without making them an issue with Mr. Hyatt. In particular, the record is replete with evidence that the FTB during the audit phase of this case specifically considered and rejected an assessment based on a California source income theory. In fact, the sourcing issue by itself requires 19 pages out of your 50-page letter, yet you state Mr. Hyatt is limited to 30 days to respond to this issue that the FTB now apparently views as highly significant. There is nothing even remotely fair about the FTB's 30-day response deadline.

We have made clear many times throughout the course of these protest proceedings the taxpayer requires several months' time to respond to the FTB's proposed determination in these matters. As discussed during the September 27, 2000 and October 4, 2000 protest hearings and in our letter to you dated March 7, 2002, "we will require a substantial amount of time, probably two to three months, to respond to your proposed determination letters for 1991 and 1992. We will require even *more* time should your proposed determination letters raise or present new issues not previously raised by FTB at either audit or protest." (March 7, 2002 Letter from E. Coffill to G. McLaughlin, emphasis original.) As you are well aware, the FTB's November 1, 2007 determination letter raises for the first time in the course of these proceedings a new source income issue, which the taxpayer has never had an opportunity to address.

In addition, during a telephone conversation with Cody Cinnamon, the protest hearing officer in this matter, on April 25, 2005, we again discussed the taxpayer's need to have several months to respond to the FTB's determination in these matters. In response to that telephone conversation, Ms. Cinnamon assured us in a letter dated June 7, 2005 that the taxpayer would have "ample time" to respond to the FTB's proposed determination. Specifically, Ms. Cinnamon stated:

> In a telephone conversation on or about April 25, 2005, you expressed a concern that you will need adequate time, several months, to respond to our proposed determination with regard to the geographic sourcing issue relating to Mr. Hyatt's Schedule C patent/license fee income. *Please be assured that you will have ample time to review and respond to our position letter prior to the issuance of notices of action* on the protested

sa-54251

FTB28945

MORRISON | FOERSTER

George W. McLaughlin
November 20, 2007
Page Four

> notices of proposed assessments for taxable years 1991 and 1992.

(June 7, 2005 Letter from C. Cinnamon to E. Coffill, emphasis added.)

"Ample time" is not thirty days and is far from our understanding with Ms. Cinnamon on this issue during the course of the protest proceedings. Accordingly, we request a six-month extension of time from the date of this letter to respond to the FTB's proposed protest determination for the years in issue as set forth in your letter of November 1, 2007.

In addition, we contend the FTB's attempt to limit the taxpayer's response "to producing new information and documentation" is likewise a violation of the taxpayer's due process rights under the California and U.S. Constitutions and the taxpayer's rights under the California Taxpayers' Bill of Rights. The November 1, 2007 determination letter is the first time in over eleven years that the FTB has provided a written response to the taxpayer's 1996 initial protest letter and in over six years that the FTB has provided a written response to the taxpayer's 190-page and 132-page position letters supplementing the protests on the residency issue for the years in issue. In addition, the November 1, 2007 determination is the first time, ever in the course of these protests or the underlying audit proceedings that the FTB made a substantive determination on a California source income issue against the taxpayer. To disallow the taxpayer the opportunity to substantively respond to these written position statements, and to limit the taxpayer's response "to producing new information and documentation," is unfair and unreasonable. We request that you reconsider your initial position and confirm whether the FTB truly intends to limit the taxpayer's response to the November 1, 2007 determination letter in this fashion.

We look forward to your immediate and expeditious grant of our requests.

Very truly yours,

Eric J. Coffill

Eric J. Coffill

cc: Gilbert P. Hyatt
Michael Kern

FTB28946

sa-54251

MORRISON & FOERSTER LLP
Attorneys at Law
400 Capitol Mall
Suite 2600
Sacramento, California 95814
Telephone: (916) 448-3200
Facsimile: (916) 448-3222

To:

| NAME: | FACSIMILE: | TELEPHONE: |
|---|---|---|
| George W. McLaughlin<br>FTB Legal Department | 916.845.3648 | |

FROM: Eric J. Coffill (916) 325-1324 DATE: November 20, 2007

| Number of pages with cover page: 5 | Hard copy to follow via certified/return receipt mail. |
|---|---|

Preparer of this slip has confirmed that facsimile number given is correct: 6641/kal5

CAUTION - CONFIDENTIAL

This facsimile contains confidential information which may also be privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not copy, use, or distribute it. If you have received it in error, please advise Morrison & Foerster LLP immediately by telephone or facsimile and return it promptly by mail.

Comments:

11/20/2007 letter.

#44469/1

sa-54255

FTB28947

NOV-20-2007 16:43 9164483222 97% P.01



STATE OF CALIFORNIA
**FRANCHISE TAX BOARD**
**Legal Division**
PO Box 1720
Rancho Cordova, CA 95741-1720
(916) 845-6041 Fax (916) 845-3648

JOHN CHIANG
Chair

BETTY T. YEE
Member

MICHAEL C. GENEST
Member

November 26, 2007

Morrison & Foerster LLP
Attn: Eric J. Coffill, Esq.
400 Capitol Mall, Suite 2600
Sacramento, CA 95814-4428

Re: Protest of Gilbert P. Hyatt
Taxable Years 1991 and 1992

Dear Mr. Coffill:

We received your letter dated November 20, 2007, which was in response to our determination letter dated November 1, 2007. In your letter you make Federal and California constitutional due process arguments, raise California Taxpayer's Bill of Rights and administrative process concerns, and you comment on the length of time that the taxpayer's case has been in the protest process. Without responding to each and every allegation and argument in your letter, we would point out the following:

- Revenue and Taxation Code section 19044 outlines the Franchise Tax Board's (FTB) duty with regard to protests and provides that if a taxpayer files a protest of a deficiency assessment the FTB shall reconsider the assessment and, if requested, shall grant the taxpayer an oral hearing.

- Revenue and Taxation Code section 19504 outlines the FTB's authority with regard to protests and provides that the FTB is entitled to seek evidence for use in an administrative protest challenging a deficiency assessment, because the administrative protest process is investigative in nature.

- The taxpayer was allowed two days for his protest hearing (September 27 and October 4, 2000), and you appeared and argued the taxpayer's case on both days.

- In an effort to fulfill her duties, during the protest process the protest hearing officer asked the taxpayer to respond to multiple requests for information and documentation[1]. The taxpayer was not forthright in responding to the requests.

- Again in an effort to fulfill her duties while faced with the taxpayer's continuing efforts to frustrate the process, the protest hearing officer diligently pursued information and

[1] In addition, the taxpayer was at all times free to provide information and documentation that had not been requested by the protest hearing officer.

FTB28802

documentation through the administrative subpoena process, which effort was ratified as appropriate by the California Court of Appeal[2].

- In reaching her determination, the protest hearing officer reviewed and considered all of the information and documentation that was available to her, and she clearly reviewed in detail and considered your letters dated February 2 and May 31, 2001, along with your other submissions.

In earlier correspondence, the taxpayer insisted that the protest process should be expedited and closed. In recent correspondence, including your July 31 and November 20, 2007, letters, you allege that the efforts of the protest hearing officer to move the case toward closing are detrimental to the taxpayer. The FTB would argue that the taxpayer has impeded the protest process through dilatory tactics and collateral attacks in the Nevada Courts and California Courts, and your current rhetoric merely reinforces that conclusion. Therefore, there is no reason to believe that the taxpayer will change his pattern of conduct should your request for an extension of time be allowed.

With regard to the source of income issue, at and before the protest hearing you were apprised that source of income would be an issue; it was specifically discussed at and subsequent to the protest hearing in conversations and correspondence between you and the protest hearing officer. You most certainly have had the opportunity to address the issue and it is not a new issue for purposes of this protest. Beyond that, the taxpayer will have the opportunity to address the source of income and the other issues in detail, should he elect to pursue his dispute of the assessments through the State Board of Equalization and the court.

The FTB stands by the determination on protest outlined in our letter dated November 1, 2007, and the timeframe identified for the taxpayer to respond substantively to that letter by providing new documentation. If the taxpayer intends to respond substantively to that letter, then we would expect to receive that response on or about December 3, 2007.

Very truly yours,

George McLaughlin

George W. McLaughlin,
Sr. Tax Counsel,
Acting Supervising Tax Counsel

[2] *State Franchise Tax Board v. Gilbert P. Hyatt* (CA3 2003), Case No. C043627, filed 12/31/03.

FTB28803

SBE000010

STATE OF CALIFORNIA
FRANCHISE TAX BOARD
LEGAL BRANCH
P.O. BOX 1720
RANCHO CORDOVA, CA 95741-1720

Date: 11-27-07

# FACSIMILE TRANSMITTAL COVER SHEET

**CONFIDENTIALITY NOTE:**

This telecopy may contain confidential and/or legally privileged information and is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, the employee, or agent responsible for delivering this telecopy to the intended recipient, be advised that any copying, dissemination, distribution, unauthorized inspection, or disclosure of information from this telecopy is prohibited. Persons disclosing confidential information are subject to penalties under applicable laws.

If you have received this telecopy in error, please notify the sender immediately by telephone and mail the entire facsimile message back to us at the address listed above.

Please deliver the following page(s)

**TO:**
NAME : ERIC COFFILL
FIRM/UNIT : MORRISON & FOERSTER
FAX NO. : (916) 448-3222
PHONE NO.: (916) 325-1324

RE : PROTEST OF HYATT

**FROM:**
NAME : GEORGE McLAUGHLIN
FIRM/UNIT : FTB - LEGAL
FAX NO. : (916) 845-3648
PHONE NO.: (916) 845-6041

Number of pages FAXED: 3 (includes this page)

Hard copy: ☒ will follow ☐ will not follow

Comments:

FTB 7081 (REV 06-1999)

******************* -COMM. JOURNAL- ******************* DATE NOV-27-2007 ***** TIME 18:25 ********

MODE = MEMORY TRANSMISSION START=NOV-27 18:23 END=NOV-27 18:25

FILE NO.=422

| STN NO. | COMM. | ABBR NO. | STATION NAME/TEL NO. | PAGES | DURATION |
|---|---|---|---|---|---|
| 001 | OK | * | 94483222 | 003/003 | 00:01:46 |

-FTB/LEGAL BRANCH- ***** - 916 845 3648- *******

-FRANCHISE TAX BOARD/LEGAL-

FTB28801

SBE000011

MORRISON | FOERSTER

400 CAPITOL MALL
SUITE 2600
SACRAMENTO
CALIFORNIA 95814-4428

TELEPHONE: 916.448.3200
FACSIMILE: 916.448.3222

WWW.MOFO.COM

MORRISON & FOERSTER LLP
NEW YORK, SAN FRANCISCO, LOS ANGELES, PALO ALTO, SAN DIEGO, WASHINGTON, D.C.
NORTHERN VIRGINIA, ORANGE COUNTY, DENVER SACRAMENTO, WALNUT CREEK
TOKYO, LONDON, BEIJING, SHANGHAI, HONG KONG, SINGAPORE, BRUSSELS

January 22, 2008

Writer's Direct Contact
916.325.1324
ECoffill@mofo.com

By Fax and Mail This Date: Fax 916.324.2597 (Board Proceedings)

By Certified Mail No. 7004 2890 0002 6196 5289
Return Receipt Requested

Chief, Board Proceedings Division
MIC:81
State Board of Equalization
450 N Street
P.O. Box 942879
Sacramento, CA 94279-0081

Re: Gilbert P. Hyatt
FTB Account No. 1200483482
Taxable Year 1991

Dear Sir/Madam:

Enclosed please find two copies of the taxpayer's Notice of Appeal (and Regulation 5075.1(b)(1) request) in the above matter. Please acknowledge receipt at your earliest convenience.

Sincerely,

Eric J. Coffill

Eric J. Coffill

Enclosures

cc: Gilbert P. Hyatt (w/encl.)

sa-54766

ERIC J. COFFILL
CARLEY A. ROBERTS
DAVID A. ZIRING
MORRISON & FOERSTER LLP
400 Capitol Mall, Suite 2600
Sacramento, CA 95814
Telephone: (916) 325-1324
Fax: (916) 448-3222
ecoffill@mofo.com

Attorneys for Appellant

BEFORE THE STATE BOARD OF EQUALIZATION

OF THE STATE OF CALIFORNIA

| In the Matter of the Appeal of<br><br>GILBERT P. HYATT | No. __________ |
|---|---|

**NOTICE OF APPEAL FROM NOTICE OF ACTION**

**AND**

**REGULATION 5075.1(b)(1) REQUEST TO FILE BRIEF**

**Taxable Year 1991**

## INTRODUCTION

Pursuant to California Revenue and Taxation Code Section 19045 et seq., and SBE Regulation 5012 (18 Cal. Code of Regs. § 5012),[1] Gilbert P. Hyatt ("Hyatt" or "taxpayer" or "appellant"), hereby appeals from the Notice of Action ("Notice") issued to the taxpayer by the Franchise Tax Board ("FTB" or "respondent"), which affirmed a Notice of Proposed Assessment issued by the FTB against the taxpayer for the taxable year 1991 ("the year in issue") in the amounts set forth below.

In this regard, the following information is provided:

**Name of Taxpayer:** Gilbert P. Hyatt

| **Amounts Involved:** | Additional Tax: | $ 1,876,471.00 |
|---|---|---|
| | Penalty: Accuracy Related (Fraud): | $ 1,407,353.25 |
| | Interest to December 26, 2007: | $ 7,240,946.81 |
| Total Additional Tax, Penalty and Interest: | | $ 10,524,771.06 |

**Year Involved:** Taxable Year 1991

**Date of Notice of Action:** December 26, 2007

**Name and Address of Taxpayer's Representatives:**

Eric J. Coffill
Carley A. Roberts
David A. Ziring
Morrison & Foerster LLP
400 Capitol Mall, Suite 2600
Sacramento, CA 95814
Tel: (916) 325-1324
Fax: (916) 448-3222
ecoffill@mofo.com

A copy of a power of attorney is attached hereto as Exhibit A.

---

[1] Appellant is aware of the new pending SBE Rules for Tax Appeals, including rules which apply to appeals from actions of the FTB. However, as of the date of the filing of this Appeal, those new rules are not effective and will not become effective until February 6, 2008, i.e., the 30th day after their January 7, 2008 filing with the Secretary of State. (*See* Gov. Code §§ 11349.3; 11343.4.)

**STATEMENT OF FACTS AND ISSUES,**
**AND POINTS IN SUPPORT OF POSITION**

On April 23, 1996, *over eleven years ago*, the FTB issued a Notice of Proposed Assessment to Mr. Hyatt for the year in issue. On June 20, 1996, a timely protest was filed. On October 4, 2000, *over seven years ago*, the protest hearing was held. On multiple occasions, both before and after the protest hearing, the taxpayer provided the FTB with additional information during the protest process, including a 190-page protest supplement letter. On November 1, 2007, the FTB issued a 50-page protest determination letter, to which Mr. Hyatt was given a maximum of 30 days to respond. On December 26, 2007, the Notice was issued. This appeal follows.

**ISSUES ON APPEAL**

The issues raised herein on appeal are as follows:

1. The taxpayer appeals in full from the adjustments set forth in the Notice which sustained the Notice of Proposed Assessment, including the penalty.

2. The taxpayer appeals the FTB's audit and protest determinations regarding California residency and which concluded Mr. Hyatt was a resident "through April 2, 1992."

3. The taxpayer appeals from the FTB's protest determination regarding an alternative California "source" income argument that was not a basis for the issuance of the Notice of Proposed Assessment, but which is stated in the Notice as an alternative basis for sustaining the Notice of Proposed Assessment.

4. The taxpayer appeals from the FTB audit and protest determinations which imposed an accuracy related (fraud) penalty.

5. The taxpayer appeals from the FTB's decision, as indicated on the Notice, to impose an amnesty penalty under Revenue and Taxation Code Section 19777.5.

6. The taxpayer hereby makes a request for abatement of interest for the year in issue, under Revenue and Taxation Code Section 19104(b)(4). *See* FTB Form 3701, attached hereto as Exhibit B.

7. The taxpayer hereby requests an award of reasonable fees for professional representation before the Board.

8. The taxpayer hereby requests an award of expenses and costs.

The taxpayer reserves the right to raise additional issues on appeal.

**REQUEST FOR ORAL HEARING**

The taxpayer requests an oral hearing in this matter.

**REQUEST TO SUPPLEMENT NOTICE OF APPEAL**

Pursuant to Section 5075.1(b)(1) of Title 18 of the California Code of Regulations, the taxpayer requests 90 days from the date of the acknowledgment letter from this Board within which to supplement this notice of appeal by filing a complete opening brief. That brief will include a statement of the facts involved and the legal authorities relied on by the taxpayer, including relevant statutes and regulations. (*See* SBE Regulation 5012.)

As is clear from the above described timeline, over seven years have passed between the time of the protest hearing and the protest determination letter in this matter, with the taxpayer being given no more than 30 days to respond to the FTB's protest determination letter in a case involving total additional tax, penalty and interest of $10,524,771.06. Mr. Hyatt is separately filing an appeal with this Board for taxable year 1992, as a consequence of the FTB's November 1, 2007 determination letter and a subsequent Notice of Action issued by the FTB for 1992. In addition, *Hyatt v. Franchise Tax Board,* Clark County Nevada District Court No. A382999, a civil tort action between appellant Hyatt and respondent FTB involving the years 1991 and 1992, and which is relevant to the issues raised in this Appeal,[2] is scheduled for trial commencing on April 14, 2008, with trial expected to last approximately six weeks. It is anticipated that additional time will be required to file briefs

//

//

[2] As of the date of the filing of this Appeal, the most recent version of the FTB's Public Litigation Roster is the "November 2007 Franchise Tax Board Public Litigation Roster." (*See* http://www.ftb.ca.gov/law/litrstr/2007/113007.pdf.) According to that Roster, page 8, the issues in District Court Case No. A382999 are (1) "Whether Plaintiff was a resident of California from September 26, 1991 through April 2, 1992"; (2) "Whether the Franchise Tax Board committed various torts with respect to plaintiff and is subject to a claim for damages"; and (3) "Whether the Nevada courts have or should exercise jurisdiction over the Franchise Tax Board." The taxpayer does not agree with this description of the case.

in this matter. Accordingly, this request is made herein under SBE Regulation 5075.1(b)(1) without prejudice to request additional extensions of time for filing a complete brief.

DATED: January 22, 2008

RESPECTFULLY SUBMITTED,

ERIC J. COFFILL
CARLEY A. ROBERTS
DAVID A. ZIRING
MORRISON & FOERSTER LLP

By [signature]
Eric J. Coffill
ATTORNEYS FOR APPELLANT



Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 218 of 244

SBE000026

SER 035
RJN000705

BOE-392 (FRONT) REV. 8 (12-05)
**POWER OF ATTORNEY**

STATE OF CALIFORNIA
BOARD OF EQUALIZATION
FRANCHISE TAX BOARD
EMPLOYMENT DEVELOPMENT DEPARTMENT

*Check below to indicate the appropriate agency. Please note that a separate form must be completed and provided to each agency checked.*

☑ **STATE BOARD OF EQUALIZATION**
PO BOX 942879
SACRAMENTO CA 94279-0001
800-400-7115

☐ **FRANCHISE TAX BOARD**
PO BOX 2828
RANCHO CORDOVA CA 95741-2828
FAX 916-845-0523

☐ **EMPLOYMENT DEVELOPMENT DEPARTMENT**
PO BOX 826880 MIC 28
SACRAMENTO CA 94280-0001
916-654-7263 • FAX 916-654-9211

| TAXPAYER'S NAME | BUSINESS OR CORPORATION NAME | TELEPHONE NUMBER | FAX NUMBER |
|---|---|---|---|
| Gilbert P. Hyatt | | ( ) | ( ) |

| SOCIAL SECURITY NUMBER | FEDERAL EMPLOYER IDENTIFICATION NUMBER(S) | CALIFORNIA SECRETARY OF STATE NUMBER(S) |
|---|---|---|
| FTB Accnt # 1200483482 | | |

| BOARD OF EQUALIZATION ACCOUNT/PERMIT(S) | EDD EMPLOYER ACCOUNT NUMBER |
|---|---|
| | |

MAILING ADDRESS *(street and number, city, state, zip code)*
PO Box 81230, Las Vegas, Nevada 89180-1230

☑ **INDIVIDUAL** ☐ **PARTNERSHIP** ☐ **CORPORATION** ☐ **LIMITED LIABILITY COMPANY**

☐ **OTHER** ____________________

**As owner, officer, receiver, administrator, or trustee for the taxpayer, or as a party to the tax or fee matter before the:**

☑ **State Board of Equalization** ☐ **Franchise Tax Board** ☐ **Employment Development Department**

**I hereby appoint:** *[enter below the individual appointee(s) name(s), address(es) (including zip code), telephone number(s) and FAX number(s) – do not enter names of accounting or law firms, partnerships, corporations, etc., as the appointee name]*

| APPOINTEE NAME | | | APPOINTEE NAME | | |
|---|---|---|---|---|---|
| Eric J. Coffill/Carley A. Roberts/ David A. Ziring | | | | | |
| APPOINTEE BUSINESS NAME *(if applicable)* | | | APPOINTEE BUSINESS NAME *(if applicable)* | | |
| Morrison & Foerster LLP | | | | | |
| APPOINTEE ADDRESS *(street and number)* | | | APPOINTEE ADDRESS *(street and number)* | | |
| 400 Capital Mall, Suite 2600 | | | | | |
| *(city)* | *(state)* | *(zip code)* | *(city)* | *(state)* | *(zip code)* |
| Sacramento | CA | 95814 | | | |
| TELEPHONE NUMBER | FAX NUMBER | | TELEPHONE NUMBER | FAX NUMBER | |
| ( 916 ) 325-1324 | ( 916 ) 448-3222 | | ( ) | ( ) | |

**As attorney(s)-in-fact to represent the taxpayer(s) for the following tax or fee matters:** *[specify type(s) of tax]*

☑ Franchise and Income Tax Law
☐ Sales and Use Tax Law
☐ Use Fuel Tax Law
☐ Payroll Tax Law
☐ Benefit Reporting
☐ Other: ____________________

SPECIFY THE TAX OR FEE YEAR(S) OR PERIOD(S) [IF ESTATE TAX, INDICATE DATE OF DEATH] *(for Board of Equalization and Franchise Tax Board purposes)*
Taxable Years 1991 and 1992

**The attorney(s)-in-fact (or any of them) are authorized, subject to revocation, to receive confidential tax information and to perform on behalf of the taxpayer(s) the following acts for the tax or fee matters described above:** *[check the box(es) for the powers granted]*

☐ General Authorization (including all acts described below).
☑ Specific Authorization (selected acts described below).
- ☑ To confer and resolve any assessment, claim or collection of a deficiency or other tax or fee matter pending before the identified agency and attend any meetings or hearings thereto for the specified law identified above.
- ☑ To receive, but not to endorse and collect, checks in payment of any refund of taxes, penalties or interest.
- ☑ To execute petitions, claims for refund and/or amendments thereto.
- ☑ To execute consents extending the statutory period for assessment or determination of taxes.
- ☐ To execute closing agreements under section 19441 of the California Revenue and Taxation Code.
- ☐ To execute settlement agreements under section 19442 of the California Revenue and Taxation Code.

*(The back of this form must be completed)*

BOE-392 (BACK) REV. 8 (12-05)

☑ To represent the taxpayer for changes to their mailing address for any and all Payroll Tax Law, Benefit Reporting, both Payroll Tax Law and Benefit Reporting.

☐ To execute settlement agreements under section 1236 of the California Unemployment Insurance Code.

☑ To delegate authority or to substitute another representative.

☑ Other acts *(specify)*: File SBE Notice of Appeal

Franchise Tax Board (FTB) will send you and your first representative listed a copy of FTB computer generated notices as they become available.

☐ Check this box if you **do not** want FTB to send copies of available FTB computer generated notices to your first representative listed.

*(Note: Not all FTB processing systems are capable of generating representative copies at this time.)*

**This power of attorney revokes all earlier Power(s) of Attorney on file with the California State Board of Equalization, the Employment Development Department, or the Franchise Tax Board as identified above for the same matters and years or periods covered by this form, except for the following:** *[specify to whom granted, date and address, or refer to attached copies of earlier power(s)]*

| NAME | DATE POWER OF ATTORNEY GRANTED |
|---|---|
| ADDRESS *(street and number, city, state, zip code)* | |

**Unless limited, this Power of Attorney will remain in effect until the final resolution of all tax matters specified herein.** *[specify expiration date if limited term]*

TIME LIMIT/EXPIRATION DATE *(for Board of Equalization and Franchise Tax Board purposes)*

**Signature of Taxpayer(s)** — If a tax matter concerns a joint return, both husband and wife must sign if joint representation is requested. If you are a corporate officer, partner, guardian, tax matters partner/person, executor, receiver, registered domestic partner, administrator, or trustee on behalf of the taxpayer, by signing this Power of Attorney you are certifying that you have the authority to execute this form on behalf of the taxpayer.

▶ **IF THIS POWER OF ATTORNEY IS NOT SIGNED AND DATED BY AN AUTHORIZED INDIVIDUAL, IT WILL BE RETURNED AS INVALID.**

| SIGNATURE | TITLE *(if applicable)* | DATE |
|---|---|---|
| ✍ Gilbert P. Hyatt | | 01/22/08 |
| PRINT NAME Gilbert P. Hyatt | | TELEPHONE ( 702 ) 871-9899 |
| SIGNATURE ✍ | TITLE *(if applicable)* | DATE |
| PRINT NAME | | TELEPHONE (    ) |

SBE000028



Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 221 of 244

SBE000029

SER 038
RJN000708

MORRISON | FOERSTER

400 CAPITOL MALL
SUITE 2600
SACRAMENTO
CALIFORNIA 95814-4428

TELEPHONE: 916.448.3200
FACSIMILE: 916.448.3222

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO, LOS ANGELES, PALO ALTO, SAN DIEGO, WASHINGTON, D.C.

NORTHERN VIRGINIA, ORANGE COUNTY, DENVER, SACRAMENTO, WALNUT CREEK

TOKYO, LONDON, BEIJING, SHANGHAI, HONG KONG, SINGAPORE, BRUSSELS

January 22, 2008

Writer's Direct Contact
916.325.1324
ECoffill@mofo.com

By Certified Mail No. 7004 2890 0002 6196 5265
Return Receipt Requested

Taxpayer Advocate Bureau
MS A-381
Franchise Tax Board
P.O. Box 157
Rancho Cordova, CA 95741-0157

Re: Request for Interest Abatement
Gilbert P. Hyatt
Taxable Year 1991

Dear Sir or Madam:

Enclosed please find a completed form FTB 3701, Request for Abatement of Interest, being submitted on behalf of the taxpayer Gilbert P. Hyatt for the taxable year 1991.

Sincerely,

Eric J. Coffill

Eric J. Coffill

Enclosure

cc: Gilbert P. Hyatt (w/encl.)

sa-54818

## Request for Abatement of Interest

**Important:** Read the instructions on back before completing this form.

Use FTB 3701 only for requesting an abatement of interest. **Do not** use FTB 3701 if you are claiming a refund for an overpayment of income taxes. For privacy information, see Franchise Tax Board *Privacy Notice (form FTB 1131).*

| Name | FTB Account No. |
|---|---|
| Gilbert P. Hyatt | 1200483482 |
| Address (number, street, and room, or suite number) | Spouse's Social Security Number |
| P.O. Box 81230 | |
| City or town, State, and ZIP Code | Entity Identification Number |
| Las Vegas, NV 89180-1230 | |
| Name and address shown on return if different from above | Daytime telephone number |
| | ( ) |

1. Period of time interest should be abated - From: 6/20/96 To: 12/26/07
2. Tax year(s): 1991
3. Explain why you believe interest should be abated due to any unreasonable error or delay made by an employee of the Franchise Tax Board. If the Internal Revenue Service has abated interest based on its error or delay, please provide proof of the IRS's determination to abate interest.

Unreasonable delay by the FTB during the course of the protest proceedings. Taxpayer will supplement this Request as part of his State Board of Equalization appeal from the FTB's Notice of Action issued on 12/26/07 for the taxable year 1991.

**NOTE:** If you are filing a protest against a proposed assessment or an appeal, and also wish to request an abatement of interest, you must include the request for abatement of interest with your protest or appeal.

**Signature.** Requests filed by business entities must be signed by an authorized individual, and the signature must be accompanied by the individual's title.

Under penalties of perjury, I declare that I have examined this claim, including any accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

Eric J Coffill, under POA — Signature (and title, if applicable) — Date 1/22/08

Signature — Date

MORRISON | FOERSTER

MORRISON & FOERSTER LLP
400 CAPITOL MALL
SUITE 2600
SACRAMENTO, CA 95814-4428

TO

**By Certified Mail No. 7004 2890 0002 6196 5289**
**Return Receipt Requested**
Chief, Board Proceedings Division
MIC:81
State Board of Equalization
450 N Street
P.O. Box 942879
Sacramento, CA 94279-0081

(EJC)

SBE000032

MORRISON | FOERSTER

400 CAPITOL MALL
SUITE 2600
SACRAMENTO
CALIFORNIA 95814-4428

TELEPHONE: 916.448.3200
FACSIMILE: 916.448.3222

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO, LOS ANGELES, PALO ALTO, SAN DIEGO, WASHINGTON, D.C.

NORTHERN VIRGINIA, ORANGE COUNTY, DENVER SACRAMENTO, WALNUT CREEK

TOKYO, LONDON, BEIJING, SHANGHAI, HONG KONG, SINGAPORE, BRUSSELS

January 23, 2008

Writer's Direct Contact
916.325.1324
ECoffill@mofo.com

By Fax and Mail This Date: Fax 916.324.2597 (Board Proceedings)

By Certified Mail No. 7004 2890 0002 6196 5302
Return Receipt Requested

Chief, Board Proceedings Division
MIC:81
State Board of Equalization
450 N Street
P.O. Box 942879
Sacramento, CA 94279-0081

Re: Gilbert P. Hyatt
FTB Account No. 1200483482
Taxable Year 1992

Dear Sir/Madam:

Enclosed please find two copies of the taxpayer's Notice of Appeal (and Regulation 5075.1(b)(1) request) in the above matter. Please acknowledge receipt at your earliest convenience.

Sincerely,

Eric J. Coffill

Eric J. Coffill

Enclosures

cc: Gilbert P. Hyatt (w/encl.)

sa-54816

ERIC J. COFFILL
CARLEY A. ROBERTS
DAVID A. ZIRING
MORRISON & FOERSTER LLP
400 Capitol Mall, Suite 2600
Sacramento, CA 95814
Telephone: (916) 325-1324
Fax: (916) 448-3222
ecoffill@mofo.com

Attorneys for Appellant

BEFORE THE STATE BOARD OF EQUALIZATION

OF THE STATE OF CALIFORNIA

In the Matter of the Appeal of

GILBERT P. HYATT

No. __________

**NOTICE OF APPEAL FROM NOTICE OF ACTION**

**AND**

**REGULATION 5075.1(b)(1) REQUEST TO FILE BRIEF**

**Taxable Year 1992**

**INTRODUCTION**

Pursuant to California Revenue and Taxation Code Section 19045 et seq., and SBE Regulation 5012 (18 Cal. Code of Regs. § 5012),[1] Gilbert P. Hyatt ("Hyatt" or "taxpayer" or "appellant"), hereby appeals from the Notice of Action ("Notice") issued to the taxpayer by the Franchise Tax Board ("FTB" or "respondent"), which affirmed a Notice of Proposed Assessment issued by the FTB against the taxpayer for the taxable year 1992 ("the year in issue") in the amounts set forth below.

In this regard, the following information is provided:

Name of Taxpayer: Gilbert P. Hyatt

| Amounts Involved: | | |
|---|---|---|
| | Additional Tax: | $ 5,669,021.00 |
| | Penalty: Accuracy Related (Fraud): | $ 4,251,765.75 |
| | Interest to December 26, 2007: | $ 19,167,671.54 |
| Total Additional Tax, Penalty and Interest: | | $ 29,088,458.29 |

Year Involved: Taxable Year 1992

Date of Notice of Action: December 26, 2007

Name and Address of Taxpayer's Representatives:

Eric J. Coffill
Carley A. Roberts
David A. Ziring
Morrison & Foerster LLP
400 Capitol Mall, Suite 2600
Sacramento, CA 95814
Tel: (916) 325-1324
Fax: (916) 448-3222
ecoffill@mofo.com

A copy of a power of attorney is attached hereto as Exhibit A.

---

[1] Appellant is aware of the new pending SBE Rules for Tax Appeals, including rules which apply to appeals from actions of the FTB. However, as of the date of the filing of this Appeal, those new rules are not effective and will not become effective until February 6, 2008, i.e., the 30th day after their January 7, 2008 filing with the Secretary of State. (*See* Gov. Code §§ 11349.3; 11343.4.)

## STATEMENT OF FACTS AND ISSUES, AND POINTS IN SUPPORT OF POSITION

On August 14, 1997, *over ten years ago*, the FTB issued a Notice of Proposed Assessment to Mr. Hyatt for the year in issue. On October 10, 1997, a timely protest was filed. On September 27, 2000, *over seven years ago*, the protest hearing was held. On multiple occasions, both before and after the protest hearing, the taxpayer provided the FTB with additional information during the protest process, including a 132-page protest supplement letter. On November 1, 2007, the FTB issued a 50-page protest determination letter, to which Mr. Hyatt was given a maximum of 30 days to respond. On December 26, 2007, the Notice was issued. This appeal follows.

## ISSUES ON APPEAL

The issues raised herein on appeal are as follows:

1. The taxpayer appeals in full from the adjustments set forth in the Notice which sustained the Notice of Proposed Assessment, including the penalty.

2. The taxpayer appeals the FTB's audit and protest determinations regarding California residency and which concluded Mr. Hyatt was a resident "through April 2, 1992."

3. The taxpayer appeals from the FTB's protest determination regarding an alternative California "source" income argument that was not a basis for the issuance of the Notice of Proposed Assessment, but which is stated in the Notice as an alternative basis for sustaining the Notice of Proposed Assessment.

4. The taxpayer appeals from the FTB audit and protest determinations which imposed an accuracy related (fraud) penalty.

5. The taxpayer appeals from the FTB's decision, as indicated on the Notice, to impose an amnesty penalty under Revenue and Taxation Code Section 19777.5.

6. The taxpayer hereby makes a request for abatement of interest for the year in issue, under Revenue and Taxation Code Section 19104(b)(4). *See* FTB Form 3701, attached hereto as Exhibit B.

7. The taxpayer hereby requests an award of reasonable fees for professional representation before the Board.

8. The taxpayer hereby requests an award of expenses and costs.

The taxpayer reserves the right to raise additional issues on appeal.

**REQUEST FOR ORAL HEARING**

The taxpayer requests an oral hearing in this matter.

**REQUEST TO SUPPLEMENT NOTICE OF APPEAL**

Pursuant to Section 5075.1(b)(1) of Title 18 of the California Code of Regulations, the taxpayer requests 90 days from the date of the acknowledgment letter from this Board within which to supplement this notice of appeal by filing a complete opening brief. That brief will include a statement of the facts involved and the legal authorities relied on by the taxpayer, including relevant statutes and regulations. (*See* SBE Regulation 5012.)

As is clear from the above described timeline, over seven years have passed between the time of the protest hearing and the protest determination letter in this matter, with the taxpayer being given no more than 30 days to respond to the FTB's protest determination letter in a case involving total additional tax, penalty and interest of $29,088,458.29. Mr. Hyatt has separately filed an appeal with this Board for taxable year 1991, as a consequence of the FTB's November 1, 2007 determination letter and a subsequent Notice of Action issued by the FTB for 1991. In addition, *Hyatt v. Franchise Tax Board,* Clark County Nevada District Court No. A382999, a civil tort action between appellant Hyatt and respondent FTB involving the years 1991 and 1992, and which is relevant to the issues raised in this Appeal,[2] is scheduled for trial commencing on April 14, 2008, with trial expected to last approximately six weeks. It is anticipated that additional time will be required to file

//

//

//

---

[2] As of the date of the filing of this Appeal, the most recent version of the FTB's Public Litigation Roster is the "November 2007 Franchise Tax Board Public Litigation Roster." (*See* http://www.ftb.ca.gov/law/litrstr/2007/113007.pdf.) According to that Roster, page 8, the issues in District Court Case No. A382999 are (1) "Whether Plaintiff was a resident of California from September 26, 1991 through April 2, 1992"; (2) "Whether the Franchise Tax Board committed various torts with respect to plaintiff and is subject to a claim for damages"; and (3) "Whether the Nevada courts have or should exercise jurisdiction over the Franchise Tax Board." The taxpayer does not agree with this description of the case.

briefs in this matter. Accordingly, this request is made herein under SBE Regulation 5075.1(b)(1) without prejudice to request additional extensions of time for filing a complete brief.

DATED: January 23, 2008

RESPECTFULLY SUBMITTED,

ERIC J. COFFILL
CARLEY A. ROBERTS
DAVID A. ZIRING
MORRISON & FOERSTER LLP

By [signature]
Eric J. Coffill
ATTORNEYS FOR APPELLANT



A

SBE000039

BOE-392 (FRONT) REV. 8 (12-05)

STATE OF CALIFORNIA
BOARD OF EQUALIZATION
FRANCHISE TAX BOARD
EMPLOYMENT DEVELOPMENT DEPARTMENT

# POWER OF ATTORNEY

*Check below to indicate the appropriate agency. Please note that a separate form must be completed and provided to each agency checked.*

☑ STATE BOARD OF EQUALIZATION
PO BOX 942879
SACRAMENTO CA 94279-0001
800-400-7115

☐ FRANCHISE TAX BOARD
PO BOX 2828
RANCHO CORDOVA CA 95741-2828
FAX 916-845-0523

☐ EMPLOYMENT DEVELOPMENT DEPARTMENT
PO BOX 826880 MIC 28
SACRAMENTO CA 94280-0001
916-654-7263 • FAX 916-654-9211

| TAXPAYER'S NAME | BUSINESS OR CORPORATION NAME | TELEPHONE NUMBER | FAX NUMBER |
|---|---|---|---|
| Gilbert P. Hyatt | | ( ) | ( ) |

| SOCIAL SECURITY NUMBER | FEDERAL EMPLOYER IDENTIFICATION NUMBER(S) | CALIFORNIA SECRETARY OF STATE NUMBER(S) |
|---|---|---|
| FTB Accnt # 1200483482 | | |

| BOARD OF EQUALIZATION ACCOUNT/PERMIT(S) | EDD EMPLOYER ACCOUNT NUMBER |
|---|---|
| | |

MAILING ADDRESS *(street and number, city, state, zip code)*
PO Box 81230, Las Vegas, Nevada 89180-1230

☑ INDIVIDUAL ☐ PARTNERSHIP ☐ CORPORATION ☐ LIMITED LIABILITY COMPANY

☐ OTHER ______

**As owner, officer, receiver, administrator, or trustee for the taxpayer, or as a party to the tax or fee matter before the:**

☑ **State Board of Equalization** ☐ **Franchise Tax Board** ☐ **Employment Development Department**

**I hereby appoint:** *[enter below the individual appointee(s) name(s), address(es) (including zip code), telephone number(s) and FAX number(s) – do not enter names of accounting or law firms, partnerships, corporations, etc., as the appointee name]*

| APPOINTEE NAME | | | APPOINTEE NAME | | |
|---|---|---|---|---|---|
| Eric J. Coffill/Carley A. Roberts/ David A. Ziring | | | | | |
| APPOINTEE BUSINESS NAME *(if applicable)* | | | APPOINTEE BUSINESS NAME *(if applicable)* | | |
| Morrison & Foerster LLP | | | | | |
| APPOINTEE ADDRESS *(street and number)* | | | APPOINTEE ADDRESS *(street and number)* | | |
| 400 Capital Mall, Suite 2600 | | | | | |
| *(city)* | *(state)* | *(zip code)* | *(city)* | *(state)* | *(zip code)* |
| Sacramento | CA | 95814 | | | |
| TELEPHONE NUMBER | FAX NUMBER | | TELEPHONE NUMBER | FAX NUMBER | |
| ( 916 ) 325-1324 | ( 916 ) 448-3222 | | ( ) | ( ) | |

**As attorney(s)-in-fact to represent the taxpayer(s) for the following tax or fee matters:** *[specify type(s) of tax]*

☑ Franchise and Income Tax Law
☐ Sales and Use Tax Law
☐ Use Fuel Tax Law
☐ Payroll Tax Law
☐ Benefit Reporting
☐ Other: ______

SPECIFY THE TAX OR FEE YEAR(S) OR PERIOD(S) [IF ESTATE TAX, INDICATE DATE OF DEATH] *(for Board of Equalization and Franchise Tax Board purposes)*
Taxable Years 1991 and 1992

**The attorney(s)-in-fact (or any of them) are authorized, subject to revocation, to receive confidential tax information and to perform on behalf of the taxpayer(s) the following acts for the tax or fee matters described above:** *[check the box(es) for the powers granted]*

☐ General Authorization (including all acts described below).
☑ Specific Authorization (selected acts described below).
- ☑ To confer and resolve any assessment, claim or collection of a deficiency or other tax or fee matter pending before the identified agency and attend any meetings or hearings thereto for the specified law identified above.
- ☑ To receive, but not to endorse and collect, checks in payment of any refund of taxes, penalties or interest.
- ☑ To execute petitions, claims for refund and/or amendments thereto.
- ☑ To execute consents extending the statutory period for assessment or determination of taxes.
- ☐ To execute closing agreements under section 19441 of the California Revenue and Taxation Code.
- ☐ To execute settlement agreements under section 19442 of the California Revenue and Taxation Code.

*(The back of this form must be completed)*

SBE000040

BOE-392 (BACK) REV. 8 (12-05)

☑ To represent the taxpayer for changes to their mailing address for any and all Payroll Tax Law, Benefit Reporting, both Payroll Tax Law and Benefit Reporting.

☐ To execute settlement agreements under section 1236 of the California Unemployment Insurance Code.

☑ To delegate authority or to substitute another representative.

☑ Other acts *(specify)*: File SBE Notice of Appeal

Franchise Tax Board (FTB) will send you and your first representative listed a copy of FTB computer generated notices as they become available.

☐ Check this box if you do not want FTB to send copies of available FTB computer generated notices to your first representative listed.

*(Note: Not all FTB processing systems are capable of generating representative copies at this time.)*

**This power of attorney revokes all earlier Power(s) of Attorney on file with the California State Board of Equalization, the Employment Development Department, or the Franchise Tax Board as identified above for the same matters and years or periods covered by this form, except for the following:** *[specify to whom granted, date and address, or refer to attached copies of earlier power(s)]*

| NAME | DATE POWER OF ATTORNEY GRANTED |
|---|---|
| | |

ADDRESS *(street and number, city, state, zip code)*

**Unless limited, this Power of Attorney will remain in effect until the final resolution of all tax matters specified herein.** *[specify expiration date if limited term]*

TIME LIMIT/EXPIRATION DATE *(for Board of Equalization and Franchise Tax Board purposes)*

**Signature of Taxpayer(s)** — If a tax matter concerns a joint return, both husband and wife must sign if joint representation is requested. If you are a corporate officer, partner, guardian, tax matters partner/person, executor, receiver, registered domestic partner, administrator, or trustee on behalf of the taxpayer, by signing this Power of Attorney you are certifying that you have the authority to execute this form on behalf of the taxpayer.

▶ **IF THIS POWER OF ATTORNEY IS NOT SIGNED AND DATED BY AN AUTHORIZED INDIVIDUAL, IT WILL BE RETURNED AS INVALID.**

| SIGNATURE | TITLE *(if applicable)* | DATE |
|---|---|---|
| Gilbert P. Hyatt [signature] | | 01/22/08 |
| PRINT NAME: Gilbert P. Hyatt | | TELEPHONE: ( 702 ) 871-9899 |
| SIGNATURE | TITLE *(if applicable)* | DATE |
| PRINT NAME | | TELEPHONE: ( ) |



Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 234 of 244

B
SBE000042

SER 052
RJN000721

MORRISON | FOERSTER

400 CAPITOL MALL
SUITE 2600
SACRAMENTO
CALIFORNIA 95814-4428

TELEPHONE: 916.448.3200
FACSIMILE: 916.448.3222

WWW.MOFO.COM

MORRISON & FOERSTER LLP
NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.
NORTHERN VIRGINIA,
ORANGE COUNTY, DENVER,
SACRAMENTO, WALNUT CREEK
TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

January 23, 2008

Writer's Direct Contact
916.325.1324
ECoffill@mofo.com

By Certified Mail No. 7004 2890 0002 6196 5272
Return Receipt Requested

Taxpayer Advocate Bureau
MS A-381
Franchise Tax Board
P.O. Box 157
Rancho Cordova, CA 95741-0157

Re: Request for Interest Abatement
Gilbert P. Hyatt
Taxable Year 1992

Dear Sir or Madam:

Enclosed please find a completed form FTB 3701, Request for Abatement of Interest, being submitted on behalf of the taxpayer Gilbert P. Hyatt for the taxable year 1992.

Sincerely,

Eric J. Coffill

Enclosure

cc: Gilbert P. Hyatt (w/encl.)

sa-54819

## Request for Abatement of Interest

**Important:** Read the instructions on back before completing this form.

Use FTB 3701 only for requesting an abatement of interest. Do not use FTB 3701 if you are claiming a refund for an overpayment of income taxes. For privacy information, see Franchise Tax Board *Privacy Notice (form FTB 1131)*.

| Name<br>Gilbert P. Hyatt | FTB Account No.<br>1200483482 |
|---|---|
| Address (number, street, and room, or suite number)<br>P.O. Box 81230 | Spouse's Social Security Number |
| City or town, State, and ZIP Code<br>Las Vegas, NV 89180-1230 | Entity Identification Number |
| Name and address shown on return if different from above | Daytime telephone number<br>( ) |

1. Period of time interest should be abated - From: 10/10/97 To: 12/26/07
2. Tax year(s): 1992
3. Explain why you believe interest should be abated due to any unreasonable error or delay made by an employee of the Franchise Tax Board. If the Internal Revenue Service has abated interest based on its error or delay, please provide proof of the IRS's determination to abate interest.

Unreasonable delay by the FTB during the course of the protest proceedings. Taxpayer will supplement this Request as part of his State Board of Equalization appeal from the FTB's Notice of Action issued on 12/26/07 for the taxable year 1992.

**NOTE:** If you are filing a protest against a proposed assessment or an appeal, and also wish to request an abatement of interest, you must include the request for abatement of interest with your protest or appeal.

**Signature.** Requests filed by business entities must be signed by an authorized individual, and the signature must be accompanied by the individual's title.

Under penalties of perjury, I declare that I have examined this claim, including any accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

Eric J. Coffill, under poa    1/23/08
Signature (and title, if applicable)    Date

Signature    Date

FTB 3701 (REV 10-2006) SIDE 1

SBE000044

CERTIFIED MAIL

7004 2890 0002 6196 5302

SBE000045

MORRISON | FOERSTER

MORRISON & FOERSTER LLP
400 CAPITOL MALL
SUITE 2600
SACRAMENTO, CA 95814-4428

TO

**By Certified Mail No. 7004 2890 0002 6196 5302**
**Return Receipt Requested**
Chief, Board Proceedings Division
MIC:81
State Board of Equalization
450 N Street
P.O. Box 942879
Sacramento, CA 94279-0081

(EJC)

81

Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 238 of 244

Hyatt, Gilbert P., 446509 - 1992
7150053859256163

STATE OF CALIFORNIA

**STATE BOARD OF EQUALIZATION**
450 N STREET, SACRAMENTO, CALIFORNIA
PO BOX 942879, SACRAMENTO, CALIFORNIA 94279-008[illegible]
[illegible] • FAX 916 324 3984
www.boe.ca.gov

BETTY T. YEE
First District, San Francisco

BILL LEONARD
Second District, [illegible]

[illegible]
Third District, [illegible]

JUDY CHU, [illegible]
Fourth District, Los Angeles

JOHN CHIANG
State Controller

RAMON J. HIRSIG
Executive Director

July 1, 2008

Eric J. Coffill
Morrison Foerster
400 Capitol Mall, Suite 2600
Sacramento, CA 95814

Appeal of Gilbert P. Hyatt
Case ID No. 446509

Dear Mr. Coffill:

This letter acknowledges receipt of your letter received June 30, 2008, requesting an extension. Your extension is granted. The date for filing your brief is extended to **September 29, 2008.** We will not grant additional extensions of time unless you can show extreme hardship.

California Code of Regulations, title 18, section 5430, subdivision (c), states:

"Any request to extend the period for filing a brief must be in writing and must be made prior to the scheduled due date for that brief. Extensions and deferrals of briefing may be granted under the provisions of section 5522.8."

Sincerely,

[signature]

Sharon King
Appeals Analyst
Board Proceedings Division

cc: Franchise Tax Board - Legal Branch - Legal (MS A2.60)

Gilbert P. Hyatt
P.O. Box 81230
Las Vegas, NV 89180

FTB 9904 PASS (Rev 05-2008)
Appeals\Received Correspondence\SBE grants appellant extention until 9-29-08\
Page 1 of 1

Legal Division MS

tel
fax
ftb.ca.gov

RJN000725

Case: 15-15296, 03/17/2017, ID: 10362273, DktEntry: 59-4, Page 239 of 244

Hyatt, Gilbert P., 435770 - 1991
8080360490581163

STATE OF CALIFORNIA
STATE BOARD OF EQUALIZATION
450 N STREET, SACRAMENTO, CALIFORNIA
PO BOX 942879, SACRAMENTO, CALIFORNIA 94279-0001
916-322-2001 • FAX 916-324-3984
www.boe.ca.gov

BETTY T. YEE
First District, San Francisco

BILL LEONARD
Second District, Ontario/Sacramento

MICHELLE STEEL
Third District, Rolling Hills Estates

JUDY CHU, Ph.D.
Fourth District, Los Angeles

JOHN CHIANG
State Controller

RAMON J. HIRSIG
Executive Director

July 1, 2008

Eric J. Coffill
Morrison & Foerster LLP
400 Capitol Mall, Suite 2600
Sacramento, CA 95814-4428

Appeal of Gilbert P. Hyatt
Case ID No. 435770

Dear Mr. Coffill:

This letter acknowledges receipt of your letter received June 30, 2008, requesting an extension. Your extension is granted. The date for filing your brief is extended to **September 29, 2008.** We will not grant additional extensions of time unless you can show extreme hardship.

California Code of Regulations, title 18, section 5430, subdivision (c), states:

"Any request to extend the period for filing a brief must be in writing and must be made prior to the scheduled due date for that brief. Extensions and deferrals of briefing may be granted under the provisions of section 5522.8. "

Sincerely,

Sharon King
Appeals Analyst
Board Proceedings Division

cc: Franchise Tax Board - Legal Branch - Legal (MS A2.60)

Gilbert P. Hyatt
400 Capitol Mall, Suite 2600
Sacramento, CA 95814-4428

FTB 9904 PASS (Rev 05-2008) Legal Division MS tel
Appeals\Received Correspondence\SBE grants appellant extension until 9-29\ fax
ftb.ca.gov
Page 1 of 1

RJN000726



STATE OF CALIFORNIA

STATE BOARD OF EQUALIZATION
450 N STREET, SACRAMENTO, CALIFORNIA
PO BOX 942879, SACRAMENTO, CALIFORNIA 94279-0081
916-322-3084 • FAX 916-324-3984
www.boe.ca.gov

BETTY T. YEE
First District, San Francisco

BILL LEONARD
Second District, Ontario/Sacramento

MICHELLE STEEL
Third District, Rolling Hills Estates

JUDY CHU, Ph.D.
Fourth District, Los Angeles

JOHN CHIANG
State Controller

RAMON J. HIRSIG
Executive Director

July 3, 2008

Eric J. Coffill
Morrison & Foerster LLP
400 Capitol Mall, Suite 2600
Sacramento, CA 95814-4428

Appeal of Gilbert P. Hyatt
Case ID No. 435770, 446509

Dear Mr. Coffill:

Per your email of July 3, 2008, we are granting your request for an extension to **November 25, 2008**, for filing your brief. We will not grant additional extensions of time unless you can show extreme hardship.

California Code of Regulations, title 18, section 5430, subdivision (c), states:

> "Any request to extend the period for filing a brief must be in writing and must be made prior to the scheduled due date for that brief. Extensions and deferrals of briefing may be granted under the provisions of section 5522.8. "

Sincerely,

Sharon King
Appeals Analyst
Board Proceedings Division

cc: Franchise Tax Board – Legal Branch – Legal (MS A2.60)

Gilbert P. Hyatt
400 Capitol Mall, Suite 2600
Sacramento, CA 95814-4428



STATE OF CALIFORNIA

STATE BOARD OF EQUALIZATION
450 N STREET, SACRAMENTO, CALIFORNIA
PO BOX 942879, SACRAMENTO, CALIFORNIA 94279-0081
916-322-3084 • FAX 916-324-3984
www.boe.ca.gov

BETTY T. YEE
First District, San Francisco

BILL LEONARD
Second District, Ontario/Sacramento

MICHELLE STEEL
Third District, Rolling Hills Estates

JUDY CHU, Ph.D.
Fourth District, Los Angeles

JOHN CHIANG
State Controller

RAMON J. HIRSIG
Executive Director

November 18, 2008

Eric J. Coffill
Morrison & Foerster LLP
400 Capitol Mall, Suite 2600
Sacramento, CA 95814-4428

Appeal of Gilbert P. Hyatt
Case ID No. 435770, 446509

Dear Mr. Coffill:

This letter acknowledges receipt of your telephone call of November 17, 2008, requesting an extension. Your extension is granted. The date for filing your brief is extended to **December 9, 2008**.

California Code of Regulations, title 18, section 5430, subdivision (c), states:

"Any request to extend the period for filing a brief must be in writing and must be made prior to the scheduled due date for that brief. Extensions and deferrals of briefing may be granted under the provisions of section 5522.8. "

Sincerely,

Sharon King

Sharon King
Appeals Analyst
Board Proceedings Division

cc: Franchise Tax Board - Legal Branch - Legal (MS A2.60)

Gilbert P. Hyatt
400 Capitol Mall, Suite 2600
Sacramento, CA 95814-4428

**King, Sharon**

---

**From:** Wurst, Catherine
**Sent:** Tuesday, November 18, 2008 7:27 AM
**To:** 'ECoffill@mofo.com'
**Cc:** Olson, Diane; King, Sharon; Kelly, Amy
**Subject:** RE: New Extension Due Dates

Good morning - Per your phone call of yesterday requesting a two week extension to file a brief in this appeal is granted. Your due date will be December 9th.

Sharon will mail out a confirming letter today

*Catherine Wurst, Manager*
*Tax & Fee Case Management Section*
*(916)445-7086*

Dated this 17TH day of March, 2017.

/s/ Debbie Leonard
JAMES BRADSHAW
DEBBIE LEONARD
ADAM HOSMER-HENNER
MCDONALD CARANO WILSON LLP
100 West Liberty Street, 10th Floor
P.O. Box 2670
Reno, NV 89505
(775) 788-2000

SETH P. WAXMAN
PAUL R.Q. WOLFSON
DANIEL WINIK
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
(202) 663-6000

CYNTHIA J. LARSEN
KATIE DEWITT
DAVID W. SPENCER
ORRICK, HERRINGTON & SUTCLIFFE
400 Capitol Mall, Suite 3000
Sacramento, CA 95814
(916) 329-7970

*Attorneys for Appellees Betty T. Yee, Diane L. Harkey, and Michael Cohen in their official capacities as members of the California Franchise Tax Board*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of March, 2017, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/Pam Miller
An Employee of McDonald Carano Wilson LLP