**No. 15-15296**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

GILBERT P. HYATT,

*Plaintiff-Appellant,*

v.

BETTY T. YEE, in her official capacity as California Franchise Tax
Board member and California State Board of Equalization member
DIANE L. HARKEY, in her official capacity as California State
Board of Equalization member; JEROME E. HORTON, in his
official capacity as California State Board of Equalization member;
MICHAEL COHEN, in his official capacity as California Franchise
Tax Board member; GEORGE RUNNER, in his official capacity as
California State Board of Equalization member; FIONA MA, in her
official capacity as California State Board of Equalization member
and California Franchise Tax Board member,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of California
Case No. 2:14-cv-00849-GEB-DAD (Hon. Garland E. Burrell, Jr.)

APPELLANT
GILBERT P. HYATT'S
OPPOSITION TO FTB APPELLEES'
MOTION FOR JUDICIAL NOTICE

Donald J. Kula
Oliver M. Gold
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Erwin Chemerinsky
EChemerinsky@law.uci.edu
UC IRVINE SCHOOL OF LAW
401 E. Peltason Drive, Suite 1000
Irvine, CA 92697-8000
Telephone: 949.824.8814
Facsimile: 949.824.7336

Malcolm Segal, Bar No. 075481
MSegal@segal-pc.com
SEGAL & ASSOCIATES, PC
400 Capitol Mall, Suite 2550
Sacramento, CA 95814
Telephone: 916.441.0886
Facsimile: 916.475.1231

Attorneys for Appellant Gilbert P. Hyatt

# TABLE OF CONTENTS

**Page**

I.      Introduction.............................................................................................1

II.     FTB's 108 requests for judicial notice should be denied as the Court cannot as a matter of law take on the role of fact finder...............3

III.    The Court must disregard the repeatedly cited Dunn Declaration.........4

IV.    The disputed factual issue over the delay in the administrative proceedings must be resolved in the district court as it is intertwined with the issue of whether FTB violated Mr. Hyatt's right to due process.............................................................................6

V.    Mr. Hyatt submits his Counter Request for Judicial Notice in the event the Court decides to address the factual dispute over the delay in the administrative proceedings.....................................................8

      A.    FTB's audit records establish that FTB was primarily if not solely responsible for the audits lasting over four years from 1993 to 1997 (FTB Category 1)...........................................9

      B.    FTB's records establish that FTB intentionally delayed the protests for 11 years from 1996 to 2007 (FTB Category 2)...............13

      C.    FTB's records rebut and contradict its argument that the Nevada protective order caused a delay in the protests (FTB Category 3).........................................................................14

      D.    The United States Supreme Court review of the Nevada Tort Case caused no delay in the protests (FTB Category 4)...................16

      E.    The California state court proceedings did not cause any delay in the protests and are erroneously described by FTB (FTB Category 5).........................................................................17

      F.    FTB's actions, not those of Mr. Hyatt, caused the now nine year delay in the SBE appeals (FTB Category 6)......................................18

# TABLE OF CONTENTS
(continued)

**Page**

G.     FTB's actions in regard to the New York subpoenas caused delay in the SBE appeals not Mr. Hyatt's successful efforts to limit the scope of the overly broad subpoenas (FTB Category 7)................................................................................................**18**

H.     FTB's refusal to correct a $24 million error in its preliminary assessment caused substantial delay starting in the audits and lasting well into the SBE appeals (Categories 1, 2, and 6). ...............**18**

VI.     **Conclusion.** .................................................................................**19**

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allen v. McCurry*,
   449 U.S. 90 (1980)............................................................6

*Augustine v. United States*,
   704 F.2d 1074 (9th Cir. 1983) ..........................................7

*Doe v. Holy See,*
   557 F.3d 1066 (9th Cir. 2009) ..........................................6

*Franchise Tax Board of California v. Hyatt*,
   578 U. S. __, 136 S. Ct. 1277 (2016)................................8

*Franchise Tax Board of the State of California v. Hyatt*,
   335 P.3d 125 (Case No. 53264, Nev. 2014) ................6, 8, 9

*Hennessy v. Penril Datacomm Networks, Inc.*,
   69 F.3d 1344 (7th Cir. 1995) ............................................3

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ............................................3

*Lustgraaf v. Behrens*,
   619 F.3d 867 (8th Cir. 2010) ............................................4

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ..........................................7

*Savage v. Glendale* Union *High Sch.*, 343 F.3d 1036 (9th Cir. 2003) ......................7

## STATUTES

Tax Injunction Act (28 U.S.C. § 1341)....................................................1

Appellant Gilbert P. Hyatt submits this opposition and the accompanying Counter Request for Judicial Notice to Appellees Betty T. Yee, Diane L. Harkey, and Michael Cohen in their official capacities as members of the California Franchise Tax Board ("FTB" or "FTB Appellees") Motion for Judicial Notice (Dkt. 58).

## I. Introduction.

In response to this Court's invitation to "move for judicial notice" FTB Appellees and SBE Appellees[1] have submitted a combined 100 megabytes of data, the equivalent of several banker boxes of documents. The massive submissions confirm that the issue of delay in the administrative proceedings is hotly contested and not a subject for resolution by this reviewing court. The issue of delay is inextricably intertwined with both the jurisdictional question of whether the Tax Injunction Act (28 U.S.C. § 1341) applies and the merits question of whether Mr. Hyatt's due process and equal protection rights have been violated. As a result, as Mr. Hyatt has consistently argued, the jurisdictional issue must be deferred until resolution by the district court of the disputed factual issue as to the cause of the 20 plus year delay in the administrative proceedings.

---

[1] A separate Request for Judicial Notice (Dkt. 57) was filed by Appellees Diane L. Harkey, Jerome E. Horton, Betty T. Yee, George Runner and Fiona Ma, in their official capacities as members of the California State Board of Equalization ("SBE" or "SBE Appellees"). Mr. Hyatt has filed a separate opposition to the SBE Request for Judicial Notice.

Moreover, the substance of most of the documents put forth by FTB are disputed and therefore not subject to judicial notice.  Mr. Hyatt objects to the entirety of FTB's oversized submission (Request Nos. 1 through 108) as improper and well beyond the bounds of what is judicially noticeable in the context of a motion to dismiss.  The Court may take judicial notice of the existence of the document or the date it was filed with a court or submitted to an administrative agency, but not argument as set forth by FTB as to the cause of the delay in the administrative proceedings.

As to the disputed factual question of delay, FTB's arguments (as summarized in its motion via Categories 1 through 7) are overwhelmingly rebutted by the evidence Mr. Hyatt has detailed in his pleadings and provided in both his accompanying Counter Request for Judicial Notice as well as his prior request for judicial notice submitted in the district court.  (*See* 2 ER 64- 3 ER 504)  In the event the Court decides to take on the unprecedented role of fact finder as to the cause of delay, the Court must grant Mr. Hyatt's Counter Request for Judicial Notice.[2]

---

[2] Further, Mr. Hyatt has a wealth of additional evidence to present establishing the issue of delay and the other allegations in his complaint, but he cannot present it via a request for judicial notice.  He is entitled to do so at an evidentiary hearing in the district court.

Predictably, given the heavily disputed issue of delay, FTB commenced its request for judicial notice by improperly re-arguing (as no such argument was invited by the Court) its assertion that Mr. Hyatt should be required to now switch to a new administrative process if he wants his constitutional claims heard any time soon. Yet, the record now put before this Court shows the absurdity of FTB's position. The length of time the current administrative proceeding has taken and the overflowing record of the events of the last 20 years demonstrates precisely why Mr. Hyatt should not have to abandon the current proceeding and start anew. FTB's improper focus on this argument demonstrates its clear desire not to have the case decided on the issue of delay.

## II. FTB's 108 requests for judicial notice should be denied as the Court cannot as a matter of law take on the role of fact finder.

FTB goes far overboard in its 108 requests for judicial notice. A court may take judicial notice of the fact that a document in the public record was signed or filed, or that a hearing was held, but it cannot take judicial notice of disputed facts stated in the public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001) Documents are judicially noticeable only for the purpose of determining what statements are contained therein, not to prove the truth of the contents. *See Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354–1355 (7th Cir. 1995) (district court properly refused to take judicial notice of

corporation's Form 10-K to determine disputed fact); *see also Lustgraaf v. Behrens*, 619 F.3d 867, 885–86 (8th Cir. 2010) (district court properly took judicial notice to decide what statements were contained in public records but improperly took judicial notice to prove truth of contents).

Here, FTB has submitted 108 documents and argues in its Motion for Judicial Notice its version of the cause of delay in the California administrative proceedings. It relies on the purported truth of the contents of those documents. FTB's 108 requests are therefore wholly improper and should be denied.

It would be a laborious task for this Court to attempt to determine the truth or falsity of the various statements in the 108 requests submitted by FTB. The Court should decline to do so.

## III. The Court must disregard the repeatedly cited Dunn Declaration.

FTB's Motion argues its position on delay through the Declaration of Robert Dunn (SER 1-13) citing it on every page of its motion. FTB had submitted the Dunn Declaration as part of its motion to dismiss in the district court. Mr. Hyatt filed lengthy evidentiary objections to the declaration in the district court (3 ER 505-555), and renews those objections here. Mr. Dunn lacks foundation for and personal knowledge of almost every "fact" stated in the declaration. *Id.* It is not competent evidence, and it does not create a disputed fact.

More significantly, it is not procedurally proper. The Dunn Declaration attempts to dispute facts in Mr. Hyatt's Complaint as to the reasons for the delay in the administrative proceedings. The Complaint must be taken as true at the motion to dismiss stage. The Dunn Declaration must be disregarded therefore due to its evidentiary incompetence, its inaccuracies, and its procedural impropriety.[3]

Nonetheless, Mr. Hyatt had submitted a request for judicial notice in the district court providing substantial evidentiary support for the allegations in his Complaint and rebutting assertions in the Dunn Declaration. (2 ER 64 – 3 ER 504) To the extent the Court gives any consideration to or relies on the Dunn Declaration at this stage of the proceedings, Mr. Hyatt requests that the Court take judicial notice of the records of the administrative proceeding both as requested by Mr. Hyatt in the district court (2 ER 64 – 3 ER 504) and as requested here in his accompanying Counter Request for Judicial Notice.

---

[3] Again, this Court should not act as factfinder. But Mr. Hyatt's first-hand and detailed rebuttal of FTB's assertions including much of the Dunn Declaration is set forth in his affidavit that was submitted and is part of the record in the SBE Appeals. The affidavit was not focused on the issue of delay as it was submitted in the tax proceedings. It nonetheless provides eye witness testimony that stands in stark contrast to the allegations as depicted by the Dunn Declaration. (*See* HYATT RJN Exh. 78)

**IV.** **The disputed factual issue over the delay in the administrative proceedings must be resolved in the district court as it is intertwined with the issue of whether FTB violated Mr. Hyatt's right to due process.**

Mr. Hyatt has well pleaded facts regarding the delay by FTB and sets forth more detail than is necessary in his Complaint.[4] These well pleaded facts must be accepted as true at the motion to dismiss stage. *See Doe v. Holy See,* 557 F.3d 1066, 1074 (9th Cir. 2009). Indeed, FTB's 11 year delay in completing the protests has already been adjudicated in favor of Mr. Hyatt.[5]

Almost the entirety of Mr. Hyatt's detailed Complaint addresses the issue of delay and the conduct of the State for over 20 years as the source and cause of the delay.[6] This is the central issue in the case as Mr. Hyatt asserts he can no longer receive due process because of the delay. The unprecedented length of the State's

---

[4] *See* Complaint, Paras. 23-26, 39-79. (4 ER 738)

[5] In *Franchise Tax Board of the State of California v. Hyatt*, 335 P.3d 125 (Case No. 53264, Nev. 2014)(the "Nevada Tort Case"), a judgment was entered against FTB and in favor of Mr. Hyatt in August 2008 in which one of the issues argued to the jury in the determinative fraud claim was whether FTB had delayed the protest process in bad faith. (3 ER 329; 4 ER 609, 775 ¶ 112) The jury decided the issue in Mr. Hyatt's favor. (3 ER 329) In confirming the portion of the judgment entered for Mr. Hyatt on his claims of fraud and intentional infliction of emotional distress, the Nevada Supreme Court specifically cited FTB's long delay in the protest process. (4 ER 609, 754-55 ¶ 46) Under collateral estoppel, FTB is precluded from re-litigating the issue of delay. *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citing *Montana v. United States*, 440 U.S. 147, 153 (1979)). Mr. Hyatt also raised this issue in the district court in his objection to the Dunn declaration. (3 ER 505-555)

[6] *See* Complaint, Paras. 23-26, 39-79. (4 ER 738)

20 plus year effort to extract tens of millions of dollars in taxes, penalties and interest from Mr. Hyatt has severely prejudiced his ability to defend against the State's claims.

Where, as here, facts necessary to resolve the issue of jurisdiction are disputed and intertwined with the ultimate issue in the case, the jurisdictional dispute must be deferred until resolution of the disputed facts by the trial court. *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir. 1983) (holding that where the jurisdictional issue and the merits of the case "are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial," *citing Thornhill Pub. Co. v. General Tel. & Electronics Corp.*, 594 F.2d 730, 733-35 (9th Cir. 1979)); *see also Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *Savage v. Glendale* Union *High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003).

Regardless of whether the Court grants FTB's request for judicial notice, this case must be returned to the district court for resolution of the factual dispute over the 20 plus year delay in the administrative proceedings.

**V.     Mr. Hyatt submits his Counter Request for Judicial Notice in the event the Court decides to address the factual dispute over the delay in the administrative proceedings.**

Mr. Hyatt has submitted the accompanying Counter Request for Judicial Notice attached to which are Exhibits 1 through 80 ("HYATT RJN").  These exhibits consist of (i) the decision and documents that were part of the record in *Franchise Tax Board of the State of California v. Hyatt*, 335 P.3d 125 (Case No. 53264, Nev. 2014)(the "Nevada Tort Case") and (ii) documents related to the administrative appeals before the California State Board of Equalization (the "SBE"), *In the Matter of the Appeals of Gilbert P. Hyatt,* Case Nos. 435770 and 446509.

The Nevada Supreme Court issued a decision on September 18, 2014 in the Nevada Tort Case that affirmed in part a Nevada jury's finding that FTB committed intentional torts directed at Mr. Hyatt during the audit and protest phases of the administrative proceeding.  *Franchise Tax Board of the State of California v. Hyatt*, 335 P.3d at 145-46, 148-49.[7]  One of the facts cited by the Nevada Supreme Court was that "Hyatt showed that FTB took 11 years to resolve

---

[7] This decision was reviewed by the United States Supreme Court in *Franchise Tax Board of California v. Hyatt*, 578 U. S. __, 136 S. Ct. 1277 (2016)("Hyatt II*")*, the only issue upon which the decision was reversed was the amount of damages the Nevada courts can award against a California state agency.  *Id.*  Despite FTB arguments suggesting the entire decision was reversed, Hyatt II makes no such ruling.

Hyatt's protests of the two audits." *Id.* Mr. Hyatt requests that the Court take judicial notice of this decision by the Nevada Supreme Court. (S*ee* HYATT RJN Exh. 1)

Mr. Hyatt's briefing filed with Nevada Supreme Court, and the evidence cited in that briefing, confirms that the issue of the 11 year delay in the protests is the identical issue represented in this case in regard to the protests. (S*ee* HYATT RJN Exh. 2. at 99-107) Mr. Hyatt therefore also requests that the Court take judicial notice of substantial evidence in the record in the Nevada Tort Case regarding the issue of delay in the administrative proceedings.

Below Mr. Hyatt summarizes the facts of the administrative proceedings for which he requests judicial notice in response to the seven "categories" addressed by FTB in its Motion.

**A. FTB's audit records establish that FTB was primarily if not solely responsible for the audits lasting over four years from 1993 to 1997 (FTB Category 1).**

The FTB audits commenced in 1993 and lasted until 1997. (HYATT RJN Exhs. 3-9) At least four different auditors worked the audits over a period of almost four years at times retracing each other's steps. (HYATT RJN Exhs. 10-13, 22) Neither of the first two auditors reached any conclusions about taxing Mr. Hyatt. (HYATT RJN Exhs. 11, 12)

- 9 -

A year and a half into the 1991 audit, a third auditor took over the case. She had no background or history on the case. She nonetheless expressed at the outset to her superiors that she understood a residency assessment "would have to be pursued." (HYATT RJN Exh. 13) This third auditor understood the significance of the audit to FTB, and expressed that she was looking to advance her career with the Hyatt audit. (HYATT RJN Exh. 16) During the audit, she made a number of anti-Semitic remarks concerning Mr. Hyatt being Jewish, including that she would get the "Jew bastard" and that most of the large income taxpayers in California were Jewish. (HYATT RJN Exh. 14) Others at FTB believed that this auditor was obsessed with Mr. Hyatt and had created a "fiction" about him. (HYATT RJN Exh. 15) She put significantly more hours into the audit than was typical for a residency audit. She admitted to another FTB worker that she could not therefore return a low or no change audit result given the large number of hours (over 600) expended on the Hyatt audit. (HYATT RJN Exh. 17)

Nonetheless, two years into the 1991 audit in mid-1995, there was explicit doubt expressed within FTB about whether a residency case could be made against Mr. Hyatt. An internal memorandum by FTB manager Monica Embry (the "Embry" memo) summarizing a high level FTB meeting on June 6, 1995, regarding the Hyatt audit concluded that a "decision had not been made at the time of the meeting as to whether *there was enough substantiation* to sustain a position

the TP was a California resident for all of 1991. *There does not appear to be any means* of making the TP a resident for 1992 or later." (HYATT RJN Exh. 18) The participants receiving the memorandum, including the third auditor, did not offer any corrections to the Embry memo, which was then distributed to high ranking FTB managers in early September 1995. *Id.*

Yet, the month before on August 2, 1995, the FTB had already issued its 1991 tax year audit determination letter assessing Mr. Hyatt millions of dollars including a fraud penalty. (HYATT RJN Exh. 5) This 1991 tax year assessment against Mr. Hyatt was a record amount of taxes and penalties. The third auditor then added another record amount of taxes but no penalty for the 1992 tax year. (HYATT RJN Exh. 21) FTB later assigned a fourth auditor, who did no further investigation but was told by his supervisors to write-up a fraud penalty for the 1992 tax year even though the third auditor had decided a year earlier not to assess a fraud penalty. (HYATT RJN Exh. 22)

Despite the preliminary determinations assessing millions of dollars in taxes, penalties, and interest against Mr. Hyatt, there remained significant doubt within the FTB of the case against Mr. Hyatt. The lead FTB reviewer expressed this in April 1996 writing in her review notes that "this was a really tough case" and "it is difficult to determine what the facts are . . ." (HYATT RJN Exh. 19)

- 11 -

The third auditor confirmed that FTB's actions caused delay in the audits. The third auditor, after being off the Hyatt 1992 tax year audit for about a year, was later reassigned to the audit and told to write-up the then larger 1992 tax year assessment to which the fourth auditor had added the fraud penalty. The third auditor openly accused her FTB supervisors of improperly delaying the 1992 tax year assessment for a year in order to meet their numbers for the next fiscal year. (HYATT RJN Exh. 30)

Further delay was caused by FTB's repeated refusal to timely provide Mr. Hyatt a copy of the audit file. The FTB audit manual required disclosure of the audit file upon request. (HYATT RJN Exh. 26) During the audit FTB refused to disclose to Mr. Hyatt the purported evidence upon which it based its preliminary assessment. His tax counsel sought a copy of the audit file on several occasions after FTB provided its preliminary determination, but FTB did not give Mr. Hyatt a copy of the audit file until long after the audit had concluded. (HYATT RJN Exh. 24) The secret evidence included unsworn statements by estranged relatives, including his ex-wife, who had no first-hand knowledge of his residency in 1991. (HYATT RJN Exh. 20)

If Mr. Hyatt had received a copy of the audit file including the unsworn statements during the audit he could have responded to and provided evidence

contradicting the false accusations made against him at that time. But he was not given an opportunity to do so. Instead, an 11 year protest phase then ensued.

**B.**  **FTB's records establish that FTB intentionally delayed the protests for 11 years from 1996 to 2007 (FTB Category 2).**

The protests commenced in 1996 and lasted until 2007, *i.e.*, over 11 years. (HYATT RJN Exhs. 32-34) The first and second FTB protest officers admitted that they did nothing on the protests for two-and-half years (1996-1999) because they were busy with other cases. (HYATT RJN Exhs. 35-36, 38)

FTB's third protest officer commenced the protest process in 1999. (HYATT RJN Exh. 39-40) This was the beginning of the more intrusive investigation that was threatened by the first protest officer. The first protest officer had threatened that if Mr. Hyatt did not settle the tax assessment she would perform a more intrusive investigation. (HYATT RJN Exh. 37)

The third protest officer, however, described Mr. Hyatt's tax counsel as cooperative and wanted to get the case resolved and even possibly seek to mediate the parties' differences. She was quickly removed from the Hyatt protests in May 2000 and instructed not to talk to or transfer records to her replacement, the fourth protest officer. (HYATT RJN Exh. 41) This removal, re-assignment, and prohibition against communication by FTB again delayed the administrative process.

The fourth FTB protest officer (2000 - 2007) was told to stop working on the Hyatt protests in June 2001 and to put the protests on "hold" even though she was ready to issue a final determination "on short notice of several weeks." (HYATT RJN Exhs. 44-47) This hold lasted about six years until 2007. The fourth protest officer confirmed again in 2002 that "I am to do nothing on the case." (HYATT RJN Exh. 45) In a 2002 response, Mr. Hyatt's tax attorney asked that the FTB act more responsibly, he stated that he saw no reason for FTB to delay the protests, and he urged FTB to make a proposed determination (ending the protests) as soon as possible. (HYATT RJN Exhs. 46, 48) In 2005, Mr. Hyatt's tax counsel again asked FTB to close the protests but was again told by the fourth protest officer that she was instructed not to work on the case. (HYATT RJN Exh. 49)

## C. FTB's records rebut and contradict its argument that the Nevada protective order caused a delay in the protests (FTB Category 3).

The Nevada protective order issued in the Nevada Tort Case specifically recognized that FTB had administrative subpoena powers in California and could use those powers to obtain materials designated confidential under the protective order, if appropriate under California law. (HYATT RJN Exh. 52, at 858) The Nevada trial court specifically stated that the protective order was not intended to and did not interfere with the processes allowed under California law for the tax proceedings. (HYATT RJN Exh. 51)

This issue was the subject of substantial briefing before and during the trial in the Nevada Tort Case. (HYATT RJN Exh. 53) The Nevada trial court rejected the same arguments that FTB again makes to this Court. (HYATT RJN Exhs. 54-55) Nothing prevented FTB from issuing an administrative subpoena in the California tax proceedings whenever it wished. (HYATT RJN Exh. 52, at 858; HYATT RJN Exhs. 51, 56)

Further, an internal FTB memo dated March 7, 2000 cited and relied on by FTB in making its argument for delay allegedly caused by the Nevada protective order directly contradicts FTB's delay argument. The memo by FTB in-house counsel specifically advised that "The protest attorneys will vigorously pursue development, parallel to but independent of the litigation case and litigation attorneys. *There is no restriction in the [Protective] Order as to FTB's power of examination (RTC section 19504), and it should be expected that the protest attorneys will exercise those powers fully and fairly*." (FTB RJN, Exh. 18, at 318 (emphasis added).)

Moreover, FTB in-house attorneys admitted to the jury in the Nevada Tort Case that protective orders limiting the use of protected material to the current case are commonplace in litigation matters, and that FTB had independent administrative subpoena power regardless of the protective order. (HYATT RJN Exh. 56) Testimony from FTB in-house attorneys also confirmed that FTB had the

power to assert a "failure to exhaust" penalty against a taxpayer in a protest and thereby make an adverse finding if the taxpayer was not producing documents as requested. (HYATT RJN Exh. 57)

FTB did not even make a request under the terms of the protective order for Mr. Hyatt to stipulate to certain material being turned over to the protest proceedings until June of 2002, three years after the Nevada protective order was issued. (HYATT RJN Exh. 60) Further, Mr. Hyatt promptly responded to FTB's second and third requests in 2005 and 2006 for use of documents obtained under the Nevada protective order. (HYATT RJN Exh. 61) These requests by FTB under the protective order came only after the Nevada trial court had ruled in 2005 that Mr. Hyatt could pursue discovery of FTB delay in the protest. (HYATT RJN Exh. 50) The requests therefore appeared to be an after-the-fact attempt by FTB to create a defense for its delay in the protests.

**D.    The United States Supreme Court review of the Nevada Tort Case caused no delay in the protests (FTB Category 4).**

In referencing and citing the United States Supreme Court ("U.S.S.C") review of the Nevada Tort Case, FTB references the Nevada protective order. (FTB Motion, at 9) It is clear from the two U.S.S.C decisions cited by FTB the U.S.S.C review of the Nevada Tort Case had nothing to do with the Nevada protective order. Further, FTB's repeated misstatement that the Nevada protective order "altered" FTB's investigative and administrative subpoena powers is a

blatant misstatement.  As addressed above, FTB's argument is contrary to the terms of the protective order, the rulings of the Nevada court, and the statements of FTB attorneys.

**E.    The California state court proceedings did not cause any delay in the protests and are erroneously described by FTB (FTB Category 5).**

The California state court proceeding regarding enforcement of an administrative subpoena referenced by FTB (FTB Motion, at 10) did not cause any delay in the protests.  As described above, FTB waited years after the Nevada protective order was issued before pursuing the subpoena.  (HYATT RJN Exh. 60) When FTB sought enforcement of the subpoena, the California Superior Court restricted the scope by refusing to enforce Request No. 6, which was the largest and most overbroad request in the subpoena.  Mr. Hyatt's opposition to the subpoena was thereby vindicated.  (FTB RJN Exh. 33, at 480)

Further, FTB in-house counsel testified that FTB did not attempt to determine if FTB protest officer already had documents sought by the subpoena. The protest officer may have had all or most of the documents called for in the subpoena.  (HYATT RJN Exh. 59)  This further indicates that FTB attempted to falsely blame the Nevada protective order for delays in the protests.

**F.      FTB's actions, not those of Mr. Hyatt, caused the now nine year delay in the SBE appeals (FTB Category 6).**

For efficiency and to avoid duplication, Mr. Hyatt incorporates by reference

this issue from his Opposition to the SBE's Request for Judicial Notice.  (See

Hyatt Opposition to SBE Request for Judicial Notice, at 9-15)

**G.      FTB's actions in regard to the New York subpoenas caused delay in the SBE appeals not Mr. Hyatt's successful efforts to limit the scope of the overly broad subpoenas (FTB Category 7).**

For efficiency and to avoid duplication, Mr. Hyatt incorporates by reference

this issue from his Opposition to the SBE's Request for Judicial Notice.  (See

Hyatt Opposition to SBE Request for Judicial Notice, at 10-12)

**H.      FTB's refusal to correct a $24 million error in its preliminary assessment caused substantial delay starting in the audits and lasting well into the SBE appeals (Categories 1, 2, and 6).**

In its audit determination for the 1992 tax year FTB concluded that Mr.

Hyatt had moved to Nevada by April 3, 1992.  (HYATT RJN Exh. 9)  Yet in its

proposed assessment for the 1992 tax year, FTB erroneously included $24 million

of income that was earned by Mr. Hyatt long after the April 3, 1992, end of the so-

called "disputed period."  Mr. Hyatt's tax counsel informed the auditor of this

obvious arithmetic or transcription error before the close of the audit.  (HYATT

RJN Exh. 27) FTB refused to correct the $24 million error saying it would be

corrected in the protest phase.  (HYATT RJN Exh. 28)

During the protests, Mr. Hyatt repeatedly requested that FTB correct this $24 million error. (HYATT RJN Exh. 29) FTB still refused to correct this $24 million error for 11 years during the protests and long after into the appeals, even leaving the error in its protest determination letter. (HYATT RJN Exh. 34)

Several years into the administrative appeal the SBE staff became aware of this $24 million error and instructed FTB to substantiate it position in taxing this income. (SBE Thompson Exh. 65) Only then, almost 20 years after FTB knew of the error, did FTB correct the dates of the $24 million income acknowledging it cannot tax this income on the basis of residency. (HYATT RJN Exh. 74) FTB however still refuses to correct its assessment against Mr. Hyatt for this this $24 million error and still seeks to recover tens of millions of dollars of taxes, penalties and interest on this $24 million.[8]

## VI. Conclusion.

The Court should deny FTB's Motion for Judicial Notice. But regardless of whether it grants the motion, the Court should decline to act as factfinder and return the case to the district court for resolution of the delay issue.

---

[8] Mr. Hyatt has extensively briefed this $24 Million FTB error issue in the SBE appeals. *See* FTB's RJN Exh. 100, at 2114-15, 2143-46; FTB's RJN Exh. 101, at 2217-18.

Respectfully submitted this 7th day of April 2017.

PERKINS COIE LLP

By: *s/ Donald J. Kula*
   Donald J. Kula
   1888 Century Park E., Suite 1700
   Los Angeles, CA 90067-1721
   Telephone: 310.788.9900
   Facsimile: 310.788.3399

   Erwin Chemerinsky
   EChemerinsky@law.uci.edu
   UC IRVINE SCHOOL OF LAW
   401 E. Peltason Drive, Suite 1000
   Irvine, CA 92697-8000
   Telephone: 949.824.8814
   Facsimile: 949.824.7336

   Malcolm Segal, Bar No. 075481
   MSegal@segal-pc.com
   SEGAL & ASSOCIATES, PC
   400 Capitol Mall, Suite 2550
   Sacramento, CA 95814
   Telephone: 916.441.0886
   Facsimile: 916.475.1231

   Attorneys for Appellant
   Gilbert P. Hyatt

## CERTIFICATE OF SERVICE

U.S. Court of Appeals Docket Number(s):  15-15296

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 7, 2017.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature:        *s/ Yolanda Mendez*