**No. 15-15296**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

GILBERT P. HYATT,

*Plaintiff-Appellant,*

v.

BETTY T. YEE, in her official capacity as California Franchise Tax
Board member and California State Board of Equalization member
DIANE L. HARKEY, in her official capacity as California State
Board of Equalization member; JEROME E. HORTON, in his
official capacity as California State Board of Equalization member;
MICHAEL COHEN, in his official capacity as California Franchise
Tax Board member; GEORGE RUNNER, in his official capacity as
California State Board of Equalization member; FIONA MA, in her
official capacity as California State Board of Equalization member
and California Franchise Tax Board member,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of California
Case No. 2:14-cv-00849-GEB-DAD (Hon. Garland E. Burrell, Jr.)

APPELLANT
GILBERT P. HYATT'S
COUNTER REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF
OPPOSITION TO FTB APPELLEES' MOTION FOR JUDICIAL
NOTICE AND SBE APPELLEES'
REQUEST FOR JUDICIAL NOTICE

Donald J. Kula
Oliver M. Gold
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Erwin Chemerinsky
EChemerinsky@law.uci.edu
UC IRVINE SCHOOL OF LAW
401 E. Peltason Drive, Suite 1000
Irvine, CA 92697-8000
Telephone: 949.824.8814
Facsimile: 949.824.7336

Malcolm Segal, Bar No. 075481
MSegal@segal-pc.com
SEGAL & ASSOCIATES, PC
400 Capitol Mall, Suite 2550
Sacramento, CA 95814
Telephone: 916.441.0886
Facsimile: 916.475.1231

Attorneys for Appellant Gilbert P. Hyatt

# TABLE OF CONTENTS

**Page**

I.      Documents from the Nevada Tort Case. .................................................. 4

    A.      Nevada Supreme Court Decision and Briefing. ............................ 4

    B.      Documents Related to FTB Audits (1993 - 1997)  from the
        Record of the Nevada Tort Case. ..................................................... 5

    C.      Documents Related to Protests (1996 - 2007) from the
        Record of the Nevada Tort Case. ................................................... 11

    D.      Documents confirming that the Nevada protective order did
        not delay the protests. ................................................................... 15

II.     Documents from the SBE Appeals. ..................................................... 18

    A.      FTB requested repeated extensions of the briefing deadlines
        and submitted improper briefs and supporting materials,
        while the SBE controlled the appeals process including
        setting and extending the briefing schedule and granting
        FTB additional briefs. ................................................................... 18

    B.      Mr. Hyatt made reasonable requests for extensions of
        briefing based on new issues injected into the SBE Appeals
        by FTB. ......................................................................................... 26

    C.      Additional documents relevant to delay in the SBE Appeals. .... 31

# TABLE OF AUTHORITIES

**Page**

CASES

*Bryant v. Carleson*,
    444 F.2d 353 (9th Cir. 1971) ................................................................. 2

*Franchise Tax Board of the State of California v. Hyatt*,
    335 P.3d 125 (Nev. 2014) .......................................................... passim

*GG Capital v. Deutsche Bank AG*,
    2014 U.S. Dist. LEXIS 59540 (C.D. Cal. Apr. 28, 2014) .................................. 2

*Small v. Avanti Health Systems, LLC*,
    661 F.3d 1180 (9th Cir. 2011) ................................................................. 2

*Stengel v. Medtronic Inc.*,
    676 F.3d 1159 (9th Cir. 2012) ................................................................. 2

*Transmission Agency of Northern Calif. v. Sierra Pac. Power Co.*,
    295 F.3d 918 (9th Cir. 2002) ................................................................. 2

*United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*,
    971 F.2d 244 (9th Cir. 1992) ................................................................. 2

OTHER AUTHORITIES

Federal Rule of Evidence 201 ................................................................. 2

State Board of Equalization Rules for Tax Appeals, Rule 5431(b)(3) .................. 18

State Board of Equalization Rules for Tax Appeals, Rule 5435 ............................ 18

# Counter Request for Judicial Notice

Appellant Gilbert P. Hyatt submits this Counter Request for Judicial Notice in the event the Court grants, in whole or in part, FTB Appellees' Motion for Judicial Notice (Dkt. 58) and/or SBE Appellees' Request for Judicial Notice (Dkt. 57). Mr. Hyatt objects and opposes each of the Appellees' respective submissions on the basis that they are overbroad and seek judicial notice of disputed facts that must be resolved by the district court. But to the extent the Court grants those requests, Mr. Hyatt requests judicial notice of facts from court and administrative records that demonstrate that FTB and the SBE are primarily responsible for the twenty (20) plus year delay in completing the pending administrative proceedings.

Specifically, Mr. Hyatt asks the Court to take judicial notice of records and filings from (i) the Nevada tort case, *Franchise Tax Board of the State of California v. Hyatt*, 335 P.3d 125 (Nev. 2014) (the "Nevada Tort Case") that include records from the related administrative audits and protests before the California Franchise Tax Board ("FTB") and (ii) the related administrative appeals before the California State Board of Equalization (the "SBE"), *In the Matter of the Appeals of Gilbert P. Hyatt,* Case Nos. 435770 and 446509 (the "SBE Appeals").[1]

---

[1] The SBE Appeals stem from two audits conducted by FTB of Mr. Hyatt for the 1991 and 1992 tax years, respectively, (referred to herein as the "audits") and Mr.

Federal Rule of Evidence 201 authorizes federal courts to take judicial notice of documents that are "not subject to reasonable dispute [and] . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201 ("Rule 201").

Under Rule 201, the Court may take judicial notice of the decisions and filings in related court proceedings. *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992); *Bryant v. Carleson*, 444 F.2d 353, 357-358 (9th Cir. 1971). This includes the existence of statements made in trial transcripts in a related case. *GG Capital v. Deutsche Bank AG*, 2014 U.S. Dist. LEXIS 59540, 8 n.3 (C.D. Cal. Apr. 28, 2014), *citing Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001).)

Under Rule 201, the Court may also take judicial notice of the related decisions and records of a state agency. *See Stengel v. Medtronic Inc.*, 676 F.3d 1159, 1167 (9th Cir. 2012); *Small v. Avanti Health Systems, LLC*, 661 F.3d 1180, 1186 (9th Cir. 2011); *Transmission Agency of Northern Calif. v. Sierra Pac. Power Co.*, 295 F.3d 918, 924, fn. 3 (9th Cir. 2002).

Mr. Hyatt therefore respectfully requests that the Court take judicial notice of the following records from the related Nevada Tort Case and the SBE Appeals

---

Hyatt's two protests of the proposed assessment made against him by FTB from each audit (referred to herein as the "protests").

referenced below as "**HYATT EXHIBIT _**". The documents listed and described in this request from the Nevada Tort Case are authenticated by the Declaration of Donald J. Kula, one of Mr. Hyatt's counsels of record in that case. The documents listed and described in this request from the SBE Appeals are authenticated by the Declaration of Edwin Antolin, one of Mr. Hyatt's counsels of record in those SBE Appeals.

Additionally, listed and described below (but not attached) are certain of the documents that the SBE has submitted and for which they seek judicial notice and have attached to the Declaration of Grant Thompson. (Dkt. 57-2) To avoid duplication and further burdening the Court's file, Mr. Hyatt does not submit additional copies of these documents. Rather he lists them below as "**Thompson Exhibit __**" and provides full and accurate description of them. Mr. Hyatt objects to the descriptions of these documents in Mr. Thompson's Declaration. The descriptions are incomplete and may create a false implication as to the cause of the delay in the SBE Appeals. Mr. Hyatt therefore submits his own counter-descriptions to the identified Thompson Exhibits in order to provide the Court a full and complete description of those documents.

Similarly, Mr. Hyatt's requests listed below include several documents for which the FTB has requested judicial notice. To avoid duplication and further

burdening the Court's file, Mr. Hyatt does not submit additional copies of these documents. Rather he lists them below as "**FTB Exhibit _**" and provides full and accurate description of them.

## I.     Documents from the Nevada Tort Case.

The following documents consist of the decision and documents from the appellate record (with citations to the appellate record included) from Nevada Tort Case.

### A.     Nevada Supreme Court Decision and Briefing.

**HYATT EXHIBIT 1.     Decision issued by the Nevada Supreme Court**, September 18, 2014, specifically pages 145-46  and 148-49, citing the California Franchise Tax Board's ("FTB") 11 year delay in the protests as supporting the jury's verdict on Mr. Hyatt's fraud claim against FTB and intentional infliction of emotional distress claim against FTB.

**HYATT EXHIBIT 2.     Respondent's Answering Brief**, filed January 5, 2010, specifically pages 11-14 and 43-51, that address and summarize the evidence establishing that the FTB acted in bad faith in delaying and refusing to decide Mr. Hyatt's protests for 11 years.

**B.    Documents Related to FTB Audits (1993 - 1997)  from the Record of the Nevada Tort Case.**

**HYATT EXHIBIT 3.    FTB Notice of Opening Audit for 1991 tax year**,[2] dated June 17, 1993.  (82 RA 020471-020475)

**HYATT EXHIBIT 4.    FTB Notice of Opening Audit for 1992 tax year**, dated January 19, 1996.  (85 RA 021033)

**HYATT EXHIBIT 5.    FTB Notice of Preliminary Determination for 1991 tax year**, dated August 2, 1995.  (84 RA 020865-020904)

**HYATT EXHIBIT 6.    FTB Notice of Preliminary Determination for 1992 tax year**, dated April 1, 1996.  (85 RA 021045-021061)

**HYATT EXHIBIT 7.    FTB Notice of Proposed Assessment for 1991 tax year**,[3] dated April 23, 1996.  (54 AA 13326-13329)

**HYATT EXHIBIT 8.    FTB Notice of Penalty Adjustment for 1992 tax year**, dated April 10, 1997.  (85 RA 021082-021085)

**HYATT EXHIBIT 9.    FTB Notice of Proposed Assessment for 1992 tax year**, dated August 14, 1997.  (54 AA 13398-13403)

---

[2] All citations to RA refer to the Respondent's Appendix submitted as part of the record in the Nevada Supreme Court in the Nevada Tort Case.

[3] All citations to AA refer to the Appellant's Appendix submitted as part of the record in the Nevada Supreme Court in the Nevada Tort Case.

**HYATT EXHIBIT 10. Trial Transcript** - the FTB's first auditor testified that the audit was triggered by a newspaper article in 1993 that reported Mr. Hyatt's new wealth from patent royalties after moving to Nevada; what "popped" into the auditor's mind in reading the article was how much money Mr. Hyatt had made or would make, "hundreds of millions" of dollars. (RT: June 20, 147:14-148:20; 150:14-151:2; 151:3-153:5)[4]

**HYATT EXHIBIT 11. Trial Transcript** – the first auditor worked on the audit for six months trying to develop possible legal theories to tax Mr. Hyatt; he made no decisions on whether to assess Mr. Hyatt. (RT: June 20, 175:15-177:13, 185:19-188:6)

**HYATT EXHIBIT 12. Trial Transcript** - the second FTB auditor retraced some of the first auditor's steps, but also failed to reach any conclusion that the FTB had a basis to tax Mr. Hyatt. (RT: April 25, 80:10-81:17, 84:11-24)

**HYATT EXHIBIT 13. FTB Audit Strategy Memo** - the third FTB auditor took over a year and a half into the audit and prepared a memo telling her superiors that she would look at "sourcing" as a possible basis to tax Mr. Hyatt, but

---

[4] All citations to RT refer to the Reporter's Transcript in the appeal in the Nevada Supreme Court in the Nevada Tort Case.

if that did not pan out "*further examination of the residency issue will have to be pursued*," dated November 18, 1994. (63 AA 15553-15555 (emphasis added))

**HYATT EXHIBIT 14. Trial Transcript** - the third auditor talked about "getting this taxpayer," made a number of anti-Semitic remarks during the audit, including that she would get the "Jew bastard," and that most of the large income taxpayers in California were Jewish. (RT: April 24, 132:2-23, 140:11-141:25)

**HYATT EXHIBIT 15. Trial Transcript** - others at the FTB believed that the third auditor was obsessed with Mr. Hyatt and had created a "fiction" about him. (RT: April 24, 42:4-43:8, 80:22-81:11, 134:1-12; 136:23-138:2)

**HYATT EXHIBIT 16. Trial Transcript** - the third auditor was looking to advance her career with the Hyatt audit. (RT: April 24, 76:16-77:7, 129:9-15)

**HYATT EXHIBIT 17. Trial Transcript** - the third auditor put so many hours into the Hyatt audit, thus she felt she could not return a low or no change result. (RT: April 24, 26:11-19, 74:1-75:20)

**HYATT EXHIBIT 18. FTB internal memo** summarizing an upper level meeting at the FTB more than two years into the audit expressing doubt about the residency case against Mr. Hyatt and determining that sourcing should not be

pursued, conclusions to which no recipient of the memo offered any objection, dated August 21, 1995.  (84 RA 020949-020953)

**HYATT EXHIBIT 19.   FTB audit reviewer's notes** expressing doubt about the case against Mr. Hyatt stating "this is a really tough case" and "[w]e are assessing the FRAUD penalty – although I'm not sure it is warranted. . . . It is difficult to determine what the facts actually are.  *Do we believe the affidavits*? . . . I believe the tp may have left CA in 12/91", dated April 18, 1996.  (54 AA 13325)

**HYATT EXHIBIT 20.   Unsworn witness statements** by estranged relatives of Mr. Hyatt obtained by the FTB during the audit upon which FTB based its determination to assess Mr. Hyatt taxes and penalties despite witnesses lacking first-hand knowledge of Mr. Hyatt's residency in 1991, dated December 6, 1994, December 19, 1994, and January 18, 1995.  (83 RA 020616-020620, 83 RA 020621-020624, and 83 RA 020630-020635)

**HYATT EXHIBIT 21.   FTB Interrogatory Response** in the Nevada Tort Case confirming that the third auditor assessed Mr. Hyatt a record amount of taxes and penalties for the 1991 tax year and a record amount of taxes but no penalty for the 1992 tax year.  (93 RA 023019-023025)

**HYATT EXHIBIT 22. Trial Transcript** - a fourth FTB auditor was assigned to the audit and told by his supervisors to write-up a fraud penalty for the 1992 tax year, a year after the third auditor had decided not to assess a fraud penalty for that tax year. The fourth auditor had no experience with the Hyatt audit and did nothing to investigate any facts to support the fraud penalty he assessed for the 1992 tax year. (RT: June 9, 97:9-16, 102:7-103:17, 108:2-110:10)

**HYATT EXHIBIT 23. Trial Transcript** - the third auditor was later reassigned to the Hyatt audit after being off the case for a year and was told to finalize the FTB's now-larger proposed assessment for 1992 tax year including the new fraud penalty. (RT: May 30, 145:4-146:17, 148:9-151:5)

**HYATT EXHIBIT 24. FTB auditor notes** confirming that Hyatt tax counsel requested the affidavits upon which the FTB based its preliminary determination, dated August 14, 1995. (1 RA 000072, 93 AA 23124)

**HYATT EXHIBIT 25. Letters from Hyatt tax counsel** requesting the audit file so Mr. Hyatt would know the accusations being made against him and be able to respond, dated April 29, 1996, May 1, 1996, December 11, 1997, and March 10, 1998. (73 AA 18068, 57 RA 014114, H 02190, 85 RA 021109)

**HYATT EXHIBIT 26.  FTB audit manual excerpt** stating the taxpayer is entitled to the audit file upon request.  (76 AA 18833)

**HYATT EXHIBIT 27.  Letter from Hyatt tax counsel** informing FTB of its $24 million error in the 1992 tax year preliminary determination and asking for a correction, dated July 17, 1997.  (85 RA 021093-021096)

**HYATT EXHIBIT 28.  FTB reviewer comments - confirming FTB** refused to correct its $24 million error in the 1992 tax year preliminary determination and instead saying that Hyatt can address it in the protest, dated August 4, 1997.  (54 AA 13396-13397)

**HYATT EXHIBIT 29.  Letter from Hyatt tax counsel** to FTB protest section again asking for correction of FTB's $24 million error, dated October 10, 1997.  (54 AA 13404-13406)

**HYATT EXHIBIT 30.  Email internal among FTB supervisors** confirming the third auditor accused FTB of not expediting 1992 audit results so they could meet their numbers and expressing the third auditor did not want to "take the heat for case sitting around" because she had told Hyatt's tax counsel that FTB would move the case forward, dated April 4, 1997.  (54 AA 13395)

**HYATT EXHIBIT 31. Trial Transcript** - delaying the formal assessment against Mr. Hyatt for the 1992 tax year provided significant budgetary benefits to the FTB as assessments were the lifeblood of its budget allocations. (RT: April 22, 69:8-71:3, 73:3-74:23, 84:2-86:2, 88:22-90:19; April 23, 88:1-89:22)

### C. Documents Related to Protests (1996 - 2007) from the Record of the Nevada Tort Case.

**HYATT EXHIBIT 32. Hyatt Protest Letter for 1991 tax year**, dated June 20, 1996. (54 AA 13330-13391)

**HYATT EXHIBIT 33. Hyatt Protest Letter for 1992 tax year**, October 10, 1997. (54 AA 13404-13406)

**HYATT EXHIBIT 34. FTB Protest Determination Letter** for both 1991 and 1992, November 1, 2007. (88 RA 021826)

**HYATT EXHIBIT 35. Trial Transcript** – the first FTB protest officer testified she did nothing for the first two years of the protest due to press of other cases (RT: May 22, 2008, 57:20-59:6, 80:19-84:14)

**HYATT EXHIBIT 36. Trial Transcript** - the first FTB protest officer testified that she could not get to the Hyatt protest due to other matters that were given priority. (RT: May 22, 2008, 92:4 -94:11)

**HYATT EXHIBIT 37.   Trial Transcript -**  Hyatt tax counsel testified that the first FTB protest officer had suggested Mr. Hyatt settle the dispute at the outset of the protests like other taxpayers in order to avoid a lengthy intrusion, *i.e.*, investigation, into his affairs.  (RT: April 30, 2008, 149:11-24)

**HYATT EXHIBIT 38.   Trial Transcript -** the second FTB protest officer testified he was unable to work on the protests because his workload was too heavy with other matters and he was then replaced.  (RT: July 15, 2008, 3:13-16, 12:19-13:8)

**HYATT EXHIBIT 39.   40 Page Information/Document Requests (IDRs)** sent by the third FTB protest officer to Hyatt tax counsel dated December 30, 1999.  (54 AA 13412-13442)

**HYATT EXHIBIT 40.   Trial Transcript -** Hyatt tax counsel testified he understood the FTB's 40 page IDR sent in December 1999 (three years after the protest started) from the third FTB protest officer as the beginning of threatened intrusive investigation by FTB.  (RT: May 1, 2008, 40:22-42:7)

**HYATT EXHIBIT 41.   Trial Transcript:** the third FTB protest officer testified that she desired to work with Hyatt tax counsel, whom she felt was cooperative, to get the case resolved and anticipated having a protest hearing and

even seeking to mediate the parties' differences; she was open to possibly even dismissing the matter if that was warranted but was "shocked" in May, 2000 when she was removed from the protest and instructed not to talk to or transfer records to the next protest officer. (RT: June 16, 2008, 56:14-57:3, 58:7-60:4, 61:14-25; 72:9-13, 75:18-77:6)

**HYATT EXHIBIT 42. Letters from Hyatt tax counsel E. Coffill** responding to IDRs and stating all IDRs were answered by Mr. Hyatt, dated June 30, 2000, July 31, 2001 and June 15, 2001. (85 RA 021221-021223; 85 RA 021142, 54 AA 13443-55 AA 13543)

**HYATT EXHIBIT 43. FTB Protest Log (excerpts)** confirming protest hearings held and new IDRs (Information Document Requests) sent by the fourth FTB protest officer, dated September 27, 2000 and October 4, 2000. (76 AA 18957, 18960)

**HYATT EXHIBIT 44. FTB Protest Log (excerpt)** indicating the fourth FTB protest officer was told not to work on the Hyatt case by her supervisor, dated February 20, 2002. (76 AA 18980)

**HYATT EXHIBIT 45.   Email from the fourth FTB protest officer**
stating she is to do nothing on the Hyatt protests, dated February 20, 2002.  (85 RA 021224)

**HYATT EXHIBIT 46.   Letter from Hyatt tax counsel E. Coffill**
confirming he was told by FTB that protests were on hold, that a decision had been written up and could be issued on short notice, and urging FTB to end the protests and make a proposed determination, dated March 7, 2002.  (85 RA 021226)

**HYATT EXHIBIT 47.   Email from FTB counsel B. Miller** stating that FTB is putting things [the protests] on hold, dated April 5, 2002.  (85 RA 21240)

**HYATT EXHIBIT 48.   Letter from Hyatt tax counsel E. Coffill** to FTB again asking for an expeditious conclusion to the protests, dated April 25, 2002**.** (85 RA 021233)

**HYATT EXHIBIT 49.   FTB Protest Log (excerpt**) confirming that Hyatt tax counsel E. Coffill had telephoned FTB and asked whether FTB was planning to close the protests in June 2005, dated April 25, 2005.  (77 AA 19003)

**HYATT EXHIBIT 50.   Nevada Discovery Commissioner Reports and Recommendations** allowing Mr. Hyatt to take discovery regarding delay in the protests including depositions of protest officers, filed October 5, 2005 and

November 10, 2005, respectively.  (14 RA 003262-3276 and 14 RA 003406-003411)

**D.    Documents confirming that the Nevada protective order did not delay the protests.**

**HYATT EXHIBIT 51.   Transcript of Nevada Discovery Commissioner** ruling that the Nevada Protective Order does not interfere with California tax proceedings and stating that it is "up to California" as to what is allowed in the tax proceeding, dated November 9, 1999.  (79 RA 019543)

**HYATT EXHIBIT 52.   Nevada Protective Order,** specifically paragraphs 4 and 11, which recognized and did not limit FTB's administrative subpoena power in California, filed December 27, 1999.  (6 RA 001427-1438)

**HYATT EXHIBIT 53.   Briefing filed in Nevada trial court** contradicting the FTB argument that the Nevada protective order caused delay in the protests, during trial conducted in 2008.  (78 RA 019417 - 79 RA 019565)

**HYATT EXHIBIT 54.   Trial Transcript**: the Nevada court rulings rejected FTB arguments that attempted to blame the Nevada court and the protective order for the delay in the protests.  (RT: May 7, 2008, 98:9-103:25, 109:7-129:3; May 27, 2008, 27:6-30:10; June 11, 2011, 9:7-38:21)

**HYATT EXHIBIT 55.  Trial Transcript**: the Nevada court rulings rejected FTB's after-the-fact interpretation of the Nevada protective order as somehow limiting what FTB could do in the protests and therefore did not allow FTB to argue that the protective order caused delay in the protests.  (RT: June 16, 2008, 2:11-34:15 (trial court's ruling at 26:15-27:2), 35:13-37:6, 117:25-132:8 (trial court's ruling at 118:21-22, 132:3-8)

**HYATT EXHIBIT 56.  Trial Transcript**: FTB in-house attorneys testified that limiting the use of material subject to a protective order to the current case is commonplace in litigation matters and that FTB had independent administrative subpoena power regardless of the protective order to seek and obtain information for the protests. (RT: July 11, 2008, 41:5-42:23; 47:19-48:13; July 15, 2008,187:3-17)

**HYATT EXHIBIT 57.  Trial Transcript:** FTB in-house attorneys testified that the FTB had the power to assert a "failure to exhaust" penalty against a taxpayer in a protest and thereby make an adverse finding if the taxpayer was not producing documents as requested [*i.e.*, FTB never invoked this penalty against Mr. Hyatt and could have invoked this penalty if it felt he truly was causing the delay].  (RT: July 11, 2008, 138:23-139:14, 153:19-154:19)

**HYATT EXHIBIT 58. Trial Transcript:** FTB in-house attorney testified that FTB had the power of examination in the protests and could use it independent of the Nevada case to seek information for the protests [but FTB never exercised this power during the protests]. (RT: July 15, 2008, 187:3-15)

**HYATT EXHIBIT 59. Trial Transcript:** FTB in-house attorney testified that FTB had not made any effort to determine if it already had the documents it sought for the protests via the Nevada protective order, most of which it did already have [*i.e.,* the protective order therefore could not have been the source of delay in the protests]. (RT: July 15, 2008, 188:9-192:11)

**HYATT EXHIBIT 60. FTB Demand Letter Under the Nevada Protective Order** making the first request to Mr. Hyatt under the protective order to use Nevada litigation documents in the protests (almost three years after the protective order entered), dated June 3, 2002. (76 AA 18892-18893)

**HYATT EXHIBIT 61. Trial Transcript:** FTB attorneys testified that Mr. Hyatt promptly responded to FTB's second and third requests for use of documents obtained under the protective order; these requests by FTB came after the Nevada court ruled Mr. Hyatt could pursue discovery of FTB delay in the

protests.  (RT: July 15, 2008, 162:21-163:5, 163:7-166:13, 187:3-188:6; RT: July 14, 2008, 174:3-175:21)

## II.    Documents from the SBE Appeals.

The following documents consist of the documents submitted or filed and part of the record in the SBE Appeals.  These documents are organized by subject matter as referenced below.

### A.    FTB requested repeated extensions of the briefing deadlines and submitted improper briefs and supporting materials, while the SBE controlled the appeals process including setting and extending the briefing schedule and granting FTB additional briefs.

**HYATT EXHIBIT 62.   SBE Rules for Tax Appeals**, Rules 5431(b)(3) and 5435, stating, respectively, the appellant's supplemental brief completes the briefing schedule and SBE determines the order, deadlines, and conditions under which any briefing or evidence will be submitted.

**Thompson Exhibit 15**:   **FTB Memorandum to SBE** stating FTB needs more than 90 days to file its opening briefs based on Mr. Hyatt's opening briefs and submissions and asking that the appeals be removed from the appeal calendar because FTB estimates it will take FTB six to nine months to complete its further

investigation (FTB continued its investigations during the SBE appeal process), dated January 27, 2009.

**Thompson Exhibit 17**: **SBE letters to FTB** granting FTB until June 7, 2009 to file its opening briefs, an extension of time for three additional months and citing SBE's authority to control the appeals and set the briefing schedule, dated February 6, 2009.

**FTB Exhibit 53**: **FTB letter to Hyatt tax counsel** stating FTB wishes to take depositions of several witnesses identified in Mr. Hyatt's opening briefs (as FTB continued taking depositions during the SBE appeal process), dated March 16, 2009.

**Thompson Exhibit 18** : **FTB letter to SBE** requesting an additional 60 day extension to file its opening briefs, but noting that Mr. Hyatt strenuously objects to any request by FTB for an extension, dated May 20, 2009.

**Thompson Exhibit 19**: **Letter from Hyatt tax counsel to SBE** objecting to 60 day extension request by FTB, dated May 27, 2009.

**Thompson Exhibit 20**: **SBE letter to FTB** granting FTB request for 60 day extension to file opening briefs, setting due date of July 28, 2009, and granting FTB request to file 175 page brief, dated May 29, 2009.

**HYATT EXHIBIT 63. Email from Hyatt tax counsel to SBE** seeking confirmation that the two appeals are not consolidated and that FTB cannot file a consolidated brief, dated June 3, 2009.

**HYATT EXHIBIT 64. SBE letter to FTB** stating that the two appeals have not been consolidated and are being treated as separate and distinct appeals, dated July 8, 2009.

**Thompson Exhibit 21**: **FTB letter to SBE** requesting extension of due date for filing opening briefs from July 28, 2009 to September 1, 2009, citing the need to complete depositions (as FTB continued taking depositions during the SBE appeal process), dated July 15, 2009.

**Thompson Exhibit 22: Letter from Hyatt tax counsel to SBE** objecting to further extension request by FTB for filing its opening briefs, dated July 16, 2009.

**HYATT EXHIBIT 65. SBE letter to FTB** denying FTB request to consolidate appeals, dated August 21, 2009.

**Thompson Exhibit 39**: **FTB letter to SBE** taking the unusual step of significantly delaying the conclusion of the SBE appeals by requesting 100 page reply briefs and that FTB will not object to Mr. Hyatt receiving comparable time and page limits for supplemental briefs, dated September 1, 2010.

**HYATT EXHIBIT 66. Letter from Hyatt tax counsel to SBE** objecting to FTB's filing of one consolidated opening brief for both appeals and asking that FTB be ordered to file a corrective brief, dated September 2, 2009.

**HYATT EXHIBIT 67. SBE letter to FTB** again stating that the appeals are not consolidated, criticizing FTB for filing a single consolidated opening brief, and ordering FTB to file corrected opening briefs by September 24, 2009, dated September 14, 2009.

**Thompson Exhibit 40**: **SBE letter to FTB** confirming receipt of FTB request for six month extension until June 30, 2011 to file reply briefs, dated September 29, 2010.

**HYATT EXHIBIT 68. SBE letter to both parties** acknowledging receipt of FTB briefing and declaring that "*briefing is completed for this appeal*," dated August 2, 2012 (emphasis added).

**Thompson Exhibit 55**: **Letter from Hyatt tax counsel to SBE** acknowledging SBE letter from August 2, 2012, stating that briefing in the appeals is closed and requesting that hearing dates for the appeals be set as expeditiously as possible, dated August 10, 2012.

**HYATT EXHIBIT 69.   Letter from SBE to FTB and Hyatt tax counsel** acknowledging receipt of FTB briefing and declaration upon receipt of Mr. Hyatt's reply briefs due March 22, 2013 "Briefing will thereafter be completed," dated February 20, 2013.

**Thompson Exhibit 65**:   **Letter from SBE to Hyatt tax counsel and FTB** requesting "additional briefing to obtain information regarding the next steps in the New York litigation and to facilitate a fair and timely resolution of the dispute regarding the Philips documents;" the letter notes that FTB's submission of over 7,000 pages of Philips documents in August 2012 which FTB retracted in October 2012 as a result of a temporary restraining order and injunction obtained by Mr. Hyatt from a New York court pending resolution of cross-appeals in the New York litigation; and the letter also notes that FTB admitted to its $24 million error regarding the amount of Philips income it incorrectly claims Mr. Hyatt received between January 1, 1992 and April 3, 1992, in its additional brief filed on February 19, 2013, dated February 25, 2013.

**FTB Exhibit 81** (Listed in FTB Index as "Doc # 81, but bookmarked as Doc #82 in Volume 9):   **FTB's April 29, 2013 Letter Brief to SBE,** p. 5, requesting 60 pages and 120 days to complete additional briefing, dated April 29, 2013.

**Thompson Exhibit 69**:   **Letter from Hyatt tax counsel to SBE** stating that FTB is not entitled to use in the appeals approximately 1,500 pages of confidential Philips documents that are the subject of a hearing in New York state court scheduled for June 24, 2013, that any additional briefing must be limited to the Philips documents and that SBE start the Philips briefing immediately, dated May 16, 2013.

**HYATT EXHIBIT 70.   FTB letter to SBE** stating the FTB enclosed a DVD with FTB's additional briefing in the appeals and that DVD also has copies of all past FTB briefing and attachments and exhibits, dated July 16, 2014.

**HYATT EXHIBIT 71.   FTB letter to SBE** enclosing a replacement DVD in which certain corrections were made to attachments to the additional briefings that were on the initial DVD and noting that redactions were made to exhibits, dated August 13, 2014.

**Thompson Exhibit 87**:   **Letter from Hyatt tax counsel to SBE** objecting to FTB request to replace DVD which imposes an unnecessary and excessive burden on Mr. Hyatt having to review all prior briefing to confirm that there are no changes on the substituted documents, dated August 14, 2014.

**Thompson Exhibit 90**:  **Motion to Strike** filed by Mr. Hyatt in the SBE Appeals asking the SBE to strike all or, in the alternative, portions of FTB's second

additional briefing, filed in July 2014, because it uses documents in violation of the New York court's orders, filed September 11, 2014.

**Thompson Exhibit 96**: **Letter from Hyatt tax counsel to SBE** requesting SBE to direct FTB not to submit its second replacement DVD until SBE rules on Mr. Hyatt's Motion to Strike because "FTB admits its DVDs contain 'a few documents that were ordered to be redacted and/or suppressed by the New York Court.'", dated October 21, 2014.

**FTB Exhibit 91** (Listed in FTB Index as "Doc # 91, but bookmarked as Doc #93 in Volume 10): **Supplemental Motion to Strike** filed by Mr. Hyatt in the SBE Appeals asking the SBE to strike all or, in the alternative, portions of FTB's second additional briefing, filed in January 2015, because it continued to use documents in violation of the New York court's orders, filed February 4, 2015.

**Thompson Exhibit 104**: **Letter from Hyatt tax counsel to SBE** objecting to FTB's filing of a DVD on February 12, 2015 which was not requested or authorized by SBE as a full replacement of its January 14, 2015 replacement DVD, stating that SBE has not responded to Mr. Hyatt's Motion to Strike and Supplemental Motion to Strike, and requesting until February 23, 2015 to respond to FTB's latest replacement DVD, dated February 13, 2015.

**HYATT EXHIBIT 72.** SBE letter to FTB and Hyatt tax counsel citing California law that SBE controls the appeal process including the briefing schedule; granting each parties request to make a replacement filing; and denying Mr. Hyatt's renewed motion to the extent it sought further redactions or rejection of FTB's replacement submission, dated December 9, 2014.

**HYATT EXHIBIT 73. FTB letter to SBE** responding to SBE inquiry on why materials submitted by FTB included materials from Philips that the New York court had ordered suppressed or redacted, dated March 17, 2015.

**Thompson Exhibit 137** : **Letter from Hyatt tax counsel to SBE** stating that Mr. Hyatt disagrees with SBE's decision not to reject FTB's concluding summaries, noting FTB's arguments greatly exceeded the 30-page limit per concluding summary in violation of SBE's order, requesting Mr. Hyatt be allowed to file 30-pages for each of his two reply briefs and requesting a 3-week extension until December 12, 2016, for filing his reply briefs due to the unavailability of a key person involved in Mr. Hyatt's appeals because of personal emergency and the holiday travels during the Thanksgiving week, dated November 10, 2016.

**B.**    **Mr. Hyatt made reasonable requests for extensions of briefing based on new issues injected into the SBE Appeals by FTB.**

**Thompson Exhibit 2**:  **Letter from Hyatt tax counsel to SBE** requesting an extension of time to file his opening briefs to 90 days from the date of SBE's acknowledgement of the Notices of Appeal due to FTB waiting 14 years until the end of the protest to inject the sourcing issue (and assessments) into the tax proceedings, dated January 22, 2008.

**Thompson Exhibit 7**:  **Letter from Hyatt tax counsel to SBE** requesting a 90-day extension of time to file his opening briefs due to, among other things, the complex factual and legal issues in the case, the appeals being the only opportunity for Mr. Hyatt to respond to FTB's Protest Determination, and scheduled vacations in July and August for Mr. Hyatt's two lead counsels, dated June 30, 2008.

**Thompson Exhibit 27**:  **Letter from Hyatt tax counsel to SBE** requesting a 180-day extension of time to file his reply briefs due to, among other things, FTB including many new alleged facts in its opening briefs that were never cited in its Protest Determination Letter, that were never material or at issue during the protests, that were never material or at issue during the audits, and that were outside of the tax years in dispute, dated September 29, 2009.

**Thompson Exhibit 31**:   **Letter from Hyatt tax counsel to SBE** requesting a 60-day extension of time to file his reply briefs due to, among other things, having to check and verify many of FTB's cites and references which were inaccurate, rebut thousands of FTB's complex and conclusory arguments, and rebut FTB's new legal theories and new evidence, dated March 11, 2010.

**Thompson Exhibit 34**:   **Letter from Hyatt tax counsel to SBE** requesting a 60-day extension of time to file his reply briefs due to, among other things, unexpected health issues of individuals working on the case and progress on the reply briefs had been slower than anticipated because of the continued and considerable complexity of the case, dated May 17, 2010.

**Thompson Exhibit 44**:   **Letter from Hyatt tax counsel to SBE** requesting a 10-month extension of time to file his supplemental briefs due to FTB's reply briefs containing large amount of information never before presented in the case, dated July 5, 2011.

**Thompson Exhibit 51**:   **Letter from Hyatt tax counsel to SBE** requesting a 30-day extension of time to file his supplemental briefs because the Nevada Supreme Court scheduled an additional argument for June 18, 2012, the day before the briefs are currently due, dated May 16, 2012.

**Thompson Exhibit 84**:   **Emails between SBE, FTB and Hyatt tax counsel** in which Hyatt tax counsel states it will not be possible to meet the June 3, 2014 deadline for a joint submission of documents because of the lack of cooperation from FTB, dated May 29-30, 2014.

**Thompson Exhibit 86:   Letter from Hyatt tax counsel to SBE** stating that the schedule set by SBE would not permit Mr. Hyatt to provide linked versions of his reply briefs due on December 16, 2014, but Mr. Hyatt will provide linked versions of his reply briefs subsequent to the due date. The letter notes FTB has five more months than Mr. Hyatt to provide linked versions of its July 16, 2014 additional briefs. The letter also requests that the deadline for FTB's concluding summaries be moved up to November 16, 2014, with Mr. Hyatt's to follow on December 16, 2014 pursuant to the principle that the appellant to an appeal from an FTB assessment has the "last word" by filing the final brief, dated July 2, 2014.

**Thompson Exhibit 89**:  **Emails between Hyatt tax counsel and SBE** in which Mr. Hyatt requests an extension from September 22, 2014 to October 1, 2014 for responding to FTB's proposed changes and redactions due to the unavailability of his tax counsel for a short period, and SBE grants the requested extension, dated September 5 and 9, 2014.

**Thompson Exhibit 111**:  **Letter from Hyatt tax counsel to SBE** noting FTB's continued use of prohibited Philips documents in violation of the New York court orders causing delays in the resolution of the appeals and requesting extension of 90 days to October 7, 2015, for filing Mr. Hyatt's second supplemental briefs and concluding summaries, dated June 3, 2015.

**Thompson Exhibit 117**:  **Email from Hyatt tax counsel to SBE** in which Hyatt tax counsel requests a one-week extension to November 30, 2015 to respond to FTB's proposed redactions due to his heavy travel schedule in November, dated November 3, 2015.

**Thompson Exhibit 119**:  **Email from Hyatt tax counsel to SBE** in which Mr. Hyatt requests a one-week extension to January 13, 2016, for Mr. Hyatt's response regarding documents and exhibits to be redacted due to his lead attorney's change to a new firm and his inability to access his files during the transition, dated January 7, 2016.

**Thompson Exhibit 121:  Letter from Hyatt tax counsel to SBE** notifying SBE that Mr. Antolin has replaced Mr. Coffill as the lead counsel in the appeals and requesting a 90-day extension for filing Mr. Hyatt's additional briefs and concluding summaries due to Mr. Coffill not being able to continue to represent

Mr. Hyatt in the appeals and the file transfer of Mr. Hyatt's voluminous files to

Mr. Antolin's office had taken much longer than expected, dated March 11, 2016.

**Thompson Exhibit 124**:  **Letter from Hyatt tax counsel to SBE**

requesting a 30-day extension to September 6, 2016 for filing Mr. Hyatt's

additional briefs and concluding summaries, which would apply to FTB's

concluding summaries as well due to Mr. Antolin leaving his former firm and the

enormity of the briefing to respond to FTB's additional briefs that contain

thousands of pages of additional documents, i.e., new and revised attachments and

exhibits containing added arguments, notations, and highlighting, dated July 15,

2016.

**Thompson Exhibit 125**:  **Email from FTB to SBE** in which FTB states

that it has no objection to Mr. Hyatt's request for a 30-day extension, but suggests

that the due date be extended to September 9, 2016 instead of September 6, 2016,

dated July 18, 2016.

**Thompson Exhibit 126**:  **Letter from Hyatt tax counsel to SBE**

requesting a one-week extension to September 16, 2016 for filing Mr. Hyatt's

additional briefs and concluding summaries due to Hyatt tax counsel's current

work commitments and stating that FTB does not object to the request, dated

August 30, 2016.

**Thompson Exhibit 130**:  **Letter from Hyatt tax counsel to SBE**
requesting a one-week extension to September 28, 2016 for filing Mr. Hyatt's
additional briefs and concluding summaries and FTB's concluding summaries due
to unanticipated IT problems that prevented completion of Mr. Hyatt's additional
briefs and concluding summaries, dated September 19, 2016.

### C.     Additional documents relevant to delay in the SBE Appeals.

**FTB Exhibit 49**:   **Hyatt Opening Brief (1991 Tax-Year Appeal)**, pp. 65-
67, 87- 94, addressing FTB improper assertion of new issue of sourcing as
alternative basis for tax assessment after not asserting it as a basis for proposed
assessment after audit and delay by FTB and basis for interest abatement for tax
year 1991, filed December 9, 2008.

**FTB Exhibit 50**:   **Hyatt Opening Brief (1992 Tax-Year Appeal)**, pp. 67-
74, addressing delay by FTB and basis for interest abatement for tax year 1992,
filed December 9, 2008.

**FTB Exhibit 63:   Hyatt Reply Brief (1992 Tax-Year Appeal)**, pp. 30-34,
addressing FTB's burden on new issue of sourcing as alternative basis for tax
assessment against Mr. Hyatt because FTB did not assert it as basis for proposed

assessment in audit, and pp. 82-100, addressing delay by FTB and basis for interest abatement, filed August 23, 2010.

**HYATT EXHIBIT 74.  FTB's Additional Brief ($24 Million Error),** pp. 1:24-2:1; 28, fn. 152, admitting for the first time in the history of the audit, protest, and appeal that it made a $24 million error regarding the amount of Philips income it claims Mr. Hyatt received between January 1, 1992 and April 2, 1992, dated February 19, 2013.

**FTB Exhibit 100**:  **Hyatt Second Additional Briefing (1991 Tax-Year Appeal)**, pp. 30-33, addressing FTB improper assertion of new issue of sourcing as alternative basis for tax assessment after not asserting it as a basis for proposed assessment after audit, and pp. 57-59, addressing delay by FTB and basis for interest abatement, filed September 28, 2016.

**HYATT EXHIBIT 75.  Hyatt's Additional Supplemental Briefing, Attachments 1, 3, 4**, addressing delays caused by FTB tardy Philips subpoenas and FTB submission of additional new evidence during appeals requiring Mr. Hyatt to submit additional rebuttal evidence, filed September 28, 2016.

**HYATT EXHIBIT 76.   Hyatt Third Additional Briefing (1991 Tax-Year Appeal)**, pp. 22-23, addressing delay by FTB and basis for interest abatement, filed December 12, 2016.

**HYATT EXHIBIT 77.   Hyatt Third Additional Briefing (1992 Tax-Year Appeal)**, pp. 13-19, addressing delay by FTB and basis for interest abatement, filed December 12, 2016.

**HYATT EXHIBIT 78.   Affidavit of Gilbert P. Hyatt Regarding FTB's Concluding Summaries**, directed at and correcting multitude of errors in FTB's 1991 and 1992 Concluding Summaries, filed December 12, 2016.

**HYATT EXHIBIT 79.   Subpoenas issued by Supreme Court of the State of New York, County of Westchester** per FTB request to custodian of records for U.S. Philips Corporation and two former employees Algy Tamoshunas and Jack Haken, seeking production of documents on June 24, 2011 and depositions on June 28, 29, and 30, 2011, which is three years into the SBE appeal process and 18 years after the audit was initiated, dated May 26, 2011.

**FTB Exhibits 83 and 84**:  **New York Court Suppression Orders** quashing parts of subpoenas served by FTB on Philips and two employees and thereby

limiting the documents that FTB is to receive from Philips, dated October 7, 2013, and March 13, 2014.

**HYATT EXHIBIT 80. New York Court Temporary Restraining Order (TRO) Ruling** limiting FTB from filing documents obtained from Philips under the New York subpoenas absent affirmation from FTB's New York counsel that FTB is in compliance with prior suppression orders, dated March 16, 2015.

Respectfully submitted this 7th day of April 2017.

PERKINS COIE LLP

By: *s/ Donald J. Kula*
     Donald J. Kula
     1888 Century Park E., Suite 1700
     Los Angeles, CA  90067-1721
     Telephone:  310.788.9900
     Facsimile:  310.788.3399

     Erwin Chemerinsky
     EChemerinsky@law.uci.edu
     UC IRVINE SCHOOL OF LAW
     401 E. Peltason Drive, Suite 1000
     Irvine, CA  92697-8000
     Telephone:  949.824.8814
     Facsimile:  949.824.7336

     Malcolm Segal, Bar No. 075481
     MSegal@segal-pc.com
     SEGAL & ASSOCIATES, PC
     400 Capitol Mall, Suite 2550
     Sacramento, CA  95814
     Telephone:  916.441.0886
     Facsimile:  916.475.1231

     Attorneys for Appellant
     Gilbert P. Hyatt

CERTIFICATE OF SERVICE

U.S. Court of Appeals Docket Number(s): 15-15296

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 7, 2017.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature: *s/ Yolanda Mendez*