**No. 15-15296**

IN THE
**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

GILBERT P. HYATT,

*Plaintiff-Appellant,*

v.

BETTY T. YEE, in her official capacity as California Franchise Tax
Board member and California State Board of Equalization member
DIANE L. HARKEY, in her official capacity as California State
Board of Equalization member; JEROME E. HORTON, in his
official capacity as California State Board of Equalization member;
MICHAEL COHEN, in his official capacity as California Franchise
Tax Board member; GEORGE RUNNER, in his official capacity as
California State Board of Equalization member; FIONA MA, in her
official capacity as California State Board of Equalization member
and California Franchise Tax Board member,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of California
Case No. 2:14-cv-00849-GEB-DAD (Hon. Garland E. Burrell, Jr.)

APPELLANT
GILBERT P. HYATT'S
COUNTER REQUEST FOR JUDICIAL NOTICE DOCUMENTS
VOLUME 4 OF 7
RJN0814 - RJN1080

Donald J. Kula
Oliver M. Gold
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Erwin Chemerinsky
EChemerinsky@law.uci.edu
UC IRVINE SCHOOL OF LAW
401 E. Peltason Drive, Suite 1000
Irvine, CA 92697-8000
Telephone: 949.824.8814
Facsimile: 949.824.7336

Malcolm Segal, Bar No. 075481
MSegal@segal-pc.com
SEGAL & ASSOCIATES, PC
400 Capitol Mall, Suite 2550
Sacramento, CA 95814
Telephone: 916.441.0886
Facsimile: 916.475.1231

Attorneys for Appellant Gilbert P. Hyatt

# APPELLANT GILBERT P. HYATT'S COUNTER REQUEST FOR JUDICIAL NOTICE DOCUMENTS
## INDEX

| Hyatt Exhibit No. | Document | Page |
|---|---|---|
| | **VOLUME 1** | |
| 1 | Decision issued by the Nevada Supreme Court dated September 18, 2014 | RJN0001-0035 |
| 2 | Respondent Gilbert P. Hyatt's Answering Brief filed January 5, 2010 | RJN0036-0256 |
| 3 | FTB Notice of Opening Audit for 1991 tax year dated June 17, 1993 | RJN0257-0262 |
| 4 | FTB Notice of Opening Audit for 1992 tax year dated January 19, 1996 | RJN0263-0264 |
| | **VOLUME 2** | |
| 5 | FTB Notice of Preliminary Determination for 1991 tax year dated August 2, 1995 | RJN0265-0305 |
| 6 | FTB Notice of Preliminary Determination for 1992 tax year dated April 1, 1996 | RJN0306-0323 |
| 7 | FTB Notice of Proposed Assessment for 1991 tax year dated April 23, 1996 | RJN0324-0328 |
| 8 | FTB Notice of Penalty Adjustment for 1992 tax year dated April 10, 1997 | RJN0329-0333 |
| 9 | FTB Notice of Proposed Assessment for 1992 tax year dated August 14, 1997 | RJN0334-0340 |

# APPELLANT GILBERT P. HYATT'S COUNTER REQUEST FOR JUDICIAL NOTICE DOCUMENTS
## INDEX

| Hyatt Exhibit No. | Document | Page |
|---|---|---|
| 10 | Nevada Tort Case Trial Transcript (RT: June 20, 147:14-148:20; 150:14-151:2; 151:3-153:5) | RJN0341-0347 |
| 11 | Nevada Tort Case Trial Transcript (RT: June 20, 175:15-177:13, 185:19-188:6) | RJN0348-0355 |
| 12 | Nevada Tort Case Trial Transcript (RT: April 25, 80:10-81:17, 84:11-24) | RJN0359-0362 |
| 13 | FTB Audit Strategy Memo dated November 18, 1994 | RJN0454-0457 |
| 14 | Nevada Tort Case Trial Transcript (RT: April 24, 132:2-23, 140:11-141:25) | RJN0458-0461 |
| 15 | Nevada Tort Case Trial Transcript (RT: April 24, 42:4-43:8, 80:22-81:11, 134:1-12; 136:23-138:2) | RJN0462-0470 |
| 16 | Nevada Tort Case Trial Transcript (RT: April 24, 76:16-77:7, 129:9-15) | RJN0471-0474 |
| 17 | Nevada Tort Case Trial Transcript (RT: April 24, 26:11-19, 74:1-75:20) | RJN0475-0478 |
| 18 | FTB internal memo dated August 21, 1995 | RJN0479-0484 |
| 19 | FTB audit reviewer's notes dated April 18, 1996 | RJN0485-0486 |
| 20 | Unsworn witness statements dated December 6, 1994, December 19, 1994, and January 18, 1995 | RJN0487-0502 |
| 21 | FTB Interrogatory Response | RJN0503-0510 |

2

## APPELLANT GILBERT P. HYATT'S COUNTER REQUEST FOR
## JUDICIAL NOTICE DOCUMENTS
## INDEX

| Hyatt Exhibit No. | Document | Page |
|---|---|---|
| 22 | Nevada Tort Case Trial Transcript (RT: June 9, 97:9-16, 102:7-103:17, 108:2-110:10) | RJN0511-0517 |
| 23 | Nevada Tort Case Trial Transcript (RT: May 30, 145:4-146:17, 148:9-151:5) | RJN0518-0524 |
| 24 | FTB auditor notes dated August 14, 1995 | RJN0525-0528 |
| 25 | Letters from Hyatt tax counsel to FTB dated April 29, 1996, May 1, 1996, December 11, 1997, and March 10, 1998 | RJN0529-0535 |
| 26 | FTB audit manual excerpt | RJN0536-0537 |
| 27 | Letter from Hyatt tax counsel to FTB dated July 17, 1997 | RJN0538-0542 |
| 28 | FTB reviewer comments dated August 4, 1997 | RJN0543-0545 |
| 29 | Letter from Hyatt tax counsel to FTB protest section, dated October 10, 1997 | RJN0546-0549 |
| 30 | Email internal among FTB supervisors dated April 4, 1997 | RJN0550-0551 |
| | **VOLUME 3** | |
| 31 | Nevada Tort Case Trial Transcript (RT: April 22, 69:8-71:3, 73:3-74:23, 84:2-86:2, 88:22-90:19; RT: April 23, 88:1-89:22) | RJN0552-0566 |

## APPELLANT GILBERT P. HYATT'S COUNTER REQUEST FOR
## JUDICIAL NOTICE DOCUMENTS
## INDEX

| Hyatt Exhibit No. | Document | Page |
|---|---|---|
| 32 | Hyatt Protest Letter for 1991 tax year dated June 20, 1996 | RJN0567-0629 |
| 33 | Hyatt Protest Letter for 1992 tax year dated October 10, 1997 | RJN0630-0633 |
| 34 | FTB Protest Determination Letter for both 1991 and 1992 dated November 1, 2007 | RJN0634-0635 |
| 35 | Nevada Tort Case Trial Transcript (RT: May 22, 2008, 57:20-59:6, 80:19-84:14) | RJN0636-0644 |
| 36 | Nevada Tort Case Trial Transcript (RT: May 22, 2008, 92:4 -94:11) | RJN0645-0648 |
| 37 | Nevada Tort Case Trial Transcript (RT: April 30, 2008, 149:11-24) | RJN0649-0650 |
| 38 | Nevada Tort Case Trial Transcript (RT: July 15, 2008, 3:13-16, 12:19-13:8) | RJN0651-0654 |
| 39 | Information/Document Requests (IDRs) from FTB protest officer to Hyatt tax counsel dated December 30, 1999 | RJN0655-0686 |
| 40 | Nevada Tort Case Trial Transcript (RT: May 1, 2008, 40:22-42:7) | RJN0687-0690 |
| 41 | Nevada Tort Case Trial Transcript (RT: June 16, 2008, 56:14-57:3, 58:7-60:4, 61:14-25; 72:9-13, 75:18-77:6) | RJN0691-0701 |
| 42 | Letters from former Hyatt tax counsel Eric Coffill dated June 30, 2000, July 31, 2001 and June 15, 2001 | RJN0702-0810 |

**APPELLANT GILBERT P. HYATT'S COUNTER REQUEST FOR
JUDICIAL NOTICE DOCUMENTS
INDEX**

| Hyatt Exhibit No. | Document | Page |
|---|---|---|
| 43 | FTB Protest Log (excerpts) dated September 27, 2000 and October 4, 2000 | RJN0811-0813 |
| | **VOLUME 4** | |
| 44 | FTB Protest Log (excerpt) dated February 20, 2002 | RJN0814-0815 |
| 45 | Email from FTB protest officer dated February 20, 2002 | RJN0816-0817 |
| 46 | Letter from former Hyatt tax counsel Eric Coffill dated March 7, 2002 | RJN0818-0819 |
| 47 | Email from FTB counsel Ben Miller dated April 5, 2002 | RJN0820-0821 |
| 48 | Letter from former Hyatt tax counsel Eric Coffill to FTB dated April 25, 2002 | RJN0822-0826 |
| 49 | FTB Protest Log (excerpt) dated April 25, 2005 | RJN0827-0828 |
| 50 | Nevada Discovery Commissioner Reports and Recommendations filed October 5, 2005 and November 10, 2005 | RJN0829-0850 |
| 51 | Nevada Tort Case Transcript of Nevada Discovery Commissioner ruling dated November 9, 1999 | RJN0851-0852 |
| 52 | Nevada Protective Order filed December 27, 1999 | RJN0853-0865 |
| 53 | Briefing filed in Nevada trial court during trial conducted in 2008 | RJN0866-1016 |

5

# APPELLANT GILBERT P. HYATT'S COUNTER REQUEST FOR JUDICIAL NOTICE DOCUMENTS
## INDEX

| Hyatt Exhibit No. | Document | Page |
|---|---|---|
| 54 | Nevada Tort Case Trial Transcript (RT: May 7, 2008, 98:9-103:25, 109:7-129:3; RT: May 27, 2008, 27:6-30:10; RT: June 11, 9:7-38:21) | RJN1017-1080 |
| | **VOLUME 5** | |
| 55 | Nevada Tort Case Trial Transcript (RT: June 16, 2008, 2:11-34:15, 35:13-37:6, 117:25-132:8 | RJN1081-1133 |
| 56 | Nevada Tort Case Trial Transcript (RT: July 11, 2008, 41:5-42:23; 47:19-48:13; RT: July 15, 2008,187:3-17) | RJN1134-1140 |
| 57 | Nevada Tort Case Trial Transcript (RT: July 11, 2008, 138:23-139:14, 153:19-154:19) | RJN1141-1145 |
| 58 | Nevada Tort Case Trial Transcript (RT: July 15, 2008, 187:3-15) | RJN1146-1147 |
| 59 | Nevada Tort Case Trial Transcript (RT: July 15, 2008, 188:9-192:11) | RJN1148-1153 |
| 60 | FTB Demand Letter under the Nevada Protective Order dated June 3, 2002 | RJN1154-1156 |
| 61 | Nevada Tort Case Trial Transcript (RT: July 15, 2008, 162:21-163:5, 163:7-166:13, 187:3-188:6; RT: July 14, 2008, 174:3-175:21) | RJN1157-1167 |
| 62 | SBE Rules for Tax Appeals, Rules 5431(b)(3) and 5435 | RJN1168-1172 |

**APPELLANT GILBERT P. HYATT'S COUNTER REQUEST FOR
JUDICIAL NOTICE DOCUMENTS
INDEX**

| Hyatt Exhibit No. | Document | Page |
|---|---|---|
| 63 | Email from former Hyatt tax counsel Eric Coffill to the SBE dated June 3, 2009 | RJN1173-1175 |
| 64 | SBE letter to the Franchise Tax Board ("FTB") dated July 8, 2009 | RJN1176 |
| 65 | SBE letter to FTB dated August 21, 2009 | RJN1177 |
| 66 | Letter from former Hyatt tax counsel Eric Coffill to the SBE dated September 2, 2009 | RJN1178-1180 |
| 67 | SBE letter to FTB dated September 14, 2009 | RJN1181 |
| 68 | SBE letter to both FTB and former Hyatt tax counsel Eric Coffill dated August 2, 2012 | RJN1182 |
| 69 | Letter from SBE to both FTB and former Hyatt tax counsel Eric Coffill dated February 20, 2013 | RJN1183 |
| 70 | FTB letter to the SBE dated July 16, 2014 | RJN1184 |
| 71 | FTB letter to SBE dated August 13, 2014 | RJN1185 |
| 72 | SBE letter to the FTB and former Hyatt tax counsel Eric Coffill dated December 9, 2014 | RJN1186-1187 |
| 73 | FTB letter to the SBE dated March 17, 2015 | RJN1188-1194 |
| 74 | FTB Additional Brief, pp. 1:24-2:1; 28, fn. 152, (FTB's $24 Million Error) filed in the SBE Appeals on February 19, 2013 | RJN1195-1199 |

## APPELLANT GILBERT P. HYATT'S COUNTER REQUEST FOR
## JUDICIAL NOTICE DOCUMENTS
## INDEX

| Hyatt Exhibit No. | Document | Page |
|---|---|---|
| 75 | Hyatt Additional Supplemental Briefing, Attachments 1, 3, and 4 filed in the SBE Appeals on September 28, 2016 | RJN1200-1269 |
| 76 | Hyatt Third Additional Briefing, pp. 22-23, (1991 Tax-Year Appeal) filed in the SBE Appeals on December 12, 2016 | RJN1270-1271 |
| 77 | Hyatt Third Additional Briefing, pp. 13-19, (1992 Tax-Year Appeal) filed in the SBE Appeals on December 12, 2016 | RJN1272-1278 |
| | **VOLUME 6** | |
| 78 | Hyatt Affidavit filed in the SBE Appeals on December 12, 2016 | RJN1279-1610 |
| | **VOLUME 7** | |
| 79 | Subpoenas issued by Supreme Court of the State of New York, County of Westchester, to FTB in conjunction with the SBE Appeals and dated May 26, 2011 | RJN1611-1732 |
| 80 | Temporary Restraining Order (TRO) Ruling issued by Supreme Court of the State of New York, County of Westchester, in conjunction with the SBE Appeals and dated March 16, 2015 | RJN1733-1735 |

1

IN THE SUPREME COURT OF THE STATE OF NEVADA

2

3   FRANCHISE TAX BOARD
    OF THE STATE OF CALIFORNIA,                    )
4                                                  )        No. 53264
            Appellant/Cross-Respondent,            )
5                                                  )
                                                   )
6   vs.                                            )
                                                   )
7   GILBERT P. HYATT,                              )
                                                   )
8           Respondent/Cross-Appellant.            )
                                                   )
9   ───────────────────────────────────

10

11          APPEAL FROM JUDGMENT – EIGHTH JUDICIAL DISTRICT COURT
                    STATE OF NEVADA, CLARK COUNTY
12              HONORABLE JESSIE WALSH, DISTRICT JUDGE

13                              * * * * *

14
                         APPELLANT'S APPENDIX
15
                            VOLUME 76
16

17

18

19                              ROBERT L. EISENBERG (NSBN 0950)
                                LEMONS, GRUNDY, & EISENBERG
20                              6005 Plumas Street, Suite 300
                                Reno, Nevada 89519
21                              Telephone No. (775) 786-6868
                                Facsimile No. (775) 786-9716
22
                                PAT LUNDVALL (NSBN 3761)
23                              CARLA HIGGINBOTHAM (NSBN 8495)
                                McDONALD CARANO WILSON LLP
24                              2300 West Sahara Avenue, Suite 1000
                                Las Vegas, NV 89102
25                              Telephone No. (702) 873-4100
                                Facsimile No. (702) 873-9966
26
                                ATTORNEYS FOR APPELLANT/
27                              CROSS-RESPONDENT

28

RJN0814



| FRANCHISE TAX BOARD | Print Date: 09/07/2005 |
|---|---|
| PASS DESKTOP | Page 58 of 87 |

**Event Log For Case Unit: Hyatt, Gilbert - 1992**

06/20/2001    Received Correspondence

User: Hao, Gene          Date: 06/20/2001    Time: 16:15:16    Type: Docketed Protest

From: Carley A. Roberts

Subject: Tax Rep. Submits An Opinion From The 9th Circuit Case

Comment: FTB rec'd a copy of the opinion from the 9th Circuit case.

06/20/2001    Received Correspondence

User: Hao, Gene          Date: 06/20/2001    Time: 16:21:18    Type: Docketed Protest

From: Carley A. Roberts

Subject: Status of All IDRs (Tax Rep.'s Checklist)

Comment: The tax rep. submits a checklist showing all of their responses to FTB's IDRs are accounted for.

06/27/2001    Record Progress

06/26/2001    Record Progress

02/20/2002    Record Public Contact

User: Cinnamon, Cody C          Date: 02/20/2002    Time: 10:24:42    Type: Docketed Protest

Contact Type: Incoming Call          Time: 10:21:28    Date: 02/20/2002

Subject: Eric Coffill called me and asked what was happening with the case.

Comment: I told him that I was instructed not to work on the case due to the pending Nevada litigation. He wanted further information so I referred Eric to GWM.

02/20/2002    Send Correspondence

**FTB 27981 (A)**

1

## IN THE SUPREME COURT OF THE STATE OF NEVADA

2

3 FRANCHISE TAX BOARD OF THE STATE
OF CALIFORNIA,                                   Supreme Court Case No. 53264

4                    Appellant,

5          v.

6 GILBERT P. HYATT,

7                    Respondent

8

**APPEAL FROM JUDGMENT – EIGHTH JUDICIAL DISTRICT COURT**
9                    **STATE OF NEVADA, CLARK COUNTY**
**HONORABLE JESSIE WALSH, DISTRICT JUDGE**

10

11

**RESPONDENT'S APPENDIX**
12
**VOLUME 85**
13

14

15          Mark A. Hutchison, Nevada Bar No. 4639
            Michael K. Wall, Nevada Bar No. 2098
16          Hutchison & Steffen
            10080 Alta Drive, Suite 200
17          Las Vegas, NV 89145
            Telephone: (702) 385-2500
            Facsimile: (702) 385-2086
18

19          Peter C. Bernhard, Nevada Bar No. 734
            Kaempfer Crowell Renshaw
20          Gronauer & Fiorentino
            8345 West Sunset Rd.
21          Suite 250
            Las Vegas, Nevada 89113
22          Telephone: (702) 792-7000
            Facsimile: (702) 796-7181
23

24          Donald J. Kula, California Bar No. 144342
            Perkins Coie
25          1888 Century Park East, Suite 1700
            Los Angeles, CA 90067
26          Telephone: (310) 788-9900
            Facsimile: (310) 788-3399

27          *Attorneys for Respondent*

28

– 1 –

RJN0816

**Hilson.Bill**

From:          Cinnamon.Cody
Sent:          Thursday, September 15, 2005 8:51 AM
To:            Hilson.Bill
Subject:       FW: Protest of Gilbert Hyatt

FYI

-----Original Message-----
From:          McLaughlin.George
Sent:          Wednesday, February 20, 2002 2:52 PM
To:            Cinnamon.Cody
Subject:       RE: Protest of Gilbert Hyatt

See me. GWM///

-----Original Message-----
From:          Cinnamon.Cody
Sent:          Wednesday, February 20, 2002 10:25 AM
To:            McLaughlin.George
Subject:       Protest of Gilbert Hyatt

Eric Coffill called me and asked what was happening with the case. I told Eric that I was instructed not to work on the
case due to the pending Nevada litigation. He wanted further information so I referred Eric to you. Eric said he would
be calling you.

1

P11374

0398-00001
RA021224

RJN0817

1

**IN THE SUPREME COURT OF THE STATE OF NEVADA**

2

3  FRANCHISE TAX BOARD OF THE STATE
   OF CALIFORNIA,                              Supreme Court Case No. 53264

4       Appellant,

5  v.

6  GILBERT P. HYATT,

7       Respondent

8

**APPEAL FROM JUDGMENT – EIGHTH JUDICIAL DISTRICT COURT**

9  **STATE OF NEVADA, CLARK COUNTY**
   **HONORABLE JESSIE WALSH, DISTRICT JUDGE**

10

11

**RESPONDENT'S APPENDIX**

12

**VOLUME 85**

13

14                    Mark A. Hutchison, Nevada Bar No. 4639

15                    Michael K. Wall, Nevada Bar No. 2098
                      Hutchison & Steffen

16                    10080 Alta Drive, Suite 200
                      Las Vegas, NV 89145

17                    Telephone: (702) 385-2500
                      Facsimile: (702) 385-2086

18

19                    Peter C. Bernhard, Nevada Bar No. 734
                      Kaempfer Crowell Renshaw

20                    Gronauer & Fiorentino
                      8345 West Sunset Rd.

21                    Suite 250
                      Las Vegas, Nevada 89113

22                    Telephone: (702) 792-7000
                      Facsimile: (702) 796-7181

23

24                    Donald J. Kula, California Bar No. 144342
                      Perkins Coie

25                    1888 Century Park East, Suite 1700
                      Los Angeles, CA 90067

26                    Telephone: (310) 788-9900
                      Facsimile: (310) 788-3399

27

                      *Attorneys for Respondent*

28

– 1 –

KAEMPFER CROWELL RENSHAW
GRONAUER & FIORENTINO
8345 West Sunset Rd., Suite 250
Las Vegas NV 89113
Telephone (702) 792-7000
Facsimile (702) 796-7181

RJN0818

MORRISON. & FOERSTER LLP

Mr. George W. McLaughlin
March 7, 2002
Page Two

June 15, 2001:  Letter to Cody Cinnamon confirming no information or
      document requests were outstanding from FTB

  Accordingly, our last communication with FTB regarding the 1991 and 1992
protests was by our letter to Cody dated June 15, 2001. Between June 15, 2001 and
February 20, 2002, we did not receive any communications (written or oral) from
anyone at FTB regarding the protests.

  On February 20, 2002, I telephoned Cody Cinnamon to inquire into the status of
the protests, based on the fact we had not heard from FTB for over seven months. Cody
informed me during our telephone conversation of February 20, 2002 that she was still
assigned the protests, but that the Hyatt protests for 1991 and 1992 were "on hold" at
this time, and had been on hold for quite some time. Cody informed me that June 2001
was the last month for which she had charged time to the Hyatt protests, and that very
little time had been charged to the protests in June 2001. She suggested that I call you
for further information regarding the FTB delays.

  You informed me during our telephone conversation of February 20th that you
and Cody were under instructions from FTB management to hold the Hyatt protests for
1991 and 1992, and that neither you nor Cody were actively working on the protests at
this time. You informed me the protests were not being worked on because of the
pending Nevada litigation between Mr. Hyatt and FTB. While it was not clear from our
conversation exactly when this "hold" was put on the protests, I told you what Cody had
told me, i.e., that Cody had not charged time on the protests since June 2001. You also
informed me that you believe the protests are "written up," and that you believed that
FTB could issue proposed determination letters for 1991 and 1992 on relatively short
notice of several weeks once the case was activated.

  In light of the age of the protests - nearly six years for the 1991 protest and over
four years for the 1992 protest - we urge FTB to act in a more responsive manner and
make a proposed determination with respect to these protests as soon as possible. It is
now March of 2002, nearly ten months after our last information and documentation
submission (on May 31, 2001). In our letter to Cody dated June 15, 2001, we confirmed
there was no information or document requests outstanding from FTB, and to date we
have received nothing from FTB indicating its disagreement.

  These protests involve the residency issue. We understand the pending Nevada
litigation between FTB and Mr. Hyatt does not have a "residency" cause of action, and
would not determine this residency issue. Accordingly, we fail to see any reason for
FTB to delay these protests because of the pending Nevada litigation. In addition, we
would like to point out that these protests already have far exceeded the 33-month
protest target period set forth in FTB Notice 99-1.

P01417

0399-00002
RA021226

RJN0819

# IN THE SUPREME COURT OF THE STATE OF NEVADA

FRANCHISE TAX BOARD OF THE STATE
OF CALIFORNIA,

    Appellant,

v.

GILBERT P. HYATT,

    Respondent

Supreme Court Case No. 53264

**APPEAL FROM JUDGMENT – EIGHTH JUDICIAL DISTRICT COURT
STATE OF NEVADA, CLARK COUNTY
HONORABLE JESSIE WALSH, DISTRICT JUDGE**

**RESPONDENT'S APPENDIX**

**VOLUME 85**

Mark A. Hutchison, Nevada Bar No. 4639
Michael K. Wall, Nevada Bar No. 2098
Hutchison & Steffen
10080 Alta Drive, Suite 200
Las Vegas, NV 89145
Telephone: (702) 385-2500
Facsimile: (702) 385-2086

Peter C. Bernhard, Nevada Bar No. 734
Kaempfer Crowell Renshaw
Gronauer & Fiorentino
8345 West Sunset Rd.
Suite 250
Las Vegas, Nevada 89113
Telephone: (702) 792-7000
Facsimile: (702) 796-7181

Donald J. Kula, California Bar No. 144342
Perkins Coie
1888 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 788-9900
Facsimile: (310) 788-3399

*Attorneys for Respondent*

KAEMPFER CROWELL RENSHAW
GRONAUER & FIORENTINO
8345 West Sunset Rd., Suite 250
Las Vegas NV 89113
Telephone (702) 792-7000
Facsimile (702) 796-7181

– 1 –

RJN0820

Hilson.Bill

From:             Cinnamon.Cody
Sent:             Thursday, September 15, 2005 8:50 AM
To:               Hilson.Bill
Subject:          FW: Hyatt

FYI

-----Original Message-----
From:             Hilar.Ben
Sent:             Friday, April 05, 2002 11:03 AM
To:               Caglayan.Caglar; McLaughlin.George; Cinnamon.Cody
Subject:          Hyatt

I think this means we should put things on hold with administrative matters, in particular the recent draft letter. This puts a new light on things and we may well want to proceed under the protective order to try and get documents. It is clear that the protective order is going away anytime in the near future.

P11375

0411-00002
RA021240

RJN0821

1

**IN THE SUPREME COURT OF THE STATE OF NEVADA**

2

3    FRANCHISE TAX BOARD OF THE STATE
     OF CALIFORNIA,                              Supreme Court Case No. 53264

4          Appellant,

5    v.

6    GILBERT P. HYATT,

7          Respondent

8

9    **APPEAL FROM JUDGMENT – EIGHTH JUDICIAL DISTRICT COURT
     STATE OF NEVADA, CLARK COUNTY
     HONORABLE JESSIE WALSH, DISTRICT JUDGE**

10

11

12                          **RESPONDENT'S APPENDIX**

13                              **VOLUME 85**

14
                    Mark A. Hutchison, Nevada Bar No. 4639
15                  Michael K. Wall, Nevada Bar No. 2098
                    Hutchison & Steffen
16                  10080 Alta Drive, Suite 200
                    Las Vegas, NV 89145
17                  Telephone: (702) 385-2500
                    Facsimile: (702) 385-2086
18
                    Peter C. Bernhard, Nevada Bar No. 734
19                  Kaempfer Crowell Renshaw
                    Gronauer & Fiorentino
20                  8345 West Sunset Rd.
                    Suite 250
21                  Las Vegas, Nevada 89113
                    Telephone: (702) 792-7000
22                  Facsimile: (702) 796-7181

23                  Donald J. Kula, California Bar No. 144342
24                  Perkins Coie
                    1888 Century Park East, Suite 1700
25                  Los Angeles, CA 90067
                    Telephone: (310) 788-9900
26                  Facsimile: (310) 788-3399

27                  *Attorneys for Respondent*

28

                              – 1 –

KAEMPFER CROWELL RENSHAW
GRONAUER & FIORENTINO
8345 West Sunset Rd., Suite 250
Las Vegas NV 89113
Telephone (702) 792-7000
Facsimile (702) 796-7181

RJN0822

MORRISON & FOERSTER LLP

ATTORNEYS AT LAW

SAN FRANCISCO
LOS ANGELES
DENVER
PALO ALTO
WALNUT CREEK
SACRAMENTO
CENTURY CITY
ORANGE COUNTY
SAN DIEGO

400 CAPITOL MALL, SUITE 2600
SACRAMENTO, CALIFORNIA 95814
TELEPHONE (916) 448-3200
TELEFACSIMILE (916) 448-3222

NEW YORK
WASHINGTON, D.C.
NORTHERN VIRGINIA
LONDON
BRUSSELS
BEIJING
HONG KONG
SINGAPORE
TOKYO

April 25, 2002

Writer's Direct Contact
(916) 325-1324
ecoffill@mofo.com

**RECEIVED**
APR 2 9 2002
SACRAMENTO LEGAL
FRANCHISE TAX BOARD
EYH 4/24/02

By Mail

Cody C. Cinnamon
Tax Counsel III
Franchise Tax Board
Legal Branch
P.O. Box 1720
Rancho Cordova, CA 95741-1720

Re: Protests of Gilbert P. Hyatt
SSN: 069309999
NPA Nos. 04728256 & 04340945
Income Years 1991 & 1992

Dear Ms. Cinnamon:

This is in response to your letter of March 28, 2002, which requested additional information in the above protests. Your requests, and our responses, are set forth below.

QUESTION NO. 1:

A copy of the patent or license agreement with Hitachi. In your June 8, 2001, response to our May 9, 2001, request for a copy of the Hitachi agreement you stated that it was not relevant to the disputed period. The submittal of the agreement will enable me to confirm your statement.

RESPONSE TO QUESTION NO. 1:

As stated in your question, our June 8, 2001 response to your identical request on May 9, 2001 was that the Hitachi agreement was signed by Mr. Hyatt on July 22, 1992 and by Hitachi on August 6, 1992 and, hence, it is not relevant to either the 1991 disputed period or the 1992 disputed period. FTB has already conceded that Mr. Hyatt was a Nevada resident as of April 3, 1992. Our response of June 8, 2001 asked you to

P01368

0403-00001
RA021230

RJN0823

MORRISON & FOERSTER LLP

Cody Cinnamon
April 25, 2002
Page Two

"[p]ease explain the relevancy of your request as it relates to documents signed after the 1992 disputed period."

FTB's authority to examine records is contained in Revenue and Taxation Code section 19504, which is modeled after Internal Revenue Code section 7602. Where a California tax statute is similar to its federal counterpart, "federal case law is persuasive authority in the interpretation and application of the California statute." (*Appeal of Gary O. Armstrong*, Cal. St. Bd. of Equal., December 3, 1985; *Holmes v. McColgan* (1941) 17 Cal.2d 426, 430, *cert. den.*, 314 U.S. 636.) The test of materiality and relevance under Internal Revenue Code section 7602 has been defined as whether the inspection sought might have thrown light on the correctness of the taxpayer's returns. (*United States v. Matras* (8th Cir. 1973) 487 F.2d 1271, 1274.) As stated by the Second Circuit in *United States v. Harrington* (2nd Cir. 1968) 388 F.2d 520, 524, the question is "whether the 'might' in the articulated standard, 'might throw light upon the correctness of the return,' is in the particular circumstances an indication of a realistic expectation *rather than an idle hope that something may be discovered*." (Emphasis added; *see also United States v. Goldman* (C.D. Cal. 1978) 453 F. Supp. 508, 512; *aff'd.* 637 F.2d 664 (holding an IRS request for other year's tax records not relevant).)

Over ten months has passed since our June 8, 2001 response, and we have never received any explanation yet from FTB why this agreement, which is signed after the 1992 disputed period, is relevant. Your statement that we must provide the agreement to FTB so as to enable you "to confirm" the lack of relevancy, is an inappropriate approach. FTB (like the IRS) "does not have carte blanche discovery." (*United States v. Goldman*, *supra* at 511.) FTB must first <u>show</u> that the request item is relevant. (*See United States v. Powell* (1964) 379 U.S. 48, 57-58.) No such showing has yet been made by FTB.

Notwithstanding the foregoing, we continue to urge FTB to act in a responsive manner and make a proposed determination with respect to these protests as soon as possible. (*See* our March 7, 2002 letter to George W. McLaughlin.) Accordingly, in order to expedite the protest, attached hereto as Exhibit I is a copy of the requested Hitachi agreement (including its Exhibit A). Please note that the agreement (1) is effective August 6, 1992 (Agreement, p. 1); was signed by Mr. Hyatt on July 22, 1992 (Agreement, p. 20); and (3) was signed by Hitachi on August 6, 1992 (Agreement, p. 20) - all of which dates are <u>outside</u> the period in dispute. Note also that the two payments to Mr. Hyatt under the agreement were required to be made to Mr. Hyatt no earlier than the August 6, 1992 effective date (Agreement, p. 7), and no later than December 28, 1992 (Agreement, p. 7) - all of which periods are <u>outside</u> the period in dispute.

P01369

0403-00002
RA021231

RJN0824

MORRISON & FOERSTER LLP

Cody Cinnamon
April 25, 2002
Page Three

QUESTION NO. 2:

A copy of Schedule 1 to U.S. Philips' November 6, 1992 letter
regarding 3rd quarter 1992 patent agreement payments to Hyatt.
Schedule 1 which is the "statement of funds deemed to have been
received" is missing from Exhibit 161 of your June 30, 2000,
submittal.

RESPONSE TO QUESTION NO. 2:

Attached hereto as Exhibit 2 is a copy of Schedule 1 to the November 6, 1992
U.S. Philips letter.

QUESTION NO. 3:

A copy of Schedule 1 to U.S. Philips' February 3, 1993, letter
regarding 4th quarter 1992 patent agreement payments to Hyatt.
Schedule 1 which is the "statement of funds deemed to have been
received" is missing from Exhibit 161 of your June 30, 2000,
submittal.

RESPONSE TO QUESTION NO. 3:

Mr. Hyatt cannot locate the requested item. It is not attached to Mr. Hyatt's
original copy of the U.S. Philips' February 3, 1993 letter.

CONCLUSION

In conclusion, three additional comments are in order.

First, we wish to be very clear, for the record, that the documents attached hereto
as Exhibits 1 and 2 are extremely confidential, and should be treated as such by FTB.
Under no circumstances do we expressly or impliedly consent to the disclosure by
you/FTB of these documents to any third parties, or to disclosure by you/FTB of these
documents to anyone not assigned in a staff or supervisory capacity to these protests.

Second, we continue to be concerned that nearly eleven months have passed
since our final protest supplement (on May 31, 2001), and only by way of your March
28, 2002 letter do we learn that FTB still is under the impression it requires yet *more*
information to act on the protests. As discussed above, we are responding to your
current requests in order to continue to expedite the proceedings. However, please be
advised that we will look unfavorably upon any additional information requests

P01370

0403-00003
RA021232

RJN0825

MORRISON & FOERSTER LLP

Cody Cinnamon
April 25, 2002
Page Four

regarding these protests without FTB first clearly demonstrating the relevancy for the
requested information.

Third, we continue to strongly request an expeditious conclusion to the protests.

Thank you for your continuing cooperation in this matter.

Very truly yours,

Eric J. Coffill

Enclosures

cc: Gilbert Hyatt (w/encls.)
    Eugene Cowan (w/encls.)

P01371

0403-00004
RA021233

RJN0826

IN THE SUPREME COURT OF THE STATE OF NEVADA

FRANCHISE TAX BOARD
OF THE STATE OF CALIFORNIA,

    Appellant/Cross-Respondent,

vs.

GILBERT P. HYATT,

    Respondent/Cross-Appellant.

No. 53264

APPEAL FROM JUDGMENT – EIGHTH JUDICIAL DISTRICT COURT
STATE OF NEVADA, CLARK COUNTY
HONORABLE JESSIE WALSH, DISTRICT JUDGE

* * * * *

APPELLANT'S APPENDIX

VOLUME 77

ROBERT L. EISENBERG (NSBN 0950)
LEMONS, GRUNDY, & EISENBERG
6005 Plumas Street, Suite 300
Reno, Nevada 89519
Telephone No. (775) 786-6868
Facsimile No. (775) 786-9716

PAT LUNDVALL (NSBN 3761)
CARLA HIGGINBOTHAM (NSBN 8495)
McDONALD CARANO WILSON LLP
2300 West Sahara Avenue, Suite 1000
Las Vegas, NV 89102
Telephone No. (702) 873-4100
Facsimile No. (702) 873-9966

ATTORNEYS FOR APPELLANT/
CROSS-RESPONDENT

 **FRANCHISE TAX BOARD**
**PASS DESKTOP**

Print Date: 09/07/2005
Page 80 of 87

Event Log For Case Unit: Hyatt, Gilbert - 1992

| | |
|---|---|
| User: Cinnamon, Cody C | Date: 04/25/2005  Time:  15:58:47  Type: Docketed Protest |
| Contact Type: Incoming Call | Time:  09:52:00  Date: 04/25/2005 |

Subject: Eric Coffill called and asked re status of protest

Comment: I told him I was reviewing documents and that this case was a high priority for me to complete. He asked for specific time frames of when I would be getting something to him on the case, including the sourcing issue, and I said that I could not give him specific dates. He wanted to know when all would be closing the case. He said that once I give him something on the sourcing issue he would need several months to respond. He asked me if I was planning to close the protest in June 2005. I referred Eric to CAG.

Eric asked what specific documents I was reviewing and I told him they were the documents obtained through the California administrative subpoena.

FTB 28003 (A)

2353-0084

AA19003

RJN0828

# IN THE SUPREME COURT OF THE STATE OF NEVADA

FRANCHISE TAX BOARD OF THE STATE
OF CALIFORNIA,

Appellant,

v.

GILBERT P. HYATT,

Respondent

Supreme Court Case No. 53264

**APPEAL FROM JUDGMENT – EIGHTH JUDICIAL DISTRICT COURT
STATE OF NEVADA, CLARK COUNTY
HONORABLE JESSIE WALSH, DISTRICT JUDGE**

**RESPONDENT'S APPENDIX**

**VOLUME 14**

Mark A. Hutchison, Nevada Bar No. 4639
Michael K. Wall, Nevada Bar No. 2098
Hutchison & Steffen
10080 Alta Drive, Suite 200
Las Vegas, NV 89145
Telephone: (702) 385-2500
Facsimile: (702) 385-2086

Peter C. Bernhard, Nevada Bar No. 734
Kaempfer Crowell Renshaw
Gronauer & Fiorentino
8345 West Sunset Rd.
Suite 250
Las Vegas, Nevada 89113
Telephone: (702) 792-7000
Facsimile: (702) 796-7181

Donald J. Kula, California Bar No. 144342
Perkins Coie
1888 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 788-9900
Facsimile: (310) 788-3399

*Attorneys for Respondent*

KAEMPFER CROWELL RENSHAW
GRONAUER & FIORENTINO
8345 West Sunset Rd., Suite 250
Las Vegas NV 89113
Telephone (702) 792-7000
Facsimile (702) 796-7181

– 1 –

RJN0829

# ORIGINAL

FILED

OCT 5  9 37 AM '05

_Shirly L. Krugisan_
CLERK

**HEARING REQUIRED**
DATE: _____
TIME: _____

1   **DCRR**
    Mark A. Hutchison (4639)
2   Hutchison & Steffen
    Peccole Professional Park
3   10080 West Alta Drive, Suite 200
    Las Vegas, NV 89145
4   (702) 385-2500

5   Peter C. Bernhard (734)
    Bullivant Houser Bailey PC
6   3980 Howard Hughes Pkwy., Ste. 550
    Las Vegas, NV 89109
7   Telephone:    (702) 650-6565
    *Attorneys for Plaintiff Gilbert P. Hyatt*
8

9               **DISTRICT COURT**

10             **CLARK COUNTY, NEVADA**

11  GILBERT P. HYATT,                          Case No.: A382999

12                  Plaintiffs,                Dept. No.: X

13       v.                                    **DISCOVERY COMMISSIONER'S REPORT
                                               AND RECOMMENDATIONS**
14  FRANCHISE TAX BOARD OF THE STATE
    OF CALIFORNIA, and DOES 1-100 inclusive,   **Date of Hearing:  August 5, 2005**
15                                             **Time of Hearing:  10:00 a.m.**
                    Defendants.
16                                             **FILED UNDER SEAL BY ORDER OF THE
                                               DISCOVERY COMMISSIONER DATED
17                                             FEBRUARY 22, 1999**

18

19

20

21

22

23

24

25

26

27

28

– 1 –

RA003262

RJN0830

Houser Bailey PC
3980 L. , Hughes Pkwy, Ste. 550
Las Vegas, NV 89109
Telephone: (702) 650-6565
Facsimile: (702) 650-2995

## NATURE OF ACTION AND APPEARANCES

On August 5 2005, the Discovery Commissioner held a dispute resolution conference and heard oral argument in regard to (1) remaining issues on Plaintiff Gilbert P. Hyatt's Motion to Compel Production of Documents ("Motion to Compel") and (2) the FTB's related Motion for a Protective Order re Protest Officer's Work Files.  The Discovery Commission reports and recommends the following:

## DISCOVERY COMMISSIONER'S
## REPORT AND RECOMMENDATIONS

DISPUTE RESOLUTION CONFERENCE DATE: August 5, 2005

APPEARANCES:

Plaintiff:    Mark Hutchison, Esq., of Hutchison & Steffen and Donald J. Kula, Esq., of Bingham McCutchen, LLP.

Defendant:    James Bradshaw, Esq., and James C. Giudici, Esq., of McDonald Carano Wilson LLP.

I.

## FINDINGS

On February 28, 2005 Hyatt filed his Motion to Compel Production of Documents ("Motion to Compel Re Documents").  The FTB filed its Opposition on March 18, 2005, and Hyatt filed his Reply on April 1, 2005.  The FTB also submitted to the Discovery Commissioner on April 1, 2005, certain documents and privilege/objection logs for an *in-camera* inspection.  The FTB made a supplemental *in camera* submission on July 1, 2005, and Hyatt filed an objection on July 7, 2005 to the FTB's supplemental *in camera* inspection.  At the hearing on July 8, 2005, the Discovery Commissioner did not address and specifically left for resolution at

−2−

RA003263

RJN0831

Bull   't|Houser|Bailey PC
3980 ... ...d Hughes Pkwy., Ste. 550
Las Vegas, NV 89169
Telephone: (702) 650-6565
Facsimile: (702) 650-2995

1    the August 5, 2005 hearing Hyatt's request to compel production of the documents submitted by

2    the FTB for *in-camera* review as well as Hyatt's request to compel production from the FTB of

3    the documents responsive to Hyatt's Seventh Request for Production, Request Nos. 1-5, Hyatt's

4    Eighth Request for Production, Nos. 58, 59 and 112, Hyatt's Eleventh Request for Production,

5    Nos. 104-124, Hyatt's Eighth Request for Production, No. 110, and Hyatt's Ninth Request for

6    Production, Nos. 113 and 115.

7        Also on February 28, 2005, the FTB filed its Motion for a Protective Order re the Protest

8    Officer's Work Files ("Motion for Protective Order Re Protest Files") seeking a protective order

9    in regard to Hyatt's Seventh Request for Production, Request Nos. 1-5. On March 18, 2005,

10    Hyatt filed his Opposition, and on April 1, 2005 the FTB filed its Reply along with a

11    Privilege/Objection Log re: Inadvertent Disclosures in December 10, 2004 Protest File

12    Production. On August 3, 2005, the FTB filed a Supplement to FTB's Motion for Protective

13    Order re the Protest Officer's Work Files and Hyatt's Motion to Compel. On August 4, 2005,

14    Hyatt filed a Motion to Strike and Opposition to the FTB's Supplement to FTB's Motion for

15    Protective Order re the Protest Officer's Work Files and Hyatt's Motion to Compel.

16        On July 13, 2005 Hyatt filed his Motion to Compel Depositions and for a Deposition

17    Scheduling Order ("Motion for a Deposition Scheduling Order"). On August 1, 2005 the FTB

18    filed its Opposition and a Counter-Motion for a Protective Order Re Depositions ("Counter-

19    Motion for a Protective Order"). On August 4, 2005 Hyatt filed both a reply in support of his

20    motion and an opposition to the FTB's counter-motion.

21        The Discovery Commissioner, having received the parties' moving, opposition and reply

22    (where applicable) papers for the above described motions, and the FTB's *in-camera* submission

23    of documents and its privilege/objection logs and having heard oral argument recommends as

24    follows:

25                    **II.**

26            <u>**RECOMMENDATIONS**</u>

27        IT IS HEREBY recommended that the Court adopt the following Order:

28

— 3 —

**Hyatt's Motion to Compel Re Documents**

1. For the Hyatt document requests not addressed during the July 8, 2005 dispute resolution conference and left for resolution at the August 5, 2005 dispute resolution conference, the Discovery Commissioner recommends:

### *Hyatt's 7th Request for Production*

**Request Nos. 1-2:** Grant, but limited in general to any documents referring to why or the purposes or the reasons or the facts which would clarify why the Hyatt protests for 1991 and 1992 are not resolved. In other words, anything that indicates what the delay is in the Hyatt protests or why they stalled. The Discovery Commissioner finds that this limited amount of information concerning the Hyatt protests, which are continuing, would go to the tort claims of the Plaintiff and in regard to a continuance of bad faith as has been alleged by the Plaintiff. Any documents that would shed light on why the Hyatt protests are not resolved one way or another must be produced. (August 5 transcript, 12:2 - 13:12, 14:25 - 15:12)

**Request Nos. 3-5:** Denied.

### *Hyatt's 8th Request for Production*

**Request Nos. 110:** Granted, but limited to the same restrictions set forth above in Nos. 1 and 2 of the Seventh Request for Production. (August 5 transcript, 13:18 - 15:12)

**Request Nos. 58-59, 112:** Denied, at the present time. (August 5 transcript, 15:14-20)

### *Hyatt's 9th Request for Production*

**Request No. 113 and 115:** Granted, but limited to the same restrictions set forth in Nos. 1 and 2 of the Seventh Request for Production. (August 5 transcript, 13:18 - 15:12)

### *Hyatt's 11th Request for Production*

**Request Nos. 104-106:** Granted.

**Request No. 107:** Denied.

–4–

RA003265

RJN0833

1

**Request Nos. 108-116:** Granted.

2

**Request No. 117:** Denied, as duplicative.

3

4

**Request Nos. 118-123:** Granted.

5

**Request No. 124:** Denied.

6

7

2. For the documents submitted by the FTB for *in-camera* review, the

8

Discovery Commissioner rules:

9

10

**Tab No. 1, Bates No. 18877:** Granted.

11

**Tab No. 2, Bates No. 19022:** Granted, but all the non-Hyatt names may be redacted.

12

Specifically, the FTB is to leave unredacted No. 1 and No. 3. The FTB may redact No.

13

2. The FTB may also redact under "Audit" and "Legal" the names except for Hyatt. The

14

FTB may also redact No. 5. The rest of the page is to be produced.

15

16

**Tab No. 2, Bates No. 19023:** Granted, but the FTB may redact the information under

17

"Old Business No. 1" and under "Audit" and "Legal" the names other than Hyatt. The

18

FTB may also redact No. 5 and the paragraph at the bottom "Old Business."

19

**Tab No. 2, Bates No. 19024:** Granted, but the FTB may redact the document except it

20

must produce the identifying information at the top indicating the date and what meeting

21

it is and the paragraph on Hyatt.

22

23

**Tab No. 2, Bates Nos. 19025 and 19026:** Denied.

24

**Tab No. 2, Bates No. 19027:** Granted, but the FTB may redact the information under

25

"Old Business" as well as No. 1 and No. 3 under "New Business" and the paragraph

26

"Old Business."

27

28

**Tab No. 2, Bates No. 19028:** Granted. The FTB is to leave in the identifying

– 5 –

Bull¹ ¹{Houser{Bailey PC
3980 I... .d Hughes Pkwy., Ste. 550
Las Vegas, NV 89169
Telephone:(702) 650-6565
Facsimile:(702) 650-2995

RA003266

RJN0834

information at the top and information beginning with "New Business" through the words "Message to Auditors." The FTB may redact the rest of the page.

**Tab No. 2, Bates No. 19029**: Granted, everything to be produced through where it says "Follow-up Discussion."

**Tab No. 2, Bates No. 19030**: Denied.

**Tab No. 2, Bates No. 19031**: Granted, but the FTB may redact the name other than Hyatt in the second paragraph and the paragraph that talks about missing information.

**Tab No. 2, Bates Nos. 19032 - 19036:** Denied.

**Tab No. 3, Bates No. 19043:** Granted.

**Tab No. 4, Bates No. 19045**: Granted. The redacted information must be produced.

**Tab Nos. 5 - 16 (all Bates Nos.):** Denied.

**Tab No. 17, Bates No. 19160:** Denied.

**Tab No. 18, Bates Nos. 19186 - 19191:** Denied.

**Tab No. 18, Bates Nos. 19192 - 19193**: Denied.

**Tab No. 18, Bates Nos. 19194 - 19195 and 19197**: Denied.

**Tab No. 18, Bates No. 19196**: Granted. The FTB must produce the identifying information at the top, and then the paragraph three quarters down the page referencing personnel changes. The FTB may redact the rest of the document.

**Tab No. 18, Bates Nos. 19198 - 19199:** Denied.

**Tab No. 18, Bates Nos. 19200 - 19201:** Denied.

–6–

RJN0835

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Bull· ·Houser|Bailey PC
3980 H· ·Hughes Pkwy., Ste. 550
Las Vegas, NV 89109
Telephone: (702) 650-6565
Facsimile: (702) 650-2995

**Tab No. 18, Bates Nos. 19202 - 19206**: Denied.

**Tab No. 18, Bates Nos. 19207 - 19211**: (These are duplicative of Tab No. 2, Bates Nos. 19032 - 19036, same ruling applies, denied).

**Tab No. 18, Bates Nos. 19032 - 19036**: Denied.

**Tab No. 18, Bates No. 19212**: Duplicative of page 19022 and therefore need not be produced again as the FTB need only produce the document one time.

**Tab No. 18, Bates Nos. 19213 - 19216**: Denied.

**Tab No. 18, Bates Nos. 19217 - 19220**: Duplicative of pages 19023 - 19026 and therefore need not be produced again as the FTB need only produce the documents (19023 and 19024) one time.

**Tab No. 18, Bates Nos. 19221 - 19224**: Denied.

**Tab No. 18, Bates Nos. 19225 and 19227**: Denied.

**Tab No. 18, Bates No. 19226**: Granted. The FTB is produce the top identifying information and the paragraph where there is a dot. The FTB will produce at No. 4, the first paragraph beginning with "Assistance" and then the dotted paragraph. The FTB may redact the last line beginning with "Anna."

**Tab No. 18, Bates Nos. 19228 - 19229**: Denied.

**Tab No. 18, Bates Nos. 19230 - 19234**: Duplicative of pages 19027 - 19031 that were produced under Tab No. 2 and FTB need only produce one time.

**Tab No. 18, Bates Nos. 19235 - 19237**: Denied. Duplicative of Tab No. 58.

**Tab No. 18, Bates Nos. 19238 - 19241**: Denied. Duplicative of Tab No. 55.

**Tab Nos. 19 and 20 (All Bates Nos.)**: Denied.

– 7 –

RA003268

RJN0836

**Tab No. 21, Bates No. 19383**: Denied.

**Tab No. 22, Bates No. 19389**: Denied.

**Tab No. 23, Bates No. 19413**: Denied.

**Tab No. 24, Bates No. 19416**: Granted, but the FTB may keep the redaction under No. 7 just below where it says "NONA." The FTB is to eliminate all other redactions on the page leaving just the one line redaction.

**Tab No. 25, Bates No. 19418**: Granted, eliminate the redaction.

**Tab No. 26, Bates Nos. 19422 - 19423**: Granted, eliminate the redactions.

**Tab No. 27, Bates No. 19425**: Denied.

**Tab No. 28, Bates No. 19427**: Granted, eliminate the redactions.

**Tab No. 29, Bates Nos. 19442 - 19452**: Denied.

**Tab No. 30, Bates Nos. 19508 - 19509**: Denied.

**Tab No. 31, Bates Nos. 19621 - 19622**: Granted.

**Tab No. 32, Bates Nos. 19806 - 19812**: Denied. Based on lack of relevance, but not on any privilege grounds. (August 5 transcript, 28:23-25)

**Tab No. 33, Bates Nos. 19879 - 19881**: Denied.

**Tab No. 34, Bates Nos. 20019 - 20028**: Denied.

**Tab No. 35, Bates No. 20062**: Denied.

**Tab Nos. 36 - 39 (all Bates Nos.)**: Denied.

**Tab No. 40, Bates No. 20486**: Denied.

– 8 –

RA003269

RJN0837

1    **Tab No. 41, Bates No. 21447**: Denied.

2

3    **Tab No. 42, Bates Nos. 21448 - 21449**: Denied.

4    **Tab No. 43, Bates Nos. 22283 -22286**: Grant.

5

6    **Tab No. 44, Bates No. 23205**: Denied.

7    **Tab No. 45, Bates Nos. 23263 - 23441**: Denied.

8

9    **Tab No. 46, Bates Nos. 17623 - 17628**: Denied.

10    **Tab No. 47, Bates Nos. 17995 - 18003, 18057 - 18059, 18063 - 18068, 18082 -18083**:

11    Denied.

12    **Tab No. 48, Bates Nos. 18004 - 18005**: Denied.

13

14    **Tab No. 48, Bates No. 18079**: Denied.

15    **Tab No. 49 - 54 (all Bates Nos.)**: Denied.

16

17    **Tab No. 54 supplemental *in-camera* production, Bates Nos. 18089.1 and 18090.2**:

18    Denied.

19

20    **Tab No. 55, Bates Nos. 19238- 19241**: Denied, duplicative of Tab Nos. 18 and 58.

21    **Tab No. 56, Bates No. 19245**: Grant, eliminate the redaction.

22

23    **Tab No. 57, Bates No. 21341**: Denied.

24    **Tab No. 58, Bates No. 19238 - 19241**: Denied, duplicative of Tab Nos. 18 and 55.

25

26    **Tab No. 59, Bates No. 010455**: Grant, eliminate the redaction.

27    **Tab No. 59, Bates Nos. 10482, 10485, 10499 - 10500**: Denied.

28

– 9 –

RA003270

RJN0838

**Tab No. 60, Bates No. 07915**: Denied.

**Tab No. 61, Bates Nos. 07972 - 07988**: Denied.

**Tab No. 62, Bates Nos. 08067 - 08068**: Previously produced and therefore not at issue.

**Tab No. 63, Bates Nos. 08079 - 08080**: Previously produced and therefore not at issue.

**Tab No. 63, Bates Nos. 08081 - 08082**: Denied.

**Tab No. 64 (All Bates Nos. except 08104)**: Denied, but page 08104 has been or will be produced.

**Bates No. D000362**: Denied.

**FTB No. 10482 - 10485**: Denied.

**MED 01406 - 01410**: Denied.

**MED 1298 - 1301 and 1336 - 1339**: Previously produced and therefore not at issue.

      3.     The Discovery Commissioner's rulings on the *in-camera* documents submitted by the FTB are guiding principles for other documents withheld by the FTB that have not been reviewed *in-camera*. (August 5 transcript, 63:25 - 64:8)

## FTB's Motion for a Protective Order Re Protest Files

      4.     In regard to the FTB's request for a protective order for Requests Nos. 1 through 5 of Hyatt's Seventh Document Request, the Discovery Commissioner denies, in part, and grants, in part, the request consistent with the Discovery Commissioner's rulings set forth above relative to those requests. The Discovery Commissioner is setting certain parameters on discovery, including limiting it to the audit process of Hyatt. But the Hyatt protests are part of the audit process because there has been no determination by the FTB. The FTB is still in the

– 10 –

RA003271

RJN0839

1    investigative phase during the Hyatt protests as evidenced by its arguments that it has not

2    reached a decision because it has not received information from Hyatt.  The Discovery

3    Commissioner has difficulty separating the FTB audit process from the protest as the audit and

4    the protest are not sufficiently different in nature.  The protest officer and the auditor are in

5    effect doing the same thing.  The protest is therefore not a true administrative hearing, at least

6    not where there is an impartial officer.  This is one of the basis on which the Discovery

7    Commissioner is having the FTB produce information concerning what is holding up the Hyatt

8    protests.  Additionally, the Discovery Commissioner disagrees, based on his review of certain of

9    the documents reviewed *in camera*, with the FTB's characterization that it is doing everything it

10   can to keep information separate between this case and the Hyatt protests taking place in

11   California.  There is therefore going to be discovery into whether the Hyatt protests have been

12   deliberately put on hold, and as to why the protest officer has not made a decision.  (August 5

13   transcript, 50:1 - 53:24)

14          5.     In regard to the FTB's request for return by Hyatt of documents the FTB

15   asserts were inadvertently produced — Bates Nos. P 00119-120, P 00121-124, P 00237, P

16   00240, P 00241 - 00242, P 00305-00306, P 00307-310, P 0324-327, P 00328-329, P 00330-333,

17   P 00501-507, P 00508-509, P 01087, P 01088-1089, P 01160-1161, P 01167-1168, P 01414-

18   1415, and P 01363-1364 — the Discovery Commissioner denies the request in its entirety.  The

19   production shall remain because a party cannot unring the bell.  The Discovery Commissioner

20   notes that documents numbered P 01363 through 01364 are irrelevant, but the production

21   remains and counsel are not to disclose those particular documents to anybody else for any

22   reason at all.   In regard to the remaining documents for which the FTB claims inadvertent

23   disclosure, they may be used for any purpose in this litigation but counsel are directed not to

24   disclose them outside of this litigation.  (August 5 transcript, 49:12-25, 54:5-8)

26          FTB may produce a new set of these documents marked "Confidential - NV Protective

27   Order" pursuant to this Court's Protective Order, and upon receipt of that new set Hyatt is to

28

Bailey •4tHouser|Bailey PC
3980 I,   Hughes Pkwy, Ste. 550
Las Vegas, NV 89169
Telephone:(702) 650-6565
Facsimile: (702) 650-2995

– 11 –

RA003272

RJN0840

1  return to FTB all other copies of these documents without the "Confidential - NV Protective

2  Order" designation. (August 5 transcript, 86:20-87:17).

3  ### Hyatt's Motion Re Deposition Scheduling and

4  ### the FTB's Counter-Motion For a Protective Order

5        6.    The Discovery Commissioner denies the FTB's Counter-Motion for a

6  Protective Order. The Discovery Commissioner is not going to restrict Hyatt from either

7  conducting depositions they have already taken or taking new ones that he has noticed. The

8  Discovery Commissioner is overruling the FTB's objections to those depositions. The

9  Discovery Commissioner has not seen any post-deposition motions seeking sanctions and

10  complaints about particular depositions, particularly that a deposition was a waste of time. If a

11  party is taking depositions of individuals who have no knowledge of anything, and the

12  depositions go on and on after it is established that deponent has no relevant knowledge, the

13  Discovery Commissioner will listen to those type of motions seeking a protective order and

14  impose sanctions if necessary. The Discovery Commissioner is not going to preempt a party

15  from the depositions where it makes at least a *prima facie* showing as to the basis for taking the

16  deposition. (August 5 transcript, 65:7-10, 67:2 - 68:22)

17

18        7.    The Discovery Commissioner is not at this time adopting either parties'

19  proposed deposition schedule. The parties are to work out a deposition schedule, and the

20  Discovery Commissioner wants the big bulk of the percipient depositions for both sides

21  completed in the next two to three months. He may give a little more time than that, but he

22  wants the parties to agree to the dates for the depositions and for the depositions to proceed.

23  The Discovery Commissioner is therefore giving the parties one last opportunity to work out a

24  schedule. If the parties are unable to work out a schedule, at the next discovery status check on

25  August 30, 2005 the Discovery Commissioner will set deposition dates and those depositions

26  will go forward — without exception — on the dates ordered by the Discovery Commissioner.

27  (August 5 transcript, 65:11 - 13, 68:23 - 71:4, 72:17 - 73:12)

28

– 12 –

1         8.     Hyatt is not allowed to issue a deposition subpoena *duces tecum* on a

2  current FTB employee.  Documents should have already been produced by the parties.  If

3  documents turn up that should have been produced there is going to be a problem for whatever

4  side it is.  Subpoenas to other non-party witnesses by either party are allowed.  (August 5

5  transcript, 71:5 - 20)

6        Dated this 14th day of August, 2005.

7

8                             DISCOVERY COMMISSIONER

9  Submitted by:

10  HUTCHISON & STEFFEN
     Mark A. Hutchison (4639)

11  10080 West Alta Drive, St. 200
     Las Vegas, Nevada 89145

12

13  BULLIVANT HOUSER BAILEY PC

14

15

16  Peter C. Bernhard (734)
     3980 Howard Hughes Pkwy., Ste. 550

17  Las Vegas, Nevada 89109
     Attorneys for Plaintiff Gil Hyatt

18  Approved as to form:

19

20  McDONALD CARANO WILSON LLP

21  By:
     James W. Bradshaw, Esq. (#1638)

22  Jeffrey A. Silvestri, Esq. (#5779)
     100 W. Liberty Street, 10th Floor

23  P.O. Box 2670
     Reno, NV 89505-2670

24  (775) 788-2000
     Attorneys for Defendant FTB

25

26

27

28

                                   – 13 –

*Sidebar (vertical text):* Bullivant Houser Bailey PC
3980 Howard Hughes Pkwy., Ste. 550
Las Vegas, NV 89109
Telephone: (702) 650-6565
Facsimile: (702) 650-2995

RA003274

RJN0842

**NOTICE**

Pursuant to NRCP 16.1(d)(2), you are hereby notified you have five (5) days from the date you receive this document within which to file written objections.

[Pursuant to E.D.C.R. 2.34(f), an objection must be filed and served no more than five (5) days after receipt of the Commissioner's Report. The Commissioner's Report is deemed received when signed and dated by a party, his attorney or his attorney's employee, or three (3) days after mailing to a party or his attorney, or three (3) days after the clerk of the court deposits a copy of the Report in a folder of a party's lawyer in the Clerk's office.]

A copy of the foregoing Discovery Commissioner's Report was:

✓     Mailed to ~~Plaintiff~~/Defendant's counsel on the 15th day of Sept. , 2005 at the following address:

James W. Bradshaw, Esq.
McDonald Carano Wilson
100 West Liberty Street, 10th Floor
P.O. Box 2670
Reno, Nevada 89505
Attorney for Defendant

✓     Placed in the folder of Plaintiff/~~Defendant~~'s counsel in the Clerk's office on the 15th day of Sept. , 2005.

SHIRLEY R. PARRAGUIRRE

By: _____
Deputy Clerk
MARY DAIGLE

— 14 —

RA003275

RJN0843

Case Name: *Hyatt v. Franchise Tax Board*
Case Number: A382999

## ORDER

The Court, having reviewed the above report and recommendations prepared by the Discovery Commissioner, and,

_____ The parties having waived the right to object thereto,

_____ No timely objections having been filed thereto,

✓ od Having received the objections thereto and the written arguments in support of said objections, and good cause appearing,

_____ IT IS HEREBY ORDERED the Discovery Commissioner's Report and Recommendations are affirmed and adopted.

_____ IT IS HEREBY ORDERED the Discovery Commissioner's Report and Recommendations are affirmed and adopted as modified in the following manner. (attached hereto)

✓ IT IS HEREBY ORDERED that a hearing on the Discovery Commissioner's Report is set for ___11/2___, 2005. @ 9am

Dated this __3__ day of __October__, 2005.

_____
DISTRICT COURT JUDGE

– 15 –

RA003276

RJN0844



# ORIGINAL

FILED

Nov 10   10 05 AM '05

_____
CLERK

1 | **DCRR**
Mark A. Hutchison (4639)
2 | Hutchison & Steffen
Peccole Professional Park
3 | 10080 West Alta Drive, Suite 200
Las Vegas, NV 89145
4 | (702) 385-2500

5 | Peter C. Bernhard (734)
Bullivant Houser Bailey PC
6 | 3980 Howard Hughes Pkwy., Ste. 550
Las Vegas, NV 89109
7 | Telephone:   (702) 650-6565
*Attorneys for Plaintiff Gilbert P. Hyatt*

8

9 | **DISTRICT COURT**

10 | **CLARK COUNTY, NEVADA**

11

GILBERT P. HYATT, | Case No.: A382999

Plaintiffs, | Dept. No.: X

v. | **DISCOVERY COMMISSIONER'S REPORT AND RECOMMENDATIONS**

FRANCHISE TAX BOARD OF THE STATE OF CALIFORNIA, and DOES 1-100 inclusive, | **Date of Hearing:  September 30, 2005**
**Time of Hearing:  10:00 a.m.**

Defendants. | **FILED UNDER SEAL BY ORDER OF THE DISCOVERY COMMISSIONER DATED FEBRUARY 22, 1999**

– 1 –

RA003406

RJN0845

1

## NATURE OF ACTION AND APPEARANCES

On August 5 2005, the Discovery Commissioner held a dispute resolution conference and heard oral argument in regard to: (1) Hyatt's Motion to Compel Depositions Of FTB Protest Officers Charlene Woodward, Cody Cinnamon and their Supervisor, George McLaughlin ("Motion to Compel Protest Officers' Depositions"); (2) Hyatt's Motion To Compel Rule 30(B)(6) Deposition re FTB Contacts with Japanese Companies ("Motion to Compel Rule 30(b)(6) Depositions re Japanese Companies"); (3) Motion To Compel Depositions Of Gerald Goldberg And Brian Toman ("Motion to Compel Goldberg and Toman Depositions"); and (4) the FTB Motion For Protective Orders re 30(b)(6) Witnesses and Deposition of Brian Toman ("FTB Motion for Protective Order"). The Discovery Commission reports and recommends the following:

## DISCOVERY COMMISSIONER'S
## REPORT AND RECOMMENDATIONS

DISPUTE RESOLUTION CONFERENCE DATE: September 30, 2005

APPEARANCES:

Plaintiff:    Mark Hutchison, Esq., of Hutchison & Steffen; Peter C. Bernhard, Esq., of Bullivant Houser Bailey PC; and Donald J. Kula, Esq., of Bingham McCutchen, LLP.

Defendant:   James Bradshaw, Esq., and James C. Giudici, Esq., of McDonald Carano Wilson LLP.

## I.

## F I N D I N G S

In accordance with the briefing schedule set by the Discovery Commissioner during the August 30, 2005 discovery status check, the above described motions were filed by the

Bull... 'Houser|Bailey PC
3980 H....d Hughes Pkwy., Ste. 550
Las Vegas, NV 89169
Telephone: (702) 654-6565
Facsimile: (702) 650-2995

RA003407

RJN0846

1  respective parties on September 23, 2005, and the parties filed their respective opposition on

2  September 28, 2005.

3      The Discovery Commissioner, having received the parties' moving and opposition

4  papers for the above described motions and having heard oral argument recommends as follows:

5  **II.**

6  **RECOMMENDATIONS**

7      IT IS HEREBY recommended that the Court adopt the following Order:

8  **Hyatt's Motion to Compel Protest Officers' Depositions**

9      1.    The Discovery Commission finds that the depositions of Charlene

10  Woodward, Cody Cinnamon, and George McLaughlin should be temporarily stayed pending

11  further information to be supplied by the FTB concerning the facts of delay in resolving the

12  protest. The motion is therefore continued until the next discovery status check scheduled for

13  October 18, 2005. (September 30, 2005 hearing transcript, at 48:21 - 49:21, 51:25 - 52:17.)

14

15  **Hyatt's Motion to Compel Rule 30(b)(6) Depositions re Japanese Companies**

16      2.    The Discovery Commission finds that the Motion to Compel Rule

17  30(b)(6) Depositions re Japanese Companies should be denied without prejudice. The

18  Discovery Commissioner will let the deposition go forward if Hyatt is able to present at least

19  one witness supporting his argument that the FTB's two letters to Japanese sublicensees of

20  Hyatt caused the huge ripple effect in the Japanese business world as alleged by Hyatt.

21  (September 30, 2005 hearing transcript, at 50:12 - 51:13.)

22  **Hyatt's Motion to Compel Goldberg and Toman Depositions**

23      3.    The Discovery Commission finds that the Motion to Compel Goldberg

24  and Toman Depositions should be denied without prejudice. The Discovery Commissioner

25  finds that to date Hyatt has not set forth a sufficient foundation of their respective connections to

26  the Hyatt audits or protests to warrant Hyatt taking their respective depositions. (September 30,

27  2005 hearing transcript, at 49:22 - 50:11.)

28

– 3 –

Bull  'Houser|Bailey PC
3980 H...d Hughes Pkwy., Ste. 550
Las Vegas, NV 89109
Telephone (702) 650-6565
Facsimile (702) 650-5995

RA003408

RJN0847

1                  **The FTB's Motion for a Protective Order**

2         **4.**     The Discovery Commission did not specifically address this motion

3 during the September 30, 2005 hearing and did not issue any protective order as requested by

4 the FTB. Nonetheless, the Discovery Commissioner's findings in regard to the Motion to

5 Compel Rule 30(b)(6) Depositions re Japanese Companies and Motion to Compel Goldberg and

6 Toman Depositions are without prejudice and provide that the depositions subject to the FTB's

7 Motion for a Protective Order, *i.e.*, the Rule 30(b)(6) Depositions re Japanese Companies and

8 the Toman deposition, will not proceed at that this time. As described above, Hyatt may renew

9 his request for these depositions in the future if new evidence is presented that supports the need

10 for these depositions.

11

12     Dated this 20th day of October, 2005.

13                         DISCOVERY COMMISSIONER

14 Submitted by:

15 HUTCHISON & STEFFEN
Mark A. Hutchison (4639)

16 10080 West Alta Drive, St. 200
Las Vegas, Nevada 89145

17

18 BULLIVANT HOUSER BAILEY PC

19

20 Peter C. Bernhard (734)
3980 Howard Hughes Pkwy., Ste. 550

21 Las Vegas, Nevada 89109
Attorneys for Plaintiff Gil Hyatt

22 Approved as to form:

23 McDONALD CARANO WILSON LLP

24 By:

25 James W. Bradshaw, Esq. (#1638)
Jeffrey A. Silvestri, Esq. (#5779)

26 100 W. Liberty Street, 10th Floor
P.O. Box 2670

27 Reno, NV 89505-2670
(775) 788-2000

28 Attorneys for Defendant FTB

– 4 –

Bullivant Houser Bailey PC
3980 Howard Hughes Pkwy., Ste. 550
Las Vegas, NV 89109
Telephone: (702) 650-6565
Facsimile: (702) 650-2995

RA003409

RJN0848

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE**

Pursuant to NRCP 16.1(d)(2), you are hereby notified you have five (5) days from the date you receive this document within which to file written objections.

[Pursuant to E.D.C.R. 2.34(f), an objection must be filed and served no more than five (5) days after receipt of the Commissioner's Report. The Commissioner's Report is deemed received when signed and dated by a party, his attorney or his attorney's employee, or three (3) days after mailing to a party or his attorney, or three (3) days after the clerk of the court deposits a copy of the Report in a folder of a party's lawyer in the Clerk's office.]

A copy of the foregoing Discovery Commissioner's Report was:

✓ Mailed to ~~Plaintiff~~/Defendant counsel on the 21st day of Oct. , 2005 at the following address:

        James W. Bradshaw, Esq.
        McDonald Carano Wilson
        100 West Liberty Street, 10th Floor
        P.O. Box 2670
        Reno, Nevada 89505
        Attorney for Defendant

✓ Placed in the folder of Plaintiff/~~Defendant~~'s counsel in the Clerk's office on the 21st day of Oct. , 2005.

        SHIRLEY R. PARRAGUIRRE

By: _Maria Mascatello cc_
        Deputy Clerk

        **MARY DAIGLE**

Bullivant|Houser|Bailey PC
3980 Howard Hughes Pkwy., Ste. 550
Las Vegas, NV 89169
Telephone (702) 650-6565
Facsimile (702) 650-2995

– 5 –

RA003410

RJN0849

Case Name: *Hyatt v. Franchise Tax Board*
Case Number: A382999

### ORDER

The Court, having reviewed the above report and recommendations prepared by the Discovery Commissioner, and,

_____ The parties having waived the right to object thereto,

✓ ₒₐ No timely objections having been filed thereto,

_____ Having received the objections thereto and the written arguments in support of said objections, and good cause appearing,

✓ IT IS HEREBY ORDERED the Discovery Commissioner's Report and Recommendations are affirmed and adopted.

_____ IT IS HEREBY ORDERED the Discovery Commissioner's Report and Recommendations are affirmed and adopted as modified in the following manner. (attached hereto)

_____ IT IS HEREBY ORDERED that a hearing on the Discovery Commissioner's Report is set for _____, 2005.

Dated this _7th_ day of _NO✓_, 2005.

_[signature]_
DISTRICT COURT JUDGE

– 6 –

Bulli   Touser|Bailey PC
3980 Howard Hughes Pkwy., Ste. 550
Las Vegas, NV 89169
Telephone:(702) 650-6565
Facsimile: (702) 650-2995

1

**IN THE SUPREME COURT OF THE STATE OF NEVADA**

2

3   FRANCHISE TAX BOARD OF THE STATE
    OF CALIFORNIA,                           Supreme Court Case No. 53264

4            Appellant,

5        v.

6   GILBERT P. HYATT,

7            Respondent

8   **APPEAL FROM JUDGMENT – EIGHTH JUDICIAL DISTRICT COURT**

9   **STATE OF NEVADA, CLARK COUNTY**
    **HONORABLE JESSIE WALSH, DISTRICT JUDGE**

10

11
                        **RESPONDENT'S APPENDIX**
12
                              **VOLUME 79**
13

14                          Mark A. Hutchison, Nevada Bar No. 4639
15                          Michael K. Wall, Nevada Bar No. 2098
                            Hutchison & Steffen
16                          10080 Alta Drive, Suite 200
                            Las Vegas, NV  89145
17                          Telephone: (702) 385-2500
                            Facsimile: (702) 385-2086
18
                            Peter C. Bernhard, Nevada Bar No. 734
19                          Kaempfer Crowell Renshaw
                            Gronauer & Fiorentino
20                          8345 West Sunset Rd.
                            Suite 250
21                          Las Vegas, Nevada  89113
                            Telephone: (702) 792-7000
22                          Facsimile: (702) 796-7181

23                          Donald J. Kula, California Bar No. 144342
24                          Perkins Coie
                            1888 Century Park East, Suite 1700
25                          Los Angeles, CA 90067
                            Telephone: (310) 788-9900
26                          Facsimile: (310) 788-3399

27                          *Attorneys for Respondent*

28

KAEMPFER CROWELL RENSHAW
GRONAUER & FIORENTINO
8345 West Sunset Rd. Suite 250
Las Vegas NV 89113
Telephone (702) 792-7000
Facsimile: (702) 796-7181

– 1 –

RJN0851

26

DISCOVERY COMMISSION 11-9-99

1   proceeding. Who knows if it will be wrapped up
2   before this litigation. Paragraphs 16 and 18
3   purport to maintain this after the conclusion of the
4   action of the subject nature, maintains jurisdiction
5   to enforce its provisions. I can see where that
6   will go, if Hyatt doesn't like what is requested in
7   the administrative proceedings or what is put before
8   the Board of Equalization Appeals that he will come
9   running back to the Nevada court to interfere with
10  those processes.
11          COMMISSIONER BIGGAR: Well, the
12  confidentiality order that will be enforced in this
13  case applies during this case. A breach of the
14  confidentiality order of this case would be a breach
15  whether it's now or later, it would seem to me. It
16  seems to me that any information, and I think the
17  order at least does not interfere with the fact that
18  any information which is allowed in the California
19  proceeding, in the tax proceeding in particular, you
20  know, that is allowed by the Court in that
21  proceeding, that's up to them, and any arguments
22  addressing confidentiality can be addressed at that
23  point in time to that Court. I'm not pertaining
24  to -- I don't think the Court would, the judge is
25  trying to tie the hands of the California proceeding

ALL-AMERICAN COURT REPORTERS (702)240-4393

RA019543

RJN0852

1

## IN THE SUPREME COURT OF THE STATE OF NEVADA

2

3 FRANCHISE TAX BOARD OF THE STATE OF CALIFORNIA,

4       Appellant,

5     v.

6 GILBERT P. HYATT,

7       Respondent

Supreme Court Case No. 53264

8

## APPEAL FROM JUDGMENT – EIGHTH JUDICIAL DISTRICT COURT
## STATE OF NEVADA, CLARK COUNTY
## HONORABLE JESSIE WALSH, DISTRICT JUDGE

9

10

11

## RESPONDENT'S APPENDIX

12

## VOLUME 6

13

14

15 Mark A. Hutchison, Nevada Bar No. 4639
Michael K. Wall, Nevada Bar No. 2098
16 Hutchison & Steffen
10080 Alta Drive, Suite 200
Las Vegas, NV 89145
17 Telephone: (702) 385-2500
Facsimile: (702) 385-2086

18

19 Peter C. Bernhard, Nevada Bar No. 734
Kaempfer Crowell Renshaw
20 Gronauer & Fiorentino
8345 West Sunset Rd.
21 Suite 250
Las Vegas, Nevada 89113
22 Telephone: (702) 792-7000
Facsimile: (702) 796-7181

23

24 Donald J. Kula, California Bar No. 144342
Perkins Coie
1888 Century Park East, Suite 1700
25 Los Angeles, CA 90067
Telephone: (310) 788-9900
26 Facsimile: (310) 788-3399

27

*Attorneys for Respondent*

28

– 1 –

RJN0853

KAEMPFER CROWELL RENSHAW
GRONAUER & FIORENTINO
8345 West Sunset Rd., Suite 250
Las Vegas NV 89113
Telephone (702) 792-7000
Facsimile (702) 796-7181



ORIGINAL

FILED

Dec 27  9 39 AM '99

1    **DCCR**
     Thomas L. Steffen
2    Mark A. Hutchison
     John T. Steffen
3    HUTCHISON & STEFFEN, LTD.
     Lakes Business Park
4    8831 West Sahara Avenue
     Las Vegas, Nevada 89117
5    (702) 385-2500

6    Thomas K. Bourke
     601 West Fifth Street
7    One Bunker Hill, 8th Floor
     Los Angeles, CA 90071-2094
8    (213) 623-1092

9    Attorneys for Plaintiff

10

11                          **DISTRICT COURT**

12                      **CLARK COUNTY, NEVADA**

13   GILBERT P. HYATT,                )
                                       )   CASE NO.:      A382999
14          Plaintiff,                 )   DEPT NO.:      XVIII
                                       )
15   v.                                )
                                       )
16   FRANCHISE TAX BOARD OF THE        )   **DISCOVERY COMMISSIONER'S**
     STATE OF CALIFORNIA, and DOES     )   **REPORT AND RECOMMENDATION**
17   1-100, inclusive,                 )
                                       )
18          Defendants.                )
                                       )

19

20                   Date of Conference:  November 9, 1999

21                   Time of Conference:  10:00 a.m.

22
                            **NATURE OF ACTION**
23
          Protective Order for Confidential Information, decided in conjunction with the
24
     Defendant's Motion to Compel Discovery Responses.
25

26                            **APPEARANCES**

27        At the November 9, 1999 hearing, Mark A. Hutchison, Thomas K. Bourke, and Donald

28   J. Kula appeared on behalf of the Plaintiff, Gil Hyatt, and James A. Bradshaw, Thomas R. C.

HUTCHISON
& STEFFEN
Lakes Business Park
8831 W. Sahara Avenue
Las Vegas, NV 89117
(702) 385-2500
FAX (702) 385-2086

RA001427

RJN0854

1    Wilson, Matthew C. Addison, and Felix E. Leatherwood appeared on behalf of the Defendant

2    the Franchise Tax Board of California, *i.e.* the FTB.

3    **FINDINGS**

4        1.    The FTB brought a Motion to Compel Production of Discovery Responses. The

5    FTB attached to its motion its proposed Protective Order for Confidential Information.

6        2.    Hyatt attached to his opposition to the FTB's Motion to Compel Discovery

7    Responses his proposed Protective Order. Hyatt also attached to his opposition earlier versions

8    of his proposed Protective Order that were subsequently modified based upon FTB objections.

9        3.    The parties were unable to agree upon a stipulated Protective Order and

10   requested that the Court resolve the dispute over the Protective Order in conjunction with the

11   FTB's Motion to Compel Discovery Responses.

12       4.    At the November 9, 1999 hearing on the FTB Motion to Compel Discovery

13   Responses, the Discovery Commissioner found that the proposed Protective Order submitted

14   by Hyatt, with certain modifications specified by the Discovery Commissioner during the

15   hearing, is appropriate in this case because it will provide protection for "Confidential

16   Information" so designated by the parties and will also allow the parties to use "Confidential

17   Information" as necessary within the confines of this litigation in order to prosecute, in the case

18   of Hyatt, and defend, in the case of the FTB, the claims at issue.

19

20   **RECOMMENDATIONS**

21   The following Protective Order is recommended:

22       1.    Definitions

23       A.    "FTB" shall mean defendant Franchise Tax Board of the State of

24   California, and specifically its employees, officers, or board members to whom it is necessary

25   to show "Confidential Information," subject to further limitations below, in order to assist the

26   FTB attorneys with respect to the defense of this Action.

27       B.    "Hyatt" shall mean plaintiff Gil Hyatt.

28   . . .

HUTCHISON
& STEFFEN
Lakes Business Park
8831 W. Sahara Avenue
Las Vegas, NV 89117
(702) 385-2500
FAX (702) 385-2086

- 2 -

RA001428

RJN0855

1        C.    "Party" and "Parties" shall mean one or more of the plaintiff or

2  defendant in this Action.

3        D.    "Confidential Information" shall mean and be limited to "Hyatt

4  Confidential Information" and "FTB Confidential Information" whether produced or otherwise

5  disclosed in this Action, including (a) any documents and things and copies thereof, (b) any

6  answers to interrogatories and responses to requests for admissions, and (c) any testimony

7  given in this Action by the Parties, their officers, directors, agents and/or employees, or by

8  other witnesses, whether by deposition or at trial.

9        E.    The designation "Confidential -- NV Protective Order" shall be plainly

10  legible on each page of each document. In lieu of marking the original of the documents, the

11  designating party may mark the copies that are produced or exchanged.

12        Confidential Information in other than a documentary or written form

13  shall be identified as Confidential Information on the stenographic record contemporaneously

14  with testimony revealing Confidential Information or within 30 days after the written transcript

15  of such proceeding has been prepared and disseminated by the Court reporter.

16        Abuse of the "Confidential -- NV Protective Order" designation shall

17  result in sanctions to the offending party.

18    2.    This Protective Order shall be governed by Rule 26 of the Nevada Rules of Civil

19  Procedure and applied and interpreted pursuant to Nevada law. Confidential Information

20  disclosed by Hyatt to the FTB is subject to all requirements of confidentiality imposed by the

21  laws of the State of Nevada. This order is not intended to supplant, alter, modify, or reduce the

22  FTB's requirements of confidentiality under California law. This order is intended only to

23  assist and facilitate the exchange of Confidential Information between the Parties to this Action

24  and assist and facilitate this Court in its administering of such exchanges.

25        A.    Hyatt Confidential Information may not be disclosed, revealed, or

26  disseminated by the FTB and its counsel and FTB Confidential Information may not be

27  disclosed, revealed, or disseminated by Hyatt and its counsel, except to the following

28  individuals and in the following manner:

HUTCHISON
& STEFFEN
Lakes Business Park
8831 W Sahara Avenue
Las Vegas, NV 89117
(702) 385-2500
FAX (702) 385-2086

- 3 -

RA001429

RJN0856

1            (i).    To the counsel of record for the opposing Party and counsel for

2 any witnesses and their respective stenographic, clerical, and paralegal employees. It shall be

3 the responsibility of the attorneys to ensure that their respective stenographic, clerical, and

4 paralegal employees understand and comply with this Protective Order. Violation of the

5 Protective Order by any employee will be imputed to the attorneys.

6            (ii).    To the opposing Party. In the case of the FTB this includes

7 employees, officers, and board members to the extent necessary to assist FTB counsel in the

8 defense of this Action.

9            (iii).    To court reporters and videographers covered by Paragraph 9

10 herein, after reading this Protective Order and executing a copy of Exhibit A attached hereto.

11            (iv).    To experts or consultants, whose advice and consultation are

12 being or will be used by the opposing Party in this Action, provided that such experts or

13 consultants read this Protective Order and execute a copy of Exhibit A attached hereto.

14            (v).    To such other persons as hereafter may be designated by written

15 stipulation of the Parties or by further order of the Court on motion by either party subject to

16 the notice provisions of Paragraph 16 below.

17      3.    The FTB and its attorneys shall not use Hyatt Confidential Information and

18 Hyatt and his attorneys shall not use FTB Confidential Information in any manner whatsoever

19 except solely for discovery and preparation of discovery, preparation for trial, trial, and any

20 appeals related to this Action. Furthermore, no Party or employee, officer, or board member of

21 the FTB, or any other person, firm, corporation, attorney, or other entity subject to this

22 Protective Order shall give, show, disclose, make available, or communicate Confidential

23 Information (in any form and whether or not specific identifying information has been redacted

24 or modified) to any person, firm, corporation, or other entity not expressly authorized by this

25 Protective Order to receive such Confidential Information.

26      4.    To the extent that either Party desires to use Confidential Information acquired

27 under the terms of this Protective Order in the pending tax assessment and collection case

28 which the FTB is now pursuing against Hyatt in the State of California including, but not

HUTCHISON
& STEFFEN
Lakes Business Park
8831 W. Sahara Avenue
Las Vegas, NV 89117
(702) 385-2500

- 4 -

RA001430

RJN0857

1  limited to, the pending protests for taxable years 1991 and 1992 ("California Tax Case"), the

2  requesting Party shall give notice to the opposing Party and specify the precise Confidential

3  Information it desires to be submitted as part of that California Tax Case. If the opposing Party

4  objects to the use of the Confidential Information in the California Tax Case, the requesting

5  Party must seek and obtain permission to use and submit the Confidential Information in the

6  California Tax Case in accordance with California law. In the event Hyatt does not agree to

7  voluntarily produce the Confidential Information to the California Tax Case, the FTB may seek

8  to compel Hyatt to produce the requested Confidential Information in the California Tax Case

9  through issuance and service of an administrative subpoena as governed by California law.

10  This Protective Order in no way affects, limits, or modifies either parties' respective rights in

11  regard to seeking or opposing an administrative Subpoena under California law.

12         Notwithstanding any other provision in this Protective Order, no FTB attorneys and/or

13  FTB staff assigned to the pending protests for 1991 and 1992 or assigned to the California Tax

14  Case shall have access to any Confidential Information, absent the FTB giving notice to Hyatt

15  pursuant to this Protective Order and specifying the precise Confidential Information the FTB

16  desires to provide to those individuals as part of that California Tax Case.

17         5.     All Confidential Information filed with the Court for any purpose shall be filed

18  in a sealed envelope or other container marked on the outside with the title of the action, an

19  identification of each item within, and a statement substantially as follows:

20         Confidential Information Subject to Protective Order. This item shall not be
           opened except as ordered by the Court in this action or upon written stipulation
21         executed by all the Parties and filed in Court in this action.

22  This envelope or other container shall not be opened except as ordered by the Court or upon

23  written stipulation executed by the Parties to this action or their counsel and filed in Court in

24  this action. All such documents so filed in Court shall be treated in accordance with the

25  provisions of this Protective Order relating to Confidential Information.

26         6.     In the event Hyatt or the FTB wishes to use or refer to any Confidential

27  Information in any affidavits, briefs, memoranda of law, or other papers filed in Court in this

28  action, such affidavits, briefs, memoranda of law, or other papers so filed shall be designated as

HUTCHISON
& STEFFEN
Lakes Business Park
8831 W. Sahara Avenue
Las Vegas, NV 89117
(702) 385-2500
FAX (702) 385-2086

- 5 -

RA001431

RJN0858

1  "Confidential Information - Subject to Protective Order" and shall be maintained under seal by

2  the Court and treated by the Court in accordance with the provisions of this Protective Order

3  relating to Confidential Information.

4    7.    Counsel shall, while eliciting testimony concerning Confidential Information or

5  which might result in the disclosure of Confidential Information, exclude from the room during

6  a deposition, hearing, trial, or other proceedings, any person who is not entitled under this

7  Protective Order to receive Confidential Information.  Confidential Information shall not be

8  disclosed to the witness then testifying except in strict conformity with the provisions of this

9  Protective Order, including the requirement that the testifying witness agree to be bound by the

10  terms of this Protective Order by executing the Agreement set forth in Exhibit A hereof.

11    8.    Any court reporter or transcriber who reports or transcribes testimony in this

12  action at depositions, hearings, or other proceedings shall agree by a statement on the record,

13  before recording or transcribing any such testimony constituting Confidential Information, that

14  all such testimony and information revealed at the deposition, hearing, or other proceeding is

15  and shall remain confidential and shall not be disclosed by any such reporter or transcriber

16  except to attorneys for a Party who are authorized by this Protective Order and any other person

17  who is authorized by this Protective Order to be present while such testimony is being given,

18  and that copies of any transcript, reporter's notes, or any other transcription records of any such

19  testimony shall be retained in confidence and safekeeping by such reporter or transcriber or

20  shall be delivered to the Court in the manner specified in Paragraphs 5 and 6 herein, or to the

21  attorneys for the Parties.

22    9.    The Clerk of the Court is directed to maintain under seal all documents and all

23  transcripts of deposition testimony filed with this Court in this action by any Party which are in

24  whole or in part designated as Confidential Information including all pleadings, deposition

25  transcripts, exhibits, discovery responses, or memoranda purporting to reproduce or paraphrase

26  such information.  The person filing such material shall advise the Clerk, as set forth in

27  paragraph 5 hereof, that all or a designated portion thereof is subject to this Protective Order

28  . . .

HUTCHISON
& STEFFEN
Lakes Business Park
8831 W. Sahara Avenue
Las Vegas, NV 89117
(702) 385-2500
FAX 385 2086 - - -

- 6 -

RA001432

RJN0859

1  and is to be kept under seal. Upon the default of the filing Party to so designate, any Party may

2  so advise the Court.

3       10.    No Party to this proceeding may offer or elicit any testimony, exhibits, or other

4  evidence containing or disclosing Confidential Information unless such Party first ensures that

5  adequate safeguards against unauthorized disclosure of such information have been

6  implemented. Such safeguards shall include the exclusion from such proceedings of any

7  persons not authorized access to such information pursuant to the terms of this Protective Order

8  and other measures reasonably necessary in order to preclude unauthorized disclosure of such

9  information. In the event that any Confidential Information is used in any court proceeding, it

10  shall not lose its confidential status merely through such use.

11       11.    Nothing in this Protective Order shall preclude any Party to the Action, its

12  attorneys, or any other person from disclosing or using, in any manner or for any purpose, any

13  information or documents not obtained in discovery from the producing Party in this action, if

14  such information was lawfully obtained, even though the same information or documents may

15  have been produced in discovery in this action and designated as Confidential Information.

16       12.    Nothing in this Protective Order shall preclude any party to this action or their

17  attorneys from showing a document designated as Confidential Information to an individual

18  who either prepared, is a designated or authorized recipient of or previously lawfully reviewed

19  the document.

20       13.    Nothing herein shall prevent disclosure beyond the terms of this Protective

21  Order if the disclosing Party consents in writing to such disclosure of information designated as

22  Confidential Information.

23       14.    This Protective Order involves only the relative rights and obligations of the

24  Parties as to the confidentiality of any information disclosed, or documents supplied, in this

25  action. This Protective Order does not abrogate or diminish any contractual, statutory, or other

26  legal obligation or right of any Party or person with respect to any Confidential Information.

27  . . .

28  . . .

HUTCHISON
& STEFFEN
Lakes Business Park
8831 W. Sahara Avenue
Las Vegas, NV 89117
(702) 385-2500
FAX: (702) 385-2086

- 7 -

1      15.     The provisions of this Protective Order shall not terminate at the conclusion of

2   this action and may be enforced in this action or in a separate proceeding in the discretion of the

3   Party alleging any breach of this Protective Order .

4      16.     The Parties hereto may stipulate, subject to the approval of the Court, to any

5   mutually agreeable changes to the provisions hereof.  If a Party requests any modification(s) to

6   the Protective Order and the Parties are unable to reach an agreement after a meet and confer,

7   the Party requesting a modification may file a motion with the Court seeking such modification,

8   and such motion will be heard by the Court in the ordinary course of business.

9      17.     This Protective Order shall be binding upon the Parties, their employees,

10   officers, board members, agents, attorneys, and all persons encompassed by paragraph 2

11   whether or not such persons individually have executed Exhibit A.  The Court retains

12   jurisdiction to enforce the provisions of this Protective Order upon the request of any Party or

13   sua sponte and to make such arrangements, modifications, and additions to this Protective

14   Order as the Court may from time to time deem appropriate.

15      18.     If a party believes that information it intends to use in this Action or information

16   requested by the opposing party in discovery needs a higher level of protection (*e.g.*,

17   "Attorneys' Eyes Only") than that accorded "Confidential Information" as set forth in this

18   protective order, that party must make a  motion for a protective order with the Court.  Such

19   motion must set forth the basis for the additional level of protection needed as well as the

20   limitations desired by that moving party on the dissemination of the information.  The party

21   . . .

22   . . .

23   . . .

24   . . .

25   . . .

26   . . .

27   . . .

28   . . .

HUTCHISON
& STEFFEN
Lakes Business Park
8831 W Sahara Avenue
Las Vegas, NV 89117
(702) 385-2500
FAX (702) 385-2369

- 8 -

RA001434

RJN0861

1  seeking the higher level of protection will have the burden of establishing the need and

2  appropriateness of the higher level of protection.

3  DATED this 3ʳᵈ day of _December_, 1999.

4

5  _[signature]_

6  DISCOVERY COMMISSIONER

7

8  Submitted by:

   HUTCHISON & STEFFEN, LTD.

9

10 _[signature]_

11

12 Thomas L. Steffen
   Mark A. Hutchison

13 John T. Steffen
   Lakes Business Park

14 8831 West Sahara Avenue
   Las Vegas, Nevada 89117

15 Attorneys for Plaintiff

16

17

Approved as to form:

McDONALD CARANO WILSON
McCUNE BERGIN FRANKOVICH &
HICKS, LLP

_[signature]_

Thomas R. C. Wilson
James W. Bradshaw
Bryan R. Clark
2300 West Sahara Avenue
Las Vegas, NV 89102

Attorneys for Defendant

18

19

20

21

22

23

24

25

26

27

28

HUTCHISON
& STEFFEN
Lakes Business Park
8831 W. Sahara Avenue
Las Vegas, NV 89117
(702) 385-2500
FAX (702) 385-2086

- 9 -

RA001435

RJN0862

**NOTICE**

Pursuant to NRCP 16.1(d)(2), you are hereby notified you have five (5) days from the date you receive this document within which to file written objections.

[Pursuant to E.D.C.R. 2.34(f), an objection must be filed and served no more than five (5) days after receipt of the Commissioner's Report. The Commissioner's Report is deemed received when signed and dated by a party, his attorney or his attorney's employee, or three (3) days after mailing to a party or his attorney, or three (3) days after the clerk of the court deposits a copy of the Report in a folder of a party's lawyer in the Clerk's office.]

A copy of the foregoing Discovery Commissioner's Report was:

Mailed to Plaintiff/Defendant on the _____ day of _____, 1999 at the following address:

        James W. Bradshaw, Esq.
        McDonald Carano Wilson
        McCune Bergin Frankovich & Hicks
        241 Ridge Street, 4th Floor
        Reno, Nevada 89501
        Attorney for Defendant

Placed in the folder of Plaintiff/Defendant's counsel in the Clerk's office on the 7th day of December, 1999.

                SHIRLEY R. PARRAGUIRRE

        By: _____
            Deputy Clerk

              MARY DAIGLE

HUTCHISON
& STEFFEN
Lakes Business Park
8831 W. Sahara Avenue
Las Vegas, NV 89117
(702) 385-2500
FAX (702) 385-2086

RA001436

RJN0863

Case Name: *Hyatt v. Franchise Tax Board*

Case Number: A382999

## ORDER

The Court, having reviewed the above report and recommendations prepared by the Discovery Commissioner, and,

_____ The parties having waived the right to object thereto,

_____ No timely objections having been filed thereto,

_____ Having received the objections thereto and the written arguments in support of said objections, and good cause appearing,

_____ IT IS HEREBY ORDERED the Discovery Commissioner's Report and Recommendations are affirmed and adopted.

_____ IT IS HEREBY ORDERED the Discovery Commissioner's Report and Recommendations are affirmed and adopted as modified in the following manner. (attached hereto)

_____ IT IS HEREBY ORDERED that a hearing on the Discovery Commissioner's Report is set for _____, 1999.

Dated this 21st day of December, 1999.

DISTRICT COURT JUDGE

HUTCHISON
& STEFFEN
Lakes Business Park
8831 W. Sahara Avenue
Las Vegas, NV 89117
(702) 385-2500
FAX (702) 385-2086

- 11 -

RA001437

RJN0864

EXHIBIT A

AGREEMENT CONCERNING MATERIAL COVERED BY A PROTECTIVE
ORDER AND ORDER ENTERED IN THE DISTRICT COURT,
CLARK COUNTY, NEVADA

I, the undersigned, hereby acknowledge that I have read the attached Protective Order entered in the District Court, Clark County, Nevada in Case No. A382999 and understand the terms thereof and agree to be bound by all such terms. Without limiting the generality of the foregoing, I agree not to disclose to any person or entity not authorized to receive such "Confidential Information," pursuant to the terms of said Protective Order, any document or any information designated as "Confidential Information" or any copies of extracts or information derived therefrom, which have been disclosed to me. I further agree to use any information disclosed to me in connection with the above-mentioned case solely for the purpose of this case and for no other purposes.

The undersigned hereby irrevocably submits his/her person to the jurisdiction of the District Court, Clark County, Nevada for the purpose of enforcing said Protective Order:

Date:

Signature

Type or print name:

HUTCHISON
& STEFFEN
Lakes Business Park
8831 W. Sahara Avenue
Las Vegas, NV 89117
(702) 385-2500

RA001438

RJN0865

1

**IN THE SUPREME COURT OF THE STATE OF NEVADA**

2

3  FRANCHISE TAX BOARD OF THE STATE OF CALIFORNIA,                    Supreme Court Case No. 53264

4          Appellant,

5      v.

6  GILBERT P. HYATT,

7          Respondent

8

**APPEAL FROM JUDGMENT – EIGHTH JUDICIAL DISTRICT COURT**
9  **STATE OF NEVADA, CLARK COUNTY**
   **HONORABLE JESSIE WALSH, DISTRICT JUDGE**

10

11

**RESPONDENT'S APPENDIX**
12

**VOLUME 78**
13

14
Mark A. Hutchison, Nevada Bar No. 4639
15  Michael K. Wall, Nevada Bar No. 2098
    Hutchison & Steffen
16  10080 Alta Drive, Suite 200
    Las Vegas, NV 89145
17  Telephone: (702) 385-2500
    Facsimile: (702) 385-2086

18
Peter C. Bernhard, Nevada Bar No. 734
19  Kaempfer Crowell Renshaw
    Gronauer & Fiorentino
20  8345 West Sunset Rd.
    Suite 250
21  Las Vegas, Nevada 89113
    Telephone: (702) 792-7000
22  Facsimile: (702) 796-7181

23
Donald J. Kula, California Bar No. 144342
24  Perkins Coie
    1888 Century Park East, Suite 1700
25  Los Angeles, CA 90067
    Telephone: (310) 788-9900
26  Facsimile: (310) 788-3399

27  *Attorneys for Respondent*

28

– 1 –

KAEMPFER CROWELL RENSHAW
GRONAUER & FIORENTINO
8345 West Sunset Rd., Suite 250
Las Vegas, NV 89113
Telephone: (702) 792-7000
Facsimile: (702) 796-7181

RJN0866

FILED IN OPEN COURT
7008    20

CHARLES J. SHORT
CLERK OF THE COURT

BY TERI BRAEGELMANN    DEPUTY

1   **MOT**
Mark A. Hutchison (4639)
2   Hutchison & Steffen
10080 Alta Drive
3   Suite 200
Las Vegas, NV 89145
4   (702) 385-2500

5   Peter C. Bernhard (734)
Bullivant Houser Bailey PC
6   3883 Howard Hughes Pkwy., Ste. 550
Las Vegas, NV 89169
7   Telephone:    (702) 669-3600
Attorneys for Plaintiff Gilbert P. Hyatt

8

9                **DISTRICT COURT**

10           **CLARK COUNTY, NEVADA**

11

12   GILBERT P. HYATT,           Case No.: A382999

13       Plaintiffs,            Dept. No.: X

14       v.                    **MOTION TO CURE IMPROPER**
**STATEMENTS BY FTB COUNSEL DURING**
15   FRANCHISE TAX BOARD OF THE STATE    **OPENING STATEMENTS CONCERNING**
OF CALIFORNIA, and DOES 1-100 inclusive,   **HYATT ALLEGEDLY ERECTING A**
16                         **"WALL" BETWEEN THIS CASE AND THE**
Defendants.              **CALIFORNIA TAX PROCEEDINGS AND**
17                         **THEREBY VIOLATING THE COURT'S**
**ORDER PROHIBITING THE PARTIES**
18                         **FROM "LITIGATING THE LITIGATION"**

19

20                         **Date of Hearing:**
**Time of Hearing:**

21                         **(filed under seal by order of the Discovery**
**Commissioner dated February 22, 1999)**

22

23

24

25

26

27

28

64847-0001/LEGAL14239552.5            0

RA019417

RJN0867

## 1. **Issues presented:**

This motion presents two related issues:

**Issue No. 1**: *Misrepresentation regarding the Protective Order.* During its Opening Statement and subsequently during cross-examination of witnesses counsel for Defendant FTB has asserted that this Court's "Protective Order"[1] required the FTB to seek Hyatt's permission to obtain documents before the FTB could issue an administrative subpoena in the California tax proceedings for any of the materials designated under the Protective Order. Hyatt vehemently disagrees with the FTB's interpretation of the Protective Order, which specifically provided that it did not "affect[], limit[], or modif[y]" the FTB's rights in regard administrative subpoenas under California law.

Should the FTB be allowed to "litigate the litigation" and argue its tortured and erroneous interpretation of this Court's Protective Order to the jury as a defense to the 11 year deal in the protests? If so, is Hyatt entitled to introduce into evidence (i) the Protective Order, (ii) the hearing transcript during which the Discovery Commissioner crafted the Protective Order, which contradicts the FTB's interpretation, (iii) the briefings of the parties upon which the Discovery Commissioner based his ruling that further demonstrate that the FTB's interpretation is wrong, and (iv) the decision of the Nevada Supreme Court rejecting the FTB's request for writ relief relative to the Protective Order?

**Issue No. 2**: *Relief for the FTB's "wall" demonstration.* In the FTB's Opening Statement, FTB counsel stated that Hyatt put up a "wall" between this case and the California tax proceedings and gave a physical demonstration of the asserted "wall." The demonstration was based on the FTB's misrepresentation of the requirements of the Protective Order.

What is the appropriate remedy for the FTB's attempt to "litigate the litigation" by blaming Hyatt for the Protective Order entered in this case?

---

[1] The Protective Order in this case was entered by the Court as a formal order on December 27, 1999. A true and correct copy of the Protective Order is attached hereto as Exhibit 1.

RA019418

RJN0868

## 2.    Summary of argument.

**Issue No. 1:** *The FTB must not be allowed to argue its erroneous misrepresentation of the terms of the Protective Order to the jury.*

It is highly improper and prejudicial to allow the FTB to argue and present to the jury its erroneous interpretation of the Protective Order. In that regard, the Court, not the jury, interprets this Court's own orders. The jury should not be asked whether the FTB correctly interpreted the terms of the Protective Order.

Moreover, the FTB is misrepresenting explicit terms of the Protective Order. As is described in more detail below, in 1999 when discovery was first being conducted in this case, the FTB argued for a "California" protective order based on California law that allowed the FTB to freely share and use information obtained in this litigation for other purposes, including the California tax protest proceedings. The Discovery Commissioner refused to allow this Court to inject itself into the California tax protest proceedings by providing any ruling, either way, as to whether information and documents obtained in this case were proper for the tax protest proceeding. In other words, the FTB wanted to use this case to take discovery for the tax protest proceedings, and the Discovery Commissioner would not allow it.

Similarly, the Discovery Commissioner did not want this case to hinder or limit the FTB's rights in the California tax protest proceedings, nor did he believe this Court had any authority or jurisdiction to make any ruling that affected the tax protest proceedings. In that regard, the Protective Order crafted by the Discovery Commissioner made clear that whatever rights the FTB had in the California tax protest proceeding were unaffected by the Protective Order.

In sum, the Discovery Commissioner determined that the FTB could not use material (documents, deposition transcripts, and so forth) designated as confidential under the Protective Order, for use in the tax protest proceeding. Rather, the FTB had to employ whatever means available under California law to obtain such confidential material produced during discovery in this case. The plain language of the Protective Order contradicts the FTB's asserted interpretation — that the FTB was *required* to ask Hyatt's permission before seeking in

RA019419

RJN0869

1    California the confidential materials from this case. The Protective Order clearly states that it in

2    no way limited the FTB's rights under California law and in no way limited use of information

3    designated under the Protective Order that had been obtained lawfully in some other manner.

4    Indeed, the Protective Order unambiguously provides that the FTB may use whatever means

5    available under California law to obtain the same confidential material produced in this case

6    under the Protective Order.

7         The FTB attempts to use its erroneous "interpretation" of the Protective Order as a

8    defense to its 11-year bad faith delay and refusal to decide the protests. The Protective Order in

9    this case was crafted by former Discovery Commissioner Biggar in a hearing on November 9,

10    1999, and entered by the Court as a formal order on December 27, 1999. As described below, it

11    took the parties and the Court *over eight months* during 1999 to resolve the dispute over what

12    form the Protective Order should take.

13         The clear record from the briefings on the motion in 1999 that resulted in entry of the

14    Protective Order, and *most significantly* the transcript from the hearing on the Protective Order

15    motion on November 9, 1999, directly refutes the FTB's asserted interpretation. There was

16    simply no limit placed on the FTB by the Protective Order relative to its rights under California

17    law, nor could there have been. This Court had no jurisdiction to limit or affect the tax protest

18    proceedings. The FTB must therefore not be allowed to state, suggest, or argue that Hyatt put

19    up a "wall" between this case and the tax protest proceedings as a result of the Protective Order.

20         The FTB has never accepted this Court's ruling on the Protective Order. The FTB

21    unsuccessfully sought writ relief regarding the Protective Order in 2000. Subsequently, former

22    FTB lead counsel, Felix Leatherwood of the California Attorney General's office, repeatedly

23    made disparaging remarks about the order even saying he had "contempt" for it.[2]

24         Now the FTB is attempting to have the jury in this case decide whether the Protective

25    Order, through Hyatt's adherence to its provisions, is a defense to the FTB's 11-year delay in the

26    protests. More specifically, the FTB seeks to blame Hyatt for the Protective Order, claiming he

27

28    [2] *See* H. Schlindwein Depo., pp. 163-164, 173-175, attached hereto as Exhibit 2.

3883   d Hughes Pkwy., Suite 550   Vegas, NV 89169   Telephone: (702) 669-3600   Facsimile: (702) 650-2995

RA019420

RJN0870

1   used it to put up a "wall" between this case and the tax protest proceedings. What the FTB is

2   attempting to do is have the jury find that this Court's Protective Order was wrongly decided and

3   thereby lead to the 11-plus-year delay because of the constraints found within the terms of the

4   Protective Order.

5         This is a wholly inappropriate attempt by the FTB to litigate the litigation, is highly

6   prejudicial to Hyatt, and is an attempt to mislead the jury. The FTB must be ordered not to do

7   so. On the other hand, if the FTB is allowed to argue its interpretation of the Protective Order to

8   the jury, Hyatt must be able to fully rebut the FTB's assertion by introducing not only the

9   Protective Order but the relevant "extrinsic" evidence, in particular the Discovery

10   Commissioner's comments during the hearing at which he crafted the terms of the protective

11   order.

12

13        **Issue No. 2:** *To remedy the FTB's improper demonstration of a "wall" during Opening*

14   *Statement a curative instruction must be given and Hyatt must be allowed to introduce into*

15   *evidence the Protective Order as a trial exhibit and cross-examine FTB witnesses regarding its*

16   *terms, which contradict FTB assertion that Hyatt put a "wall" between this case and the tax*

17   *proceedings.*

18         Absent appropriate corrective measures by the Court, Hyatt is in the position of having

19   to rebut the FTB's claim that Hyatt put a "wall" between the two proceedings by following the

20   terms of this Court's Protective Order. Using a court order as evidence against a party is in

21   direct violation of the Court's order and fair trial practice that forbid a party from "litigating the

22   litigation." To rebut the FTB's statements that Hyatt put up a "wall" between the two

23   proceedings Hyatt must be allowed to admit the Protective Order, show its terms, which

24   contradict the FTB's statements, and cross-examine the FTB's witnesses on the terms of the

25   Protective Order.

26         Moreover, the Protective Order limited materials designated as confidential to use in this

27   case only. The Court must instruct the jury that such orders are typical in litigation involving

28

64847-0001/LEGAL14239552.5           4

RA019421

RJN0871

1  confidential material, and that Hyatt's compliance with and insistence on enforcement of the

2  Court's order is not wrongful and cannot be used against him.

3       Hyatt therefore seeks an instruction from the Court to the jury that the FTB's reference to

4  a "wall" put up by Hyatt between this case and the California tax protest proceedings was

5  inaccurate, an improper reference by the FTB that must be disregarded, and that the Court, not

6  Hyatt, put limits on the use of information obtained by the parties in this case, and the fact that

7  the Court did so is not something that can be held against either party, particularly Hyatt.

8  Further, Hyatt must be allowed to cross-examine the FTB witnesses regarding the FTB's

9  implementation of its own internal "ethical wall" (per Mr. Cowan's trial testimony) and that this

10  was an internal decision of the FTB, not something Hyatt required as FTB counsel has argued to

11  the jury.

12       Hyatt requests that the Court grant this motion forthwith and so instruct the jury and

13  allow Hyatt to begin cross-examining FTB witnesses relative to its internal decisions to erect an

14  ethical wall.

15  **3.    Argument.**

16

17      **A.  The FTB should not be allowed to argue to the jury the meaning, scope, and
   application of the Protective Order, and in particular that Hyatt used it to erect a
   "wall."**

18

19       By seeking to excuse its 11-year delay in the protests on the Protective Order and Hyatt's

20  adherence to the Protective order, the FTB improperly seeks to litigate a pretrial procedural

21  issue from this litigation. The specific issue the FTB wants to re-litigate with the jury is the

22  Court's decision, initially made by Discovery Commissioner Biggar and then approved by this

23  Court and not disturbed by the Nevada Supreme Court, that the parties in this case could not use

24  this case as a discovery vehicle for the California tax proceedings. Instead, the use of

25  information obtained during discovery by either party must relate to this case only. It is

26  completely improper and highly and very prejudicial to Hyatt for the FTB to now attempt to

27  make a trial issue the terms of the Protective Order. Moreover, its assertion that Hyatt, through

28  the Protective Order, erected a "wall" between this case and the protest proceedings

RA019422

RJN0872

1 | misconstrues and misrepresents the Protective Order. In fact, the explicit terms of the Protective

2 | Order provides that the FTB is free to use whatever means are available to it in California to

3 | obtain the same information for use in the protests. The Protective Order in no way *restricted*

4 | the FTB from proceeding as it normally would in any other protest.

5 | As set forth in more detail below, materials obtained in this case under the Protective

6 | Order could be used only in this case (as is typical in protective orders) unless approved by the

7 | opposing party *or legally obtained in some other manner, i.e., through the means available to*

8 | *the FTB in the California tax protest proceedings.* The Protective Order specifically

9 | recognized that the FTB had administrative subpoena powers in California and could use those

10 | to obtain materials designated confidential under the Protective Order, if appropriate under

11 | California law. In short, California law would determine what materials and information the

12 | FTB could obtain and use in the tax protest proceedings, not this Court or its ruling on the

13 | Protective Order. For the FTB now to argue that Hyatt created a "wall" is wrong. For Hyatt to

14 | rebut it before the jury requires a full examination of the terms of the Protective Order, the

15 | briefings and arguments of counsel leading to the Protective Order, any statements of the

16 | Discovery Commissioner at the hearing during which he crafted the Protective Order and where

17 | FTG counsel was present.

**B. The Protective Order did not limit, alter, or reduce the FTB's rights under California law relative to the tax proceedings.**

The Protective Order entered in this case, as is typical for protective orders, limits use of information obtained under the Protective Order to this case. It provides:

> The FTB and its attorneys shall not use Hyatt Confidential Information and Hyatt and his attorneys shall not use FTB Confidential Information in any manner whatsoever except solely for discovery and preparation of discovery, preparation for trial, trial, and any appeals related to this Action.[3]

---

[3] Protective Order, p. 4, lns. 17-20, attached hereto as Exhibit 1.

38831 | Hughes Pkwy, Suite. 550 | Vegas, NV 89169 | Telephone: (702) 669-3600 | Facsimile: (702) 650-2995

RA019423

RJN0873

There are specific provisions in the Protective Order that make unambiguously clear that the order was strictly neutral, not giving the FTB any more rights relative to the tax proceeding nor limiting any of its rights in the tax proceeding. The Court and Discovery Commissioner tried hard, and succeeded, in keeping the two proceedings separate. This case does not provide any additional rights or limitations in regard to the California tax proceedings. This is reflected most obviously in two provisions of the Protective Order. The first provision states:

> *This Protective Order in no way affects, limits, or modifies either parties '
> respective rights in regard to seeking or opposing an administrative
> Subpoena under California law.*[4]

The second provision states:

> *Nothing in this Protective Order shall preclude any Party to the Action,
> its attorneys, or any other person from disclosing or using, in any
> manner or for any purpose, any information or documents not obtained
> in discovery from the producing Party in this action, if such information
> was lawfully obtained, even though the same information or documents
> may have been produced in discovery in this action and designated as
> Confidential Information.*[5]

In sum, the Protective Order specifically provides that the FTB can seek and use in other proceedings any information or materials designated confidential under the Protective Order if that information or materials were lawfully obtained in some manner other than production in discovery in this case. In other words, nothing prevented the FTB from issuing an administrative subpoena in the protest proceedings whenever it wished. The FTB did not need Hyatt's permission to pursue administrative subpoenas in California if it wanted information for the tax protest proceedings. The FTB's argument of the erection of a "wall" and that it needed to get Hyatt's permission are belied by the explicit terms of the Protective Order.

---

[4] The Protective Order, p. 5, lns. 10-11, attached hereto as Exhibit 1.

[5] *Id*, at p. 7, lns. 11-15.

Hughes Pkwy., Suite 550
Las Vegas, NV 89169
Telephone: (702) 669-4600
Facsimile: (702) 669-4650

3883 1

RA019424

RJN0874

**C. The briefings of the parties and the hearing transcript from 1999 refute the FTB's assertion that Hyatt put up a "wall" between this case and the tax proceedings.**

In the briefing for the motion in 1999 that resulted in entry of the Protective Order, the FTB explicitly argued for an order based on California law that would specifically allow the FTB to use discovery materials from this case in the tax protest proceedings.[6] Hyatt, on the other hand, requested a neutral order that would not have this Court decide what material can be used by the parties in the California tax protest proceedings and would require this case and the tax protest proceedings to proceed as if on separate tracks, which in fact was the case.[7] That motion was preceded by months of back-and-forth discussions and negotiations, during which the FTB was inflexible regarding its proposed "California" protective order, while Hyatt in turn made various proposals trying to address FTB concerns.[8]

The Discovery Commissioner decided that the protective order should be governed by Nevada law and should limit use of the materials obtained during discovery to this case, as is typical with protective orders. The Discovery Commissioner also explained that this Court does not want to determine what is and is not appropriate for use in the California tax protest proceedings, nor did this Court want to limit or interfere with the FTB's rights in the tax protest proceedings. Indeed, during the November 9, 1999 hearing, FTB counsel inquired of the Discovery Commissioner of these very terms and expressed understanding that the FTB could pursue an administrative order in the California tax protest proceedings to obtain materials designated under the Protective Order:

> MR. BRADSHAW: Okay, now, I think it does tend to restrict somehow
> flow of information from the defense team to the protest officer as to

---

[6] *See* FTB Reply re 1999 motion, at 7-9, 15-18, attached hereto as Exhibit 3; *see* FTB proposed protective order in 1999 attached to letter dated July 8, 1999, both of which are attached hereto as Exhibit 4.

[7] *See* Hyatt Opposition re 1999 motion, at 1, 8, and 11, attached hereto as Exhibit 5; *see also Second Errata*, attaching Hyatt's draft protective order, attached hereto as Exhibit 6.

[8] *See* May 17, 1999 letter from Hyatt counsel with proposed protective order, July 8, 1999 letter from FTB counsel with proposed protective order; August 24, 1999 facsimile from Hyatt's counsel with proposed revised protective order, collectively attached hereto as Exhibit 7.

3883   d Hughes Pkwy., Suite 550<br/>Vegas, NV 89169<br/>Telephone: (702) 669-3600<br/>Facsimile: (702) 650-2995

RA019425

RJN0875

1   information designated as confidential by Hyatt without following these
2   procedures, that's either get his agreement *or some sort of administrative*
3   *order*. Perhaps it's misunderstanding of the logistics or the system, but this
4   protest officer a staff attorney just like the staff attorney that we all report
    to.

5   COMMISSIONER BIGGAR: What does the protest officer do? I've had
6   this question for weeks.[9]

7                                  . . .

8   *[The Discovery Commissioner and Mr. Bradshaw then had a lengthy*
9   *discussion regarding the role of the protest officer in which the Discovery*
10  *Commissioner questioned how Ms. Jovanovich was a "bird for all seasons"*
11  *and how she was judging herself given her role in the audit and then role*
12  *as protest officer. But this discussion does not relate to the issue initially*
13  *raised by Mr. Bradshaw and therefore returned to this issue he raised.]*[10]

                                   . . .

14
15  COMMISSIONER BIGGAR: That's not the way I understood it, Mr.
    Bradshaw. I always understood it that you had some lower level would
16  make a decision on something and then if there is going to be some
17  genuine kind of administrative review that it would go to somebody
18  different, not the person who made the initial evaluation.

19  MR. BRADSHAW: They have hammered and hammered that this is not an
20  administrative review. Technically this is an investigation still. He gets to
    present more evidence. They get to gather more evidence. The protest
21  officer, who's a lawyer, gets to make a determination, independent from the
22  auditor or back up what the auditor did, but that's not the point. *The point*
23  *is I believe, I'm trying to understand what the constraints are on sharing*
    *information with my client, and it's not clear to me from this* because I'm
24  dealing with an in-house legal office with an attorney who I report to who
25  is in the same facility as the protest officer who may have a common
26  supervisor and chain of command. I just want to know what the restriction

27  [9] November 9, 1999 hearing transcript, at 20:2 – 14, attached hereto as Exhibit 8.

28  [10] *Id.*, at 20:15 – 22:12.

3883    'd Hughes Pkwy., Suite. 550
        s Vegas, NV 89169
        Telephone: (702) 669-3600
        Facsimile: (702) 650-3995

RA019426

RJN0876

1  is on my client dealing with the information that we have in our

2  investigation and discovery.

3  MR. KULA: Your Honor, I think that is addressed in the order.

4  COMMISSIONER BIGGAR: Well, I think it is too. *I don't know what*

5  *more I can explain other than the language of the order*.

6  MR. BRADSHAW: Okay, we will move on from that then I guess.[11]

7  . . .

8

9  MR. BRADSHAW: Okay, and the last concerns I can think of at the

10  moment paragraphs 16 and 18 purports to keep the Court involved in the

11  California administrative proceeding. Who knows if it will be wrapped up

12  before this litigation. Paragraphs 16 and 18 purport to maintain this after

13  the conclusion of the action of the subject nature, maintains jurisdiction to

14  enforce its provisions. *I can see where that will go, if Hyatt doesn't like*

15  *what is requested in the administrative proceedings or what is put before*

16  *the Board of Equalization Appeals that he will come running back to the*

17  *Nevada court to interfere with those processes.*

18  COMMISSIONER BIGGAR: Well, the confidentiality order that will be

19  enforced in this case applies during this case. A breach of the

20  confidentiality order of this case would be a breach whether it's now or

21  later, it would seem to me. *It seems to me that any information and I*

22  *think the order at least does not interfere with the fact that any*

23  *information which is allowed in the California proceeding, in the tax*

24  *proceeding in particular, you know, that is allowed by the Court in that*

25  *proceeding, that's up to them, and any arguments addressing*

26  *confidentiality can be addressed at that point in time to that Court. I'm*

27  *not pertaining to -- I don't think the Court would, the judge is trying to*

28  *tie the hands of the California proceeding in any manner.* It's just that if

there is a violation of this order, just simply because this case is now settled

doesn't mean that any confidential information, truly confidential

information that you have received in this case can then be disseminated,

---

[11] *Id.*, at 22:13 – 23:11.

64847-0001/LEGAL14239552.5

10

RA019427

RJN0877

1    and that seems to me to be perfectly sensible, *so I don I t think it's any*
2    *kind of a restriction.*

3    MR. BRADSHAW: Okay, that clarifies things.[12]

4    **D. The FTB has misrepresented the terms of the protective order to the jury and**
5    **should not be allowed to continue to do so.**

6    First, the FTB should not be permitted to blame Hyatt for the terms of the Protective

7    Order. That is "litigating the litigation."

8    But even if allowed to address the Protective Order as part of its defense, the FTB

9    certainly must not be allowed to misrepresent the terms, as it has in arguing that the Protective

10   Order required the FTB to obtain Mr. Hyatt's permission before using documents designated

11   under the Protective Order in the tax protest proceedings. What the FTB intentionally neglects

12   to explain as part of its attempt to blame Hyatt is that the plain language of the Protective Order

13   (as acknowledged by the FTB's own counsel at the hearing) and the comments of the Discovery

14   Commissioner in crafting the Protective Order provide that the FTB was free to use whatever

15   means available to it under California law to obtain that same material for the tax protest

16   proceedings. The need not wait to ask and then receive Mr. Hyatt's permission, but rather could

17   have, and would have if it really wanted to proceed with the protests, issued an administrative

18   subpoena in California for any material it sought to obtain in the tax protest proceedings.

19   The FTB now wants to blame Hyatt, at least in part, for its 11-year delay on its

20   obligation — imposed by court order — by saying it had to wait to ask Hyatt's permission for

21   material that it could and should have sought without delay via an administrative subpoena in

22   California. Ultimately, the FTB did seek and serve on Hyatt at least two administrative

23   subpoenas. It may be fair game for the FTB to assert that Hyatt opposed one of the

24   administrative subpoenas (the record will ultimately show that this caused minimal if any delay

25   in the tax protest proceedings). But it is absolutely improper and highly and unfairly prejudicial

26   to Hyatt for the FTB to argue to the jury that the Protective Order, in particular the provisions

27

28   _____
     [12] *Id.*, at 25:22 – 27:10.

64847-0001/LEGAL14239552.5                          11

'd Hughes Pkwy., Suite 550
Vegas, NV 69169
Telephone: (702) 669-3600
Facsimile: (702) 650-2995
3882

RA019428

RJN0878

1  not allowing the FTB use this case to take discovery for the tax protest proceedings, allowed

2  Hyatt to erect a "wall" because the FTB was required to seek Hyatt's permission under the

3  Protective Order to use materials designated confidential thereunder. The FTB was not required

4  to do so. Instead it could have, and did later, seek the information via an administrative

5  subpoena in the tax protest proceedings.

6       The FTB cannot blame Hyatt for the FTB's own internal decisions not to immediately

7  seek administrative subpoenas, but rather first seek permission from Hyatt. If the FTB truly was

8  intent and motivated to resolve the tax protest proceedings in a timely manner, and independent

9  of this case, it would have proceeded as it did in any other case and used means available to it

10  under California law. But the FTB was not motivated to resolve the protests. In fact, the FTB

11  never accepted this Court's ruling that this case could not be used to obtain *"free"* discovery for

12  use in the tax protest proceedings. The documentary record is clear that the FTB took every

13  opportunity to delay and put a *"hold"* on the protests anytime this case was stayed because of

14  appeals or motion practice. The FTB did not issue a decision in the tax protest proceedings

15  sufficiently in advance of this case, so Hyatt's appeal to a more neutral body, the State Board of

16  Equalization (the "SBE"), could have been heard and decided before this trial. The FTB no

17  doubt feared an adverse decision by the SBE would be difficult evidence to explain to the jury at

18  trial — just as it would have been difficult to explain to the jury in this trial why no decision had

19  been made in the tax protest proceedings.

20       The FTB therefore delayed its decision in the tax protests until November 1, 2007,

21  knowing that the Court had set the trial for April 14, 2008. This meant that Hyatt's appeal to the

22  SBE could not realistically be heard and decided before this case concluded. In this regard the

23  FTB has succeeded with its strategy. But it cannot now manufacture an excuse for the delay by

24  misrepresenting to the jury the terms of the Protective Order.

25       Indeed, the Protective Order should not be an issue at the trial. Interpreting a protective

26  order is not the province of the jury. Hyatt addresses remedies in the section below for the

27  FTB's improper injection of the Protective Order into this trial. Most significantly, the Court

28  should determine whether the FTB has misrepresented the terms of the Protective Order, from

64847-0001/LEGAL14239552.5

12

RA019429

RJN0879

1  which the appropriate remedies can be fashioned. But if the terms and meaning of the

2  Protective Order are issues that the Court decides are for the jury, Hyatt must be able not only to

3  present the explicit terms of the Protective Order to the jury, but also the motion practice and

4  Discovery Commissioner's comments from the hearing at which the Protective Order was

5  crafted and where the FTB's lawyers were present.

**E.  The FTB's misstatements regarding the terms and effects of the Protective Order require a curative instruction and open the door for Hyatt to cross-examine FTB witnesses regarding the FTB application of the Protective Order.**

    (1)    *FTB counsel has improperly injected the Protective Order into the trial and in so doing misrepresented the Protective Order.*

During the FTB's opening statement, FTB counsel argued that Hyatt had erected a wall

between this case and the California tax protest proceedings, a clear reference to the Protective

Order in this case. Later, in cross-examining Hyatt expert witness Ed Antolin, FTB counsel

misrepresented the Protective Order by stating that it required the FTB to seek Hyatt's

permission before using materials designated there under in the tax protest proceedings. These

are false representations to the jury.

Although the FTB wants to assert that the reason the tax protest proceedings were

delayed was because Hyatt refused to provide discovery material from this case to the protest

officer in the tax protest proceedings, in so arguing the FTB both misrepresents the terms of the

Protective Order and injects the meaning and scope of the Protective Order as an issue for the

jury in the trial. In addition to making a lengthy statement about the Protective Order during

opening statement, FTB counsel used props to demonstrate Hyatt's alleged erection of a "wall."

FTB Counsel took a banker's box which was used to signify documents and carried it from side

to side of a large board to show the jury that Hyatt built a wall that precluded the FTB from

seeing the documents on both sides. The "wall" counsel was referring to was the Protective

Order.

In opening statement, FTB counsel stated:

> What I'm going to briefly describe for you, then, is the
> other side of the story and the impact this litigation had on the

3883  1 Hughes Pkwy., Suite 550  Vegas, NV 89169  Telephone: (702) 669-3600  Facsimile: (702) 650-2995

RA019430

RJN0880

1    resolution in the protest, and I'm going to as far as give you a very
2    brief example of what I'm talking about. Mr. Hyatt now had two
     proceedings ongoing. He had the California tax proceedings
3    ongoing and he had this litigation ongoing, and what he did is *he*
     *erected a wall between the folks handling the protest at FTB and*
4    *the folks that were handling the litigation.* There's even
     communication from his own representatives to his experts
5    describing this as the wall. If I could, think of this as a wall. He
     had information on one side of the wall in the litigation. He gave
6    information to the protest folks on the other side of the wall. And
     what he began doing is giving information to the litigation folks
7    that was different than the protest folks, and before then they --
     FTB could move information from one side of this wall to the
8    other side of the wall, they had to ask Mr. Hyatt's permission to do
     so, and they had to erect procedures at FTB to move it from one
9    side to the other. One hand had some information and the other
     hand had the other, but they couldn't come to the middle without
10   seeking Mr. Hyatt's permission. They asked for his permission to
     move the information so that both sides of FTB had the same
11   information, both the litigation people had the same information
     as the protest people, and what did he say? No. He said even
12   though FTB says I know I'm on one side of this wall, I won't
13   move it over here. Part of the process is they had to issue an
     administrative subpoena to him out of California and that's where
14   you begin to see in the time line -- and I moved the time line out
     further so the folks can see the bottom part. This is the
15   designation as to the separation, the wall that was erected and how
16   he had to get over the wall.[13]
17

18        FTB counsel then further injected the Protective Order into the trial while cross-

19   examining Mr. Antolin. In particular, FTB counsel attempted to ask Mr. Antolin whether the

20   FTB was required to first seek Hyatt's permission to use the subject information in the protests

21   before seeking an administrative subpoena for the requested information. This produced

22   objections by Mr. Hyatt's counsel, then redirect on the subject by Mr. Hyatt's counsel, and then

23   re-cross by FTB counsel.[14] This debate over the meaning of the Protective Order needs to be

24   resolved by the Court or opened for a full examination at trial

25

26        (2)      *The FTB is attempting to litigate the litigation by using its erroneous*

27   [13] April 22, 2008 trial transcript, at 105-07, attached hereto as part of Exhibit 9.

28   [14] May 7, 2008 trial transcript, at 98:9 – 100:3, 165:8-170:8, 189:4-190:4, attached hereto as part of Exhibit 9.

RA019431

RJN0881

1   *interpretation of the Protective Order as a defense.*

2       It is easily discernible from the transcript of the FTB's opening statement that Hyatt was

3   acting in accordance with the Protective Order when he objected to the use of confidential

4   information in the tax protest proceedings and required that California procedures be used to

5   obtain the information for the California tax protest proceedings. The FTB merely had to use its

6   typical and normal procedure of issuing an administrative subpoena in a tax protest proceeding

7   — something it does in any tax protest proceeding in which it seeks to compel production of

8   information. Here, the FTB sought to short-cut its own subpoena process. Hyatt objected in

9   accordance with the Protective Order. Hyatt's adherence to the terms of the Protective Order

10  cannot be used against him in this trial.

11      The jury, however, is completely unaware of the terms of the Protective Order and

12  would reasonably believe — based on the FTB's misstatements — that Hyatt was being

13  uncooperative and delaying the tax protest proceedings based on the FTB's characterization of

14  the Protective Order. Even if the jury was to become aware of the Protective Order, it cannot be

15  used against Hyatt. It is a Court order that was properly issued after negotiations, briefing,

16  argument, and further crafting.

17      Moreover, the evidence already presented at trial via Mr. Cowan's testimony is that the

18  FTB erected an internal wall, an ethical or "Chinese" wall on its own, and Hyatt had nothing to

19  do with that wall.[15]  The jury must be so instructed by the Court to remedy the FTB's

20  misrepresentations of the Protective Order. Additionally, Hyatt must be allowed to cross-

21  examine FTB witness by use of the terms of the Protective Order and the extrinsic evidence

22  concerning its creation.

23      **(3)    *As FTB's counsel has acknowledged before, it is improper to litigate the***

24  ***litigation.***

25      As FTB's counsel has acknowledged in pleadings filed with the court in its Motion in

26  Limine Re: Claims By Hyatt That This Court, the Nevada Supreme Court, And/Or The United

27  _____

28  [15] Trial transcript, April 30, 2008, at 167:14 – 168:18, attached hereto as part of Exhibit 9.

1 Hughes Pkwy., Suite 550
Vegas, NV 89169
Telephone: (702) 669-4600
Facsimile: (702) 650-2995

3883

RA019432

RJN0882

1  States Supreme Court Already Decided His Case and its Motion in Limine Re: Case Procedural

2  History And Post-Complain Conduct, it is improper to re-address pretrial procedural decisions

3  or rulings in this case. As FTB Counsel argued strenuously in its MIL Re: Case Procedural

4  History and Post-Complaint Conduct, "[o]nce litigation is commenced, the actions taken in

5  defense of that litigation, are not probative of whether or not the underlying torts were

6  committed. See, *Timberlake Const. Co. v. U.S. Fidelity & Guaranty Co.*, 71 F3.d 335, 340

7  (10th Cir. 1995)." Despite all of the parties' briefing on this issue, FTB counsel still raised the

8  issue of the administrative subpoena and Protective Order in opening statements. This was not a

9  spur-of-the-moment or off-the-cuff comment. It was planned and the props were laid out before

10  the arguments were made. It now puts Hyatt in the position of having to "litigate the litigation"

11  by introducing the Protective Order to defend the FTB's argument to the jury that Hyatt erected

12  a "wall" between this case and the California tax proceedings.

13      (4)    ***The Court must provide a remedy that corrects the FTB's misstatement and***

14  ***allows Hyatt to confirm this with cross-examination of FTB witnesses relative to the***

15  ***Court' Protective Order.***

16      Courts have held that in opening statements counsel should exclude any reference to

17  matters that counsel knows counsel cannot prove or would be inadmissible; and, where

18  counsel's references to inadmissible or un-provable facts are so flagrant or inflammatory as to

19  affect the fairness of the trial, it is within the sound discretion of the trial judge to take such

20  remedial action as she deems proper. *See Maxworthy v. Horn Elec. Serv.*, 452 F.2d 1141, 1143-

21  44 (4th Cir. 1972); *United States v. Taren-Palma*, 997 F.2d 525, 532 (9th Cir. 1993) cert.

22  denied, 511 U.S. 1071 (1944) (Opening statement should not refer to matters that are not to be

23  presented as evidence.) The test is generally one of good faith; and, in the absence of

24  substantial error, if counsel's statement is made "with reasonable ground to believe" the

25  evidence is admissible, even though proof of it may be afterwards excluded, there is no

26  misconduct. *See Director of Highways v. Bennett,* 193 N.E.2d 702, 706 (Ohio App.Ct. 1962).

27      Once an improper statement is made, remedies may include an admonition by the court

28  (*Testa v. Village of Mundelein, Ill.,* 89 F.3d 443, 446 (7th Cir. 1996); an order for a mistrial

3883 d Hughes Pkwy., Suite 550
Las Vegas, NV 89169
Telephone: (702) 669-3600
Facsimile: (702) 650-2995

64847-0001/LEGAL14239552.5

16

1  (*Littlewind v. Rayl*, 839 F.Supp. 1369, 1376 (D. ND. 1993); or counsel may be cited for

2  contempt where her misconduct violates a prior court order. (*In re Gustafson*, 650 F.2d 1017,

3  1020 (9th Cir. 1981).

4        To remedy the improper argument and statement made by FTB counsel, the Court must

5  instruct the jury that Hyatt did not erect a "wall," but rather the Court itself imposed a Protective

6  Order limiting the use of information or materials obtained during this case and requiring that

7  California procedures be used for the California tax protest proceedings.  Additionally, Hyatt

8  must be allowed to introduce the Protective Order into evidence and cross-examine FTB

9  witnesses regarding the order, the FTB's own internal decision to erect a wall based on its

10 erroneous interpretation of the Protective Order, and that the Protective Order in no way limited

11 or altered the FTB from using its usual and customary procedures under California law to obtain

12 whatever information or materials wanted from Hyatt in the tax protest proceedings.

13       In that regard, it was fair game for the FTB to address Hyatt's challenge of the

14 administrative subpoena in California.  But it was unfair and unduly prejudicial for the FTB to

15 argue in opening statements that Hyatt erected a "wall" between this case and the tax protest

16 proceedings when in fact the Court had issued a protective order limiting the parties from using

17 this case to take discovery in the tax proceedings.  The undue prejudice must be corrected by the

18 relief Hyatt seeks here.

19
20 **4.  Conclusion.**

21       As quoted and discussed below, the FTB's reference and dramatic physical

22 demonstration of an alleged "wall" between the two proceedings is a misrepresentation of the

23 Protective Order entered in this case *by the Court*, as well as Hyatt's compliance with, not

24 violation of , that order.  This is not an issue that should be litigated in this case.  The jury

25 should not determine the meaning of the protective order.  But if the issue is litigated, it must be

26 litigate fully with not restraints.  Further, to cure the inaccurate and prejudicial affects of the

27 Franchise Tax Board's misrepresentation of the Protective Order, a curative instruction is

28 needed, as well as other relief.

RA019434

RJN0884

1       As is typical in a protective order, it put restrictions on materials acquired by a party

2    through this litigation and designated under the protective order. But it also specifically

3    referenced ( as this Nevada court no doubt recognized it had no authority to do otherwise) that

4    the FTB could use whatever means available under California law to obtain materials designated

5    Confidential under the protective order for use in the California tax proceedings.

6       In other words, this Court rather obviously found that California law should govern how

7    the parties conduct themselves in the California tax protest proceedings, and that confidential

8    information obtained during discovery in this Nevada tort case should only be used in this

9    Nevada tort case. The FTB now wants to excuse its over 11-year delay in deciding the tax

10    protest proceedings on the Court's Protective Order and Hyatt's exercise of his rights under the

11    Protective Order. The FTB now seeks to blame Hyatt for the Protective Order and have the jury

12    hold it against him. This is in direct violation of the Court's order granting the FTB's own

13    motion in limine prohibiting the parties from litigating the litigation. Moreover, it is highly and

14    unduly prejudicial to Hyatt for the FTB to prevent to the jury a pretrial court order and to blame

15    his for its existence and content.

16       Hyatt requests that the Court cure the prejudicial affects of the FTB's counsel's

17    argument and presentation by issuing the admonition and instruction that Hyatt did not erect a

18    wall, but rather the Court itself imposed the Protective Order limiting the use of information and

19    materials obtained during this case and requiring the FTB employ California procedures to

20    obtain materials or information for the California tax protest proceedings. Hyatt must also be

21    allowed to cross-examine FTB witnesses regarding its own decision to erect an internal wall

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28

64847-0001/LEGAL14239552.5

18

RA019435

RJN0885

1  based on the Protective Order. For these reasons, Hyatt respectfully requests that the Court

2  grant this motion and administer the relief requested.

3

4  Dated this _14_ day of May, 2008.

5

6  HUTCHISON & STEFFEN, LLC
   Mark A. Hutchison, Esq. (4639)

7  10080 Alta Drive
   Suite 200

8  Las Vegas, Nevada 89145

9  BULLIVANT HOUSER BAILEY PC

10

11  Peter C. Bernhard, Esq. (734)
   3883 Howard Hughes Pkwy.

12  Suite 550
   Las Vegas, Nevada 89169

13  (702) 669-3600

14  Attorneys for Plaintiff Gilbert P. Hyatt

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3883 Howard Hughes Pkwy., Suite 550
Las Vegas, NV 89169
Telephone: (702) 669-3600
Facsimile: (702) 650-2995

64847-0001/LEGAL14239552.5

19

RA019436

RJN0886

**<u>CERTIFICATE OF SERVICE</u>**

Pursuant to NRCP 5(b), I certify that I am an employee of BULLIVANT HOUSER

BAILEY PC and that on this __ day of May, 2008, I caused the above and foregoing document

entitled **MOTION TO CURE IMPROPER STATEMENTS BY FTB COUNSEL DURING**

**OPENING STATEMENTS CONCERNING HYATT ALLEGEDLY ERECTING A**

**"WALL" BETWEEN THIS CASE AND THE CALIFORNIA TAX PROCEEDINGS**

**AND THEREBY VIOLATING THE COURT'S ORDER PROHIBITING THE PARTIES**

**FROM "LITIGATING THE LITIGATION"** to be served as follows:

[X]  by placing same to be deposited for mailing in the United States Mail, in a sealed envelope upon which first class postage was prepaid in Las Vegas Nevada; and/or

[X]  Pursuant to EDCR 7.26, to be sent via facsimile; and/or

[X]  to be hand-delivered;

to the attorney(s) listed below at the address and/or facsimile number indicated below:

<u>via facsimile: (775) 788-2020</u>
James A. Bradshaw, Esq.
McDonald Carano Wilson LLP
100 West Liberty Street
10ᵗʰ Floor
Reno NV 89501

<u>via facsimile: 873-9966</u>
Jeffrey Silvestri, Esq.
McDonald Carano Wilson LLP
2300 West Sahara Avenue, Suite 1000
Las Vegas, Nevada 89102

_____
An employee of Bullivant Houser Bailey PC

RA019437

RJN0887

**AFFIRMATION**
**Pursuant to NRS 239B.030**

The undersigned does hereby affirm that the preceding **MOTION TO CURE**

**IMPROPER STATEMENTS BY FTB COUNSEL DURING OPENING STATEMENTS**

**CONCERNING HYATT ALLEGEDLY ERECTING A "WALL" BETWEEN THIS**

**CASE AND THE CALIFORNIA TAX PROCEEDINGS AND THEREBY VIOLATING**

**THE COURT'S ORDER PROHIBITING THE PARTIES FROM "LITIGATING THE**

**LITIGATION"** filed in District Court Case No. A 382999 does not contain the social security

number of any person.

Dated this 14 day of May, 2008.

HUTCHISON & STEFFEN, LLC
Mark A. Hutchison, Esq. (4639)
10080 Alta Drive
Suite 200
Las Vegas, NV 89145
(702) 385-2500

BULLIVANT HOUSER BAILEY PC

Peter C. Bernhard, Esq. (734)
3883 Howard Hughes Parkway, No. 550
Las Vegas, Nevada 89169
(702) 669-3600

Attorneys for Plaintiff Gilbert P. Hyatt

64847-0001/LEGAL14239552.5

21

RA019438

RJN0888

1   **APP**
    Mark A. Hutchison (4639)
2   Hutchison & Steffen
    10080 Alta Drive
3   Suite 200
    Las Vegas, NV 89145
4   (702) 385-2500

5   Peter C. Bernhard (734)
    Bullivant Houser Bailey PC
6   3883 Howard Hughes Pkwy., Ste. 550
    Las Vegas, NV 89169
7   Telephone:   (702) 669-3600
    *Attorneys for Plaintiff Gilbert P. Hyatt*

8

9                **DISTRICT COURT**

10           **CLARK COUNTY, NEVADA**

11

| | |
|---|---|
| GILBERT P. HYATT, | Case No.: A382999 |
|          Plaintiffs, | Dept. No.: X |
|   v. | **APPENDIX OF EXHIBITS IN SUPPORT OF MOTION TO CURE IMPROPER STATEMENTS BY FTB COUNSEL DURING OPENING STATEMENTS CONCERNING HYATT ALLEGEDLY ERECTING A "WALL" BETWEEN THIS CASE AND THE CALIFORNIA TAX PROCEEDINGS AND THEREBY VIOLATING THE COURT'S ORDER PROHIBITING THE PARTIES FROM "LITIGATING THE LITIGATION"** |
| FRANCHISE TAX BOARD OF THE STATE OF CALIFORNIA, and DOES 1-100 inclusive, | |
|          Defendants. | |
| | **Date of Hearing: March 5, 2008**<br>**Time of Hearing: 9:00 a.m.** |
| | **(filed under seal by order of the Discovery Commissioner dated February 22, 1999)** |

      Plaintiff Gilbert P. Hyatt submits this Appendix of Exhibits in Support of Plaintiff

Gilbert P. Hyatt's Motion to Cure Improper Statements by FTB Counsel During Opening

Statements Concerning Hyatt Allegedly Erecting A "Wall" Between this Case and the

California Tax Proceedings and Thereby Violating the Court's Order Prohibiting the Parties

from "Litigation the Litigation." Set forth below is an index of the exhibits.

RA019439

RJN0889



Exhibit 1      Protective Order

Exhibit 2      H. Schlindwein Depo., pp. 163-164, 173-175

Exhibit 3      FTB Reply re 1999 motion, at 7-9, 15-18

Exhibit 4      FTB proposed protective order in 1999 attached to letter dated July 8, 1999

Exhibit 5      Hyatt Opposition re 1999 motion, at 1, 8, and 11

Exhibit 6      *Second Errata*, attaching Hyatt's draft protective order

Exhibit 7      May 17, 1999 letter from Hyatt counsel with proposed protective order, July 8, 1999 letter from FTB counsel with proposed protective order; August 24, 1999 facsimile from Hyatt's counsel with proposed revised protective order

Exhibit 8      November 9, 1999 hearing transcript, at 20-23, 25-27

Exhibit 9      April 22, 2008 trial transcript, at 105-07; May 7, 2008 trial transcript, at 98:9 – 100:3, 165:8-170:8, 189:4-190:4; Trial transcript, April 30, 2008, at 167:14 – 168:18;

Dated this __ day of May, 2008.

HUTCHISON & STEFFEN, LLC
Mark A. Hutchison, Esq. (4639)
10080 Alta Drive
Suite 200
Las Vegas, Nevada 89145

BULLIVANT HOUSER BAILEY PC

_____
Peter C. Bernhard, Esq. (734)
3883 Howard Hughes Pkwy.
Suite 550
Las Vegas, Nevada 89169
(702) 669-3600

*Attorneys for Plaintiff Gilbert P. Hyatt*

RA019440

Exhibit 1

RA019441

RJN0891

# ORIGINAL

FILED

DEC 27  9 39 AM '99

1   DCCR
    Thomas L. Steffen
2   Mark A. Hutchison
    John T. Steffen
3   HUTCHISON & STEFFEN, LTD.
    Lakes Business Park
4   8831 West Sahara Avenue
    Las Vegas, Nevada 89117
5   (702) 385-2500

6   Thomas K. Bourke
    601 West Fifth Street
7   One Bunker Hill, 8th Floor
    Los Angeles, CA 90071-2094
8   (213) 623-1092

9   Attorneys for Plaintiff

10

11                     DISTRICT COURT

12               CLARK COUNTY, NEVADA

13   GILBERT P. HYATT,           )
                                )   CASE NO.:     A382999
14         Plaintiff,             )   DEPT NO.:     XVIII
                                )
15   v.                           )
                                )
16   FRANCHISE TAX BOARD OF THE   )   DISCOVERY COMMISSIONER'S
    STATE OF CALIFORNIA, and DOES   )   REPORT AND RECOMMENDATION
17   1-100, inclusive,             )
                                )
18         Defendants.           )
                                )

19

20             Date of Conference: November 9, 1999

21             Time of Conference: 10:00 a.m.

22

23                     **NATURE OF ACTION**

24     Protective Order for Confidential Information, decided in conjunction with the

25   Defendant's Motion to Compel Discovery Responses.

26

27                     **APPEARANCES**

28     At the November 9, 1999 hearing, Mark A. Hutchison, Thomas K. Bourke, and Donald
    J. Kula appeared on behalf of the Plaintiff, Gil Hyatt, and James A. Bradshaw, Thomas R. C.

HUTCHISON
STEFFEN
Business Park
/. Sahara Avenue
Las Vegas, NV 89117
(702) 385-2500
FAX (702) 385-2086

RA019442

RJN0892

1  Wilson, Matthew C. Addison, and Felix E. Leatherwood appeared on behalf of the Defendant

2  the Franchise Tax Board of California, *i.e.* the FTB.

3  <u>**FINDINGS**</u>

4       1.     The FTB brought a Motion to Compel Production of Discovery Responses.  The

5  FTB attached to its motion its proposed Protective Order for Confidential Information.

6       2.     Hyatt attached to his opposition to the FTB's Motion to Compel Discovery

7  Responses his proposed Protective Order.  Hyatt also attached to his opposition earlier versions

8  of his proposed Protective Order that were subsequently modified based upon FTB objections.

9       3.     The parties were unable to agree upon a stipulated Protective Order and

10  requested that the Court resolve the dispute over the Protective Order in conjunction with the

11  FTB's Motion to Compel Discovery Responses.

12       4.     At the November 9, 1999 hearing on the FTB Motion to Compel Discovery

13  Responses, the Discovery Commissioner found that the proposed Protective Order submitted

14  by Hyatt, with certain modifications specified by the Discovery Commissioner during the

15  hearing, is appropriate in this case because it will provide protection for "Confidential

16  Information" so designated by the parties and will also allow the parties to use "Confidential

17  Information" as necessary within the confines of this litigation in order to prosecute, in the case

18  of Hyatt, and defend, in the case of the FTB, the claims at issue.

19

20  <u>**RECOMMENDATIONS**</u>

21       The following Protective Order is recommended:

22       1.     Definitions

23            A.     "FTB" shall mean defendant Franchise Tax Board of the State of

24  California, and specifically its employees, officers, or board members to whom it is necessary

25  to show "Confidential Information," subject to further limitations below, in order to assist the

26  FTB attorneys with respect to the defense of this Action.

27            B.     "Hyatt" shall mean plaintiff Gil Hyatt.

28  . . .

HUTCHISON
TEFFEN
...iness Park
8.. . Sahara Avenue
Las Vegas, NV 89117
(702) 385-2500
FAX (702) 385-2086

- 2 -

RA019443

RJN0893

1        C.     "Party" and "Parties" shall mean one or more of the plaintiff or

2  defendant in this Action.

3        D.     "Confidential Information" shall mean and be limited to "Hyatt

4  Confidential Information" and "FTB Confidential Information" whether produced or otherwise

5  disclosed in this Action, including (a) any documents and things and copies thereof, (b) any

6  answers to interrogatories and responses to requests for admissions, and (c) any testimony

7  given in this Action by the Parties, their officers, directors, agents and/or employees, or by

8  other witnesses, whether by deposition or at trial.

9        E.     The designation "Confidential – NV Protective Order" shall be plainly

10  legible on each page of each document. In lieu of marking the original of the documents, the

11  designating party may mark the copies that are produced or exchanged.

12        Confidential Information in other than a documentary or written form

13  shall be identified as Confidential Information on the stenographic record contemporaneously

14  with testimony revealing Confidential Information or within 30 days after the written transcript

15  of such proceeding has been prepared and disseminated by the Court reporter.

16        Abuse of the "Confidential – NV Protective Order" designation shall

17  result in sanctions to the offending party.

18     2.     This Protective Order shall be governed by Rule 26 of the Nevada Rules of Civil

19  Procedure and applied and interpreted pursuant to Nevada law. Confidential Information

20  disclosed by Hyatt to the FTB is subject to all requirements of confidentiality imposed by the

21  laws of the State of Nevada. This order is not intended to supplant, alter, modify, or reduce the

22  FTB's requirements of confidentiality under California law. This order is intended only to

23  assist and facilitate the exchange of Confidential Information between the Parties to this Action

24  and assist and facilitate this Court in its administering of such exchanges.

25        A.     Hyatt Confidential Information may not be disclosed, revealed, or

26  disseminated by the FTB and its counsel and FTB Confidential Information may not be

27  disclosed, revealed, or disseminated by Hyatt and its counsel, except to the following

28  individuals and in the following manner:

HUTCHISON
& STEFFEN
Business Park
Sahara Avenue
Las Vegas, NV 89117
(702) 385-2500
FAX (702) 385-2086

- 3 -

1        (i).     To the counsel of record for the opposing Party and counsel for

2    any witnesses and their respective stenographic, clerical, and paralegal employees. It shall be

3    the responsibility of the attorneys to ensure that their respective stenographic, clerical, and

4    paralegal employees understand and comply with this Protective Order. Violation of the

5    Protective Order by any employee will be imputed to the attorneys.

6        (ii).    To the opposing Party. In the case of the FTB this includes

7    employees, officers, and board members to the extent necessary to assist FTB counsel in the

8    defense of this Action.

9        (iii).   To court reporters and videographers covered by Paragraph 9

10   herein, after reading this Protective Order and executing a copy of Exhibit A attached hereto.

11       (iv).   To experts or consultants, whose advice and consultation are

12   being or will be used by the opposing Party in this Action, provided that such experts or

13   consultants read this Protective Order and execute a copy of Exhibit A attached hereto.

14       (v).    To such other persons as hereafter may be designated by written

15   stipulation of the Parties or by further order of the Court on motion by either party subject to

16   the notice provisions of Paragraph 16 below.

17      3.     The FTB and its attorneys shall not use Hyatt Confidential Information and

18   Hyatt and his attorneys shall not use FTB Confidential Information in any manner whatsoever

19   except solely for discovery and preparation of discovery, preparation for trial, trial, and any

20   appeals related to this Action. Furthermore, no Party or employee, officer, or board member of

21   the FTB, or any other person, firm, corporation, attorney, or other entity subject to this

22   Protective Order shall give, show, disclose, make available, or communicate Confidential

23   Information (in any form and whether or not specific identifying information has been redacted

24   or modified) to any person, firm, corporation, or other entity not expressly authorized by this

25   Protective Order to receive such Confidential Information.

26      4.     To the extent that either Party desires to use Confidential Information acquired

27   under the terms of this Protective Order in the pending tax assessment and collection case

28   which the FTB is now pursuing against Hyatt in the State of California including, but not

HUTCHISON
& STEFFEN
Business Park
Sahara Avenue
4as, NV 89117
(702) 385-2500

- 4 -

1  limited to, the pending protests for taxable years 1991 and 1992 ("California Tax Case"), the

2  requesting Party shall give notice to the opposing Party and specify the precise Confidential

3  Information it desires to be submitted as part of that California Tax Case. If the opposing Party

4  objects to the use of the Confidential Information in the California Tax Case, the requesting

5  Party must seek and obtain permission to use and submit the Confidential Information in the

6  California Tax Case in accordance with California law. In the event Hyatt does not agree to

7  voluntarily produce the Confidential Information to the California Tax Case, the FTB may seek

8  to compel Hyatt to produce the requested Confidential Information in the California Tax Case

9  through issuance and service of an administrative subpoena as governed by California law.

10  This Protective Order in no way affects, limits, or modifies either parties' respective rights in

11  regard to seeking or opposing an administrative Subpoena under California law.

12      Notwithstanding any other provision in this Protective Order, no FTB attorneys and/or

13  FTB staff assigned to the pending protests for 1991 and 1992 or assigned to the California Tax

14  Case shall have access to any Confidential Information, absent the FTB giving notice to Hyatt

15  pursuant to this Protective Order and specifying the precise Confidential Information the FTB

16  desires to provide to those individuals as part of that California Tax Case.

17      5.      All Confidential Information filed with the Court for any purpose shall be filed

18  in a sealed envelope or other container marked on the outside with the title of the action, an

19  identification of each item within, and a statement substantially as follows:

20      Confidential Information Subject to Protective Order. This item shall not be
        opened except as ordered by the Court in this action or upon written stipulation
21      executed by all the Parties and filed in Court in this action.

22  This envelope or other container shall not be opened except as ordered by the Court or upon

23  written stipulation executed by the Parties to this action or their counsel and filed in Court in

24  this action. All such documents so filed in Court shall be treated in accordance with the

25  provisions of this Protective Order relating to Confidential Information.

26      6.      In the event Hyatt or the FTB wishes to use or refer to any Confidential

27  Information in any affidavits, briefs, memoranda of law, or other papers filed in Court in this

28  action, such affidavits, briefs, memoranda of law, or other papers so filed shall be designated as

HUTCHISON
& STEFFEN
Business Park
Sahara Avenue
Las, NV 89117
(702) 385-2500
FAX (702) 385-2086

- 5 -

1  "Confidential Information - Subject to Protective Order" and shall be maintained under seal by

2  the Court and treated by the Court in accordance with the provisions of this Protective Order

3  relating to Confidential Information.

4       7.    Counsel shall, while eliciting testimony concerning Confidential Information or

5  which might result in the disclosure of Confidential Information, exclude from the room during

6  a deposition, hearing, trial, or other proceedings, any person who is not entitled under this

7  Protective Order to receive Confidential Information.  Confidential Information shall not be

8  disclosed to the witness then testifying except in strict conformity with the provisions of this

9  Protective Order, including the requirement that the testifying witness agree to be bound by the

10  terms of this Protective Order by executing the Agreement set forth in Exhibit A hereof.

11       8.    Any court reporter or transcriber who reports or transcribes testimony in this

12  action at depositions, hearings, or other proceedings shall agree by a statement on the record,

13  before recording or transcribing any such testimony constituting Confidential Information, that

14  all such testimony and information revealed at the deposition, hearing, or other proceeding is

15  and shall remain confidential and shall not be disclosed by any such reporter or transcriber

16  except to attorneys for a Party who are authorized by this Protective Order and any other person

17  who is authorized by this Protective Order to be present while such testimony is being given,

18  and that copies of any transcript, reporter's notes, or any other transcription records of any such

19  testimony shall be retained in confidence and safekeeping by such reporter or transcriber or

20  shall be delivered to the Court in the manner specified in Paragraphs 5 and 6 herein, or to the

21  attorneys for the Parties.

22       9.    The Clerk of the Court is directed to maintain under seal all documents and all

23  transcripts of deposition testimony filed with this Court in this action by any Party which are in

24  whole or in part designated as Confidential Information including all pleadings, deposition

25  transcripts, exhibits, discovery responses, or memoranda purporting to reproduce or paraphrase

26  such information.  The person filing such material shall advise the Clerk, as set forth in

27  paragraph 5 hereof, that all or a designated portion thereof is subject to this Protective Order

28  . . .


HUTCHISON
& STEFFEN
Business Park
Sahara Avenue
egas, NV 89117
(702) 385-2500
FAX: (702) 385-2086

- 6 -

RA019447

RJN0897

1  and is to be kept under seal. Upon the default of the filing Party to so designate, any Party may

2  so advise the Court.

3        10.    No Party to this proceeding may offer or elicit any testimony, exhibits, or other

4  evidence containing or disclosing Confidential Information unless such Party first ensures that

5  adequate safeguards against unauthorized disclosure of such information have been

6  implemented. Such safeguards shall include the exclusion from such proceedings of any

7  persons not authorized access to such information pursuant to the terms of this Protective Order

8  and other measures reasonably necessary in order to preclude unauthorized disclosure of such

9  information. In the event that any Confidential Information is used in any court proceeding, it

10  shall not lose its confidential status merely through such use.

11        11.    Nothing in this Protective Order shall preclude any Party to the Action, its

12  attorneys, or any other person from disclosing or using, in any manner or for any purpose, any

13  information or documents not obtained in discovery from the producing Party in this action, if

14  such information was lawfully obtained, even though the same information or documents may

15  have been produced in discovery in this action and designated as Confidential Information.

16        12.    Nothing in this Protective Order shall preclude any party to this action or their

17  attorneys from showing a document designated as Confidential Information to an individual

18  who either prepared, is a designated or authorized recipient of or previously lawfully reviewed

19  the document.

20        13.    Nothing herein shall prevent disclosure beyond the terms of this Protective

21  Order if the disclosing Party consents in writing to such disclosure of information designated as

22  Confidential Information.

23        14.    This Protective Order involves only the relative rights and obligations of the

24  Parties as to the confidentiality of any information disclosed, or documents supplied, in this

25  action. This Protective Order does not abrogate or diminish any contractual, statutory, or other

26  legal obligation or right of any Party or person with respect to any Confidential Information.

27  . . .

28  . . .

HUTCHISON
· STEFFEN
Business Park
Sahara Avenue
Las Vegas, NV 89117
(702) 385-2500
FAX: (702) 385-2086

- 7 -

RA019448

RJN0898

15. The provisions of this Protective Order shall not terminate at the conclusion of this action and may be enforced in this action or in a separate proceeding in the discretion of the Party alleging any breach of this Protective Order.

16. The Parties hereto may stipulate, subject to the approval of the Court, to any mutually agreeable changes to the provisions hereof. If a Party requests any modification(s) to the Protective Order and the Parties are unable to reach an agreement after a meet and confer, the Party requesting a modification may file a motion with the Court seeking such modification, and such motion will be heard by the Court in the ordinary course of business.

17. This Protective Order shall be binding upon the Parties, their employees, officers, board members, agents, attorneys, and all persons encompassed by paragraph 2 whether or not such persons individually have executed Exhibit A. The Court retains jurisdiction to enforce the provisions of this Protective Order upon the request of any Party or sua sponte and to make such arrangements, modifications, and additions to this Protective Order as the Court may from time to time deem appropriate.

18. If a party believes that information it intends to use in this Action or information requested by the opposing party in discovery needs a higher level of protection (*e.g.*, "Attorneys' Eyes Only") than that accorded "Confidential Information" as set forth in this protective order, that party must make a motion for a protective order with the Court. Such motion must set forth the basis for the additional level of protection needed as well as the limitations desired by that moving party on the dissemination of the information. The party

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

HUTCHISON
& STEFFEN
ss Business Park
V. Sahara Avenue
Vegas, NV 89117
(702) 385-2500
FAX (702) 385-2086

- 8 -

RA019449

RJN0899

1    seeking the higher level of protection will have the burden of establishing the need and

2    appropriateness of the higher level of protection.

3       DATED this 3rd day of December , 1999.

4

5

6                                DISCOVERY COMMISSIONER

7

8    Submitted by:                   Approved as to form:

9    HUTCHISON & STEFFEN, LTD.      McDONALD CARANO WILSON
                                   McCUNE BERGIN FRANKOVICH &
                                   HICKS, LLP

10

11

12    Thomas L. Steffen                Thomas R. C. Wilson
     Mark A. Hutchison             James W. Bradshaw

13    John T. Steffen                 Bryan R. Clark
     Lakes Business Park          2300 West Sahara Avenue

14    8831 West Sahara Avenue      Las Vegas, NV 89102
     Las Vegas, Nevada 89117

15    Attorneys for Plaintiff          Attorneys for Defendant

16

17

18

19

20

21

22

23

24

25

26

27

28

HUTCHISON
& STEFFEN
Business Park
Sahara Avenue
, NV 89117
(702) 385-2500
FAX (702) 385-2086

                               - 9 -

RA019450

RJN0900

## NOTICE

Pursuant to NRCP 16.1(d)(2), you are hereby notified you have five (5) days from the date you receive this document within which to file written objections.

[Pursuant to E.D.C.R. 2.34(f), an objection must be filed and served no more than five (5) days after receipt of the Commissioner's Report. The Commissioner's Report is deemed received when signed and dated by a party, his attorney or his attorney's employee, or three (3) days after mailing to a party or his attorney, or three (3) days after the clerk of the court deposits a copy of the Report in a folder of a party's lawyer in the Clerk's office.]

A copy of the foregoing Discovery Commissioner's Report was:

_____ Mailed to Plaintiff/Defendant on the _____ day of _____, 1999 at the following address:

         James W. Bradshaw, Esq.
         McDonald Carano Wilson
         McCune Bergin Frankovich & Hicks
         241 Ridge Street, 4th Floor
         Reno, Nevada 89501
         Attorney for Defendant

__√__ Placed in the folder of Plaintiff/Defendant's counsel in the Clerk's office on the 7th day of December, 1999.

         SHIRLEY R. PARRAGUIRRE

By: _____
        Deputy Clerk

        MARY DAIGLE

HUTCHISON
STEFFEN
...iness Park
...ahara Avenue
Las Vegas, NV 89117
(702) 385-2500
...

- 10 -

Case Name: *Hyatt v. Franchise Tax Board*

Case Number: A382999

## ORDER

The Court, having reviewed the above report and recommendations prepared by the Discovery Commissioner, and,

_____ The parties having waived the right to object thereto,

_____ No timely objections having been filed thereto,

_____ Having received the objections thereto and the written arguments in support of said objections, and good cause appearing,

_____ IT IS HEREBY ORDERED the Discovery Commissioner's Report and Recommendations are affirmed and adopted.

_____ IT IS HEREBY ORDERED the Discovery Commissioner's Report and Recommendations are affirmed and adopted as modified in the following manner. (attached hereto)

_____ IT IS HEREBY ORDERED that a hearing on the Discovery Commissioner's Report is set for _____, 1999.

Dated this 21st day of December, 1999.

DISTRICT COURT JUDGE

HUTCHISON
& STEFFEN
Business Park
Sahara Avenue
gas, NV 89117
(702) 385-2500
FAX (702) 385-2086

- 11 -

RA019452

RJN0902

EXHIBIT A

AGREEMENT CONCERNING MATERIAL COVERED BY A PROTECTIVE
ORDER AND ORDER ENTERED IN THE DISTRICT COURT,
CLARK COUNTY, NEVADA

I, the undersigned, hereby acknowledge that I have read the attached Protective Order entered in the District Court, Clark County, Nevada in Case No. A382999 and understand the terms thereof and agree to be bound by all such terms. Without limiting the generality of the foregoing, I agree not to disclose to any person or entity not authorized to receive such "Confidential Information," pursuant to the terms of said Protective Order, any document or any information designated as "Confidential Information" or any copies of extracts or information derived therefrom, which have been disclosed to me. I further agree to use any information disclosed to me in connection with the above-mentioned case solely for the purpose of this case and for no other purposes.

The undersigned hereby irrevocably submits his/her person to the jurisdiction of the District Court, Clark County, Nevada for the purpose of enforcing said Protective Order.

Date:

Signature

Type or print name:

HUTCHISON
& STEFFEN
Business Park
Sahara Avenue
egas, NV 89117
(702) 385-2500

RA019453

RJN0903

Exhibit 2

RA019454

RJN0904

```
 1                    DISTRICT COURT

 2                CLARK COUNTY, NEVADA

 3

 4                                        CERTIFIED
                                            COPY
 5

 6  GILBERT P. HYATT,              )
                                   )
 7                                 )
                     Plaintiff,    )
 8                                 )
                                   )
 9          VS.                    )   NO. A382999
                                   )
10                                 )
    FRANCHISE TAX BOARD OF THE     )
11  STATE OF CALIFORNIA, and DOES  )
    1-100, inclusive,              )
12                                 )
                                   )
13                   Defendants.   )
    ───────────────────────────────)
14

15

16                    VOLUME 1

17    DEPOSITION OF HELENE CHRISTINE SCHLINDWEIN

18            LOS ANGELES, CALIFORNIA

19          SATURDAY, FEBRUARY 12, 2000

20

21

22

23  REPORTED BY:

24       Jean F. Holliday

25       CSR No. 4535, RPR
```

G&G COURT REPORTERS
A U.S. Legal Company

15250 Ventura Boulevard, Suite 410 • Sherman Oaks, CA 91403
(800) 993-4G'N'G (4464) • FAX: (818) 995-4248

RA019455

RJN0905

| | | | |
|---|---|---|---|
| 15:54 | 1 | Q. | Where do they live? |
| 15:54 | 2 | A. | With their mothers. |
| 15:54 | 3 | Q. | Two of them are children from |

15:54 4  Mr. Hyatt's deceased son?

| | | | |
|---|---|---|---|
| 15:54 | 5 | A. | Yes. |
| 15:54 | 6 | Q. | Which ones are the children of |

15:54 7  Mr. Hyatt's deceased son?

| | | | |
|---|---|---|---|
| 15:54 | 8 | A. | Veronica and Eddie. |
| 15:54 | 9 | Q. | Where do they live? |
| 15:54 | 10 | A. | In California with their mother, I'm |

15:54 11  assuming.

15:54 12       MR. ROTH:  Don't assume.

15:54 13       THE WITNESS:  Sorry.

15:54 14       MR. LEATHERWOOD:  And you want to put that

15:54 15  under --

15:54 16       MR. BOURKE:  I think we're still in that

15:54 17  attorneys' eyes only.  Can we get off the subject so

15:54 18  we can make the rest of the deposition available

15:54 19  generally?

15:55 20       MR. LEATHERWOOD:  Doesn't make any sense.

15:55 21  This is the last time I'm going to enter into an

15:55 22  attorneys' eyes only designation.  It's an abuse of

15:55 23  the discovery process.  If Mr. Hyatt wants to bring a

15:55 24  lawsuit against a litigant he's going to have to be

15:55 25  subject to the same rules as every other party in

163

RA019456

RJN0906

| | | |
|---|---|---|
| 15:55 | 1 | this litigation.  The Nevada court has not hesitated |
| 15:55 | 2 | to overturn California laws which guarantee certain |
| 5:55 | 3 | protections to the State of California but yet they |
| 15:55 | 4 | will introduce this phoney absurd protective order |
| 15:55 | 5 | and that's why we've taken it up to the Nevada |
| 15:55 | 6 | Supreme Court. |
| 15:55 | 7 | MR. BOURKE:  You're not withdrawing your |
| 15:55 | 8 | stipulation, are you? |
| 15:55 | 9 | MR. LEATHERWOOD:  Pardon me? |
| 15:55 | 10 | MR. BOURKE:  You're not attempting to withdraw |
| 15:55 | 11 | your stipulation? |
| 15:55 | 12 | MR. LEATHERWOOD:  What stipulation? |
| 15:55 | 13 | MR. BOURKE:  The one about keeping this -- |
| 15:55 | 14 | MR. LEATHERWOOD:  I'm not going to disclose |
| 15:55 | 15 | that just because out of courtesy to the witness |
| 15:55 | 16 | anyway. |
| 15:55 | 17 | Q.     Okay, let's move on. |
| | 18 | (Further proceedings were had pages |
| | 19 | (165 to 198.) |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

164

G & G COURT REPORTERS

```
         1  BY MR. LEATHERWOOD:
16:13    2       Q.      I would ask the witness to review this
16:13    3  document.
16:13    4       MR. ROTH:  I would raise the same objection.
16:13    5  You've not established the witness has ever seen the
16:13    6  document, it's incomplete and therefore misleading
16:13    7  and so I object to showing the document to the
16:13    8  witness.  You may refer to portions if you like just
16:13    9  as you did with the previous document.
16:13   10       MR. LEATHERWOOD:  Are you saying that I can't
16:13   11  show the document to the witness and you're going to
16:13   12  preclude the witness from examining the document?
16:13   13       MR. BOURKE:  Could you -- let's go off the
16:13   14  record for a second.
16:13   15       VIDEOGRAPHER:  Going off the record.  The time
16:13   16  is 4:13.
16:15   17            (Discussion held off the record.)
16:15   18       VIDEOGRAPHER:  Going back on the record.  The
16:15   19  time is 4:15.
16:15   20       MR. ROTH:  Mr. Leatherwood, I have previously
16:15   21  stated my objection and I will stick with it, but I
16:15   22  am not instructing the witness not to look at the
16:15   23  document.
16:15   24       MR. LEATHERWOOD:  Well, just so the court and
16:16   25  a jury can understand the charade that's going on
```

                                                        173

**G & G COURT REPORTERS**

RA019458

RJN0908

16:16  1   here, Mr. Bourke asked to go off the record and

16:16  2   Mr. Bourke came and you went outside and conferred on

16:16  3   this and you came back and changed your position.

16:16  4   Once again you got a witness that used to be the

16:16  5   former employee/girlfriend of the plaintiff here who

16:16  6   is sitting here with the plaintiff's former attorney,

16:16  7   and existent attorney and one of his attorneys here

16:16  8   and you go outside and you cut some kind of deal.

16:16  9   And but nevertheless, this guy over here named

16:16 10   Mr. Bourke is making objections that I'm asking

16:16 11   leading questions.  This is the absurdity what's

16:16 12   going on here.  The idea -- and then he would sit

16:16 13   back here and he would threaten the Attorney

16:16 14   General's office for literally asking questions off

16:16 15   of a document.  This is the patent charade and

16:16 16   unfairness of bringing the State of California

16:16 17   involved in a lawsuit in Nevada and the

16:16 18   ridiculousness of the Nevada court for not following

16:16 19   the rule of law.

16:16 20         MR. BOURKE:  Mr. Leatherwood, I don't

16:17 21   appreciate there being a diatribe on the deposition.

16:17 22   I think you're wasting time and it's not a charade if

16:17 23   I go out in the hallway in an attempt to get another

16:17 24   lawyer in the case to either modify an objection or

16:17 25   adhere to a procedure that you have wanted to do of

174

RA019459

RJN0909

16:17  1  showing the witness a document.  I think it's a good

.6:17  2  thing for me to try to get a witness to look at a

16:17  3  document if that's what you want the witness to look

16:17  4  at.  And I resent the accusation against the State of

16:17  5  Nevada making ridiculous rulings.  I think

16:17  6  Commissioner Biggar and Judge Saitta have made good

16:17  7  rulings in this case, particularly the ones that seem

16:17  8  to aggravate you the most.  Can we go on?

16:17  9       MR. LEATHERWOOD:  Yeah.  Yeah.  You went

16:17 10  outside with co-counsel, remember that.  You both

16:17 11  represent Mr. Hyatt, right?

16:18 12       MR. BOURKE:  I think that -- I know I do and I

16:18 13  think that Mr. Roth represents both Mr. Hyatt and

16:18 14  Helene Schlindwein.

      15  BY MR. LEATHERWOOD:

16:18 16       Q.     Can you read this document briefly,

16:18 17  Ms. Schlindwein.  We're going to try to get back on

16:18 18  track here and go as far as we can.

16:23 19             Did you read that, ma'am?

16:23 20       A.     Yes.

16:23 21       Q.     Did you find any statements in the

16:24 22  statements of Ms. Maystead that you disagree with?

16:24 23       MR. BOURKE:  Objection, the document is so

16:24 24  long that I think it's unfair to ask that sort of an

16:24 25  overly broad question.

                                              175

**G & G COURT REPORTERS**

RA019460

RJN0910

Exhibit 3

RA019461

REP
BILL LOCKYER
Attorney General
DAVID S. CHANEY
Supervising Deputy Attorney General
FELIX E. LEATHERWOOD, State Bar No. 103929
GEORGE M. TAKENOUCHI, State Bar No. 157963
Deputy Attorneys General
300 South Spring Street, Room 5212
Los Angeles, California 90013
Telephone: (213) 897-2478

THOMAS R. C. WILSON, ESQ.
Nevada State Bar # 1568
MATTHEW C. ADDISON, ESQ.
Nevada State Bar # 4201
BRYAN R. CLARK, ESQ.
Nevada State Bar #4442
McDONALD CARANO WILSON McCUNE
BERGIN FRANKOVICH & HICKS LLP
2300 West Sahara Avenue, Suite 1000
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
Attorneys for Defendants

FILED

Nov 4  4 15 PM '99

*Shirley B. Parraguirre*
CLERK

DISTRICT COURT

CLARK COUNTY, NEVADA

* * * * *

| | |
|---|---|
| GILBERT P. HYATT,<br><br>Plaintiff,<br><br>vs.<br><br>FRANCHISE TAX BOARD OF THE STATE OF CALIFORNIA, and DOES 1-100, inclusive<br><br>Defendants. | Case No. : A382999<br>Dept. No. : XVIII<br>Docket No. : R<br><br>**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO THE FTB'S MOTION TO COMPEL DISCOVERY RESPONSES**<br><br>**Date: November 9, 1999**<br>**Time: 10:00 a.m.**<br>**Court: Discovery Commissioner**<br><br>**Under Submission**<br>**FILED UNDER SEAL BY ORDER OF THE DISCOVERY COMMISSIONER DATED FEBRUARY 22, 1999** |

1

RA019462

RJN0912

resolved. Tax attorney Eugene Cowan and CPA Michael Kern represent Mr. Hyatt in the protest proceedings. The Plaintiff has repeatedly supplemented his NRCP 16.1 document production with correspondence and materials which purport to clarify or supplement the record in that proceeding. In addition, the Amended Complaint basically holds the audit and protest proceedings to be an ongoing tort. Thus, the knowledge and work of Mr. Cowan and Mr. Kern who have been identified by Plaintiff as material witnesses are the legitimate subject of discovery. Plaintiff conducted a nine (9) day deposition of the FTB's auditor, Sheila Cox, and a two (2) day deposition of the protest officer, Anna Jovanovich, regarding these very issues and their interaction with Hyatt's tax attorney Eugene Cowan and CPA Michael Kern. Thus, any claim of "work-product privilege" as a basis for withholding document information held or known by Mr. Cowan or Mr. Kern must be closely scrutinized and any documents withheld on this basis must be included in a privilege log. Preferably, the documents should be simply produced outright so that this litigation can move along. The court should consider whether or not Hyatt's delay amounts to a waiver and order production of the documents.

## HYATT'S PROPOSED PROTECTIVE ORDER IS ONE-SIDED, OPPRESSIVE, BURDENSOME AND UNJUSTIFIED

Besides the privilege log issue which the Plaintiff basically concedes, the Court's assistance is necessary to resolve Hyatt's withholding of documents under claim of confidentiality. The parties have repeatedly met and conferred on this, exchanged draft stipulations and protective orders and consulted telephonically with the Discovery Commissioner. Both sides have submitted proposed stipulated protective orders to the Discovery Commissioner for consideration.

The FTB suspects that this entire protective order issue is a "red herring" issue set up by Mr. Hyatt to deflect the defense and Court's attention from lack of substantive evidence supporting his tort claims. Hyatt's real motive is to either impede or stop the FTB's

7

RA019463

RJN0913

discovery for tactical advantage or to prevent the use of discovered material in the California tax proceedings.

As a preliminary matter, Hyatt's misstatement that "both sides believe a protective order is necessary" (Opposition P.2, Ln.13) must be addressed and discounted. The FTB has never contended or agreed that a protective order is necessary to protect Mr. Hyatt's confidentiality. As a practical matter, because of the existing protections under California law and the Board's own policies and procedure given any and all documents produced by Hyatt to the FTB in this litigation, the FTB does not oppose a workable protective order such as it has proposed. Indeed, it was the FTB's attorneys rather than Hyatt's counsel who first raised the issue of a protective order last January because of Plaintiff's counsel's personal questions in depositions of FTB employees. Only after responses were due from Hyatt last May to the FTB's document requests did Hyatt's attorneys tender a proposed protective order.

It should be noted that the Court file has already been sealed by the Discovery Commissioner and the FTB has agreed to restrict use of discovery materials to this litigation and the California tax proceedings. The Plaintiff has made no showing whatsoever of any need for additional protection. Although Plaintiff's counsel argues by affidavit that Hyatt's protective order is "standard" no evidence of this is provided. A more typical example of a confidentiality agreement between commercial litigants is a simple letter agreement attached hereto as Exhibit "E". It is doubtful that litigants agree to such one-sided and unwieldy protective orders as proposed by Hyatt. Certainly, it must be exceedingly rare that a government agency would agree to such expensive and burdensome constraints in order to litigate in secret. In this connection, the value of the affidavit of Hyatt's attorney should be discounted because this is not commercial litigation, but litigation against a public entity. The principal question presented by the lawsuit is whether a sovereign state in performing a legitimate and constitutional public function, the collection of taxes, in someway violated the personal rights of Mr. Hyatt and the laws of a sister state. As such, the unique rules

8

governing public entity litigation should apply rather than the rules normally used in commercial litigation. Unlike commercial litigants who are not bound by statutory restrictions and confidentiality of information and therefore need confidentiality agreements and protective orders, the FTB is a government entity which is bound by statutes, public policies and internal procedures which provide great protection.

The proposed protective order tendered by the Board is simple, workable and fair. On the other hand, the proposed protective order put forth by Mr. Hyatt is one-sided, oppressive and burdensome for both the FTB and the Court.

The proposed protective order tendered by the Board it (Exhibit "D to the Motion and Exhibit "6" to the Opposition) offers whatever protection Hyatt might reasonably need. It imposes no special burden on either party. It allows both sides to use discovery materials in the conduct of this litigation without giving either side unfair advantage. It does not restrain either party from using discovery materials in the parallel California tax proceedings initiated by Mr. Hyatt just prior to this litigation.

On the other hand, Hyatt's latest version of his proposed protective order (Exhibit "E" to the Motion and Exhibit "1" to the Opposition is lengthy, complicated, builds in lengthy delays in discovery, gives Hyatt arbitrary and total control of the "confidential" process, precipitates unnecessary motion practice, drastically limits the defense's use of discovery materials (whether or not Hyatt produces them), greatly reduces defense counsels ability to use discovery materials with its client, prevents preparation of witnesses, gives Hyatt automatic discovery as to defense witnesses, consultants and work product, reverses the burden of justifying discovery of relevant materials, unnecessarily increase the expense of discovery, unnecessarily burdens the defense, witnesses, experts, court reporters and the court, and gives unnecessary protection to documents and information which has no value or is already public information.

The Board's simple proposed stipulation and protective order require the FTB to maintain the confidentiality of documents and information produced by the Plaintiff in this

LYE AT LAW
AVENUE • NO 10 SUITE 1000
NEVADA 89102-4334
(702) 873-4100
2300 WEST /
LAS

9

Attorney's Eyes Only" designation. These provisions of Hyatt's proposed protective order are triggered automatically by his unilateral designation. This designation prevents disclosure by defense counsel to client representatives and witnesses.

For the foregoing reasons and because of the defense's many prior experiences with Hyatt's delaying tactics and expense adding strategies, the FTB pointed out to the court at the outset in its Motion its concern that Hyatt's arguments regarding confidentiality are disingenuous and done to create an aura of privacy to bias the court, impede the defense and ultimately manufacture evidence of "invasion of privacy" by arguing that legitimate investigative and discovery activities by the defense evidence the on-going tort of invasion of privacy.

### CALIFORNIA LAW GOVERNING THE FTB SHOULD BE RECOGNIZED IN CONSIDERING ANY PROTECTIVE ORDER

Hyatt is represented by five law firms in this litigation, including three California law firms with scores of attorneys. Mr. Hyatt's California tax attorneys are well aware of the California laws and procedures referenced in the Board's proposed protective order. These have been the subject of Plaintiff's extensive discovery, including dozens of depositions inquiring into confidentiality policies and procedures, and production of related documents and manuals.

The FTB's proposed protective order provides for the Nevada Court's order that the following protections offered under California law and procedure be complied with in addition to the other restrictions volunteered in the order:

> 3. The FTB's obligation hereunder as to treatment of confidential information regarding Hyatt shall be to treat such matters consistent with Calif. Rev. & Tax Code sections 19542 and 19547 and in accordance with the FTB's "need to know" internal policy, FTB Legal Branch confidentiality policies, the FTB's Security and Disclosure Manual and directives of the Franchise Tax Board. Hyatt's obligation hereunder shall be to use information and documents designated by the FTB as confidential only for purposes of preparation for and trial of this action and in the protest hearing proceedings before the FTB for 1991 and 1992, any subsequent appeal to the California

15

RA019466

RJN0916

Board of Equalization, related judicial review in the California Superior Court or related appeal (the "Hyatt residency proceedings").

The statutes cited in the FTB's proposed protective order bind the agency, impose severe penalties if violated and offer powerful protection for Mr. Hyatt.

Cal. Rev. & Tax Code sections 19542 and 19547 provide:

§ 19542 - <u>Disclosure of information from filed returns, reports or documents as misdemeanor.</u> Except as otherwise provided in this article and as required to administer subdivision (b) of Section 19005, it is a misdemeanor for the Franchise Tax Board or any member thereof, or any deputy, agent, clerk, or other officer or employee of the state (including its political subdivisions), or any former officer or employee or other individual, who in the course of his or her employment or duty has or had access to returns, reports, or documents required to be filed under this part, to disclose or make known in any manner information as to the amount of income or any particulars (including the business affairs of a corporation) set forth or disclosed therein.

§ 19547 - <u>Inspection of return or return information by legal representative of State.</u> In a matter involving tax administration under this part, a return or return information shall be open to inspection by the Attorney General or other legal representatives of the state, if any of the following apply:

(a) The taxpayer is or may be a party to the proceeding, or the proceeding arose out of, or in connection with, determining the taxpayer's civil or criminal liability, or the collection of the taxpayer's civil liability with respect to any tax imposed under Part 10 (commencing with Section 17001) or Part II (commencing with Section 23001).

(b) The treatment of an item reflected on the return is or may be related to the resolution of an issue in the proceeding or investigation.

(c) The return or return information relates or may relate to a transactional relationship between a person who is a party to the proceeding and the taxpayer, which affects or may affect, the resolution of an issue in the proceeding or investigation.

16

RA019467

RJN0917

1

2        In addition, the Attorney General may inspect any report or
3        return required under this part when required in the enforcement
of any public or charitable trust or in compelling adherence to
4        any charitable purposes for which any nonprofit corporation is
formed.

5

6     Criminal penalties are also imposed by Cal. Rev. & Tax Code sections 19552:

        § 19552 – <u>Use of information furnished or secured under article</u>
7        <u>or other provisions of law; Unwarranted disclosure as</u>
        <u>misdemeanor.</u> Except as otherwise provided by this article, the
8        information furnished or secured pursuant to either this article or
        the express provisions of law, shall be used solely for the
9        purpose of administering the tax laws or other laws administered
10      by the person or agency obtaining it. Any unwarranted
disclosure or use of the information by the person or agency, or
11      the employees and officers thereof, is a misdemeanor.

12      The FTB's proposed protective order references its obligations under Calif. Rev. &

13  Tax Code sections 19542 and 19547, as well as its "need to know" internal policy, FTB

14  Legal Branch confidentiality policies, the FTB's Security and Disclosure Manual and

15  directives of the Franchise Tax Board. These include the "ADMINISTRATION

16  CONFIDENTIALITY AND SECURITY OF DATA POLICY", the "STATEMENT OF

17  INCOMPATIBLE ACTIVITIES AND RULES OF CONDUCT FOR DEPARTMENTAL

18  EMPLOYEES" and the "EMPLOYEE RECEIPT" attached hereto as Exhibit "H".

19      Hyatt objects to reference to these specific protections. Although these provide Hyatt

20  with more protection than he would ordinarily be entitled to in Nevada litigation, reference

21  to these can be omitted from the FTB's proposed protective order. These laws and

22  procedures would still be applied by the FTB for Hyatt's benefit. The order should then

23  simply require that discovery materials be used by the defense for purposes of this litigation

24  and as required in the FTB's capacity as a California government agency. Any other

25  restriction should require a showing of good cause by the Plaintiff as to specific documents

26  or information.

27      Hyatt filed a California Part Year Resident return for taxable year 1991 with FTB.

28  That return, and other tax and penalty issues, are currently at issue before the Board in

RA019468

RJN0918

California. It is the FTB's position that documents or information bearing on the residency issue sought in the FTB's discovery and received by FTB during this litigation, or during and as part of the administrative process, whatever its source, is subject to California disclosure laws as set forth in the R&TC as outlined in FTB's proposed protective order. This litigation does not, and cannot, impact Hyatt's statutory protections with respect to the FTB.

Hyatt's Opposition raises the issue that if he appeals the FTB's final decision to the California Board of Equalization ("BOE"), the matters included in the appeal may be disclosed in these public proceedings. What Hyatt does not disclose is that he can request that the BOE seal records which are particularly sensitive, arrange for advance notice from the BOE if it intends to use the sealed items in a public proceeding and petition the California Superior Court for protection. Instead, Hyatt attempts to avoid the California agencies access by requiring it to come begging to the Nevada Court for access or proceed with unnecessarily duplicate discovery in the California and Nevada proceedings which are going on at the same time. This should not be allowed by the Nevada Court.

## HYATT'S CONTENTION THAT THERE HAVE BEEN ABUSES OF HIS "CONFIDENTIAL" INFORMATION IS NOT SUPPORTED

The Plaintiff's argument is not that the California laws and procedures do not apply or afford great protection. Hyatt's argument is that these laws and procedures have not always been followed in the past. Although Plaintiff argues that the protections afforded by California law are illusory, not a single example of abuse has ever been presented to the Court or provided to the defense in discovery. Plaintiff points to the use of his social security number and residential address as evidence of improper disclosure of "confidential" information. However, Mr. Hyatt's social security number is public information in Nevada and California and was simply used in the audit to identify him. See, Exhibit "I" hereto, a copy of Hyatt's voter registration form recently provided by the Clark Co. Election Dept. to defense counsel's representative without subpoena pursuant to NRS 239.030 and Exhibit

18

RA019469

RJN0919

Exhibit 4

RA019470

RJN0920

ATTORNEY GENERAL'S OFFICE
Felix Leatherwood, Esq.
Admitted Per SCR 42
George Takenouchi, Esq.
Admitted Per SCR 42
Thomas Heller, Esq.
Admitted Per SCR 42
300 South Spring Street
Los Angeles, CA 90013
(213) 897-2476

THOMAS R. C. WILSON, ESQ.
Nevada State Bar # 1568
MATTHEW C. ADDISON, ESQ.
Nevada State Bar # 4201
BRYAN R. CLARK, ESQ.
Nevada State Bar # 4442
McDONALD CARANO WILSON McCUNE
BERGIN FRANKOVICH & HICKS LLP
2300 West Sahara Avenue, Suite 1000
Las Vegas, Nevada 89102
(702) 873-4100
Attorneys for Defendants



## DISTRICT COURT

## CLARK COUNTY, NEVADA

* * * * *

| | |
|---|---|
| GILBERT P. HYATT, | Case No. : A382999 |
| | Dept. No. : XVIII |
| Plaintiff, | Docket No. : F |
| vs. | |
| | **STIPULATION AND** |
| FRANCHISE TAX BOARD OF THE | **PROTECTIVE ORDER** |
| STATE OF CALIFORNIA, and DOES 1- | |
| 100, inclusive | Date of Hearing: N/A |
| | Time of Hearing: N/A |
| Defendants. | |

Pursuant to Rule 26(c) of the Nevada Rules of Civil Procedure, the Plaintiff,

Gilbert P. Hyatt ("Hyatt") and Defendant, FRANCHISE TAX BOARD OF THE STATE

OF CALIFORNIA (the "FTB") hereby stipulate and agree by and through their respective

RA019471

RJN0921

undersigned attorneys that documents and information from the parties discovery in this litigation will be treated as confidential by the Parties and their counsel as set forth below.

    1.    The documents and information accumulated by the Parties in the r discovery in this litigation which are not public shall be considered as confidential ("confidential matters") and disclosed only in accordance with the terms of this stipulation. The confidential information shall consist of all information, documents, testimony or materials provided by Hyatt in the residency audit and protest, and discovered in this litigation, including, without limitation, all proprietary, trade secret, tax, financial, trust, corporate, partnership, personal, business, accounting, or other private information supplied by the parties or non- parties in response to orders, subpoenas, demands or requests, formal or informal, regardless of whether said documents or information is produced by Plaintiff, Defendant, or any other person, entity or source. This Stipulation and Order shall also apply to any notes, memoranda, outline, identification or index prepared from confidential matters to the extent that confidential matters are contained in such items.

    2.    The parties may only use confidential informational solely for the purposes of preparation of this case and for trial of this action, the protest hearing proceedings before the FTB for 1991 and 1992, any subsequent appeal to the California Board of Equalization,  related judicial review in the California Superior Court or related appeal, and any other government purpose  required by California law. Confidential information may be used and referred to in discovery responses, discovery proceedings, pleadings and papers, briefs, arguments, hearings, trial and may be marked as exhibits and used as evidence in this action and in the Hyatt residency proceedings.

    3.    The FTB's obligation hereunder as to treatment of confidential information regarding Hyatt shall be to treat such matters consistent with Calif. Rev. & Tax Code sections 19542 and 19547 and in accordance with the FTB's "need to know" internal

RA019472

RJN0922

policy, FTB Legal Branch confidentiality policies, the FTB's Security and Disclosure Manual and directives of the Franchise Tax Board. Hyatt's obligation hereunder shall be to use information and documents designated by the FTB as confidential only for purposes of preparation for and trial of this action and in the protest hearing proceedings before the FTB for 1991 and 1992, any subsequent appeal to the California Board of Equalization, related judicial review in the California Superior Court or related appeal (the "Hyatt residency proceedings").

4.    Any party or non-party giving testimony in this action or the Hyatt residency proceedings may be examined regarding confidential matters.

5.    Confidential information may be shown to the Parties' outside consultants, investigators and experts retained for the purpose of assisting in the preparation and conduct of this action and the Hyatt residency proceedings.

6.    Confidential information may be disclosed to the Parties' outside attorneys and their staff with responsibility for the preparation and conduct of this litigation.

7.    If a party objects to the designation or treatment of a document or information as confidential, that party may apply by motion to the court for a ruling that the document or information shall not be so treated, giving notice to the party or non-party producing the document or information. Until the court enters an order changing the designation, the document or information shall be treated as confidential information.

8.    Nothing in this order shall prevent any party or non-party from seeking modification of this order or from objecting to discovery or admissibility of evidence which the party or non-party believes to be otherwise improper. No provision of this Order shall be deemed to require any person or entity not a party to this action to respond to any discovery request, except as may otherwise be required by law.

10.    Nothing in this Order shall prevent or prohibit any party from seeking such additional or further protection as it deems necessary to protect documents or information subject to discovery in this action.

RA019473

RJN0923

11.    Any pleading or paper filed with the court in this action disclosing

confidential information subject to this Stipulation shall be filed under seal.

12.    This Order is subject to revocation or modification by Order of the Court

upon written stipulation of the parties, or upon a showing of good cause by motion and

reasonable notice, including opportunity for hearing and presentation of evidence.

IT IS SO STIPULATED, AND IT IS FURTHER STIPULATED THAT THIS

PROTECTIVE ORDER BE ENTERED AS AN ORDER OF THE COURT.


DATED: _____

HUTCHISON & STEFFEN

By:_____
     Thomas L. Steffen, Esq.
     Mark A. Hutchison, Esq.
     8831 W. Sahara Ave.
     Las Vegas, NV 89117


Thomas K. Bourke, Esq.
601 W. Fifth Street, 8th Floor
Los Angeles, CA 90071


RIORDAN & McKINZIE
Donald Kula, Esq.
300 South Grand Avenue, 29th Floor
Los Angeles, California  90071-3109


DATED:_____

CALIFORNIA ATTORNEY
GENERAL'S OFFICE
     FELIX LEATHERWOOD, ESQ.
     GEORGE TAKENOUCHI, ESQ.
     THOMAS HELLER, ESQ.

BY:    .

RA019474

RJN0924

JUL-08-99 THU 05:03 PM    HUTCHISON&STEFFEN         FAX:7023852086          PAGE 9
Jul-08-99  15:03    From-MCDONALD CAR'  WILSON MCCUNE LLP    7023220005        T-111  P.08/10  F-016

MCDONALD, CARANO, WILSON, McCUNE,
BERGIN, FRANKOVICH & HICKS


By_____

THOMAS R. C. WILSON
MATTHEW C. ADDISON
BRYAN R. CLARK
241 Ridge St., Fourth Floor
P. O. Box 2670
Reno, Nevada 89505
Attorneys for Defendant

RA019475

RJN0925

## PROTECTIVE ORDER

Based on Stipulation by the parties and pursuant to NRCP 26(c),

IT IS HEREBY ORDERED that a Protective Order is hereby entered in

accordance with the terms of the Parties' Stipulation.

DATED: This _____ day of _____, 1999.

DISTRICT JUDGE

DRAFT

RA019476

RJN0926

## CERTIFICATE OF MAILING

I hereby certify that I am an employee of McDonald Carano Wilson McCune Bergin Frankovich & Hicks LLP., and that I served a true and correct copy of the foregoing STIPULATION AND PROTECTIVE ORDER on this _____ day of July, 1999, by depositing same in the United States Mail, postage prepaid thereon to the numbers noted below, upon the following:

Thomas L. Steffen, Esq.
Mark A. Hutchison, Esq.
Hutchison & Steffen
8831 W. Sahara Ave.
Las Vegas, NV 89117

Thomas K. Bourke, Esq.
601 W. Fifth Street, 8th Floor
Los Angeles, CA 90071

Donald Kula, Esq.
Riordan & McKinzie
300 South Grand Avenue, 29th Floor
Los Angeles, California  90071-3109

Felix Leatherwood, Esq.
Deputy Attorney General
Attorney General's Office
300 South Spring Street
Los Angeles, CA 90013

_____
An Employee of McDonald Carano Wilson
McCune Bergin Frankovich & Hicks LLP

34960

RA019477

RJN0927

Exhibit 5

RA019478

RJN0928

1  Thomas L. Steffen
   Mark A. Hutchison
2  John Steffen
   HUTCHISON & STEFFEN
3  Lakes Business Park
   8831 West Sahara Avenue
4  Las Vegas, NV 89117
   (702) 385-2500
5
   Thomas K. Bourke
6  One Bunker Hill, 8th Floor
   Los Angeles, CA 90071-1092
7  (213) 623-1092

8  Attorneys for Plaintiff Gil Hyatt

9                    **DISTRICT COURT**

10             **CLARK COUNTY, NEVADA**

11                                    )  Case No. A382999
                                      )  Dept No. XVIII
12  GILBERT P. HYATT,                 )
                                      )
13          Plaintiff,                )  **PLAINTIFF GIL HYATT'S**
                                      )  **OPPOSITION TO THE FTB'S**
14  vs.                               )  **MOTION TO COMPEL**
                                      )  **DISCOVERY RESPONSES**
15  FRANCHISE TAX BOARD OF THE STATE  )
    OF CALIFORNIA, and DOES 1-100,    )  **Date: November 9, 1999**
16  inclusive,                        )  **Time: 10:00 a.m.**
                                      )  **Court: Discovery Commissioner**
17          Defendants.               )
                                      )  Under Submission
18                                    )
                                      )  FILED UNDER SEAL BY ORDER OF
19  _____  )  THE DISCOVERY COMMISSIONER
                                      )  DATED FEBRUARY 22, 1999
20
21
22
23
24
25
26
27
28

10-28-99 plead.wpd

RA019479

RJN0929

**I.      Issues presented.**

The FTB's motion is limited to two issues (1) production of Hyatt's confidential, non-privileged material under a protective order and (2) production of privilege logs.

**A.  Protective order.**

Hyatt proposes a protective order that:

- is based on Nevada law;

- uses a form common to Nevada cases and approved by Nevada courts;

- provides a neutral procedure as to whether the FTB may use the confidential materials in the California Tax case, including at the protest level;

- allows the parties to use confidential information to defend this case so long as it is *not* used or disclosed outside this litigation; and

- conforms to this Court's wishes.

In contrast, the FTB seeks a protective order based on and governed by *California* rules and regulations and the FTB's own policies and procedures that allow it to disclose information to those it deems have a "need to know," policies and procedures it continues to violate.

Which form of the protective order should the Court choose?

**B.      Privilege log.**

*Hyatt has produced a privilege log* describing the privileged responsive documents in the possession of his law firm, Riordan & McKinzie, and his tax lawyer, Eugene Cowan.  These documents relate to the most relevant documents the FTB seeks — those pertinent to the audits and generated, received, or in possession of Hyatt's tax attorney during the audits.  Logs from Hyatt's accountant, Mike Kern, and from Hyatt are forthcoming and will be similar to the Cowan log.  As to the other document requests cited in the FTB's moving papers, Hyatt is <u>not</u> withholding documents on a ground of privilege.  Rather, because of the overly broad, vague, and ambiguous language in these document requests, Hyatt included, as a precaution, an objection based on privilege or stated that "non-privileged" documents would be produced.

The FTB's motion does not address, and therefore this opposition need not address, Hyatt's substantive objections to the document requests identified in the motion.  The FTB

1

RA019480

RJN0930

**B.**     **There has been no effective protection under California law.**

California does provide for criminal penalties for FTB violations of confidentiality, but these provisions are toothless since the chief law enforcement officer of California — the Attorney General — is also in this case the FTB's counsel. In addition the Attorney General's office has itself violated these criminal "protections" of confidentiality by revealing confidential information from Hyatt's audit file. It is not realistic to expect the Attorney General's office to police its own behavior. In addition, this Court has no jurisdiction to impose criminal sanctions under California law.

**C.**     **A neutral provision regarding use of "confidential" materials in other cases and proceedings is appropriate in this case.**

Hyatt's protective order addresses the possibility that the parties may want to use "confidential" information designated by the opposing side in other matters such as the California tax case. Hyatt's protective order, consistent with this Court's suggestion, requires that the party seeking to use confidential information in other proceedings use whatever means are available in such other proceedings to obtain the materials. This Nevada Court is therefore not put in the position of determining the appropriateness or inappropriateness, or whether to limit or expand, the use of "confidential" material in other proceedings over which this Court does not have jurisdiction.

This is the main issue in dispute concerning the protective order. The FTB insists that "confidential" materials gathered in this Nevada litigation also be deemed a part of the California tax case. For this Nevada court to make such a ruling (a) infringes upon and interferes with the California tax case and (b) may give the FTB rights it may not otherwise have under California law. Under California law and the FTB rules, regulations, and its own policies, the FTB cannot obtain in the California tax case many of the "confidential" materials that will be produced in this Nevada litigation. Hyatt therefore proposes the above-described neutral provision.

10-28-99 plead.wpd

8

RA019481

RJN0931

materials outside of this litigation.

**A. Hyatt addressed the FTB's concerns regarding Hyatt's first version of the protective order.**

Hyatt modified his earlier versions of the protective order to address specific concerns expressed by the FTB. For example, the FTB objected to Hyatt's first version of the protective order on the ground that it required disclosure to the opposing party if "confidential" material was shown to a consultant. Hyatt modified this provision such that the opposing party need not be notified of "confidential" materials shown to a consultant, so long as the consultant signs an agreement to be bound by the protective order.[23] This is a standard provision and a regular practice in Nevada litigation.[24]

Also, Hyatt's first version of the protective order included a provision designating documents for "attorneys eyes only." Based on this Court's suggestions during a September 24, 1999 telephone conference, Hyatt understands that the Court requires a separate motion for particular documents for which elevated protection is sought. Hyatt therefore has modified his protective order to incorporate this suggestion.[25]

The FTB also claims that Hyatt's protective order is burdensome because so many documents have previously been marked "confidential." The FTB's motion papers also do not reference that Hyatt has also addressed this concern and offered in his protective order to reconsider, and withdraw when appropriate, the "confidential" designation on documents to which the FTB objects.[26] Nevertheless, it should be recognized that this case involves a breach of privacy tort where the FTB is continuing to carry out its threat to breach Hyatt's privacy even to this day.

---

[23]Hyatt's Protective Order, ¶ 2 A(ii), attached hereto as Exhibit 1.

[24]Declaration of Mark Hutchison, ¶ 2.

[25]Hyatt's Proposed Protective Order, ¶ 19, attached hereto as Exhibit 1.

[26]Hyatt's Protective Order, ¶ 5, attached hereto as Exhibit 1.

11

10-28-99 plead.wpd

RA019482

RJN0932

Exhibit 6

RA019483



RECEIVED

FILED   NOV 5 1999

Nov 5   11 39 AM   ARBITRATION/
DISCOVERY COMMISSIONER

CLERK

1   Thomas L. Steffen
    Mark A. Hutchison
2   John Steffen
    HUTCHISON & STEFFEN
3   Lakes Business Park
    8831 West Sahara Avenue
4   Las Vegas, NV 89117
    (702) 385-2500
5
    Thomas K. Bourke
6   One Bunker Hill, 8th Floor
    Los Angeles, CA 90071-1092
7   (213) 623-1092

8   Attorneys for Plaintiff Gil Hyatt

9                       DISTRICT COURT

10                 CLARK COUNTY, NEVADA

11                              )   Case No. A382999
                                )   Dept No. XVIII
12   GILBERT P. HYATT,          )
                                )
13           Plaintiff,         )   SECOND ERRATA
                                )   to Plaintiff Gil Hyatt's Opposition to
14   vs.                        )   the FTB's Motion to Compel
                                )   Discovery Responses
15   FRANCHISE TAX BOARD OF THE STATE )
     OF CALIFORNIA, and DOES 1-100, )
16   inclusive,                 )   Date: November 9, 1999
                                )   Time: 10:00 a.m.
17           Defendants.        )   Court: Discovery Commissioner
                                )
18                              )
                                )
19   _____)   FILED UNDER SEAL BY ORDER
                                )   OF THE DISCOVERY
20                                  COMMISSIONER DATED
                                    FEBRUARY 22, 1999
21

22

23       Plaintiff Gil Hyatt submits this Second Errata to his Opposition to the FTB's Motion to

24   Compel Discovery Responses, which was filed on October 28, 1999, to include the following:

25       1.      Exhibit I attached hereto replaces Exhibit I attached to Hyatt's opposition.

26   Exhibit 1 attached to Hyatt's Opposition was referenced as the third and final version of a

27   Protective Order. Unfortunately, due to an inadvertent error, this Exhibit 1 was Hyatt's initial

28   draft of a Protective Order -- not the final version Hyatt now asks the Court to approve and enter

     in this case. Hyatt's final version of the Protective Order was attached to his Opposition as part

HUTCHISON
STEFFEN
...USINESS PARK
11 W. SAHARA AVENUE
s Vegas, NV 89117
(702) 385-2500
AX (702) 385-2086

RA019484

RJN0934

1   of Exhibit 10, which is a correspondence to the FTB counsel including a copy of Hyatt's final

2   version of the Protective Order. (An additional copy of Hyatt's final version of the Protective

3   Order is attached hereto as Exhibit 1 for the Court's convenience.) As Exhibit 10 to Hyatt's

4   Opposition establishes, the FTB was aware of and had a copy of Hyatt's final Protective Order -

5   - the version Hyatt asks this Court to enter -- well in advance of the filing of this motion. It is

6   not clear therefore why the FTB's reply papers contain an extensive discussion regarding the

7   alleged deficiencies in Hyatt first and now superseded version of the Protective Order. (*See e.g.*,

8   Reply Papers, pp. 12-13.) Hyatt's final version of the Protective Order contains none of the

9   deficiencies asserted by the FTB in its Reply Papers.

10       DATED this **5**th day of November, 1999.

11                             HUTCHISON & STEFFEN, LTD.

12

13

14                             Thomas L. Steffen

                              Mark A. Hutchison

15                             8831 West Sahara Avenue

                            Las Vegas, Nevada 89101

16                             Thomas K. Bourke

17                             One Bunker Hill, 8th Floor

                            Los Angeles, CA 90071-1092

18                             (213) 623-1092

                            Attorneys for Plaintiff

19

20

21

22

23

24

25

26

27

28

CHISON
EFFEN
BUSINESS PARK
31 W. SAHARA AVENUE
S VEGAS, NV 89117
(702) 385-2500
FAX (702) 385-2086

RA019485

RJN0935

DRAFT

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| GILBERT P. HYATT, | ) CASE NO. A382999 |
| | ) DEPT. NO. XVIII |
| | ) DCKT. NO. F |
| Plaintiff, | ) |
| | ) |
| vs. | ) **PROTECTIVE ORDER** |
| | ) |
| FRANCHISE TAX BOARD OF THE STATE | ) **(Filed Under Seal)** |
| OF CALIFORNIA, and DOES 1-100, | ) |
| inclusive, | ) |
| | ) **Date: N/A** |
| Defendants. | ) |
| | ) **Time: N/A** |
| | ) |
| | ) |
| | ) |

UPON STIPULATION OF THE PARTIES, AND THE COURT HAVING FOUND GOOD CAUSE, IT IS HEREBY ORDERED that this Protective Order be entered in connection with discovery conducted in the above-entitled matter (the "Action").

1.  Definitions

    A.  "FTB" shall mean defendant Franchise Tax Board of the State of California, and specifically its employees, officers, or board members to whom it is necessary to

MHODMA:LADOCS:324612;3

RA019486

RJN0936

1    show "Confidential Information," subject to further limitations below, in order to assist the FTB

2    attorneys with respect to the defense of this Action.

3              B.    "Hyatt" shall mean plaintiff Gil Hyatt.

4              C.    "Party" and "Parties" shall mean one or more of the plaintiff or defendant

5    in this Action.

6              D.    "Confidential Information" shall mean and be limited to "Hyatt

7    Confidential Information" and "FTB Confidential Information" whether produced or otherwise

8    disclosed in this Action, including (a) any documents and things and copies thereof, (b) any

9    answers to interrogatories and responses to requests for admissions, and (c) any testimony given

10    in this Action by the Parties, their officers, directors, agents and/or employees, or by other

11    witnesses, whether by deposition or at trial.

12              (1)    "Hyatt Confidential Information" shall mean and be limited to:

13              i.    Hyatt's business information, professional information, investment

14                    information, personal information, and audit information, including but

15                    not limited to all of Hyatt's information in any way related to his religion,

16                    health and medical matters, tax returns, tax audits, tax protests, Nevada

17                    addresses, Nevada properties, property improvements, social security

18                    number, telephone numbers, banks, trusts, safe deposit boxes, insurance,

19                    mother's estate, technology, patents and licenses thereon, patent

20                    applications, finances, accounts, agreements, purchases, correspondence,

21                    subscriptions, writings, voting, political activities, photographs and

22                    pictures, and recreation.

23              ii.    Information related to the amounts of the Hyatt tax assessments (taxes,

24                    penalties, and interest) or related to Hyatt's other court proceedings

25                    including but not limited to 1992-1993 divorce motion case and 1992

26                    declaratory relief case.

27              iii.    Identity of HYATT's relatives, associates, friends and acquaintances and

28                    business information, professional information, investment information,

RA019487

RJN0937

1    and personal information of Hyatt's relatives, associates, friends and

2    acquaintances.

3        (2)    "FTB Confidential Information" shall mean and be limited to:

4        (None suggested by the FTB)

5

6    2.    This Protective Order shall be governed by Rule 26 of the Nevada Rules of Civil

7    Procedure and applied and interpreted pursuant to Nevada law.  Confidential Information

8    disclosed by Hyatt to the FTB is subject to all requirements of confidentiality imposed by the

9    laws of the State of Nevada.  This order is not intended to supplant, alter, modify, or reduce the

10   FTB's requirements of confidentiality under California law.  This order is intended only to assist

11   and facilitate the exchange of Confidential Information between the Parties to this Action and

12   assist and facilitate this Court in its administering of such exchanges.

13       A.    Hyatt Confidential Information may not be disclosed, revealed, or

14   disseminated by the FTB and its counsel and FTB Confidential Information may not be

15   disclosed, revealed, or disseminated by Hyatt and its counsel, except to the following individuals

16   and in the following manner:

17           (i).    To the counsel of record for the opposing Party and counsel for any

18   witnesses and their respective stenographic, clerical, and paralegal employees.  It shall be the

19   responsibility of the attorneys to ensure that their respective stenographic, clerical, and paralegal

20   employees understand and comply with this Protective Order.  Violation of the Protective Order

21   by any employee will be imputed to the attorneys.

22           (ii).    To the opposing Party.  In the case of the FTB this includes

23   employees, officers, and board members to the extent necessary to assist FTB counsel in the

24   defense of this Action.

25           (iii).    To court reporters and videographers covered by Paragraph 9

26   herein, after reading  this Protective Order and executing a copy of Exhibit A attached hereto.

27           (iv).    To experts or consultants, whose advice and consultation are being

28   or will be used by the opposing Party in this Action, provided that such experts or consultants

RA019488

RJN0938

1 read this Protective Order and execute a copy of Exhibit A attached hereto.

2               (v).     To such other persons as hereafter may be designated by written

3 stipulation of the Parties or by further order of the Court on motion by either party subject to the

4 notice provisions of Paragraph 17 below.

5

6      3.     The FTB and its attorneys shall not use Hyatt Confidential Information and Hyatt

7 and his attorneys shall not use FTB Confidential Information in any manner whatsoever except

8 solely for discovery and preparation of discovery, preparation for trial, trial, and any appeals

9 related to this Action. Furthermore, no Party or employee, officer, or board member of the FTB,

10 or any other person, firm, corporation, attorney, or other entity subject to this Protective Order

11 shall give, show, disclose, make available, or communicate Confidential Information (in any

12 form and whether or not specific identifying information has been redacted or modified) to any

13 person, firm, corporation, or other entity not expressly authorized by this Protective Order to

14 receive such Confidential Information.

15      4.     To the extent that either Party desires to use Confidential Information acquired

16 under the terms of this Protective Order in the pending tax assessment and collection case which

17 the FTB is now pursuing against Hyatt in the State of California including, but not limited to, the

18 pending protests for taxable years 1991 and 1992 ("California Tax Case"), the requesting Party

19 shall give notice to the opposing Party and specify the precise Confidential Information it desires

20 to be submitted as part of that California Tax Case. If the opposing Party objects to the use of the

21 Confidential Information in the California Tax Case, the requesting Party must seek and obtain

22 permission to use and submit the Confidential Information in the California Tax Case in

23 accordance with California law. It is understood and agreed between the Parties that, in the event

24 Hyatt does not agree to voluntarily produce the Confidential Information to the California Tax

25 Case, the FTB may seek to compel Hyatt to produce the requested Confidential Information in

26 the California Tax Case through issuance and service of an administrative subpoena as governed

27 by California law. This Protective Order in no way affects, limits, or modifies either parties'

28 respective rights in regard to seeking or opposing an administrative Subpoena under California

MHODMA.LADOCS;324612;3          - 4 -

RA019489

RJN0939

1  law.

2  Notwithstanding any other provision in this Protective Order, no FTB attorneys and/or

3  FTB staff assigned to the pending protests for 1991 and 1992 or assigned to the California Tax

4  Case shall have access to any Confidential Information, absent the FTB giving notice to Hyatt

5  pursuant to this Protective Order and specifying the precise Confidential Information the FTB

6  desires to provide to those individuals as part of that California Tax Case.

7

8  5.  Hyatt has previously produced to the FTB Confidential Information designated

9  thereon "Confidential." Any document thus far produced by Hyatt with the "Confidential"

10  designation and falling within the definition set forth in Paragraph 1D above, shall hereby

11  retroactively be subject to the terms of this Protective Order. If the FTB disputes Hyatt's

12  designation of "Confidential" for any previously submitted material, the FTB may submit a

13  written list of the bates numbers for which it disputes the designation and a brief explanation

14  setting forth its objections to the particular designations. Hyatt agrees to reconsider each

15  designation based upon the spirit and intent of this Protective Order and will give the FTB a

16  written response within 30 days after receipt of the FTB's list of objections. If this process does

17  not resolve any dispute over Hyatt's previous designations, the Parties are to proceed in

18  accordance with Paragraph 17 herein.

19  6.  All Confidential Information filed with the Court for any purpose shall be filed in

20  a sealed envelope or other container marked on the outside with the title of the action, an

21  identification of each item within, and a statement substantially as follows;

22  Confidential Information Subject to Protective Order. This item shall not be
   opened except as ordered by the Court in this action or upon written stipulation
23  executed by all the Parties and filed in Court in this action.

24  This envelope or other container shall not be opened except as ordered by the Court or upon

25  written stipulation executed by the Parties to this action or their counsel and filed in Court in this

26  action. All such documents so filed in Court shall be treated in accordance with the provisions of

27  this Protective Order relating to Confidential Information.

28

MHODMA.LADOCS:324612;3                          - 5 -

RA019490

RJN0940

7.     In the event Hyatt or the FTB wishes to use or refer to any Confidential Information in any affidavits, briefs, memoranda of law, or other papers filed in Court in this action, such affidavits, briefs, memoranda of law, or other papers so filed shall be designated as "Confidential Information - Subject to Protective Order" and shall be maintained under seal by the Court and treated by the Court in accordance with the provisions of this Protective Order relating to Confidential Information.

8.     Counsel shall, while eliciting testimony concerning Confidential Information or which might result in the disclosure of Confidential Information, exclude from the room during a deposition, hearing, trial, or other proceedings, any person who is not entitled under this Protective Order to receive Confidential Information.  Confidential Information shall not be disclosed to the witness then testifying except in strict conformity with the provisions of this Protective Order, including the requirement that the testifying witness agree to be bound by the terms of this Protective Order by executing the Agreement set forth in Exhibit A hereof.

9.     Any court reporter or transcriber who reports or transcribes testimony in this action at depositions, hearings, or other proceedings shall agree by a statement on the record, before recording or transcribing any such testimony constituting Confidential Information, that all such testimony and information revealed at the deposition, hearing, or other proceeding is and shall remain confidential and shall not be disclosed by any such reporter or transcriber except to attorneys for a Party who are authorized by this Protective Order and any other person who is authorized by this Protective Order to be present while such testimony is being given, and that copies of any transcript, reporter's notes, or any other transcription records of any such testimony shall be retained in confidence and safekeeping by such reporter or transcriber or shall be delivered to the Court in the manner specified in Paragraphs 6 and 7 herein, or to the attorneys for the Parties.

10.     The Clerk of the Court is directed to maintain under seal all documents and all

MHODMA.LADOCS;324612;3                     - 6 -

RA019491

RJN0941

1 transcripts of deposition testimony filed with this Court in this action by any Party which are in

2 whole or in part designated as Confidential Information including all pleadings, deposition

3 transcripts, exhibits, discovery responses, or memoranda purporting to reproduce or paraphrase

4 such information. The person filing such material shall advise the Clerk, as set forth in

5 paragraph 6 hereof, that all or a designated portion thereof is subject to this Protective Order and

6 is to be kept under seal. Upon the default of the filing Party to so designate, any Party may so

7 advise the Court.

8     11. No Party to this proceeding may offer or elicit any testimony, exhibits, or other

9 evidence containing or disclosing Confidential Information unless such Party first ensures that

10 adequate safeguards against unauthorized disclosure of such information have been implemented.

11 Such safeguards shall include the sealing of the courtroom where such information is proposed to

12 be disseminated, the exclusion from such proceedings of any persons not authorized access to

13 such information pursuant to the terms of this Protective Order and other measures reasonably

14 necessary in order to preclude unauthorized disclosure of such information. In the event that any

15 Confidential Information is used in any court proceeding, it shall not lose its confidential status

16 merely through such use.

17     12. Nothing in this Protective Order shall preclude any Party to the Action, its

18 attorneys, or any other person from disclosing or using, in any manner or for any purpose, any

19 information or documents not obtained in discovery from the producing Party in this action, if

20 such information was lawfully obtained, even though the same information or documents may

21 have been produced in discovery in this action and designated as Confidential Information.

22     13. Nothing in this Protective Order shall preclude any party to this action or their

23 attorneys from showing a document designated as Confidential Information to an individual who

24 either prepared, is a designated or authorized recipient of or previously lawfully reviewed the

25 document. Nothing in this Protective Order shall preclude a Party from disclosing or using, in

26 any manner or for any purpose, any information or documents from its own files which it has

27 designated as Confidential Information.

28     14. Nothing herein shall prevent disclosure beyond the terms of this Protective Order

MHODMA.LADOCS;324612;3      - 7 -

RA019492

RJN0942

1  if the disclosing Party consents in writing to such disclosure of information designated as
2  Confidential Information.

3      15.    This Protective Order involves only the relative rights and obligations of the
4  Parties as to the confidentiality of any information disclosed, or documents supplied, in this
5  action. This Protective Order does not abrogate or diminish any contractual, statutory, or other
6  legal obligation or right of any Party or person with respect to any Confidential Information.

7      16.    The provisions of this Protective Order shall not terminate at the conclusion of
8  this action and may be enforced in this action or in a separate proceeding in the discretion of the
9  Party alleging any breach of this Protective Order.

10     17.    The Parties hereto may stipulate, subject to the approval of the Court, to any
11  mutually agreeable changes to the provisions hereof. If a Party requests any modification(s) to
12  the Protective Order and the Parties are unable to reach an agreement after a meet and confer, the
13  Party requesting a modification may file a motion with the Court seeking such modification, and
14  such motion will be heard by the Court in the ordinary course of business.

15     18.    This Protective Order shall be binding upon the Parties, their employees, officers,
16  board members, agents, attorneys, and all persons encompassed by paragraph 2 whether or not
17  such persons individually have executed Exhibit A. The Court retains jurisdiction to enforce the
18  provisions of this Protective Order upon the request of any Party or sua sponte and to make such
19  arrangements, modifications, and additions to this Protective Order as the Court may from time
20  to time deem appropriate.

21     19.    If a party believes that information it intends to use in this Action or information
22  requested by the opposing party in discovery needs a higher level of protection (e.g. "Attorneys'
23  Eyes Only") than that accorded "Confidential Information" as set forth in this protective order,
24  that party must make a  motion for a protective order with the Court. Such motion must set forth
25  the basis for the additional level of protection needed as well as the limitations desired by that
26  moving party on the dissemination of the information. The party seeking the higher level of
27  protection will have the burden of establishing the need and appropriateness of the higher level of
28  protection.

MHODMA.LADOCS;324612;3                    - 8 -

RA019493

RJN0943

1

2 <u>AGREED TO BY THE PARTIES</u>

3 Gilbert P. Hyatt                          Franchise Tax Board of the State of
                                            California
4

5 By his attorneys                          By its attorneys

6

7 _____                 _____
  Thomas L. Steffen                         Felix Leatherwood
8 Mark A. Hutchison                         California Attorney General
  HUTCHISON & STEFFEN                        300 South Spring St.
9 Lakes Business Park                        Los Angeles, CA 90013
  8831 West Sahara Avenue                    (213) 897-2478
10 Las Vegas, Nevada 89117
  (702) 385-2500
11                                           _____
                                            Thomas R.C. Wilson
12 _____                 Matthew C. Addison
  Thomas K. Bourke                          McDonald Carano Wilson McCune
13 One Bunker Hill, 8th Floor                Bergin Frankovich & Hicks LLP
  Los Angeles, CA 90071-1092                241 Ridge St., 4th Floor
14 (213) 623-1092                            Reno, Nevada 89505-2670
                                            (775) 788-2000
15 SO ORDERED, this _____ day of _____, 1999.

16

17 _____

18                                           District Judge

19

20

21

22

23

24

25

26

27

28

MHODMA.LADOCS;324612;3                  - 9 -

RA019494

RJN0944

EXHIBIT A

## AGREEMENT CONCERNING MATERIAL COVERED BY A PROTECTIVE ORDER AND ORDER ENTERED IN THE DISTRICT COURT, CLARK COUNTY, NEVADA

I, the undersigned, hereby acknowledge that I have read the attached Protective Order entered in the District Court, Clark County, Nevada in Case No. A382999 and understand the terms thereof and agree to be bound by all such terms. Without limiting the generality of the foregoing, I agree not to disclose to any person or entity not authorized to receive such "Confidential Information," pursuant to the terms of said Protective Order, any document or any information designated as "Confidential Information" or any copies of extracts or information derived therefrom, which have been disclosed to me. I further agree to use any information disclosed to me in connection with the above-mentioned case solely for the purpose of this case and for no other purposes.

The undersigned hereby irrevocably submits his/her person to the jurisdiction of the District Court, Clark County, Nevada for the purpose of enforcing said Protective Order:

Date: _____

_____
Signature

Type or print name:

MHODMA:LADOCS;324612;3

- 10 -

1  ROC
   Thomas L. Steffen (1300)
2  Mark A. Hutchison (4639)
   HUTCHISON & STEFFEN
3  Lakes Business Park
   8831 West Sahara Avenue
4  Las Vegas, Nevada 89117
   (702) 385-2500
5
   Attorneys for Plaintiff
6
                        **DISTRICT COURT**
7
                   **CLARK COUNTY, NEVADA**
8

9  GILBERT P. HYATT,                )   Case No. A382999
                                    )   Dept No. XVIII
10         Plaintiff,               )   Dckt No. F
                                    )
11 vs.                              )
                                    )
12 FRANCHISE TAX BOARD OF THE STATE )
   OF CALIFORNIA; and DOES 1-100,   )
13 inclusive,                       )
                                    )
14         Defendant.               )
   _____ )

15                  <u>**RECEIPT OF COPY**</u>

16      RECEIPT OF COPY of **SECOND ERRATA TO PLAINTIFF GIL HYATT'S**

17 **OPPOSITION TO THE FTB'S MOTION TO COMPEL DISCOVERY RESPONSES**

18 from HUTCHISON & STEFFEN is hereby acknowledged this 5  day of November, 1999.

19                          MCDONALD, CARANO, WILSON, MCCUNE,
20                          BERGIN, FRANKOVICH & HICKS

21
22                  **BRYAN R. CLARK** / TMS 1202pm
           By: _____
23              Bryan R. Clark, Esq.
                2300 West Sahara Avenue, #10, Suite 1000
24              Las Vegas, Nevada 89102

25

26

27

28

CHISON
EFFEN
LAKES BUSINESS PARK
31 W. SAHARA AVENUE
S VEGAS, NV 89117
(702) 385-2500
FAX (702) 385-2086

RA019496

RJN0946

Exhibit 7

RA019497

RJN0947

## RIORDAN & McKINZIE
A PROFESSIONAL LAW CORPORATION

ORANGE COUNTY OFFICE

695 TOWN CENTER DRIVE
SUITE 1500
COSTA MESA, CALIFORNIA 92626
(714) 433-2900
FAX (714) 549-3244

DONALD J. KULA
DIRECT DIAL
(213) 229-8547

CALIFORNIA PLAZA
300 SOUTH GRAND AVENUE
TWENTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90071
TELEPHONE (213) 629-4824
FAX (213) 229-8550

WESTLAKE OFFICE

5743 CORSA AVENUE, SUITE 116
WESTLAKE VILLAGE, CA 91362
(818) 706-1800 (805) 496-4688
FAX (818) 706-2956

RICHARD J. RIORDAN
(RETIRED)

FILE NO.

May 17, 1999

<u>VIA FACSIMILE AND U.S. MAIL</u>

Thomas R.C. Wilson, Esq.
Matthew C. Addison, Esq.
McDonald Carano Wilson McCune
Bergin Frankovich & Hicks
241 Ridge Street
Reno, Nevada 89501

Felix E. Leatherwood, Esq.
Deputy Attorney General
Ronald Reagan Building
300 South Spring Street, Suite 5212
Los Angeles, CA 90013

Re:     <u>Hyatt v. Franchise Tax Board of the State of California</u>
        Case No. A382999

Gentlemen:

Based upon certain of the objections set forth in Plaintiff's discovery responses served via mail earlier today, enclosed is a proposed Protective Order. Please let us know if the FTB is agreeable to entering into this Protective Order.

Very truly yours,

Donald J. Kula
of RIORDAN & McKINZIE

DJK:jb
MHODMA.LADOCS;292160;2
cc:  Mark Hutchison, Esq. (via facsimile)
     Thomas K. Bourke, Esq. (via facsimile)

RA019498

RJN0948

1
2  Thomas L. Steffen
   Mark A. Hutchison
3  John Steffen
   HUTCHISON & STEFFEN
4  Lakes Business Park
   8831 West Sahara Avenue
5  Las Vegas, NV 89117
   (702) 385-2500
6
   Thomas K. Bourke
7  One Bunker Hill, 8th Floor
   Los Angeles, CA 90071-1092
8  (213) 623-1092

9  Attorneys for Plaintiff

10

11                          **DISTRICT COURT**

12                     **CLARK COUNTY, NEVADA**

13                                    ) CASE NO. A382999
                                      ) DEPT. NO. XVIII
14  GILBERT P. HYATT,                 ) DCKT. NO. F
                                      )
15          Plaintiff,                )
                                      )
16  vs.                               ) **PROTECTIVE ORDER**
                                      )
17  FRANCHISE TAX BOARD OF THE STATE  )
    OF CALIFORNIA, and DOES 1-100,    )   **(Filed Under Seal)**
18  inclusive,                        )
                                      )
19          Defendants.               )
                                      )
20                                    )
                                      )
21  _____  )

22

23                      <u>PROTECTIVE ORDER</u>

24          It appearing that certain information, documents and things of Gilbert P. Hyatt

25  (hereinafter "HYATT") subject to discovery in this action may be claimed to be or contain

26  private personal information, a trade secret, confidential research information, development

27  information, commercial information or business information, the public disclosure of which

28  may jeopardize HYATT's right to maintain the privacy and confidentiality of such information,

MHODMA.LADOCS:296904:2

RA019499

RJN0949

1   and in the interest of expediting discovery and by averting the delay occasioned by possible

2   disputes regarding claims of confidentiality, the Parties to this action request that the following

3   ORDER be entered;

4

5       THE COURT HAVING FOUND GOOD CAUSE HEREBY DIRECTS that this

6   Protective Order be entered in connection with discovery provided by HYATT in this action.

7       1.      Definitions

8           A.      "FTB" shall mean defendant Franchise Tax Board of the State of

9   California, but limited to the employees, officers, or board members to whom it is necessary to

10  show "Confidential Information," subject to further limitations below, in order to assist the FTB

11  attorneys with respect to the defense of this "Action."

12          B.      "Party" and "Parties" shall mean one or more of the plaintiff or defendant

13  in this "Action."

14          C.      "Confidential Information" shall mean all information designated as

15  "Confidential" or "Confidential - Attorneys' Eyes Only," as provided in this Protective Order,

16  produced or otherwise disclosed by HYATT in this action, including (a) any documents and

17  things and copies thereof, (b) any answers to interrogatories and responses to requests for

18  admissions, and (c) any testimony given in this action by the Parties, their officers, directors,

19  agents and/or employees, or by other witnesses, whether by deposition or at trial.

20          D.      This "Action" shall mean, and is limited to, this case entitled <u>Hyatt v. The</u>

21  <u>Franchise Tax Board of California</u>, Nevada District Court Case No. A382999.

22

23      2.      Confidential Information in documentary or written form shall be designated as

24  confidential by marking each page of the document or writing containing Confidential

25  Information as follows:

26

27

28

MHODMA:LADOCS;296904;2                     - 2 -

RA019500

RJN0950

# IN THE SUPREME COURT OF THE STATE OF NEVADA

FRANCHISE TAX BOARD OF THE STATE
OF CALIFORNIA,

    Appellant,

v.

GILBERT P. HYATT,

    Respondent

Supreme Court Case No. 53264

## APPEAL FROM JUDGMENT – EIGHTH JUDICIAL DISTRICT COURT
## STATE OF NEVADA, CLARK COUNTY
## HONORABLE JESSIE WALSH, DISTRICT JUDGE

## RESPONDENT'S APPENDIX

### VOLUME 79

Mark A. Hutchison, Nevada Bar No. 4639
Michael K. Wall, Nevada Bar No. 2098
Hutchison & Steffen
10080 Alta Drive, Suite 200
Las Vegas, NV 89145
Telephone: (702) 385-2500
Facsimile: (702) 385-2086

Peter C. Bernhard, Nevada Bar No. 734
Kaempfer Crowell Renshaw
Gronauer & Fiorentino
8345 West Sunset Rd.
Suite 250
Las Vegas, Nevada 89113
Telephone: (702) 792-7000
Facsimile: (702) 796-7181

Donald J. Kula, California Bar No. 144342
Perkins Coie
1888 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 788-9900
Facsimile: (310) 788-3399

*Attorneys for Respondent*

KAEMPFER CROWELL RENSHAW
GRONAUER & FIORENTINO
8345 West Sunset Rd., Suite 250
Las Vegas NV 89113
Telephone: (702) 792-7000
Facsimile: (702) 796-7181

– 1 –

RJN0951

"CONFIDENTIAL"

or

"CONFIDENTIAL - ATTORNEYS' EYES ONLY"

The designation "Confidential" or "Confidential - Attorneys Eyes Only" shall be plainly legible on each page of each document. In lieu of marking the original of the documents, HYATT may mark the copies that are produced or exchanged. All documents or things or any portion thereof produced by HYATT for inspection (but not yet delivered to or copied for the FTB) shall be deemed "Confidential Information," as defined in Paragraph C herein, until delivered to the FTB, whether marked "Confidential" or "Confidential - Attorneys' Eyes Only" or not, and shall be disclosed to the FTB only under the terms of Paragraph 3 herein.

Confidential Information in other than a documentary or written form shall be identified as Confidential Information on the stenographic record contemporaneously with testimony revealing Confidential Information or otherwise suitably identified as Confidential Information at such time as Confidential Information is communicated to the FTB.

3.      Confidential Information disclosed by HYATT to the FTB is, and shall remain, subject to all requirements of confidentiality imposed by the laws of the State of Nevada and, where applicable to the FTB, the laws of the State of California. There shall be two categories of Confidential Information which shall be distinguishable by designating Confidential Information in the first category as "Confidential" and by designating Confidential Information in the second category as "Confidential - Attorneys' Eyes Only."

A.      Once produced by HYATT, first category Confidential Information (marked "Confidential") may not be disclosed, revealed, or disseminated by the FTB and its counsel, except to the following individuals and in the following manner:

(i).      To attorneys who are members of McDonald Carano Wilson McCune Bergin Frankovich & Hicks and attorneys who are members of the California Attorney General's office,  and their respective stenographic, clerical and paralegal employees. It shall be

MHODMA.LADOCS:296904:2

- 3 -

RA019501

RJN0952

1   the responsibility of the attorneys to ensure that their respective stenographic, clerical and
2   paralegal employees understand and comply with this Protective Order. Violation of the
3   Protective Order by any employee will be imputed to the attorneys.
4               (ii).    To FTB employees, officers, and board members to the extent
5   necessary to assist counsel in the defense of this Action, but only after compliance with
6   Paragraph 4 herein and receipt of approval from either Hyatt or the Court.
7               (iii).    To court reporters covered by Paragraph 11 herein, after reading
8   this Protective Order and executing a copy of Exhibit A hereto.
9               (iv).    To experts or consultants, whose advice and consultation are being
10  or will be used by the FTB in connection with the conduct of this Action, but only after
11  compliance with Paragraph 4 herein and receipt of approval from either Hyatt or the Court. Such
12  experts and consultants in any event shall not be current employees of the FTB or and shall not
13  have been employed by a Party within the six (6) months prior to the disclosure of Confidential
14  Information.
15              (v).    To such other persons as hereafter may be designated by written
16  stipulation of the Parties or by further order of the Court on motion by the FTB subject to the
17  notice provisions of Paragraph 24 below.
18      B.      Once produced by HYATT, second category Confidential Information
19  (marked "Confidential - Attorneys' Eyes Only") may not be disclosed, revealed, or disseminated
20  to anyone except: (i) the FTB's attorneys of record in this litigation, consisting of those members
21  of the law firm of McDonald Carano Wilson McCune Bergin Frankovich & Hicks and those
22  members of the California Attorney General's office who have appeared in this action on behalf
23  of the FTB along with their respective stenographic, clerical and paralegal employees; and (ii)
24  those non-party experts and consultants pursuant to the procedure set forth in Paragraphs 3A(iv)
25  and 4 herein.
26
27      4.      The following procedure will be used in regard to any requests by the FTB to the
28  submit "Confidential Material" to third persons described in Paragraphs 3A(ii) and 3A(iv)

MHODMA.LADOCS:296904;2                          - 4 -

1   herein.

2         A.     If the FTB desires to disclose Confidential Information to FTB employees,

3   officers, or board members pursuant Paragraph 3A(ii) herein or experts or consultants pursuant to

4   Paragraph 3A(iv) herein, it shall first obtain a signed undertaking by each such individual who

5   may require access to such materials, in the form of Exhibit A attached hereto, and serve a copy

6   of the signed Exhibit A on HYATT, said service to be made by facsimile and by Federal Express

7   or equivalent next-day delivery service.  Such Confidential Material will not be disclosed to any

8   such individual unless and until, as set forth in Paragraph 4B herein, HYATT gives written

9   permission that such Confidential Material may be disclosed to such individual or the Court

10   orders that such Confidential Material be disclosed.   Along with the signed undertaking,

11   HYATT shall also be provided with information regarding the identity of the individual,

12   including his/her name, address and job title, the name and address of his/her employer and, for

13   experts or consultants, a current curriculum vitae including a list of all companies for which such

14   person has performed services during the last five (5) years.

15         B.     Once a request is made to HYATT by the FTB for disclosure of materials

16   to a third party pursuant to Paragraph 4A hereof, if HYATT has not given his approval for such

17   disclosure within ten (10) business days,  the FTB shall notify Hyatt in writing and by facsimile

18   transmission (with original sent by first-class mail), as to the reason(s) such disclosure is

19   necessary and its intent, if any, to file a motion seeking a court order allowing the disclosure.  If

20   the dispute is then not resolved on an informal basis, the FTB may submit, to be heard in the

21   ordinary course, a motion to the Court for a ruling as whether the subject Confidential Material

22   may disclosed to the third party.

23

24      5.     The FTB and its attorneys shall not use Confidential Information in any manner

25   whatsoever except solely for discovery preparation, preparation for trial, trial and any appeal of

26   this action.  Furthermore, no FTB employee, officer, board member, attorney, or any other

27   person, firm, corporation, attorney or other entity subject to this Protective Order shall give,

28   show, disclose, make available or communicate Confidential Information to any person, firm,

RA019503

RJN0954

1  corporation or other entity not expressly authorized by this Protective Order to receive such

2  Confidential Information.

3

4       6.     HYATT has previously produced to the FTB first category Confidential

5  Information designated thereon "Confidential." Any document thus far produced by HYATT

6  with the "Confidential" designation shall hereby retroactively be subject to the terms of this

7  Protective Order. HYATT may, from time to time, continue to produce first category

8  Confidential Information in the future.

9

10       7.     All Confidential Information filed with the Court for any purpose shall be filed in

11  a sealed envelope or other container marked on the outside with the title of the action, an

12  identification of each item within and a statement substantially as follows:

13       Confidential Information Subject to Protective Order. This item shall not be
     opened except as ordered by the Court in this action or upon written stipulation

14       executed by all the Parties and filed in Court in this action.

15  This envelope shall not be opened except as ordered by the Court or upon written stipulation

16  executed by all the Parties to this action or their counsel and filed in Court in this action. All

17  such documents so filed in Court shall be treated in accordance with the provisions of this

18  Protective Order relating to Confidential Information.

19

20       8.     In the event HYATT or the FTB wishes to use any Confidential Information in

21  any affidavits, briefs, memoranda of law or other papers filed in Court in this action, such

22  affidavits, briefs, memoranda of law or other papers so filed shall be designated as "Confidential

23  Information - Subject to Protective Order" and shall be maintained under seal by the Court and

24  treated by the Court in accordance with the provisions of this Protective Order relating to

25  Confidential Information.

26

27       9.     With respect to the testimony of any person or witness in this action, elicited

28  during depositions, hearings and other proceedings, whenever any question or line of questioning

MHODMA:LADOCS;296904;2

- 6 -

1    calls for the disclosure of information which is Confidential Information, defending counsel or

2    questioning counsel shall designate on the record prior to or after such disclosure that such

3    testimony includes "Confidential Information". In such situations, the question(s) and answer(s)

4    designated by counsel as pertaining to Confidential Information may be transcribed separately

5    from the remainder of the deposition, hearing or other proceeding and appropriately designated

6    as "CONFIDENTIAL" OR "CONFIDENTIAL - ATTORNEYS' EYES ONLY." Portions of

7    transcripts, or separate transcriptions, designated as including Confidential Information shall be

8    retained by counsel, unless filed in this Court, in which event they shall be filed in an envelope

9    under seal and the envelope shall include on its face the statement set forth in paragraph 7 of this

10    Protective Order.

11

12         10.      Counsel shall, while eliciting testimony concerning Confidential Information or

13    which might result in the disclosure of Confidential Information, exclude from the room during a

14    deposition, hearing, trial or other proceedings, any person who is not entitled under this

15    Protective Order to receive Confidential Information. Confidential Information shall not be

16    disclosed to the witness then testifying except in strict conformity with the provisions of this

17    Protective Order, including the requirement that the testifying witness agree to be bound by the

18    terms of this Protective Order by executing the Agreement set forth in Exhibit A hereof.

19

20         11.      Any court reporter or transcriber who reports or transcribes testimony in this

21    action at depositions, hearings or other proceedings shall agree by a statement on the record,

22    before recording or transcribing any such testimony constituting Confidential Information, that

23    all such testimony and information revealed at the deposition, hearing or other proceeding is and

24    shall remain confidential and shall not be disclosed by any such reporter or transcriber except to

25    attorneys for a Party who are authorized by this Protective Order and any other person who is

26    authorized by this Protective Order to be present while such testimony is being given, and that

27    copies of any transcript, reporter's notes or any other transcription records of any such testimony

28    shall be retained in confidentiality and safekeeping by such reporter or transcriber or shall be

MHODMA.LADOCS;296904;2            - 7 -

RA019505

RJN0956

1 delivered to the Court in the manner specified in Paragraphs 7 and 9 herein, or to the attorneys

2 for the Parties.

3

4      12.    The Clerk of the Court is directed to maintain under seal all documents and all

5 transcripts of deposition testimony filed with this Court in this action by any Party which are in

6 whole or in part designated as Confidential Information including all pleadings, deposition

7 transcripts, exhibits, discovery responses or memoranda purporting to reproduce or paraphrase

8 such information. The person filing such material shall advise the Clerk, as set forth in

9 paragraph 9 hereof, that all or a designated portion thereof is subject to this Protective Order and

10 is to be kept under seal. Upon the default of the filing Party to so designate, any Party may so

11 advice the Court.

12

13      13.    No Party to this proceeding may offer or elicit any testimony, exhibits or other

14 evidence containing or disclosing Confidential Information unless such Party first ensures that

15 adequate safeguards against unauthorized disclosure of such information have been implemented.

16 Such safeguards shall include the sealing of the courtroom where such information is proposed to

17 be disseminated, the exclusion from such proceedings of any persons not authorized access to

18 such information pursuant to the terms of this Protective Order and other measures reasonably

19 necessary in order to preclude unauthorized disclosure of such information. In the event that any

20 Confidential Information is used in any court proceeding, it shall not lose its Confidential status

21 merely through such use.

22

23      14.    Nothing in this Protective Order shall preclude any Party to the lawsuit, its

24 attorneys or other person from disclosing or using, in any manner or for any purpose, any

25 information or documents not obtained in discovery from the producing Party in this action, if

26 such information lawfully is obtained from another source, such as a third party having the right

27 to disclose such information, even though the same information or documents may have been

28 produced in discovery in this action and designated as Confidential Information.

MHODMA.LADOCS:296904:2        - 8 -

RA019506

RJN0957

15. Nothing in this Protective Order shall preclude any party to this action or their attorneys from showing a document designated as Confidential Information to an individual who either prepared, is a designated or authorized recipient of or previously lawfully reviewed the document. Nothing in this Protective Order shall preclude HYATT from disclosing or using, in any manner or for any purpose, any information or documents from HYATT's own files which HYATT has designated as Confidential Information.

16. Nothing herein shall prevent disclosure beyond the terms of this Protective Order if Hyatt consents in writing to such disclosure of information designated as Confidential Information.

17. The FTB shall not be responsible for any use made of information produced in this Action and not identified by HYATT as Confidential Information in accordance with the provisions of this Protective Order.

18. The FTB shall not be obligated to challenge the propriety of a designation by HYATT of Confidential Information at the same time such designation is made, and a failure to provide any such challenge shall not preclude a subsequent challenge by the FTB to such designation. The FTB may move the Court, upon notice, to remove or change the designation of Confidential Information with respect to any specified document, testimony, or other thing, or any portion thereof. The burden of proving that information has been improperly designated as Confidential Information shall be born by the FTB.

19. In the event that HYATT inadvertently fails to stamp or otherwise designate a document or other information as Confidential Information at the time of its production, HYATT shall, promptly after discovering such failure, so stamp or otherwise designate the document or other information and inform the FTB that the document or other information is Confidential Information. The FTB shall then immediately give notice to anyone to whom the

MHODMA.LADOCS;296904;2

- 9 -

RA019507

RJN0958

1  FTB disclosed such document or other information that such document or other information is

2  Confidential Material subject to the terms of this Protective Order. The FTB will then use it best

3  efforts to obtain from such person(s) their consent to be bound by the Protective and their

4  signature on a copy of Exhibit A hereto.

5

6       20.    The procedure set forth herein shall not affect the rights of the Parties to object to

7  discovery on grounds other than those related to the confidentiality of documents, nor shall it

8  relieve a Party of the necessity of proper response or objection to discovery requests, nor shall it

9  preclude Parties from seeking further relief or protective orders from the Court as may be

10  appropriate.

11

12       21.    This Protective Order involves only the relative rights and obligations of the

13  Parties as to the confidentiality of any information disclosed, or documents supplied, in this

14  action. This Protective Order does not abrogate or diminish any contractual, statutory or other

15  legal obligation or right of any Party or person with respect to any Confidential Information.

16

17       22.    In order to facilitate third party discovery, the protections afforded herein shall

18  extend to documents or other things or testimony provided by HYATT originating from persons,

19  firms, corporations or other entities not a party to this action, and which documents are

20  designated as "Confidential" or "Confidential - Attorneys' Eyes Only."

21

22       23.    Within sixty (60) days after the conclusion of this action, all documents produced

23  by HYATT designated as containing Confidential Information and any copies of such documents

24  (including any copies created by optical scanning) shall be delivered to HYATT. All recordings

25  of Confidential Information on disk, tape or other recording media shall be destroyed. The

26  provisions of this Protective Order shall not terminate at the conclusion of this action.

27

28       24.    The Parties hereto may stipulate, subject to the approval of the Court, to any

RA019508

RJN0959

1  mutually agreeable changes to the provisions hereof. If a Party requests any modification(s) to

2  the Protective Order and the Parties are unable to reach an agreement after a meet and confer, the

3  Party requesting a modification may file a motion with the Court seeking such modification, and

4  such motion will be heard by the Court in the ordinary course.

5

6       25.    This Protective Order shall be binding upon the FTB, its employees, officers,

7  board members, agents, attorneys and all persons encompassed by paragraph 3 whether or not

8  such persons individually have executed Exhibit A. The Court retains jurisdiction to enforce the

9  provisions of this Protective Order upon the request of any Party or *sua sponte* and to make such

10  arrangements, modifications and additions to this Protective Order as the Court may from time to

11  time deem appropriate.

12

13  <u>AGREED TO BY THE PARTIES</u>

14  Gilbert P. Hyatt                           Franchise Tax Board of the State of
                                                      California

15

    By his attorneys                              By its attorneys

16

17

18  Thomas L. Steffen                      Felix Leatherwood
    Mark A. Hutchison                  California Attorney General

19  HUTCHISON & STEFFEN            300 South Spring St.
    Lakes Business Park               Los Angeles, CA 90013

20  8831 West Sahara Avenue         (213) 897-2478
    Las Vegas, Nevada 89117

21  (702) 385-2500                       Thomas R.C. Wilson
                                        Matthew C. Addison

22  Thomas K. Bourke                  McDonald Carano Wilson McCune
    One Bunker Hill, 8th Floor          Bergin Frankovich & Hicks LLP

23  Los Angeles, CA 90071-1092      241 Ridge St., 4th Floor
    (213) 623-1092                     Reno, Nevada 89505-2670

24                                     (775) 788-2000

25  SO ORDERED, this _____ day of _____, 1999.

26

27                                     District Judge

28

MHODMA.LADOCS;296904;2           - 11 -

RA019509

RJN0960

EXHIBIT A

## AGREEMENT CONCERNING MATERIAL COVERED BY A PROTECTIVE ORDER AND ORDER ENTERED IN THE DISTRICT COURT, CLARK COUNTY, NEVADA

I, the undersigned, hereby acknowledge that I have read the attached Protective Order entered in the District Court, Clark County, Nevada in Case No. A382999 and understand the terms thereof and agree to be bound by all such terms. Without limiting the generality of the foregoing, I agree not to disclose to any person or entity not authorized to receive such "Confidential Information," pursuant to the terms of said Protective Order, any document or any information designated as "Confidential Information" or any copies of extracts or information derived therefrom, which has been disclosed to me. I further agree to use any information disclosed to me in connection with the above-mentioned case solely for the purpose of this case and for no other purposes.

The undersigned hereby irrevocably submits his/her person to the jurisdiction of the District Court, Clark County, Nevada for the purpose of enforcing said Protective Order.

Date: _____     _____

                                    Signature

                                    Type or print name:

MHODMA.LADOCS;296904;2                    - 12 -

RA019510

RJN0961

## McDonald Carano Wilson McCune
### Bergin Frankovich & Hicks LLP
#### Attorneys at Law

### TELECOMMUNICATIONS COVER PAGE

DATE: July 8, 1999

PLEASE DELIVER THE FOLLOWING PAGES TO:

NAME:      Mark Hutchison, Esq.

NUMBER:    (702) 385-2086

FROM:      Matthew C. Addison

NUMBER OF PAGES (INCLUDING COVER PAGE):

IF YOU DO NOT RECEIVE ALL PAGES AS INDICATED, PLEASE CALL OUR OFFICE
AS SOON AS POSSIBLE AT: (775) 788-2000.

The information contained in this transmission is attorney privileged and confidential. It is intended only for
the use of the individual or entity named above. If the reader of this message is not the intended recipient,
you are hereby notified that any dissemination, distribution or copy of this communication is strictly
prohibited. If you have received this communication in error, please notify us immediately by telephone
collect and return the original message to us at the above address via the U.S. Postal Service. We will
reimburse you for postage. Thank you.

MESSAGE:

| | | |
|---|---|---|
| 241 RIDGE STREET, 4TH FLOOR | OF COUNSEL | 2200 WEST SAHARA AVENUE |
| P.O. BOX 2670 | DONALD L. CARANO | NO. 10, SUITE 1000 |
| RENO, NEVADA 89505 | WILLIAM S. BOYD | LAS VEGAS, NEVADA 89102 |
| (775) 788-2000 | CHARLES E. HUFF | (702) 873-4100 |
| FAX (775) 788-2020 | HON JAMES GUINAN, RET. | FAX (702) 873-9966 |

RA019511

RJN0962

JUL-08-99 THU 05:01 PM   HUTCHISON&STEFFEN      FAX:7023852086         PAGE  3
Jul-08-99 15:02   From-MCDONALD CAF   WILSON MCCUNE LLP   7023228855

## McDonald Carano Wilson McCune
### Bergin Frankovich & Hicks LLP

James W. Bradshaw          ATTORNEYS AT LAW          Reply to: Reno

July 8, 1999
### VIA FACSIMILE & U.S. MAIL

Mark A. Hutchison, Esq.
Hutchison & Steffen
8831 West Sahara
Las Vegas, NV 89117

     Re:    **Hyatt v. FTB**
         **Plaintiff's Discovery Responses Protective Order and Deposition Scheduling**

Dear Mr. Hutchison:

     We have received and reviewed Mr. Kula's proposed Protective Order. The proposed protective order is not acceptable to the FTB, but I am providing a form of stipulation and order with this letter that is satisfactory. Mr. Kula's draft is unnecessarily burdensome and would interfere with government administration. I note from Mr. Hyatt's document production that a great many documents have been marked as "confidential" even though the documents are public information or are so outdated that there is no reasonable expectation of privacy or conceivable need for confidentiality. These include such matters as news articles and junk mail to Mr. Hyatt's abandoned public post office box addresses. The procedures proposed by Mr. Kula would subject the FTB's personnel to contempt sanctions for disclosure of such documents. The agency cannot agree to a protective order which would restrain its ability to perform its lawful functions. California law already provides for protection of taxpayer confidentiality and limits use of taxpayer information to tax proceedings. Our draft offers the same protection to discovery materials in this litigation.

     As you know, Mr. Hyatt's protest for 1991 and 1992 proposed assessments has not been resolved. While this process is ongoing, the FTB must be able to use information gathered to consider his tax liability. Mr. Hyatt no doubt intends to use whatever information he gathers in discovery to make his case in the California tax proceedings. In fact, he has been doing so. The court dismissed the Plaintiff's tax cause of action, but most of Hyatt's discovery concerns tax matters under the thin guise of searching for evidence of intent or malice. This is obviously intended to conduct discovery in the tax proceedings which would not be available under the administrative procedures. Although the FTB intends to avoid discovery into matters beyond the scope of the issues pled, there may be some information discovered which might bear on the issues in the administrative proceedings. Of necessity, the FTB's defense in this litigation must address Mr. Hyatt's contentions that he was a bona fide resident of Nevada from September, 1991 and that the FTB acted without justification. The FTB should be free to use evidence which either confirms or refutes these contentions in the tax case.

241 RIDGE STREET, 4TH FLOOR         OF COUNSEL         2300 WEST SAHARA AVENUE
P.O. BOX 2670                DONALD L. CARANO           NO. 10, SUITE 1000
RENO, NEVADA 89505          WILLIAM S. BOYD          LAS VEGAS, NEVADA 89102
(775) 788-2000               CHARLES E. HUFF           (702) 873-4100
FAX (775) 788-2020         HON JAMES GUINAN, RET.      FAX (702) 873-9966

RA019512

RJN0963

**McDONALD CARANO WILSON McCUNE**
**BERGIN FRANKOVICH & HICKS** LLP
ATTORNEYS AT LAW

Mark A. Hutchison, Esq.
Hutchison & Steffen
July 8, 1999
Page -2-

The Plaintiff has taken the position that he is withholding responses to the FTB's document requests and interrogatories because of the need for a protective order to preserve confidentiality. This proposed stipulation adequately addresses any legitimate concern. Please give us your response at your earliest convenience.

If you have any questions, do not hesitate to contact me.

Sincerely,

James W. Bradshaw

JWB/llp
cc:    Felix Leatherwood, Esq.
       George Takenouchi, Esq.
       Tom Heller, Esq.
       Robert Dunn, Esq.
       Thomas Wilson, Esq.
       Matthew Addison, Esq.
       James Guidici, Esq.
       Bryan Clark, Esq.

32784

RA019513

RJN0964

ATTORNEY GENERAL'S OFFICE
Felix Leatherwood, Esq.
Admitted Per SCR 42
George Takenouchi, Esq.
Admitted Per SCR 42
Thomas Heller, Esq.
Admitted Per SCR 42
300 South Spring Street
Los Angeles, CA 90013
(213) 897-2476

THOMAS R. C. WILSON, ESQ.
Nevada State Bar # 1568
MATTHEW C. ADDISON, ESQ.
Nevada State Bar # 4201
BRYAN R. CLARK, ESQ.
Nevada State Bar # 4442
McDONALD CARANO WILSON McCUNE
BERGIN FRANKOVICH & HICKS LLP
2300 West Sahara Avenue, Suite 1000
Las Vegas, Nevada 89102
(702) 873-4100
Attorneys for Defendants



### DISTRICT COURT

### CLARK COUNTY, NEVADA

\* \* \* \* \*

|  |  |  |  |
|---|---|---|---|
| GILBERT P. HYATT, | Case No. | : | A382999 |
| | Dept. No. | : | XVIII |
| Plaintiff, | Docket No. | : | F |
| vs. | | | |
| FRANCHISE TAX BOARD OF THE | **STIPULATION AND** | | |
| STATE OF CALIFORNIA, and DOES 1- | **PROTECTIVE ORDER** | | |
| 100, inclusive | | | |
| | Date of Hearing: N/A | | |
| Defendants. | Time of Hearing: N/A | | |

Pursuant to Rule 26(c) of the Nevada Rules of Civil Procedure, the Plaintiff,

Gilbert P. Hyatt ("Hyatt") and Defendant, FRANCHISE TAX BOARD OF THE STATE

OF CALIFORNIA (the "FTB") hereby stipulate and agree by and through their respective

RA019514

RJN0965

undersigned attorneys that documents and information from the parties discovery in this litigation will be treated as confidential by the Parties and their counsel as set forth below.

1.    The documents and information accumulated by the Parties in their discovery in this litigation which are not public shall be considered as confidential ("confidential matters") and disclosed only in accordance with the terms of this stipulation. The confidential information shall consist of all information, documents, testimony or materials provided by Hyatt in the residency audit and protest, and discovered in this litigation, including, without limitation, all proprietary, trade secret, tax, financial, trust, corporate, partnership, personal, business, accounting, or other private information supplied by the parties or non- parties in response to orders, subpoenas, demands or requests, formal or informal, regardless of whether said documents or information is produced by Plaintiff, Defendant, or any other person, entity or source. This Stipulation and Order shall also apply to any notes, memoranda, outline, identification or index prepared from confidential matters to the extent that confidential matters are contained in such items.

2.    The parties may only use confidential informational solely for the purposes of preparation of this case and for trial of this action, the protest hearing proceedings before the FTB for 1991 and 1992, any subsequent appeal to the California Board of Equalization,  related judicial review in the California Superior Court or related appeal, and any other government purpose  required by California law. Confidential information may be used and referred to in discovery responses, discovery proceedings, pleadings and papers, briefs, arguments, hearings, trial and may be marked as exhibits and used as evidence in this action and in the Hyatt residency proceedings.

3.    The FTB's obligation hereunder as to treatment of confidential information regarding Hyatt shall be to treat such matters consistent with Calif. Rev. & Tax Code sections 19542 and 19547 and in accordance with the FTB's "need to know" internal

RA019515

RJN0966

policy, FTB Legal Branch confidentiality policies, the FTB's Security and Disclosure Manual and directives of the Franchise Tax Board. Hyatt's obligation hereunder shall be to use information and documents designated by the FTB as confidential only for purposes of preparation for and trial of this action and in the protest hearing proceedings before the FTB for 1991 and 1992, any subsequent appeal to the California Board of Equalization, related judicial review in the California Superior Court or related appeal (the "Hyatt residency proceedings").

4.      Any party or non-party giving testimony in this action or the Hyatt residency proceedings may be examined regarding confidential matters.

5.      Confidential information may be shown to the Parties' outside consultants, investigators and experts retained for the purpose of assisting in the preparation and conduct of this action and the Hyatt residency proceedings.

6.      Confidential information may be disclosed to the Parties' outside attorneys and their staff with responsibility for the preparation and conduct of this litigation.

7.      If a party objects to the designation or treatment of a document or information as confidential, that party may apply by motion to the court for a ruling that the document or information shall not be so treated, giving notice to the party or non-party producing the document or information. Until the court enters an order changing the designation, the document or information shall be treated as confidential information.

8.      Nothing in this order shall prevent any party or non-party from seeking modification of this order or from objecting to discovery or admissibility of evidence which the party or non-party believes to be otherwise improper. No provision of this Order shall be deemed to require any person or entity not a party to this action to respond to any discovery request, except as may otherwise be required by law.

10.     Nothing in this Order shall prevent or prohibit any party from seeking such additional or further protection as it deems necessary to protect documents or information subject to discovery in this action.

RA019516

RJN0967

11. Any pleading or paper filed with the court in this action disclosing confidential information subject to this Stipulation shall be filed under seal.

12. This Order is subject to revocation or modification by Order of the Court upon written stipulation of the parties, or upon a showing of good cause by motion and reasonable notice, including opportunity for hearing and presentation of evidence.

IT IS SO STIPULATED, AND IT IS FURTHER STIPULATED THAT THIS PROTECTIVE ORDER BE ENTERED AS AN ORDER OF THE COURT.

DATED: _____

**HUTCHISON & STEFFEN**

By:_____
    Thomas L. Steffen, Esq.
    Mark A. Hutchison, Esq.
    8831 W. Sahara Ave.
    Las Vegas, NV 89117

Thomas K. Bourke, Esq.
601 W. Fifth Street, 8th Floor
Los Angeles, CA 90071

**RIORDAN & McKINZIE**
Donald Kula, Esq.
300 South Grand Avenue, 29th Floor
Los Angeles, California 90071-3109

DATED:_____

**CALIFORNIA ATTORNEY
GENERAL'S OFFICE**
    FELIX LEATHERWOOD, ESQ.
    GEORGE TAKENOUCHI, ESQ.
    THOMAS HELLER, ESQ.

BY:

RA019517

RJN0968

JUL-08-99 THU 05:03 PM    HUTCHISON&STEFFEN           FAX:7023852086          PAGE 9
Jul-08-99  15:03    From-MCDONALD CAR/  WILSON MCCUNE LLP      7023228955        ---111  P.09/10  F-010

MCDONALD, CARANO, WILSON, McCUNE,
BERGIN, FRANKOVICH & HICKS


By_____
   THOMAS R. C. WILSON
   MATTHEW C. ADDISON
   BRYAN R. CLARK
241 Ridge St., Fourth Floor
P. O. Box 2670
Reno, Nevada 89505
Attorneys for Defendant

RA019518

RJN0969

## PROTECTIVE ORDER

Based on Stipulation by the parties and pursuant to NRCP 26(c),

IT IS HEREBY ORDERED that a Protective Order is hereby entered in

accordance with the terms of the Parties' Stipulation.

DATED: This _____ day of _____, 1999.

DISTRICT JUDGE

DRAFT

RA019519

RJN0970

JUL-08-99 THU 05:03 PM   HUTCHISON&STEFFEN    FAX:7023852086      PAGE 11
Jul-08-99 15:04   From-MCDONALD CARA  WILSON MCCUNE LLP

### CERTIFICATE OF MAILING

I hereby certify that I am an employee of McDonald Carano Wilson McCune Bergin Frankovich & Hicks LLP., and that I served a true and correct copy of the foregoing STIPULATION AND PROTECTIVE ORDER on this _____ day of July, 1999, by depositing same in the United States Mail, postage prepaid thereon to the numbers noted below, upon the following:

Thomas L. Steffen, Esq.
Mark A. Hutchison, Esq.
Hutchison & Steffen
8831 W. Sahara Ave.
Las Vegas, NV 89117

Thomas K. Bourke, Esq.
601 W. Fifth Street, 8th Floor
Los Angeles, CA 90071

Donald Kula, Esq.
Riordan & McKinzie
300 South Grand Avenue, 29th Floor
Los Angeles, California 90071-3109

Felix Leatherwood, Esq.
Deputy Attorney General
Attorney General's Office
300 South Spring Street
Los Angeles, CA 90013

_____
An Employee of McDonald Carano Wilson
McCune Bergin Frankovich & Hicks LLP

34960

RA019520

RJN0971

# RIORDAN & McKINZIE

### A PROFESSIONAL LAW CORPORATION
Richard J. Riordan, Retired
300 South Grand Avenue
Twenty-Ninth Floor
Los Angeles, California 90071-3109
Telephone: (213) 629-4824
Facsimile: (213) 229-8550

## FACSIMILE TRANSMISSION

**DATE:**    August 24, 1999

**TO:**

| NAME | FAX NO. | PHONE NO. |
|------|---------|-----------|
|  |  |  |
| Felix E. Leatherwood, Esq. | (213) 897-5775 | (213) 897-2000 |
| Mark Hutchison, Esq. | (702) 869-1508 |  |
| James Bradshaw, Esq. | (775) 788-2020 | (702) 322-0635 |
| Tom Bourke, Esq. | (213) 623-5325 |  |

**FROM:**    Donald J. Kula        **DIRECT DIAL:** (213) 229-8547

**RE:**    Hyatt v. FTB

| FILE NO.: 8-160-005 | USER NUMBER: 450 | PAGES, INCLUDING COVER: |
|---|---|---|

**MESSAGE:**

Attached is a revised draft Protective Order. We look forward to discussing this draft this afternoon at 4:00 p.m.

THE INFORMATION CONTAINED IN THIS FACSIMILE IS CONFIDENTIAL AND MAY ALSO CONTAIN PRIVILEGED ATTORNEY-CLIENT INFORMATION OR WORK PRODUCT. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY USE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THE FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ADDRESS ABOVE VIA THE U.S. POSTAL SERVICE. THANK YOU.

If you have any problems with this transmission, please call Alonzo Richards at (213) 229-8430. Thank you.

RA019521

RJN0972

Sent by: RIORDAN & MCKINZIE          2132298550;          10/27/99 10:14PM;JetFax #975;Page 4/16

1  
2  Thomas L. Steffen  
   Mark A. Hutchison  
   John Steffen  
3  HUTCHISON & STEFFEN  
   Lakes Business Park  
4  8831 West Sahara Avenue  
   Las Vegas, NV 89117  
5  (702) 385-2500  

6  Thomas K. Bourke  
   One Bunker Hill, 8th Floor  
7  Los Angeles, CA 90071-1092  
   (213) 623-1092  

8  Attorneys for Plaintiff  

9  

10  

11              **DISTRICT COURT**  

12          **CLARK COUNTY, NEVADA**  

13                                     )   CASE NO. A382999  
                                       )   DEPT. NO. XVIII  
14  GILBERT P. HYATT,                  )   DCKT. NO. F  
                                       )  
15          Plaintiff,                 )  
                                       )   **PROTECTIVE ORDER**  
16  vs.                                )  
                                       )   (Filed Under Seal)  
17  FRANCHISE TAX BOARD OF THE STATE   )  
    OF CALIFORNIA, and DOES 1-100,     )  
18  inclusive,                         )  
                                       )  
19          Defendants.                )  
                                       )  
20                                     )  
                                       )  
21  _____)  

22  

23                   <u>PROTECTIVE ORDER</u>  

24      It appearing that certain information, documents and things subject to discovery in this  

25  action may be claimed to be or contain private personal information, a trade secret, confidential  

26  research information, development information, commercial information, or business  

27  information, the public disclosure of which may jeopardize the owner's right to maintain the  

28  privacy and confidentiality of such information, and in the interest of expediting discovery and  

MHODMA.LADOCS;2969043

RA019522

RJN0973

1  by averting the delay occasioned by possible disputes regarding claims of confidentiality, the
2  Parties to this action request that the following ORDER be entered:

3

4        THE COURT HAVING FOUND GOOD CAUSE HEREBY DIRECTS that this
5  Protective Order be entered in connection with discovery provided by in this action.

6        1.      Definitions
7              A.      "FTB" shall mean defendant Franchise Tax Board of the State of
8  California, but limited to the employees, officers, or board members to whom it is necessary to
9  show "Confidential Information," subject to further limitations below, in order to assist the FTB
10  attorneys with respect to the defense of this "Action."

11              B.      "HYATT" shall mean plaintiff Gil Hyatt.
12              B.      "Party" and "Parties" shall mean one or more of the plaintiff or defendant
13  in this "Action."

14              C.      "Confidential Information" shall mean all information designated as
15  "Confidential" or "Confidential - Attorneys' Eyes Only" as provided in this Protective Order,
16  produced or otherwise disclosed in this action, including (a) any documents and things and
17  copies thereof, (b) any answers to interrogatories and responses to requests for admissions, and
18  (c) any testimony given in this action by the Parties, their officers, directors, agents and/or
19  employees, or by other witnesses, whether by deposition or at trial.

20              D.      This "Action" shall mean, and is limited to, this case entitled HYATT v.
21  The Franchise Tax Board of California, Nevada District Court Case No. A382999.

22

23        2.      Confidential Information in documentary or written form shall be designated as
24  confidential by marking each page of the document or writing containing Confidential
25  Information as follows:

26

27

28

MHODMA.LADOCS:296904:3                    - 2 -

RA019523

RJN0974

"CONFIDENTIAL"

or

"CONFIDENTIAL - ATTORNEYS' EYES ONLY"

1
2
3
4
5      The designation "Confidential" or "Confidential - Attorneys Eyes Only" shall be plainly

6   legible on each page of each document. In lieu of marking the original of the documents, the

7   designating party may mark the copies that are produced or exchanged.

8      Confidential Information in other than a documentary or written form shall be identified

9   as Confidential Information on the stenographic record contemporaneously with testimony

10  revealing Confidential Information or within 30 days after the written transcript of such

11  proceeding has been prepared and disseminated by the Court reporter.

12

13      3.      Confidential Information disclosed by HYATT to the FTB is, and shall remain,

14  subject to all requirements of confidentiality imposed by the laws of the State of Nevada and,

15  where applicable to the FTB, the laws of the State of California. This order is not intended to

16  supplant, alter, modify, or reduce the FTB's requirements of confidentiality under California law.

17  It is intended to assist and facilitate the exchange of "Confidential Information" between the

18  Parties to this Action, and assist and facilitate this Court in its administering of such exchanges.

19      A.      Once produced by a Party, first category Confidential Information (marked

20  "Confidential") may not be disclosed, revealed, or disseminated by the opposing Party and its

21  counsel, except to the following individuals and in the following manner:

22          (i).      To the counsel of record for the opposing Party and their respective

23  stenographic, clerical, and paralegal employees. It shall be the responsibility of the attorneys to

24  ensure that their respective stenographic, clerical, and paralegal employees understand and

25  comply with this Protective Order. Violation of the Protective Order by any employee will be

26  imputed to the attorneys.

27          (ii).      To the opposing Party. In the case of the FTB this includes

28  employees, officers, and board members to the extent necessary to assist FTB counsel in the

MHODMA.LADOCS:296904;3                        - 3 -

RA019524

RJN0975

1  defense of this Action.

2                    (iii).  To court reporters covered by Paragraph 11 herein, after reading

3  this Protective Order and executing a copy of Exhibit A attached hereto.

4                    (iv).   To experts or consultants, whose advice and consultation are being

5  or will be used by the opposing Party in this Action.

6                    (v).    To such other persons as hereafter may be designated by written

7  stipulation of the Parties or by further order of the Court on motion by either party subject to the

8  notice provisions of Paragraph 24 below.

9          B.     Once produced by a Party, second category Confidential Information

10  (marked "Confidential - Attorneys' Eyes Only") may not be disclosed, revealed, or disseminated

11  by the receiving Party's counsel to anyone except: (i) to counsel of record for the receiving Party

12  and their respective stenographic, clerical, and paralegal employees; and (ii) to a non-party expert

13  or  consultant or to the one specially designated Client Representative in accordance with the

14  procedure set forth in Paragraph 4 herein.

15

16          4.     The following procedure will be used in regard to any requests by the Parties  to

17  submit second category "Confidential Information" to third persons described in Paragraphs 3B

18  herein.

19          A.     If a Party desires to disclose second category Confidential Information to

20  experts or consultants pursuant to Paragraph 3B herein, it shall first obtain a signed undertaking

21  by each such individual who may require access to such information, in the form of Exhibit A

22  attached hereto, and serve a copy of the signed Exhibit A on counsel for the opposing Party, said

23  service to be made by facsimile and by Federal Express or equivalent next-day delivery service.

24  Such Confidential Information will not be disclosed to any such individual unless and until, as

25  set forth in Paragraph 4B herein, the opposing Party gives written permission that such

26  Confidential Information may be disclosed to such individual or the Court orders that such

27  Confidential Information be disclosed.  Along with the signed undertaking, counsel for the

28  opposing Party shall also be provided with information regarding the identity of the individual,

MHODMA:LADOCS:296004;3                         - 4 -

RA019525

RJN0976

1  including his/her name, address,  a current curriculum vitae including a list of all companies for

2  which such person has performed services during the last five (5) years.

3          B.      If counsel for the receiving Party believes in good faith that it is necessary

4  to disclose all or a portion of any second category "Confidential Information" to a client

5  representative in order to properly evaluate the "Confidential Information" and its impact on the

6  case, counsel for the receiving party shall designate in writing in as set forth in Paragraph 4C

7  herein one individual to act as the specially designated "Client Representative." A Party must

8  use the same specially designated "Client Representative" for any and all second category

9  "Confidential Information." No second category "Confidential Information" will be disclosed to

10  the "Client Representative" unless and until the procedures set forth in Paragraph 4C herein have

11  been exhausted and the Parties have reached an agreement regarding the disclosure or the Court

12  orders the disclosure to the "Client Representative."

13          C.      Once a request is made to by a Party for disclosure of materials to an

14  expert or consultant or the specially designated "Client Representative" pursuant to Paragraph

15  4A or 4B hereof, the opposing Party shall respond in writing sent via facsimile and Federal

16  Express or equivalent next-day delivery service within ten (10) business days by stating whether

17  or not it will give its approval for the disclosure of the second category Confidential Information

18  to the identified individual.  If the request is denied, the Parties shall conduct a formal "meet and

19  confer" via telephone or in person withing ten (10) business days and attempt to reach a

20  compromise under which the Parties agree that the second category Confidential Information or

21  some portion thereof  or a redacted version thereof can be disclosed to the individual.  If the

22  dispute is then not resolved on an informal basis, the Party seeking disclosure to its expert,

23  consultant, or "Client Representative" may submit, to be heard in the ordinary course, a motion

24  to the Court for a ruling as whether the second category Confidential Information may disclosed

25  to the third party.

26

27          5.      A.      The Parties and their respective attorneys shall not use Confidential

28  Information in any manner whatsoever except solely for discovery preparation, preparation for

RA019526

RJN0977

1   trial, trial, and any appeals related to this action. Furthermore, no Party or employee, officer, or

2   board member of the FTB, or any other person, firm, corporation, attorney, or other entity subject

3   to this Protective Order shall give, show, disclose, make available, or communicate Confidential

4   Information to any person, firm, corporation, or other entity not expressly authorized by this

5   Protective Order to receive such Confidential Information.

6           B.      To the extent that either Party desires to use Confidential Information

7   acquired under the terms of this Protective Order in the pending tax assessment and collection

8   proceeding which the FTB is now pursuing against HYATT in the State of California, the

9   requesting Party shall give notice to the opposing Party and specify the precise Confidential

10  Information it desires to be submitted as part of that California tax proceeding  The

11  representatives of the respective parties handling the tax proceeding (*i.e.*, Eugene Cowan, Esq. on

12  behalf of HYATT and _____ on behalf of the FTB) will then discuss and

13  determine the most efficient and secure manner for the Confidential Information to be submitted

14  as part of such proceeding.  "Confidential Information" submitted as part of the California tax

15  proceeding will thereafter not be subject to this Protective Order, but rather be subject to the

16  California rules, regulations, and statutes governing the tax proceeding.  Similarly, materials

17  obtained or produced by either Party in the pending California tax proceeding will not be subject

18  to this Protective Order, but rather be subject to the California rules, regulations, and statutes

19  governing the tax proceeding.

20

21  '       6.      HYATT has previously produced to the FTB first category Confidential

22  Information designated thereon "Confidential."  Any document thus far produced by HYATT

23  with the "Confidential" designation shall hereby retroactively be subject to the terms of this

24  Protective Order.  If the FTB disputes HYATT's designation of "Confidential" for any

25  previously submitted material, the FTB may submit a written list of the bates numbers for which

26  it disputes the designation and a brief explanation setting forth its objections to the particular

27  designations.  HYATT agrees to reconsider each designation based upon the spirit and intent of

28  this Protective Order and will give the FTB a written response  within 30 days after receipt of the

MHODMA.LADOCS:296904:3                    - 6 -

RA019527

RJN0978

Sent by: RIORDAN & MCKINZIE          2132298550;          10/27/99 10:15PM;*Jetfax* #975;Page 10/16

1  FTB's list of objections.  If this process does not resolve any dispute over HYATT's previous

2  designations, the Parties are to proceed in accordance with Paragraph 18 herein.

3

4       7.     All Confidential Information filed with the Court for any purpose shall be filed in

5  a sealed envelope or other container marked on the outside with the title of the action, an

6  identification of each item within, and a statement substantially as follows:

7       Confidential Information Subject to Protective Order.  This item shall not be
        opened except as ordered by the Court in this action or upon written stipulation
8       executed by all the Parties and filed in Court in this action.

9  This envelope or other container shall not be opened except as ordered by the Court or upon

10  written stipulation executed by all the Parties to this action or their counsel and filed in Court in

11  this action.  All such documents so filed in Court shall be treated in accordance with the

12  provisions of this Protective Order relating to Confidential Information.

13

14       8.     In the event HYATT or the FTB wishes to use any Confidential Information in

15  any affidavits, briefs, memoranda of law, or other papers filed in Court in this action, such

16  affidavits, briefs, memoranda of law, or other papers so filed shall be designated as "Confidential

17  Information - Subject to Protective Order" and shall be maintained under seal by the Court and

18  treated by the Court in accordance with the provisions of this Protective Order relating to

19  Confidential Information.

20

21       9.     With respect to the testimony of any person or witness in this action, elicited

22  during depositions, hearings, and other proceedings, whenever any question or line of

23  questioning calls for the disclosure of information which is Confidential Information, defending

24  counsel or questioning counsel shall designate on the record prior to or after such disclosure that

25  such testimony includes "Confidential Information."  In such situations, the question(s) and

26  answer(s) designated by counsel as pertaining to Confidential Information may be transcribed

27  separately from the remainder of the deposition, hearing or other proceeding and appropriately

28  designated as "CONFIDENTIAL" OR "CONFIDENTIAL - ATTORNEYS' EYES ONLY."

MHODMA.LADOCS:296904:3                        - 7 -

RA019528

RJN0979

1  Portions of transcripts, or separate transcriptions, designated as including Confidential

2  Information shall be retained by counsel, unless filed in this Court, in which case they shall be

3  filed in an envelope under seal and the envelope shall include on its face the statement set forth

4  in paragraph 7 of this Protective Order.

5

6       10.    Counsel shall, while eliciting testimony concerning Confidential Information or

7  which might result in the disclosure of Confidential Information, exclude from the room during a

8  deposition, hearing, trial, or other proceedings, any person who is not entitled under this

9  Protective Order to receive Confidential Information.  Confidential Information shall not be

10  disclosed to the witness then testifying except in strict conformity with the provisions of this

11  Protective Order, including the requirement that the testifying witness agree to be bound by the

12  terms of this Protective Order by executing the Agreement set forth in Exhibit A hereof.

13

14       11.    Any court reporter or transcriber who reports or transcribes testimony in this

15  action at depositions, hearings, or other proceedings shall agree by a statement on the record,

16  before recording or transcribing any such testimony constituting Confidential Information, that

17  all such testimony and information revealed at the deposition, hearing, or other proceeding is and

18  shall remain confidential and shall not be disclosed by any such reporter or transcriber except to

19  attorneys for a Party who are authorized by this Protective Order and any other person who is

20  authorized by this Protective Order to be present while such testimony is being given, and that

21  copies of any transcript, reporter's notes, or any other transcription records of any such testimony

22  shall be retained in confidentiality and safekeeping by such reporter or transcriber or shall be

23  delivered to the Court in the manner specified in Paragraphs 7 and 9 herein, or to the attorneys

24  for the Parties.

25

26       12.    The Clerk of the Court is directed to maintain under seal all documents and all

27  transcripts of deposition testimony filed with this Court in this action by any Party which are in

28  whole or in part designated as Confidential Information including all pleadings, deposition

MHODMA.LADOCS;296904;3          - 8 -

RA019529

RJN0980

1  transcripts, exhibits, discovery responses, or memoranda purporting to reproduce or paraphrase

2  such information. The person filing such material shall advise the Clerk, as set forth in

3  paragraph 9 hereof, that all or a designated portion thereof is subject to this Protective Order and

4  is to be kept under seal. Upon the default of the filing Party to so designate, any Party may so

5  advice the Court.

6

7      13.    No Party to this proceeding may offer or elicit any testimony, exhibits, or other

8  evidence containing or disclosing Confidential Information unless such Party first ensures that

9  adequate safeguards against unauthorized disclosure of such information have been implemented.

10  Such safeguards shall include the sealing of the courtroom where such information is proposed to

11  be disseminated, the exclusion from such proceedings of any persons not authorized access to

12  such information pursuant to the terms of this Protective Order and other measures reasonably

13  necessary in order to preclude unauthorized disclosure of such information. In the event that any

14  Confidential Information is used in any court proceeding, it shall not lose its Confidential status

15  merely through such use.

16

17      14.    Nothing in this Protective Order shall preclude any Party to the Action, its

18  attorneys, or any other person from disclosing or using, in any manner or for any purpose, any

19  information or documents not obtained in discovery from the producing Party in this action, if

20  such information was lawfully obtained, even though the same information or documents may

21  have been produced in discovery in this action and designated as Confidential Information.

22

23      15.    Nothing in this Protective Order shall preclude any party to this action or their

24  attorneys from showing a document designated as Confidential Information to an individual who

25  either prepared, is a designated or authorized recipient of or previously lawfully reviewed the

26  document. Nothing in this Protective Order shall preclude a Party from disclosing or using, in

27  any manner or for any purpose, any information or documents from its own files which it has

28  designated as Confidential Information.

RA019530

RJN0981

Sent by: RIORDAN & MCKINZIE          2132298550;          10/27/99 10:16PM;JetFax #975;Page 13/16

16.     Nothing herein shall prevent disclosure beyond the terms of this Protective Order if the disclosing Party consents in writing to such disclosure of information designated as Confidential Information.

17.     A Party shall not be responsible for any use made of information produced in this Action and not identified by the opposing Party as Confidential Information in accordance with the provisions of this Protective Order.

18.     A Party shall not be obligated to challenge the propriety of a designation by the opposing Party of Confidential Information at the same time such designation is made, and a failure to provide any such challenge shall not preclude a subsequent challenge by the opposing Party to such designation. A Party may move the Court, upon notice, to remove or change the designation of Confidential Information with respect to any specified document, testimony, or other thing, or any portion thereof. The burden of proving that information has been improperly designated as Confidential Information shall be born by the Party opposing the designation.

19.     In the event that a Party inadvertently fails to stamp or otherwise designate a document or other information as Confidential Information at the time of its production, the Party shall, promptly after discovering such failure, so stamp or otherwise designate the document or other information and inform the opposing Party that the document or other information is Confidential Information. The opposing Party shall then immediately give notice to anyone to whom it disclosed such document or other information that such document or other information is Confidential Information subject to the terms of this Protective Order. The opposing Party will then use it best efforts to obtain from such person(s) their consent to be bound by the Protective Order and their signature on a copy of Exhibit A attached hereto.

20.     The procedure set forth herein shall not affect the rights of the Parties to object to discovery on grounds other than those related to the confidentiality of documents, nor shall it

MHODMA:LADOCS;296904;3                    - 10 -

RA019531

RJN0982

1  relieve a Party of the necessity of proper response or objection to discovery requests, nor shall it

2  preclude Parties from seeking further relief or protective orders from the Court as may be

3  appropriate.

4

5      21.    This Protective Order involves only the relative rights and obligations of the

6  Parties as to the confidentiality of any information disclosed, or documents supplied, in this

7  action. This Protective Order does not abrogate or diminish any contractual, statutory, or other

8  legal obligation or right of any Party or person with respect to any Confidential Information.

9

10      22.    In order to facilitate third party discovery, the protections afforded herein shall

11  extend to documents or other things or testimony originating from persons, firms, corporations,

12  or other entities not a party to this action, and which documents are designated as "Confidential"

13  or "Confidential - Attorneys' Eyes Only."

14

15      23.    Within sixty (60) days after the conclusion of this action, all documents

16  designated as containing Confidential Information and any copies of such documents (including

17  any copies created by optical scanning) shall be delivered to the Party that produced such

18  documents. All recordings of Confidential Information on disk, tape, or other recording media

19  shall be destroyed. The provisions of this Protective Order shall not terminate at the conclusion

20  of this action. (Production of any "Confidential Material" in the California tax proceeding will

21  be governed as discussed in Paragraph 5C herein.)

22

23      24.    The Parties hereto may stipulate, subject to the approval of the Court, to any

24  mutually agreeable changes to the provisions hereof. If a Party requests any modification(s) to

25  the Protective Order and the Parties are unable to reach an agreement after a meet and confer, the

26  Party requesting a modification may file a motion with the Court seeking such modification, and

27  such motion will be heard by the Court in the ordinary course of business.

28

MHODMA.LADOCS;296904;3          - 11 -

RA019532

RJN0983

Sent by: RIORDAN & MCKINZIE    2132298550;    10/27/99 10:17PM;Jetfax #975;Page 15/16

25.  This Protective Order shall be binding upon the Parties, their employees, officers, board members, agents, attorneys, and all persons encompassed by paragraph 3 whether or not such persons individually have executed Exhibit A.  The Court retains jurisdiction to enforce the provisions of this Protective Order upon the request of any Party or sua sponte and to make such arrangements, modifications, and additions to this Protective Order as the Court may from time to time deem appropriate.

## AGREED TO BY THE PARTIES

Gilbert P. Hyatt

Franchise Tax Board of the State of California

By his attorneys

By its attorneys

Thomas L. Steffen
Mark A. Hutchison
HUTCHISON & STEFFEN
Lakes Business Park
8831 West Sahara Avenue
Las Vegas, Nevada 89117
(702) 385-2500

Thomas K. Bourke
One Bunker Hill, 8th Floor
Los Angeles, CA 90071-1092
(213) 623-1092

Felix Leatherwood
California Attorney General
300 South Spring St.
Los Angeles, CA 90013
(213) 897-2478

Thomas R.C. Wilson
Matthew C. Addison
McDonald Carano Wilson McCune
Bergin Frankovich & Hicks LLP
241 Ridge St., 4th Floor
Reno, Nevada 89505-2670
(775) 788-2000

SO ORDERED, this _____ day of _____, 1999.

_____
District Judge

MHODMA:LADOCS:296004;3

- 12 -

RA019533

RJN0984

Sent by: RIORDAN & MCKINZIE        2132298550;        10/27/99 10:17PM;*JetFax* #975;Page 16/16

EXHIBIT A

## AGREEMENT CONCERNING MATERIAL COVERED BY A PROTECTIVE ORDER AND ORDER ENTERED IN THE DISTRICT COURT, CLARK COUNTY, NEVADA

I, the undersigned, hereby acknowledge that I have read the attached Protective Order entered in the District Court, Clark County, Nevada in Case No. A382999 and understand the terms thereof and agree to be bound by all such terms. Without limiting the generality of the foregoing, I agree not to disclose to any person or entity not authorized to receive such "Confidential Information," pursuant to the terms of said Protective Order, any document or any information designated as "Confidential Information" or any copies of extracts or information derived therefrom, which have been disclosed to me. I further agree to use any information disclosed to me in connection with the above-mentioned case solely for the purpose of this case only and for no other purposes.

The undersigned hereby irrevocably submits his/her person to the jurisdiction of the District Court, Clark County, Nevada for the purpose of enforcing said Protective Order.

Date: _____        _____
                                 Signature

                                 Type or print name: _____

RA019534

RJN0985

Exhibit 8

RA019535

RJN0986



DISCOVERY COMMISSION   11-9-99

1

DISTRICT COURT

CLARK COUNTY, NEVADA

**CERTIFIED COPY**

GILBERT P. HYATT,                     )
                                      )
                 Plaintiff,           )
                                      )
        vs.                           )    Case No. 98-A-382999-C
                                      )
FRANCHISE TAX BOARD OF                )
THE STATE OF CALIFORNIA,              )
                                      )
                 Defendant.           )
_____)


BEFORE DISCOVERY COMMISSIONER THOMAS W. BIGGAR

Taken at the Discovery Commission
200 South Third Street, Fourth Floor
Las Vegas, Nevada


On Tuesday, November 9, 1999
At 10:07 a.m.


Reported by:  Margie L. Carlson
              CCR No. 287


ALL-AMERICAN COURT REPORTERS  (702)240-4393

RA019536

RJN0987

1    information that you have used prior to this time.

2          MR. BRADSHAW:  Okay, now, I think it does

3    tend to restrict somehow flow of information from

4    the defense team to the protest officer as to

5    information designated as confidential by Hyatt

6    without following these procedures, that's either

7    get his agreement or some sort of administrative

8    order.  Perhaps it's misunderstanding of the

9    logistics or the system, but this protest officer is

10   a staff attorney just like the staff attorney that

11   we all report to.

12         COMMISSIONER BIGGAR:  What does the

13   protest officer do?  I've had this question for

14   weeks.

15         MR. BRADSHAW:  He investigates further.

16   The auditor has gathered information, come up with a

17   conclusion, given Mr. Hyatt notice of a proposed tax

18   assessment based on whatever reasoning.  They

19   protest.  They give a letter saying "I protest."

20   That invites further investigation and review by in

21   this case a staff attorney, a staff attorney who is

22   in the FTB internal law office.

23         COMMISSIONER BIGGAR:  And your position

24   has been in this case that the other side can't get

25   any information generated by that attorney then, so

RA019537

RJN0988

21

DISCOVERY COMMISSION   11-9-99

1    even though I'm appealing to the protest officer,

2    whatever the protest officer says is privileged; is

3    that right?

4              MR. BRADSHAW:  No, not in all cases, not

5    as to all communications.

6              COMMISSIONER BIGGAR:  Because I'm very

7    concerned about Miss Jovanovich in this case kind of

8    being a bird for all seasons.  She advises the

9    auditor and says this is a good audit, and now when

10   the taxpayer protests there is Miss Jovanovich

11   again.  Well, your protest, I guess I will have to

12   overrule it.  Gee, if I thought it was good when I

13   was advising the auditor why can't it be good now,

14   and then she retires, and now she comes and she is

15   your consultant.  It seems like that is an odd

16   situation.

17             MR. BRADSHAW:  Well, just as in-house

18   counsel they can wear two hats, and they aren't

19   designated as a protest until there is a protest

20   officer or until after the audit is closed.

21             COMMISSIONER BIGGAR:  So what?  How can

22   that be?  What kind of a system can it possibly be?

23   It's like judging yourself.  Did you make a good

24   audit?  Yes, I did.

25             MR. LEATHERWOOD:  Excuse me.

ALL-AMERICAN COURT REPORTERS (702)240-4393

RA019538

RJN0989

DISCOVERY COMMISSION  11-9-99

1          COMMISSIONER BIGGAR:  Wait a minute,

2    Mr. Leatherwood.

3          Go ahead, Mr. Bradshaw.

4          MR. BRADSHAW:  If that is the case then

5    many government agencies in the process of review --

6          COMMISSIONER BIGGAR:  That's not the way

7    I understood it, Mr. Bradshaw.  I always understood

8    it that you had some lower level would make a

9    decision on something and then if there is going to

10   be some genuine kind of administrative review that

11   it would go to somebody different, not the person

12   who made the initial evaluation.

13         MR. BRADSHAW:  They have hammered and

14   hammered that this is not an administrative review.

15   Technically this is an investigation still.  He gets

16   to present more evidence.  They get to gather more

17   evidence.  The protest officer, who's a lawyer, gets

18   to make a determination independent from the auditor

19   or back up what the auditor did, but that's not the

20   point.  The point is I believe, I'm trying to

21   understand what the constraints are on sharing

22   information with my client, and it's not clear to me

23   from this because I'm dealing with an in-house legal

24   office with an attorney who I report to who is in

25   the same facility as the protest officer who may

ALL-AMERICAN COURT REPORTERS (702)240-4393

RA019539

RJN0990

**DISCOVERY COMMISSION  11-9-99**

1  have a common supervisor and chain of command.  I

2  just want to know what the restriction is on my

3  client dealing with the information that we have in

4  our investigation and discovery.

5          MR. KULA:  Your Honor, I think that is

6  addressed in the order.

7          COMMISSIONER BIGGAR:  Well, I think it is

8  too.  I don't know what more I can explain other

9  than the language of the order.

10          MR. BRADSHAW:  Okay, we will move on from

11  that then I guess.

12          On page 4, line 23, this form started out

13  as a stipulation so there is in certain places, I

14  don't know if I have them all here, but what

15  purports to be terms of an agreement, and this is

16  really kind of opposing counsel drafting, so on

17  page 4, line 23, there is a sentence that says, "It

18  is understood and agreed between the parties."  We

19  are beyond that.  This is not a draft proposal.

20          COMMISSIONER BIGGAR:  Then I will allow

21  counsel to change that and put it in the form of an

22  order.  That will be all right.

23          MR. BRADSHAW:  Right.

24          COMMISSIONER BIGGAR:  And you can do that

25  throughout.  It all depends on how you want to read

**ALL-AMERICAN COURT REPORTERS (702)240-4393**

RA019540

RJN0991

DISCOVERY COMMISSION  11-9-99

1  that information, but you can change it to be more

2  comfortable with that language so you are not, it's

3  not indicating that you are actually agreeing to it

4  if you are not.

5           MR. BRADSHAW:  There is some provision,

6  such as paragraph 6 on page 5 beginning at line 19,

7  that deal with special handling of confidential

8  materials.  Your Honor has already ordered the

9  entire court file sealed.  I think this adds

10 procedure on to procedure.  If the whole file is

11 sealed do we need to additionally seal sub portions

12 of it?  I mean everything comes to the Court in an

13 envelope with the designation on it.  Is there

14 something different that is intended by this?

15          COMMISSIONER BIGGAR:  I don't think so.

16 I think this is a reiteration of that.  I don't find

17 a problem in leaving this language in.

18          Anything further, Mr. Bradshaw?

19          MR. BRADSHAW:  In the depositions, and I

20 wouldn't want this order to be support for that, at

21 the beginning of each deposition plaintiff's counsel

22 after we swear the witness and get their name, they

23 object to the proceedings as being an invasion of

24 privacy and confidentiality.  I don't think

25 witnesses should be biased or prejudiced by an

ALL-AMERICAN COURT REPORTERS (702)240-4393

RA019541

RJN0992

25

DISCOVERY COMMISSION 11-9-99

1  announcement at the beginning of the deposition that
2  it's more than it is. I think if we get into
3  confidential information then there can be something
4  on a case-by-case basis, but each deposition
5  proceeding shouldn't be prefaced by a speech that
6  this is an outrageous invasion of privacy or
7  confidentiality.
8          COMMISSIONER BIGGAR: Well, I'm not sure
9  what that has to do with the confidentiality.
10         MR. BRADSHAW: I can see them using this
11 as authority for that process.
12         COMMISSIONER BIGGAR: I don't see it as
13 an authority for them indicating that this is an
14 invasion, this whole audit is an invasion of
15 privacy. You know, I don't see this as any
16 authority for that, all right. You know, I hope
17 that answers your fear in that regard. I don't know
18 that they should be making a speech before the
19 deposition in any event. I agree with that part,
20 but I don't want to get into that right now, all
21 right?
22         MR. BRADSHAW: Okay, and the last
23 concerns I can think of at the moment is
24 paragraphs 16 and 18 purport to keep the Court
25 involved in the California administrative

ALL-AMERICAN COURT REPORTERS (702)240-4393

RA019542

RJN0993

DISCOVERY COMMISSION  11-9-99

1   proceeding.  Who knows if it will be wrapped up
2   before this litigation.  Paragraphs 16 and 18
3   purport to maintain this after the conclusion of the
4   action of the subject nature, maintains jurisdiction
5   to enforce its provisions.  I can see where that
6   will go, if Hyatt doesn't like what is requested in
7   the administrative proceedings or what is put before
8   the Board of Equalization Appeals that he will come
9   running back to the Nevada court to interfere with
10  those processes.
11          COMMISSIONER BIGGAR:  Well, the
12  confidentiality order that will be enforced in this
13  case applies during this case.  A breach of the
14  confidentiality order of this case would be a breach
15  whether it's now or later, it would seem to me.  It
16  seems to me that any information, and I think the
17  order at least does not interfere with the fact that
18  any information which is allowed in the California
19  proceeding, in the tax proceeding in particular, you
20  know, that is allowed by the Court in that
21  proceeding, that's up to them, and any arguments
22  addressing confidentiality can be addressed at that
23  point in time to that Court.  I'm not pertaining
24  to -- I don't think the Court would, the judge is
25  trying to tie the hands of the California proceeding

ALL-AMERICAN COURT REPORTERS (702)240-4393

DISCOVERY COMMISSION  11-9-99

1   in any manner.  It's just that if there is a

2   violation of this order, just simply because this

3   case is now settled doesn't mean that any

4   confidential information, truly confidential

5   information that you have received in this case can

6   then be disseminated, and that seems to me to be

7   perfectly sensible, so I don't think it's any kind

8   of a restriction.

9           MR. BRADSHAW:  Okay, that clarifies

10  things.

11          MR. KULA:  Your Honor, just one very

12  brief clarification, regarding materials we produced

13  thus far that are stamped confidential, we obviously

14  didn't have this order.

15          COMMISSIONER BIGGAR:  I understand that.

16          MR. KULA:  We produced those --

17          COMMISSIONER BIGGAR:  As I understand

18  your briefing, that there is a lot of that

19  information that is going to be turned over once

20  the --

21          MR. KULA:  It's the new material that we

22  haven't included that we really need in the

23  protective order.  We stamped the material thus far

24  for its confidentiality.  I think all or virtually

25  all of them are from the audit file, really more of

ALL-AMERICAN COURT REPORTERS (702)240-4393

RA019544

RJN0995

Exhibit 9

RA019545

RJN0996

UNCERTIFIED ROUGH ASCII - 04/22/08

Page 1

DISTRICT COURT

CLARK COUNTY, NEVADA

GILBERT P. HYATT,                    )
                                     )
                    Plaintiff,       )
                                     )
        v.                           ) CASE NO. A382999
                                     ) DEPT. NO. XVIII
FRANCHISE TAX BOARD OF THE STATE     )
OF CALIFORNIA, and DOES 1-100,       )
inclusive,                           )
                                     )
                    Defendants.      )
_____)

TRIAL DAY TWO

LAS VEGAS, NEVADA

APRIL 22, 2008

Reported By Kele R. Smith, CCR No. 672

LST Job No. 90466

LITIG@TION SERVICES & TECHNOLOGIES

RA019546

RJN0997

UNCERTIFIED ROUGH ASCII - 04/22/08

Page 105

1    remodel a kitchen.  You know, if you listen as far as

2    from the homeowner's standpoint, it took them 10

3    years to do this.  11 years to do this.  You sit back

4    and say that sounds like a long time and you hear the

5    other side of the story.  You hear from the

6    perspective of the contractor and the contractor

7    says, yeah, it took that long, but do you know why it

8    took that long.  They started moving walls.  They

9    started asking for changes.  When I sent them a bill,

10   they didn't pay me.  I had to bring a lawsuit against

11   them to get paid.  So I was stopping and starting.

12   So you got to hear the other side of the story.

13        What I'm going to briefly describe for you,

14   then, is the other side of the story and the impact

15   this litigation had on the resolution in the protest,

16   and I'm going to as far as give you a very brief

17   example of what I'm talking about.  Mr. Hyatt now had

18   two proceedings ongoing.  He had the California tax

19   proceedings ongoing and he had this litigation

20   ongoing, and what he did is he erected a wall between

21   the folks handling the protest at FTB and the folks

22   that were handling the litigation.  There's even

23   communication from his own representatives to his

24   experts describing this as the wall.  If I could,

25   think of this as a wall.  He had information on one

LITIG@TION SERVICES & TECHNOLOGIES

RA019547

RJN0998

UNCERTIFIED ROUGH ASCII - 04/22/08

Page 106

1    side of the wall in the litigation.  He gave

2    information to the protest folks on the other side of

3    the wall.  And what he began doing is giving

4    information to the litigation folks that was

5    different than the protest folks, and before then

6    they -- FTB could move information from one side of

7    this wall to the other side of the wall, they had to

8    ask Mr. Hyatt's permission to do so, and they had to

9    erect procedures at FTB to move it from one side to

10   the other.  One hand had some information and the

11   other hand had the other, but they couldn't come to

12   the middle without seeking Mr. Hyatt's permission.

13   They asked for his permission to move the information

14   so that both sides of FTB had the same information,

15   both the litigation people had the same information

16   as the protest people, and what did he say?  No.  He

17   said even though FTB says I know I'm on one side of

18   this wall, I won't move it over here.

19        Part of the process is they had to issue an

20   administrative subpoena to him out of California and

21   that's where you begin to see in the time line -- and

22   I moved the time line out further so the folks can

23   see the bottom part.  This is the designation as to

24   the separation, the wall that was erected and how he

25   had to get over the wall.  Then, in fact, we put

LITIG@TION SERVICES & TECHNOLOGIES

RA019548

RJN0999

UNCERTIFIED ROUGH ASCII - 04/22/08

Page 107

1    procedures to place to ensure that he didn't have one
2    hand knowing one thing and the other hand knowing the
3    other.  That's not how government works.  You don't
4    want them working on two different sets of facts.
5    You want them working off the same set of facts.
6    They had to actually serve him with a subpoena.
7         The subpoena he contested.  He had to take
8    it to a California court.  California court at the
9    Superior Court level said Mr. Hyatt, turn this
10   information over.  He didn't like that result, so he
11   appealed it.  California Court of Appeals upheld the
12   decision of the lower court, said turn the
13   information over.  That takes time, ladies and
14   gentlemen.  That takes time.
15        All right.  So now we get into the next
16   issue, next time around, and all the while
17   information is accumulating on the litigation side
18   and they want to move it to the protest side.  They
19   send another administrative subpoena to him and at
20   first he says no and finally he relents, and the last
21   time around that they had to do that is here toward
22   the end.  When the protest hearing officer, Cody
23   Cinnamon, the woman I describe as having the patience
24   of Job, when she gets all the information, all the
25   details, she needed to ensure that the folks on the

LITIG@TION SERVICES & TECHNOLOGIES

RA019549

RJN1000

D R A F T

T R A N S C R I P T

5/7/08

HYATT VS. FTB


THE COURT:  Good morning, ladies and
gentlemen of the jury.

Counsel stipulate to the presence of the
jury.

MR. HUTCHISON:  Yes, Your Honor.

MS. LUNDVALL:  Yes, Your Honor.

THE COURT:  You will be sworn.
Whereupon --

EDWIN P. ANTOLIN

was called as a witness, and having been first duly
sworn, testified as follows:

THE CLERK:  Please be seated, state your
full name and spell your last name.

THE WITNESS:  Edwin P. Antolin,
A-N-T-O-L-I-N.

EXAMINATION

BY MS. LUNDVALL:

Q.  **Mr. Antolin, thank you for coming back.**

A.  You are welcome.

Q.  **Just to do a brief overview, you are an**

RA019550

RJN1001

HιATT TRIAL DAY 15 - 5/7/2008

1    be right toward the end of 2005?

2        A.   I was aware of that I wasn't able to follow

3    that closely I was preparing my report but I was I

4    was aware of that.

5        Q.   You also indicated on direct examination

6    that you were aware there was litigation over that

7    first administrative subpoena, correct?

8        A.   Yes.

9        Q.   All right.  And in general, I also note

10   from your report that you also had a copy of a

11   protective order that had been issued in this case?

12       A.   Yes.

13       Q.   And you took a look at that protective

14   order?

15       A.   Yes.

16       Q.   In particular there is a paragraph that

17   deals with whether or not the folks working the

18   protest at FTB could have access to the information

19   that was being received in the litigation?

20       A.   That's correct.

21       Q.   Do you recall that?

22       A.   Yes.

23       Q.   Do you also recall the procedural mechanism

24   to try to move information from the litigation side

25   then to the protest hearing officers?

LITIGATION SERVICES & TECHNOLOGIES - (702) 648-2595

RA019551

RJN1002

H₁ATT TRIAL DAY 15 - 5/7/2008

1      A.   As I recall, under that protective order,
2   the FTB needed to make a request to have that
3   information transferred from the litigation through
4   handling this to the protest people handling the
5   California protest.
6      Q.   And you that you understand that was a
7   request answer that had to go first to Mr. Hyatt; is
8   that right?
9      A.   Yes, or Mr. Hyatt's counsel I can't
10  remember.
11     Q.   Or Mr. Hyatt's counsel?
12     A.   Right.
13     Q.   And if in fact that they refused, then the
14  FTB could issue, then, an administrative subpoena?
15     A.   Yes.
16     Q.   And you are at least aware that there
17  was --
18          MR. HUTCHISON:  Your Honor, I'm going to
19  make a couple objections.  First, counsel is
20  misconstruing the protective order to start with
21  that here is what his terms are and presenting to
22  this witness.  And, secondly, this has been the
23  subject of pretrial motion practice, and so if she
24  wants to get into this, we can get into this but she
25  is misconstruing -- my objection is she is

RA019552

RJN1003

HYATT TRIAL DAY 15 - 5/7/2008

Page 100

1    misconstruing the protective order what the terms of

2    the protective order are and this is also I think

3    contrary to prior rulings by the court pretrial.

4             THE COURT:  Let me see counsel at the

5    bench, please.

6             (Off the record.)

7    BY MS. LUNDVALL:

8        Q.   Mr. Antolin I'm going to ask you a couple

9    more questions and see if I can't allow you to go

10   back to the stand.  You took a look at these IDRs at

11   least up to the year 2006; is that correct?

12       A.   That's correct.

13       Q.   And what you did is you took a look as to

14   whether or not that Mr. Hyatt's representatives, in

15   your opinion, complied, responded to those IDRs?

16       A.   Yes.

17       Q.   And you looked at whether or not they were

18   being cooperative in that respect; is that correct?

19       A.   That's correct.

20       Q.   Now, did you look at any of the issues

21   associated with whether or not the information that

22   was being supplied by Mr. Hyatt and his

23   representatives in the protest matched the

24   information that Mr. Hyatt was supplying in the

25   litigation?

LITIGATION SERVICES & TECHNOLOGIES - (702) 648-2595

RA019553

RJN1004

HYATT TRIAL DAY 15 - 5/7/2008

1    THE COURT:  As long as the witness
2  understands the question is fairly narrow.
3  BY MR. HUTCHISON:
4    Q.   Do you understand the question?
5    A.   Yes.  There was a response.
6    Q.   This is going to be my next to the last
7  line of inquiry here.
8    Ms. Lundvall had asked you about a
9  protective order.  Do you recall that line of
10 questioning?
11   A.   Yes.
12   Q.   And she asked you about whether or not you
13 knew about the procedures and the mechanisms about
14 the protective order.  Do you recall that?
15   A.   Yes.
16   Q.   And she had asked you certain questions
17 that put at issue the protective orders processes,
18 the mechanisms.  Do you recall that?
19   A.   Yes.
20   Q.   I would like to hand you an actual copy of
21 this protective order.
22   A.   Thank you.
23   Q.   Ask some follow-up questions on this,
24 Mr. Antolin.  As a matter of fact, you have seen
25 this protective order before I think you testified,

RA019554

RJN1005

HₐATT TRIAL DAY 15 - 5/7/2008

1   correct?

2       A.   Yes.

3       Q.   Didn't you have to sign a copy of this

4   before you could be retained in this case?

5       A.   Yes.

6       Q.   Do you see that the document is actually,

7   if you turn to Page 11, it's signed by a District

8   Court judge, do you see that?

9       A.   Yes.

10      Q.   If you recall turn now to Page 5?

11      A.   Yes.

12      Q.   I would like to have you take a look at

13  Line 10 and 11.  I will read it into the record?

14          MS. LUNDVALL:  Your Honor from this

15  standpoint I don't believe it's appropriate for the

16  counsel to read a document into the record that has

17  not been admitted as an exhibit.

18          THE COURT:  That's probably true,

19  Mr. Hutchison.

20          MR. HUTCHISON:  Your Honor I'm happy to

21  have this admitted as an exhibit if you would like

22  to have a court order admitted as an exhibit I was

23  going to read portions of it and ask follow-up

24  questions to the witness but I'm happy to offer this

25  as an exhibit.

RA019555

RJN1006

HIATT TRIAL DAY 15 - 5/7/2008

1      THE COURT:  How about if he reads the lines

2  to himself and you ask had him questions based on

3  that.

4      MR. HUTCHISON:  Fine.  Happy to do that.

5  BY MR. HUTCHISON:

6      Q.  Let's have you read Page 5, Lines 10 and

7  11, please.

8      A.  Okay.  Okay.

9      Q.  And you may recall that this questioning

10  came up and the subject came up in terms of the

11  issuance of administrative subpoenas during the

12  course of the protest?

13      A.  Yes.

14      Q.  Do you recall that?

15      A.  Yes.

16      Q.  As a matter of fact, the Franchise Tax

17  Board has even put on their chart here this first

18  subpoena litigation, second subpoena and so this

19  protective order question came up during the course

20  of this subpoenas that were being issued by the

21  protest officer in the protest is that your

22  understanding?

23      A.  That's my understanding.

24      Q.  And based on the questions that were pose

25  posed to you, you can tell me whether I'm right or

LITIGATION SERVICES & TECHNOLOGIES - (702) 648-2595

RA019556

RJN1007

1  wrong on this, the suggestion was that the Franchise

2  Tax Board had to go through this protective order

3  process in order to get documents during the course

4  of the protest. ; is that fair?

5      A.   Right.

6      Q.   Okay.  Now you have just read a line from

7  the court order.  Do you have an opinion as to

8  whether or not this court order requires the

9  Franchise Tax Board to proceed through the

10  protective order process or if there were other

11  avenues available in the state of California for

12  purposes of securing documents?

13          MS. LUNDVALL:  I now think that -- I

14  believe that Mr. Hutchison if he could rephrase his

15  question would be appropriate but he is now asking

16  for a legal opinion from this witness as to an

17  interpretation of a court order.

18          THE COURT:  You might want to rephrase it.

19  I suppose if you can answer the question, he can

20  answer.

21  BY MR. HUTCHISON:

22      Q.   Go ahead.

23      A.   Here is what it says.

24          MS. LUNDVALL:  Hold on, this is my

25  objection.  I believe that the court sustained my

RA019557

RJN1008

HYATT TRIAL DAY 15 - 5/7/2008

```
 1    objection with the suggestion to Mr. Hutchison that
 2    he rephrase, and also the court has indicated that
 3    it is not appropriate to read from a document that
 4    has not been admitted as an exhibit.
 5            THE COURT:  Those points are true.
 6            MR. HUTCHISON:  I'm sorry, I didn't take
 7    your response to be sustaining the objection.  You
 8    said if he could answer --
 9            THE COURT:  I sustained the objection.
10            MR. HUTCHISON:  Do you want me to rephrase?
11            THE COURT:  I think so.
12    BY MR. HUTCHISON:
13       Q.   Is there anything in the court order that
14    you just read that prohibits the Franchise Tax Board
15    from just seeking documents in the state of
16    California through the administrative subpoena
17    process?
18       A.   Not that I am aware of.
19       Q.   Is there anything based on what you just
20    read that requires the Franchise Tax Board to go
21    through the protective order process here in the
22    state of Nevada?
23       A.   Not that I'm aware of.
24       Q.   Like to have you turn to another part of
25    that court order.  This is Paragraph 11.  Just read
```

LITIGATION SERVICES & TECHNOLOGIES - (702) 648-2595

RA019558

RJN1009

HYATT TRIAL DAY 15 - 5/7/2008

1    Paragraph 11, if you would, please, to yourself.

2       A.   Okay.

3       Q.   Is there anything in Paragraph 11 of that

4    protective order that prohibits the Franchise Tax

5    Board from seeking documents from a taxpayer in this

6    case Mr. Hyatt through it's normal procedure process

7    in the state of California?

8       A.   Not that I can see.

9       Q.   Now I would like you to turn to last matter

10    with you in terms of my redirect and I -- in order

11    to do that I would like to pull up 2001-831, please.

12    Now, you recall that we spent I don't know sometime

13    on this, ten minutes, 15 minutes, I don't know how

14    long exactly, Ms. Lundvall read fair amount of this

15    letter to you.  Before she told you otherwise, you

16    thought that this letter had been sent, constant

17    right?

18       A.   I just miss remembered.

19       Q.   And she said to you in her questions that

20    she was just trying to be fair.  Do you remember

21    that?

22       A.   (No audible answer.)

23       Q.   And so if you note in the third paragraph

24    here, highlight that for me, this is a formal legal

25    demand for information requested.  Mr. Antolin, this

RA019559

RJN1010

HYATT TRIAL DAY 15 - 5/7/2008

1  there are other issues such as nonresidency issues,
2  I don't think that you would be able to litigate
3  those cases is in that same proceeding.
4      Q.   Just to clarify one thing for members of
5  the jury, Mr. Antolin, you were asked some questions
6  by Mr. Hutchison regarding the Nevada protective
7  order; is that correct?
8      A.   Yes.
9      Q.   And the questions and the testimony that
10  you gave, did you have involvement at all with the
11  Nevada protective order when you were at Morrison &
12  Foerster?
13      A.   Not that I can recall.
14      Q.   Were you charged with responsibility then
15  for trying to implement or interpret that Nevada
16  protective order?
17      A.   While at Morrison & Foerster?
18      Q.   Yes.
19      A.   No.
20      Q.   Before Mr. Hutchison handed it to you today
21  and asked you some questions about it, had you spent
22  a lot of time analyzing that?
23      A.   I did look at it when I first received it
24  because I was asked to sign it, the exhibit to that,
25  so I did (inaudible).

RA019560

RJN1011

HYATT TRIAL DAY 15 - 5/7/2008

```
 1        Q.   From the perspective of did you do any
 2   analysis as to the FTB's compliance with that
 3   protective order?
 4        A.   No.
 5             MS. LUNDVALL:  I believe that's it,
 6   Mr. Antolin.  Thank you Your Honor.
 7             THE COURT:  Any follow up, Mr. Hutchison.
 8             MR. HUTCHISON:  No Your Honor.
 9             THE COURT:  I ask that this witness finally
10   be excused.  Is this a good place to stop for the
11   day.
12             MR. HUTCHISON:  Okay.
13             THE COURT:  What time do we need to bring
14   the jury back tomorrow.
15             THE WITNESS:  Probably 10.
16             THE COURT:  Who is the witness tomorrow?
17             MR. HUTCHISON:  Can we approach.
18             THE COURT:  Yes.
19             (Off the record.)
20             THE COURT:  For you ladies and gentlemen,
21   you get to go home we are going to work on some
22   issues in the interim.  I would ask you to show up
23   tomorrow at 10:00 o'clock so we can get started with
24   the next witness.
25             So with that in mind, I advise you of your
```

RA019561

RJN1012

UNCERTIFIED ROUGH ASCII

Page 1

DISTRICT COURT

CLARK COUNTY, NEVADA

GILBERT P. HYATT,                    )
                                     )
                    Plaintiff,       )
                                     )
          v.                         )   CASE NO. A382999
                                     )   DEPT. NO. XVIII
FRANCHISE TAX BOARD OF THE STATE     )
OF CALIFORNIA, and DOES 1-100,       )
inclusive,                           )
                                     )
                    Defendants.      )
_____)

TRIAL DAY THIRTEEN

LAS VEGAS, NEVADA

MAY 8, 2008

Reported By Kele R. Smith, CCR No. 672

LST Job No. 1-90478

LITIG@TION SERVICES & TECHNOLOGIES

RA019562

RJN1013

HYATT VS. FTB

TRIAL

4/30/08

D R A F T

T R A N S C R I P T

THE COURT:  Outside the presence of the
jury is there something, Mr. Kula?

MR. KULA:  Yes, Your Honor.  Based on the
court's ruling relating to the IRS matters, we have
redacted an exhibit as Exhibit 2426, and I can
present a copy to the court, because we would like
to use the other portions of it.  It's same exhibit
Mr. Hutchison argued to not -- successfully argued
to keep out of their opening because it had the IRS
references.  Now the court has made clear the ruling
on the IRS, we would like to use the rest of the
document which relates to the FTB audit of
Mr. Hyatt.

THE COURT:  Ms. Lundvall.

MS. LUNDVALL:  Your Honor, I think it might
be helpful to see what they proposed to offer to the
jury.  This is what they redacted and this is where
my concern is.

MR. KULA:  Your Honor, I have a copy of the

RA019563

RJN1014

HYATT TRIAL DAY 11 - 4/30/2008

Page 167

1      Q.    So you had produced the agreements to

2    Ms. Jovanovich in December of 1997 and then was your

3    next contact -- strike that.  What contact did you

4    have between December and October 1997?

5      A.    May have had a phone call or something in

6    January.  I don't really remember anything, much of

7    anything.  I know after very, very early (inaudible)

8    nothing until this letter came.

9      Q.    Anything of consequence happen in the

10   protest that you can recall during that period?

11     A.    Nothing during that period.

12     Q.    So here we say in the letter Mr. Dunn says

13   in the letter with the retirement of Ms. Jovanovich

14   from state service, I have been assigned to review

15   and resolve your client's protest.  I note for the

16   record that your client's protest was submitted

17   timely for each taxable year under California

18   revenue taxation code section 19041, written protest

19   against deficiency assessment.  I also note that

20   your client has requested an oral hearing under CRTC

21   section 19044 as a protest hearing officer in the

22   case I will thoroughly reconsider the assessment

23   issued by our audit staff for both 1991 and 1992.

24          What did you interpret that to mean?

25     A.    That Mr. Dunn was going to review the case

RA019564

RJN1015

HYATT TRIAL DAY 11 - 4/30/2008

Page 168

```
 1      conduct canned for review and determine whether the
 2      audit staff determinations were appropriate.
 3          Q.    Then it says this means that I will be
 4      reviewing all of the existing documentation in the
 5      audit file and if I find it necessary, requesting
 6      more information and/or clarification of factual
 7      assertions.  Once this process is finished, I will
 8      schedule a an oral hearing.  So do you interpret
 9      that he has already reviewed the file?
10          A.    No.
11          Q.    Now we are into October of 1998, the
12      protest is filed in June of 1996 and as far as you
13      know has the FTB had a protest officer hearing --
14      protest hearing officer review the file?
15          A.    I didn't -- I don't think so.
16          Q.    Now this is again October of 1998, I think
17      you established that this lawsuit was filed in
18      early 1998.  At this time do you know whether
19      Mr. Dunn had any involvement in this Nevada
20      litigation?
21          A.    At this time, no.  At this time I didn't
22      know.
23          Q.    Do you recall any conversations with
24      Mr. Dunn?
25          A.    I'm not sure we had any conversations.
```

LITIGATION SERVICES & TECHNOLOGIES - (702) 648-2595

FILED

COPY

Sep 21 '08

DISTRICT COURT
CLARK COUNTY, NEVADA

* * * * *

GILBERT P. HYATT,

CLERK OF THE COURT

           Plaintiff,

     vs.

CALIFORNIA STATE FRANCHISE
TAX BOARD,

          Defendant

. . . . . . . . . . . . . .

CASE NO. A-382999

DEPT. NO. X

.
.
.
.
.
.
.

**Transcript of
Proceedings**

COPY

BEFORE THE HONORABLE JESSIE WALSH, DISTRICT COURT JUDGE

**JURY TRIAL - DAY 15**

WEDNESDAY, MAY 7, 2008

APPEARANCES:

FOR THE PLAINTIFF:     PETER C. BERNHARD, ESQ.
                          MARK HUTCHISON, ESQ.
                          DONALD J. KULA, ESQ.

FOR THE DEFENDANT:     PAT LUNDVALL, ESQ.
                          CARLA B. HIGGINBOTHAM, ESQ.
                          JAMES BRADSHAW, ESQ.

COURT RECORDER:       TRANSCRIPTION BY:

VICTORIA BOYD         VERBATIM DIGITAL REPORTING, LLC
District Court       Littleton, CO 80120
                       (303) 798-0890

Proceedings recorded by audio-visual recording, transcript
produced by transcription service.

98

1    wants to get into this, we can get into this, but she's

2    misconstruing -- my objection is she's misconstruing the

3    protective order, what the terms of the protective order, and

4    this is also I think contrary to prior rulings by the Court

5    pretrial.

6          THE COURT:  Could I see counsel at the Bench,

7    please.

8          (Bench conference began at 11:44 a.m.)

9          MS. LUNDVALL:  Your Honor, this was an issue that he

10   raised as part of direct examination.  He talked about the

11   administrative subpoenas.  He talked about the protective

12   order during the course of his direct examination.  I'm simply

13   following up as far as on that direct.

14         There has not been any pretrial orders from you that

15   says that we can't make reference to these issues.  In fact,

16   that's the whole nature, then, of our explanation, then, for

17   the time that it has taken to resolve the protest.  Also,

18   these issues were raised front and center in my opening

19   statement, and during my opening statement Mr. Hutchison had

20   no objection to this.

21         At the conclusion of my opening statement he made

22   certain objections, but none of them made reference as far as

23   to this discretion, then, concerning the reasons for any

24   alleged delay.

25         THE COURT:  Did we address specifically the issue of

RJN1018

99

1  the delay with respect to -- we touched on that, didn't we, in
2  some regard?  Did we touch on that?
3           MS. LUNDVALL:  We touched on it only from the
4  perspective of there was no order that had been issued.
5           THE COURT:  Um-hum.
6           MS. LUNDVALL:  It had always been discussed as to
7  FTB's reason or explanation as to, you know, this delay that
8  has been alleged.  And so to the extent that all of these
9  procedural issues, then, and that was fully explained, like I
10 said, by me and in my opening statement.
11          And this witness, then, has identified that he's
12 reviewed all these things, this various during his direct
13 examination.  I'm simply following through with that.
14          MR. HUTCHISON:  Okay.  First off, there's nothing
15 that requires me to object to counsel's opening statement in
16 reference to this.  If she can't prove it during the course of
17 the trial then I'm going to remind the jury about what she
18 said in the course of opening statements.  That's not a
19 perquisite to me objecting now.
20          Secondly, this witness was asked, did you rely on --
21 did you review these subpoenas in -- the 2002-2006 time
22 period.  Yes, I did.  Did it have any impact on your
23 evaluation of whether the taxpayer representative in the
24 report cooperated or not.  No.  Thank you.  There were two
25 questions.

RJN1019

100

1       There were two questions about whether this impacted
2   upon his analysis of the taxpayer's representative's
3   cooperation.  He said no because, he said, he thought that he
4   dealt with the litigation litigators, and that had to do with
5   the litigation.  That's why he didn't consider it as part of
6   it.  That's what I asked about.

7       Now, counsel -- now, my second objection is in terms
8   of the content of the protective order.  The protective
9   doesn't say -- first of all, the protective order says that
10  California law concerning subpoenas is not effective law.  He
11  can't by affected by it.

12      Ms. Lundvall's giving a misperception that the
13  Franchise Tax Board under the protective order had to ask Mr.
14  Hyatt first before they could get any documents in protest.
15  That's not going to happen.

16      MS. LUNDVALL:  Well, then, from the standpoint that
17  maybe what you're --

18      MR. HUTCHISON:  Can I finish?

19      MS. LUNDVALL:  Oh, you're absolutely right.

20      MR. HUTCHISON:  I'm sorry.  I'm pausing too long.
21  So the content now of the protective order has now become an
22  issue.  So the misconstruing the order is, well, because of
23  this protective order, and by the way it was a protective
24  order that was the product of litigations (indiscernible)
25  stipulation early in the case and it's a court order.

RJN1020

101

1        But the idea is, now, well, because of the

2    protective order the FTB had to ask Mr. Hyatt's permission

3    before they could get any documents in the protest that were

4    produced in the course of discovery.

5        The protective order itself says there's nothing

6    that prevents the FTB from securing documents, just like they

7    would in any other protest.  And so to -- so the suggestion

8    that there's some hurdle that they had to go through which

9    counsel -- referred to, is wrong.

10        All I'm saying is, if this goes any farther then, I

11    mean, I think it's already gone far enough.  We have to get

12    completely into the contents of this and we intend to bring it

13    out in great detail in terms of this protest order to be able

14    to tell the jury this is not some, you know, wall that Mr.

15    Hyatt constructed.

16        If the FTB wanted documents in the protest, they

17    could have asked for them with a subpoena if they didn't get

18    them.  This had to do with the Court saying, you're not going

19    to use this case, the discovery in this case, to supplement

20    your document requests in the protest.

21        If you want to put that in front of the jury, you

22    can, and then if you want to ask for those documents during

23    the litigation you can.  If Mr. Hyatt says no, then you got to

24    go back to California and get them through the subpoena

25    process.

RJN1021

102

1      MS. LUNDVALL: Your Honor, from this --

2      MR. BERNHARD: Mr. Hutchison -- notes an objection

3  after opening (indiscernible). And yes, she had prepared some

4  papers but (indiscernible) this witness (indiscernible) what

5  she's talking about (indiscernible).

6      MS. LUNDVALL: Well, from that standpoint, Your

7  Honor, one of the things that I think that you're at a little

8  bit of a disadvantage, the objection was that somehow I was

9  misconstruing the protective order. Number one, this witness

10 has said, yes, that's my understanding of it, as well.

11     But point number two, you don't have a protective

12 order here to determine -- or to rule upon that objection.

13 And so to the extent that if I am or am not misconstruing

14 that, I would assume that you would want to be, you know, well

15 armed to make that determination or not.

16     I don't believe I am. This witness doesn't believe

17 I am. The objection has been made and I would assume that if

18 in fact that they think that I am construing it wrong that

19 they will bring up evidence of it to the contrary.

20     THE COURT: Well, your point is well-taken, but you

21 need to stay away from the substance of this protective order,

22 don't you?

23     MS. LUNDVALL: Okay. I have no problem as far as

24 with that whatsoever. What I'm trying to do simply is to

25 illustrate from this witness, just so you know where I'm

RJN1022

103

1  going, as to what he did look at, but what he didn't look at.

2  That's all I'm trying to do with him.

3          MR. HUTCHISON:  That's fine.  (Indiscernible) to go

4  to content of the protective, as counsel already has done.

5  And my other ruling -- and my other objection was, and what I

6  was referring to to the pretrial matter is, this is litigating

7  the litigation.  We specifically talked about we're not going

8  to get into -- you know -- and I -- we can get into the fact

9  it (indiscernible) to the Supreme Court and -- documents from

10  the FTB.  Did that delay the process?  Was that fair?  Was

11  that impartial?

12          MS. LUNDVALL:  That had nothing to do with the

13  protest.

14          MR. BERNHARD:  My point is, we're litigating the

15  litigation.  If we're going to litigation motion practice, I

16  want to litigate motion practice, but you've already said we

17  can't do that.  So that was another point of my objection.

18          MS. LUNDVALL:  Well, from this standpoint, maybe

19  this might be a good thing as far as to raise before the jury

20  comes back, what I've told you as far as what I intend to do

21  simply with the balance of this witness, and then maybe if we

22  can take a few minutes, then, before the jury comes back at

23  lunch, then, to raise this issue.

24          THE COURT:  Okay.

25          MR. HUTCHISON:  Thank you.

RJN1023

109

1   your decision.  Do not do any research on any subject

2   connected with this case.  Meet back here at 1:30, please;

3   counsel, at 1:15.

4           MR. HUTCHISON:  1:15.  Okay.

5           (Court recessed at 11:57 a.m. until 1:27 p.m.)

6                   (Jury is not present)

7           MS. LUNDVALL:  -- the benefit, then, of a copy of

8   the protective order so that you could rule properly upon that

9   objection as to whether or not that I had made this

10  representation to that.  We've brought a copy to the courtroom

11  of the Nevada protective order, and the paragraph particularly

12  that I was referencing is paragraph four.

13          And I've also -- have tagged a number of documents

14  that the plaintiffs have either at this point in time offered

15  or are, as far as proposing to offer, into evidence that make

16  reference to these very issues.  But I will allow the Court,

17  then, to make reference, then, to paragraph number 4.

18          THE COURT:  Do you have a copy of this, as well,

19  Mr. Hutchison?

20          MR. HUTCHISON:  Oh, yeah; yeah.  Yep, I'm prepared

21  to address it, Your Honor.

22          THE COURT:  All right.

23          MR. HUTCHISON:  Well, yeah.

24          THE COURT:  When you say paragraph 4, do you mean

25  under findings, paragraph 4 on page 2?

RJN1024

110

1          MS. LUNDVALL:  That's a good point, Your Honor.  The

2     reference that I am making is on page 4, paragraph 4, and then

3     it carries on to page 5, Your Honor.

4          THE COURT:  Okay.

5          MS. LUNDVALL:  My question to this particular

6     witness, to Mr. Antolin, was asking him if he understood the

7     procedure under this protective order, is that the FTB, which

8     first asked for permission from Mr. Hyatt by which to use

9     information obtained during the litigation in the protest, and

10    if in fact that he refused, then they were obligated, then, to

11    go through an administrative subpoena process.  And

12    Mr. Antolin indicated that that was his understanding.

13         And to the extent that that is the procedure that

14    was followed each and every time, then, across the course of

15    this case.  In the event that there was information that FTB

16    wanted to move basically from the litigation side to the

17    protest side, it sent a letter to Mr. Hyatt and his

18    representatives asking for permission.

19         If in fact that they refused that permission, then

20    that's when the administrative subpoena was issued.  And so

21    therefore, with all due respect to Mr. Hutchison, I do not

22    believe that I made any misrepresentations, then, of the

23    procedure that's at issue in this case.

24         THE COURT:  Mr. Hutchison.

25         MR. HUTCHISON:  Here's where the misrepresentation

RJN1025

111

1   came in. Counsel's questions were, of course, leading and

2   said to Mr. Antolin, are you aware that before the FTB could

3   seek any documents that it wanted in the protest there were

4   also litigation that it had to go through this protective

5   order process, that they had to do that.

6         First of all, there's a couple of points Your Honor

7   needs to know. First, the last sentence of -- well, I guess

8   not the last sentence, but the last, well, lines 10 through 12

9   of paragraph 4 on page 5 say, "This protective order in no way

10   affects limits or modifies either parties' respective rights

11   in regard to seeking or opposing an administrative subpoena

12   under California law."

13         Cody Cinnamon will testify through her video

14   deposition that she preferred when she was going to ask for

15   documents that she wanted -- as a protest officer she

16   preferred to go through the subpoena process if she couldn't

17   get them voluntarily from Mr. Hyatt.

18         She was then told, don't use that process, don't

19   seek subpoenas, go through the protective order; we've made a

20   decision at management level in the FTB to go through the

21   protective order process, which was an alternative way, which

22   was to see if Mr. Hyatt would go ahead and voluntarily produce

23   the documents, and then if he wouldn't, then to go ahead and

24   process with the administrative subpoena.

25         They were the ones who made the decision at

RJN1026

1　management level to take the extra step of going through the

2　process in the protective order of asking Mr. Hyatt.  They

3　didn't have to do that.  Cody Cinnamon understood that.  The

4　subpoena -- or the protective order itself says there's

5　nothing that limits their rights to be able to subpoena

6　whatever documents they want in the protest.

7　　　　　　But the point that's being misrepresented again and

8　again and again is that Mr. Hyatt -- you may recall opening

9　statements -- erected a wall.  He erected the wall.  And if

10　you wanted to get something from the court case you had to

11　walk around this wall or climb over the wall or whatever it

12　was to go get them.

13　　　　　　And that's not the case.  If they wanted to get any

14　documents in the world that they wanted, that they had any

15　idea that they thought would be relevant to protest, they just

16　followed their processes.  And the protest officers will

17　testify that we would typically, you know, issue an IDR and

18　then we would ask for a follow-up on the IDRs if we needed the

19　IDRs.

20　　　　　　If we worked in cooperation we had to then send out

21　a letter like the one that was never sent that Ms. Cox wrote,

22　before we can then do it through a subpoena process.  Then we

23　can get the subpoena process going if we want to get whatever

24　documents we want to get and the taxpayer's not providing

25　them.

113

1        So there's a misconstruction of the protective order

2    itself and there's a process by which you can get whatever

3    documents you want.  The idea is, we work -- and this is their

4    point -- the only reason that they're bringing this up is to

5    say, Mr. Hyatt caused the delay in the protest.

6        And the way he caused the delay was that if we

7    wanted documents, certain types of documents, we had to ask

8    him.  Then he would say no, and then we'd have to go through

9    the subpoena process.  That's not true.  If you wanted any

10   document, I don't care what type of document you wanted and

11   Mr. Hyatt wouldn't give it to you, go to California and get a

12   subpoena, just like they did with every other taxpayer.

13       The protective order itself says, "This protective

14   order in no way affects, limits or modifies either party's

15   respective rights in regards to seeking or opposing an

16   administrative subpoena under California law."  The FTB at the

17   management level said, "We're not going to go with the

18   subpoena route, we're going to go through the protective order

19   route.  We'll go through the protective route and ask Mr.

20   Hyatt," and in one case he said, Yeah, go ahead, in another

21   case he said no; we're going to have to have you, you know, go

22   through the subpoena process because we think it's too broad.

23       But the point they're making with the jury is, this

24   order requires them to go through that process, the protective

25   order process by asking Mr. Hyatt first, and it doesn't.  They

RJN1028

114

1  could have just ignored that protective order in terms of

2  wanting to seek documents and used the laws of the State of

3  California to get whatever documents they wanted. That's my

4  first major point.

5       My second major point is, this is an absolute

6  mischaracterization and it's unfair to try to blame Mr. Hyatt

7  for enforcing a court order, enforcing a court order, not

8  violating a court order, enforcing a court order, or requiring

9  adherence to a court order, as though that is somehow a bad

10 thing; that is somehow causing harm to the Franchise Tax

11 Board.

12      We're talking about a court order, not something Mr.

13 Hyatt dreamed up and said, I'm going to erect this law. This

14 was something that a court, Commissioner Bigger, after

15 arguments of counsel and stipulations and everything else,

16 crafted this order.

17      We're getting to the point, Your Honor, where we're

18 going to have to bring in Commissioner Bigger and have him

19 explain why he did this, and having been a part of that

20 process he'll tell you why he did it. We were concerned that

21 the Franchise Tax Board was going to use this litigation and

22 the discovery mechanisms of this litigation, particularly the

23 depositions, to try to augment their protest proceedings and

24 get documents and just basically use the discovery process in

25 this case as a discovery vehicle in the protest case.

RJN1029

115

1        And all Bigger said was, no, you can't do that; you
2   can't do it; you can't use this case in Nevada as a discovery
3   mechanism for your protest proceeding.  You can do whatever
4   you want in California, however you normally do that.  Proceed
5   as though this case were not here.
6        Now, if you decide that you want to go through a
7   process, I will craft a process. I will allow you to go ahead
8   and ask Mr. Hyatt if he'll turn over the documents to you
9   voluntarily, and if he doesn't do that then you got -- then
10  you're back in California doing whatever you're going to do.
11       But if you choose not to ask Mr. Hyatt, that's fine.
12  There's nothing in this protective order that prevents you,
13  that limits you, that bars you from doing whatever you would
14  normally do in California.  And he didn't say anything other
15  than that.
16       But the point, again, is that there's delay caused
17  by this process that is a court order, that is litigated in
18  litigation, which we all said we wouldn't do, and now is being
19  misconstrued in terms of having to go through Mr. Hyatt to
20  seek his permission first, and then having to go through this
21  burdensome subpoena process, when in fact this subpoena
22  process has always been available to the Franchise Tax Board
23  and has always been -- and the additional step of going
24  through Mr. Hyatt has never been required.
25       They chose to do that at the management level.

RJN1030

116

1 That's why I think it's being misconstrued and I think it's

2 being held against Mr. Hyatt, when it was out of the courtroom

3 and should not be held against him, and third, it's litigating

4 the litigation.

5          As I said to you at sidebar, if we're going to

6 litigate motion practice, which is what this was, if we're

7 going to litigate motion practice then I want to be able to

8 talk about the delay occasioned by the Franchise Tax Board not

9 producing many, many documents in this case, including having

10 to take a trip to the Supreme Court to get them, that they

11 reluctantly produced in this case, and the delay that that

12 caused and the bad faith that we think that represents.

13          But of course, we can't get into that because it's

14 motion practice.  But now, the FTB can get into the motion

15 practice of the protective order because they want to say that

16 this is all Mr. Hyatt's fault in terms of the delay.  That's

17 why I think that the -- it's just objectionably unfair.

18          THE COURT:  Any response?

19          MS. LUNDVALL:  Briefly, Your Honor.  Number one,

20 Mr. Hutchison complained because I was using leading questions

21 with this particular witness.  This is cross-examination and

22 that is my right by which to do so.

23          THE COURT:  That's what I thought, Mr. Hutchison.

24          MR. HUTCHISON:  Well, Your Honor, I didn't complain.

25 I said, of course she was using leading questions.

RJN1031

117

```
 1          THE COURT:  Okay.
 2          MR. HUTCHISON:  So I recognize this is cross -- I --
 3   you know -- this isn't my first rodeo.  I've been in trial
 4   before.  I understand on cross-examination you can -- you can
 5   lead.
 6          MS. LUNDVALL:  Second, Your Honor, is that in this
 7   case the issue as to why it took the protest so long to be
 8   resolved is an issue that's front and center with this jury.
 9   The Court has indicated that by allowing, then, the protest to
10   be part of this case and by Mr. Hyatt making allegations that
11   somehow that our handling of the protest, then, was in bad
12   faith.  And so the FTB has to be able to defend itself against
13   that.
14          The defense to that is not litigating this
15   litigation.  The defense to that is what FTB had to do in the
16   State of California, then, by which to get information from
17   Mr. Hyatt.  And I'd like to address as far as two points as
18   far as from the protective order, and to draw your attention,
19   then, to the line 6 through 9, and 12 through 16.
20          THE COURT:  On what page?
21          MS. LUNDVALL:  On page 5, Your Honor.
22          THE COURT:  Okay.
23          MS. LUNDVALL:  That line very -- the sentence that I
24   want to make reference to, Your Honor, is this, "In the event
25   that Hyatt does not agree to voluntarily produce the
```

RJN1032

118

1   confidential information to the California tax case, the FTB

2   may seek to compel Hyatt to produce the confidential -- to

3   produce the requested confidential information in the

4   California tax case through issuance and service of an

5   administrative subpoena, as governed by California law."

6           In sum, if in fact that Mr. Hyatt objects, if he

7   doesn't voluntarily agree, we have got to go through the

8   administrative subpoena process in California. That's what my

9   questions were to this particular witness, and that's what I

10  was addressing.

11          That is what -- an issue that was raised during his

12  direct examination, and in many of the documents, then, that

13  the plaintiffs have proffered they've made reference to these

14  administrative subpoenas. Okay. That's point number one.

15          Point number two is that when you get down, then, to

16  line 12 through 16 it says, "Notwithstanding any other

17  provision in this protective order, no FTB attorney and/or FTB

18  assigned to the pending protest for 1991 or 1992, or assigned

19  to the California tax case," in other words, any of the folks

20  involved in the protest process, the tax case, "shall" -- "no

21  attorney shall have access to any confidential information."

22          In other words, we couldn't move information from

23  one side of the house to the other side of the house. So

24  therefore, FTB has to be able to explain its compliance, then,

25  with the court order, and that's in fact what we have been

RJN1033

119

1    doing.  And that's what in fact that part of this case
2    involves.

3          And so therefore, those are the reasons why, number
4    one, this issue was ever raised in the first place, why in
5    fact that we posed questions to this witness, but also, that
6    there are many additional documents that reference as far as
7    this process.

8          And as the Court has been very clear upon is that
9    the substance of the information going on in the protest
10   doesn't come before this jury, but the process itself is fair
11   game.  And so to that extent what we are trying to inform this
12   jury of is the process, and that is the questions, then, that
13   were posed to Mr. Antolin.

14         THE COURT:  Let me ask you this, because my
15   recollection of this question as it was posed in trial earlier
16   was that it was a general question relating to procedure and
17   it was not one that I thought the witness had even thought or
18   had prepared any response to, because I understood his
19   examination to be fairly limited.

20         But the question as I recall was a very general one
21   dealing with procedure.  Do you happen to have it that you
22   could read it back to me?

23         MS. LUNDVALL:  I can probably get it for you.  I
24   don't have it here at this point in -- you know --
25   immediately.  I'm going to let Ms. Higginbotham, as far as

RJN1034

120

1 raise it, but this is what my recollection was, and let's see

2 whether or not the transcript met with my recollection. I'm

3 going out on a limb a little bit right now.

4          THE COURT: All right.

5          MS. LUNDVALL: My recollection is, is that I asked

6 Mr. Antolin if he was aware that in fact that the protective

7 order required FTB to ask Mr. Hyatt's permission, and if Mr.

8 Hyatt's permission then was denied, if they had to go through

9 an administrative subpoena process in California to move

10 information from the litigation side to the protest side.

11 That's my recollection of the question and let's see whether

12 or not that the transcript, then, bears that out.

13          THE COURT: Okay.

14          MR. HUTCHISON: Your Honor, I would also -- I'm

15 trying to find in my outline where I asked the questions, but

16 you know, I don't want this premise to be that I asked about

17 the protective order during the course of my examination. I

18 asked about the first subpoena process and the second subpoena

19 process and whether or not -- and there may be have been

20 mention of, you know, under the protective order or something

21 like that.

22          I didn't go into substance at all in the protective

23 order. I asked the witness during the course of these two

24 subpoena processes, if he was aware of those, did he take that

25 into account as he was evaluating the cooperativeness of the

RJN1035

121

1  taxpayer representative.

2        He said no.  I asked why not.  He said, because I'd

3  do that as a litigation matter, so it did not impact on the

4  cooperativeness of the taxpayer's rep.  Now, counsel wants to

5  now bootstrap that and say -- is it -- I'm just looking on my

6  questions from my outline.

7        I said, "Did you consider" -- let's see.  This what

8  I believe I said.  This is what was in my notes.  "Did the FTB

9  serve two administrative subpoenas, one in 2002 and one in

10 2006, requesting permission under the Nevada protective order

11 to show documents obtained through this litigation with the

12 protest hearing officer."  He answered, "Yes, I believe."

13        "Did you consider these subpoenas in evaluating" --

14 "did you consider the subpoenas in evaluating whether Mr.

15 Hyatt's representatives during the protest were cooperative?"

16 "I did not."  "Why?"  And then he went on and said, basically

17 what I think I said -- I don't have his answer here, of course

18 -- but where he said that that was part of the litigation

19 process; I wasn't evaluating the litigator's cooperation; I --

20 and I didn't think that that had a bearing on my evaluation of

21 the cooperation.

22        So now, we go from that question about whether the

23 subpoenas process impacted his analysis of the taxpayer

24 representative's cooperativeness, we go from that now to a

25 detailed discussion through leading questions when the witness

RJN1036

122

1　didn't have specific knowledge about the contents of this

2　protective.

3　　　　　Sure he reviewed it probably as part of his

4　materials.  He had to review it in order to be a consultant or

5　an expert in the case.  But then we go through leading

6　questions, now, that the jury now has heard about the contents

7　of the protective order.

8　　　　　Well, nothing that I suggested or asked about

9　elicited any of that kind of response from the witness.  But

10　again, it goes back to what the point is.  Ms. Lundvall's a

11　very good lawyer.  She knows exactly what she's doing, and

12　she's planting in the jury's head that delaying the protest is

13　because of the protective order that Mr. Hyatt insisted be

14　enforced, number one, and number two, somehow erected this

15　wall that prevented us from getting documents.

16　　　　　And on that point, Your Honor, the thing that -- of

17　course, you know, and I know counsel can focus on what parts

18　of the order support their position, but she skipped over the

19　part that I read to you before, "This protective order in no

20　way affects, limits or modifies either party's respective

21　rights in regard to seeking or opposing an administrative

22　subpoena under California law.

23　　　　　So if you want documents and you're a protest

24　officer and Mr. Hyatt won't give them to you, go get them

25　through a subpoena.  But you're not going to use --

RJN1037

123

1    Commissioner Bigger said, you're not going to use this

2    litigation as a means of discovery in the protest.

3         Then the protective order further said in paragraph

4    11, "Nothing in this protective order shall preclude any party

5    to the action, its attorneys or any other person from

6    disclosing or using in any manner or for any purpose any

7    information or documents not obtained in discovery from the

8    producing party in this action if such information was

9    lawfully obtained, even though that some information or

10   documents may have been produced in discovery in this action

11   and designated as confidential information."

12        So Commissioner Bigger in fashioning this protective

13   order was trying to separate the two proceedings.  Do what you

14   normally do in the protest proceeding and then use discovery

15   for purposes of this litigation.  Don't use discovery for

16   purposes of your protest.  That's what it gets down to.

17        But the idea here is, we were handcuffed, we were

18   prevented from getting documents because of this protective

19   order.  That's clearly the indication.  That is not why -- and

20   we were delayed in doing that.  They could have -- and it's

21   going to become even more clear when Cody Cinnamon testifies

22   through video, because I spent a lot of time with her on this.

23        And she said she -- if there was an issue with the

24   documents she wanted just to issue a subpoena.  I asked her,

25   why didn't you, because George McLaughlin or Ben Miller, I

RJN1038

124

1   can't remember which one it was, told me not to; they told me

2   to use this protective order process; my managers told me to

3   do that.

4          And now, the implication is to this jury, Hyatt's

5   making us do this; Hyatt's the one who wants us to do this.

6   That's why I just think it's so -- such a misconstruction of

7   not only the protective order, but really, what the facts and

8   the evidence currently is or will be.

9          THE COURT:  Okay.

10         MS. LUNDVALL:  With all due respect, as far as to

11  Mr. Hutchison, I think that he's overstating as far as the

12  testimony of Ms. Cinnamon, but what he has identified is that

13  this testimony will be presented to this jury, and therefore,

14  he'll have ample opportunity to make this argument, whether or

15  not that -- if in fact that it was Mr. Hyatt or if there was

16  some other reason.

17         And so that is an issue that was completely -- it is

18  a topic that's completely at issue in this case for which the

19  jury will hear testimony about the process.

20         But the one thing that disappoints me a little bit

21  is that Mr. Hutchison keeps trying to lead you to believe that

22  they're trying to be real narrow as far as about this

23  protective order and how that they really haven't opened up

24  the door to this, or that in fact, the FTB did not look at

25  this as something that needed to be complied with, and that

RJN1039

125

1 this was basically a hurdle by which that they had to

2 overcome.

3        There is documents that they've already introduced

4 at Exhibit 354. Their Exhibit 354 talks about this and it

5 talks very specific. This is an exhibit as far as that

6 they've offered, and this is the exhibit that we have

7 stipulated to the admission of, and it talks fully about this

8 process and how FTB believed it was constrained, then, by this

9 particular protective order and how that it had to go through

10 these hoops so as to get the information that it requested.

11        And third, Mr. Hutchison keeps referencing the fact

12 that FTB could have used these administrative subpoenas.

13 Well, we've already seen that they did use these

14 administrative subpoenas, and that's what the questions were

15 that he posed to this particular witness that prompted this

16 whole line of inquiry.

17        And so I'm coming back as far as to the basic point,

18 Your Honor. The process is what's at issue. What we have

19 introduced is evidence of that process. If they disagree as

20 far as with our presentation they have the opportunity to

21 present evidence expressing that disagreement.

22        Whatever our disagreement is, this jury is going to

23 decide what contributed to the delay and the resolution of the

24 protest, and whether or not that that was a bad faith act by

25 the FTB. It's not up -- with all due respect -- to this Court

RJN1040

126

1   to decide that.  You have said that this is an issue then for

2   this jury.

3               THE COURT:  I think -- Mr. Hutchison, you have

4   another thought?

5               MR. HUTCHISON:  I'm just wondering when it was that

6   you made an official ruling that this question is for the

7   jury.  I don't remember that particular ruling.

8               THE COURT:  Well, the ultimate questions are

9   certainly for the jury.  We all agree on that.

10              MR. HUTCHISON:  Absolutely.  But again, it's one

11  thing to allow the evidence to develop itself and draw the --

12  you know -- the witness is testifying, the documents come in.

13  It's another thing to misconstrue a court order and to blame a

14  party for enforcing the court order or for them having to

15  adhere to a court order.  That's litigating the litigation.

16              And you know, I don't want to get all the evidence

17  I've made again, but you know, fundamentally, that's where

18  we're at.

19              THE COURT:  Okay.

20              MS. LUNDVALL:  Your Honor, I found as far as the

21  testimony that --

22              THE COURT:  Go ahead.

23              MS. LUNDVALL:  -- where the objection was.  If I may

24  approach.

25              THE COURT:  Sure.

RJN1041

127

1          MS. LUNDVALL:  Thank you, Your Honor.

2          MR. BRADSHAW:  Your Honor, I might point out that

3     the witness has been in the room through the entirety of the

4     argument.

5          THE COURT:  Well, and it didn't pick up, I suppose,

6     the -- oh, well, you don't have the ability to pick up what

7     transpires here at the Bench.  That would be our internal

8     recording system, wouldn't it.  Well, there's -- that's the

9     downside to the -- having a court reporter in the room.

10    That's the only downside I can think of.

11         You know, I will tell you this.  I don't think that

12    based on what I heard that Ms. Lundvall misconstrued the

13    protective order.  I will say, and I think that the procedural

14    issues are -- the procedural issues particularly with respect

15    to the delay are certainly fair game for both sides.

16         I do think we're getting a little far afield here,

17    and I don't know how -- I don't want to get far afield here,

18    because it's true that the direct examination of this witness

19    is really pretty concise.  So I don't know how much more you

20    have of this witness, Ms. Lundvall.

21         MS. LUNDVALL:  On this particular area, not much,

22    Your Honor, and I will take the Court's comments in mind in

23    making the determinations, then, as to which questions to

24    present.

25         THE COURT:  What was that?

                                                                128

1           MALE SPEAKER:  I just shut my radio off.

2           MR. HUTCHISON:  Test, just a test.

3           THE COURT:  Well, I'm glad they're here when you

4    want them taken away.

5           MR. HUTCHISON:  That's comforting, isn't it.

6           THE COURT:  Let these conversations come to a halt,

7    I think, ladies and gentlemen.  I, for the record, note your

8    objection for the record, Mr. Hutchison.  I don't think at

9    this point we're litigating the litigation.  We don't want to

10   get to the point where we are litigating the litigation.

11   That's clearly contrary to a pretrial ruling.

12          MR. HUTCHISON:  Your Honor, so just so I'm clear on

13   this, are we going -- I wasn't sure in terms of what we're

14   going into more on this protective order with this witness.

15          THE COURT:  I don't know.

16          MR. HUTCHISON:  Or if we are going anymore.

17          THE COURT:  I don't know, either.  I don't know what

18   Ms. Lundvall has in mind.

19          MS. LUNDVALL:  Certainly, everyone will find out.

20          MR. HUTCHISON:  Well, then, Your Honor, what I'd

21   like to do to -- I mean, I'm happy to go into this with

22   Mr. Antolin, then.  What I'd like to be able to do is show him

23   the protective order portions that I just read into the record

24   and ask him if he interprets that to mean that the FTB

25   absolutely had to go through this protective order process or

RJN1043

129

1  if they were free to subpoena documents whenever they wanted.

2           THE COURT:  I think you have the right to address

3  this issue on redirect.

4           MR. HUTCHISON:  Okay.  Good.  Thank you, Your Honor.

5           THE COURT:  I wonder if we'll finish with

6  Mr. Antolin -- is it Antolin?

7           THE WITNESS:  Antolin.

8           MR. HUTCHISON:  Mr. Antolin, yes.

9           THE COURT:  Wonder if we'll finish with him today.

10 What do you think?

11          THE WITNESS:  Me, too.

12          MR. HUTCHISON:  I'm not controlling the examination.

13 I haven't been for the entire day.

14          THE COURT:  Well, you were during a portion of the

15 day.

16          MR. HUTCHISON:  A portion.

17          THE COURT:  I take it there aren't any other

18 witnesses we expect to get to today?

19          MR. HUTCHISON:  We can -- I mean, it depends on how

20 soon -- we fully expected that we would be to our next witness

21 by now, but we an -- and we're prepared to do so, Your Honor.

22          THE COURT:  Okay.  Well, I'm going to step down and

23 see if I can find that wonderful Marshal Diamond and get our

24 jury pool in.

25          MS. LUNDVALL:  Thank you, Your Honor.

RJN1044

COPY

FILED

DISTRICT COURT
CLARK COUNTY, NEVADA
* * * *

GILBERT P. HYATT,           .

          Plaintiff,        .

     vs.                    .     CASE NO. A 382999

CALIFORNIA STATE FRANCHISE  .     DEPT. NO. X
TAX BOARD,                  .
                            .     **Transcript of**
          Defendant         .     **Proceedings**
. . . . . . . . . . . . . . .

BEFORE THE HONORABLE JESSIE WALSH, DISTRICT COURT JUDGE

**JURY TRIAL - DAY 27**

TUESDAY, MAY 27, 2008

APPEARANCES:

FOR THE PLAINTIFF:        PETER C. BERNHARD, ESQ.
                          MARK HUTCHISON, ESQ.
                          DONALD J. KULA, ESQ.

FOR THE DEFENDANT:        PAT LUNDVALL, ESQ.
                          CARLA B. HIGGINBOTHAM, ESQ.
                          JAMES BRADSHAW, ESQ.

COURT RECORDER:           TRANSCRIPTION BY:

VICTORIA BOYD             VERBATIM DIGITAL REPORTING, LLC
District Court            Littleton, CO 80120
                          (303) 798-0890

Proceedings recorded by audio-visual recording, transcript
produced by transcription service.

RJN1045

27

1  standpoint, with any reference to the Nevada Supreme Court
2  and trying to open that issue, and open those issues and to
3  try to, you know, offer that type of explanation to this
4  jury, I think that gets us so far afield and it ends up
5  requiring FTB, then, to start litigating the litigation.
6          MR. KULA:  Your Honor, a couple things.  First,
7  just specifically this email and then I want to address the
8  protective order more generally.  This -- one suggestion is
9  that it's clearly referring to a ruling in this case.  So
10 there could be a stipulation that it's referring to a ruling
11 made in this Nevada case.  I don't think the FTB wants to do
12 that, but that's the evidence and there's other evidence that
13 they took action in the protest tying to this case, if we
14 want to avoid the Supreme Court reference, if you will.
15         Secondly, on the protective order issue.  We had
16 filed a motion relating to both the opening statement and to
17 testimony of Mr. Antolin relating to the protective order.
18 But the more general issue is this protective order, because
19 this litigating the litigation is what's happening.  The FTB
20 is blaming that protective order, Mr. Hyatt's choices, if you
21 will, in the protective order and actually the filing of this
22 case.  I mean, there's a lot of evidence that's either going
23 to come in or the Court's going to have to determine where we
24 go with this case.
25         So what I'm suggesting is there's bigger issues

RJN1046

28

1  here even though we think this is a very significant email
2  and it should come in, that this has to be addressed in the
3  context of the FTB blames the protective order for the delay
4  in this case. They blame it. They want to blame it. And
5  that issue needs to be resolved.

6          So I guess I take this opportunity to say we really
7  need to tee up that motion so that that issue can be decided.
8  Because once we get done with the audit witnesses, and we're
9  not done with them yet, but we're starting to get closer, we
10  really need to -- and I think the Court and the parties may
11  need an hour or two one morning to sort that through. And it
12  goes to similar issues such as this. Not so much a reference
13  to the Supreme Court, but litigating the litigation.

14          You know, they're going to come in and blame the
15  protective order. We're going to then cross-examine, I
16  suppose, on how the protective order didn't cause delay. But
17  we need to sort that out at some point in the near future.

18          THE COURT: Let me ask you this, Mr. Kula, because
19  what I understood Ms. Lundvall to say is that she thinks the
20  second paragraph has no meaning if the first paragraph is
21  removed. And so, I'm curious to hear your response since
22  that second paragraph begins "I think this means" and the
23  second sentence of that paragraph goes on to say "this puts a
24  new light on things" and then it addresses the protective
25  order. So I'm curious to hear your response to it.

RJN1047

29

1          MR. KULA:  Well, again, so the point I'm getting at

2    is I think on something like this, we'd be able to cross-

3    examine and say this was -- when it says "I think this

4    means", what it's referring to is a ruling in this case.

5    There was some action taken in this case and the FTB, in

6    response to that, put a hold on the protest or did what's

7    said here.  I don't think we're going to get away from that

8    unless they're going to withdraw this defense that the

9    protective order was the cause of delay in this proceeding.

10         But that's clearly what we're hearing and what

11   we're going to hear is that the protective order the Court

12   issued was the cause of delay.  And that's why I say, we're

13   have to  -- we're going to have to grapple with that and come

14   to some clear demarcation lines.

15         MS. LUNDVALL:  And, Your Honor, from this

16   perspective, if I were to offer this observation and maybe

17   this assistance to Mr. Kula on this particular point.  Ben

18   Miller, I do believe, will be a witness at the time of trial.

19   I know that the plaintiffs have not scheduled him, but I do

20   anticipate that Mr. Miller may be presented during our case-

21   in-chief.  And so therefore, it's possible that these issues

22   can be explored, it's just that this document cannot be

23   introduced, then, into evidence.

24         And so, to that extent, that that may be, you know,

25   kind of the middle ground that Mr. Kula is looking for

RJN1048

30

1  because we continue to believe that without that first

2  paragraph, the second paragraph, you know, can't be

3  understood, let alone explained, and therefore that's the

4  difficulty.

5         One additional comment is that we filed our

6  opposition to their motion they had filed.  And so, our

7  written opposition, then, is in front of the Court.  And I

8  don't know if they wish to file a reply or not, but those

9  issues may come up, you know, down the road as it relates,

10  then, to the Nevada protective order.

11         THE COURT:  Do you know when it was filed?

12         MS. LUNDVALL:  It was filed this morning or, at

13  least --

14         MS. HIGGINBOTHAM:  Your Honor, if I could --

15         MS. LUNDVALL:  -- it's in the process of it.

16         MS. HIGGINBOTHAM:  Yeah, that will be here later

17  this morning and it will get filed in open court today.

18         THE COURT:  So, you see, that explains why I

19  haven't seen it, Mr. Kula.

20         MR. KULA:  Yes, I haven't seen it either, the

21  opposition anyway.

22         THE COURT:  I'm glad there's a good reason I

23  haven't seen it yet.  Let me -- I'm sorry, I didn't mean to

24  interrupt you.

25         MR. KULA:  I was just going to say that our -- this

RJN1049



COPY       FILED

DISTRICT COURT
CLARK COUNTY, NEVADA
* * * *

COPY

GILBERT P. HYATT,       .

       Plaintiff,    .

    vs.             .

CALIFORNIA STATE FRANCHISE   .
TAX BOARD,

       Defendant    .

. . . . . . . . . . . . . . . . .

CASE NO. A-382999

DEPT. NO. X

**Transcript of
Proceedings**

BEFORE THE HONORABLE JESSIE WALSH, DISTRICT COURT JUDGE

### JURY TRIAL - DAY 38

WEDNESDAY, JUNE 11, 2008

APPEARANCES:

FOR THE PLAINTIFF:      PETER C. BERNHARD, ESQ.
                         MARK HUTCHISON, ESQ.
                         DONALD J. KULA, ESQ.

FOR THE DEFENDANT:      PAT LUNDVALL, ESQ.
                         CARLA B. HIGGINBOTHAM, ESQ.
                         JAMES BRADSHAW, ESQ.

COURT RECORDER:       TRANSCRIPTION BY:

VICTORIA BOYD         VERBATIM DIGITAL REPORTING, LLC
District Court       Littleton, CO 80120
                    (303) 798-0890

Proceedings recorded by audio-visual recording, transcript
produced by transcription service.

RJN1050

9

```
 1   I don't think that the Court has excluded the things that
 2   Ms. Lundvall may be thinking about, but we can talk about
 3   that whenever.
 4            MS. LUNDVALL:  It sounds like we could do that as
 5   far as at the lunch break, Your Honor.
 6            THE COURT:  Okay.  Mr. Kula.
 7            MR. KULA:  Yes, Your Honor.  We have on file a
 8   motion relating to statements made during the opening, and
 9   perhaps even more importantly, testimony given by Mr.
10   Antolin, or questions, I should say, asked of Mr. Antolin
11   relating to the protective order in this case.
12            And the input of this is not just what was said in
13   opening, and not just what Mr. Antolin said, but it has
14   implications as to how this case is going to be tried
15   relative to the delay portion, the bad faith delay and the
16   protective order.
17            What the FTB has stated, implied in opening and
18   outright stated in questioning Mr. Antolin was that the
19   protective order had some requirement that made the FTB
20   forestall using California law, and California procedure;
21   they had to go to Mr. Hyatt and ask permission before they
22   could go to California and use their administrative process.
23            And that's just absolutely wrong under the history
24   of this protective order, the history of this case, what --
25   the statements made by Judge Biggar, statements made by Judge
```

RJN1051

10

1  Saitta in 2002 when they tried to overturn the protective

2  order.

3          The point is, they can't come in -- they can't come

4  in and represent to the jury that the protective order

5  required something it didn't require.  And that's not a

6  question for the jury really to decide, in any event.  That's

7  for the Court to decide.  And that's the point of our motion,

8  is that there's -- if the FTB is going to present that this

9  protective order required them to do certain things that it

10  didn't require them to do, we have to come in and rebut that.

11          And what happened in Mr. Antolin's testimony was

12  precisely that.  He was asked questions about the protective

13  order, that it required certain things, and he gave answers

14  to Ms. Lundvall.  And then Mr. Hutchison came up and

15  presented the protective order and asked him to look at other

16  sections, is this -- does it require in this section of the

17  protective order, and that's in front of the jury, and we're

18  asking Mr. Antolin to interpret it.

19          Well, if they're going to present other witnesses,

20  which we assume based on the statements, they're going to

21  come in and present witnesses that say, the protective order

22  required us to do that.  In fact, in their opposition, page

23  5, lines 8 to 11, and page 11, lines 7 to 8, they say that

24  they had to ask Mr. Hyatt, that the protective order put some

25  damper -- I'll use the word -- on their rights under

RJN1052

11

1    California law before they could go use the subpoena process.

2              That's what they say the protective order means.

3    It says at page 11, lines 7 to 8, they say, "The FTB was

4    required to seek Hyatt's voluntary disclosure information

5    cloaked as confidential under the protective order before it

6    could resort to the issuance of an administrative subpoena."

7              One, that's not true. They didn't have to do that

8    and that shouldn't be debated in front of the jury. The

9    judge should decide that or should make clear that. But two,

10   it's not necessary for the defense. Their idea that they

11   need this issue for the defense is simply not true.

12             If they want to present the idea that they had to

13   use an administrative subpoena and Hyatt would not -- Mr.

14   Hyatt would not voluntarily produce materials, they can say

15   that and then try to present the history of having to obtain

16   a subpoena in California. It doesn't implicate the

17   protective order in this case.

18             In fact, they want to say that Mr. Hyatt abused the

19   protective order in this case. They cite the example of --

20   well, there were newspaper articles designated under the

21   protective order. Under all the many documents in this case,

22   there may have been articles attached to documents and so

23   forth.

24             But the protective order is very clear. If the

25   document is available from another source, it's -- they can

RJN1053

12

1   use that however they may use it, a public source. A

2   newspaper article can be downloaded from the Internet.

3   There's nothing that prevented them from taking a newspaper

4   article they thought was relevant for use in the protest.

5           Just because it got produced in this case somehow

6   they can't use it; that's just not true. But for them to

7   come in and say Mr. Hyatt abused the protective order by

8   doing that, again, that's an order for the Court to decide.

9   They never came in and asked the Court for a ruling that

10  there was an abuse of the protective order.

11          Their second argument about abusing the protective

12  order they want to present is that Mr. Hyatt prevented

13  critical and necessary information from going from this case

14  to the protest. Well, it gets back to, if they had critical

15  and necessary information they could have used the subpoena

16  process.

17          Secondly, is the jury going to decide whether or

18  not the information was critical and necessary under the

19  protective order -- or excuse me -- in the protest when in

20  fact we couldn't take discovery from the protest officer? We

21  were precluded from asking the protest officer, for example,

22  Ms. Cinnamon, about what documents were necessary in her

23  deposition.

24          She testified to some extent that she was seeking

25  documents that she needed or she thought were needed, but we

RJN1054

13

1  couldn't ask her what those documents were.  So what we're
2  going to have in front of the jury is a generic debate.
3  They're going to say, we need the documents, we're going to
4  say they didn't, but we can't get into the substance of them.

5         So this protective order, the way they raise it,
6  implicates many, many issues in this case.  And the point of
7  this motion is to have guidance of the Court.  First of all,
8  we ask that the Court make it clear that they can't represent
9  the protective order meant things that it didn't mean, what's
10 clear judicial history of this order.

11        Secondly, going forward, then, I don't think it
12 affects how they have to present their case, but these
13 statements have been made to the jury concerning the
14 protective order.  So we are looking for a curative
15 instruction.  I would say that's important.

16        But most importantly is our process going forward
17 with this protective order, because they are -- there are --
18 if we have to get into debating what the protective order
19 means, there's plenty of documents we can use.  I just don't
20 know that that's proper, Your Honor, to put the jury in the
21 position of having to do that.

22        So with that, Your Honor, I'd submit.  I think our
23 papers are clear of what we're seeking, but that's why I
24 thought we needed to have some oral argument on this and
25 discussion with the Court as to where this issue goes.

RJN1055

14

```
 1            THE COURT:  Okay.  Ms. Lundvall.
 2            MS. HIGGINBOTHAM:  Your Honor, I'll speak to the
 3   protective order.
 4            THE COURT:  Oh, Ms. Higginbotham, sorry.
 5            MS. HIGGINBOTHAM:  Good morning, Your Honor.
 6            THE COURT:  Good morning.
 7            MS. HIGGINBOTHAM:  Brian, can you please bring up
 8   the protective order, bring up page 4 and page 5.  For the
 9   Court's reference, this can be found at Exhibit 1 of Mr.
10   Hyatt's motion.  I think this is where we need to start.  The
11   most important fact of this entire motion has to do with the
12   idea that the FTB has somehow misrepresented the terms of the
13   protective order by stating that there was a mechanism that
14   required each party to provide the other party notice before
15   certain documents could be moved from the litigation to the
16   protest that had been designated as confidential.
17            And to back up, as the Court's well aware, under
18   the protective order each party could designate certain
19   documents as confidential.  That was the party's decision to
20   make.  Mr. Hyatt chose which documents he wanted to have as
21   confidential; we chose ours.
22            But the protective order had a particular mechanism
23   that was set up because of the unique circumstances of this
24   case, with the protest going on simultaneously with the
25   litigation.  And this is the provision.  We did not
```

Verbatim Digital Reporting, LLC ♦ 303-798-0890

RJN1056

15

1   misrepresent this provision.

2           This provision specifically states that, "If an

3   opposing party would like to use specific information that

4   has been designated as confidential in the litigation, that

5   party must give notice to the opposing party and specify the

6   precise confidential information it desires to be submitted

7   to the California tax case."

8           If the opposing party objects to the use of that

9   confidential information, then the party can go and is able

10  to use whatever mechanisms under California law that are

11  available to it.  But the most critical point is the next

12  sentence where it says, "In the event Hyatt does not agree to

13  voluntarily produce the confidential information in the

14  California tax proceeding, the FTB may seek to compel Hyatt

15  to produce the requested information through the issuance and

16  service of an administrative subpoena."

17          Now, quite frankly, Your Honor, I'm not quite clear

18  how it is that by talking about this very language in

19  paragraph 4, which incidentally, was not quoted to you in the

20  motion, it was not quoted to you in the reply, has ever been

21  in any way misrepresented.

22          And quite frankly, the Court's already decided this

23  issue.  On May 7th, right after the cross-examination of

24  Mr. Antolin, this very issue was raised.  We had a long

25  hearing outside of the presence of the jury and Mr. Hutchison

RJN1057

16

1  made two arguments.  And the first was, we misrepresented the
2  terms of the protective order.
3       He stated just like the motion states, that we
4  somehow indicated that we were not able to use California law
5  without Mr. Hyatt's permission.  Well, frankly, that's never
6  been what we've said.  We never said that the protective
7  order precluded us from using a subpoena.
8       We never said that the protective order precluded
9  us from using California law.  What we said is that there was
10 a mechanism set up in the protective order that required us
11 to take these steps prior to going to that particular
12 mechanism, and the Court agreed.
13      On page 10 of our motion we quote -- or of our
14 opposition we quote the Court's exact statement, and that
15 was,  "It doesn't appear to me that the FTB has
16 misrepresented the protective order."  The Court has decided.
17 The Court has interpreted.  The Court has already reached its
18 ruling on this very issue.
19      The second argument made by Mr. Hutchison was that
20 we were trying to litigate the litigation, which is the same
21 argument that we also see in the motion and what Mr. Kula is
22 talking about again today.  But again, the Court already
23 ruled on that.  The Court said, I don't believe that we're
24 litigating the litigation, and the Court's correct; we're
25 not.

RJN1058

17

1         We're not arguing that the protective order itself

2 somehow precluded us from using the mechanisms of the

3 subpoena. We're not arguing that the way that the protective

4 order was created, or the mechanisms with which we use motion

5 practice and oral arguments and everything else is somehow

6 improper.

7         Simply, what we're stating is the very terms of the

8 protective order set up this system and Mr. Hyatt abused that

9 system, and there's evidence of that abuse. And that's what

10 we're talking about. The Court already has stated that we

11 weren't litigating the litigation.

12         And frankly, if this motion is granted and Mr.

13 Hyatt is permitted to do what he's asking the Court to do,

14 that's exactly what we'll be doing. We'll bring in a whole

15 slew of evidence about motion practice, oral arguments,

16 transcripts, and frankly, what will end up happening is Mr.

17 Bradshaw, Mr. Hutchison, Mr. Kula will all need to become

18 trial witnesses, which is precluded under the Local Rules.

19         Moreover, Commissioner Biggar will have to come in

20 and he'll have to testify about what he was doing and what he

21 thought and what his thought process was. Now, one of the

22 things that I'd like to make clear is that Mr. Kula makes

23 this indication that we don't need to use this as part of our

24 defense.

25         Well, in all due respect to Mr. Kula, I don't think

RJN1059

18

1  it's his position to tell us what defense we can put up

2  against his claims, that somehow the FTB has -- that somehow

3  the FTB in bad faith has delayed the protest.  This is his

4  issue.  He placed this in front of the Court.

5       He placed this issue of bad faith delay.  The FTB

6  is entitled to a defense to that claim, and our defense is

7  simply this.  There was a protective order.  It contained

8  this mechanism, which the Court has already interpreted.  Mr.

9  Hyatt abused that mechanism, and as a result the protest was

10  delayed.  That's our defense.

11       That's exactly what we stated in our position in

12  the opposition, and as I've already stated, the Court's

13  already ruled on both of the issues that have been presented

14  in the motion, and therefore, I don't believe that we should

15  be here relitigating this very issue again.  And with that,

16  we'll submit.

17       THE COURT:  Well, I have a couple of questions for

18  you, Ms. Higginbotham.

19       MS. HIGGINBOTHAM:  Absolutely.

20       THE COURT:  One of them is, you know, the parties

21  have been -- the attorneys have been involved in this case a

22  lot longer than this Court has.  And it's my understanding

23  that the parties negotiated this protective order, that it

24  took months to do so.

25       MS. HIGGINBOTHAM:  That may be true.  To be

RJN1060

19

1  perfectly frank with Your Honor, I don't think I had

2  graduated from law school at the time the protective order

3  was entered in this case.

4      MR. BRADSHAW:  I was there.  This protective order,

5  we had years of nuclear discovery by Mr. Hyatt against the

6  FTB, and the time came when the FTB started doing discovery

7  against him.  Many, many documents were withheld because they

8  were -- there were claims of confidentiality, proprietary

9  trade secrets and whatnot, and we just couldn't get a thing.

10      And we had motion practice.  Finally, I tendered

11  the first draft of the protective order to try and get this

12  thing moving along.  Much of the protective order was what I

13  proposed, but not the paragraphs that -- or requirements that

14  are at issue right now.

15      That was the plaintiff's provision that the

16  discovery commissioner allowed, that going forward gave them

17  an opportunity to mark, to designate discovery documents they

18  produced, or deposition testimony that was taken, mark it,

19  bringing it under the protection of the protective order.

20      That included most of what was produced by

21  Mr. Hyatt.  As we evolved into the discovery concerning the

22  complaint allegations, things like, I moved to Nevada on

23  September 26th, 1991, thereby changing my residency, well, we

24  wanted to test the truth of that.

25      So we got into things like the Continental Hotel

RJN1061

1 and destruction of the records and the Bankruptcy Court, and

2 we got into lots of what we've determined as after acquired

3 facts; by that I mean, what we discovered from him concerning

4 where he truly was, what he was truly doing in the State of

5 California, the substance of that contact in California or

6 Nevada.

7 Well, all of that was cloaked under the protective

8 order. As Your Honor has seen from Ms. Woodward's December

9 30th, 1999, letter, it's lengthy and in much detail, because

10 the auditor previously had made general requests that were

11 interpreted away, avoided, construed so that things didn't

12 come forward like, where were you, where were you, where were

13 you.

14 The protest officer is a seasoned lawyer and she

15 asked very nitty-gritty questions that finally gets these --

16 aimed at finally getting these responses. Well, meanwhile we

17 have the protective order. Mr. Dunn in this litigation is

18 faced with knowledge of all of this after acquired evidence,

19 notes that in the protest Mr. Hyatt's tax attorney, Mr.

20 Coffill, isn't turning that stuff over to the protest

21 officer.

22 There is a Superior Court action, subpoena Superior

23 Court action, Court of Appeal action that the FTB ultimately

24 prevails on for the most part, after we go through this

25 process with the Nevada protective order, and much of that

21

1   was turned over and the after acquired evidence.

2        And if Your Honor was to look at the ultimate

3   decision in the protest you would see how crucial that

4   evidence was.  But it took years to get to and from Superior

5   Court and the Court of Appeal, and this was a multi-stage

6   process.  As more discovery was done and Mr. Dunn realizes

7   there's more of this evidence, he's duty bound to make sure

8   that gets to the protest officer.

9        So then we go through this drill again and again,

10  and this explains the delay.  But although much of the

11  protective order, which is standard, was mine and they agreed

12  -- or the discovery commissioner agreed to much of it, it's

13  not the part that's at issue today.

14       And the delay that they put in issue in this case

15  can only be explained by the FTB having to cope with that

16  process.

17       MS. HIGGINBOTHAM:  And, Your Honor, if I can just

18  add to that.  Again, we're not arguing that the way that the

19  protective order came to be is at issue.  We aren't arguing

20  that Mr. Hyatt -- we aren't going to put those kinds of facts

21  before the jury.  That's not what we're talking about.

22       What we're talking about is the fact that we have

23  this mechanism.  We were required to use it.  If we hadn't,

24  we'd be standing here under contempt of Court for not having

25  followed the protective order.  That's the reality.  We had

Verbatim Digital Reporting, LLC ♦ 303-798-0890

RJN1063

22

1  to give notice to the opposing party of the information that

2  we wanted to use in the protest.

3           Mr. Hyatt knew that there was evidence here in the

4  litigation that was relevant.  It had been asked for on

5  numerous occasions, not only from the auditor, but from the

6  protest hearing officer.  FTB reasonably says, this evidence

7  we want to use in the protest.

8           The sentence that is at issue, Mr. Hyatt then had

9  an opportunity, he could voluntarily agree to move that

10 evidence over to the protest hearing officer or he could

11 refuse.  And if he refused, then we had to go through the

12 subpoena process, and that's exactly what happened in this

13 case, several times.

14          I think in fact we had to get to that point three

15 times.  Two times we actually issued subpoenas.  A third time

16 we didn't quite get to that point.  But that's the issue.

17 The issue isn't how the protective order came to be.  It's

18 not what the litigation was underlying it.

19          It wasn't the arguments made by the parties.  It's

20 the fact that we have the protective order and that Mr. Hyatt

21 -- we have this mechanism and that that mechanism was abused,

22 which in part caused the delay that we see in the protest;

23 and that's our defense.

24          THE COURT:  Let me ask you this.  The second

25 question is, you said several times that Mr. Hyatt has abused

RJN1064

23

1  the protective order.  How has he abused the protective

2  order?

3        MS. HIGGINBOTHAM:  Just as I was just explaining,

4  Your Honor.  We have a protective order.  He has documents

5  that he needs to provide to the FTB.  We've made discovery

6  requests.  We've had depositions.  He cloaks all of that

7  under the protective order.  He says all of this is

8  confidential under the Nevada litigation.

9        Well, what happens is that kicks in this provision.

10  Now, FTB on the litigation side knows that there's evidence

11  that's relevant and the perfect examples that Mr. Bradshaw

12  just gave you, which is the Continental Hotel story, we see

13  time after time after time where the auditor had asked, where

14  are you; where are you on September 26th until October 20th.

15        This question was raised over and over and over

16  again.  It was never answered during the course of the audit.

17  Well, here we are now in December of 1999.  Protest hearing

18  officer sends a letter, the very letter Mr. Bradshaw is

19  discussing; says, again, where were you; provide me receipts;

20  provide me documents; tell me where you were living, where

21  your toothbrush was between this time frame.

22        Then we move.  We move on.  We're now in May of

23  2000.  Mr. Hyatt has still not responded to the protest.

24  He's still not responded to the auditor, and then now we have

25  evidence of where he is.  Mr. Kern testifies at his

RJN1065

24

1  deposition, Mr. Hyatt was at the Continental Hotel.  Guess

2  what?  He had cloaked that deposition as confidential under

3  the Nevada protective order.

4         He had not provided it to the FTB.  Now, the FTB is

5  in the position of knowing that there's certain evidence in

6  the litigation that needs to be given to the protest hearing

7  officer, but yet it can't do that until it goes through this

8  process.  And then the process undertakes.

9         Now, they -- I believe if I -- correct me if I'm

10 wrong, but there was some evidence that was then turned over,

11 not shortly thereafter, to the protest hearing officer, but

12 there were several other examples.  For example, the NEC

13 contracts and other things where they had been repeatedly

14 asked for, and then when we told Mr. Hyatt, we get this

15 documentation in litigation.

16         We know it's relevant.  We know it's absolutely

17 important to the protest hearing officer to receive that.  We

18 ask Mr. Hyatt or we tell him, look, this is evidence that we

19 want to use in the protest.  It's relevant to the protest,

20 and now, he has a decision to make.  Is he going to

21 voluntarily turn that over or is he going to force the FTB to

22 go through the administrative protest -- or the

23 administrative subpoena process.

24         Mind you, the administrative subpoena process isn't

25 one of those processes where we just go get a piece of paper

RJN1066

25

1    and that's the end of it.  It's just like anything.  It takes

2    time to go through that process.  And then Mr. Hyatt has the

3    right to oppose that process, which is exactly what he did.

4            So here we have evidence in the litigation.  We

5    want to move it over to the protest, but yet, he now says no,

6    I'm not willing to do that; you go get an administrative

7    subpoena.  That's what we're talking about.  That's what we

8    ended up having to do.

9            We go to get the administrative subpoena.  We then

10   go through litigation, Superior Court of California,

11   California Court of Appeals.  But without that underlying

12   understanding of why it is that the FTB went through this

13   process and how it got to that administrative proceeding in

14   the California courts, the Court has to understand and this

15   needs to be presented to the jury, why it is that the FTB

16   went through the processes it did and why there was some

17   delay that was actually as a result of this mechanism and how

18   it was being used in the course of the litigation.

19           MS. LUNDVALL:  And if I could add to that, Your

20   Honor.  One of the things that the jury will not be asked to

21   decide is whether or not that Mr. Hyatt abused this

22   protective order.  One of the things that we have done is

23   this, and we're trying to give an explanation to the jury as

24   to the length of time it took to resolve the protest.

25           And so to the extent that what the demonstration

RJN1067

26

1   has been already and the Court has ruled admissible is in

2   fact that there was this process in place, the FTB employed

3   this process and it took time for that process, then, to run

4   its course, rather than the allegation, then, that has been

5   placed against us that somehow we weren't doing anything,

6   that we were just sitting there, we were putting this on hold

7   and that we were trying to use this as some type of a

8   coercive tactic against Mr. Hyatt.

9           And so that's where the give and take comes with

10  this, and -- but I -- the thing that -- I guess that from my

11  perspective, that I look at it as, particularly as a trial

12  attorney, is I look at what Mr. Kula has asked the Court to

13  do.  Number one, he's asked the Court to undo two of the

14  previous rulings that you've already made.

15          And now -- and to instruct the jury contrary to

16  those two previous rulings.  That's point number one that

17  he's asking you to do.  The other thing that he's asking you

18  to do is he's asking you to admit a whole bunch of documents

19  as to how this protective order came to be.

20          He's asking you to admit transcripts concerning the

21  arguments on how the protective order came to be.  He's also

22  asking you to admit various rulings, then, by Discovery

23  Commissioner Biggar on how this protective order came to be.

24  And so that's what he is asking for.

25          And it is those two things that we are objecting

RJN1068

27

```
 1   to, is that there should not be a curative instruction,
 2   because in effect what the Court would be doing, then, is
 3   telling the jury on the issues that I've already ruled upon
 4   and have already said is admissible testimony, and there has
 5   already been testimony to you, now you have to either
 6   disregard it, or as far as somehow that it was wrong in the
 7   first place.
 8           And so that's what I have the most trouble with,
 9   and as he's asking the Court, then, to reverse itself.  The
10   second thing is that by asking to put all of these materials
11   into the record, he's asking in effect for the attorneys to
12   inject themselves as witnesses, and he's also asking
13   discovery commissioner -- Discovery Commissioner Biggar to
14   inject himself, then, as a witness into this litigation, and
15   that we think is inappropriate.
16           THE COURT:  Well, I had some questions for Mr.
17   Kula, too, but I'd like to hear his response.
18           MR. KULA:  Yes, I have several responses.  First,
19   though, I'll -- regarding what Mr. Bradshaw said, I'm not
20   going to debate whether it was mostly his or mostly ours.
21   There was drafts back and forth, and at one -- we even had a
22   telephone conference with Commissioner Biggar before we had a
23   hearing on this.
24           And so some of this language was his suggestion at
25   that telephone conference, which we then put in a draft, a
```

RJN1069

28

1  final draft of ours, if you (indiscernible) presented to the

2  Court.  Then at the hearing we had a month or two later he

3  then put in more language.  So much of this language -- I

4  think all of this language that we're debating comes from

5  Commissioner Biggar himself.

6        And Ms. Higginbotham points out the language there

7  that talks about seeking Mr. Hyatt's permission.  Obviously,

8  right after that language, paragraph 4, page 5, lines 10 to

9  11, this is exactly what Commissioner Biggar was getting at.

10  This is exactly what Judge Saitta was getting at:

11        "This protective order in no way affects, limits or

12  modifies either parties' respective rights in regard to

13  seeking or opposing an administrative subpoena under

14  California law."  And then there's paragraph 11 on page 7;

15  essentially says, "Nothing in this protective order shall

16  preclude any party to the action," if you can get it in some

17  other manner, i.e., California law.

18        I'm not clear what the FTB is saying, if they're

19  saying they had to wait to go for an administrative subpoena

20  or they didn't have to wait.  But the record of the case is

21  clear, they didn't have to wait to do that.  There's a

22  document already stipulated in evidence in this case,

23  internal FTB document where they knew that.  They're saying,

24  go get the subpoena; we're not going to use this process.

25        So now, they're coming to the Court and saying

RJN1070

29

1    that, no, they had to go through this process.  We shouldn't

2    be debating what the protective order means.  The point --

3    the whole point of this protective order -- and getting back

4    to what Mr. Bradshaw was saying -- is you had two procedures

5    here; the tax protest proceeding and this litigation.

6            And this Court did not want to put itself in a

7    position of saying, hey, anything in this case, yeah, you can

8    go use it in that protest proceeding.  The point was,

9    California has a process.  If those documents are appropriate

10   and there's authority to obtain them for the protest officer,

11   use the California process.

12           The Court did not want to be in a position here of

13   saying what should or shouldn't be used in California.  Let

14   California decide that.  That was the point of the protective

15   order.  And that's consistent with the idea, if you have the

16   right, if Mr. Dunn, whose litigation counsel's been at most

17   proceedings, sees something in this case he thinks is

18   relevant to the protest, where he was a protest officer, they

19   have rights under California law.

20           They can go issue an administrative subpoena.  They

21   can do what they have to do under California law to get those

22   materials.  That's what the Court was trying to do and

23   separate these two proceedings.  So now, the FTB wants to

24   come in and say, well, because we have these separate

25   proceedings and Mr. Hyatt wouldn't let us -- wouldn't

RJN1071

30

1  voluntarily give this information, he's violating -- he's

2  abusing the protective order.

3      Now, we hear maybe they're not going to say he's

4  abusing the protective order.  They've said that in their

5  motion several times.  That was part of their defense, that

6  he's abusing the protective order.  If what they're going to

7  say is, "Well, Your Honor, we asked for his permission; he

8  didn't give it, so then we had the right to use a subpoena

9  and then we went through the subpoena process," that's fine.

10      But they can't say that they had to ask his

11 permission.  They didn't -- that's just not a true statement.

12 It's not a true statement of what was intended in this

13 protective order.  And then if we get into a debate on what

14 happened to the California subpoena, fine, we can go over

15 that -- that portion of it.

16      But -- and Ms. Higginbotham says, well, we don't

17 want to put in all the history of this.  Well, that's what we

18 have to do, then.  If they're going to represent to the

19 jury -- and I would refer the Court to our Exhibit 9 to our

20 motion, which is a transcript from the May 7th testimony of

21 Mr. Antolin, page 99, it's Ms. Lundvall is questioning

22 Mr. Antolin.

23      And the questioning is -- this is what brings this

24 issue to a head.  She starts on line 6:  "And knew that --

25 you understand there was a request" -- answer -- "that had to

RJN1072

1  go first to Mr. Hyatt. Is that right?" The answer is,
2  witness is putting on the spot, "Yes, or Mr. Hyatt's counsel.
3  I can't remember." "Or Mr. Hyatt's counsel?" Answer:
4  "Right."
5      And then the question, "And if in fact they
6  refused, then the FTB could issue, then, an administrative
7  subpoena." That's what they want to say to this Court, and
8  that's what's wrong. And Mr. Hutchison objected. Now,
9  they're saying, Your Honor, you ruled on this, you know,
10 therefore, that's your ruling. I don't think the Court --
11 your ruling was intended to reach this broad issue.
12     And that's why we're bringing it to the Court's
13 attention, because it does get into litigating the
14 litigation. Because if they're going to get in -- be able to
15 say this, that that's what they had to do, then we have to be
16 able to cross-examine the witnesses and say, no, you didn't;
17 no, you didn't.
18     In fact, the Court record shows you didn't, and
19 Mr. Dunn was at the hearings of the protest officer -- or at
20 the protective order hearing. So either it's not in the
21 case, or if it's in the case then we have to be able to fully
22 cross-examine the witnesses and present our side of the case.
23 That's where this issue goes.
24     So that's bottom line, Your Honor. Our view is
25 that what they did is -- because there's internal documents

RJN1073

32

1  early on where they were going to go -- there was a suggest

2  -- there was a statement to go for administrative subpoena.

3  Then they don't do it for several years.

4        They didn't want to move this along.  They wanted

5  to interpret this protective order in the most cumbersome,

6  inefficient way possible.  They didn't want to go out and get

7  documents.  They could have done it.  And that goes to the

8  issue of was it done in bad faith, the delay, or was there

9  some excuse they had for delay.

10        But it goes right to the delay issue.  There's

11  internal documents that talk about a hold being placed on

12  this case.  And they're going to say, well, we had to use the

13  process here.  We're going to say no, you were intentionally

14  trying to delay it, because you could have gone out and

15  gotten documents through the California process.

16        So it implicates a lot of issues, Your Honor.  And

17  I think we brought it to a head with Mr. Antolin's testimony

18  and we do need guidance from the Court on this.

19        MS. LUNDVALL:  Your Honor --

20        MR. HUTCHISON:  Your Honor, can I just add one

21  point?  Here is the fundamental misrepresentation to the

22  jury, and that's this, that the protective order affected our

23  ability in California, our ability to proceed with the tax

24  proceeding and with the protest.

25        The problem with that statement is, Commissioner

RJN1074

33

1   Biggar disagreed with it, said the opposite.  Judge Saitta

2   disagreed with it, said the opposite, and the protective

3   order itself disagrees with it and says the opposite.  They

4   want to be able to take a document that specifically says,

5   this doesn't affect what the FTB can do in California, and

6   two judges who said it with Mr. Dunn and Mr. Bradshaw sitting

7   there, and then come into the jury and say, this protective

8   order affected what we could do in California.

9           That's the fundamental misrepresentation about

10  what's going on here.  And if it's going to be allowed to

11  come in, then we get to show what Commissioner Biggar said

12  about it.  We get to show what Judge Saitta said about it.

13  We get to show what the language says about it, and now the

14  jury's going to decide what should be a question of law,

15  which is whether or not the protective order affected what

16  the FTB could do in the protest in terms of doing whatever

17  investigation they wanted.

18          The concept is ludicrous, that a Nevada court can

19  order something that will affect the State of California in

20  California in terms of their proceedings, what they can do in

21  California.  Now, if they want to do something in Nevada,

22  like ask for the Nevada documents that are supposed to only

23  supposed to be used for this Nevada litigation, fine, the

24  Nevada court can stop them or put limitations on that.

25          The Nevada court can't stop them from doing

RJN1075

34

1  whatever they want to do in the protest in California.
2  That's the point, Your Honor.
3         MR. BRADSHAW:  Your Honor, the abuse was and the
4  problem, the passage of time was caused by this.  There's
5  this protective order.  The FTB honored it.  Mr. Hyatt
6  cloaked virtually all unfavorable discovery facts that we
7  were able to dig up, he cloaks it under the protective order.
8         When the protest officer makes her information
9  document request he says, no, I can't give you that stuff;
10  it's protected under the Nevada protective order.  When the
11  FTB issues a subpoena, same story, no, he's using the Nevada
12  protective order as a shield.
13        They go to Superior Court, to the Court of Appeal,
14  no, I can't give you that stuff, I won't give you that stuff.
15  My facts that are unfavorable to me are protected under the
16  Nevada protective order.  That's what had to be overcome at
17  great time and expense through the California subpoena
18  Superior Court, Court of Appeal action.  And when it got
19  right up to the last of their 30 days to go to the California
20  Supreme Court, finally they said, okay, here's the truckload
21  of Nevada discovery, protest officer.
22        That took years.  And the -- there were years where
23  the protective order -- where we didn't have a forum to go to
24  the Court under the protective order and that's because we
25  were at the Nevada Supreme Court on writs.  This case was

RJN1076

35

1   dismissed for a while.

2           They made a motion to reconsider that.  It goes

3   back to the Nevada Supreme Court.  It's reinstated except for

4   the negligence and DEC relief causes of action.  And then it

5   goes to the U.S. Supreme Court and it's stayed.  There's no

6   place we can work with the discovery commissioner or Trial

7   Court under that protective order if it's being abused.

8           But meanwhile, the litigation in the Superior

9   Court, the Court of Appeal action, that does grind on.  But

10  all of this takes years and that's how we explain the passage

11  of time or delay in resolving the protest, because of those

12  facts.

13          MR. KULA:  Your Honor, our response to that is,

14  they didn't have to wait for the Nevada protective order.

15  They had the power of subpoena.  If they saw something in

16  this case that they wanted in the -- to use in the protest,

17  they had California subpoena process and whatever process

18  they have in California.

19          So they're going to come in and say, we had to wait

20  -- this -- there are documents that show they put the case --

21  the protest on hold when the case was -- when this case was

22  stayed for periods of time.  Well, why'd they do that?  They

23  didn't want a decision in the protest.

24          They could have used the California process.  Now,

25  they're asking this Court to allow them to say to the jury

RJN1077

36

1  that the protective order prevented them from using the
2  California subpoena during the time the case was stayed.
3  That's just not true.
4        MS. LUNDVALL:  Your Honor, I'm going to offer just
5  one last observation on this particular point and that is
6  this.  This issue was raised during my opening statement and
7  there was no objection made to that opening statement.  Then
8  we get to Mr. Antolin and there is questions by me of
9  Mr. Antolin, and the Court resolved on those questions and
10  allowed me to continue.
11        And then Mr. Hutchison came up and he cross-
12  examined Mr. Antolin in that same topic area.  And I wrote
13  this down in quotes because Mr. Kula argues is this:  "We
14  must be able to cross-examine the FTB's witnesses on this
15  issue."  In other words, they think that our process or
16  procedure for trying to get this information from Mr. Hyatt
17  was flawed.
18        They've got that opportunity for cross-examination.
19  If they call Mr. Dunn as far as to the stand, or when we call
20  Mr. Dunn to the stand, they can ask him those questions.
21  They can make that inquiry just the same as they did with
22  Mr. Antolin.  And so these issues from a procedural process,
23  they're fully protected.
24        There's no need for a curative instruction and
25  there's no need to try to bring in all kinds of judicial

RJN1078

37

 1  officers, as well as the proceedings, then, that led to the

 2  protective order when, in fact, the only issues are what

 3  happened after the protective order was put in place.

 4      MR. KULA:  Your Honor, first of all, Ms. Lundvall

 5  was very clear in their papers.  They said in the opening

 6  statements, we didn't talk about protective order, but we did

 7  make an objection right after that.  It gets back to the

 8  point, Your Honor, what we would cross-examine him on is that

 9  the protective order allowed them under California law to use

10  California law without delay.

11      That -- we'd be debating, then, what the protective

12  order means.  That's a cross-examination.  If that's where we

13  go, that's where we go, but I don't think it's proper.  I

14  think the Court should reaffirm what's already been stated

15  about this protective order so we don't have to go down that

16  road.

17      But if we have to go down that road, that's where

18  we do go down that road.  Mr. Dunn's at the hearing, here's

19  the transcript of Mr. Dunn.  He heard what the judge said,

20  yet I'm going to interpret to say no, I don't have the

21  authority to go right under California law and use a

22  subpoena?  That's where we go with this, Your Honor.

23      So it does get right into litigating the

24  litigation.  And it's easy for them to say, well, we're just

25  going to say this is how we could operate under the

RJN1079

38

1  protective order, and they're going to cross-examine.  But
2  that's the whole point.  That's what we're concerned about.
3          That's what happened to Mr. Antolin's testimony and
4  that's why we brought this to the Court's attention at this
5  time.  So with that I'd submit.  I guess we really didn't
6  need oral argument on this motion, Your Honor.
7          THE COURT:  Now, you tell me.
8          Well, here's the thing.  I think that this jury
9  should not be hearing about the protective order.  The
10 parties shouldn't be calling witnesses.  There shouldn't be
11 any documents examined as a result of this protective order.
12 The Court already addressed that issue titled as litigating
13 the litigation.
14         On the other hand, I don't see that a curative
15 instruction is appropriate at this point in time, given that
16 opening statements were three months ago, somewhere around
17 there, and that the testimony that you cited to a few minutes
18 ago was from, I think you said, a May 7 trial day.
19         I think it's a little late for the Court to try to
20 give a curative instruction.  So to that extent, the -- I
21 suppose the motion's granted in part, and denied in part.
22         MR. KULA:  Thank you, Your Honor.
23         MS. LUNDVALL:  Thank you, Your Honor.
24         THE COURT:  Anything else or should we take about a
25 five-minute break?

RJN1080

## CERTIFICATE OF SERVICE

U.S. Court of Appeals Docket Number(s):  15-15296

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 7, 2017.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature:          *s/ Yolanda Mendez*