## No. 15-15296

IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

GILBERT P. HYATT,

*Plaintiff-Appellant,*

v.

BETTY T. YEE, in her official capacity as California Franchise Tax
Board member and California State Board of Equalization member
DIANE L. HARKEY, in her official capacity as California State
Board of Equalization member; JEROME E. HORTON, in his
official capacity as California State Board of Equalization member;
MICHAEL COHEN, in his official capacity as California Franchise
Tax Board member; GEORGE RUNNER, in his official capacity as
California State Board of Equalization member; FIONA MA, in her
official capacity as California State Board of Equalization member
and California Franchise Tax Board member,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of California
Case No. 2:14-cv-00849-GEB-DAD (Hon. Garland E. Burrell, Jr.)

APPELLANT
GILBERT P. HYATT'S
COUNTER REQUEST FOR JUDICIAL NOTICE DOCUMENTS
VOLUME 7 OF 7
RJN1611 - RJN1735

Donald J. Kula
Oliver M. Gold
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Erwin Chemerinsky
EChemerinsky@law.uci.edu
UC IRVINE SCHOOL OF LAW
401 E. Peltason Drive, Suite 1000
Irvine, CA 92697-8000
Telephone: 949.824.8814
Facsimile: 949.824.7336

Malcolm Segal, Bar No. 075481
MSegal@segal-pc.com
SEGAL & ASSOCIATES, PC
400 Capitol Mall, Suite 2550
Sacramento, CA 95814
Telephone: 916.441.0886
Facsimile: 916.475.1231

Attorneys for Appellant Gilbert P. Hyatt

# APPELLANT GILBERT P. HYATT'S COUNTER REQUEST FOR JUDICIAL NOTICE DOCUMENTS
## INDEX

| Hyatt Exhibit No. | Document | Page |
|---|---|---|
| | **VOLUME 1** | |
| 1 | Decision issued by the Nevada Supreme Court dated September 18, 2014 | RJN0001-0035 |
| 2 | Respondent Gilbert P. Hyatt's Answering Brief filed January 5, 2010 | RJN0036-0256 |
| 3 | FTB Notice of Opening Audit for 1991 tax year dated June 17, 1993 | RJN0257-0262 |
| 4 | FTB Notice of Opening Audit for 1992 tax year dated January 19, 1996 | RJN0263-0264 |
| | **VOLUME 2** | |
| 5 | FTB Notice of Preliminary Determination for 1991 tax year dated August 2, 1995 | RJN0265-0305 |
| 6 | FTB Notice of Preliminary Determination for 1992 tax year dated April 1, 1996 | RJN0306-0323 |
| 7 | FTB Notice of Proposed Assessment for 1991 tax year dated April 23, 1996 | RJN0324-0328 |
| 8 | FTB Notice of Penalty Adjustment for 1992 tax year dated April 10, 1997 | RJN0329-0333 |
| 9 | FTB Notice of Proposed Assessment for 1992 tax year dated August 14, 1997 | RJN0334-0340 |

**APPELLANT GILBERT P. HYATT'S COUNTER REQUEST FOR
JUDICIAL NOTICE DOCUMENTS
INDEX**

| Hyatt Exhibit No. | Document | Page |
|---|---|---|
| 10 | Nevada Tort Case Trial Transcript (RT: June 20, 147:14-148:20; 150:14-151:2; 151:3-153:5) | RJN0341-0347 |
| 11 | Nevada Tort Case Trial Transcript (RT: June 20, 175:15-177:13, 185:19-188:6) | RJN0348-0355 |
| 12 | Nevada Tort Case Trial Transcript (RT: April 25, 80:10-81:17, 84:11-24) | RJN0359-0362 |
| 13 | FTB Audit Strategy Memo dated November 18, 1994 | RJN0454-0457 |
| 14 | Nevada Tort Case Trial Transcript (RT: April 24, 132:2-23, 140:11-141:25) | RJN0458-0461 |
| 15 | Nevada Tort Case Trial Transcript (RT: April 24, 42:4-43:8, 80:22-81:11, 134:1-12; 136:23-138:2) | RJN0462-0470 |
| 16 | Nevada Tort Case Trial Transcript (RT: April 24, 76:16-77:7, 129:9-15) | RJN0471-0474 |
| 17 | Nevada Tort Case Trial Transcript (RT: April 24, 26:11-19, 74:1-75:20) | RJN0475-0478 |
| 18 | FTB internal memo dated August 21, 1995 | RJN0479-0484 |
| 19 | FTB audit reviewer's notes dated April 18, 1996 | RJN0485-0486 |
| 20 | Unsworn witness statements dated December 6, 1994, December 19, 1994, and January 18, 1995 | RJN0487-0502 |
| 21 | FTB Interrogatory Response | RJN0503-0510 |

## APPELLANT GILBERT P. HYATT'S COUNTER REQUEST FOR JUDICIAL NOTICE DOCUMENTS
## INDEX

| Hyatt Exhibit No. | Document | Page |
|---|---|---|
| 22 | Nevada Tort Case Trial Transcript (RT: June 9, 97:9-16, 102:7-103:17, 108:2-110:10) | RJN0511-0517 |
| 23 | Nevada Tort Case Trial Transcript (RT: May 30, 145:4-146:17, 148:9-151:5) | RJN0518-0524 |
| 24 | FTB auditor notes dated August 14, 1995 | RJN0525-0528 |
| 25 | Letters from Hyatt tax counsel to FTB dated April 29, 1996, May 1, 1996, December 11, 1997, and March 10, 1998 | RJN0529-0535 |
| 26 | FTB audit manual excerpt | RJN0536-0537 |
| 27 | Letter from Hyatt tax counsel to FTB dated July 17, 1997 | RJN0538-0542 |
| 28 | FTB reviewer comments dated August 4, 1997 | RJN0543-0545 |
| 29 | Letter from Hyatt tax counsel to FTB protest section, dated October 10, 1997 | RJN0546-0549 |
| 30 | Email internal among FTB supervisors dated April 4, 1997 | RJN0550-0551 |
| **VOLUME 3** | | |
| 31 | Nevada Tort Case Trial Transcript (RT: April 22, 69:8-71:3, 73:3-74:23, 84:2-86:2, 88:22-90:19; RT: April 23, 88:1-89:22) | RJN0552-0566 |

**APPELLANT GILBERT P. HYATT'S COUNTER REQUEST FOR
JUDICIAL NOTICE DOCUMENTS
INDEX**

| Hyatt Exhibit No. | Document | Page |
|---|---|---|
| 32 | Hyatt Protest Letter for 1991 tax year dated June 20, 1996 | RJN0567-0629 |
| 33 | Hyatt Protest Letter for 1992 tax year dated October 10, 1997 | RJN0630-0633 |
| 34 | FTB Protest Determination Letter for both 1991 and 1992 dated November 1, 2007 | RJN0634-0635 |
| 35 | Nevada Tort Case Trial Transcript (RT: May 22, 2008, 57:20-59:6, 80:19-84:14) | RJN0636-0644 |
| 36 | Nevada Tort Case Trial Transcript (RT: May 22, 2008, 92:4 -94:11) | RJN0645-0648 |
| 37 | Nevada Tort Case Trial Transcript (RT: April 30, 2008, 149:11-24) | RJN0649-0650 |
| 38 | Nevada Tort Case Trial Transcript (RT: July 15, 2008, 3:13-16, 12:19-13:8) | RJN0651-0654 |
| 39 | Information/Document Requests (IDRs) from FTB protest officer to Hyatt tax counsel dated December 30, 1999 | RJN0655-0686 |
| 40 | Nevada Tort Case Trial Transcript (RT: May 1, 2008, 40:22-42:7) | RJN0687-0690 |
| 41 | Nevada Tort Case Trial Transcript (RT: June 16, 2008, 56:14-57:3, 58:7-60:4, 61:14-25; 72:9-13, 75:18-77:6) | RJN0691-0701 |
| 42 | Letters from former Hyatt tax counsel Eric Coffill dated June 30, 2000, July 31, 2001 and June 15, 2001 | RJN0702-0810 |

4

## APPELLANT GILBERT P. HYATT'S COUNTER REQUEST FOR JUDICIAL NOTICE DOCUMENTS
## INDEX

| Hyatt Exhibit No. | Document | Page |
|---|---|---|
| 43 | FTB Protest Log (excerpts) dated September 27, 2000 and October 4, 2000 | RJN0811-0813 |
| **VOLUME 4** | | |
| 44 | FTB Protest Log (excerpt) dated February 20, 2002 | RJN0814-0815 |
| 45 | Email from FTB protest officer dated February 20, 2002 | RJN0816-0817 |
| 46 | Letter from former Hyatt tax counsel Eric Coffill dated March 7, 2002 | RJN0818-0819 |
| 47 | Email from FTB counsel Ben Miller dated April 5, 2002 | RJN0820-0821 |
| 48 | Letter from former Hyatt tax counsel Eric Coffill to FTB dated April 25, 2002 | RJN0822-0826 |
| 49 | FTB Protest Log (excerpt) dated April 25, 2005 | RJN0827-0828 |
| 50 | Nevada Discovery Commissioner Reports and Recommendations filed October 5, 2005 and November 10, 2005 | RJN0829-0850 |
| 51 | Nevada Tort Case Transcript of Nevada Discovery Commissioner ruling dated November 9, 1999 | RJN0851-0852 |
| 52 | Nevada Protective Order filed December 27, 1999 | RJN0853-0865 |
| 53 | Briefing filed in Nevada trial court during trial conducted in 2008 | RJN0866-1016 |

## APPELLANT GILBERT P. HYATT'S COUNTER REQUEST FOR JUDICIAL NOTICE DOCUMENTS
## INDEX

| Hyatt Exhibit No. | Document | Page |
|---|---|---|
| 54 | Nevada Tort Case Trial Transcript (RT: May 7, 2008, 98:9-103:25, 109:7-129:3; RT: May 27, 2008, 27:6-30:10; RT: June 11, 9:7-38:21) | RJN1017-1080 |
| **VOLUME 5** | | |
| 55 | Nevada Tort Case Trial Transcript (RT: June 16, 2008, 2:11-34:15, 35:13-37:6, 117:25-132:8 | RJN1081-1133 |
| 56 | Nevada Tort Case Trial Transcript (RT: July 11, 2008, 41:5-42:23; 47:19-48:13; RT: July 15, 2008,187:3-17) | RJN1134-1140 |
| 57 | Nevada Tort Case Trial Transcript (RT: July 11, 2008, 138:23-139:14, 153:19-154:19) | RJN1141-1145 |
| 58 | Nevada Tort Case Trial Transcript (RT: July 15, 2008, 187:3-15) | RJN1146-1147 |
| 59 | Nevada Tort Case Trial Transcript (RT: July 15, 2008, 188:9-192:11) | RJN1148-1153 |
| 60 | FTB Demand Letter under the Nevada Protective Order dated June 3, 2002 | RJN1154-1156 |
| 61 | Nevada Tort Case Trial Transcript (RT: July 15, 2008, 162:21-163:5, 163:7-166:13, 187:3-188:6; RT: July 14, 2008, 174:3-175:21) | RJN1157-1167 |
| 62 | SBE Rules for Tax Appeals, Rules 5431(b)(3) and 5435 | RJN1168-1172 |

**APPELLANT GILBERT P. HYATT'S COUNTER REQUEST FOR
JUDICIAL NOTICE DOCUMENTS
INDEX**

| Hyatt Exhibit No. | Document | Page |
|---|---|---|
| 63 | Email from former Hyatt tax counsel Eric Coffill to the SBE dated June 3, 2009 | RJN1173-1175 |
| 64 | SBE letter to the Franchise Tax Board ("FTB") dated July 8, 2009 | RJN1176 |
| 65 | SBE letter to FTB dated August 21, 2009 | RJN1177 |
| 66 | Letter from former Hyatt tax counsel Eric Coffill to the SBE dated September 2, 2009 | RJN1178-1180 |
| 67 | SBE letter to FTB dated September 14, 2009 | RJN1181 |
| 68 | SBE letter to both FTB and former Hyatt tax counsel Eric Coffill dated August 2, 2012 | RJN1182 |
| 69 | Letter from SBE to both FTB and former Hyatt tax counsel Eric Coffill dated February 20, 2013 | RJN1183 |
| 70 | FTB letter to the SBE dated July 16, 2014 | RJN1184 |
| 71 | FTB letter to SBE dated August 13, 2014 | RJN1185 |
| 72 | SBE letter to the FTB and former Hyatt tax counsel Eric Coffill dated December 9, 2014 | RJN1186-1187 |
| 73 | FTB letter to the SBE dated March 17, 2015 | RJN1188-1194 |
| 74 | FTB Additional Brief, pp. 1:24-2:1; 28, fn. 152, (FTB's $24 Million Error) filed in the SBE Appeals on February 19, 2013 | RJN1195-1199 |

# APPELLANT GILBERT P. HYATT'S COUNTER REQUEST FOR JUDICIAL NOTICE DOCUMENTS
## INDEX

| Hyatt Exhibit No. | Document | Page |
|---|---|---|
| 75 | Hyatt Additional Supplemental Briefing, Attachments 1, 3, and 4 filed in the SBE Appeals on September 28, 2016 | RJN1200-1269 |
| 76 | Hyatt Third Additional Briefing, pp. 22-23, (1991 Tax-Year Appeal) filed in the SBE Appeals on December 12, 2016 | RJN1270-1271 |
| 77 | Hyatt Third Additional Briefing, pp. 13-19, (1992 Tax-Year Appeal) filed in the SBE Appeals on December 12, 2016 | RJN1272-1278 |
| **VOLUME 6** | | |
| 78 | Hyatt Affidavit filed in the SBE Appeals on December 12, 2016 | RJN1279-1610 |
| **VOLUME 7** | | |
| 79 | Subpoenas issued by Supreme Court of the State of New York, County of Westchester, to FTB in conjunction with the SBE Appeals and dated May 26, 2011 | RJN1611-1732 |
| 80 | Temporary Restraining Order (TRO) Ruling issued by Supreme Court of the State of New York, County of Westchester, in conjunction with the SBE Appeals and dated March 16, 2015 | RJN1733-1735 |

8

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
------------------------------------------------------------x
In the matter of:                        :
                                                :
The Application of State of California Franchise     :    **SUBPOENA DUCES TECUM**
Tax Board for the deposition and production of      :
business records from Algy Tamoshunas for use     :
in an action pending in the Superior Court of       :
California entitled <u>State of California Franchise</u>    :
<u>Tax Board v. Neal Howard, et al.</u> (Case No. 34-    :
2011-00101401)                             :
                                                :
------------------------------------------------------------x

### THE PEOPLE OF THE STATE OF NEW YORK

To:     **Algy Tamoshunas**
        **29 Sherbrooke Road**
        **Hartsdale, New York 10530-2941**

      **WE COMMAND YOU**, that all business and excuses being laid aside, produce pursuant

to CPLR § 3119, at the offices of Suite Solutions, 75 South Broadway, 4th Floor, White Plains,

New York 10601 on or before June 24, 2011, at 10:00 a.m., all documents and other things in

your possession, custody or control described on the attached Exhibit A.

      **WE FURTHER COMMAND YOU**, that all business and excuses being laid aside,

appear for a deposition pursuant to CPLR § 3119 at the offices of Suite Solutions, 75 South

Broadway, 4th Floor, White Plains, New York 10601 on June 29, 2011, at 10:00 a.m.

      The circumstances or reasons said document production and deposition are sought or

required are that the information is material, relevant and necessary for the prosecution and

defense of the above-captioned action. It is believed that you have relevant information

concerning, among other things, Gilbert P. Hyatt's assertion that he became a nonresident of

California in or around 1991 and Mr. Hyatt's contention that he did not operate a business from

California through December 1992.

6773453.1

6793222.2

Failure to comply with this subpoena is punishable as a contempt of Court and shall make you liable to the person on whose behalf this subpoena was issued for a penalty not to exceed fifty dollars and all damages sustained by reason of your failure to comply.

Dated: May 26, 2011

CARTER LEDYARD & MILBURN LLP

By _____
    Leonardo Trivigno

2 Wall Street
New York, NY 10005
Telephone: (212) 238-8724

*Attorneys for Plaintiff State of California*
*Franchise Tax Board*

-2-

6773453.1

6793222.2

RJN1612

**EXHIBIT A**
**REQUEST FOR PRODUCTION OF DOCUMENTS**

6773453.1

6793222.2

RJN1613

## DEFINITIONS

The following definitions and rules of construction apply to these document requests:

1. Communication. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2. Document. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rules of Civil Procedure 34(a). A draft or non-identical copy is a separate document within the meaning of this term.

3. Identify (with Respect to Documents). When referring to documents, "to identify" means to give, to the extent known, (i) the type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipients(s).

4. Person. The term "person" is defined as any natural person or business, legal or governmental entity or association.

5. Hyatt Patent. The term "Hyatt Patent" means any patent issued to or owned by Gilbert P. Hyatt.

6. Concerning. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

7. All/Each. The term "all" and "each" shall be construed as all and each.

8. And/Or. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all documents that might otherwise be construed to be outside its scope.

9. Number. The use of the singular form of any word includes the plural and vice versa.

RJN1614

**DESCRIPTION OF RECORDS**
**Exhibit A**

1. All draft and/or unsigned affidavits, declarations or written statements read or reviewed by you or submitted to you about Gilbert P. Hyatt.

2. Any and all documents, writings, notes, email, electronic messages, or exhibits considered by you, reviewed by you or submitted to you by Mr. Gilbert Hyatt, his attorneys or agents or your attorney or other agent in preparing, writing or drafting your affidavit attached as Exhibit B to the Declaration of Robert Dunn.

3. All documents (including without limitation licenses, agreements, contracts, memoranda, and letters) under which any person or entity has been licensed or sub-licensed to make, use, sell, or import any invention claimed in any Hyatt Patent.

4. All documents (including without limitation licenses, agreements, contracts, memoranda, and letters) under which any person or entity has been released from claims or liabilities for making, using, selling or importing any invention claimed in any Hyatt Patent.

5. All documents (including without limitation licenses, agreements, contracts, memoranda, and letters) under which Gilbert P. Hyatt agreed not to, or assured that he will not, assert or bring suit upon any Hyatt Patent.

6. All documents (including without limitation licenses, agreements, contracts, memoranda, and letters) under which any person or entity obtained an option to obtain a license, sub-license, or release, under any Hyatt Patent.

7. All documents reflecting any money paid by any person or entity in consideration for a license, sub-license, or release, or any option to obtain a license, sub-license, or release, under any Hyatt Patent.

8. All documents reflecting any money paid by any person or entity in consideration for any agreement or assurance not to assert or sue upon any Hyatt Patent.

9. All documents by U.S. Philips Corporation concerning money it expended or received in connection with the licensing or sub-licensing of any Hyatt Patent.

10. All documents by Mahr Leonard Management Co. concerning money it expended or received in connection with the licensing or sub-licensing of any Hyatt Patent.

11. All documents, and all files and their contents, that relate to, mention, discuss, concern or reflect efforts by U.S. Philips Corporation to negotiate any license or sub-license under any Hyatt Patent.

RJN1615

12. All documents, and all files and their contents, that relate to, mention, discuss, concern or reflect efforts by Mahr Leonard Management Co. to negotiate any license or sub-license under any Hyatt Patent.

13. All documents received by you and/or U.S. Philips Corporation (including any of their attorneys, agents or representatives) from any other person or entity concerning any license, sub-license, or release, or any option to obtain a license, sub-license or release, under any Hyatt Patent.

14. All documents sent by you and/or U.S. Philips Corporation (including any of their attorneys, agents or representatives) to any other person or entity concerning any license, sub-license, or release, or any option to obtain a license, sub-license or release, under any Hyatt Patent.

15. All documents discussing, relating to, or reflecting any expenses incurred by U.S. Philips Corporation, Mahr Leonard Management Co. or Gilbert P. Hyatt (including any of their attorneys, agents or representatives) in connection with discussions with any other person or entity concerning any possible or actual licensing, sub-licensing, or release, or any option to obtain a license, sub-license, or release, under any Hyatt Patent.

16. All documents discussing, relating to, or reflecting any plan or agreement by Gilbert P. Hyatt, U.S Philips Corporation, and/or Mahr Leonard Management Co. to seek revenues from the licensing or sub-licensing of any Hyatt Patent, or from the release of any liabilities for infringement for any such patent.

17. All communications sent by you and/or U.S. Philips Corporation (including any of their attorneys, agents, or representatives) to any other person or entity concerning (a) U.S. Patent Interference No. 102,598, including any ruling or document issued by the U.S. Patent and Trademark Office in that interference or (b) United States Court of Appeals for the Federal Circuit appeal no. 96-1514 or appeal no. 96-1515, including the June 17, 1998 decision in those appeals.

18. All communications received by you and/or U.S. Philips Corporation (including any of their attorneys, agents, or representatives) from any other person or entity concerning (a) U.S. Patent Interference No. 102,598, including any ruling or document issued by the U.S. Patent and Trademark Office in that interference or (b) United States Court of Appeals for the Federal Circuit appeal no. 96-1514 or appeal no. 96-1515, including the June 17, 1998 decision in those appeals.

19. All documents discussing, relating to, or reflecting any consideration by Gilbert P. Hyatt (including any of his attorneys, agents, or representatives) of the engagement of any entity to conduct negotiations on his behalf for the licensing or sub-licensing under any Hyatt Patent.

20. All documents concerning time keeping for tasks performed and time spent on tasks performed by you on behalf of or for the benefit of Gilbert P. Hyatt.

RJN1616

21. All documents concerning preliminary and/or draft billing statements and final statements for fee charges and worked performed on behalf of or relating to Gilbert P. Hyatt.

22. All documents, and all files and their contents, that relate to, mention, discuss, concern or reflect Gilbert P. Hyatt "retaining and directing outside patent counsel for services rendered and expenses incurred," including, but not limited to attorneys Danny Huntington, Gregory L. Roth, Jim Williams, John Dimatteo, and Ken Cho as referenced in Sections 1 and 4 of the Fourth Supplemental Agreement between Gilbert P. Hyatt and U.S. Philips Corporation attached hereto as Exhibit "1".

23. All documents and/or notes memorializing any conversation between you and Gilbert P. Hyatt.

24. All calendars, diaries, appointment books, and/or documents used for making appointments and/or calendaring events from January 1, 1990 to December 31, 1997.

25. All documents announcing, discussing, relating to, or reflecting any efforts by or on behalf Gilbert P. Hyatt to publicize any Hyatt Patent, plan to publicize any Hyatt Patent and publicity of any Hyatt Patent.

26. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the July 1991 agreement between Gilbert P. Hyatt and U.S. Philips Corporation, including, but not limited to, any notes, faxes, letters, memos, and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

27. All documents, and all files and their contents, that relate to, mention, or concern specific details of any sub-licensing proposals recommended by you or any representative of U.S. Philips Corporation which were not approved by Gilbert P. Hyatt, in accordance with his right to approve all-sublicensing agreements, and any other evidence of rights retained by Gilbert P. Hyatt which were exercised in accordance with the July 1991 agreement between Gilbert P. Hyatt and U.S. Philips Corporation.

28. All documents, and all files and their contents, that relate to, mention, or concern U.S. Philips Corporation's compliance with the reporting requirement set forth in I.R.C. Sec. 6050N as related to the July 1991 agreement and/or supplemental agreements between Gilbert P. Hyatt and U.S. Philips Corporation.

29. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt, U.S. Philips Corporation and Mahr Leonard Management Company, dated September 24, 1991, including, but not limited to, any notes, faxes, letters, memos and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

30. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Fujitsu, dated October 24, 1991, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos, and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

31. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Matsushita, dated November 14, 1991, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos, and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

32. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Sharp, dated November 20, 1991, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos, and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

33. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Sony, dated December 17, 1991, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos, and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

34. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and NEC, dated December 26, 1991, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos, and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

35. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Oki, dated January 31, 1992, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

36. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Sanyo, dated July 23, 1992, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos and/or emails to or from

RJN1618

Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

37. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Hitachi, dated August 6, 1992, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

38. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Omron, dated September 30, 1992, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

39. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Nippon Columbia, dated December 15, 1992, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos, and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

40. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Kenwood, dated December 22, 1992, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos, and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

41. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Nikon, dated December 28, 1993, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

42. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Canon, dated December 30, 1993, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos, and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

RJN1619

43. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the four supplemental Agreements between Gilbert P. Hyatt and U.S. Philips Corporation as referenced in Exhibit "3" (GLR 06824) attached hereto, including, but not limited to, any notes, faxes, letters, memos and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

44. All documents, and all files and their contents, that relate to, mention, or concern negotiating the "Licensing Rights Termination and Indemnification Agreement" between Gilbert P. Hyatt and U.S. Philips Corporation signed by Gilbert Hyatt on December 2, 1997 and individuals from U.S. Philips Corporation on December 12, 1997 (the first and signature pages of the referenced agreement attached hereto as Exhibit "3" (GLR06284,GLR06863)).

45. All documents, and all files and their contents, that relate to, mention, discuss, concern U.S. Philips Corporation's promise and obligation to pay Digital Nutronics Corp. $400,000 as set forth in Section 3.1 (a) (Article III- Consideration for Licenses to Philips) as referenced at page 9 in the July 1991 patent licensing agreement between U.S. Philips Corporation and Gilbert Hyatt attached hereto as Exhibit "4".

46. Full and complete copies of U.S. Philips Corporation's annual report for the years 1991 through 1993.

47. All phone message slips, memos, notes, messages and any other similar writing memorializing telephone conversations or in person meetings between you and Gilbert P. Hyatt.

48. All documents, and all files and their contents, that relate to, mention, or concern any contract or agreement for legal representation between U.S. Philips Corporation and/or related entity and Gregory L. Roth, Esq. and/or the law firm of Pretty, Schroeder, Bergman to represent U.S. Philips Corporation or related entity concerning any matter at any time.

49. All documents, and all files and their contents, that relate to, mention, or concern any contract or agreement for legal representation between U.S. Philips Corporation and/or related entity and Danny Huntington and/or the Virginia law firm, Burns Doane to represent U.S. Philips Corporation or related entity concerning any matter at any time.

50. All documents, and all files and their contents, that relate to, mention, or concern any contract, agreement and/or memorandum of understanding between U.S. Philips Corporation and Charles Lee McHenry and/or McHenry and Associates for payment of services performed or rendered by Charles Lee McHenry and/or McHenry and Associates on behalf of U.S. Philips Corporation, related entity and/or Gilbert P. Hyatt.

51. All documents, including, but not limited to, billings, invoices, receipts, and/or travel documents, that relate to or concern any travel by you, Gilbert P. Hyatt, Gregory L.

RJN1620

Roth, and/or Grace Jeng associated with licensing patents in accordance with the July 1991 patent licensing agreement between U.S. Philips Corp. and Gilbert P. Hyatt.

52. All documents, and all files and their contents, that relate to, mention, or concern any oral or written communication between you and Gilbert P. Hyatt.

53. All documents, and all files and their contents, that relate to, mention, or concern any oral or written communication between you and Grace Jeng.

54. All documents and all files and their contents, that relate to, mention, or concern any oral or written communication between you and Caroline Cosgrove.

55. All documents, and all files and their contents, that relate to, mention, or concern any oral or written communication between you and Barry Lee.

56. All documents, and all files and their contents, that relate to, mention, or concern any oral or written communication between you and Gregory L. Roth.

57. All documents, and all files and their contents, that relate to, mention, or concern any oral or written communication between you and Danny Huntington.

58. All documents, and all files and their contents, that relate to, mention, or concern any oral or written communication between you and Charles Lee McHenry.

EXHIBIT 1

RJN1622

 **PHILIPS**

**U.S. Philips Corporation**

Intellectual Property Department

August 11, 1992

Mr. Gilbert P. Hyatt
P.O. Box 81230
Las Vegas, NV  89180-1230

Dear Gil:

Enclosed are two signed copies of the Fourth
Supplemental Agreement which incorporate the changes
suggested by Greg.

Please return one fully signed copy for our records.

Sincerely,

Algy Tamoshunas
Vice President

AT:es
Enclosures

CC:  Greg Roth

CF11TAC0.WPO

P02785

Telephone: 914-332-0222
Facsimile: 914-332-0615
Telex: 709978 / USATAPH

580 White Plains Road
Tarrytown, NY 10591

0039-00021

RJN1623

# F O U R T H   S U P P L E M E N T A L   A G R E E M E N T

This FOURTH SUPPLEMENTAL AGREEMENT dated August 11,
1992, is made by and between U.S. PHILIPS CORPORATION, a
corporation of the state of Delaware, having a place of
business at 580 White Plains Road, Tarrytown, New York 10591
(hereinafter "PHILIPS") and GILBERT P. HYATT, an individual
having an address at Box 81230, Las Vegas, Nevada 89180-1230
(hereinafter "HYATT").

## W I T N E S S E T H   T H A T

WHEREAS, PHILIPS and HYATT have previously entered into
an AGREEMENT effective July 15, 1991 (which agreement is
hereinafter referred to as "THE AGREEMENT");

WHEREAS, PHILIPS has provided HYATT with
assistance with respect to the licensing of certain HYATT
patents; and

WHEREAS, HYATT has agreed to maintain control over the
filing and prosecution of additional applications for
LICENSABLE PATENTS;

WHEREAS, HYATT and PHILIPS now find it advantageous to
retain the services of outside patent counsel to assist in
such filing and prosecution;

W:\HA\AF11HAA0.SMR                          1

P02786

0039-00022

RJN1624

NOW THEREFORE, the parties hereto agree as follows:

Section 1.      During the calendar years 1992 and 1993
PHILIPS shall pay outside patent counsel retained by HYATT,
at such counsel's customary rates, for preparation and
prosecution of applications for additional LICENSABLE
PATENTS in the United States Patent and Trademark Office.

Section 2.      PHILIPS' obligation to pay fees in
accordance with Section 1 for services rendered during the
calendar year 1992 shall not exceed ONE HUNDRED FIFTY
THOUSAND DOLLARS ($150,000.00) and  PHILIPS obligation to
pay fees in accordance with Section 1 for services rendered
during the calendar year 1993 shall not exceed THREE HUNDRED
THOUSAND DOLLARS ($300,000.00).

Section 3.      Prior to December 31, 1993 PHILIPS
and HYATT shall determine whether further services of
outside patent counsel for preparation and prosecution of
applications for additional LICENSABLE PATENTS is necessary
and, if so, shall determine appropriate budget levels for
extending the provisions of Section 1 to subsequent years.

Section 4.      Hyatt shall be solely responsible for
retaining and directing outside patent counsel for services
rendered in accordance with Section 1 and for reviewing
papers and other work product submitted thereunder. Bills

W:\HA\AF11HAA0.SMR                    2

P02787

0039-00023

RJN1625

for such services shall be rendered by outside patent
counsel to HYATT. HYATT shall approve all such bills in
writing for payment by PHILIPS.

Section 5.    Fees paid by PHILIPS in accordance with
Section 1 shall be deemed Expenses which are deductible in
accordance with Section 4.7 of THE AGREEMENT.

IN WITNESS WHEREOF, the parties hereto affix their name
or cause their corporate name to be affixed by their duly
authorized officer or representative.

U.S. PHILIPS CORPORATION

BY: _____

TITLE: VICE PRESIDENT

DATED: August 11, 1992

GILBERT P. HYATT

_____

DATED: August 13, 1992

W:\HA\AF11HAA0.SMR                    3

P02788

0039-00024

RJN1626

**EXHIBIT** _____

RJN1627



**PHILIPS**

**U. S. Philips Corporation**

Intellectual Property Department

February 10, 1995

VIA FACSIMILE

Mr. Gil Hyatt
P.O. Box 81230
Las Vegas, NV 89180-1230

Dear Gil:

     Enclosed please find the financial information you requested.

Very truly yours,

Jack E. Haken
Vice President

JEH/ew
W:\WA\CJ10HAA1.WA0

CONFIDENTIAL
H 018631

Confidential-NV Protective Order

580 White Plains Road
Tarrytown, NY 10591-5180
Tel. 914 332-0222
Fax: 914 332-0615

RJN1628

**CONFIDENTIAL**

HYATT LICENSES
AS OF FEBRUARY 1995

| COMPANY | LICENSE DATE | TOTAL PAYMENT | EXPENSES | HYATT NET SHARE | PHILIPS NET SHARE |
|---|---|---|---|---|---|
| FUJITSU | 10/24/91 | $ 15M | $ 4.76M | $ 5.12M | $ 5.12M |
| MATSUSHITA | 11/14/91 | $ 25M | $ 3.8M | $ 10.6M | $ 10.6 |
| SONY | 12/17/91 | $ 22M | $ 3.3M | $ 9.35M | $ 9.35M |
| SHARP | 11/20/91 | $ 18M | $ 2.88M | $ 7.56M | $ 7.56M |
| NEC | 12/26/91 | $ 16.5M | $ 2.6M | $ 6.95M | $ 6.95M |
| OKI (3 Payments) | 01/31/92 | $ 10M | $ 3.79M | $ 3.1M | $ 3.1M |
| SANYO | 07/23/92 | $ 36.1M | $ .5M | $ 17.8M | $ 17.8M |
| HITACHI (2 Payments) | 08/06/92 | $ 56M | $ 3.39M | $ 32.96M | $ 19.65M |
| OMRON | 09/30/92 | $ 1.4M | $ .03M | $ .685M | $ .685M |
| NIPPON COLUMBIA | 12/15/92 | $ 3.25M | $ .13M | $ 1.56M | $ 1.56M |
| KENWOOD | 12/22/92 | $ 9.15M | $ .01M | $ 4.57M | $ 4.57M |
| NIKON (2 Payments) | 12/28/93 | $ 6.75M | $ 2.25M | $ 2.25M | $ 2.25M |
| * CANON (2 Payments) | 12/30/93 | $ 38M | $ .4M | $ 18.8M | $ 18.8M |
| CASIO | 04/01/94 | $ 9.5M | $ .3M | $ 4.6M | $ 4.6M |
| ** MINOLTA (3 Payments) | 05/24/94 | $ 10.31M | $ 1.63M | $ 4.34M | $ 4.34M |
| ONKYO | 06/03/94 | $ 2.1M | $ .06M | $ 1.02M | $ 1.02M |
| TOSHIBA | 06/03/94 | $ 42.9M | $ .12M | $ 21.39M | $ 21.39M |
| TOTAL ... | | $321.96M | $29.95M | $152.655M | $139.345M |

* Canon - final payment for $20,000,00 due September 15, 1995
**Minolta - final payment for $3,437,500 due April 17, 1995

**Confidential-NV Protective Order**

CONFIDENTIAL
H 018632

RJN1629

SENT BY:PHILIPS IPD TARRYTOWN ; 3- 1-55 ; 2:00PM ;

## HYATT LICENSES

| COMPANY | LICENSE DATE | PAYMENT DATE | TOTAL PAYMENT | EXPENSES | HYATT NET SHARE | PHILIPS NET SHARE |
|---|---|---|---|---|---|---|
| FUJITSU | 10/24/91 | 11/07/91 | $ 15M | $ 4.76M | $ 5.12M | $ 5.12M |
| MATSUSHITA | 11/14/91 | 11/24/91 | $ 25M | $ 3.8M | $ 10.6M | $ 10.6 |
| SONY | 12/17/91 | 12/24/91 | $ 22M | $ 3.3M | $ 9.35M | $ 9.35M |
| NEC | 12/26/91 | 12/27/91 | $ 16.5M | $ 2.6M | $ 6.95M | $ 6.95M |
| SHARP | 11/20/91 | 01/09/92 | $ 17.8M | $ 2.8M | $ 7.56M | $ 7.56M |
| OKI | 01/31/92 | 01/31/92 | $ 4M | $ .6M | $ 1.7M | $ 1.7M |
| SHARP "PCT" | 12/25/91 | 02/10/92 | $ .25M | $ .1M | $ .05M | $ .05M |
| SANYO | 07/23/92 | 07/31/92 | $ 36.1M | $ .5M | $ 17.8M | $ 17.8M |
| HITACHI | 08/06/92 | 08/06/92 | $ 31M | $ 1.83M | $ 18.46M | $ 10.65M |
| OMRON | 09/30/92 | 10/01/92 | $ 1.4M | $ .03M | $ .685M | $ .685M |
| OKI | 01/31/92 | 11/15/92 | $ 3M | $ .4M | $ 1.3M | $ 1.3M |
| HITACHI | 08/06/92 | 12/28/93 | $ 25M | $ 1.56M | $ 14.5M | $ 9M |
| NIPPN COLUMBIA | 12/15/92 | 12/29/92 | $ 3.25M | $ .13M | $ 1.56M | $ 1.56M |
| KENWOOD | 12/22/92 | 12/29/92 | $ 9.15M | $ .01M | $ 4.57M | $ 4.57M |
| OKI | 01/31/92 | 11/15/93 | $ 3M | $ 3M | -0- | -0- |
| NIKON | 12/28/93 | 12/28/93 | $ 3.375M | $ 1M | $ 1.2M | $ 1.2M |
| CANON | 12/30/93 | 01/27/94 | $ 19M | $ .2M | $ 9.4M | $ 9.4M |
| NIKON | 12/28/93 | 03/31/94 | $ 3.375M | $ 1.25M | $ 1.05M | $ 1.06M |
| CASIO | 04/01/94 | 04/20/94 | $ 9.5M | $ .3M | $ 4.6M | $ 4.6M |
| MINOLTA | 05/24/94 | 05/26/94 | $ 3.437M | $ .081M | $ 1.7M | $ 1.7M |
| ONKYO | 06/03/94 | 06/15/94 | $ 2.1M | $ .06M | $ 1.02M | $ 1.02M |
| TOSHIBA | 06/03/94 | 06/15/94 | $ 42.9M | $ .12M | $ 21.39M | $ 21.39M |
| MINOLTA | 05/24/94 | 08/10/94 | $ 3.437M | $ .64M | $ 1.4M | $ 1.4M |
| * CANON | 12/30/93 | 09/15/94 | $ 19M | $ .2M | $ 9.4M | $ 9.4M |
| ** MINOLTA | 05/24/94 | 12/15/94 | $ 3.437M | $ .9M | $ 1.3M | $ 1.3M |
| | | | $322M | $30M | $152.6M | $139.3M |

* Canon - final payment for $20,000,00 due September 15, 1995
**Minolta - final payment for $3,437,500 due April 17, 1995

CONFIDENTIAL
H 018633

Confidential-NV Protective Order

RJN1630

SENT BY:PHILIPS IPD TARRYTOWN ; 6- 5-85 ;11:50AM ;          PHILIPS IPD →0  ·                    ;# 2/ 2

## HYATT LICENSES

| COMPANY | LICENSE DATE | PAYMENT DATE | TOTAL PAYMENT | EXPENSES | HYATT NET SHARE | PHILIPS NET SHARE |
|---|---|---|---|---|---|---|
| FUJITSU | 10/24/91 | 11/07/91 | $ 15M | $ 4.76M | $ 5.12M | $ 5.12M |
| MATSUSHITA | 11/14/91 | 11/24/91 | $ 25M | $ 3.8M | $ 10.6M | $ 10.6 |
| SONY | 12/17/91 | 12/24/91 | $ 22M | $ 3.3M | $ 9.35M | $ 9.35M |
| NBC | 12/26/91 | 12/27/91 | $ 16.5M | $ 2.6M | $ 6.95M | $ 6.95M |
| SHARP | 11/20/91 | 01/09/92 | $ 17.8M | $ 2.8M | $ 7.56M | $ 7.56M |
| OKI | 01/31/91 | 01/31/92 | $ 4M | $ .6M | $ 1.7M | $ 1.7M |
| SHARP "PCT" | 12/25/91 | 02/10/92 | $ .25M | $ .1M | $ .05M | $ .05M |
| SANYO | 07/23/92 | 07/31/92 | $ 36.1M | $ .5M | $ 17.8M | $ 17.8M |
| HITACHI | 08/06/92 | 08/06/92 | $ 31M | $ 1.83M | $ 18.46M | $ 10.65M |
| OMRON | 09/30/92 | 10/01/92 | $ 1.4M | $ .03M | $ .685M | $ .685M |
| OKI | 01/31/92 | 11/15/92 | $ 3M | $ .4M | $ 1.3M | $ 1.3M |
| HITACHI | 08/06/92 | 12/28/93 | $ 25M | $ 1.56M | $ 14.5M | $ 9M |
| NIPPN COLUMBIA | 12/15/92 | 12/29/92 | $ 3.25M | $ .13M | $ 1.56M | $ 1.56M |
| KENWOOD | 12/22/92 | 12/29/92 | $ 9.15M | $ .01M | $ 4.57M | $ 4.57M |
| OKI | 01/31/92 | 11/15/93 | $ 3M | $ 3M | -0- | -0- |
| NIKON | 12/28/93 | 12/28/93 | $ 3.375M | $ 1M | $ 1.2M | $ 1.2M |
| CANON | 12/30/93 | 01/27/94 | $ 19M | $ .2M | $ 9.4M | $ 9.4M |
| NIKON | 12/28/93 | 03/31/94 | $ 3.375M | $ 1.25M | $ 1.05M | $ 1.06M |
| CASIO | 04/01/94 | 04/20/94 | $ 9.5M | $ .3M | $ 4.6M | $ 4.6M |
| MINOLTA | 05/24/94 | 05/26/94 | $ 3.437M | $ .081M | $ 1.7M | $ 1.7M |
| ONKYO | 06/03/94 | 06/15/94 | $ 2.1M | $ .06M | $ 1.02M | $ 1.02M |
| TOSHIBA | 06/03/94 | 06/15/94 | $ 42.9M | $ .12M | $ 21.39M | $ 21.39M |
| MINOLTA | 05/24/94 | 08/10/94 | $ 3.437M | $ .64M | $ 1.4M | $ 1.4M |
| * CANON | 12/30/93 | 09/15/94 | $ 19M | $ .2M | $ 9.4M | $ 9.4M |
| MINOLTA | 05/24/94 | 12/15/94 | $ 3.437M | $ .9M | $ 1.3M | $ 1.3M |
| MINOLTA | 05/24/94 | 04/15/95 | $ 3.437M | $ .7M | $ 1.36M | $ 1.36M |
| ** SEIKO EPSON | 03/31/95 | 04/25/95 | $ 9.25M | $ .164M | $ 4.54M | $ 4.54M |
| | | | $334.70M | $31M | $158.5M | $145.2M |

\* Canon - final payment for $20,000,00 due September 15, 1995
\** Seiko Epson - final payment for $9,250,000 due April 30, 1996

CONFIDENTIAL
H 018634

**Confidential-NV Protective Order**

RJN1631

SENT BY:PHILIPS IPD TARRYTOWN ; 9-11-95 ; 1:17PM ;         PHILIPS IPD →0                    ;# 2/ 2

**CONFIDENTIAL**
INVENTOR LICENSES

| COMPANY | LICENSE DATE | PAYMENT DATE | TOTAL PAYMENT | EXPENSES | INVENTOR NET SHARE | PHILIPS NET SHARE |
|---|---|---|---|---|---|---|
| FUJITSU | 10/24/91 | 11/07/91 | $ 15M | $ 4.76M | $ 5.12M | $ 5.12M |
| MATSUSHITA | 11/14/91 | 11/24/91 | $ 25M | $ 3.8M | $ 10.6M | $ 10.6 |
| SONY | 12/17/91 | 12/24/91 | $ 22M | $ 3.3M | $ 9.35M | $ 9.35M |
| NEC | 12/26/91 | 12/27/91 | $ 16.5M | $ 2.6M | $ 6.95M | $ 6.95M |
| SHARP | 11/20/91 | 01/09/92 | $ 17.8M | $ 2.8M | $ 7.56M | $ 7.56M |
| OKI | 01/31/92 | 01/31/92 | $ 4M | $ .6M | $ 1.7M | $ 1.7M |
| SHARP "PCT" | 12/25/91 | 02/10/92 | $ .25M | $ .1M | $ .05M | $ .05M |
| SANYO | 07/23/92 | 07/31/92 | $ 36.1M | $ .5M | $ 17.8M | $ 17.8M |
| HITACHI | 08/06/92 | 08/06/92 | $ 31M | $ 1.83M | $ 18.46M | $ 10.65M |
| OMRON | 09/30/92 | 10/01/92 | $ 1.4M | $ .03M | $ .685M | $ .685M |
| OKI | 01/31/92 | 11/15/92 | $ 3M | $ .4M | $ 1.3M | $ 1.3M |
| HITACHI | 08/06/92 | 12/28/93 | $ 25M | $ 1.56M | $ 14.5M | $ 9M |
| NIPPN COLUMBIA | 12/15/92 | 12/29/92 | $ 3.25M | $ .13M | $ 1.56M | $ 1.56M |
| KENWOOD | 12/22/92 | 12/29/92 | $ 9.15M | $ .01M | $ 4.57M | $ 4.57M |
| OKI | 01/31/92 | 11/15/93 | $ 3M | $ 3M | -0- | -0- |
| NIKON | 12/28/93 | 12/28/93 | $ 3.375M | $ 1M | $ 1.2M | $ 1.2M |
| CANON | 12/30/93 | 01/27/94 | $ 19M | $ .2M | $ 9.4M | $ 9.4M |
| NIKON | 12/28/93 | 03/31/94 | $ 3.375M | $ 1.25M | $ 1.05M | $ 1.06M |
| CASIO | 04/01/94 | 04/20/94 | $ 9.5M | $ .3M | $ 4.6M | $ 4.6M |
| MINOLTA | 05/24/94 | 05/26/94 | $ 3.437M | $ .081M | $ 1.7M | $ 1.7M |
| ONKYO | 06/03/94 | 06/15/94 | $ 2.1M | $ .06M | $ 1.02M | $ 1.02M |
| TOSHIBA | 06/03/94 | 06/15/94 | $ 42.9M | $ .12M | $ 21.39M | $ 21.39M |
| MINOLTA | 05/24/94 | 08/10/94 | $ 3.437M | $ .64M | $ 1.4M | $ 1.4M |
| CANON | 12/30/93 | 09/15/94 | $ 19M | $ .2M | $ 9.4M | $ 9.4M |
| MINOLTA | 05/24/94 | 12/15/94 | $ 3.437M | $ .9M | $ 1.3M | $ 1.3M |
| MINOLTA | 05/24/94 | 04/15/95 | $ 3.437M | $ .7M | $ 1.36M | $ 1.36M |
| SEIKO EPSON | 03/31/95 | 04/25/95 | $ 9.25M | $ .164M | $ 4.54M | $ 4.54M |
| | | | $334.70M | $31M | $158.5M | $145.2M |

*Canon*
*20 M*
*9.595M*

* Canon - final payment for $20,000.00 due September 15, 1995
** Seiko Epson - final payment for $9,250,000 due April 30, 1996

Confidential-NV Protective Order

CONFIDENTIAL
H 018635

**CONFIDENTIAL**

*5.7*

RJN1632

SENT BY:PHILIPS IPD TARRYTOWN ; 1- 4-96 ; 3:04PM ;      PHILIPS IPD →0                    ;# 2/ 2

CONFIDENTIAL

## INVENTOR LICENSES

| COMPANY | LICENSE DATE | PAYMENT DATE | TOTAL PAYMENT | EXPENSES | INVENTOR NET SHARE | PHILIPS NET SHARE |
|---------|--------------|--------------|---------------|----------|--------------------|-------------------|
| FUJITSU | 10/24/91 | 11/07/91 | $ 15M | $ 4.76M | $ 5.12M | $ 5.12M |
| MATSUSHITA | 11/14/91 | 11/24/91 | $ 25M | $ 3.8M | $ 10.6M | $ 10.6 |
| SONY | 12/17/91 | 12/24/91 | $ 22M | $ 3.3M | $ 9.35M | $ 9.35M |
| NEC | 12/26/91 | 12/27/91 | $ 16.5M | $ 2.6M | $ 6.95M | $ 6.95M |
| SHARP | 11/20/91 | 01/09/92 | $ 17.8M | $ 2.8M | $ 7.56M | $ 7.56M |
| OKI | 01/31/92 | 01/31/92 | $ 4M | $ .6M | $ 1.7M | $ 1.7M |
| SHARP "PCT" | 12/25/91 | 02/10/92 | $ .25M | $ .1M | $ .05M | $ .05M |
| SANYO | 07/23/92 | 07/31/92 | $ 36.1M | $ .5M | $ 17.8M | $ 17.8M |
| HITACHI | 08/06/92 | 08/06/92 | $ 31M | $ 1.83M | $ 18.46M | $ 10.65M |
| OMRON | 09/30/92 | 10/01/92 | $ 1.4M | $ .03M | $ .685M | $ .685M |
| OKI | 01/31/92 | 11/15/92 | $ 3M | $ .4M | $ 1.3M | $ 1.3M |
| HITACHI | 08/06/92 | 12/28/93 | $ 25M | $ 1.56M | $ 14.5M | $ 9M |
| NIPPN COLUMBIA | 12/15/92 | 12/29/92 | $ 3.25M | $ .13M | $ 1.56M | $ 1.56M |
| KENWOOD | 12/22/92 | 12/29/92 | $ 9.15M | $ .01M | $ 4.57M | $ 4.57M |
| OKI | 01/31/92 | 11/15/93 | $ 3M | $ 3M | -0- | -0- |
| NIKON | 12/28/93 | 12/28/93 | $ 3.375M | $ 1M | $ 1.2M | $ 1.2M |
| CANON | 12/30/93 | 01/27/94 | $ 19M | $ .2M | $ 9.4M | $ 9.4M |
| NIKON | 12/28/93 | 03/31/94 | $ 3.375M | $ 1.25M | $ 1.05M | $ 1.06M |
| CASIO | 04/01/94 | 04/20/94 | $ 9.5M | $ .3M | $ 4.6M | $ 4.6M |
| MINOLTA | 05/24/94 | 05/26/94 | $ 3.437M | $ .081M | $ 1.7M | $ 1.7M |
| ONKYO | 06/03/94 | 06/15/94 | $ 2.1M | $ .06M | $ 1.02M | $ 1.02M |
| TOSHIBA | 06/03/94 | 06/15/94 | $ 42.9M | $ .12M | $ 21.39M | $ 21.39M |
| MINOLTA | 05/24/94 | 08/10/94 | $ 3.437M | $ .64M | $ 1.4M | $ 1.4M |
| CANON | 12/30/93 | 09/15/94 | $ 19M | $ .2M | $ 9.4M | $ 9.4M |
| MINOLTA | 05/24/94 | 12/15/94 | $ 3.437M | $ .9M | $ 1.3M | $ 1.3M |
| MINOLTA | 05/24/94 | 04/15/95 | $ 3.437M | $ .7M | $ 1.36M | $ 1.36M |
| **SEIKO EPSON | 03/31/95 | 04/25/95 | $ 9.25M | $ .164M | $ 4.54M | $ 4.54M |
| CANON | 12/30/93 | 09/14/95 | $ 20M | $ .81M | $ 9.595M | $ 9.595M |
| | | | $354.7M | $31.8M | $168.1M | $154.8M |

CONFIDENTIAL

H 018636

** Seiko Epson - final payment for $9,250,000 due April 30, 1996      CONFIDENTIAL

Confidential-NV Protective Order

RJN1633

EXHIBIT___3___

RJN1634

LICENSING RIGHTS TERMINATION AND INDEMNIFICATION AGREEMENT

This Licensing Rights Termination and Indemnification Agreement (herein "this Agreement") is made by and between U.S. Philips Corporation, a corporation of the State of Delaware, having a place of business at 580 White Plains Road, Tarrytown, New York 10591 (hereinafter "PHILIPS") and Gilbert P. Hyatt, having an address at P.O. Box 81230, Las Vegas, NV 89180 (hereinafter "HYATT").

WHEREAS HYATT and PHILIPS are parties to an Agreement having an effective date of July 15, 1991 which Agreement was subsequently amended by four Supplemental Agreements dated (1) October 30, 1991, (2) October 30, 1991, (3) July 22, 1992 and (4) August 11, 1992 and which Agreements granted to PHILIPS certain rights to use and to license certain HYATT patents in the United States and throughout the World (the Agreement and the four Supplemental Agreements being hereinafter referred to as the "July 1991 Agreement");

WHEREAS PHILIPS is informed that HYATT has filed and has pending certain patent applications that may mature into LICENSABLE PATENTS (as used in this Agreement LICENSABLE PATENT or PATENTS shall have the same meaning as that term has in Section 1.8 of the July 1991 Agreement); and

WHEREAS PHILIPS and HYATT desire to terminate certain rights and obligations under the July 1991 Agreement as explicitly set forth herein;

Confidential-NV Protective Order

- 1 -

GLR 06824

RJN1635

IN WITNESS WHEREOF, the parties hereto affix their name or cause their corporate name to be affixed by their duly authorized officer or representative.

U.S. PHILIPS CORPORATION

BY: _____

TITLE: _PECE PRESIDENT_

ATTEST:

_____

DATED: _Dec. 12_ , 1997

GILBERT P. HYATT

_____

ATTEST:

_____

DATED: _Dec. 2_ , 1997

Confidential-NV Protective Order        - 39 -        GLR 06863

RJN1636

EXHIBIT___4___

RJN1637

<u>A G R E E M E N T</u>

This AGREEMENT is made by and between U.S. PHILIPS CORPORATION, a Corporation of the State of Delaware, having a place of business at 580 White Plains Road, Tarrytown, New York 10591 (hereinafter "PHILIPS") and GILBERT P. HYATT, an individual residing at 7841 Jennifer Circle, La Palma, California 90623 (hereinafter "HYATT").

<u>WITNESSETH THAT</u>

WHEREAS, HYATT owns and has the right to license certain patents and applications for patents relating to computers and LCD devices.

WHEREAS, PHILIPS desires to acquire certain rights under such patents and applications for patents.

NOW THEREFORE, in consideration of the mutual covenants and obligations herein set forth, the parties hereto agree as follows:

<u>ARTICLE I - DEFINITIONS</u>

As used herein, the following terms shall have the following meanings:

Section 1.1    COMPUTER PATENTS shall mean: All patents issuing on applications filed prior to or entitled to claim a filing date prior to 1980 for inventions resulting from computer related work done by HYATT and/or employees of Micro Computer Inc.

5885HYT9.AGR                    1                    D1127JUN91

H 01365                    3|39

0027-00001

RJN1638

<u>ARTICLE III - CONSIDERATION FOR LICENSES TO PHILIPS</u>

Section 3.1    In consideration of the licenses and releases granted pursuant to Sections 2.1 and 2.3, PHILIPS shall make payments to HYATT in accordance with the following schedule:

(a)    On the EFFECTIVE DATE, PHILIPS hereby promises to and shall pay to HYATT the sum of U.S. $800,000 (Eight hundred thousand Dollars U.S.) of which U.S. $400,000 shall be paid to Digital Nutronics Corp. and the remaining U.S. $400,000 shall be paid to HYATT;

(b)    On or before the first anniversary of the EFFECTIVE DATE, PHILIPS hereby promises to and shall pay to HYATT the sum of U.S. $200,000 (Two hundred thousand Dollars U.S.);

(c)    On or before the second anniversary of the EFFECTIVE DATE, PHILIPS hereby promises to and shall pay to HYATT the sum of U.S. $700,000 (Seven hundred thousand Dollars U.S.);

(d)    On or before the third anniversary of the EFFECTIVE DATE, PHILIPS hereby promises to and shall pay to HYATT the sum of U.S. $700,000 (Seven hundred thousand Dollars U.S.);

(e)    On or before the fourth anniversary of the EFFECTIVE DATE, PHILIPS hereby promises to and shall pay to HYATT the sum of U.S. $600,000 (Six hundred thousand Dollars U.S.).

H 01373    3/37.8

0027-00009

RJN1639

IN WITNESS WHEREOF, the parties hereto affix their name or cause their corporate name to be affixed by their duly authorized officer or representative.

U.S. PHILIPS CORPORATION

By: _____

Title: _ASSISTANT SECRETARY_

Dated: 7/12/91

Attest: _____

GILBERT P. HYATT

_____

Dated: 7/24/91

Attest: _____

5885HYT9.AGR                    41                    D1127JUN91

H 01405    3/25.4°

0027-00041

RJN1640



STATE OF CALIFORNIA
**FRANCHISE TAX BOARD**

**DECLARATION IN SUPPORT OF
SUBPOENA DUCES TECUM**

I, Robert W. Dunn, declare:

1. I am an attorney at law duly licensed to practice before the courts of the State of California. I am an employee of the California Franchise Tax Board. I currently hold the position of Tax Counsel IV and am assigned to the General Tax Law Bureau of the Legal Department. I am familiar with Mr. Gilbert P. Hyatt's administrative tax appeal to the California Board of Equalization and the legal and factual issues therein. Except as specified below, I make the following statements based upon personal knowledge.

2. Gilbert P. Hyatt, a former long time California resident, filed an administrative tax appeal challenging California Franchise Tax Board's issuance of Notices of Proposed Assessment for tax years 1991 and 1992 and Franchise Tax Board's subsequently issued Notices of Action for the same taxable years. These notices, which include proposed California income tax and fraud penalty assessments, are based on the Franchise Tax Board's determination at audit and protest that Mr. Hyatt remained a California resident through part of 1992. The audit and protest findings contradict the assertion of California nonresidency Mr. Hyatt made on his 1991 California part-year income tax return, the tax return at issue in this proceeding.

3. The primary legal issues in Mr. Gilbert P. Hyatt's California administrative tax appeal are: (1) Mr. Hyatt's assertion that he became a nonresident of California (as defined by Rev. & Tax. Code § 17014) on various dates in 1991; (2) Mr. Hyatt's objection to the proposed imposition of a fraud penalty (under Rev. & Tax. Code §§ 19164 and 19131); and (3) Mr. Hyatt's contention that he did not operate a business from California through December 31, 1992 that generated California source income (under Rev. & Tax. Code §§ 17951 and 17952).

4. On December 9, 2008, Mr. Gilbert P. Hyatt filed his Opening Brief in this matter with the California State Board of Equalization. That brief has attached 26 affidavits (19 signed by affiants just prior to the filing date) that have never been produced to Franchise Tax Board prior, even though the audit of Mr. Hyatt's claimed change of residency commenced 16 years ago, in June 1993. Assertions made by the affiants relate to the legal issues set forth in Paragraph 3 above.

5. On August 23, 2010, Mr. Gilbert P. Hyatt filed Reply Briefs in this matter with the California state Board of Equalization. Included with the referenced briefs, Mr. Hyatt filed thirty-four (34) new affidavits and other exhibits. These recently filed affidavits were executed between November 2009 and August 2010. Several of these new affiants claim personal knowledge of specific facts and events between November 1990 and December

1992. Assertions made by the affiants relate to the legal issues set forth in Paragraph 3 above.

6. Algy Tamoshunas, named in the Subpoena Duces Tecum, has provided an affidavit in regards to above referenced tax appeal. A true and correct copy of Mr. Tamoshunas' August 4, 2010 affidavit, excluding referenced exhibits, is attached hereto as Exhibit "B" to this declaration. Mr. Tamoshunas has also been identified by Mr. Hyatt's counsel of record in the above referenced tax appeal as one of the individuals in the New York in-house patent office for North American Philips as "…involved with Mr. Hyatt in licensing his patents during the disputed period in accordance with the July 1991 patent licensing agreement between Philips and Mr. Hyatt…." A true and correct copy of pages 1, 12, 13, and 20 from Mr. Eric Coffill's letter dated November 3, 2000 to Ms. Cinnamon identifying Mr. Tamoshunas and others from U.S. Philips Corp. as individuals involved in Mr. Hyatt's patent licensing activities is attached hereto as Exhibit "C" to this declaration. Mr. Hyatt through his Nevada counsel has also represented that Algy Tamoshunas, Esq. has personal knowledge of facts concerning Gilbert Hyatt's patent licensing program. Mr. Hyatt's patent licensing activities are relevant and relate to the legal issues described in Paragraph 3 above.

7. Franchise Tax Board will "require by demand" the examination of Algy Tamoshunas and require he produce documentation as per the attached Subpoena Duces Tecum in accordance with, and under the authority of, Rev. & Tax. Code § 19504. The purpose for this action is to administer the duties of the Franchise Tax Board which include ascertaining the correctness of any California tax return. The enforcement duty of the Franchise Tax Board with respect to California's Personal Income Tax Law is set forth in Rev. & Tax. Code § 19501.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___9 March 11___ at ___Sacramento, CA___.

Robert W. Dunn

RJN1642

EXHIBIT $B$

RJN1643

1    **AFFIDAVIT OF ALGY TAMOSHUNAS**

2

3    STATE OF NEW YORK                    )

4                                         ) ss:

5    COUNTY OF ULSTER                     )

6

7    I, ALGY TAMOSHUNAS, being duly sworn, according to oath, depose and state:

8        1.      I am a resident of the State of New York.  I am above the age of majority and

9    competent to testify to the following facts of my own personal knowledge.

10       2.      I am an attorney licensed to practice law in the State of New York (now retired)

11   and I am registered to practice before the United States Patent and Trademark Office.  In 1990,

12   1991 and 1992 I held the position of Vice President with Philips.  I have extensive experience in

13   patent licensing and litigation.  I hold the degree of Juris Doctor, from Fordham University.

14       3.      I participated in the drafting of the July 1991 Philips Agreement,[1]  I have read it

15   and I signed it as an officer of U.S. Philips Corporation.  I participated in the negotiation of the

16   September 1991 Mahr Leonard Agreement,[2]  I have read it and I signed it as an officer of U.S.

17   Philips Corporation.  I participated in the drafting of the four Supplemental Agreements,[3]  I have

18   read them and I signed them as an officer of U.S. Philips Corporation.  I read the Seven Patent

19   Agreements,[4]  my associates and I at U.S. Philips Corporation approved them, and we requested

20

21

22   [1] See Exhibit 3 for the July 1991 Philips Agreement.

23   [2] See Exhibit 4 for the September 1991 Mahr Leonard Agreement.
     [3] See Exhibits 6, 7, 8, and 9 for the [First], Second, Third, and Fourth Supplemental Agreements.

24   [4] See Exhibits 10-15 and 17 for each of the respective Seven Patent Agreements.

1

RJN1644

1  that Mr. Hyatt sign each of them.[5]  I participated in the drafting of the Sanyo, Omron, Nippon

2  Columbia, and Kenwood Patent Agreements,[6]  I have read them and I signed the Kenwood

3  Patent Agreement as an officer of U.S. Philips Corporation.  I was a principal in the Philips'

4  Licensing Program to license Mr. Hyatt's patents.  I made many trips to Japan, Korea and other

5  places in connection with the Philips Licensing Program.  I participated in the drafting,

6  negotiation, review, and approval of patent agreements for prospective licensees during the

7  course of the Philips Licensing Program.

8       4.   Philips and Mr. Hyatt signed the July 1991 Philips Agreement which had two

9  parts.  A first part gave Philips a non-exclusive license to use Mr. Hyatt's patents for itself.  A

10  second part required Philips to take responsibility for the licensing of 23 of Mr. Hyatt's patents

11  the "Licensable Patents" to others.  This second part will be addressed herein.

12      5.   The July 1991 Philips Agreement was an exclusive license agreement with

13  respect to the COMPUTER PATENTS and Mr. Hyatt never questioned Philips' authority to

14  license all of the "licensable patents".  To my knowledge Mr. Hyatt did not attempt to license

15  any of the Licensable Patents except pursuant to the Supplemental Agreements at the request of

16  Philips and Mr. Hyatt treated Philips as an exclusive licensee.  See for example the letters to

17  Toshiba[7] and Omron[8] in which Mr. Hyatt confirmed the exclusive authority of Philips to license

18  patents.

19      6.   The July 1991 Philips Agreement did not create either a joint venture or a

20  partnership with Mr. Hyatt.

21  ―――――――――――――――――――――――――

    [5]See for example Exhibit 2 for the letter from me to PSB&C dated October 24, 1991 agreeing to the terms of the

22  Sharp Patent Agreement and requesting that Mr. Hyatt sign it.

    [6] See Exhibits 16 and 18-20 for each of the respective Sanyo, Omron, Nippon Columbia, and Kenwood Patent

23  Agreements.

    [7]  See Exhibit 2 for the letter from Mr. Hyatt to Toshiba dated February 3, 1992.

24  [8]  See Exhibit 2 for the letter from Mr. Hyatt to Omron dated August 4, 1992.

2

RJN1645

7.     The September 1991 Mahr Leonard Agreement was a representation agreement that granted Mahr Leonard the rights as exclusive agent for patent license negotiations. This representation agreement created no joint venture or partnership relationship between or among Philips, Mahr Leonard or Mr. Hyatt and Philips had no joint venture or partnership relationship with either Mahr Leonard or Mr. Hyatt. While Section 6 of the September 1991 Mahr Leonard Agreement provided that Mahr Leonard was an independent contractor, Philips maintained managerial authority over Mahr Leonard and the Philips Licensing Program (1) by limiting the companies with whom Mahr Leonard could negotiate (see Exhibit A to the September 1991 Mahr Leonard Agreement), (2) by limiting the time period within which Mahr Leonard could negotiate licenses (see Section 1), and (3) by retaining a right of approval over any license agreements negotiated by Mahr Leonard (see Section 2).

8.     While Philips and Mr. Hyatt were both parties to the September 1991 Mahr Leonard Agreement, Section 4.1 of the July 1991 Philips Agreement effectively gave Philips the right to license the "licensable patents" and it was therefore Philips who delegated the authority to negotiate patent licenses for these patents to Mahr Leonard. By signing the September 1991 Mahr Leonard Agreement, Mr. Hyatt consented to this delegation of authority by Philips and also consented to the payment of the Mahr Leonard fee.

9.     PSB&C worked on the Licensing Program and the *Hyatt v. Boone* interference. PSB&C billed Philips for Mr. Roth's time and expenses and Philips paid these bills.

10.     Philips by itself and through its attorneys created and managed the Licensing Program and managed the interference in accordance with Section 5.3(c) of the July 1991 Philips Agreement. Philips took on a significant responsibility with significant financial exposure. Sections 3.1 and 4.6 of the July 1991 Philips Agreement imposed a financial exposure on Philips up to $36.5 million. Mr. Hyatt's representations and warrantees in Section 8.1 of the July 1991

3

RJN1646

1  Philips Agreement "that he has not made and will not make any commitments to others

2  inconsistent with or in derogation of the rights and licenses granted to PHILIPS" added assurance

3  that Mr. Hyatt would not be in competition with Philips.  Philips made certain through the July

4  1991 Philips Agreement that it would manage the licensing and litigation efforts, including the

5  interference, and that it would have the authority that it needed to satisfy its fiduciary

6  responsibility to Mr. Hyatt and to protect itself regarding its significant financial exposure.

7         11.    Philips had the responsibility to license the "licensable patents" under Sections

8  4.1 and 4.3 of the July 1991 Philips Agreement.  Philips used its worldwide licensing

9  organization to license the "licensable patents" and Philips managed the licensing from its

10 offices in New York and in the Netherlands.  For example, see the fax cover sheet stating, "For

11 your information, see the attached memo from **the Japanese team** with respect to Kenwood"[9]

12 and see the fax cover sheet stating "Jack E. Haken [North American Philips Corporation], H.

13 Koyama [] Philips Tokyo [] R. Peters [] Philips, Eindhoven".[10]  Philips executives traveled to

14 Japan and other Asian countries to license the "Licensable Patents".

15        12.    Early in the Licensing Program Philips selected the patent claims that were to be

16 presented to the prospective licensees and requested Mr. Hyatt's comments.[11]

17        13.    Through the September 1991 Mahr Leonard Agreement, Philips engaged Mahr

18 Leonard to negotiate on an exclusive basis with seven companies and Mahr Leonard successfully

19 licensed six of the seven companies.[12]  Philips engaged PSB&C and Mahr Leonard to negotiate

20

21

22  [9] See Exhibit 2 for the fax cover sheet from Mr. Haken to Mr. Hyatt dated October 1, 1992 [emphasis added].

23  [10] See Exhibit 2 for the fax cover sheet from Mr. Haken to Mr. Hyatt dated October 19. 1992.

    [11] See Exhibit 23 for the November 1991 Representative Claims document.

24  [12] See Exhibits 10-15 for each of the respective Six Patent Agreements.

4

RJN1647

1   with Hitachi and they successfully negotiated a seventh patent agreement with Hitachi[13] (the

2   "Seven Patent Agreements").  Philips negotiated with other prospective licensees and obtained

3   four additional patent agreements in 1992[14] for the "Eleven 1991-1992 Patent Agreements".[15]

4   Philips obtained still further patent agreements in subsequent years.  To the best of my

5   knowledge, Mr. Hyatt did not negotiate the Eleven 1991-1992 Patent Agreements.  Philips

6   formed a team of licensing professionals to license the "licensable patents"

7          14.    The licensing negotiations for the four patent agreements obtained by Philips in

8   1992 primarily took place in Japan.  Licensing professionals from Philips in New York and in

9   the Netherlands made numerous trips to Japan and to other Asian countries to negotiate license

10  agreements.  To the best of my knowledge, Mr. Hyatt did not make a single trip to an Asian

11  country after July 1991 to negotiate license agreements.

12         15.    In July 1991, Philips thought that it could be years before the patents would be

13  licensed and might involve litigation before the patents would be licensed, if ever.  The July

14  1991 Philips Agreement gave Philips control of such litigation, Philips committed up to $5

15  million for such litigation, [16] and Philips committed to give Mr. Hyatt up to ten years of

16  payments if and until licensing income was received.[17]  The Licensing Program unexpectedly

17  took off in October 1991 when prospective licensees started signing patent agreements.  The first

18

19

20

21  [13] See Exhibit 17 for the Hitachi Patent Agreement.  See also Exhibit 2 for the letter from Mr. Galama to
     Mahr Leonard dated January 17, 1992 authorizing Mahr Leonard to assist with Hitachi.

22  [14] See Exhibits 16 and 18-20 for each of the additional four Patent Agreements.

23  [15] See Exhibits 10-20 for each of the respective Eleven 1991 and 1992 Patent Agreements.

     [16] See Exhibit 3 for the July 1991 Philips Agreement at Section 5.3.

24  [17] See Exhibit 3 for the July 1991 Philips Agreement at Section 4.6.

5

1  licensees received unexpectedly rapid Japanese government approval[18] and unexpectedly rapid

2  company management approval.[19]

3      16.   Section 4.2 of the July 1991 Philips Agreement required Philips to consult with

4  Mr. Hyatt and to keep him informed and it did so.  However, the Licensing Program and the

5  interference were carried on by the professionals:  Philips, which was located in New York, the

6  Netherlands, and Japan; Mahr Leonard, which was located in Texas; the law firm of PSB&C,

7  which was located in California; the law firm of Burns Doan, which was located in Virginia; and

8  law firm of EGLI International, which was located in New York.

9      17.   Philips requested that Mr. Hyatt sign the Seven Patent Agreements.  Three

10  Supplemental Agreements[20] granted Mr. Hyatt the authority to sign the Seven Patent Agreements

11  and Philips in the three Supplemental Agreements indemnified Mr. Hyatt and held him harmless

12  for executing the Seven Patent Agreements.[21]  In each case Philips retained a right of approval

13  (see Section 1) and in fact did review and approve each of the Seven Patent Agreements before

14  requesting Mr. Hyatt to sign them.[22]  While the grant of authority under Section 2 of the three

15  Supplemental Agreements was worded as a "right to license", Mahr Leonard was granted the

16  exclusive right to negotiate with respect to six of the Seven Patent Agreements and Mahr

17  Leonard and PSB&C were granted the right to negotiate the Hitachi Patent Agreement.

18  Therefore, the so called "right to license" that was granted to Mr. Hyatt by the three

19  [18] See Exhibit 2 for the letter from Fujitsu to Mahr Leonard dated October 24, 1991; the letter from Matsushita to
Mahr Leonard dated November 14, 1991; and the letter from Sharp to Mahr Leonard dated November 19, 1991.

20  [19] See Exhibit 2 for the letter from Fujitsu to Mahr Leonard dated October 24, 1991; the letter from Matsushita to
Mahr Leonard dated November 14, 1991; and the letter from Hitachi to PSB&C dated June 19, 1992 regarding

21  company management approval.

  [20] See Exhibits 6, 7, and 8 for the [First], Second, and Third Supplemental Agreements at Section 1.

22  [21] See Exhibits 6 and 7 for the [First] and Second Supplemental Agreements at Section 3.  See also Exhibit 8 for the
Third Supplemental Agreement at Section 5.

23  [22] See Exhibit 2 for the letter dated October 24, 1991 that I wrote to PSB&C agreeing to the terms of the Sharp

24  agreement and requesting that Mr. Hyatt execute the Sharp agreement.  See also Exhibit 2 for the letter from Philips
to Mr. Roth dated June 3, 1992 approving the draft Hitachi agreement.

6

RJN1649

1   Supplemental Agreements was effectively limited to the act of signing each of the Seven Patent

2   Agreements after receiving approval from Philips.

3         18.   All of the licensing income from the Seven Patent Agreements was initially

4   received by the client trust account maintained by PSB&C for the benefit of Philips at Union

5   Bank.[23]  For example, Section 2 of the Second Supplemental Agreement provided, "[a]ny such

6   funds may initially be deposited in a trust account for the benefit of Philips." All of the licensing

7   income from the remaining four 1991 and 1992 patent agreements was initially deposited by the

8   licensees into a Philips account at the Bank of New York.[24]

9         19.   Each of the seven licensees wire transferred the licensing payments into the

10   PSB&C client trust account for the benefit of Philips and thus the license payments were

11   received by Philips.[25]  All of the licenses for the Seven Patent Agreements were signed by Mr.

12   Hyatt under a delegation of authority from Philips and the income was distributed in accordance

13   with Philips' instructions as set forth in the three Supplemental Agreements[26] and the letter dated

14   December 18, 1991 from Philips to PSB&C.[27]  All of the licensing income from the remaining

15   1991 and 1992 patent agreements was wire transferred into Philips' account at the Bank of New

16   York and distributed by Philips.

17         20.   Philips requested that Mr. Hyatt distribute the licensing income from Fujitsu, Oki,

18   and Matsushita on Philips' behalf in accordance with specific instructions that it gave to PSB&C

19   and to Mr. Hyatt in Section 2 of the [First] Supplemental Agreement.  Mr. Hyatt had no

20   discretion with respect to the timing of the distributions, the amounts of the distributions, or the

---

[23] See Exhibit 21 for a summary of the relevant provisions of the Eleven Patent Agreements.

[24] See Exhibit 21 for a summary of the relevant provisions of the Eleven Patent Agreements.

[25] See Exhibit 21 for a summary of the relevant provisions of the Eleven Patent Agreements.

[26] See Exhibits 6, 7, and 8 for the [First], Second, and Third Supplemental Agreements, respectively.

[27] See Exhibit 2 for letter dated December 18, 1991 from Philips to PSB&C.

7

RJN1650

1  recipients of the distributions. Section 2 of the [First] Supplemental Agreement required the

2  distributions to occur "promptly upon receipt". The amounts and recipients of the distributions

3  were determined by the July 1991 Philips Agreement, the September 1991 Mahr Leonard

4  Agreement and the Third Supplemental Agreement. Regardless of who distributed the license

5  payments from the Licensing Program, there was never any discretion with respect to the

6  recipient or the amount because these were determined by the July 1991 Philips Agreement, the

7  September 1991 Mahr Leonard Agreement and the Third Supplemental Agreement.

8       21.    Pursuant to the Second Supplemental Agreement, the licensing income from

9  NEC, Sony, and Sharp Patent Agreements in December 1991 was paid to the client trust account

10  maintained by PSB&C for the benefit of Philips. As stated in Section 2, "[a]ny such funds may

11  initially be deposited in a trust account for the benefit of Philips and then promptly forwarded to

12  the following [Philips account]". Subsequently, in the letter dated December 18, 1991,[28] Philips

13  instructed PSB&C to pay Mahr Leonard its fee and then to send the balance of the licensing

14  income to Philips. Pursuant to Section 4.9 of the July 1991 Philips Agreement, Philips had two

15  months from the end of the first calendar quarter to pay Mr. Hyatt his share of the licensing

16  income (by February 29, 1992) but Philips paid Mr. Hyatt about six weeks early (in mid-January

17  1992).[29]

18       22.    The licensing income from Hitachi in 1992 was paid in two payments, one in

19  mid-1992 and one in late-1992[30] The payments were made to the client trust account maintained

20

21

22

23  [28] See Exhibit 2 for letter dated December 18, 1991 from Philips to PSB&C.

    [29] See Exhibit 2 for letter dated January 14, 1992 from Philips to Mr. Hyatt.

24  [30] See Exhibit 17 for the August 6, 1992 Hitachi Patent Agreement at Section 3.1.

8

1  by PSB&C for the benefit of Philips.[31]  Philips instructed PSB&C regarding how to distribute the

2  Hitachi licensing income.[32]

3      23.  All of the licensing income from the Eleven 1991-1992 Patent Agreements was

4  accounted for by Philips in accordance with the July 1991 Philips Agreement.[33]  Philips

5  accounted for all of the licensing income and for all expenses charged to the Licensing Program

6  with "quarterly reports" to Mr. Hyatt in accordance with Section 4.9 of the July 1991 Philips

7  Agreement.

8      24.  To the best of my knowledge Mr. Hyatt did not conduct any licensing business

9  after signing the July 1991 Philips Agreement with regard to the Eleven 1991-1992 Patent

10  Agreements.

11      25.  Mr. Hyatt gave Philips a change of address from California to Las Vegas in the

12  latter part of October 1991 and I understood that he moved to Las Vegas before the latter part of

13  October 1991.[34]  Any mailings from Philips personnel to Mr. Hyatt at his former California

14  addresses as of October 1991 and thereafter were inadvertent errors by Philips' support

15  [31]See Exhibit 17 for the August 6, 1992 Hitachi Patent Agreement at Section 3.2.

16  [32] See Exhibit 8 for the Third Supplemental Agreement. See also Exhibit 2 for the letter from Mr. Galama to Mahr Leonard dated January 17, 1992 authorizing Mahr Leonard to assist with Hitachi. See also Exhibits 17 for the Hitachi Patent Agreement.

17  [33]See Exhibit 3 for the July 1991 Philips Agreement at Sections 4.7, 4.8, and 4.9.

18  [34] See Exhibit 5 for an early version of the [First] Supplemental Agreement signed by me and dated November 5, 1991, that is marked up to show Mr. Hyatt's Las Vegas street address. See also Exhibit 1 for a letter dated February

19  17, 1992, from Mr. Hakim to Mr. Roth stating that the attached license form (which included Mr. Hyatt's Las Vegas street address) was approved by Mr. Hyatt on November 27, 1991. See Exhibit 2 for letter dated December 10, 1991 from Hyatt to Sony. See also Exhibit 6 for the signed final version of the [First] Supplemental Agreement "dated

20  October 30, 1991" reciting Mr. Hyatt's Las Vegas street address and signed by me on December 12, 1991. See also Exhibit 7 for the signed final version of the Second Supplemental Agreement "dated October 30, 1991" reciting Mr.

21  Hyatt's Las Vegas street address and signed by me on December 12, 1991. See also Exhibit 22 for the license agreement form with the handwritten date December 20, 1991 which recites Mr. Hyatt's Las Vegas street address.

22  See also Exhibit 1 for the first page of each of the draft Sony and NEC Patent Agreements reciting Mr. Hyatt's Las Vegas street address in the preamble and prominently circled that were faxed to Mr. Roth by Mahr Leonard on December 9, 1991 (see the fax header) to show that Mr. Hyatt's change of address to Las Vegas had been

23  incorporated into the Sony and NEC Patent Agreements. See also Exhibits 13 and 14 for the Sony and NEC Patent Agreements reciting Mr. Hyatt's Las Vegas street address in the preamble that were signed by Mr. Hyatt on December 10, 1991. See Exhibit 1 for the financial statement dated January 14, 1992 which recites Mr. Hyatt's Las

24  Vegas street address.

9

1   personnel. Even though Mr. Hyatt's Las Vegas street address was recited in Philips documents

2   starting in November 1991 and continuing thereafter.[35] Philips occasionally and inadvertently

3   sent other correspondences to Mr. Hyatt using his former California addresses.

4       26.    Mahr Leonard drafted the Six Patent Agreements, submitted them to Philips for

5   approval, and Philips approved them and requested that Mr. Hyatt sign them.[36] Even though

6   Philips knew by the end of October 1991 that Mr. Hyatt had moved to Las Vegas, Philips

7   approved the Sharp Patent Agreement (signed by Mr. Hyatt October 28, 1991) and the

8   Matsushita Patent Agreement (signed by Mr. Hyatt on November 4, 1991) because I understood

9   that the two listings of Mr. Hyatt's prior address in the preambles were immaterial to the patent

10  agreements. The payments from Sharp and Matsushita were to be made to and were made to the

11  client trust account maintained by PSB&C for the benefit of Philips and the notices and other

12  correspondence were to be made to and were made to Philips through its attorneys.

13      27.    I am not aware of Grace Jeng having any involvement in the Licensing Program

14  or the interference.

15      28.    Pursuant to the July 1991 Philips Agreement, Mr. Hyatt gave Philips one half of

16  the NET PROCEEDS from licensing his patents in return for Philips' best efforts to license the

17  LICENSABLE PATENTS. While Philips obtained assistance from Mahr Leonard, Mr. Hyatt

18  and others during the course of the Licensing Program, Philips managed the Licensing Program.

19  Mr. Hyatt's rights with respect to the Licensing Program were defined by the July 1991 Philips

20  Agreement and were limited to rights such as the right to be kept informed (Section 4.3), the

21

22

---

23  [35] Ibid.

24  [36] See for example Exhibit 2 for the letter from me to PSB&C dated October 24, 1991 agreeing to the terms of the Sharp Patent Agreement and requesting that Mr. Hyatt sign it. See also Exhibit 2 for the letter from Philips to Mr. Roth dated June 3, 1992 approving the draft Hitachi agreement.

10

RJN1653

1  right to be consulted (Section 4.3), the right of approval of license agreements under specified

2  circumstances (Section 4.4), and the right to receive half of the net proceeds Section 4.5).

3

4  Further your affiant sayeth naught.

5

6  ALGY TAMOSHUNAS

7  Subscribed and sworn to before me

8  this __4__ day of __August__ 2010.

9

10  Notary Public

11

12  MARY F. MATTHEWS
   Notary Public, State of New York
   Reg. 01MA6190758
   Qualified in Ulster County
   Commission Expires July 28, 2012

13

14

15

16

17

18

19

20

21

22

23

24

11

RJN1654

EXHIBIT___C____

MORRISON & FOERSTER LLP

| SAN FRANCISCO | ATTORNEYS AT LAW | NEW YORK |
| LOS ANGELES | | BUENOS AIRES |
| PALO ALTO | 400 CAPITOL MALL, SUITE 2300 | LONDON |
| WALNUT CREEK | SACRAMENTO, CALIFORNIA 95814 | BRUSSELS |
| ORANGE COUNTY | TELEPHONE (916) 448-3200 | BEIJING |
| SAN DIEGO | TELEFACSIMILE (916) 448-3227 | HONG KONG |
| DENVER | | SINGAPORE |
| WASHINGTON, D.C. | | TOKYO |

November 3, 2000

Writer's Direct Contact
(916) 325-1324
etolTill@mofo.com

BY CERTIFIED MAIL NO.
7099 3400 0004 7558 2964

RECEIVED
NOV 9 2000
SACRAMENTO LEGAL
FRANCHISE TAX BOARD

E TH 11/9/2000

Ms. Cody C. Cinnamon
Tax Counsel III
Franchise Tax Board
Legal Branch
P.O. Box 1720
Rancho Cordova, CA 95741-1720

Re: Protests of Mr. Gilbert P. Hyatt
Income Year 1992

Dear Ms. Cinnamon:

This is in response to your letter of October 4, 2000 in the above matter, which set forth twenty-five additional requests for information and documents within thirty days. We assume your references to a December 30, 1991 IDR (see, e.g., your Question 1) refers to the December 30, 1999 letter from Charlene Woodward to Mr. Cowan.

As discussed at the protest hearing in this matter, we had hoped to receive a copy of the FTB's audit file for this year by the end of October, and prior to the due date for this response. However, since the file was not available to us until today (when we picked it up at FTB), we did not have the benefit of the file for purposes of responding to your October 4th letter.

QUESTION NO. 1:

For each date of presence on page 63 of the audit narrative for what reason he was in California on that date. Please reconcile the list of page 64 of your days of presence in Nevada with those on page 63, especially the fact that these are often very close in time. See attached. Note that the December 30, 1991, Information and

P00510

0371-00001

MORRISON & FOERSTER LLP

Ms. Cody Cinnamon
November 3, 2000
Page Twelve

- managers at Valley Bank in Nevada and specifically Richard Etter
- managers at the Nevada branch of Bank of America;
- the University of Nevada at Las Vegas (UNLV) and specifically Dr. William Brogan, Professor and IEEE Chairman, and Dr. Yahia Baghzouz, Chairman;
- Mirage Resorts and specifically executive Kenny Wynn;

Notwithstanding the fact that the non-California professionals identified below were not primarily situated in Nevada during the disputed period, to the extent that these non-California professionals represented or were involved with Mr. Hyatt in Las Vegas during the disputed period categorizes them as Nevada professionals during the disputed period.

The non-California professionals that represented or were involved with Mr. Hyatt in the patent interference proceeding Hyatt v. Boone[1] during the disputed period in accordance with the July 1991 patent licensing agreement between Philips and Mr. Hyatt include:

- the New York in-house patent law office of North American Philips and specifically attorneys Al Tamoshunas, Jack Haken, and Jack Oisher (also mentioned below regarding licensing);
- the New York office of the law firm of Keck, Mahin, Cate and specifically attorneys Jim Williams, John DiMatteo, and Ken Cho and paralegal Felicia Crane;
- the Virginia law firm of Burns Doane and specifically attorney Danny Huntington and paralegal Donna Silva;
- expert witness Don Black (Colorado);
- expert witness Dianna Black (Colorado);
- expert witness Vern McKenny (Colorado);

---

[1] Mr. Hyatt was a named party in the patent interference proceeding which was pending during the entire period in dispute, and commenced much earlier. For example, in July 1991, Mr. Hyatt filed a preliminary motion in the proceeding pending before the Commissioner of Patents and Trademarks. A Memorandum Opinion and Order was issued on December 1, 1992. (See *Hyatt v. Boone*, Interference No. 102,598, Commissioner of Patents and Trademarks, 1992 Commr. Pat. LEXIS 30.) The Opinion and Order was appealed, and after many years of further proceedings, an opinion was issued on June 17, 1998 by the United States Court of Appeals for the Federal Circuit in *Hyatt v. Boone* (1998) 146 F.3d 1348, 1998 U.S. App. LEXIS 12809. The case was argued before the Federal Circuit for Mr. Hyatt by John M. DiMatteo, of Patterson, Balknap, Webb & Tyler LLP of New York. (see 146 F.3d 1348.)

P00521

0371 00012

MORRISON & FOERSTER LLP

Ms. Cody Cinnamon
November 3, 2000
Page Thirteen

- expert witness Don Craft (Colorado);
- expert witness Harry Stover (Texas); and
- expert witness Bill Tobey (East Coast).

The non-California professionals that represented or were involved with Mr. Hyatt in licensing his patents during the disputed period in accordance with the July 1991 patent licensing agreement between Philips and Mr. Hyatt include:

- the New York in-house patent law office of North American Philips and specifically patent attorneys Al Tamoshunas, Jack Haken, Ed Blocker, and John Fox and paralegals Elise Smith, Elissa Waldron, and Lilly Drumhelle;
- the New York executive office of North American Philips and specifically Steve Tumminello, President, Sam Rozel, Sr. Vice President, and Paul Friedlander, Vice President;
- the Dutch in-house patent law office of NV Philips and specifically patent attorneys Jan Galama, Huib Beckers, and Ruud Peters;
- the Dutch executive office of NV Philips and specifically Rob Hamersma;
- the Japanese in-house patent law office of NV Philips and specifically attorney Hidekazu Koyama;
- the Taiwanese law firm of Lee and Li and specifically C.V. Chen;
- the New York law office of Tom Briody; and
- the Oregon PR firm of Charles McHenry.

The non-California professionals that represented or were involved with Mr. Hyatt in licensing his patents during the disputed period in accordance with the September 1991 patent licensing agreement between Philips, Mr. Hyatt, and Mahr Leonard Management Company (MLMC) include:

- the Texas patent licensing firm MLMC and specifically licensing professionals George Mahr and Dave Leonard; and
- the Texas patent law firm of Leonard and Lott and specifically attorneys Dave Leonard and Bob Lott and paralegal Vikki Weart.

The non-California professionals that were involved with Mr. Hyatt in accordance with the June 1991 patent licensing option agreement between Mr. Hyatt and Pioneer during the disputed period include Pioneer (Japan) and specifically Japanese executives Mr. Okatani and Keiji Masaki.

The non-California professionals that were involved with Mr. Hyatt during the disputed period include prospective licensee IBM (New York) and specifically Emmett Murtha, Mike Burns, Diana Dorr, and John Brady.

P00522

RJN1658

MORRISON & FOERSTER LLP

Ms. Cody Cinnamon
November 3, 2000
Page Twenty

QUESTION NO. 25:

Provide the MCI billing statements for the period in dispute. Was MCI Hyatt's
long distance provider during this period? If not, explain the nature of the services
provided by MCI to Mr. Hyatt.

RESPONSE TO QUESTION NO. 25:

Mr. Hyatt does not have in his possession any MCI billing statements for the
period in dispute. Mr. Hyatt has no present recollection of his long distance provider
during this period.

Thank you in advance for your continuing cooperation in this matter.

Very truly yours,

Eric J. Coffill

cc:   Eugene G. Cowan
      Gilbert P. Hyatt

Encls. (binder)

P00529

0371 00020

RJN1659

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
--------------------------------------------------------------x
In the matter of:                                    :
                                                     :
                                                     :
The Application of State of California Franchise     :    **SUBPOENA DUCES TECUM**
Tax Board for the deposition and production of       :
business records from Algy Tamoshunas for use        :
in an action pending in the Superior Court of        :
California entitled <u>State of California Franchise</u>  :
<u>Tax Board v. Neal Howard, et al.</u> (Case No. 34-  :
2011-00101401)                                       :
                                                     :
                                                     :
--------------------------------------------------------------x

CARTER LEDYARD & MILBURN LLP
COUNSELORS AT LAW
2 WALL STREET
NEW YORK, N.Y. 10005
———
(212) 732 - 3200

RJN1660

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

-----------------------------------------------------------x

In the matter of:                                        :
                                                         :
The Application of State of California Franchise         :    **SUBPOENA DUCES TECUM**
Tax Board for the deposition and production of           :
business records from Jack E. Haken for use in an        :
action pending in the Superior Court of California       :
entitled <u>State of California Franchise Tax Board</u>  :
<u>v. Neal Howard, et al.</u> (Case No. 34-2011-          :
00101401)                                                :
                                                         :
                                                         :
-----------------------------------------------------------x

## THE PEOPLE OF THE STATE OF NEW YORK

To:    **Jack E. Haken**
       **US Philips Corporation**
       **345 Scarborough Road**
       **Briarcliff Manor, New York 10510**

       **WE COMMAND YOU**, that all business and excuses being laid aside, produce

pursuant to CPLR § 3119, at the offices Suite Solutions, 75 South Broadway, 4th Floor, White

Plains, New York 10601 on or before June 24, 2011, at 10:00 a.m., all documents and other

things in your possession, custody or control described on the attached Exhibit A.

       **WE FURTHER COMMAND YOU**, that all business and excuses being laid aside,

appear for a deposition pursuant to CPLR § 3119 at the offices of Suite Solutions, 75 South

Broadway, 4th Floor, White Plains, New York 10601 on June 30, 2011, at 10:00 a.m.

       The circumstances or reasons said document production and deposition are sought or

required are that the information is material, relevant and necessary for the prosecution and

defense of the above-captioned action.  It is believed that you have relevant information

concerning, among other things, Gilbert P. Hyatt's assertion that he became a nonresident of

6773453.1

6793224.2

RJN1661

California in or around 1991 and Mr. Hyatt's contention that he did not operate a business from California through December 1992.

Failure to comply with this subpoena is punishable as a contempt of Court and shall make you liable to the person on whose behalf this subpoena was issued for a penalty not to exceed fifty dollars and all damages sustained by reason of your failure to comply.

Dated: May 26, 2011

CARTER LEDYARD & MILBURN LLP

By _____
                              Leonardo Trivigno
2 Wall Street
New York, NY 10005
Telephone: (212) 238-8724

*Attorneys for Plaintiff State of California Franchise Tax Board*

6773453.1

6793224.2

RJN1662

**EXHIBIT A**
**<u>REQUEST FOR PRODUCTION OF DOCUMENTS</u>**

6773453.1

6793224.2

RJN1663

## DEFINITIONS

The following definitions and rules of construction apply to these document

requests:

1. <u>Communication</u>. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2. <u>Document</u>. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rules of Civil Procedure 34(a). A draft or non-identical copy is a separate document within the meaning of this term.

3. <u>Identify (with Respect to Documents)</u>. When referring to documents, "to identify" means to give, to the extent known, (i) the type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipients(s).

4. <u>Person</u>. The term "person" is defined as any natural person or business, legal or governmental entity or association.

5. <u>Hyatt Patent</u>. The term "Hyatt Patent" means any patent issued to or owned by Gilbert P. Hyatt.

6. <u>Concerning</u>. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

7. <u>All/Each</u>. The term "all" and "each" shall be construed as all and each.

8. <u>And/Or</u>. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all documents that might otherwise be construed to be outside its scope.

9. <u>Number</u>. The use of the singular form of any word includes the plural and vice versa.

RJN1664

**DESCRIPTION OF RECORDS**
**Exhibit A**

1. All draft and/or unsigned affidavits, declarations or written statements read or reviewed by you or submitted to you about Gilbert P. Hyatt.

2. All documents (including without limitation licenses, agreements, contracts, memoranda, and letters) under which any person or entity has been licensed or sub-licensed to make, use, sell, or import any invention claimed in any Hyatt Patent.

3. All documents (including without limitation licenses, agreements, contracts, memoranda, and letters) under which any person or entity has been released from claims or liabilities for making, using, selling or importing any invention claimed in any Hyatt Patent.

4. All documents (including without limitation licenses, agreements, contracts, memoranda, and letters) under which Gilbert P. Hyatt agreed not to, or assured that he will not, assert or bring suit upon any Hyatt Patent.

5. All documents (including without limitation licenses, agreements, contracts, memoranda, and letters) under which any person or entity obtained an option to obtain a license, sub-license, or release, under any Hyatt Patent.

6. All documents reflecting any money paid by any person or entity in consideration for a license, sub-license, or release, or any option to obtain a license, sub-license, or release, under any Hyatt Patent.

7. All documents reflecting any money paid by any person or entity in consideration for any agreement or assurance not to assert or sue upon any Hyatt Patent.

8. All documents by U.S. Philips Corporation concerning money it expended or received in connection with the licensing or sub-licensing of any Hyatt Patent.

9. All documents by Mahr Leonard Management Co. concerning money it expended or received in connection with the licensing or sub-licensing of any Hyatt Patent.

10. All documents, and all files and their contents, that relate to, mention, discuss, concern or reflect efforts by U.S. Philips Corporation to negotiate any license or sub-license under any Hyatt Patent.

11. All documents, and all files and their contents, that relate to, mention, discuss, concern or reflect efforts by Mahr Leonard Management Co. to negotiate any license or sub-license under any Hyatt Patent.

12. All documents received by you and/or U.S. Philips Corporation (including any of their attorneys, agents or representatives) from any other person or entity concerning any

RJN1665

license, sub-license, or release, or any option to obtain a license, sub-license or release, under any Hyatt Patent.

13. All documents sent by you and/or U.S. Philips Corporation (including any of their attorneys, agents or representatives) to any other person or entity concerning any license, sub-license, or release, or any option to obtain a license, sub-license or release, under any Hyatt Patent.

14. All documents discussing, relating to, or reflecting any expenses incurred by U.S. Philips Corporation, Mahr Leonard Management Co. or Gilbert P. Hyatt (including any of their attorneys, agents or representatives) in connection with discussions with any other person or entity concerning any possible or actual licensing, sub-licensing, or release, or any option to obtain a license, sub-license, or release, under any Hyatt Patent.

15. All documents discussing, relating to, or reflecting any plan or agreement by Gilbert P. Hyatt, U.S Philips Corporation, and/or Mahr Leonard Management Co. to seek revenues from the licensing or sub-licensing of any Hyatt Patent, or from the release of any liabilities for infringement for any such patent.

16. All communications sent by you and/or U.S. Philips Corporation (including any of their attorneys, agents, or representatives) to any other person or entity concerning (a) U.S. Patent Interference No. 102,598, including any ruling or document issued by the U.S. Patent and Trademark Office in that interference or (b) United States Court of Appeals for the Federal Circuit appeal no. 96-1514 or appeal no. 96-1515, including the June 17, 1998 decision in those appeals.

17. All communications received by you and/or U.S. Philips Corporation (including any of their attorneys, agents, or representatives) from any other person or entity concerning (a) U.S. Patent Interference No. 102,598, including any ruling or document issued by the U.S. Patent and Trademark Office in that interference or (b) United States Court of Appeals for the Federal Circuit appeal no. 96-1514 or appeal no. 96-1515, including the June 17, 1998 decision in those appeals.

18. All documents discussing, relating to, or reflecting any consideration by Gilbert P. Hyatt (including any of his attorneys, agents, or representatives) of the engagement of any entity to conduct negotiations on his behalf for the licensing or sub-licensing under any Hyatt Patent.

19. All documents concerning time keeping for tasks performed and time spent on tasks performed by you on behalf of or for the benefit of Gilbert P. Hyatt.

20. All documents concerning preliminary and/or draft billing statements and final statements for fee charges and worked performed on behalf of or relating to Gilbert P. Hyatt.

21. All documents, and all files and their contents, that relate to, mention, discuss, concern or reflect Gilbert P. Hyatt "retaining and directing outside patent counsel for services

rendered and expenses incurred," including, but not limited to attorneys Danny
Huntington, Gregory Roth, Jim Williams, John Dimatteo, and Ken Cho as referenced in
Sections 1 and 4 of the Fourth Supplemental Agreement between Gilbert P. Hyatt and
U.S. Philips Corporation attached hereto as Exhibit "1".

22. All documents and/or notes memorializing any conversation between you and Gilbert P.
Hyatt.

23. All calendars, diaries, appointment books, and/or documents used for making
appointments and/or calendaring events from January 1, 1990 to December 31, 1997.

24. All documents announcing, discussing, relating to, or reflecting any efforts by or on
behalf Gilbert P. Hyatt to publicize any Hyatt Patent, plan to publicize any Hyatt Patent
and publicity of any Hyatt Patent.

25. All documents, and all files and their contents, that relate to, mention, or concern
negotiation, drafting and finalizing the July 1991 agreement between Gilbert P. Hyatt and
U.S. Philips Corporation, including, but not limited to, any notes, faxes, letters, memos,
and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or
George Mahr of Mahr Leonard Management Company.

26. All documents, and all files and their contents, that relate to, mention, or concern specific
details of any sub-licensing proposals recommended by you or any representative of U.S.
Philips Corporation which were not approved by Gilbert P. Hyatt, in accordance with his
right to approve all-sublicensing agreements, and any other evidence of rights retained by
Gilbert P. Hyatt which were exercised in accordance with the July 1991 agreement
between Gilbert P. Hyatt and U.S. Philips Corporation.

27. All documents, and all files and their contents, that relate to, mention, or concern U.S.
Philips Corporation's compliance with the reporting requirement set forth in I.R.C. Sec.
6050N as related to the July 1991 agreement and/or supplemental agreements between
Gilbert P. Hyatt and U.S. Philips Corporation.

28. All documents, and all files and their contents, that relate to, mention, or concern
negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt, U.S. Philips
Corporation and Mahr Leonard Management Company, dated September 24, 1991,
including, but not limited to, any notes, faxes, letters, memos and/or emails to or from
Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr
Leonard Management Company.

29. All documents, and all files and their contents, that relate to, mention, or concern
negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Fujitsu,
dated October 24, 1991, as referenced in Exhibit "2" (H018631-H018636) attached
hereto, including, but not limited to, any notes, faxes, letters, memos, and/or emails to or
from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of
Mahr Leonard Management Company.

RJN1667

30. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Matsushita, dated November 14, 1991, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos, and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

31. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Sharp, dated November 20, 1991, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos, and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

32. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Sony, dated December 17, 1991, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos, and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

33. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and NEC, dated December 26, 1991, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos, and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

34. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Oki, dated January 31, 1992, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

35. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Sanyo, dated July 23, 1992, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

36. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Hitachi, dated August 6, 1992, as referenced in Exhibit "2" (H018631-H018636) attached hereto,

including, but not limited to, any notes, faxes, letters, memos and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

37. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Omron, dated September 30, 1992, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

38. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Nippon Columbia, dated December 15, 1992, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos, and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

39. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Kenwood, dated December 22, 1992, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos, and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

40. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Nikon, dated December 28, 1993, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

41. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Canon, dated December 30, 1993, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos, and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

42. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the four supplemental Agreements between Gilbert P. Hyatt and U.S. Philips Corporation as referenced in Exhibit "3" (GLR 06824) attached hereto, including, but not limited to, any notes, faxes, letters, memos and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

43. All documents, and all files and their contents, that relate to, mention, or concern negotiating the "Licensing Rights Termination and Indemnification Agreement" between Gilbert P. Hyatt and U.S. Philips Corporation signed by Gilbert Hyatt on December 2, 1997 and individuals from U.S. Philips Corporation on December 12, 1997 (the first and signature pages of the referenced agreement attached hereto as Exhibit "3" (GLR06284,GLR06863)).

44. All documents, and all files and their contents, that relate to, mention, discuss, concern U.S. Philips Corporation's promise and obligation to pay Digital Nutronics Corp. $400,000 as set forth in Section 3.1 (a) (Article III- Consideration for Licenses to Philips) as referenced at page 9 in the July 1991 patent licensing agreement between U.S. Philips Corporation and Gilbert Hyatt attached hereto as Exhibit "4".

45. Full and complete copies of U.S. Philips Corporation's annual report for the years 1991 through 1993.

46. All phone message slips, memos, notes, messages and any other similar writing memorializing telephone conversations or in person meetings between you and Gilbert P. Hyatt.

47. All documents, and all files and their contents, that relate to, mention, or concern any contract or agreement for legal representation between U.S. Philips Corporation and/or related entity and Gregory L. Roth, Esq. and/or the law firm of Pretty, Schroeder, Bergman to represent U.S. Philips Corporation or related entity on any matter at any time.

48. All documents, and all files and their contents, that relate to, mention, or concern any contract or agreement for legal representation between U.S. Philips Corporation and/or related entity and Danny Huntington and/or the Virginia law firm, Burns Doane to represent U.S. Philips Corporation or related entity on any matter at any time.

49. All documents, and all files and their contents, that relate to, mention, or concern any contract, agreement and/or memorandum of understanding between U.S. Philips Corporation and Charles Lee McHenry and/or McHenry and Associates for payment of services performed or rendered by Charles Lee McHenry and/or McHenry and Associates on behalf of U.S. Philips Corporation, related entity and/or Gilbert P. Hyatt.

50. All documents, including, but not limited to, billings, invoices, receipts, and/or travel documents, that relate to or concern any travel by Gilbert P. Hyatt, Gregory L. Roth, and/or Grace Jeng associated with licensing patents in accordance with the July 1991 patent licensing agreement between U.S. Philips Corp. and Gilbert P. Hyatt.

51. All documents, and all files and their contents, that relate to, mention, or concern any oral or written communication between you and Gilbert P. Hyatt.

52. All documents, and all files and their contents, that relate to, mention, or concern any oral or written communication between you and Grace Jeng.

53. All documents and all files and their contents, that relate to, mention, or concern any oral or written communication between you and Caroline Cosgrove.

54. All documents, and all files and their contents, that relate to, mention, or concern any oral or written communication between you and Barry Lee.

55. All documents, and all files and their contents, that relate to, mention, or concern any oral or written communication between you and Gregory L. Roth.

56. All documents, and all files and their contents, that relate to, mention, or concern any oral or written communication between you and Danny Huntington.

57. All documents, and all files and their contents, that relate to, mention, or concern any oral or written communication between you and Charles Lee McHenry.

EXHIBIT ___1___

RJN1672



# PHILIPS

**U.S. Philips Corporation**

Intellectual Property Department

August 11, 1992

Mr. Gilbert P. Hyatt
P.O. Box 81230
Las Vegas, NV 89180-1230

Dear Gil:

Enclosed are two signed copies of the Fourth
Supplemental Agreement which incorporate the changes
suggested by Greg.

Please return one fully signed copy for our records.

Sincerely,

Algy Tamoshunas
Vice President

AT:es
Enclosures

CC: Greg Roth

CF11TACO.WPO

P02785

560 White Plains Road
Tarrytown, NY 10591

Telephone: 914 332-0222
Facsimile: 914 332-0615
Telex: 709978 USATAPH

RJN1673

F O U R T H   S U P P L E M E N T A L   A G R E E M E N T

This FOURTH SUPPLEMENTAL AGREEMENT dated August 11,
1992, is made by and between U.S. PHILIPS CORPORATION, a
corporation of the state of Delaware, having a place of
business at 580 White Plains Road, Tarrytown, New York 10591
(hereinafter "PHILIPS") and GILBERT P. HYATT, an individual
having an address at Box 81230, Las Vegas, Nevada 89180-1230
(hereinafter "HYATT").

W I T N E S S E T H   T H A T

WHEREAS, PHILIPS and HYATT have previously entered into
an AGREEMENT effective July 15, 1991 (which agreement is
hereinafter referred to as "THE AGREEMENT");

WHEREAS, PHILIPS has provided HYATT with
assistance with respect to the licensing of certain HYATT
patents; and

WHEREAS, HYATT has agreed to maintain control over the
filing and prosecution of additional applications for
LICENSABLE PATENTS;

WHEREAS, HYATT and PHILIPS now find it advantageous to
retain the services of outside patent counsel to assist in
such filing and prosecution;

W:\HA\AF11HAAO.SMR                    1

P02786

NOW THEREFORE, the parties hereto agree as follows:

Section 1.     During the calendar years 1992 and 1993
PHILIPS shall pay outside patent counsel retained by HYATT,
at such counsel's customary rates, for preparation and
prosecution of applications for additional LICENSABLE
PATENTS in the United States Patent and Trademark Office.

Section 2.     PHILIPS' obligation to pay fees in
accordance with Section 1 for services rendered during the
calendar year 1992 shall not exceed ONE HUNDRED FIFTY
THOUSAND DOLLARS ($150,000.00) and PHILIPS obligation to
pay fees in accordance with Section 1 for services rendered
during the calendar year 1993 shall not exceed THREE HUNDRED
THOUSAND DOLLARS ($300,000.00).

Section 3.     Prior to December 31, 1993 PHILIPS
and HYATT shall determine whether further services of
outside patent counsel for preparation and prosecution of
applications for additional LICENSABLE PATENTS is necessary
and, if so, shall determine appropriate budget levels for
extending the provisions of Section 1 to subsequent years.

Section 4.     Hyatt shall be solely responsible for
retaining and directing outside patent counsel for services
rendered in accordance with Section 1 and for reviewing
papers and other work product submitted thereunder. Bills

W:\HA\AF11HAA0.SMR                    2

P02787

RJN1675

**EXHIBIT** 2

RJN1676



**U. S. Philips Corporation**

Intellectual Property Department

February 10, 1995

VIA FACSIMILE

Mr. Gil Hyatt
P.O. Box 81230
Las Vegas, NV 89180-1230

Dear Gil:

Enclosed please find the financial information you requested.

Very truly yours,

Jack E. Haken
Vice President

JEH/ew
W:\WA\CJ10HAA1.WA0

CONFIDENTIAL
H 018631

**Confidential-NV Protective Order**

580 White Plains Road
Tarrytown, NY 10591-5190
Tel. 914 332-0222
Fax: 914 332-0615

RJN1677

**CONFIDENTIAL**

HYATT LICENSES
AS OF FEBRUARY 1995

| COMPANY | LICENSE DATE | TOTAL PAYMENT | EXPENSES | HYATT NET SHARE | PHILIPS NET SHARE |
|---------|--------------|---------------|----------|-----------------|-------------------|
| FUJITSU | 10/24/91 | $ 15M | $ 4.76M | $ 5.12M | $ 5.12M |
| MATSUSHITA | 11/14/91 | $ 25M | $ 3.8M | $ 10.6M | $ 10.6 |
| SONY | 12/17/91 | $ 22M | $ 3.3M | $ 9.35M | $ 9.35M |
| SHARP | 11/20/91 | $ 18M | $ 2.88M | $ 7.56M | $ 7.56M |
| NEC | 12/26/91 | $ 16.5M | $ 2.6M | $ 6.95M | $ 6.95M |
| OKI (3 Payments) | 01/31/92 | $ 10M | $ 3.79M | $ 3.1M | $ 3.1M |
| SANYO | 07/23/92 | $ 36.1M | $ .5M | $ 17.8M | $ 17.8M |
| HITACHI (2 Payments) | 08/06/92 | $ 56M | $ 3.39M | $ 32.96M | $ 19.65M |
| OMRON | 09/30/92 | $ 1.4M | $ .03M | $ .685M | $ .685M |
| NIPPON COLUMBIA | 12/15/92 | $ 3.25M | $ .13M | $ 1.56M | $ 1.56M |
| KENWOOD | 12/22/92 | $ 9.15M | $ .01M | $ 4.57M | $ 4.57M |
| NIKON (2 Payments) | 12/28/93 | $ 6.75M | $ 2.25M | $ 2.25M | $ 2.25M |
| * CANON (2 Payments) | 12/30/93 | $ 38M | $ .4M | $ 18.8M | $ 18.8M |
| CASIO | 04/01/94 | $ 9.5M | $ .3M | $ 4.6M | $ 4.6M |
| ** MINOLTA (3 Payments) | 05/24/94 | $ 10.31M | $ 1.63M | $ 4.34M | $ 4.34M |
| ONKYO | 06/03/94 | $ 2.1M | $ .06M | $ 1.02M | $ 1.02M |
| TOSHIBA | 06/03/94 | $ 42.9M | $ .12M | $ 21.39M | $ 21.39M |
| TOTAL ... | | $321.96M | $29.95M | $152.655M | $139.345M |

* Canon - final payment for $20,000.00 due September 15, 1995
**Minolta - final payment for $3,437,500 due April 17, 1995

**Confidential-NV Protective Order**

CONFIDENTIAL
H 018632

RJN1678

SENT BY:PHILIPS IPD TARRYTOWN ; 3- 1-95 ; 2:00PM ;

HYATT LICENSES

| COMPANY | LICENSE DATE | PAYMENT DATE | TOTAL PAYMENT | EXPENSES | HYATT NET SHARE | PHILIPS NET SHARE |
|---|---|---|---|---|---|---|
| FUJITSU | 10/24/91 | 11/07/91 | $ 15M | $ 4.76M | $ 5.12M | $ 5.12M |
| MATSUSHITA | 11/14/91 | 11/24/91 | $ 25M | $ 3.8M | $ 10.6M | $ 10.6 |
| SONY | 12/17/91 | 12/24/91 | $ 22M | $ 3.3M | $ 9.35M | $ 9.35M |
| NEC | 12/26/91 | 12/27/91 | $ 16.5M | $ 2.6M | $ 6.95M | $ 6.95M |
| SHARP | 11/20/91 | 01/09/92 | $ 17.8M | $ 2.8M | $ 7.56M | $ 7.56M |
| OKI | 01/31/92 | 01/31/92 | $ 4M | $ .6M | $ 1.7M | $ 1.7M |
| SHARP "PCT" | 12/25/91 | 02/10/92 | $ .25M | $ .1M | $ .05M | $ .05M |
| SANYO | 07/23/92 | 07/31/92 | $ 36.1M | $ .5M | $ 17.8M | $ 17.8M |
| HITACHI | 08/06/92 | 08/06/92 | $ 31M | $ 1.83M | $ 18.46M | $ 10.65M |
| OMRON | 09/30/92 | 10/01/92 | $ 1.4M | $ .03M | $ .685M | $ .685M |
| OKI | 01/31/92 | 11/15/92 | $ 3M | $ .4M | $ 1.3M | $ 1.3M |
| HITACHI | 08/06/92 | 12/28/93 | $ 25M | $ 1.56M | $ 14.5M | $ 9M |
| NIPPN COLUMBIA | 12/15/92 | 12/29/92 | $ 3.25M | $ .13M | $ 1.56M | $ 1.56M |
| KENWOOD | 12/22/92 | 12/29/92 | $ 9.15M | $ .01M | $ 4.57M | $ 4.57M |
| OKI | 01/31/92 | 11/15/93 | $ 3M | $ 3M | -0- | -0- |
| NIKON | 12/28/93 | 12/28/93 | $ 3.375M | $ 1M | $ 1.2M | $ 1.2M |
| CANON | 12/30/93 | 01/27/94 | $ 19M | $ .2M | $ 9.4M | $ 9.4M |
| NIKON | 12/28/93 | 03/31/94 | $ 3.375M | $ 1.25M | $ 1.05M | $ 1.06M |
| CASIO | 04/01/94 | 04/20/94 | $ 9.5M | $ .3M | $ 4.6M | $ 4.6M |
| MINOLTA | 05/24/94 | 05/26/94 | $ 3.437M | $ .081M | $ 1.7M | $ 1.7M |
| ONKYO | 06/03/94 | 06/15/94 | $ 2.1M | $ .06M | $ 1.02M | $ 1.02M |
| TOSHIBA | 06/03/94 | 06/15/94 | $ 42.9M | $ .12M | $ 21.39M | $ 21.39M |
| MINOLTA | 05/24/94 | 08/10/94 | $ 3.437M | $ .64M | $ 1.4M | $ 1.4M |
| * CANON | 12/30/93 | 09/15/94 | $ 19M | $ .2M. | $ 9.4M | $ 9.4M |
| ** MINOLTA | 05/24/94 | 12/15/94 | $ 3.437M | $ .9M | $ 1.3M | $ 1.3M |
| | | | $322M | $30M | $152.6M | $139.3M |

* Canon - final payment for $20,000,00 due September 15, 1995
**Minolta - final payment for $3,437,500 due April 17, 1995

CONFIDENTIAL
H 018633

Confidential-NV Protective Order

RJN1679

SENT BY:PHILIPS IPD TARRYTOWN ; 6- 5-95 ;11:50AM ;      PHILIPS IPD →0  ·                ;# 2/ 2

## HYATT LICENSES

| COMPANY | LICENSE DATE | PAYMENT DATE | TOTAL PAYMENT | EXPENSES | HYATT NET SHARE | PHILIPS NET SHARE |
|---|---|---|---|---|---|---|
| FUJITSU | 10/24/91 | 11/07/91 | $ 15M | $ 4.76M | $ 5.12M | $ 5.12M |
| MATSUSHITA | 11/14/91 | 11/24/91 | $ 25M | $ 3.8M | $ 10.6M | $ 10.6 |
| SONY | 12/17/91 | 12/24/91 | $ 22M | $ 3.3M | $ 9.35M | $ 9.35M |
| NBC | 12/26/91 | 12/27/91 | $ 16.5M | $ 2.6M | $ 6.95M | $ 6.95M |
| SHARP | 11/20/91 | 01/09/92 | $ 17.8M | $ 2.8M | $ 7.56M | $ 7.56M |
| OKI | 01/31/92 | 01/31/92 | $ 4M | $ .6M | $ 1.7M | $ 1.7M |
| SHARP "PCT" | 12/25/91 | 02/10/92 | $ .25M | $ .1M | $ .05M | $ .05M |
| SANYO | 07/23/92 | 07/31/92 | $ 36.1M | $ .5M | $ 17.8M | $ 17.8M |
| HITACHI | 08/06/92 | 08/06/92 | $ 31M | $ 1.83M | $ 18.46M | $ 10.65M |
| OMRON | 09/30/92 | 10/01/92 | $ 1.4M | $ .03M | $ .685M | $ .685M |
| OKI | 01/31/92 | 11/15/92 | $ 3M | $ .4M | $ 1.3M | $ 1.3M |
| HITACHI | 08/06/92 | 12/28/93 | $ 25M | $ 1.56M | $ 14.5M | 9M |
| NIPPN COLUMBIA | 12/15/92 | 12/29/92 | $ 3.25M | $ .13M | $ 1.56M | $ 1.56M |
| KENWOOD | 12/22/92 | 12/29/92 | $ 9.15M | $ .01M | $ 4.57M | $ 4.57M |
| OKI | 01/31/92 | 11/15/93 | $ 3M | $ 3M | -0- | -0- |
| NIKON | 12/28/93 | 12/28/93 | $ 3.375M | $ 1M | $ 1.2M | $ 1.2M |
| CANON | 12/30/93 | 01/27/94 | $ 19M | $ .2M | $ 9.4M | $ 9.4M |
| NIKON | 12/28/93 | 03/31/94 | $ 3.375M | $ 1.25M | $ 1.05M | $ 1.06M |
| CASIO | 04/01/94 | 04/20/94 | $ 9.5M | $ .3M | $ 4.6M | $ 4.6M |
| MINOLTA | 05/24/94 | 05/26/94 | $ 3.437M | $ .081M | $ 1.7M | $ 1.7M |
| ONKYO | 06/03/94 | 06/15/94 | $ 2.1M | $ .06M | $ 1.02M | $ 1.02M |
| TOSHIBA | 06/03/94 | 06/15/94 | $ 42.9M | $ .12M | $ 21.39M | $ 21.39M |
| MINOLTA | 05/24/94 | 08/10/94 | $ 3.437M | $ .64M | $ 1.4M | $ 1.4M |
| * CANON | 12/30/93 | 09/15/94 | $ 19M | $ .2M | $ 9.4M | $ 9.4M |
| MINOLTA | 05/24/94 | 12/15/94 | $ 3.437M | $ .9M | $ 1.3M | $ 1.3M |
| MINOLTA | 05/24/94 | 04/15/95 | $ 3.437M | $ .7M | $ 1.36M | $ 1.36M |
| **SEIKO EPSON | 03/31/95 | 04/25/95 | $ 9.25M | $ .164M | $ 4.54M | $ 4.54M |
| | | | $334.70M | $31M | $158.5M | $145.2M |

* Canon - final payment for $20,000,00 due September 15, 1995
** Seiko Epson - final payment for $9,250,000 due April 30, 1996

CONFIDENTIAL
H 018634

**Confidential-NV Protective Order**

RJN1680

SENT BY:PHILIPS IPD TARRYTOWN ; 9-11-95 ; 1:17PM ;     PHILIPS IPD →0                    ;# 2/ 2

**CONFIDENTIAL**

## INVENTOR LICENSES

| COMPANY | LICENSE DATE | PAYMENT DATE | TOTAL PAYMENT | EXPENSES | INVENTOR NET SHARE | PHILIPS NET SHARE |
|---|---|---|---|---|---|---|
| FUJITSU | 10/24/91 | 11/07/91 | $ 15M | $ 4.76M | $ 5.12M | $ 5.12M |
| MATSUSHITA | 11/14/91 | 11/24/91 | $ 25M | $ 3.8M | $ 10.6M | $ 10.6 |
| SONY | 12/17/91 | 12/24/91 | $ 22M | $ 3.3M | $ 9.35M | $ 9.35M |
| NEC | 12/26/91 | 12/27/91 | $ 16.5M | $ 2.6M | $ 6.95M | $ 6.95M |
| SHARP | 11/20/91 | 01/09/92 | $ 17.8M | $ 2.8M | $ 7.56M | $ 7.56M |
| OKI | 01/31/92 | 01/31/92 | $ 4M | $ .6M | $ 1.7M | $ 1.7M |
| SHARP "PCT" | 12/25/91 | 02/10/92 | $ .25M | $ .1M | $ .05M | $ .05M |
| SANYO | 07/23/92 | 07/31/92 | $ 36.1M | $ .5M | $ 17.8M | $ 17.8M |
| HITACHI | 08/06/92 | 08/06/92 | $ 31M | $ 1.83M | $ 18.46M | $ 10.65M |
| OMRON | 09/30/92 | 10/01/92 | $ 1.4M | $ .03M | $ .685M | $ .685M |
| OKI | 01/31/92 | 11/15/92 | $ 3M | $ .4M | $ 1.3M | $ 1.3M |
| HITACHI | 08/06/92 | 12/28/93 | $ 25M | $ 1.56M | $ 14.5M | $ 9M |
| NIPPN COLUMBIA | 12/15/92 | 12/29/92 | $ 3.25M | $ .13M | $ 1.56M | $ 1.56M |
| KENWOOD | 12/22/92 | 12/29/92 | $ 9.15M | $ .01M | $ 4.57M | $ 4.57M |
| OKI | 01/31/92 | 11/15/93 | $ 3M | $ 3M | -0- | -0- |
| NIKON | 12/28/93 | 12/28/93 | $ 3.375M | $ 1M | $ 1.2M | $ 1.2M |
| CANON | 12/30/93 | 01/27/94 | $ 19M | $ .2M | $ 9.4M | $ 9.4M |
| NIKON | 12/28/93 | 03/31/94 | $ 3.375M | $ 1.25M | $ 1.05M | $ 1.06M |
| CASIO | 04/01/94 | 04/20/94 | $ 9.5M | $ .3M | $ 4.6M | $ 4.6M |
| MINOLTA | 05/24/94 | 05/26/94 | $ 3.437M | $ .081M | $ 1.7M | $ 1.7M |
| ONKYO | 06/03/94 | 06/15/94 | $ 2.1M | $ .06M | $ 1.02M | $ 1.02M |
| TOSHIBA | 06/03/94 | 06/15/94 | $ 42.9M | $ .12M | $ 21.39M | $ 21.39M |
| MINOLTA | 05/24/94 | 08/10/94 | $ 3.437M | $ .64M | $ 1.4M | $ 1.4M |
| CANON | 12/30/93 | 09/15/94 | $ 19M | $ .2M | $ 9.4M | $ 9.4M |
| MINOLTA | 05/24/94 | 12/15/94 | $ 3.437M | $ .9M | $ 1.3M | $ 1.3M |
| MINOLTA | 05/24/94 | 04/15/95 | $ 3.437M | $ .7M | $ 1.36M | $ 1.36M |
| SEIKO EPSON | 03/31/95 | 04/25/95 | $ 9.25M | $ .164M | $ 4.54M | $ 4.54M |
| | | | $334.70M | $31M | $158.5M | $145.2M |

*Canon* 20 M    9.595M

\* Canon - final payment for $20,000.00 due September 15, 1995
\*\* Seiko Epson - final payment for $9,250,000 due April 30, 1996

Confidential-NV Protective Order

CONFIDENTIAL
H 018635

**CONFIDENTIAL**

RJN1681

SENT BY:PHILIPS IPD TARRYTOWN ; 1- 4-96 ; 3:04PM ;        PHILIPS IPD →0                    ;# 2/ 2

**CONFIDENTIAL**

INVENTOR LICENSES

| COMPANY | LICENSE DATE | PAYMENT DATE | TOTAL PAYMENT | EXPENSES | INVENTOR NET SHARE | PHILIPS NET SHARE |
|---|---|---|---|---|---|---|
| FUJITSU | 10/24/91 | 11/07/91 | $ 15M | $ 4.76M | $ 5.12M | $ 5.12M |
| MATSUSHITA | 11/14/91 | 11/24/91 | $ 25M | $ 3.8M | $ 10.6M | $ 10.6 |
| SONY | 12/17/91 | 12/24/91 | $ 22M | $ 3.3M | $· 9.35M | $ 9.35M |
| NEC | 12/26/91 | 12/27/91 | $ 16.5M | $ 2.6M | $ 6.95M | $ 6.95M |
| SHARP | 11/20/91 | 01/09/92 | $ 17.8M | $ 2.8M | $ 7.56M | $ 7.56M |
| OKI | 01/31/92 | 01/31/92 | $ 4M | $ .6M | $ 1.7M | $ 1.7M |
| SHARP "PCT" | 12/25/91 | 02/10/92 | $ .25M | $ .1M | $ .05M | $ .05M |
| SANYO | 07/23/92 | 07/31/92 | $ 36.1M | $ .5M | $ 17.8M | $ 17.8M |
| HITACHI | 08/06/92 | 08/06/92 | $ 31M | $ 1.83M | $ 18.46M | $ 10.65M |
| OMRON | 09/30/92 | 10/01/92 | $ 1.4M | $ .03M | $ .685M | $ .685M |
| OKI | 01/31/92 | 11/15/92 | $ 3M | $ .4M | $ 1.3M | $ 1.3M |
| HITACHI | 08/06/92 | 12/28/93 | $ 25M | $ 1.56M | $ 14.5M | $ 9M |
| NIPPN COLUMBIA | 12/15/92 | 12/29/92 | $ 3.25M | $ .13M | $ 1.56M | $ 1.56M |
| KENWOOD | 12/22/92 | 12/29/92 | $ 9.15M | $ .01M | $ 4.57M | $ 4.57M |
| OKI | 01/31/92 | 11/15/93 | $ 3M | $ 3M | -0- | -0- |
| NIKON | 12/28/93 | 12/28/93 | $ 3.375M | $ 1M | $ 1.2M | $ 1.2M |
| CANON | 12/30/93 | 01/27/94 | $ 19M | $ .2M | $ 9.4M | $ 9.4M |
| NIKON | 12/28/93 | 03/31/94 | $ 3.375M | $ 1.25M | $ 1.05M | $ 1.06M |
| CASIO | 04/01/94 | 04/20/94 | $ 9.5M | $ .3M | $ 4.6M | $ 4.6M |
| MINOLTA | 05/24/94 | 05/26/94 | $ 3.437M | $ .081M | $ 1.7M | $ 1.7M |
| ONKYO | 06/03/94 | 06/15/94 | $ 2.1M | $ .06M | $ 1.02M | $ 1.02M |
| TOSHIBA | 06/03/94 | 06/15/94 | $ 42.9M | $ .12M | $ 21.39M | $ 21.39M |
| MINOLTA | 05/24/94 | 08/10/94 | $ 3.437M | $ .64M | $ 1.4M | $ 1.4M |
| CANON | 12/30/93 | 09/15/94 | $ 19M | $ .2M | $ 9.4M | $ 9.4M |
| MINOLTA | 05/24/94 | 12/15/94 | $ 3.437M | $ .9M | $ 1.3M | $ 1.3M |
| MINOLTA | 05/24/94 | 04/15/95 | $ 3.437M | $ .7M | $ 1.36M | $ 1.36M |
| **SEIKO EPSON | 03/31/95 | 04/25/95 | $ 9.25M | $ .164M | $ 4.54M | $ 4.54M |
| CANON | 12/30/93 | 09/14/95 | $ 20M | $ .81M | $ 9.595M | $ 9.595M |
|  |  | CONFIDENTIAL | $354.7M | $31.8M | $168.1M | $154.8M |

H 018636

** Seiko Epson - final payment for $9,250,000 due April 30, 1996        **CONFIDENTIAL**

**Confidential-NV Protective Order**

RJN1682

EXHIBIT 3

RJN1683

LICENSING RIGHTS TERMINATION AND INDEMNIFICATION AGREEMENT

This Licensing Rights Termination and Indemnification Agreement (herein "this Agreement") is made by and between U.S. Philips Corporation, a corporation of the State of Delaware, having a place of business at 580 White Plains Road, Tarrytown, New York 10591 (hereinafter "PHILIPS") and Gilbert P. Hyatt, having an address at P.O. Box 81230, Las Vegas, NV 89180 (hereinafter "HYATT").

WHEREAS HYATT and PHILIPS are parties to an Agreement having an effective date of July 15, 1991 which Agreement was subsequently amended by four Supplemental Agreements dated (1) October 30, 1991, (2) October 30, 1991, (3) July 22, 1992 and (4) August 11, 1992 and which Agreements granted to PHILIPS certain rights to use and to license certain HYATT patents in the United States and throughout the World (the Agreement and the four Supplemental Agreements being hereinafter referred to as the "July 1991 Agreement");

WHEREAS PHILIPS is informed that HYATT has filed and has pending certain patent applications that may mature into LICENSABLE PATENTS (as used in this Agreement LICENSABLE PATENT or PATENTS shall have the same meaning as that term has in Section 1.8 of the July 1991 Agreement); and

WHEREAS PHILIPS and HYATT desire to terminate certain rights and obligations under the July 1991 Agreement as explicitly set forth herein;

Confidential-NV Protective Order

- 1 -

GLR 06824

RJN1684

IN WITNESS WHEREOF, the parties hereto affix their name or cause their corporate name to be affixed by their duly authorized officer or representative.

U.S. PHILIPS CORPORATION

BY: _____

TITLE: _PICE PRESIDENT_

ATTEST:

_____

DATED: _Dec. 12_ , 1997

GILBERT P. HYATT

ATTEST:

_____

DATED: _Dec. 2_ , 1997

Confidential-NV Protective Order

- 39 -

GLR 06863

RJN1685

EXHIBIT___4___

RJN1686

<u>A G R E E M E N T</u>

This AGREEMENT is made by and between U.S. PHILIPS CORPORATION, a Corporation of the State of Delaware, having a place of business at 580 White Plains Road, Tarrytown, New York 10591 (hereinafter "PHILIPS") and GILBERT P. HYATT, an individual residing at 7841 Jennifer Circle, La Palma, California 90623 (hereinafter "HYATT").

<u>WITNESSETH THAT</u>

WHEREAS, HYATT owns and has the right to license certain patents and applications for patents relating to computers and LCD devices.

WHEREAS, PHILIPS desires to acquire certain rights under such patents and applications for patents.

NOW THEREFORE, in consideration of the mutual covenants and obligations herein set forth, the parties hereto agree as follows:

<u>ARTICLE I - DEFINITIONS</u>

As used herein, the following terms shall have the following meanings:

Section 1.1   COMPUTER PATENTS shall mean:-   All patents issuing on applications filed prior to or entitled to claim a filing date prior to 1980 for inventions resulting from computer related work done by HYATT and/or employees of Micro Computer Inc.

5885HYT9.AGR                    1                    D1127JUN91

H 01365            3|39

0027-00001

RJN1687

IN WITNESS WHEREOF, the parties hereto affix their name or cause their corporate name to be affixed by their duly authorized officer or representative.

U.S. PHILIPS CORPORATION

By: _____

Title: *ASSISTANT SECRETARY*

Dated: 7/12/91

Attest: _____


GILBERT P. HYATT

_____

Attest: _____

Dated: 7/24/91


5885HYT9.AGR                    41                    D1127JUN91

H 01405        3/31.4°

RJN1688



STATE OF CALIFORNIA
**FRANCHISE TAX BOARD**

**DECLARATION IN SUPPORT OF
SUBPOENA DUCES·TECUM**

I, Robert W. Dunn, declare:

1. I am an attorney at law duly licensed to practice before the courts of the State of California. I am an employee of the California Franchise Tax Board. I currently hold the position of Tax Counsel IV and am assigned to the General Tax Law Bureau of the Legal Department. I am familiar with Mr. Gilbert P. Hyatt's administrative tax appeal to the California Board of Equalization and the legal and factual issues therein. Except as specified below, I make the following statements based upon personal knowledge.

2. Gilbert P. Hyatt, a former long time California resident, filed an administrative tax appeal challenging California Franchise Tax Board's issuance of Notices of Proposed Assessment for tax years 1991 and 1992 and Franchise Tax Board's subsequently issued Notices of Action for the same taxable years. These notices, which include proposed California income tax and fraud penalty assessments, are based on the Franchise Tax Board's determination at audit and protest that Mr. Hyatt remained a California resident through part of 1992. The audit and protest findings contradict the assertion of California nonresidency Mr. Hyatt made on his 1991 California part-year income tax return, the tax return at issue in this proceeding.

3. The primary legal issues in Mr. Gilbert P. Hyatt's California administrative tax appeal are: (1) Mr. Hyatt's assertion that he became a nonresident of California (as defined by Rev. & Tax. Code § 17014) on various dates in 1991; (2) Mr. Hyatt's objection to the proposed imposition of a fraud penalty (under Rev. & Tax. Code §§ 19164 and 19131); and (3) Mr. Hyatt's contention that he did not operate a business from California through December 31, 1992 that generated California source income (under Rev. & Tax. Code §§ 17951 and · 17952).

4. On December 9, 2008, Mr. Gilbert P. Hyatt filed his Opening Brief in this matter with the California State Board of Equalization. That brief has attached 26 affidavits (19 signed by affiants just prior to the filing date) that have never been produced to Franchise Tax Board prior, even though the audit of Mr. Hyatt's claimed change of residency commenced 16 years ago, in June 1993. Assertions made by the affiants relate to the legal issues set forth in Paragraph 3 above.

5. On August 23, 2010, Mr. Gilbert P. Hyatt filed Reply Briefs in this matter with the California state Board of Equalization. Included with the referenced briefs, Mr. Hyatt filed thirty-four (34) new affidavits and other exhibits. These recently filed affidavits were executed between November 2009 and August 2010. Several of these new affiants claim personal knowledge of specific facts and events between November 1990 and December 1992. Assertions made by the affiants relate to the legal issues set forth in Paragraph 3 above.

6. Jack E. Haken, named in the Subpoena Duces Tecum has been identified by Mr. Hyatt's counsel of record in the above referenced tax appeal as one of the individuals in the New York in-house patent office for North American Philips as "…involved with Mr. Hyatt in licensing his patents during the disputed period in accordance with the July 1991 patent licensing agreement between Philips and Mr. Hyatt…." A true and correct copy of pages 1, 12, 13, and 20 from Mr. Eric Coffill's letter dated November 3, 2000 to Ms. Cinnamon identifying Mr. Haken and others from U.S. Philips Corp. as individuals involved in Mr. Hyatt's patent licensing activities is attached hereto as Exhibit "B" to this declaration. Mr. Hyatt through his Nevada counsel has also represented that Jack Haken, Esq. has personal knowledge of facts concerning Gilbert Hyatt's patent licensing program. Mr. Hyatt's patent licensing activities are relevant and relate to the legal issues described in Paragraph 3 above.

7. Franchise Tax Board will "require by demand" the examination of Jack E. Haken and require he produce documentation as per the attached Subpoena Duces Tecum in accordance with, and under the authority of, Rev. & Tax. Code § 19504. The purpose for this action is to administer the duties of the Franchise Tax Board which include ascertaining the correctness of any California tax return. The enforcement duty of the Franchise Tax Board with respect to California's Personal Income Tax Law is set forth in Rev. & Tax. Code § 19501.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___9 March 2011___ at ___Sacramento, CA___.

Robert W. Dunn

RJN1690

EXHIBIT _B_

MORRISON & FOERSTER LLP

| | | |
|---|---|---|
| SAN FRANCISCO | ATTORNEYS AT LAW | NEW YORK |
| LOS ANGELES | | BUENOS AIRES |
| PALO ALTO | 400 CAPITOL MALL, SUITE 2300 | LONDON |
| WALNUT CREEK | SACRAMENTO, CALIFORNIA 95814 | BRUSSELS |
| ORANGE COUNTY | TELEPHONE (916) 448-3200 | BEIJING |
| SAN DIEGO | TELEFACSIMILE (916) 448-3222 | HONG KONG |
| DENVER | | SINGAPORE |
| WASHINGTON, D.C. | | TOKYO |

November 3, 2000

Writer's Direct Contact
(916) 325-1324
ecoffill@mofo.com

BY CERTIFIED MAIL NO.
7099 3400 0004 7558 2964

RECEIVED
NOV 9 2000
SACRAMENTO LEGAL
FRANCHISE TAX BOARD

*EM 11/9/2000*

Ms. Cody C. Cinnamon
Tax Counsel III
Franchise Tax Board
Legal Branch
P.O. Box 1720
Rancho Cordova, CA 95741-1720

Re: Protests of Mr. Gilbert P. Hyatt
Income Year 1992

Dear Ms. Cinnamon:

This is in response to your letter of October 4, 2000 in the above matter, which set forth twenty-five additional requests for information and documents within thirty days. We assume your references to a December 30, 1991 IDR (see, e.g., your Question 1) refers to the December 30, 1999 letter from Charlene Woodward to Mr. Cowan.

As discussed at the protest hearing in this matter, we had hoped to receive a copy of the FTB's audit file for this year by the end of October, and prior to the due date for this response. However, since the file was not available to us until today (when we picked it up at FTB), we did not have the benefit of the file for purposes of responding to your October 4th letter.

QUESTION NO. 1:

For each date of presence on page 63 of the audit narrative for what reason he was in California on that date. Please reconcile the list of page 64 of your days of presence in Nevada with those on page 63, especially the fact that these are often very close in time. See attached. Note that the December 30, 1991, information and

P00510

RJN1692

MORRISON & FOERSTER LLP

Ms. Cody Cinnamon
November 3, 2000
Page Twelve

- managers at Valley Bank in Nevada and specifically Richard Etter
- managers at the Nevada branch of Bank of America;
- the University of Nevada at Las Vegas (UNLV) and specifically Dr. William Brogan, Professor and IEEE Chairman, and Dr. Yahia Baghzouz, Chairman;
- Mirage Resorts and specifically executive Kenny Wynn;

Notwithstanding the fact that the non-California professionals identified below were not primarily situated in Nevada during the disputed period, to the extent that these non-California professionals represented or were involved with Mr. Hyatt in Las Vegas during the disputed period categorizes them as Nevada professionals during the disputed period.

The non-California professionals that represented or were involved with Mr. Hyatt in the patent interference proceeding <u>Hyatt v. Boone</u>[1] during the disputed period in accordance with the July 1991 patent licensing agreement between Philips and Mr. Hyatt include:

- the New York in-house patent law office of North American Philips and specifically attorneys AJ Tamoshunas, Jack Haken, and Jack Oisher (also mentioned below regarding licensing);
- the New York office of the law firm of Keck, Mahin, Cate and specifically attorneys Jim Williams, John DiMatteo, and Ken Cho and paralegal Felicia Crane;
- the Virginia law firm of Burns Doane and specifically attorney Danny Huntington and paralegal Donna Silva;
- expert witness Don Black (Colorado);
- expert witness Dianna Black (Colorado);
- expert witness Vern McKenny (Colorado);

---

[1] Mr. Hyatt was a named party in the patent interference proceeding which was pending during the entire period in dispute, and commenced much earlier. For example, in July 1991, Mr. Hyatt filed a preliminary motion in the proceeding pending before the Commissioner of Patents and Trademarks. A Memorandum Opinion and Order was issued on December 1, 1992. (See *Hyatt v. Boone*, Interference No. 102,598, Commissioner of Patents and Trademarks, 1992 Commr. Pat. LEXIS 30.) The Opinion and Order was appealed, and after many years of further proceedings, an opinion was issued on June 17, 1998 by the United States Court of Appeals for the Federal Circuit in *Hyatt v. Boone* (1998) 146 F.3d 1348, 1998 U.S. App. LEXIS 12809. The case was argued before the Federal Circuit for Mr. Hyatt by John M. DiMatteo, of Patterson, Belknap, Webb & Tyler LLP of New York. (see 146 F.3d 1348.)

P00521

RJN1693

MORRISON & FOERSTER LLP

Ms. Cody Cinnamon
November 3, 2000
Page Thirteen

- expert witness Don Craft (Colorado);
- expert witness Harry Stover (Texas); and
- expert witness Bill Tobey (East Coast).

The non-California professionals that represented or were involved with Mr. Hyatt in licensing his patents during the disputed period in accordance with the July 1991 patent licensing agreement between Philips and Mr. Hyatt include:

- the New York in-house patent law office of North American Philips and specifically patent attorneys Al Tamoshunas, Jack Haken, Ed Blocker, and John Fox and paralegals Elise Smith, Elissa Waldron, and Lilly Drumhelle;
- the New York executive office of North American Philips and specifically Steve Tumminello, President, Sam Rozel, Sr. Vice President, and Paul Friedlander, Vice President;
- the Dutch in-house patent law office of NV Philips and specifically patent attorneys Jan Galama, Huib Beckers, and Ruud Peters;
- the Dutch executive office of NV Philips and specifically Rob Hamersma;
- the Japanese in-house patent law office of NV Philips and specifically attorney Hidekazu Koyama;
- the Taiwanese law firm of Lee and Li and specifically C.V. Chen;
- the New York law office of Tom Briody; and
- the Oregon PR firm of Charles McHenry.

The non-California professionals that represented or were involved with Mr. Hyatt in licensing his patents during the disputed period in accordance with the September 1991 patent licensing agreement between Philips, Mr. Hyatt, and Mahr Leonard Management Company (MLMC) include:

- the Texas patent licensing firm MLMC and specifically licensing professionals George Mahr and Dave Leonard; and
- the Texas patent law firm of Leonard and Lott and specifically attorneys Dave Leonard and Bob Lott and paralegal Vikki Weart.

The non-California professionals that were involved with Mr. Hyatt in accordance with the June 1991 patent licensing option agreement between Mr. Hyatt and Pioneer during the disputed period include Pioneer (Japan) and specifically Japanese executives Mr. Okatani and Keiji Masaki.

The non-California professionals that were involved with Mr. Hyatt during the disputed period include prospective licensee IBM (New York) and specifically Emmett Murtha, Mike Burns, Diana Dorr, and John Brady.

P00522

RJN1694

MORRISON & FOERSTER LLP

Ms. Cody Cinnamon
November 3, 2000
Page Twenty

QUESTION NO. 25:

Provide the MCI billing statements for the period in dispute. Was MCI Hyatt's long distance provider during this period? If not, explain the nature of the services provided by MCI to Mr. Hyatt.

RESPONSE TO QUESTION NO. 25:

Mr. Hyatt does not have in his possession any MCI billing statements for the period in dispute. Mr. Hyatt has no present recollection of his long distance provider during this period.

Thank you in advance for your continuing cooperation in this matter.

Very truly yours,

Eric J. Coffill

cc:   Eugene G. Cowan
      Gilbert P. Hyatt

Encls. (binder)

P00529

RJN1695

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

---------------------------------------------------------------x

In the matter of:                                          :
                                                           :
The Application of State of California Franchise           :     **SUBPOENA DUCES TECUM**
Tax Board for the deposition and production of             :
business records from Jack E. Haken for use in an          :
action pending in the Superior Court of California         :
entitled <u>State of California Franchise Tax Board</u>    :
<u>v. Neal Howard, et al.</u> (Case No. 34-2011-           :
00101401)                                                  :
                                                           :
                                                           :
---------------------------------------------------------------x

CARTER LEDYARD & MILBURN LLP
COUNSELORS AT LAW
2 WALL STREET
NEW YORK, N.Y. 10005

(212) 732 - 3200

RJN1696

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-------------------------------------------------------------x
In the matter of:                                    :
                                                     :
The Application of State of California Franchise     :        **SUBPOENA DUCES TECUM**
Tax Board for the deposition and production of       :
business records from the Custodian of Records       :
for U.S. Philips Corporation  for use in an action   :
pending in the Superior Court of California          :
entitled <u>State of California Franchise Tax Board</u>  :
<u>v. Neal Howard, et al.</u> (Case No. 34-2011-          :
00101401)                                            :
                                                     :
-------------------------------------------------------------x

### THE PEOPLE OF THE STATE OF NEW YORK

To:    **Custodian of Records**
       **U.S. Philips Corporation**
       **345 Scarborough Road**
       **Briarcliff Manor, New York 10510**

     **WE COMMAND YOU**, that all business and excuses being laid aside, produce pursuant

to CPLR § 3119, at the offices of Suite Solutions, 75 South Broadway, 4th Floor, White Plains,

New York 10601 on or before June 24, 2011, at 10:00 a.m., all documents and other things in

your possession, custody or control described on the attached Exhibit A.

     **WE FURTHER COMMAND YOU**, that all business and excuses being laid aside,

appear for a deposition pursuant to CPLR § 3119 at the offices of Suite Solutions, 75 South

Broadway, 4th Floor, White Plains,  New York 10601 on June 28, 2011, at 10:00 a.m.

     The circumstances or reasons said document production and deposition are sought or

required are that the information is material, relevant and necessary for the prosecution and

defense of the above-captioned action.  It is believed that you have relevant information

concerning, among other things, Gilbert P. Hyatt's assertion that he became a nonresident of

6773453.1

6793223.2

California in or around 1991 and Mr. Hyatt's contention that he did not operate a business from California through December 1992.

Failure to comply with this subpoena is punishable as a contempt of Court and shall make you liable to the person on whose behalf this subpoena was issued for a penalty not to exceed fifty dollars and all damages sustained by reason of your failure to comply.

Dated: May 26, 2011                    CARTER LEDYARD & MILBURN LLP

                                       By _____
                                                        Leonardo Trivigno
                                       2 Wall Street
                                       New York, NY 10005
                                       Telephone: (212) 238-8724

                                       *Attorneys for Plaintiff State of California*
                                       *Franchise Tax Board*

-2-

6773453.1

6793223.2

RJN1698

**EXHIBIT A**
**REQUEST FOR PRODUCTION OF DOCUMENTS**

6773453.1

6793223.2

RJN1699

## DEFINITIONS

The following definitions and rules of construction apply to these document requests:

1. <u>Communication</u>. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2. <u>Document</u>. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rules of Civil Procedure 34(a). A draft or non-identical copy is a separate document within the meaning of this term.

3. <u>Identify (with Respect to Documents)</u>. When referring to documents, "to identify" means to give, to the extent known, (i) the type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipients(s).

4. <u>Person</u>. The term "person" is defined as any natural person or business, legal or governmental entity or association.

5. <u>Hyatt Patent</u>. The term "Hyatt Patent" means any patent issued to or owned by Gilbert P. Hyatt.

6. <u>Concerning</u>. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

7. <u>All/Each</u>. The term "all" and "each" shall be construed as all and each.

8. <u>And/Or</u>. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all documents that might otherwise be construed to be outside its scope.

9. <u>Number</u>. The use of the singular form of any word includes the plural and vice versa.

RJN1700

**DESCRIPTION OF RECORDS**
Exhibit A

1. All documents (including without limitation licenses, agreements, contracts, memoranda, and letters) under which any person or entity has been licensed or sub-licensed to make, use, sell, or import any invention claimed in any Hyatt Patent.

2. All documents (including without limitation licenses, agreements, contracts, memoranda, and letters) under which any person or entity has been released from claims or liabilities for making, using, selling or importing any invention claimed in any Hyatt Patent.

3. All documents (including without limitation licenses, agreements, contracts, memoranda, and letters) under which Gilbert P. Hyatt agreed not to, or assured that he will not, assert or bring suit upon any Hyatt Patent.

4. All documents (including without limitation licenses, agreements, contracts, memoranda, and letters) under which any person or entity obtained an option to obtain a license, sub-license, or release, under any Hyatt Patent.

5. All documents reflecting any money paid by any person or entity in consideration for a license, sub-license, or release, or any option to obtain a license, sub-license, or release, under any Hyatt Patent.

6. All documents reflecting any money paid by any person or entity in consideration for any agreement or assurance not to assert or sue upon any Hyatt Patent.

7. All documents by U.S. Philips Corporation concerning money it expended or received in connection with the licensing or sub-licensing of any Hyatt Patent.

8. All documents by Mahr Leonard Management Co. concerning money it expended or received in connection with the licensing or sub-licensing of any Hyatt Patent.

9. All documents, and all files and their contents, that relate to, mention, discuss, concern or reflect efforts by U.S. Philips Corporation to negotiate any license or sub-license under any Hyatt Patent.

10. All documents, and all files and their contents, that relate to, mention, discuss, concern or reflect efforts by Mahr Leonard Management Co. to negotiate any license or sub-license under any Hyatt Patent.

11. All documents received by you and/or U.S. Philips Corporation (including any of their attorneys, agents or representatives) from any other person or entity concerning any license, sub-license, or release, or any option to obtain a license, sub-license or release, under any Hyatt Patent.

RJN1701

12. All documents sent by you and/or U.S. Philips Corporation (including any of their attorneys, agents or representatives) to any other person or entity concerning any license, sub-license, or release, or any option to obtain a license, sub-license or release, under any Hyatt Patent.

13. All documents discussing, relating to, or reflecting any expenses incurred by U.S. Philips Corporation, Mahr Leonard Management Co. or Gilbert P. Hyatt (including any of their attorneys, agents or representatives) in connection with discussions with any other person or entity concerning any possible or actual licensing, sub-licensing, or release, or any option to obtain a license, sub-license, or release, under any Hyatt Patent.

14. All documents discussing, relating to, or reflecting any plan or agreement by Gilbert P. Hyatt, U.S Philips Corporation, and/or Mahr Leonard Management Co. to seek revenues from the licensing or sub-licensing of any Hyatt Patent, or from the release of any liabilities for infringement for any such patent.

15. All communications sent by you and/or U.S. Philips Corporation (including any of their attorneys, agents, or representatives) to any other person or entity concerning (a) U.S. Patent Interference No. 102,598, including any ruling or document issued by the U.S. Patent and Trademark Office in that interference or (b) United States Court of Appeals for the Federal Circuit appeal no. 96-1514 or appeal no. 96-1515, including the June 17, 1998 decision in those appeals.

16. All communications received by you and/or U.S. Philips Corporation (including any of their attorneys, agents, or representatives) from any other person or entity concerning (a) U.S. Patent Interference No. 102,598, including any ruling or document issued by the U.S. Patent and Trademark Office in that interference or (b) United States Court of Appeals for the Federal Circuit appeal no. 96-1514 or appeal no. 96-1515, including the June 17, 1998 decision in those appeals.

17. All documents discussing, relating to, or reflecting any consideration by Gilbert P. Hyatt (including any of his attorneys, agents, or representatives) of the engagement of any entity to conduct negotiations on his behalf for the licensing or sub-licensing under any Hyatt Patent.

18. All documents concerning time keeping for tasks performed and time spent on tasks performed by you on behalf of or for the benefit of Gilbert P. Hyatt.

19. All documents concerning preliminary and/or draft billing statements and final statements for fee charges and worked performed on behalf of or relating to Gilbert P. Hyatt.

20. All documents, and all files and their contents, that relate to, mention, discuss, concern or reflect Gilbert P. Hyatt "retaining and directing outside patent counsel for services rendered and expenses incurred," including, but not limited to attorneys Danny Huntington, Gregory Roth, Jim Williams, John Dimatteo, and Ken Cho as referenced in

Sections 1 and 4 of the Fourth Supplemental Agreement between Gilbert P. Hyatt and U.S. Philips Corporation attached hereto as Exhibit "1".

21. All documents announcing, discussing, relating to, or reflecting any efforts by or on behalf Gilbert P. Hyatt to publicize any Hyatt Patent, plan to publicize any Hyatt Patent and publicity of any Hyatt Patent.

22. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the July 1991 agreement between Gilbert P. Hyatt and U.S. Philips Corporation, including, but not limited to, any notes, faxes, letters, memos, and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

23. All documents, and all files and their contents, that relate to, mention, or concern specific details of any sub-licensing proposals recommended by any representative of U.S. Philips Corporation which were not approved by Gilbert P. Hyatt, in accordance with his right to approve all-sublicensing agreements, and any other evidence of rights retained by Gilbert P. Hyatt which were exercised in accordance with the July 1991 agreement between Gilbert P. Hyatt and U.S. Philips Corporation.

24. All documents, and all files and their contents, that relate to, mention, or concern U.S. Philips Corporation's compliance with the reporting requirement set forth in I.R.C. Sec. 6050N as related to the July 1991 agreement and/or supplemental agreements between Gilbert P. Hyatt and U.S. Philips Corporation.

25. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt, U.S. Philips Corporation and Mahr Leonard Management Company, dated September 24, 1991, including, but not limited to, any notes, faxes, letters, memos and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

26. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Fujitsu, dated October 24, 1991, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos, and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

27. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Matsushita, dated November 14, 1991, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos, and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

28. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Sharp, dated November 20, 1991, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos, and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

29. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Sony, dated December 17, 1991, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos, and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

30. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and NEC, dated December 26, 1991, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos, and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

31. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Oki, dated January 31, 1992, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

32. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Sanyo, dated July 23, 1992, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

33. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Hitachi, dated August 6, 1992, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

34. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Omron, dated September 30, 1992, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos and/or emails to or

RJN1704

from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

35. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Nippon Columbia, dated December 15, 1992, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos, and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

36. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Kenwood, dated December 22, 1992, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos, and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

37. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Nikon, dated December 28, 1993, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

38. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the agreement between Gilbert P. Hyatt and Canon, dated December 30, 1993, as referenced in Exhibit "2" (H018631-H018636) attached hereto, including, but not limited to, any notes, faxes, letters, memos, and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

39. All documents, and all files and their contents, that relate to, mention, or concern negotiation, drafting and finalizing the four supplemental Agreements between Gilbert P. Hyatt and U.S. Philips Corporation as referenced in Exhibit "3" (GLR 06824, GLR06863) attached hereto, including, but not limited to, any notes, faxes, letters, memos and/or emails to or from Gilbert P. Hyatt, Gregory L. Roth, Esq., Dave Leonard and/or George Mahr of Mahr Leonard Management Company.

40. All documents, and all files and their contents, that relate to, mention, or concern negotiating the "Licensing Rights Termination and Indemnification Agreement" between Gilbert P. Hyatt and U.S. Philips Corporation signed by Gilbert Hyatt on December 2, 1997 and individuals from U.S. Philips Corporation on December 12, 1997 (the first and signature pages of the referenced agreement attached hereto as Exhibit "3" (GLR06284,GLR06863)).

RJN1705

41. All documents, and all files and their contents, that relate to, mention, discuss, concern U.S. Philips Corporation's promise and obligation to pay Digital Nutronics Corp. $400,000 as set forth in Section 3.1 (a) (Article III- Consideration for Licenses to Philips) as referenced at page 9 in the July 1991 patent licensing agreement between U.S. Philips Corporation and Gilbert Hyatt attached hereto as Exhibit "4".

42. Full and complete copies of U.S. Philips Corporation's annual report for the years 1991 through 1993.

43. All phone message slips, memos, notes, messages and any other similar writing memorializing telephone conversations or in person meetings between any representative of U.S. Philips Corporation or related entity and Gilbert P. Hyatt.

44. All documents, and all files and their contents, that relate to, mention, or concern any contract or agreement for legal representation between U.S. Philips Corporation and/or related entity and Gregory L. Roth, Esq. and/or the law firm of Pretty, Schroeder, Bergman to represent U.S. Philips Corporation or related entity on any matter at any time.

45. All documents, and all files and their contents, that relate to, mention, or concern any contract or agreement for legal representation between U.S. Philips Corporation and/or related entity and Danny Huntington and/or the Virginia law firm, Burns Doane to represent U.S. Philips Corporation or related entity on any matter at any time.

46. All documents, and all files and their contents, that relate to, mention, or concern any contract, agreement and/or memorandum of understanding between U.S. Philips Corporation and Charles Lee McHenry and/or McHenry and Associates for payment of services performed or rendered by Charles Lee McHenry and/or McHenry and Associates on behalf of U.S. Philips Corporation, related entity and/or Gilbert P. Hyatt.

47. All documents, including, but not limited to, billings, invoices, receipts, and/or travel documents, that relate to or concern any travel by Gilbert P. Hyatt, Gregory L. Roth, and/or Grace Jeng associated with licensing patents in accordance with the July 1991 patent licensing agreement between U.S. Philips Corp. and Gilbert P. Hyatt.

48. All documents, and all files and their contents, that relate to, mention, or concern any oral or written communication between any representative of U.S. Philips Corporation or related entity and Gilbert P. Hyatt.

49. All documents, and all files and their contents, that relate to, mention, or concern any oral or written communication between any representative of U.S. Philips Corporation or related entity and Grace Jeng.

50. All documents and all files and their contents, that relate to, mention, or concern any oral or written communication between any representative of U.S. Philips Corporation or related entity and Caroline Cosgrove.

RJN1706

51. All documents, and all files and their contents, that relate to, mention, or concern any oral or written communication between any representative of U.S. Philips Corporation or related entity and Barry Lee.

52. All documents, and all files and their contents, that relate to, mention, or concern any oral or written communication between any representative of U.S. Philips Corporation or related entity and Gregory L. Roth.

53. All documents, and all files and their contents, that relate to, mention, or concern any oral or written communication between any representative of U.S. Philips Corporation or related entity and Danny Huntington.

54. All documents, and all files and their contents, that relate to, mention, or concern any oral or written communication between any representative of U.S. Philips Corporation or related entity and Charles Lee McHenry.

RJN1707

EXHIBIT __1__

RJN1708

 **PHILIPS**

**U.S. Philips Corporation**

Intellectual Property Department

August 11, 1992

Mr. Gilbert P. Hyatt
P.O. Box 81230
Las Vegas, NV  89180-1230

Dear Gil:

   Enclosed are two signed copies of the Fourth
Supplemental Agreement which incorporate the changes
suggested by Greg.

   Please return one fully signed copy for our records.

   Sincerely,

   Algy Tamoshunas
   Vice President

AT:es
Enclosures

CC:  Greg Roth

CF11TAC0.WPO

P02785

Telephone: 914-332-0222
Facsimile: 914-332-0015
Telex: 709378/USATAPH

580 White Plains Road
Tarrytown, NY 10591

RJN1709

# FOURTH SUPPLEMENTAL AGREEMENT

This FOURTH SUPPLEMENTAL AGREEMENT dated August 11, 1992, is made by and between U.S. PHILIPS CORPORATION, a corporation of the state of Delaware, having a place of business at 580 White Plains Road, Tarrytown, New York 10591 (hereinafter "PHILIPS") and GILBERT P. HYATT, an individual having an address at Box 81230, Las Vegas, Nevada 89180-1230 (hereinafter "HYATT").

## WITNESSETH THAT

WHEREAS, PHILIPS and HYATT have previously entered into an AGREEMENT effective July 15, 1991 (which agreement is hereinafter referred to as "THE AGREEMENT");

WHEREAS, PHILIPS has provided HYATT with assistance with respect to the licensing of certain HYATT patents; and

WHEREAS, HYATT has agreed to maintain control over the filing and prosecution of additional applications for LICENSABLE PATENTS;

WHEREAS, HYATT and PHILIPS now find it advantageous to retain the services of outside patent counsel to assist in such filing and prosecution;

W:\HA\AF11HAA0.SMR                    1

P02786

RJN1710

NOW THEREFORE, the parties hereto agree as follows:

Section 1.    During the calendar years 1992 and 1993 PHILIPS shall pay outside patent counsel retained by HYATT, at such counsel's customary rates, for preparation and prosecution of applications for additional LICENSABLE PATENTS in the United States Patent and Trademark Office.

Section 2.    PHILIPS' obligation to pay fees in accordance with Section 1 for services rendered during the calendar year 1992 shall not exceed ONE HUNDRED FIFTY THOUSAND DOLLARS ($150,000.00) and PHILIPS obligation to pay fees in accordance with Section 1 for services rendered during the calendar year 1993 shall not exceed THREE HUNDRED THOUSAND DOLLARS ($300,000.00).

Section 3.    Prior to December 31, 1993 PHILIPS and HYATT shall determine whether further services of outside patent counsel for preparation and prosecution of applications for additional LICENSABLE PATENTS is necessary and, if so, shall determine appropriate budget levels for extending the provisions of Section 1 to subsequent years.

Section 4.    Hyatt shall be solely responsible for retaining and directing outside patent counsel for services rendered in accordance with Section 1 and for reviewing papers and other work product submitted thereunder. Bills

W:\HA\AF11HAAO.SMR                2

P02787

RJN1711

EXHIBIT___2___

RJN1712



## U. S. Philips Corporation

Intellectual Property Department

February 10, 1995

VIA FACSIMILE

Mr. Gil Hyatt
P.O. Box 81230
Las Vegas, NV 89180-1230

Dear Gil:

Enclosed please find the financial information you requested.

Very truly yours,

Jack E. Haken
Vice President

JEH/ew
W:\WA\CJ10HAA1.WA0

CONFIDENTIAL
H 018631

Confidential-NV Protective Order

580 White Plains Road
Tarrytown, NY 10591-5180
Tel. 914 332-0222
Fax: 914 332-0615

RJN1713

CONFIDENTIAL

HYATT LICENSES
AS OF FEBRUARY 1995

| COMPANY | LICENSE DATE | TOTAL PAYMENT | EXPENSES | HYATT NET SHARE | PHILIPS NET SHARE |
|---|---|---|---|---|---|
| FUJITSU | 10/24/91 | $ 15M | $ 4.76M | $ 5.12M | $ 5.12M |
| MATSUSHITA | 11/14/91 | $ 25M | $ 3.8M | $ 10.6M | $ 10.6 |
| SONY | 12/17/91 | $ 22M | $ 3.3M | $ 9.35M | $ 9.35M |
| SHARP | 11/20/91 | $ 18M | $ 2.88M | $ 7.56M | $ 7.56M |
| NEC | 12/26/91 | $ 16.5M | $ 2.6M | $ 6.95M | $ 6.95M |
| OKI (3 Payments) | 01/31/92 | $ 10M | $ 3.79M | $ 3.1M | $ 3.1M |
| SANYO | 07/23/92 | $ 36.1M | $ .5M | $ 17.8M | $ 17.8M |
| HITACHI (2 Payments) | 08/06/92 | $ 56M | $ 3.39M | $ 32.96M | $ 19.65M |
| OMRON | 09/30/92 | $ 1.4M | $ .03M | $ .685M | $ .685M |
| NIPPON COLUMBIA | 12/15/92 | $ 3.25M | $ .13M | $ 1.56M | $ 1.56M |
| KENWOOD | 12/22/92 | $ 9.15M | $ .01M | $ 4.57M | $ 4.57M |
| NIKON (2 Payments) | 12/28/93 | $ 6.75M | $ 2.25M | $ 2.25M | $ 2.25M |
| * CANON (2 Payments) | 12/30/93 | $ 38M | $ .4M | $ 18.8M | $ 18.8M |
| CASIO | 04/01/94 | $ 9.5M | $ .3M | $ 4.6M | $ 4.6M |
| ** MINOLTA (3 Payments) | 05/24/94 | $ 10.31M | $ 1.63M | $ 4.34M | $ 4.34M |
| ONKYO | 06/03/94 | $ 2.1M | $ .06M | $ 1.02M | $ 1.02M |
| TOSHIBA | 06/03/94 | $ 42.9M | $ .12M | $ 21.39M | $ 21.39M |
| TOTAL ... | | $321.96M | $29.95M | $152.655M | $139.345M |

* Canon - final payment for $20,000.00 due September 15, 1995
** Minolta - final payment for $3,437,500 due April 17, 1995

Confidential-NV Protective Order

CONFIDENTIAL
H 018632

RJN1714

SENT BY:PHILIPS IPD TARRYTOWN ; 3- 1-95 ; 2:00PM ;

HYATT LICENSES

| COMPANY | LICENSE DATE | PAYMENT DATE | TOTAL PAYMENT | EXPENSES | HYATT NET SHARE | PHILIPS NET SHARE |
|---|---|---|---|---|---|---|
| FUJITSU | 10/24/91 | 11/07/91 | $ 15M | $ 4.76M | $ 5.12M | $ 5.12M |
| MATSUSHITA | 11/14/91 | 11/24/91 | $ 25M | $ 3.8M | $ 10.6M | $ 10.6 |
| SONY | 12/17/91 | 12/24/91 | $ 22M | $ 3.3M | $ 9.35M | $ 9.35M |
| NEC | 12/26/91 | 12/27/91 | $ 16.5M | $ 2.6M | $ 6.95M | $ 6.95M |
| SHARP | 11/20/91 | 01/09/92 | $ 17.8M | $ 2.8M | $ 7.56M | $ 7.56M |
| OKI | 01/31/92 | 01/31/92 | $ 4M | $ .6M | $ 1.7M | $ 1.7M |
| SHARP "PCT" | 12/25/91 | 02/10/92 | $ .25M | $ .1M | $ .05M | $ .05M |
| SANYO | 07/23/92 | 07/31/92 | $ 36.1M | $ .5M | $ 17.8M | $ 17.8M |
| HITACHI | 08/06/92 | 08/06/92 | $ 31M | $ 1.83M | $ 18.46M | $ 10.65M |
| OMRON | 09/30/92 | 10/01/92 | $ 1.4M | $ .03M | $ .685M | $ .685M |
| OKI | 01/31/92 | 11/15/92 | $ 3M | $ .4M | $ 1.3M | $ 1.3M |
| HITACHI | 08/06/92 | 12/28/93 | $ 25M | $ 1.56M | $ 14.5M | $ 9M |
| NIPPN COLUMBIA | 12/15/92 | 12/29/92 | $ 3.25M | $ .13M | $ 1.56M | $ 1.56M |
| IRNWOOD | 12/22/92 | 12/29/92 | $ 9.15M | $ .01M | $ 4.57M | $ 4.57M |
| OKI | 01/31/92 | 11/15/93 | $ 3M | $ 3M | -0- | -0- |
| NIKON | 12/28/93 | 12/28/93 | $ 3.375M | $ 1M | $ 1.2M | $ 1.2M |
| CANON | 12/30/93 | 01/27/94 | $ 19M | $ .2M | $ 9.4M | $ 9.4M |
| NIKON | 12/28/93 | 03/31/94 | $ 3.375M | $ 1.25M | $ 1.05M | $ 1.06M |
| CASIO | 04/01/94 | 04/20/94 | $ 9.5M | $ .3M | $ 4.6M | $ 4.6M |
| MINOLTA | 05/24/94 | 05/26/94 | $ 3.437M | $ .081M | $ 1.7M | $ 1.7M |
| ONKYO | 06/03/94 | 06/15/94 | $ 2.1M | $ .06M | $ 1.02M | $ 1.02M |
| TOSHIBA | 06/03/94 | 06/15/94 | $ 42.9M | $ .12M | $ 21.39M | $ 21.39M |
| MINOLTA | 05/24/94 | 08/10/94 | $ 3.437M | $ .64M | $ 1.4M | $ 1.4M |
| * CANON | 12/30/93 | 09/15/94 | $ 19M | $ .2M. | $ 9.4M | $ 9.4M |
| ** MINOLTA | 05/24/94 | 12/15/94 | $ 3.437M | $ .9M | $ 1.3M | $ 1.3M |
| | | | $322M | $30M | $152.6M | $139.3M |

* Canon - final payment for $20,000,00 due September 15, 1995
**Minolta - final payment for $3,437,500 due April 17, 1995

CONFIDENTIAL
H 018633

Confidential-NV Protective Order

RJN1715

SENT BY:PHILIPS IPD TARRYTOWN ; 6- 5-95 ;11:50AM ;          PHILIPS IPD →0           ;# 2/ 2

## HYATT LICENSES

| COMPANY | LICENSE DATE | PAYMENT DATE | TOTAL PAYMENT | EXPENSES | HYATT NET SHARE | PHILIPS NET SHARE |
|---|---|---|---|---|---|---|
| FUJITSU | 10/24/91 | 11/07/91 | $ 15M | $ 4.76M | $ 5.12M | $ 5.12M |
| MATSUSHITA | 11/14/91 | 11/24/91 | $ 25M | $ 3.8M | $ 10.6M | $ 10.6 |
| SONY | 12/17/91 | 12/24/91 | $ 22M | $ 3.3M | $ 9.35M | $ 9.35M |
| NEC | 12/26/91 | 12/27/91 | $ 16.5M | $ 2.6M | $ 6.95M | $ 6.95M |
| SHARP | 11/20/91 | 01/09/92 | $ 17.8M | $ 2.8M | $ 7.56M | $ 7.56M |
| OKI | 01/31/92 | 01/31/92 | $ 4M | $ .6M | $ 1.7M | $ 1.7M |
| SHARP "PCT" | 12/25/91 | 02/10/92 | $ .25M | $ .1M | $ .05M | $ .05M |
| SANYO | 07/23/92 | 07/31/92 | $ 36.1M | $ .5M | $ 17.8M | $ 17.8M |
| HITACHI | 08/06/92 | 08/06/92 | $ 31M | $ 1.83M | $ 18.46M | $ 10.65M |
| OMRON | 09/30/92 | 10/01/92 | $ 1.4M | $ .03M | $ .685M | $ .685M |
| OKI | 01/31/92 | 11/15/92 | $ 3M | $ .4M | $ 1.3M | $ 1.3M |
| HITACHI | 08/06/92 | 12/28/93 | $ 25M | $ 1.56M | $ 14.5M | $ 9M |
| NIPPN COLUMBIA | 12/15/92 | 12/29/92 | $ 3.25M | $ .13M | $ 1.56M | $ 1.56M |
| KENWOOD | 12/22/92 | 12/29/92 | $ 9.15M | $ .01M | $ 4.57M | $ 4.57M |
| OKI | 01/31/92 | 11/15/93 | $ 3M | $ 3M | -0- | -0- |
| NIKON | 12/28/93 | 12/28/93 | $ 3.375M | $ 1M | $ 1.2M | $ 1.2M |
| CANON | 12/30/93 | 01/27/94 | $ 19M | $ .2M | $ 9.4M | $ 9.4M |
| NIKON | 12/28/93 | 03/31/94 | $ 3.375M | $ 1.25M | $ .1.05M | $ 1.06M |
| CASIO | 04/01/94 | 04/20/94 | $ 9.5M | $ .3M | $ 4.6M | $ 4.6M |
| MINOLTA | 05/24/94 | 05/26/94 | $ 3.437M | $ .081M | $ 1.7M | $ 1.7M |
| ONKYO | 06/03/94 | 06/15/94 | $ 2.1M | $ .06M | $ 1.02M | $ 1.02M |
| TOSHIBA | 06/03/94 | 06/15/94 | $ 42.9M | $ .12M | $ 21.39M | $ 21.39M |
| MINOLTA | 05/24/94 | 08/10/94 | $ 3.437M | $ .64M | $ 1.4M | $ 1.4M |
| CANON | 12/30/93 | 09/15/94 | $ 19M | $ .2M | $ 9.4M | $ 9.4M |
| MINOLTA | 05/24/94 | 12/15/94 | $ 3.437M | $ .9M | $ 1.3M | $ 1.3M |
| MINOLTA | 05/24/94 | 04/15/95 | $ 3.437M | $ .7M | $ 1.36M | $ 1.36M |
| **SEIKO EPSON | 03/31/95 | 04/25/95 | $ 9.25M | $ .164M | $ 4.54M | $ 4.54M |
| | | | $334.70M | $31M | $158.5M | $145.2M |

\* Canon - final payment for $20,000.00 due September 15, 1995
\*\* Seiko Epson - final payment for $9,250,000 due April 30, 1996

CONFIDENTIAL
H 018634

Confidential-NV Protective Order

RJN1716

CONFIDENTIAL                                INVENTOR LICENSES

| COMPANY | LICENSE DATE | PAYMENT DATE | TOTAL PAYMENT | EXPENSES | INVENTOR NET SHARE | PHILIPS NET SHARE |
|---------|--------------|--------------|---------------|----------|--------------------|--------------------|
| FUJITSU | 10/24/91 | 11/07/91 | $ 15M | $ 4.76M | $ 5.12M | $ 5.12M |
| MATSUSHITA | 11/14/91 | 11/24/91 | $ 25M | $ 3.8M | $ 10.6M | $ 10.6 |
| SONY | 12/17/91 | 12/24/91 | $ 22M | $ 3.3M | $ 9.35M | $ 9.35M |
| NEC | 12/26/91 | 12/27/91 | $ 16.5M | $ 2.6M | $ 6.95M | $ 6.95M |
| SHARP | 11/20/91 | 01/09/92 | $ 17.8M | $ 2.8M | $ 7.56M | $ 7.56M |
| OKI | 01/31/92 | 01/31/92 | $ 4M | $ .6M | $ 1.7M | $ 1.7M |
| SHARP "PCT" | 12/25/91 | 02/10/92 | $ .25M | $ .1M | $ .05M | $ .05M |
| SANYO | 07/23/92 | 07/31/92 | $ 36.1M | $ .5M | $ 17.8M | $ 17.8M |
| HITACHI | 08/06/92 | 08/06/92 | $ 31M | $ 1.83M | $ 18.46M | $ 10.65M |
| OMRON | 09/30/92 | 10/01/92 | $ 1.4M | $ .03M | $ .685M | $ .685M |
| OKI | 01/31/92 | 11/15/92 | $ 3M | $ .4M | $ 1.3M | $ 1.3M |
| HITACHI | 08/06/92 | 12/28/93 | $ 25M | $ 1.56M | $ 14.5M | $ 9M |
| NIPPN COLUMBIA | 12/15/92 | 12/29/92 | $ 3.25M | $ .13M | $ 1.56M | $ 1.56M |
| KENWOOD | 12/22/92 | 12/29/92 | $ 9.15M | $ .01M | $ 4.57M | $ 4.57M |
| OKI | 01/31/92 | 11/15/93 | $ 3M | $ 3M | -0- | -0- |
| NIKON | 12/28/93 | 12/28/93 | $ 3.375M | $ 1M | $ 1.2M | $ 1.2M |
| CANON | 12/30/93 | 01/27/94 | $ 19M | $ .2M | $ 9.4M | $ 9.4M |
| NIKON | 12/28/93 | 03/31/94 | $ 3.375M | $ 1.25M | $ 1.05M | $ 1.06M |
| CASIO | 04/01/94 | 04/20/94 | $ 9.5M | $ .3M | $ 4.6M | $ 4.6M |
| MINOLTA | 05/24/94 | 05/26/94 | $ 3.437M | $ .081M | $ 1.7M | $ 1.7M |
| ONKYO | 06/03/94 | 06/15/94 | $ 2.1M | $ .06M | $ 1.02M | $ 1.02M |
| TOSHIBA | 06/03/94 | 06/15/94 | $ 42.9M | $ .12M | $ 21.39M | $ 21.39M |
| MINOLTA | 05/24/94 | 08/10/94 | $ 3.437M | $ .64M | $ 1.4M | $ 1.4M |
| CANON | 12/30/93 | 09/15/94 | $ 19M | $ .2M | $ 9.4M | $ 9.4M |
| MINOLTA | 05/24/94 | 12/15/94 | $ 3.437M | $ .9M | $ 1.3M | $ 1.3M |
| MINOLTA | 05/24/94 | 04/15/95 | $ 3.437M | $ .7M | $ 1.36M | $ 1.36M |
| SEIKO EPSON | 03/31/95 | 04/25/95 | $ 9.25M | $ .164M | $ 4.54M | $ 4.54M |
| | | | $334.70M | $31M | $158.5M | $145.2M |

*Canon* 20 M   9.595 M

* Canon - final payment for $20,000,00 due September 15, 1995
** Seiko Epson - final payment for $9,250,000 due April 30, 1996

Confidential-NV Protective Order

CONFIDENTIAL
H 018635

CONFIDENTIAL

RJN1717

SENT BY:PHILIPS IPD TARRYTOWN ; 1- 4-96 ; 3:04PM ;     PHILIPS IPD →0                    ;# 2/ 2

**CONFIDENTIAL**

INVENTOR LICENSES

| COMPANY | LICENSE DATE | PAYMENT DATE | TOTAL PAYMENT | EXPENSES | INVENTOR NET SHARE | PHILIPS NET SHARE |
|---|---|---|---|---|---|---|
| FUJITSU | 10/24/91 | 11/07/91 | $ 15M | $ 4.76M | $ 5.12M | $ 5.12M |
| MATSUSHITA | 11/14/91 | 11/24/91 | $ 25M | $ 3.8M | $ 10.6M | $ 10.6 |
| SONY | 12/17/91 | 12/24/91 | $ 22M | $ 3.3M | $ 9.35M | $ 9.35M |
| NEC | 12/26/91 | 12/27/91 | $ 16.5M | $ 2.6M | $ 6.95M | $ 6.95M |
| SHARP | 11/20/91 | 01/09/92 | $ 17.8M | $ 2.8M | $ 7.56M | $ 7.56M |
| OKI | 01/31/92 | 01/31/92 | $ 4M | $ .6M | $ 1.7M | $ 1.7M |
| SHARP "PCT" | 12/25/91 | 02/10/92 | $ .25M | $ .1M | $ .05M | $ .05M |
| SANYO | 07/23/92 | 07/31/92 | $ 36.1M | $ .5M | $ 17.8M | $ 17.8M |
| HITACHI | 08/06/92 | 08/06/92 | $ 31M | $ 1.83M | $ 18.46M | $ 10.65M |
| OMRON | 09/30/92 | 10/01/92 | $ 1.4M | $ .03M | $ .685M | $ .685M |
| OKI | 01/31/92 | 11/15/92 | $ 3M | $ .4M | $ 1.3M | $ 1.3M |
| HITACHI | 08/06/92 | 12/28/93 | $ 25M | $ 1.56M | $ 14.5M | $ 9M |
| NIPPN COLUMBIA | 12/15/92 | 12/29/92 | $ 3.25M | $ .13M | $ 1.56M | $ 1.56M |
| KENWOOD | 12/22/92 | 12/29/92 | $ 9.15M | $ .01M | $ 4.57M | $ 4.57M |
| OKI | 01/31/92 | 11/15/93 | $ 3M | $ 3M | -0- | -0- |
| NIKON | 12/28/93 | 12/28/93 | $ 3.375M | $ 1M | $ 1.2M | $ 1.2M |
| CANON | 12/30/93 | 01/27/94 | $ 19M | $ .2M | $ 9.4M | $ 9.4M |
| NIKON | 12/28/93 | 03/31/94 | $ 3.375M | $ 1.25M | $ 1.05M | $ 1.06M |
| CASIO | 04/01/94 | 04/20/94 | $ 9.5M | $ .3M | $ 4.6M | $ 4.6M |
| MINOLTA | 05/24/94 | 05/26/94 | $ 3.437M | $ .081M | $ 1.7M | $ 1.7M |
| ONKYO | 06/03/94 | 06/15/94 | $ 2.1M | $ .06M | $ 1.02M | $ 1.02M |
| TOSHIBA | 06/03/94 | 06/15/94 | $ 42.9M | $ .12M | $ 21.39M | $ 21.39M |
| MINOLTA | 05/24/94 | 08/10/94 | $ 3.437M | $ .64M | $ 1.4M | $ 1.4M |
| CANON | 12/30/93 | 09/15/94 | $ 19M | $ .2M | $ 9.4M | $ 9.4M |
| MINOLTA | 05/24/94 | 12/15/94 | $ 3.437M | $ .9M | $ 1.3M | $ 1.3M |
| MINOLTA | 05/24/94 | 04/15/95 | $ 3.437M | $ .7M | $ 1.36M | $ 1.36M |
| **SEIKO EPSON | 03/31/95 | 04/25/95 | $ 9.25M | $ .164M | $ 4.54M | $ 4.54M |
| CANON | 12/30/93 | 09/14/95 | $ 20M | $ .81M | $ 9.595M | $ 9.595M |
| | | CONFIDENTIAL | $354.7M | $31.8M | $168.1M | $154.8M |

H 018636

** Seiko Epson - final payment for $9,250,000 due April 30, 1996     **CONFIDENTIAL**

Confidential-NV Protective Order

EXHIBIT 3

LICENSING RIGHTS  TERMINATION AND  INDEMNIFICATION  AGREEMENT

This Licensing Rights Termination and Indemnification Agreement (herein "this Agreement") is made by and between U.S. Philips Corporation, a corporation of the State of Delaware, having a place of business at 580 White Plains Road, Tarrytown, New York 10591 (hereinafter "PHILIPS") and Gilbert P. Hyatt, having an address at P.O. Box 81230, Las Vegas, NV 89180 (hereinafter "HYATT").

WHEREAS HYATT and PHILIPS are parties to an Agreement having an effective date of July 15, 1991 which Agreement was subsequently amended by four Supplemental Agreements dated (1) October 30, 1991, (2) October 30, 1991, (3) July 22, 1992 and (4) August 11, 1992 and which Agreements granted to PHILIPS certain rights to use and to license certain HYATT patents in the United States and throughout the World (the Agreement and the four Supplemental Agreements being hereinafter referred to as the "July 1991 Agreement");

WHEREAS PHILIPS is informed that HYATT has filed and has pending certain patent applications that may mature into LICENSABLE PATENTS (as used in this Agreement LICENSABLE PATENT or PATENTS shall have the same meaning as that term has in Section 1.8 of the July 1991 Agreement); and

WHEREAS PHILIPS and HYATT desire to terminate certain rights and obligations under the July 1991 Agreement as explicitly set forth herein;

Confidential-NV Protective Order

- 1 -

GLR 06824

RJN1720

IN WITNESS WHEREOF, the parties hereto affix their name or cause their corporate name to be affixed by their duly authorized officer or representative.

U.S. PHILIPS CORPORATION

BY: _____

TITLE: *Vice President*

ATTEST:

_____

DATED: *Dec. 12* , 1997

GILBERT P. HYATT

_____

ATTEST:

_____

DATED: *Dec. 2* , 1997

RJN1721

EXHIBIT 4

A G R E E M E N T

    This AGREEMENT is made by and between U.S. PHILIPS CORPORATION, a Corporation of the State of Delaware, having a place of business at 580 White Plains Road, Tarrytown, New York 10591 (hereinafter "PHILIPS") and GILBERT P. HYATT, an individual residing at 7841 Jennifer Circle, La Palma, California 90623 (hereinafter "HYATT").

WITNESSETH THAT

    WHEREAS, HYATT owns and has the right to license certain patents and applications for patents relating to computers and LCD devices.

    WHEREAS, PHILIPS desires to acquire certain rights under such patents and applications for patents.

    NOW THEREFORE, in consideration of the mutual covenants and obligations herein set forth, the parties hereto agree as follows:

ARTICLE I - DEFINITIONS

    As used herein, the following terms shall have the following meanings:

    Section 1.1 COMPUTER PATENTS shall mean: All patents issuing on applications filed prior to or entitled to claim a filing date prior to 1980 for inventions resulting from computer related work done by HYATT and/or employees of Micro Computer Inc.

5885HYT9.AGR             1              D1127JUN91

H 01365     3/39

RJN1723

IN WITNESS WHEREOF, the parties hereto affix their name or cause their corporate name to be affixed by their duly authorized officer or representative.

U.S. PHILIPS CORPORATION

By: _____

Title: _ASSISTANT SECRETARY_

Attest:

Dated: _7/12/91_

GILBERT P. HYATT

_Gilbert P. Hyatt_

Attest:

Dated: _7/24/91_

5885HYT9.AGR                   41                   D1127JUN91

H 01405    3/35.4°

RJN1724



STATE OF CALIFORNIA
**FRANCHISE TAX BOARD**

**DECLARATION IN SUPPORT OF
SUBPOENA DUCES TECUM**

I, Robert W. Dunn, declare:

1.  I am an attorney at law duly licensed to practice before the courts of the State of California. I am an employee of the California Franchise Tax Board. I currently hold the position of Tax Counsel IV and am assigned to the General Tax Law Bureau of the Legal Department. I am familiar with Mr. Gilbert P. Hyatt's administrative tax appeal to the California Board of Equalization and the legal and factual issues therein. Except as specified below, I make the following statements based upon personal knowledge.

2.  Gilbert P. Hyatt, a former long time California resident, filed an administrative tax appeal challenging California Franchise Tax Board's issuance of Notices of Proposed Assessment for tax years 1991 and 1992 and Franchise Tax Board's subsequently issued Notices of Action for the same taxable years. These notices, which include proposed California income tax and fraud penalty assessments, are based on the Franchise Tax Board's determination at audit and protest that Mr. Hyatt remained a California resident through part of 1992. The audit and protest findings contradict the assertion of California nonresidency Mr. Hyatt made on his 1991 California part-year income tax return, the tax return at issue in this proceeding.

3.  The primary legal issues in Mr. Gilbert P. Hyatt's California administrative tax appeal are: (1) Mr. Hyatt's assertion that he became a nonresident of California (as defined by Rev. & Tax. Code § 17014) on various dates in 1991; (2) Mr. Hyatt's objection to the proposed imposition of a fraud penalty (under Rev. & Tax. Code §§ 19164 and 19131); and (3) Mr. Hyatt's contention that he did not operate a business from California through December 31, 1992 that generated California source income (under Rev. & Tax. Code §§ 17951 and 17952).

4.  On December 9, 2008, Mr. Gilbert P. Hyatt filed his Opening Brief in this matter with the California State Board of Equalization. That brief has attached 26 affidavits (19 signed by affiants just prior to the filing date) that have never been produced to Franchise Tax Board prior, even though the audit of Mr. Hyatt's claimed change of residency commenced 16 years ago, in June 1993. Assertions made by the affiants relate to the legal issues set forth in Paragraph 3 above.

5.  On August 23, 2010, Mr. Gilbert P. Hyatt filed Reply Briefs in this matter with the California state Board of Equalization. Included with the referenced briefs, Mr. Hyatt filed thirty-four (34) new affidavits and other exhibits. These recently filed affidavits were executed between November 2009 and August 2010. Several of these new affiants claim personal knowledge of specific facts and events between November 1990 and December 1992. Assertions made by the affiants relate to the legal issues set forth in Paragraph 3 above.

6.  Jack E. Haken, Algy (aka "Al") Tamoshunas, Ed Blocker, John Fox, Elise Smith, Elissa Waldron, Lillian Drummheller, Steve Tumminello, Sam Rozel, Sr. and Paul Friedlander have been identified by Mr. Hyatt's counsel of record in the above referenced tax appeal as individuals in the New York in-house patent or executive offices for North American Philips "…involved with Mr. Hyatt in licensing his patents during the disputed period in accordance with the July 1991 patent licensing agreement between Philips and Mr. Hyatt…." A true and correct copy of pages 1, 12, 13, and 20 from Mr. Eric Coffill's letter dated November 3, 2000 to Ms. Cinnamon identifying Mr. Haken and others from U.S. Philips Corp. as individuals involved in Mr. Hyatt's patent licensing activities is attached hereto as Exhibit "B" to this declaration. Mr. Hyatt's patent licensing activities are relevant and relate to the legal issues described in Paragraph 3 above.

7.  Franchise Tax Board will "require by demand" the Custodian of Records for U.S. Philips Corporation to produce documentation as per the attached Subpoena Duces Tecum in accordance with, and under the authority of, Rev. & Tax. Code § 19504. The purpose for this action is to administer the duties of the Franchise Tax Board which include ascertaining the correctness of any California tax return. The enforcement duty of the Franchise Tax Board with respect to California's Personal Income Tax Law is set forth in Rev. & Tax. Code § 19501.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___9 March 11___ at ___Sacramento, CA___.

Robert W. Dunn

EXHIBIT _B_

RJN1727

MORRISON & FOERSTER LLP

ATTORNEYS AT LAW

| | | |
|---|---|---|
| SAN FRANCISCO | | NEW YORK |
| LOS ANGELES | | BUENOS AIRES |
| PALO ALTO | 400 CAPITOL MALL, SUITE 2300 | LONDON |
| WALNUT CREEK | SACRAMENTO, CALIFORNIA 95814 | BRUSSELS |
| ORANGE COUNTY | TELEPHONE (916) 448-3200 | BEIJING |
| SAN DIEGO | TELEFACSIMILE (916) 448-3227 | HONG KONG |
| DENVER | | SINGAPORE |
| WASHINGTON, D.C. | | TOKYO |

November 3, 2000

Writer's Direct Contact
(916) 325-1324
ecolfill@mofo.com

BY CERTIFIED MAIL NO.
7099 3400 0004 7558 2964

Ms. Cody C. Cinnamon
Tax Counsel III
Franchise Tax Board
Legal Branch
P.O. Box 1720
Rancho Cordova, CA 95741-1720

Re: Protests of Mr. Gilbert P. Hyatt

Income Year 1992

Dear Ms. Cinnamon:

This is in response to your letter of October 4, 2000 in the above matter, which set forth twenty-five additional requests for information and documents within thirty days. We assume your references to a December 30, 1991 IDR (see, e.g., your Question 1) refers to the December 30, 1999 letter from Charlene Woodward to Mr. Cowan.

As discussed at the protest hearing in this matter, we had hoped to receive a copy of the FTB's audit file for this year by the end of October, and prior to the due date for this response. However, since the file was not available to us until today (when we picked it up at FTB), we did not have the benefit of the file for purposes of responding to your October 4th letter.

QUESTION NO. 1:

For each date of presence on page 63 of the audit narrative for what reason he was in California on that date. Please reconcile the list of page 64 of your days of presence in Nevada with those on page 63, especially the fact that these are often very close in time. See attached. Note that the December 30, 1991, Information and

P00510

RJN1728

MORRISON & FOERSTER LLP

Ms. Cody Cinnamon
November 3, 2000
Page Twelve

- managers at Valley Bank in Nevada and specifically Richard Etter
- managers at the Nevada branch of Bank of America;
- the University of Nevada at Las Vegas (UNLV) and specifically Dr. William Brogan, Professor and IEEE Chairman, and Dr. Yahia Baghzouz, Chairman;
- Mirage Resorts and specifically executive Kenny Wynn;

Notwithstanding the fact that the non-California professionals identified below were not primarily situated in Nevada during the disputed period, to the extent that these non-California professionals represented or were involved with Mr. Hyatt in Las Vegas during the disputed period categorizes them as Nevada professionals during the disputed period.

The non-California professionals that represented or were involved with Mr. Hyatt in the patent interference proceeding Hyatt v. Boone[1] during the disputed period in accordance with the July 1991 patent licensing agreement between Philips and Mr. Hyatt include:

- the New York in-house patent law office of North American Philips and specifically attorneys Al Tamoshunas, Jack Haken, and Jack Oisher (also mentioned below regarding licensing);
- the New York office of the law firm of Keck, Mahin, Cate and specifically attorneys Jim Williams, John DiMatteo, and Ken Cho and paralegal Felicia Crane;
- the Virginia law firm of Burns Doane and specifically attorney Danny Huntington and paralegal Donna Silva;
- expert witness Don Black (Colorado);
- expert witness Dianna Black (Colorado);
- expert witness Vern McKenny (Colorado);

---

[1] Mr. Hyatt was a named party in the patent interference proceeding which was pending during the entire period in dispute, and commenced much earlier. For example, in July 1991, Mr. Hyatt filed a preliminary motion in the proceeding pending before the Commissioner of Patents and Trademarks. A Memorandum Opinion and Order was issued on December 1, 1992. (See *Hyatt v. Boone*, Interference No. 102,598, Commissioner of Patents and Trademarks, 1992 Commr. Pat. LEXIS 30.) The Opinion and Order was appealed, and after many years of further proceedings, an opinion was issued on June 17, 1998 by the United States Court of Appeals for the Federal Circuit in *Hyatt v. Boone* (1998) 146 F.3d 1348, 1998 U.S. App. LEXIS 12809. The case was argued before the Federal Circuit for Mr. Hyatt by John M. DiMatteo, of Patterson, Balknap, Webb & Tyler LLP of New York. (see 146 F.3d 1348.)

P00521

RJN1729

.Morrison & Foerster llp

Ms. Cody Cinnamon
November 3, 2000
Page Thirteen

- expert witness Don Craft (Colorado);
- expert witness Harry Stover (Texas); and
- expert witness Bill Tobey (East Coast).

The non-California professionals that represented or were involved with Mr. Hyatt in licensing his patents during the disputed period in accordance with the July 1991 patent licensing agreement between Philips and Mr. Hyatt include:

- the New York in-house patent law office of North American Philips and specifically patent attorneys Al Tarnoshunas, Jack Haken, Ed Blocker, and John Fox and paralegals Elise Smith, Elissa Waldron, and Lilly Drumhelle;
- the New York executive office of North American Philips and specifically Steve Turnminello, President, Sam Rozel, Sr. Vice President, and Paul Friedlander, Vice President;
- the Dutch in-house patent law office of NV Philips and specifically patent attorneys Jan Galama, Huib Beckers, and Ruud Peters;
- the Dutch executive office of NV Philips and specifically Rob Hamersma;
- the Japanese in-house patent law office of NV Philips and specifically attorney Hidekazu Koyama;
- the Taiwanese law firm of Lee and Li and specifically C.V. Chen;
- the New York law office of Tom Briody; and
- the Oregon PR firm of Charles McHenry.

The non-California professionals that represented or were involved with Mr. Hyatt in licensing his patents during the disputed period in accordance with the September 1991 patent licensing agreement between Philips, Mr. Hyatt, and Mahr Leonard Management Company (MLMC) include:

- the Texas patent licensing firm MLMC and specifically licensing professionals George Mahr and Dave Leonard; and
- the Texas patent law firm of Leonard and Lott and specifically attorneys Dave Leonard and Bob Lott and paralegal Vikki Weart.

The non-California professionals that were involved with Mr. Hyatt in accordance with the June 1991 patent licensing option agreement between Mr. Hyatt and Pioneer during the disputed period include Pioneer (Japan) and specifically Japanese executives Mr. Okatani and Keiji Masaki.

The non-California professionals that were involved with Mr. Hyatt during the disputed period include prospective licensee IBM (New York) and specifically Emmett Murtha, Mike Burns, Diana Dorr, and John Brady.

P00522

RJN1730

MORRISON & FOERSTER LLP

Ms. Cody Cinnamon
November 3, 2000
Page Twenty

QUESTION NO. 25:

Provide the MCI billing statements for the period in dispute. Was MCI Hyatt's long distance provider during this period? If not, explain the nature of the services provided by MCI to Mr. Hyatt.

RESPONSE TO QUESTION NO. 25:

Mr. Hyatt does not have in his possession any MCI billing statements for the period in dispute. Mr. Hyatt has no present recollection of his long distance provider during this period.

Thank you in advance for your continuing cooperation in this matter.

Very truly yours,

Eric J. Coffill

cc:   Eugene G. Cowan
      Gilbert P. Hyatt

Encls. (binder)

P00529

RJN1731

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

-----------------------------------------------------------------x

In the matter of:

The Application of State of California Franchise
Tax Board for the deposition and production of
business records from the Custodian of Records
for U.S. Philips Corporation  for use in an action
pending in the Superior Court of California
entitled State of California Franchise Tax Board
v. Neal Howard, et al. (Case No. 34-2011-
00101401)

-----------------------------------------------------------------x

**SUBPOENA DUCES TECUM**

CARTER LEDYARD & MILBURN LLP
COUNSELORS AT LAW
2 WALL STREET
NEW YORK, N.Y. 10005

(212) 732-3200

**FILED: WESTCHESTER COUNTY CLERK 03/16/2015 04:55 PM**    INDEX NO. 53655/2015
NYSCEF DOC. NO. 17            RECEIVED NYSCEF: 03/16/2015

the Compliance Part
At Part _____ of the Supreme Court of
the State of New York, held in and for the
County of Westchester, at the Courthouse,
111 Dr. Martin Luther King Jr. Boulevard,
White Plains, New York, on the _16th_ day
of March, 2015

PRESENT: _JOAN B. LEFKOWITZ,_

Justice.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

In the Matter of:

Gilbert P. Hyatt's Petition to Suppress Disclosure
Improperly Obtained by State of California Franchise Tax
Board in Response to Three Out-of-State Subpoenas
Previously Modified and Narrowed by New York Court
Orders.

Index No. 53655/2015

**ORDER TO SHOW
CAUSE**

Upon reading the annexed Affidavit of Gilbert P. Hyatt, Affirmation of Good Faith and

Affirmation of Emergency (and the exhibits thereto), it is hereby:

**ORDERED** that respondent the State of California Franchise Tax Board (the "FTB")

show cause before this Court at the Compliance Part thereof, at the Courthouse, 111 Dr. Martin

Luther King Jr. Boulevard, White Plains, New York, on the _27th_ day of _April_, 2015, at

_2:00_ o'clock in the _after_ noon, or as soon thereafter as counsel can be heard, why

an Order should not be entered (a) holding Respondent the State of California Franchise Tax

Board (the "FTB") in contempt of court for intentionally contravening the lawful Suppression

Orders of this Court (Lefkowitz, J.), dated October 7, 2013 and March 13, 2014 (collectively, the

"Suppression Orders") ; (b) enjoining the FTB to withdraw its "Second Additional Briefing"

submitted in the underlying public tax appeal pending before the California State Board of Equalization (the "SBE"); (c) enjoining the FTB from re-filing any further materials in the SBE proceeding unless its New York counsel of record submits an affirmation confirming that any such filing fully complies with the Suppression Orders; (d) fining the FTB in the amount of $250; (e) directing the FTB to pay costs and expenses, including attorneys' fees, incurred by Hyatt in bringing this Special Proceeding pursuant to N.Y. Judiciary Law § 773; and (f) granting Hyatt such other and further relief as the Court deems just and proper; and it is further

**ORDERED** that, sufficient reason being shown, pursuant to CPLR §§ 6301 and § 6313, the FTB is temporarily restrained and enjoined ~~(1) to withdraw its Second Additional Briefing~~ ~~submitted in the underlying public tax appeal pending before the SBE, and (2)~~ from ~~re-~~filing any further materials in the SBE proceeding unless its New York counsel of record submits an [*Briefs, affidavits and affirmations previously filed in court proceedings which are not the subject of a sealing order may be filed in the SBE proceeding*] affirmation confirming that any such filing fully complies with the Suppression Orders; and it is further

[*insofar as counsel for all parties have consented*] **ORDERED** that ~~service of a copy of this Order to Show Cause, together with the papers~~ [*to Electronic Filing, petitioner is not required to serve the*] ~~upon which it was entered, shall be good and sufficient if served by electronic means upon~~ [*Order to Show Cause on respondent.*] ~~attorneys for the FTB, Carter Ledyard & Milburn LLP, by Judith Lockhart, Esq.,~~

~~lockhart@clm.com, no later than the ___ day of March,~~ 2015; and it is further

**ORDERED** that answering papers, if any, shall be ~~served by electronic means on Hyatt's~~ [*filed with the Court on*] [*the NYSCEF website on or before April 6, 2015 at 12:00 P.M.*] ~~attorneys, Pryor Cashman LLP, by Eric D. Dowell, Esq., edowell@pryorcashman.com, at or~~

~~before five o'clock pm on the ___ day of _____,~~ 2015; and it is further

**ORDERED** that reply papers, if any, shall be ~~served by electronic means upon attorneys~~ [*filed with the court on*] [*the NYSCEF website on or before April 13, 2015 at 12:00 P.M.*] ~~for the FTB at or before five o'clock pm on the ___ day of _____,~~ 2015.

2

RJN1734

ORDERED that no cross motions shall be accepted. **All papers shall be e-filed to the NYSCEF website.**

ORAL ARGUMENT WILL BE HEARD.  APPEARANCE OF COUNSEL IS REQUIRED.

Dated: White Plains, New York
     March 16 , 2015

                                     HON. JOAN B. LEFKOWITZ, J.S.C.

3

RJN1735

## CERTIFICATE OF SERVICE

U.S. Court of Appeals Docket Number(s): 15-15296

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 7, 2017.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature:     *s/ Yolanda Mendez*