**No. 15-15296**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

GILBERT P. HYATT,

*Plaintiff-Appellant,*

v.

BETTY T. YEE, in her official capacity as California Franchise Tax
Board member and California State Board of Equalization member
DIANE L. HARKEY, in her official capacity as California State
Board of Equalization member; JEROME E. HORTON, in his
official capacity as California State Board of Equalization member;
MICHAEL COHEN, in his official capacity as California Franchise
Tax Board member; GEORGE RUNNER, in his official capacity as
California State Board of Equalization member; FIONA MA, in her
official capacity as California State Board of Equalization member
and California Franchise Tax Board member,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of California
Case No. 2:14-cv-00849-GEB-DAD (Hon. Garland E. Burrell, Jr.)

APPELLANT
GILBERT P. HYATT'S
OPPOSITION TO SBE APPELLEES'
REQUEST FOR JUDICIAL NOTICE

Donald J. Kula
Oliver M. Gold
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Erwin Chemerinsky, Esq.
EChemerinsky@law.uci.edu
UC IRVINE SCHOOL OF LAW
401 E. Peltason Drive, Suite 1000
Irvine, CA 92697-8000
Telephone: 949.824.8814
Facsimile: 949.824.7336

Malcolm Segal, Bar No. 075481
MSegal@segal-pc.com
SEGAL & ASSOCIATES, PC
400 Capitol Mall, Suite 2550
Sacramento, CA 95814
Telephone: 916.441.0886
Facsimile: 916.475.1231

Attorneys for Appellant Gilbert P. Hyatt

# TABLE OF CONTENTS

**Page**

**I.**      **Introduction** ................................................................ **1**

**II.**     **The SBE's 141 requests for judicial notice should be denied as the Court cannot as a matter of law take on the role of fact finder.** ............. **5**

**III.**    **In the event the Court decides to address the factual dispute over the delay in the administrative proceedings, it should take judicial notice of the records from the SBE Appeals that demonstrate the SBE has substantial responsibility for the delay over the last nine years.** ........................................................ **6**

      **A.**      SBE records acknowledge that it, not Mr. Hyatt or FTB, controls the appeal process and solely could have prevented the last five years of delay. ........................................ **7**

      **B.**      SBE records show that FTB inserted extensive new issues at the conclusion of the protests and during the appeals that caused substantial delays during the appeals. .................................. **9**

      **C.**      The Court should take judicial notice of submissions in the SBE Appeals that have substantially addressed the delay issue. ....... **13**

      **D.**      The Court should take judicial notice of FTB's multiple requests for extension of time at the outset of the appeal and additional requests throughout the appeal, all granted by the SBE. ............................................................ **14**

      **E.**      The Court should take judicial notice of Mr. Hyatt's Motions to Strike FTB's briefings .................................... **15**

**IV.**    **The Court must consider Mr. Hyatt's offer of proof to the extent the Court will consider addressing the factual dispute over the cause of the delay in the administrative proceedings.** ............................ **16**

**V.**      **Conclusion.** ................................................................. **19**

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Augustine v. United States*,
    704 F.2d 1074 (9th Cir. 1983) .............................................................. 6

*Hennessy v. Penril Datacomm Networks, Inc.*,
    69 F.3d 1344 (7th Cir. 1995) ................................................................ 5

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ................................................................ 5

*Lustgraaf v. Behrens*,
    619 F.3d 867 (8th Cir. 2010) ................................................................ 5

**STATUTES**

Cal. Rev. & Tax Code § 19104(a)(1).................................................... 13

Appellant Gilbert P. Hyatt submits this opposition and the accompanying counter request for judicial notice to Appellees Diane L. Harkey, Jerome E. Horton, Betty T. Yee, George Runner and Fiona Ma, in their official capacities as members of the California State Board of Equalization ("SBE" or the "SBE Appellees") Request for Judicial Notice (Dkt. 57).[1]

## I.     Introduction.

The voluminous filings of the Appellees in response to the Court's order confirm that factual question of which of the parties is responsible for the delay in the administrative proceedings is vigorously disputed and not ripe for this Court to address.  Where, as here, facts necessary to resolve the issue of jurisdiction are disputed and intertwined with the ultimate issue in the case, the jurisdictional dispute must be deferred until resolution of the disputed facts by the trial court. The factual dispute over the delay should be remanded to the district court for a determination of this and other factual issues.  Mr. Hyatt also addresses this in his

---

[1] Appellees Betty T. Yee, Diane L. Harkey, and Michael Cohen in their official capacities as members of the California Franchise Tax Board ("FTB" or "FTB Appellees") filed a separate Motion for Judicial Notice. (Dkt. 58)  Mr. Hyatt has filed a separate opposition to FTB Motion for Judicial Notice.

Opposition to FTB's Motion for Judicial Notice and incorporates those arguments in his Opposition to FTB's Request for Judicial Notice by reference.

Nonetheless, if this Court is going to attempt to take on the role of factfinder, from matters in the public record, to try and determine who was responsible for the delays in the administrative proceedings, this Court must consider all the judicially noticeable facts from the public record. Mr. Hyatt therefore also submits his Counter Request for Judicial Notice.

Compared to FTB's Motion, the SBE's Request is less overt in challenging the facts alleged by Mr. Hyatt regarding the State's over 20 year delay in completing the administrative proceedings. The SBE purports to lay out a mechanical recitation of facts as to the timing of the briefing during the SBE Appeals and the requests for extensions by Mr. Hyatt and FTB.

The SBE expressly argues that it is not to blame for the nine years the SBE Appeals have languished. On this point, Mr. Hyatt disputes and opposes the SBE's submission. In 2012, four years into the appeals, the SBE declared in writing that the briefing was closed, and in response Mr. Hyatt requested an immediate hearing so the appeals could be concluded. (HYATT RJN, Exh. 68; SBE RJN, Exh. 55) The SBE then reneged and granted several additional rounds of briefing, one round at the SBE's request and several at FTB's request. Five

years later the appeals are still pending.[2]  Blame for the current procedural posture of the administrative appeals therefore falls squarely at the feet of the SBE.

Mr. Hyatt has properly and accurately alleged that the SBE is responsible for the administrative appeals lasting now nine years.[3]  His Counter Request for Judicial Notice fully supports his well pleaded complaint on this point.  Further, Mr. Hyatt does not oppose the Court taking judicial notice of many of the documents submitted by the SBE as Exhibits to the Declaration of Grant Thompson.  These documents merely confirm issues such as the dates briefs were filed and extensions were requested or answered.  But Mr. Hyatt does oppose the descriptions, *i.e.*, spin, of some of the documents as portrayed in Mr. Thompson's

---

[2] The SBE has set the SBE Appeals for  hearing next month.  When the appeals will be finally decided, however, is still highly uncertain.  In any event, a decision in the SBE Appeals ─ whenever issued ─ will not end Mr. Hyatt's right to challenge the tax assessments.  A declaratory relief proceeding in state court is the next step in the State's process.  But Mr. Hyatt cannot raise his constitutional claims in that declaratory relief action and a further reason why he has no plain, speedy and efficient remedy in state court.  This issue was addressed in prior briefing in this appeal. (AOB, at 24).

[3] Complaint, Para. 25-26, 61-78.  (4 ER 738)

declaration. Mr. Hyatt has submitted his own full and complete description of these documents in his Counter Request for Judicial Notice.[4]

At this stage, based on Mr. Hyatt's detailed pleading and supporting Counter Request for Judicial Notice, the question of why the State has taken over 20 years to process the administrative review of the tax assessments first imposed against Mr. Hyatt in 1996 must be answered squarely in Mr. Hyatt's favor. At all stages of the administrative process the State has indisputably controlled the proceedings including when each stage would begin and how long it would last. The SBE, as a subdivision of the State is and has been the responsible and controlling entity for Mr. Hyatt's administrative appeals since they were filed in early 2008.

The State did not contend in prior briefings and does not contend here that Mr. Hyatt had the ability to set deadlines, extend deadlines, add and change the basis for assessments, use subpoena power, take depositions, commence audits of third parties purportedly connected to Mr. Hyatt ─ each of which the State has the authority to do and has done now for over 20 years.

Notably, the SBE commences and ends its requests for judicial notice by re-arguing the legal issue of whether Mr. Hyatt must be required to start anew in a

---

[4] *See* references to Thompson Exhibits in Mr. Hyatt's accompanying Counter Request for Judicial Notice.

new administrative process in order to bring his constitutional claims. No such argument was invited by the Court. The overflowing record of the administrative proceedings as confirmed by the recent filings document what Mr. Hyatt has experienced. It also confirms why Mr. Hyatt should not be required to now switch to a new administrative process if he wants his constitutional claims heard any time soon. Indeed, it is uncertain whether he can ever have his constitutional claims heard in any California tax proceeding.

## II. The SBE's 141 requests for judicial notice should be denied as the Court cannot as a matter of law take on the role of fact finder.

The SBE seeks judicial notice of 141 requests for judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001) holds that a court may take judicial notice of the fact that a document in the public record was signed or filed, or that a hearing was held, but it cannot take judicial notice of disputed facts stated in the public record. *Id.* Documents are judicially noticeable only for the purpose of determining what statements are contained therein, not to prove the truth of the contents. *See Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354–1355 (7th Cir. 1995) (district court properly refused to take judicial notice of corporation's Form 10-K to determine disputed fact); *see also Lustgraaf v. Behrens*, 619 F.3d 867, 885–86 (8th Cir. 2010) (district court properly took

- 5 -

judicial notice to decide what statements were contained in public records but improperly took judicial notice to prove truth of contents).

It would be a laborious task for this Court to attempt to determine the truth or falsity of the various statements in the 141 requests submitted by FTB. The Court should decline to do so. Moreover, the disputed fact of the cause of the delay is intertwined with both the jurisdictional issue now before the Court and the merits of Mr. Hyatt's due process and equal protection claims. For this additional reason, the case must be remanded back to the district court for resolution of this fact before addressing the jurisdictional issue. *See Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir. 1983).

**III.  In the event the Court decides to address the factual dispute over the delay in the administrative proceedings, it should take judicial notice of the records from the SBE Appeals that demonstrate the SBE has substantial responsibility for the delay over the last nine years.**

The SBE attempts to present an even-handed description of the proceedings in the administrative appeals since their inception in 2008. The SBE fails in this attempt as it is very much the responsible party for the delays in completing the SBE Appeals. Mr. Hyatt acted as diligently as he could in pursuing his appeals in view of FTB's continuing discovery during the SBE Appeals, FTB changing its position throughout the appeals, making multitudes of erroneous statements in its briefings, overflowing the page limits of its appeals in one case by over 2,000

pages, and violating the order of the SBE.  The SBE, for its part, let this happen and affirmatively contributed by allowing additional briefing well beyond which FTB was allowed. The SBE allowed 10 rounds of briefing as opposed to the statutory three rounds.

**A.    SBE records acknowledge that it, not Mr. Hyatt or FTB, controls the appeal process and solely could have prevented the last five years of delay.**

The SBE fully acknowledged in its own communications to Mr. Hyatt and FTB that the SBE, under California law, determines the briefing schedule and whether additional briefing will be allowed.  The SBE felt so strongly about this that it sent a letter to FTB and to Mr. Hyatt's tax counsel reminding them of this. (*See, e.g.,* SBE RJN Exh. 83; HYATT RJN, Exh. 72)  Further, the SBE Rules for Tax Appeals also explicitly state that the SBE determines the order, deadlines, and conditions under which any briefing or evidence will be submitted.  (HYATT RJN Exh. 62)

Any complaint by the State, therefore, that Mr. Hyatt sought extensions of various deadlines for filing one or more of his briefs in the appeals is merely an attempt to deflect blame from the State where it belongs for the drawn out briefing process in the appeals.  By rule, the briefing in the SBE Appeals should have consisted of only Mr. Hyatt submitting opening briefs, FTB submitting opening

briefs in response, and then Mr. Hyatt submitting reply briefs. (HYATT RJN Exh.

62) Instead, FTB requested and the SBE granted FTB a sur-Reply and the SBE

repeatedly ordered the parties to file "additional briefing." Mr. Hyatt was always

permitted to file a responding brief because the taxpayer is entitle to the last brief.

As a result there were ten rounds of briefing instead of three. Mr. Hyatt

documented this in his motion to strike filed with the SBE asking it to strike

certain briefing of FTB. (SBE RJN Exh. 90; FTB RJN 91)

     The SBE could have and should have ended the briefing process years ago

and was asked to do so by Mr. Hyatt's tax counsel several times including in 2012

in response to the SBE written notice that the briefing in the appeal was closed.

Specifically, SBE gave notice on August 2, 2012 that the briefing was closed.

(HYATT RJN Exh. 68) Mr. Hyatt's tax counsel acknowledged this in his letter of

August 10, 2012 and requested that a hearing date be set for the appeals as

"*expeditiously* as possible." (SBE RJN Exh. 55) That correspondence recounts

the then already lengthy and delayed history of the administrative proceeding with

commencement of the first audit in 1993 when Mr. Hyatt was 55 years old and that

almost 20 years later the Mr. Hyatt still does not have finality.

     Now five years later Mr. Hyatt still does not have finality. Mr. Hyatt's tax

counsel reiterated the request for expedited hearings in a letter dated October 4,

2012. (SBE RJN Exh. 60) Notably, FTB opposed Mr. Hyatt's request for expedited hearings by asking that the SBE confirm that Mr. Hyatt's request has been denied. (SBE RJN Exh. 61)

If the SBE had scheduled hearings for the appeals when it first stated briefing was closed on August 2, 2012 and which Mr. Hyatt had requested, the appeals would have been resolved in 2012. That would have meant the appeals would have lasted approximately four years, which while not ideal is far from the now nine years the appeals have been pending. It is only the SBE that had the sole authority and discretion to prevent the last five years of delay in the appeals.

**B.      SBE records show that FTB inserted extensive new issues at the conclusion of the protests and during the appeals that caused substantial delays during the appeals.**

The SBE's request for judicial notice referenced Mr. Hyatt's additional submissions of evidence and lengthy briefing in the SBE Appeals. But Mr. Hyatt was required to respond to new issues set forth by FTB thereby necessitating the filing of new and additional evidence and the briefing of these new issues.

First, FTB improperly delayed until the end of the protests in late 2007 to assert a "sourcing" assessment as the basis for taxing Mr. Hyatt, and denied Mr. Hyatt an opportunity to properly respond stating that he could respond in the appeals. (FTB RJN Exh. 43) As repeatedly addressed by Mr. Hyatt in his SBE

Appeal briefing, it was improper for FTB to include the new sourcing issue in its protest determination letter at the end of 2007. (FTB RJN Exh. 49, at 806-08; Exh. 62, at 1228; Exh. 63, at 1325-79; Exh. 74, at 1631-77) FTB did not assert the sourcing assessments during the audits or in its proposed assessments at the end of the audits, waiting until its protest determination letter in late 2007. (HYATT RJN Exh. 34) The protest officer expressly denied Mr. Hyatt a proper opportunity to respond, telling him he should wait until the SBE Appeals to brief the new issue and the new assessments. (FTB RJN Exh. 43)

By so doing, FTB caused significant delay in the process by injecting a new, unlawful, and substantial issue into the appeals for which Mr. Hyatt had never had the opportunity to address and submit evidence and which FTB did not audit. Worse, during the SBE Appeals, FTB has significantly changed its sourcing arguments such that it currently bases the assessments on far different facts than asserted in 2007. As a result, it was necessary for Mr. Hyatt to submit new and significant evidence during the SBE Appeals on multiple occasions, and he did so in order to address FTB's new and evolving sourcing assessments in his briefings in the SBE Appeals. (FTB RJN Exh. 49, at 806-08; Exh. 62, at 1228; Exh., 63, at 1325-79; Exh. 74, at 1631-77)

Second, in 2011, 18 years after the audit commenced in 1993 and at a time that the SBE Appeals were concluding, FTB subpoenaed documents and testimony from Philips and three of its employees. (HYATT RJN Exh. 79) FTB had been well aware of Philips which had exclusive licensing authority for Mr. Hyatt's patents and made the licensing payments in dispute to Mr. Hyatt. Philips was identified in Mr. Hyatt's 1991 part-year tax return, and the FTB was well aware of Philips during the audits that commenced in 1993, continuing into the protests when FTB first subpoenaed Philips but withdrew the subpoena, and even referenced Philips in the 1992 preliminary determination letter in 1996. (HYATT RJN Exh. 6, at 322)

No part of that delay stemming from FTB's tardy Philips subpoenas can therefore be attributed to Mr. Hyatt. Nor can Mr. Hyatt be blamed for submitting new evidence and briefing in the SBE Appeals to address the new Philips documents that was sought and submitted by FTB years after the SBE briefing had been closed and almost two decades after the audit. Mr. Hyatt addressed this in his SBE briefings. (SBE RJN Exh. 90, at 23-34)

Further delay was caused by the SBE allowing FTB's tardy pursuit of the grossly overbroad production Philips documents after the SBE briefing had been closed. (HYATT RJN Exh. 68; SBE Exhs. 56, 59, 62) The New York Supreme

Court found that the FTB subpoenas were overbroad in ordering them suppressed and limiting the scope of documents to be produced by Philips to FTB. (FTB RJN Exhs. 83, 84) The delay caused by the proceeding in New York can only be attributed to FTB as FTB subpoenaed Philips 20 years after the events at issue and Mr. Hyatt was successful in properly limiting FTB's overbroad subpoenas.

Further, even after the New York Supreme Court specifically ordered what Philips documents could be produced by Philips, FTB obtained and attempted to use in the SBE Appeals process documents that the New York court had excluded. (SBE RJN Exh. 90) This misconduct by FTB necessitated a series of exchanges between the parties and the SBE and re-submissions of material by FTB. (*See, e.g.*, SBE RJN Exhs. 73, 76, 79, 80, 85) Ultimately a Temporary Restraining Order was sought by Mr. Hyatt and received from the New York court to ensure FTB's compliance with the orders of the New York court. (HYATT RJN Exh. 80) Again, the delay from these proceedings must be attributed only to FTB for seeking the overly broad subpoena and violating the orders of the New York court so late in the process and to the SBE for allowing the tardy pursuit and then ordering extensive additional briefing regarding the Philips documents.

An additional and recurring cause of delay in the SBE Appeals was FTB's repeated submissions of false statements, false misrepresentations, and false

mischaracterizations in each round of briefing. In response, Mr. Hyatt was required to expend an enormous amount of time and effort to produce additional sworn testimony and thousands of pages of evidence in rebuttal to FTB's new submissions. Mr. Hyatt fully briefed to the SBE the need for his new evidence and how it rebutted FTB's purported new evidence. (FTB RJN Exh. 73; HYATT RJN Exh. 75) The delay from this additional briefing again falls at the feet of FTB for making multitudes of new and unsubstantiated submissions, and the SBE for allowing FTB to repeatedly do so.

## C. The Court should take judicial notice of submissions in the SBE Appeals that have substantially addressed the delay issue.

Under California law, if any part of the interest on a tax assessment sought to be collected by FTB is attributable to delay by FTB in performing a ministerial or managerial act that portion of the interest must be abated. Cal. Rev. & Tax Code § 19104(a)(1). Here, despite its 11 year delay in the protests and continuing delays during this now 9 year appeal process, FTB seeks tens of millions of dollars of interest from Hyatt on the proposed assessment of taxes and penalties. The subject of interest abatement and who is to blame for the delays has been the subject of substantial briefing in the appeals.

Mr. Hyatt asks the Court to take judicial notice of his briefing that addresses the delays by FTB as a basis for interest abatement. (FTB RJN Exh. 49, at 828-35;

- 13 -

Exh. 50, 914-21; Exh. 63, at 1386-98; Exh.101, at 2234-36)  As Mr. Hyatt has

addressed in briefings, delays by FTB for which interest abatement is appropriate

include the protest delays resulting from (i) FTB intentionally putting the protests

on hold for 11 years as addressed in detail above, (ii) FTB having lost, destroyed

or withheld portions of the audit file requiring a "Herculean" effort by one FTB

auditor to restore the audit file, and (iii) FTB delaying the start of the protest by

holding the proposed assessment for the 1992 tax-year for 14 months so the

assessment would fall in the next fiscal year.  *Id.*  The Court should take judicial

notice of these submissions by Mr. Hyatt in the SBE Appeals in regard to their

discussion of delay by FTB.

**D.     The Court should take judicial notice of FTB's multiple requests for extension of time at the outset of the appeal and additional requests throughout the appeal, all granted by the SBE.**

FTB that has sought and received from the SBE multiple extensions of time

when submitting five pairs of briefs (including FTB's concluding summaries).  At

the outset of the appeals, FTB sought three extensions of time before filing its

opening briefs.  (*See, e.g.*, SBE RJN Exhs. 15, 18, 21, 39; FTB RJN Exhs. 53, 81)

This is despite the fact that it was FTB that injected new issues in the SBE

Appeals.  The SBE nonetheless granted each request by FTB.  (*See, e.g.,* HYATT

RJN Exhs. 17, 20, 40)

Despite receiving these extensions, FTB improperly submitted its opening brief as a single combined brief for both tax years. This was in clear violation of the SBE's briefing orders. The SBE then ordered FTB to reformat and resubmit its opening briefs, causing further delay that can only be attributed to FTB. (HYATT RJN Exhs. 64, 67 )

**E.    The Court should take judicial notice of Mr. Hyatt's Motions to Strike FTB's briefings .**

The subjects addressed above, including FTB's tardy subpoenas and then improper submission of the Philips documents, FTB's excessive and improper briefing as allowed and disallowed by the SBE, and FTB's new and erroneous assertions in the SBE Appeals requiring Mr. Hyatt to make new and additional submissions, are addressed in some detail in a motion to strike that Mr. Hyatt filed with the SBE. (SBE RJN Exh. 90) The SBE denied Mr. Hyatt's motion. (SBE RJN Exh. 107) . In so doing, the SBE sanctioned the conduct by FTB. Only FTB and the SBE can therefore be blamed for the repeated pattern in the SBE Appeals of FTB injecting new issues into the appeals and Mr. Hyatt having to respond to these new issues.

**IV.    The Court must consider Mr. Hyatt's offer of proof to the extent the Court will consider addressing the factual dispute over the cause of the delay in the administrative proceedings.**

Mr. Hyatt's well pleaded facts as to the cause of the delay in the administrative proceedings will be well supported by evidence. Mr. Hyatt cannot present all or most of that evidence of the cause of the delay in the administrative proceedings by way of a request for judicial notice. An evidentiary hearing is necessary to present all of this evidence.[5]

Further, at oral argument the Court wondered why Mr. Hyatt would have been prejudiced by the delay as presumably he would have preserved supporting evidence. It is because FTB has constantly raised new arguments and asserted new "facts" through the protests and through the SBE Appeals. Indeed, the sourcing issue referenced herein, the briefing for which is extensively cited above, is an entirely different legal issue based on different facts. Even for the residency theory on which the audit assessments were based FTB has now shifted and asserts wholly different theories to prop up its prior arguments.

---

[5] Again, this Court should not act as factfinder. But Mr. Hyatt's first-hand and detailed rebuttal of FTB's assertions is set forth in an affidavit that was submitted and is part of the record in the SBE Appeals. The affidavit was not focused on the issue of delay as it was submitted in the tax proceedings. It nonetheless it can server as an offer of proof in terms of Mr. Hyatt counter version of the facts as argued by the State. (*See* HYATT RJN Exh. 78)

Mr. Hyatt therefor has been required to start anew on several occasions seeking rebuttal evidence to FTB's ever changing assertions and theories. Mr. Hyatt could not seek evidence on issues not yet presented by FTB. In this regard, Mr. Hyatt has and will present competent and overwhelming evidence that the delay and dilatory conduct of the State has caused evidence to be lost, or in some cases never timely gathered, as FTB was so tardy in raising new and additional issues throughout the 20 plus year process. As an offer of proof of some this lost evidence, Mr. Hyatt provides some specific examples of what he will be able show if given his day in court:

- Thousands of pages of Mahr Leonard licensing documents that were relevant to the sourcing assessments were discarded by Mahr Leonard before 2008 in the normal course of business;

- A crucial Wagon Trails Apartments renter's file, a primary basis of FTB's audit determination, was lost because FTB did not obtain this file and because FTB withheld information from Mr. Hyatt that such a file was available and could be obtained;

- FTB secretly audited Digital Nutronics Corporation (DNC) but did not seek critical bank records until long after the bank records were destroyed by DNC in the normal course of business;

- FTB auditor assumed responsibility for obtaining Mr. Hyatt's telephone records from the telephone companies and then decided not to obtain the telephone records, which are now no longer available;

- Gerald Traumueller, an attorney and bookkeeper who managed Mr. Hyatt's affairs for decades (since 1972), passed away in 2003 before FTB presented its arguments relating to his involvement;

- Dr. John Salzer, a scientist who was deeply involved in Mr. Hyatt's technologies and licensing activities for decades (since 1969), passed away in 1998 before FTB made its sourcing assessments;

- Rob Hammersma, Director of Philips Consumer Electronics Division, Mr. Hyatt's mentor within Philips, the executive who facilitated the Philips Licensing Program and who was the most knowledgeable of the Philips executives regarding the basis of the Philips Licensing Program and the related sourcing assessments, passed away in 1998 before FTB made its sourcing assessments;

- Dr. Else Kooi, Mr. Hyatt's friend and associate, integrated circuit expert, Philips scientist, and holder of a World famous patent, passed away in 2001 before FTB made its sourcing assessments;

- Jim Keeline, Mr. Hyatt's friend and the father of Mr. Hyatt's long time girl friend, passed away in 1996 before FTB presented its arguments relating to his involvement;

- Teresa Fischer, Mr. Hyatt's neighbor in his former California neighborhood, years after she had passed away in 2011, was alleged to have made statements about Mr. Hyatt but she was not available to give testimony to rebut these delayed FTB statements;

- Lesley Pusch, Mr. Hyatt's backhoe owner and construction contractor in Las Vegas, passed away in 2009 before FTB presented its arguments relating to his involvement.

In short, an evidentiary hearing is necessary to fully present the issue of delay and the prejudice it has caused Mr. Hyatt.

## V. Conclusion.

Where, as here, facts necessary to resolve the issue of jurisdiction are disputed and intertwined with the ultimate issue in the case, the jurisdictional dispute must be deferred until resolution of the disputed facts by the trial court. The factual issue of who is responsible for the over 20 year delay in the administrative process must be resolved by the district court, not this Court. Regardless therefore whether this Court grants or denies the SBE's request for

judicial notice, the Court should remand the case back to the district court for a determination of the factual issues.

      If the Court does attempt to assign fault for the delay in the administrative proceedings, the SBE has significant culpability. It controlled the SBE Appeals. It Should have set a firm timeline on its own accord, and should have held to its early determination in 2012 that the briefings were completed. Instead it allowed FTB to continue its investigations and briefings for five additional years. This delay is the fault of the SBE.

Respectfully submitted this 7th day of April 2017.

PERKINS COIE LLP

By: *s/ Donald J. Kula*
    Donald J. Kula
    1888 Century Park E., Suite 1700
    Los Angeles, CA  90067-1721
    Telephone:  310.788.9900
    Facsimile:  310.788.3399

    Erwin Chemerinsky, Esq.
    EChemerinsky@law.uci.edu
    UC IRVINE SCHOOL OF LAW
    401 E. Peltason Drive, Suite 1000
    Irvine, CA  92697-8000
    Telephone:  949.824.8814
    Facsimile:  949.824.7336

    Malcolm Segal, Bar No. 075481
    MSegal@segal-pc.com
    SEGAL & ASSOCIATES, PC
    400 Capitol Mall, Suite 2550
    Sacramento, CA  95814
    Telephone:  916.441.0886
    Facsimile:  916.475.1231

    Attorneys for Appellant
    Gilbert P. Hyatt

# CERTIFICATE OF SERVICE

U.S. Court of Appeals Docket Number(s):  15-15296

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 7, 2017.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature:　　　　*s/ Yolanda Mendez*