**No. 15-15296**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

GILBERT P. HYATT,

*Plaintiff-Appellant,*

v.

BETTY T. YEE, in her official capacity as California Franchise Tax
Board member and California State Board of Equalization member
DIANE L. HARKEY, in her official capacity as California State
Board of Equalization member; JEROME E. HORTON, in his
official capacity as California State Board of Equalization member;
MICHAEL COHEN, in his official capacity as California Franchise
Tax Board member; GEORGE RUNNER, in his official capacity as
California State Board of Equalization member; FIONA MA, in her
official capacity as California State Board of Equalization member
and California Franchise Tax Board member,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of California
Case No. 2:14-cv-00849-GEB-DAD (Hon. Garland E. Burrell, Jr.)

APPELLANT
GILBERT P. HYATT'S
PETITION FOR PANEL REHEARING

Donald J. Kula
Oliver M. Gold
Dkula@perkinscoie.com
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA  90067-1721
Telephone:  310.788.9900
Facsimile:  310.788.3399

Erwin Chemerinsky, Esq.
UNIVERSITY OF CALIFORNIA,
BERKELEY SCHOOL OF LAW
Echemerinsky@law.berkeley.edu
Berkeley, CA 94720-7200
Telephone: 510.642.6483
Facsimile: 510-642-9893

Malcolm Segal
MSegal@segal-pc.com
SEGAL & ASSOCIATES, PC
400 Capitol Mall, Suite 2550
Sacramento, CA  95814
Telephone:  916.441.0886
Facsimile:  916.475.1231

Attorneys for Appellant Gilbert P. Hyatt

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................... 1

II.   A PANEL REHEARING IS APPROPRIATE WHERE THE COURT
      OVERLOOKED OR MISAPPREHENDED A MATERIAL POINT
      OF LAW OR FACT ...................................................................... 3

III.  THE COURT'S OPINION OVERLOOKED CALIFORNIA LAW
      THAT PROVIDES A REFUND ACTION WILL BE SUMMARILY
      DISMISSED IF FILED BEFORE ADMINISTRATIVE REMEDIES
      ARE EXHAUSTED, WHICH IN THIS CASE IS HIGHLY
      UNCERTAIN .................................................................................. 4

IV.   THE COURT'S OPINION OVERLOOKED SUPREME COURT
      AND NINTH CIRCUIT PRECEDENT THAT REQUIRES THE
      STATE-COURT REMEDY BE "PLAIN,"I.E., CERTAIN, FOR THE
      TIA TO BAR JURISDICTION..................................................... 8

V.    CONCLUSION............................................................................. 10

# TABLE OF AUTHORITIES

**Page**

## CASES

*Armster v. United States Dist. Ct.*,
  806 F.2d 1347 (9th Cir. 1986) ........................................................ 4

*Atari, Inc. v. State Bd. of Equalization*,
  170 Cal. App. 3d 665 (1985) .......................................................... 7

*Barnes v. State Bd. of Equalization*,
  118 Cal. App. 3d 994 (1981) ................................................... passim

*California v. Grace Brethren Church*,
  457 U.S. 393 (1982) ........................................................................ 8

*Direct Marketing Ass'n, Inc. v. Bennett*,
  916 F.2d 1451 (9th Cir. 1990) ........................................................ 9

*Lowe v. Washoe County*,
  627 F.3d 1151 (9th Cir. 2010) ........................................................ 9

*National Labor Relations Board v. Brown & Root, Inc.*,
  206 F.2d 73 (8th Cir. 1953) ............................................................ 3

*Rosewell v. LaSalle National Bank*,
  450 U.S. 503 (1981) ........................................................................ 8

*Wertin v. Franchise Tax Bd.*,
  68 Cal. App. 4th 961 (1998) ........................................................... 7

## STATUTES

Cal. Rev. & Tax. Code § 19322 ........................................................... 7

Cal. Rev. & Tax Code § 19382 ............................................................ 1

Cal. Rev. & Tax Code § 19385 ........................................................ 2, 6

Tax Injunction Act ................................................................... passim

## TABLE OF AUTHORITIES
### (continued)

**Page**

**RULES**

FRAP 40.................................................................................................. 1, 3

FRAP 40(a)(2)............................................................................................. 4

## I.     Introduction

The Court's opinion (Dkt. 74-1) overlooked two material points of law in concluding that Mr. Hyatt has "a plain, speedy and efficient remedy" in state court for his constitutional claims if he now pays the tax and seeks a refund under California's pay-then-protest process.[1]  Appellant Gilbert P. Hyatt therefore petitions for a panel rehearing under FRAP 40.[2]

First, the Court's opinion overlooked California law that holds a refund action will be summarily dismissed if a taxpayer fails to exhaust their administrative remedies before filing a refund action.  Specifically, the Court's opinion did not address, distinguish or even cite *Barnes v. State Bd. of Equalization,* 118 Cal. App. 3d 994 (1981), which dismissed a taxpayer's refund action ─ including constitutional claims ─ on the basis that the taxpayer failed to exhaust his administrative remedies during the state's administrative review of the refund request.  In *Barnes*, the taxpayer paid the tax, sought a refund, received a rejection notice on his refund claim, and then promptly filed a refund action.  The

---

[1] The Court's Opinion referred to California's refund process under Section 19382 of the California Revenue & Tax Code as the "pay-then-protest process."  Mr. Hyatt will use the same terminology in this petition.

[2] A copy of the Court's opinion (Dkt. 74-1) is attached to this petition.

taxpayer was nonetheless thrown out of state court for failing to exhaust his administrative remedies.

Mr. Hyatt faces a similar fate as the taxpayer in *Barnes* if Mr. Hyatt dares to file a refund action under Section 19385[3] before the state completes an administrative review of the refund request.  That is, Mr. Hyatt will be (and is at least likely to be) thrown out of court if he now pays the tax, seeks a refund, waits six months and then files a refund action, but does not wait for the state to complete its administrative review of the refund request.  And if Mr. Hyatt were to exhaust his administrative remedies in the pay-then-protest process,  it is highly uncertain how long the state would take to complete its administrative review. t.  If past experience is any clue, the prospect of years-long delay is great.  After all, the state has taken 24 years in the current administrative process.  Under *Barnes*, therefore, it is highly uncertain, even doubtful, that Mr. Hyatt can be in state court to have his constitutional claims heard within six months of paying the tax and seeking a refund.

Second, the Court's opinion also overlooked well-established Supreme Court and Ninth Circuit precedent regarding the meaning of "plain" under the Tax

---

[3] All references to "Section" are to the California Revenue & Tax Code unless otherwise indicated.

Injunction Act (the "TIA"). This precedent requires that the state-court remedy be *certain* in order to be "plain" within the meaning of the TIA. The Court's opinion, however, finds only that Mr. Hyatt "will likely" or "may have" a remedy for his constitutional claims in state court. The Court's opinion therefore overlooked and misapplied the "plain" prong of the TIA as there is no certainty that Mr. Hyatt's constitutional claims will be heard in state court if he now pays the tax and seeks a refund.

Because the Court's opinion overlooked these two material points of law, Mr. Hyatt respectfully requests that the Court grant this petition for a panel rehearing. Upon rehearing the appeal, and applying these two points of law, the Court should hold that Mr. Hyatt does not have a plain, speedy and efficient remedy under California law as required under the TIA, and the district court therefore has jurisdiction over Mr. Hyatt's claims.

## II. A panel rehearing is appropriate where the Court overlooked or misapprehended a material point of law or fact.

The purpose for a petition for rehearing under FRAP 40 is to direct the Court to a material matter of law or fact that it has overlooked or misapprehended in its decision, and which, had it been given consideration, probably would have caused the Court to decide the case differently. *National Labor Relations Board v. Brown & Root, Inc.*, 206 F.2d 73 (8th Cir. 1953). A petition for rehearing "must

state with particularity each point of law or fact that the petitioner believes the court has overlooked or misapprehended and must argue in support of the petition." FRAP 40(a)(2). A petition for rehearing is "to ensure that the panel properly considered all relevant information in rendering its decision." *Armster v. United States Dist. Ct.*, 806 F.2d 1347, 1356 (9th Cir. 1986).

**III.    The Court's opinion overlooked California law that provides a refund action will be summarily dismissed if filed before administrative remedies are exhausted, which in this case is highly uncertain.**

The Court's opinion concludes that Mr. Hyatt can present his constitutional claims in state court via a refund action within six months of paying the outstanding assessment and requesting a refund. The Court therefore concludes that if Mr. Hyatt pursues the pay-then-protest process he has the requisite state-court plain, speedy and efficient remedy required by the TIA. (Opinion, at 6-7, 18-19, citing Cal. Rev. & Tax Code §§ 19382, 19385.)

Nowhere in the Court's opinion does it discuss, acknowledge or try to distinguish the requirement under California law that a taxpayer exhaust administrative remedies before filing a refund action. Failing to do so may cause the taxpayer to suffer the draconian result of a summary dismissal of their refund action. In *Barnes, supra*, the taxpayer timely filed a refund action in California Superior Court after his refund claim was denied by the State Board of

Equalization (the "SBE").[4]  The SBE moved for an early summary judgment on the refund action arguing that the taxpayer had not exhausted his administrative remedies in regard to the refund claim.  Specifically, the SBE asserted that during the administrative review of the refund claim the taxpayer had not produced documentation requested by the SBE, and purportedly needed to decide the refund claim.  The SBE argued, and the court agreed, that the taxpayer therefore failed to exhaust his administrative remedies.  *Id.*, 118 Cal. App. 3d, at 997-1000.

While the taxpayer in *Barnes* may have been unusually uncooperative, the court's holding there was not limited to the unique facts of the case.  In dismissing the taxpayer's refund action, *Barnes* recited general principles, and followed well-established California precedent holding that failure to exhaust administrative remedies is a jurisdictional defect that bars court action.  *Id.*, at 1001 ("[B]oth law *and fact* must be first presented to the board for adjudication before resort to the courts so that the board may be afforded the opportunity to rectify any mistake in tax collection."). As a result, if a taxpayer files a refund action within the time allowed by statute but before the state finishes collecting and reviewing whatever

---

[4] *Barnes* involved sales tax, not personal income tax.  Sales tax falls under the jurisdiction of the SBE, not the FTB.

information it deems relevant, the tax payer invites a dismissal on exhaustion grounds.

The Court's opinion here did not consider *Barnes'* exhaustion requirement.[5] Instead, the Court assumes that, were Mr. Hyatt to follow California's pay-then-protest process, he would have a clear path to have his claims heard within six months of paying the tax and requesting a refund. In particular, the Court's opinion cites to Section 19385 as allowing Mr. Hyatt to file a refund action six months after making a refund request even if the Franchise Tax Board (the "FTB") has not ruled on his refund claim. (Opinion, at 19.) But Mr. Hyatt would do so at his peril under *Barnes*.

Nor is there any reason to assume that the state would complete a review of a refund claim within anything close to six months. The state would surely respond to the claim with a fresh series of discovery demands, which would entail extensive time for response and dispute. Given the state's decades-long delay in the protest-then pay process, a six-month resolution of a refund claim would be a pipe dream. As evidenced by the 24 year administrative process experienced by Mr. Hyatt in pursuing the protest-then-pay process, it is uncertain how long the administrative review would take if Mr. Hyatt now pursues the pay-then-protest

---

[5] Mr. Hyatt addressed this issue on pages 39-40 of his Opening Brief.

process.  In this regard, before filing a state-court suit for a tax refund, a taxpayer must present a claim for refund in writing to the FTB.  Cal. Rev. & Tax. Code § 19322; *see Wertin v. Franchise Tax Bd.*, 68 Cal. App. 4th 961, 977 (1998) ("the purpose of the statute is to put the board on notice of a claim").  The FTB then has an opportunity to correct any mistakes.  *See Atari, Inc. v. State Bd. of Equalization*, 170 Cal. App. 3d 665, 673 (1985).  It has taken the FTB over two decades to complete the administrative process at issue in this case.

In sum,  the court overlooked *Barnes* and California law that requires the taxpayer to exhaust their administrative remedies before filing a refund action.  In this context, there is no reason to believe the FTB would proceed quickly and efficiently with a whole new administrative review if Mr. Hyatt pays the assessment and files a refund claim.  It is therefore highly uncertain, and certainly not "plain" within the meaning of the TIA, that Mr. Hyatt has a remedy in which he can have his constitutional claims heard in state court within six months, or any reasonable time thereafter, even if he now pays the assessment and pursues the pay-then-protest process.

**IV. The Court's opinion overlooked Supreme Court and Ninth Circuit precedent that requires the state-court remedy be "plain,"*i.e.,* certain, for the TIA to bar jurisdiction.**

The Court overlooked well-established case law on the meaning of the term "plain" under the TIA.[6] The Supreme Court holds that "plain means 'clear' or 'manifest' and that 'uncertainty' concerning a State's remedy may make it less 'plain' under 28 U.S.C § 1341 [the TIA]." *Rosewell v. LaSalle National Bank,* 450 U.S. 503, 516-17 (1981) (citing prior Supreme Court cases that "without making a direct connection to the word 'plain,' have held that 'uncertainty' surrounding a state-court remedy lifts the bar to federal-court jurisdiction"); *see also California v. Grace Brethren Church*, 457 U.S. 393, 415 (1982) (TIA is no bar to federal relief "if the taxpayer's opportunity to raise his constitutional claims in the state proceedings is uncertain").

The Ninth Circuit has similarly addressed the meaning of "plain" under the TIA. "For a remedy to be 'plain,' the procedures available in state court must be certain. A state remedy 'is not "plain" within the meaning of the [Act] . . . 'if there

---

[6] The Court's opinion cites case law in which in the context of those cases California's refund process was held to provide a plain, speedy, and efficient remedy that barred federal court jurisdiction under the TIA. (Opinion, at 14.) But there is no discussion in the Court's opinion of the meaning of the term "plain" and its application in this case. Mr. Hyatt addressed the meaning of "plain" under the TIA on pages 18-19 of his Opening Brief.

is uncertainty regarding its availability or *effect*.'"" *Lowe v. Washoe County*, 627

F.3d 1151, 1156 (9th Cir. 2010) (citation omitted) (emphasis added); *Direct*

*Marketing Ass'n, Inc. v. Bennett*, 916 F.2d 1451, 1457 (9th Cir. 1990)

    In contrast, the Court's opinion here holds that:

> "California state courts *will likely* allow Hyatt to add these
> constitutional claims to a state court suit challenging the tax."

> "The state court *may find* that these are not the sorts of claims that a
> taxpayer must include in his initial protest or refund . . ." and

> "[The California courts] *may find* that the Tax Board was 'on notice'
> of these claims."

(Opinion, at 22,) (emphasis added.)

    That a party "may have" a remedy or that a court "will likely" allow a claim

is not enough to establish certainty. Certain is defined by Merriam-Webster as

meaning "fixed, settled," "inevitable."[7] Even a more-likely-than-not showing

would fail this definition. Here, the Court did not and could not find it inevitable

that Mr. Hyatt constitutional claims can be heard in a refund action if he now pays

the tax and seeks a refund. For this reason as well, a panel rehearing is warranted.

---

[7] https://www.merriam-webster.com/dictionary/certain.

**V.     Conclusion**

A panel rehearing is therefore warranted both because the Court overlooked California precedent requiring that a taxpayer exhaust their administrative remedies before filing a refund action, and because the Court overlooked binding Supreme Court and Ninth Circuit precedent requiring a state court remedy to be certain to be effective under the TIA.  Upon consideration of that precedent, the Court should hold that the pay-then-protest process does not provide Mr. Hyatt a plain, speedy, and efficient state-court remedy for his constitutional claims, and that the TIA therefore does not oust the district court of jurisdiction over those claims.  Instead, this matter should be remanded to the district court for resolution of those claims.

Dated: October 10, 2017  PERKINS COIE LLP

By: *s/ Donald J. Kula*

Donald J. Kula
1888 Century Park E., Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Erwin Chemerinsky, Esq.
UNIVERSITY OF CALIFORNIA,
BERKELEY SCHOOL OF LAW
Echemerinsky@law.berkeley.edu
Berkeley, CA 94720-7200
Telephone: 510.642.6483
Facsimile: 510-642-9893

Malcolm Segal
MSegal@segal-pc.com
SEGAL & ASSOCIATES, PC
400 Capitol Mall, Suite 2550
Sacramento, CA 95814
Telephone: 916.441.0886
Facsimile: 916.475.1231

Attorneys for Appellant
Gilbert P. Hyatt

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GILBERT P. HYATT,
                    *Plaintiff-Appellant*,

v.

BETTY T. YEE, in her official
capacity as California Franchise Tax
Board member and California State
Board of Equalization member;
DIANE L. HARKEY, in her official
capacity as California State Board of
Equalization member; JEROME E.
HORTON, in his official capacity as
California Franchise Tax Board
member; MICHAEL COHEN, in his
official capacity as California
Franchise Tax Board member;
GEORGE RUNNER, in his official
capacity as California State Board of
Equalization member; FIONA MA, in
her official capacity as California
State Board of Equalization member
and Franchise Tax Board member,
                    *Defendants-Appellees*.

No. 15-15296

D.C. No.
2:14-cv-00849-
GEB-DAD

OPINION

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, Jr., District Judge, Presiding

Argued and Submitted February 17, 2017
San Francisco, California

Filed September 26, 2017

Before:  William A. Fletcher, Julio M. Fuentes,[*] and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Fuentes

---

**SUMMARY**[**]

---

**Tax / Civil Rights**

The panel affirmed the district court's dismissal of plaintiff's action, brought under 42 U.S.C. § 1983, arising from his contested administrative proceedings of a California Franchise Tax Board ruling that he owed close to $7.4 million in taxes, penalties and interest.

Plaintiff's initial tax deficiency, compounding daily with 3% interest grew to over $55 million at the time he filed his complaint in this case.  The taxes were assessed on income plaintiff earned during the 1991 and 1992 tax years, during which plaintiff alleges he had moved from California to Nevada.  Plaintiff alleged that he had been unconstitutionally

---

[*] The Honorable Julio M. Fuentes, United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

targeted and that so much time had passed in the administrative review of his tax claims that he could no longer receive due process. He asked the district court to enjoin California from collecting this tax bill.

The panel agreed with the district court that the Tax Injunction Act barred this suit because plaintiff had a plain, speedy and efficient remedy for his claims. The panel noted that a taxpayer seeking to contest his tax bill solely on the basis that he was not a resident of California during the disputed period has two options. He could either pay now and litigate later, or bring his claim through a protest-then-pay process, which allows him to delay paying the disputed tax. A taxpayer who pays now and litigates later can bring his claims to state court within six months, which guarantees an expeditious route to the state courts on the taxpayer's liability. A taxpayer who initially challenges a residency-based income tax assessment through the protest-then-pay administrative process may elect to use the pay-then-protest process at any point by paying the disputed tax, thus guaranteeing a route to state court within six months.

The panel held that even though plaintiff in this case chose to challenge his tax assessment through the protest-then-pay process, he still had a plain, speedy, and efficient remedy available because he could pursue the pay-then-protest process. The panel rejected plaintiff's claim that requiring him to pay his accrued tax bill and switch remedies in order to pursue his constitutional claims would be a bait and switch in violation of his due process rights. The panel further rejected plaintiff's claim that he does not have access to a speedy remedy because the Appeals Board has not completed his administrative appeal, pending since 2008. The panel held that the pay-then-protest remedy now provides plaintiff with a speedy remedy, even if the protest-

then-pay remedy has not. Finally, the panel rejected plaintiff's claims that he would not be able to bring his constitutional claims in a pay-then-protest proceeding.

---

## COUNSEL

Erwin Chemerinsky (argued), UC Irvine School of Law, Irvine, California; Donald J. Kula and Oliver M. Gold, Perkins Coie LLP, Los Angeles, California; Malcolm Segal, Segal & Associates PC, Sacramento, California; for Plaintiff-Appellant.

Michael von Loewenfeldt (argued), Brady R. Dewar, and James M. Wagstaffe, Kerr Wagstaffe LLP, San Francisco, California; Seth P. Waxman (argued), Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C.; Debbie Leonard, James Bradshaw, and Adam Hosmer-Henner, McDonald Carano Wilson LLP, Reno, Nevada; Cynthia J. Larsen, Katie DeWitt, and David W. Spencer, Orrick Herrington & Sutcliffe LLP, Sacramento, California; for Defendants-Appellees.

---

## OPINION

FUENTES, Senior Circuit Judge:

For over 22 years, Plaintiff Gilbert Hyatt has contested in administrative proceedings a California Franchise Tax Board ruling that he owed close to $7.4 million in taxes, penalties, and interest. This initial deficiency, compounding daily with 3% interest, grew to over $55 million at the time he filed his complaint in this case. The taxes were assessed on income he earned during the 1991 and 1992 tax years,

during which Hyatt alleges he had moved from California to Nevada. Finally, while his administrative proceedings were still pending, Hyatt filed this suit in the district court, claiming that he had been unconstitutionally targeted and that so much time had passed in the administrative review of his tax claims that he can no longer receive due process. He asked the district court to enjoin California from collecting this tax bill.

Because we agree with the district court that the Tax Injunction Act bars it from "enjoin[ing], suspend[ing] or restrain[ing] the assessment, levy or collection of [this] tax under State law where," as here, "a plain, speedy and efficient remedy may be had" in the state court, we affirm the judgment of the District Court.

## I.  BACKGROUND

### A.  California's Statutory Tax Framework

Under California law, a taxpayer seeking to "prevent or enjoin the assessment or collection of" a California residency-based income tax may not file suit in state court without first exhausting the administrative remedies set forth in the California Revenue and Taxation Code.[1] In general, a California taxpayer must "pay now, litigate later."[2] However, a taxpayer seeking to contest his tax bill solely on the basis that he was not a resident of California during the disputed period has two options. The taxpayer may either pay now and litigate later, or may bring his claim through a

---

[1] Cal. Rev. & Tax. Code § 19381.

[2] *Sahadi v. Scheaffer*, 155 Cal. App. 4th 704, 734 (2007) ("[A] taxpayer may not obtain judicial review of the validity of a tax which is due but has not been paid.").

protest-then-pay process, which allows him to delay paying the disputed tax. There is a significant difference: a taxpayer who pays now and litigates later can bring his claims to state court within six months, which guarantees an expeditious route to the state courts on the taxpayer's liability. A taxpayer who disputes his residency through the protest-then-pay process, however, must wait until the administrative agencies render their decisions before filing a challenge in state court.

### 1. Postdeprivation "Pay-Then-Protest" Process

The "pay-then-protest" process[3] requires the challenging taxpayer to make "payment of the tax," after which the taxpayer can file a refund claim with the Franchise Tax Board (the "Tax Board").[4] If the Tax Board "fails to mail notice of action on [the] . . . refund claim *within six months* after the claim [is] filed, the taxpayer may . . . bring an action [in state court] against the [Tax Board] . . . on the grounds set forth in the claim for the recovery of . . . [the] overpayment."[5] If the Tax Board acts on the challenger's refund claim and denies it, a taxpayer "claiming that the tax computed and assessed is void . . . may bring an action [in state court], upon the grounds set forth in that claim for refund . . . for the recovery of the . . . amount paid" plus interest.[6] These grounds need not be included in the "four

---

[3] This proceeding is largely governed by California Revenue & Taxation Code § 19382.

[4] Cal. Rev. & Tax. Code § 19382.

[5] Cal. Rev. & Tax. Code § 19385 (emphasis added).

[6] Cal. Rev. & Tax. Code § 19382.

corners of the initial claim," but the Tax Board must have "actual notice" of them.[7]

## 2. Predeprivation "Protest-then-Pay" Process

The plaintiff in this case chose to challenge his tax assessment through the protest-then-pay process. A taxpayer who challenges an assessment through this process[8] must "file with the [Tax Board] . . . a written protest against the proposed deficiency assessment, specifying in the protest the grounds upon which it is based."[9] If the protest is filed, the taxpayer may request that the Tax Board "reconsider the assessment of the deficiency."[10] If the protest is denied, the taxpayer may "appeal[ ] in writing from the action of the [Tax Board] ... to [the California State Board of Equalization ("Appeals Board")]."[11] "The [Appeals Board] . . . shall hear and determine the appeal," and an unsuccessful taxpayer

---

[7] *J.H. McKnight Ranch, Inc. v. Franchise Tax Bd.*, 110 Cal. App. 4th 978, 987 (2003) ("We see no basis for construing the statutes setting out the administrative exhaustion requirement so as to ignore actual notice the Board may have had from sources other than the four corners of the initial claim. The Supreme Court has at least implicitly agreed with this conclusion" (citing *Wallace Berrie & Co. v. State Bd. of Equalization*, 707 P.2d 204 (1985)).

[8] This proceeding is largely governed by California Revenue & Taxation Code § 19381.

[9] Cal. Rev. & Tax. Code § 19041.

[10] Cal. Rev. & Tax. Code § 19044.

[11] Cal. Rev. & Tax. Code § 19045.

may "file[ ] a petition for rehearing."[12] After rehearing before the Appeals Board, a taxpayer may seek review in a California state court.[13]

A taxpayer who initially challenges a residency-based income tax assessment through the protest-then-pay administrative process may elect to use the pay-then-protest process at any point by paying the disputed tax, thus guaranteeing a route to state court within six months.[14]

## B.  Factual History[15]

Hyatt alleges that in 1991, he moved from California to Nevada. Two years later, the Tax Board commenced an audit to determine whether Hyatt owed additional California state income taxes for the 1991 tax year. The Tax Board initiated a second audit in 1996 regarding the 1992 tax year. Ultimately, the Tax Board determined that Hyatt owed

---

[12] Cal. Rev. & Tax. Code §§ 19047–48.

[13] Cal. Rev. & Tax. Code § 19381.

[14] Cal. Rev. & Tax. Code § 19335.

[15] Defendants brought both a facial and a factual challenge to jurisdiction, but the District Court decided only the facial challenge. "A 'facial' attack asserts that a complaint's allegations are themselves insufficient to invoke jurisdiction." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 n.3 (9th Cir. 2014). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). However, "a court may take judicial notice of matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (internal quotations and citations omitted).

$1.8 million for the 1991 tax year and $5.6 million for the 1992 tax year.

Without first paying his taxes, Hyatt challenged his tax bill on the grounds that he did not owe these taxes because he was a resident of Nevada during 1991 and 1992. His Tax Board protest lasted 11 years. Then, in 2008, Hyatt filed an administrative appeal of the Tax Board's determinations before the Appeals Board. That appeal has yet to be decided. Hyatt alleges that "the delays in completing the administrative process fall squarely and primarily at the feet of the [Tax Board]."

In April 2014, Hyatt brought this action in the district court against the members of the Tax Board and Appeals Board under 42 U.S.C. § 1983, seeking to enjoin the pending administrative tax review process. At the time he filed suit, his tax bill had ballooned to over $55 million. In his Complaint, Hyatt alleges violations of the due process and equal protection clauses of the Fourteenth Amendment, and alleges that he "can no longer receive a full and fair adjudication on the merits due to the extreme passage of time and resulting loss of material evidence." He claims that during the long delay in the administrative process, "material witnesses have passed away, memories of witnesses have faded, and documents relevant and important to Hyatt are no longer available." Because of these events, he claims that he cannot properly challenge the Tax Board's allegations concerning his residency. Hyatt further states that during this administrative process, the Tax Board was out to "get" him and that the Tax Board singled him out for reasons not rationally related to any legitimate state interest.

## C. The Tax Injunction Act

The Tax Injunction Act provides that: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."[16] This provision "restricts the power of federal district courts to prevent collection or enforcement of state taxes."[17] The Supreme Court has "interpreted and applied the Tax Injunction Act as a 'jurisdictional rule' and a 'broad jurisdictional barrier.'"[18]

The Tax Injunction Act was passed as "only one of several statutes reflecting congressional hostility to federal injunctions issued against state officials in the aftermath of [the Supreme] Court's decision in *Ex parte Young*."[19] It "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations."[20] It prevents federal courts from intruding into state tax collection, "an area which deserves

---

[16] 28 U.S.C. § 1341.

[17] Arkansas v. Farm Credit Servs. of Cent. Arkansas, 520 U.S. 821, 823 (1997).

[18] Id. at 825 (quoting Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation, 425 U.S. 463, 470 (1976)). See also Franchise Tax Bd. of California v. Alcan Aluminium Ltd., 493 U.S. 331, 338 (1990) (The Act "limit[s] drastically federal district court jurisdiction.").

[19] *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522 n.28 (1981).

[20] *Tully v. Griffin, Inc.*, 429 U.S. 68, 73 (1976).

the utmost comity to state law and procedure."[21] This is because "[t]he power to tax is basic to the power of the State to exist."[22] Thus, "[g]iven the systemic importance of the federal balance, and given the basic principle that statutory language is to be enforced according to its terms, federal courts must guard against interpretations of the Tax Injunction Act which might defeat its purpose and text."[23]

Under the Tax Injunction Act, a litigant cannot challenge the administration of state tax law in federal court if the state court provides "a plain, speedy and efficient remedy" for the taxpayer's claims. This "narrow exception"[24] requires only that a state court remedy "meet 'certain minimal procedural

---

[21] *Jerron West, Inc. v. State of Cal., State Bd. of Equalization*, 129 F.3d 1334, 1338 (9th Cir. 1997) (citing *Rosewell*, 450 U.S. at 522 (stating that the Act "was first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes"); *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 301 (1943) (stating that the Act "was predicated upon the desirability of freeing, from interference by the federal courts, state procedures which authorize litigation challenging a tax only after the tax has been paid"); *Dillon v. State of Mont.*, 634 F.2d 463, 466 (9th Cir.1980) (concluding that the Act "is meant to be a broad jurisdictional impediment to federal court interference with the administration of state tax systems")).

[22] *Arkansas*, 520 U.S. at 826 ("The federal balance is well served when the several States define and elaborate their own laws through their own courts and administrative processes and without undue interference from the Federal Judiciary.").

[23] *Id.* at 827.

[24] Redding Ford v. Cal. State Bd. of Equalization, 722 F.2d 496, 497 (9th Cir. 1983).

criteria.'"[25] Specifically, a plain, speedy, and efficient remedy must provide a taxpayer with "a full hearing and judicial determination at which [he] may raise any and all constitutional objections to the tax."[26]

For a remedy to be "plain," "the procedures available in state court must be certain."[27] A remedy is "efficient" "unless it imposes an 'unusual hardship . . . requiring ineffectual activity or an unnecessary expenditure of time or energy.'"[28] A remedy is "speedy" "if it does not entail a significantly greater delay than a corresponding federal procedure."[29] To satisfy these requirements, a remedy "need not necessarily be the best remedy available or even equal to or better than the remedy which might be available in the federal courts."[30]

---

[25] *Lowe v. Washoe Cty.*, 627 F.3d 1151, 1155 (9th Cir. 2010) (quoting *Rosewell*, 450 U.S. at 512).

[26] *Rosewell*, 450 U.S. at 514.

[27] *May Trucking Co. v. Oregon Dep't of Transp.*, 388 F.3d 1261, 1270 (9th Cir. 2004) (citing *Direct Mktg. Ass'n, Inc. v. Bennett*, 916 F.2d 1451, 1453 (9th Cir.1990) (holding that a state remedy "is not plain within the meaning of the Tax Injunction Act . . . if there is uncertainty regarding its availability or effect" (internal quotation and citations omitted)).

[28] *Lowe*, 627 F.3d at 1156 (quoting *Rosewell*, 450 U.S. at 518).

[29] *US W., Inc. v. Nelson*, 146 F.3d 718, 725 (9th Cir. 1998) (interpreting the same language in a different statute).

[30] *Mandel v. Hutchinson*, 494 F.2d 364, 367 (9th Cir. 1974) (internal quotations and citations removed).

## II.  DISCUSSION

"A dismissal for lack of subject matter jurisdiction is a question of law reviewed de novo."[31]

Hyatt appeals the district court's decision that, because California's pay-then-protest process continued to provide a plain, speedy and efficient remedy for Plaintiff even though he had decided to pursue the protest-then-pay process, the Tax Injunction Act stripped the court of jurisdiction to hear this suit.

Hyatt's appeal raises three principal arguments for review:[32] (1) a plain, speedy and efficient remedy is not available because Hyatt cannot be required to pursue the pay-then-protest process per California Revenue & Taxation Code § 19382 to have his constitutional claims heard; (2) the protest-then-pay method has not offered Hyatt a speedy remedy and the pay-then-protest remedy will not, and (3) Hyatt does not have a plain remedy, because it is uncertain whether he could bring his constitutional claims as part of either process.[33]

---

[31] *Jerron*, 129 F.3d at 1337.

[32] Hyatt's brief raises additional bases of appeal, but they can be more succinctly framed in these three arguments.

[33] Defendants respond that even if this court finds that Hyatt's suit is not barred by the Tax Injunction Act, then (1) it is barred by the general principles of comity; (2) we should abstain pursuant to *Younger v. Harris*, 401 U.S. 37 (1971); or (3) we should affirm dismissal under Federal Rule of Civil Procedure 12(b)(6) because Hyatt fails to state a claim. We need not reach the first two bases, because the suit is barred

At the outset, we note that the U.S. Supreme Court and our court have held that, "[t]o the extent they are available, California's refund procedures constitute a plain, speedy, and efficient remedy."[34] Moreover, the U.S. Supreme Court has, on several occasions, approved of pay-then-protest remedies as plain, speedy, and efficient.[35] The issue then, is whether the unique circumstances of this case have prevented a plain, speedy, and efficient remedy from being available here.

---

by the Tax Injunction Act. We cannot reach the last basis, because we do not have jurisdiction to do so.

[34] *Alcan Aluminium*, 493 U.S. at 338. *See also Jerron*, 129 F.3d at 1339 ("The Supreme Court and this court have concluded that California's tax refund remedy is generally a 'plain, speedy and efficient' remedy under the Act."); *Mandel*, 494 F.2d at 367 ("We have held previously that the California refund procedure is a plain, speedy and efficient remedy."); *Aronoff v. Franchise Tax Bd. of State of Cal.*, 348 F.2d 9, 11 (9th Cir. 1965) ("It has consistently been held, without a single instance of deviation, that the refund action provided by California Personal Income Tax Law is a 'plain, speedy and efficient remedy' such as to invoke the restraints of 28 U.S.C. § 1341.").

[35] *See Reich v. Collins*, 513 U.S. 106, 111 (1994) ("Due process, we should add, also allows the State to maintain an exclusively postdeprivation regime"); *California v. Grace Brethren Church*, 457 U.S. 393, 416 (1982) ("Finally, we must keep in mind that at the time that it passed the Tax Injunction Act, Congress was well aware that refund procedures were the sole remedy in many States for unlawfully collected taxes.") (citing S.Rep.No.1035, 75th Cong., 1st Sess., 1 (1937); H.R.Rep.No.1503, 75th Cong., 1st Sess., 2 (1937)); *Rosewell*, 450 U.S. at 512, 523 (finding that a pay-then-protest process was a speedy, efficient, and plain remedy under the Tax Act and relying on legislative reports demonstrating congressional awareness that refunds were the exclusive remedy in many state tax systems).

## A. Does The Pay-Then-Protest Process Provide a Sufficient Remedy Where Hyatt Chose to Use the Protest-then-Pay Process?

Hyatt objects to the district court's determination that the pay-then-protest process can provide him with "a plain, speedy and efficient remedy" even though he has pursued a protest-then-pay process for the past 22 years. Citing *Reich v. Collins*,[36] and *Newsweek v. Florida Department of Revenue*,[37] Hyatt argues that requiring him to pay his large accrued tax bill and switch remedies in order to pursue his constitutional claims would be a "bait and switch" in violation of his due process rights.[38]

Hyatt's reliance on *Reich* and *Newsweek* is misplaced. In *Reich*, a taxpayer sued for a refund under Georgia's tax refund statute, but the Georgia courts held that the statutes were not applicable and thus the taxpayer had no way to seek a refund of his disputed tax.[39] The U.S. Supreme Court, however, held that, while a state is entitled to provide either a protest-then-pay remedy, or a pay-then-protest remedy, or both, it may not "reconfigure its scheme, unfairly, in *midcourse*—to 'bait and switch.'"[40] Specifically, the Court held that a state violated federal due process when it offered a statutory pay-then-protest remedy, and then removed that

---

[36] 513 U.S. 106 (1994) (per curiam).

[37] 522 U.S. 442 (1998).

[38] Hyatt's Br. at 29.

[39] 513 U.S. at 108–09.

[40] *Id*. at 110–11 (emphasis added).

remedy after a taxpayer had paid his disputed taxes, so that he no longer had *any* means to challenge his tax bill.[41] In *Newsweek*, where the magazine Newsweek was given no opportunity to seek a refund for a state tax it had already paid that was later found invalid, the Court reiterated this holding.[42]

In this case, Hyatt had, and still has, a plain, speedy, and efficient remedy available: he can pursue the pay-then-protest process. Unlike in *Reich* and *Newsweek*, the state did not "bait and switch" Hyatt.[43] Hyatt chose to pursue the protest-then-pay process knowing that it only permitted him to challenge his residency in California during 1991 and 1992. Hyatt now seeks to add additional claims nullifying the tax, but he would have to pay his outstanding tax bill to do so. Of course, if Hyatt pursues this path and is successful, he will be refunded the entire amount of his tax bill, including the taxes that have accrued during the period he has pursued the protest-then-pay process.

---

[41] *Id.*

[42] 522 U.S. at 444–45 ("While Florida may be free to require taxpayers to litigate first and pay later, due process prevents it from applying this requirement to taxpayers, like Newsweek, who reasonably relied on the apparent availability of a postpayment refund when paying the tax. Newsweek is entitled to a clear and certain remedy and thus it can use the refund procedures to adjudicate the merits of its claim.").

[43] *See also Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1242 (11th Cir. 1991) (rejecting "literal and technical attempts" to get around the Tax Act in a way that "would clearly conflict with the principle underlying the Tax Injunction Act that the federal courts should generally avoid interfering with the sensitive and peculiarly local concerns surrounding state taxation schemes.").

Hyatt further argues that he cannot be forced to use the pay-then-protest remedy to pursue his constitutional claims, because he would need to forego his statutory right to, if successful, recover the attorney's fees that he has spent challenging his tax bill already.[44] It is not clear that Hyatt would, in fact, be forced to forgo his attorney's fees, but even if Hyatt must abandon some of his claims to attorney's fees by pursuing the pay-then-protest process, this does not mean that the state has deprived him of a plain, speedy, and efficient remedy.[45]

## B.  Does Hyatt Have A Speedy Remedy?

Hyatt notes that the Appeals Board has not completed his administrative appeal, pending since 2008, and that, as of the filing of this appeal, briefing before the Appeals Board was not completed and no hearing date was set.[46] Hyatt alleges in his complaint that Defendants are responsible for this delay. Thus, Hyatt argues, he does not have access to a speedy remedy, and federal jurisdiction must lie.

---

[44] Hyatt's Br. at 29 (citing Cal. Rev. & Tax. Code § 19717 ("The prevailing party may be awarded a judgment for reasonable litigation costs incurred, in the case of any civil proceeding brought by or against the State of California in a court of record of this state in connection with the determination, collection, or refund of any tax, interest, or penalty under this part.")).

[45] *Cf. Rosewell*, 450 U.S. at 517 (holding the same with regard to payment of interest and stating that "There is no question that under the Illinois procedure, the court will hear and decide any federal claim. Paying interest or eliminating delay would not make the remedy any more 'plain.'").

[46] Hyatt's Br. at 24.

It would certainly be troubling if the administrative protest-then-pay process had been delayed for so long due to the fault of Defendants.[47] However, we need not decide whether Hyatt's protest-then-pay process has been speedy to date, and thus we need not consider whether Hyatt or Defendants caused this significant delay.[48] Even if the protest-then-pay process has not provided Hyatt with a speedy remedy, at any time during this process, Hyatt could, and Hyatt still can, get to state court *within six months* if he brings an action through the pay-then-protest process and the Appeals Board does not render a final determination sooner. The California Tax Code provides that,

---

[47] *See Long Island Lighting Co. v. Town of Brookhaven*, 889 F.2d 428, 433 (2d Cir. 1989) ("Slightly more troublesome is [the] claim that the . . . proceedings, the earliest of which have lingered over ten years in pretrial proceedings, are simply not speedy . . . . [W]e have some concern over any proceeding that takes over ten years to come to trial . . . .").

[48] After argument in this case, we issued an order inviting "[t]he state parties . . . to move for judicial notice of documents that may shed light on the administrative and judicial proceedings that have taken place, and the possible reasons for delay, since the time Plaintiff-Appellant Hyatt first contested the California income tax liability at issue in this case." *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("[A] court may take judicial notice of matters of public record" (internal quotations and citations omitted)).

Hyatt and Defendants both did so, disputing the cause of the delay in this case. They offer documents from years of related litigation in Nevada and New York. We need not consider whether judicial notice of any documents addressing the cause in the delay is appropriate, as whether Hyatt, the Defendants, or some combination caused the delay, it does not affect the availability of a speedy remedy here. The pending judicial notice motions are denied as moot.

> [i]f the Franchise Tax Board fails to mail notice of action on any refund claim within six months after the claim was filed, the taxpayer may, prior to mailing of notice of action on the refund claim, consider the claim disallowed and bring an action against the Franchise Tax Board on the grounds set forth in the claim for the recovery of the whole or any part of the amount claimed as an overpayment.[49]

In our view, the pay-then-protest remedy now provides Hyatt a speedy remedy, even if the protest-then-pay remedy has not.

## C. Does Hyatt Have Access to A Plain Remedy for His Constitutional Claims?

Finally, Hyatt argues that it is unclear whether he would be able to raise his constitutional claims in a pay-then-protest proceeding, for two reasons.[50] First, he says that Section 19832 authorizes a taxpayer to "claim[] that the tax

---

[49] *See* Cal. Rev. & Tax. Code § 19385.

[50] Hyatt also argues that the protest-then-pay process would not provide him with a forum for raising these new constitutional claims, because that statute limits the adjudication to the issue of the taxpayer's residency during the period in question. Hyatt's Br. at 21; *Franchise Tax Bd. v. Superior Court*, 212 Cal. App. 3d 1343, 1347 (Ct. App. 1989) ("The statutes do not authorize the superior court to prevent or enjoin collection of the tax, but permit it only to determine the fact of [the taxpayer's] residence in this State during the year or years set forth in the notice or notices of deficiency assessment" (internal quotations and citations omitted)). This is irrelevant, if the pay-then-protest process is sufficient.

computed and assessed is void" and to file a claim for "recovery of the whole or any part of the amount paid."[51] Hyatt argues that it is unclear whether a California court will find that his constitutional claims contend that "the tax computed and assessed is void" and thus can be heard in state court. Second, Hyatt argues that he may be barred from bringing these claims because they were not "the grounds set forth in the claim for refund."[52] Therefore, he argues, his remedy is not "plain" and this suit should not be barred.

First, as Hyatt's own complaint makes clear, he does seek to void a tax. In his complaint, Hyatt seeks to enjoin Defendants . . . from continuing the investigation and administrative proceedings against Hyatt that seek to assess California state income taxes, or adjudicate the assessment and collection of California state income taxes, against Hyatt for the 1991 and 1992 tax years."[53] He also seeks to "enjoin Defendants from continuing to assess or threaten to assess, or collect or threaten to collect, taxes, penalties and interest from Hyatt for the 1991 and 1992 tax years."[54] The district court correctly concluded that "[i]t is evident that Hyatt

---

[51] Cal. Rev. & Tax. Code § 19382 ("Except as provided in Section 19385, after payment of the tax and denial by the Franchise Tax Board of a claim for refund, any taxpayer claiming that the tax computed and assessed is void in whole or in part may bring an action, upon the grounds set forth in that claim for refund, against the Franchise Tax Board for the recovery of the whole or any part of the amount paid.").

[52] *Id.*

[53] Compl. ¶ 107, ER 773–74.

[54] *Id.*

seeks to void the tax or taxes assessed against him."**55**
Moreover, California courts have found that constitutional
claims can qualify as claims seeking to void a tax.**56** It is thus
clear that California allows such claims to be brought in the
pay-then-protest process. Hyatt's argument thus fails to
show that the pay-then-protest process will not provide a
plain remedy.

Hyatt's second argument, that he will not be able to add
constitutional claims that arose after the filing of his protest
to a state court case, presents a much closer question. As
Hyatt understands the state statutes, "if [he] pays the tax
while his [Appeals Board] appeal is pending. . . [his] prior
'protests' . . . , for the 1991 and 1992 tax years, . . . will be
deemed to be his refund claim."**57** A problem arises because

> [t]hose protests do not contain Mr. Hyatt's
> constitutional claims as grounds for the claim
> because he filed the protest before the [Tax
> Board]'s and [Appeals Board]'s offending

---

**55** ER 12. *See also* Black's Law Dictionary 1805 (10th ed. 2014)
(defining "void" as "[t]o render of no validity or effect; to annul;
nullify."). Hyatt seeks to nullify his tax bill.

**56** *Capitol Indus.-EMI, Inc. v. Bennett*, 681 F.2d 1107, 1117 (9th Cir.
1982). *See, e.g.*, *Jensen v. Franchise Tax Bd.*, 178 Cal. App. 4th 426, 433
(2009).

**57** Reply Br. at 14–15 (citing Cal. Rev. & Tax. Code § 19335 ("If,
with or after the filing of a protest or an appeal to the State Board of
Equalization . . . , a taxpayer pays the tax protested before the Franchise
Tax Board acts upon the protest, or the board upon the appeal, the
Franchise Tax Board or board shall treat the protest or the appeal as a
claim for refund or an appeal from the denial of a claim for refund filed
under this article.")).

conduct. Under Section 19382, a refund action is limited to the grounds set forth in the refund claim. Accordingly, Mr. Hyatt could not raise the constitutional issues in his newly converted Section 19382 procedure because his refund claims (*i.e.*, his original protests) do not include the constitutional violations.[58]

Under our reading of the statutes, if Hyatt pays and then protests, the California state courts will likely allow Hyatt to add these constitutional claims to a state court suit challenging the tax. The state court may find that these are not the sorts of claims that a taxpayer must include in his initial protest or refund because they refer to conduct during the ongoing Tax Board and Appeals Board review, rather than the grounds on which the taxpayer contested the tax initially. Thus, the legislative purpose served by applying the administrative exhaustion requirement would not apply to these claims. Moreover, even if the California courts do apply the exhaustion requirement to these claims, they may find that the Tax Board was "on notice" of these claims, given the long history of litigation between these parties, where Hyatt may have previously raised these issues.[59] The Appeals Board may also permit Hyatt to amend his petition to add these additional grounds.[60] At oral argument counsel for the Tax Board and the Appeals Board both represented

---

[58] *Id.* at 15.

[59] *See J.H. McKnight Ranch*, 110 Cal. App. 4th at 986–87.

[60] *See* Cal. Rev. & Tax. Code § 60351.

that the constitutional challenges raised here could be raised in state court.[61]

### III.  CONCLUSION

In light of the strong principles of comity that guide our interpretation of the Tax Injunction Act, we decline to enjoin the tax proceedings in this case. We hold that "narrow exception"[62] to the Tax Act's jurisdictional bar cannot be expanded to allow this suit, and we affirm the judgment of the district court.[63]

**AFFIRMED**.

---

[61] Even if Hyatt is barred from bringing these constitutional claims in a state court proceeding, he can seek to raise the same claims in a suit in state court against the responsible individuals.

[62] *Redding Ford*, 722 F.2d at 497.

[63] This is particularly true in light of the fact that Hyatt's own decisions contributed to the constitutional claims he seeks to now bring. While we do not consider whether Hyatt contributed to the delay in the protest-then-pay proceedings, at any point, Hyatt could have paid his tax bill and brought a suit in state court protesting the tax within six months.

**Form 11.**   **Certificate of Compliance Pursuant to 9th Circuit Rules 35-4 and 40-1 for Case Number** <u>15-15296</u>

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the back of each copy of the petition or answer.*

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for panel rehearing/petition for rehearing en banc/answer to petition (check applicable option):

☒ Contains ⟦2,160⟧ words (petitions and answers must not exceed 4,200 words), and is prepared in a format, type face, and type style that complies with Fed. R. App. P. 32(a)(4)-(6).

**or**

☐ Is in compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

Signature of Attorney or Unrepresented Litigant | s/Donald J. Kula          Date | Oct 10, 2017

("s/" plus typed name is acceptable for electronically-filed documents)

*(Rev.12/1/16)*

CERTIFICATE OF SERVICE

U.S. Court of Appeals Docket Number(s): 15-15296

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 10, 2017.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature:     *s/ Yolanda Mendez*